**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| SCANSOFT, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-10353-PBS |
| | ) | |
| | ) | |
| VOICE SIGNAL TECHNOLOGIES, INC., | ) | |
| LAURENCE S. GILLICK, ROBERT S. | ) | |
| ROTH, JONATHAN P. YAMRON, and | ) | |
| MANFRED G. GRABHERR | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**COUNTS II, III, IV AND V OF THE COMPLAINT**

Defendants submit this Memorandum in support of their Motion to Dismiss Counts II

(misappropriation of trade secrets), III (unfair competition against Voice Signal Technologies,

Inc.), IV (unfair competition against the individual defendants) and V (violation of M.G.L. c.

93A) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

As its name suggests, ScanSoft, Inc. ("ScanSoft") is primarily an optical scanning

company. In December 2001, it purchased the speech recognition business of the bankrupt

entities Lernout & Hauspie Speech Products N.V. and L&H Holdings USA, Inc. (collectively,

"L&H"). In its State Law Claims, ScanSoft attempts to resurrect claims already brought, settled

and released in a state court action by L&H against Voice Signal Technologies, Inc. ("VST") and

---

[1] Counts II, III, IV and V are referred to collectively as the "State Law Claims." Count I asserts an unrelated claim
for patent infringement pursuant to 35 U.S.C. § 271.

1

the individual defendants arising out of events that transpired more than three years ago (the "First Litigation").

The State Law Claims are barred by the releases executed in connection with Defendants' settlement with L&H. In addition, the facts alleged by ScanSoft in support of Counts III, IV and V fail to state claims upon which relief may be granted.

## BACKGROUND

VST is a small, private company established in 1995, widely acknowledged for its technology innovation. It employs roughly 45 people in Woburn, Massachusetts, 38 of whom are software developers. VST is focused on developing and marketing software which resides in mobile phones and which enables the phones to respond to voice commands. Declaration of Paul D. Popeo ("Popeo Decl."), filed herewith, Ex. 1.[2]

ScanSoft is a publicly traded corporation, with offices around the world. Ex. 2. ScanSoft first entered the speech technology market with its acquisition of L&H's business out of bankruptcy. It then used its considerable financial assets to attempt to eliminate competition in that market. Specifically, in the past year, ScanSoft has acquired Royal Philips Electronics and SpeechWorks, two larger competitors in the general speech technology markets. Notably, after each such acquisition, ScanSoft announced substantial "restructurings" which resulted in its laying off hundreds of software developers.

The speech technology assets acquired by ScanSoft from L&H, Philips and SpeechWorks are not suitable to reside in mobile phones and therefore have not found a market among mobile phone manufacturers. By contrast, VST's software is specifically designed to reside in mobile

---

[2] All Exhibits are to the Popeo Decl.

2

phones and has been widely accepted. VST currently licenses with Motorola, Samsung, Panasonic, Audiovox and Sendo.

The two companies are not strangers to each other. Over the past several months, ScanSoft and VST were engaged in discussions concerning the potential acquisition of VST by ScanSoft. Those discussions were strained, and ultimately, unsuccessful. They terminated on Wednesday, February 18, 2004, after the parties failed to agree on a valuation of VST. Two days later, on February 20, 2004, the first day of the largest and most important trade show for the mobile phone industry, called "3GSM World Congress," ScanSoft sued the Defendants and issued a press release announcing the litigation to VST's most important customers and business partners. Ex. 3. Thereafter, VST was served with the instant Complaint.

## FACTS

Laurence Gillick, Robert Roth, Jonathan Yamron, and Manfred Grabherr (the "Individual Defendants") are former employees of L&H. They left L&H and joined VST during 2000 and the first months of 2001. ScanSoft Compl. ¶¶ 55-56.

Thereafter, on September 11, 2001, L&H commenced a lawsuit in Massachusetts Superior Court seeking an injunction and unspecified damages against VST and the Individual Defendants.[3] Ex. 4, Verified Complaint for Injunctive Relief (the "L&H Complaint," the action generally, the "First Litigation").[4] In the First Litigation, L&H alleged that VST was a competitor of L&H; that by virtue of their employment at VST, the Individual Defendants were in breach of the non-competition and non-disclosure provisions of their employment agreements

---

[3] Manfred Grabherr was not named as an individual defendant in the L&H Complaint.

[4] It is well-established that a court may look to matters of public record, such as the L&H Complaint, in deciding a Rule 12(b)(6) motion. *See, e.g., Colonial Mortgage Bankers Corp. v. Lopez-Stubbe*, 324 F.3d 12, 19 (1st Cir. 2003); *Boateng v. Interamerican University, Inc.*, 210 F.3d 56, 69 (1st Cir. 2000); *Waterson v. Page*, 978 F.2d 1, 3-4 (1st Cir. 1993).

with L&H and that they would "inevitably" disclose (unidentified) L&H trade secrets to VST. L&H Compl. ¶¶ 54, 57, 69, 79. L&H further alleged that, in December 2000 or January 2001, VST induced the Individual Defendants to violate their obligations to L&H under their employment agreements, and asserted claims for "unfair competition at the common law" and violation of G.L. c. 93A. *Id.* ¶¶ 83, 87, 90. Each of those claims -- stemming from wrongful conduct alleged to have occurred more than three years ago -- is identical to the State Law Claims asserted by ScanSoft in the present action, and is predicated on factual allegations lifted wholesale from the L&H Complaint.[5]

In December, 2001, in the course of L&H's Bankruptcy proceedings, ScanSoft purchased substantially all of the operating and technology assets of L&H's speech and language business. Ex. 8, Asset Purchase Agreement Dated December 7, 2001 (the "Asset Purchase Agreement").[6] The sale was approved by the Bankruptcy Court on December 11, 2001. Ex. 9. Those assets constitute the L&H business which formerly employed the Individual Defendants, and to which the claims in the First Litigation related (the "Speech Recognition Assets"). ScanSoft Compl. ¶¶ 1, 12, 15, 36.

ScanSoft does <u>not</u> allege that it purchased the causes of action at issue in the First Litigation. Nor can it. While L&H transferred certain business assets, including intellectual property, to ScanSoft, it did <u>not</u> transfer to ScanSoft the causes of action advanced in the First

---

[5] Ex. 12 to the Popeo Decl. is a paragraph-by-paragraph comparison of the L&H Complaint to the ScanSoft Complaint. It demonstrates that the allegations were literally cut and pasted wholesale from the L&H Complaint. Count II of the ScanSoft Complaint alleges Misappropriation of Trade Secrets and Confidential Information, and corresponds to Count III of the L&H Complaint. Count III of the ScanSoft Complaint alleges Unfair Competition (against VST) and corresponds to Count V of the L&H Complaint. Count IV of the ScanSoft Complaint alleges Unfair Competition (against the Individual Defendants) and corresponds to Count V of the L&H Complaint. Count V of the ScanSoft Complaint alleges Violation of M.G.L. c. 93A, and corresponds to Count VI of the L&H Complaint.

[6] The relevant asset purchase documents are attached to the Popeo Decl. at Exs. 8, 9, and 11. The Court need not consider them in order to decide this motion. They are submitted to demonstrate that ScanSoft's pleading failures cannot be cured.

Litigation.[7] Rather, those causes of action were retained by L&H, and the litigation between

L&H and VST continued until February 10, 2003, when a settlement agreement (the "Settlement

Agreement") was reached between the parties, general releases (the "General Releases") were

exchanged, and the litigation was dismissed with prejudice ("Stipulation of Dismissal with

Prejudice").[8] Ex. 5; Ex. 7.[9] The General Releases and Settlement Agreement dispose for all

time any and all claims or disputes related to the Individual Defendants' conduct in leaving L&H

and (allegedly) misappropriating L&H trade secrets to VST -- including each of the State Law

Claims now asserted by ScanSoft.

The General Releases effect a release of any and all wrongful conduct allegedly

committed by the Individual Defendants, VST, or any VST employee which was the subject

matter of the First Litigation, or which could have been alleged in the First Litigation.[10] The

General Releases apply to "any and all claims brought or which could have been brought" by

L&H against the Defendants. Those releases, therefore, release all claims for the

misappropriation of trade secrets alleged to have occurred when the Individual Defendants left

L&H and joined VST. (L&H Compl. ¶¶ 76-81; ScanSoft Compl. ¶¶ 67-72). Also released are

---

[7] The schedule of purchased assets to the Asset Purchase Agreement does not list the First Litigation as an acquired asset, nor does it list any causes of action asserted in that litigation as an asset purchased by ScanSoft from L&H. Ex. 8, § 1.1 and Annex B. ScanSoft does not (and cannot) allege in the Complaint that those causes of action were purchased, assigned or otherwise transferred from L&H to ScanSoft in connection with the Asset Purchase Agreement, or at any time thereafter.

[8] ScanSoft attempted to intervene in that litigation on December 20, 2002, filing a Motion to Intervene, and Amended Complaint. Ex. 6. The Court denied ScanSoft's Motion.

[9] The Settlement Agreement, General Releases and Stipulation of Dismissal are attached to the Popeo Decl. as Exs. 5 and 7. The Court need not consider them in deciding this motion. They are submitted to demonstrate that ScanSoft's pleading failures cannot be cured.

[10] The General Releases extend to VST and to Gillick, Roth and Yamron by name. They expressly extend to all employees of VST, and thus extend to Grabherr, who was a VST employee on the date the General Releases were executed. Ex. 5. Furthermore, L&H was on notice of its claims against Mr. Grabherr and even announced its intention to amend the L&H Complaint to add him as a defendant. Ex. 13.

claims that VST induced the Individual Defendants to breach their employment agreements with L&H (L&H Compl. ¶¶ 82-85; ScanSoft Compl. ¶ 80); that any Defendant or VST violated M.G.L. c. 93A (L&H Compl. ¶ 90; ScanSoft Compl. ¶ 80); that any conduct of any Defendant or VST employee violated M.G.L. c. 93 §§ 42 and 42A (L&H Compl. ¶ 80; ScanSoft Compl. ¶ 71); or that any Defendant or VST employee committed any form of common law "unfair competition" (L&H Compl. ¶¶ 86-88; ScanSoft Compl. ¶¶ 73-78).

The Settlement Agreement and General Releases were executed on L&H's behalf by the Plan Administrator of L&H's estate, Allan P. Forsey, acting pursuant to the authority granted him by the United States Bankruptcy Court for the District of Delaware. Ex. 5. The General Releases recite valid consideration, are witnessed, and are executed as sealed instruments under Massachusetts law. Ex. 5. The Settlement Agreement expressly terminates "all claims and disputes" between L&H and the Defendants. Ex. 5. The parties to the Settlement Agreement expressly represented that it was executed with "full knowledge of the rights relinquished, surrendered, released and discharged." *Id.* ¶ 10(d). The parties expressly acknowledged the "validity and enforceability of the Settlement Agreement and all [General Releases]." *Id.* ¶ 11. L&H represented and warranted that it was "fully authorized and competent to execute this Settlement Agreement and [the General Releases]," *id.* ¶ 12, that it "owns the claims and causes of action that it asserted in the Litigation," and that it "has not assigned or transferred those claims [to ScanSoft] or any other person or entity." *Id.* ¶ 13. The First Litigation was dismissed, with prejudice, on February 11, 2003. Ex. 7.

In short, because the claims now asserted by ScanSoft were not purchased by or assigned to ScanSoft from L&H, and because they are the identical claims settled and released in the First Litigation, Defendants' Motion to Dismiss must be granted.

6

In addition, Counts III and IV (for unfair competition) and V (93A) fail to state a claim as a matter of law. For this additional reason, Counts III, IV and V should be dismissed.

## ARGUMENT

### I.   SCANSOFT'S CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6).

In order to survive a motion to dismiss, a complaint must set forth allegations of fact concerning each material element necessary to sustain recovery. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). A court need not "conjure up unpled allegations," *id.* at 514, nor credit a plaintiff's bald or unsubstantiated assertions. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990); *see also Stein v. Royal Bank of Canada*, 239 F.3d 389, 392 (1st Cir. 2001) (a court "will not accept a complainant's unsupported conclusions or interpretations of law.") (citation omitted). Under the foregoing standard, each of ScanSoft's State Law Claims should be dismissed.

### A.   L&H'S CAUSES OF ACTION WERE NOT TRANSFERRED TO SCANSOFT.

It is well settled that a cause of action is an independent property interest. *Gibbes v. Zimmerman*, 290 U.S. 326, 332 (1933); *Hanify v. Hanify*, 403 Mass. 184, 187 (1988). ScanSoft does not allege that it purchased the causes of action asserted in the First Litigation from L&H. Nor can it. ScanSoft purchased a scheduled list of assets from L&H in connection with the L&H bankruptcy. Ex. 8. L&H's causes of action against VST and the Individual Defendants were not among the scheduled assets sold to ScanSoft. Rather, those causes of action were expressly retained by L&H. Ex. 5, Settlement Agreement, ¶ 13.

ScanSoft now attempts to re-assert those same claims on its own behalf. It may not do so. Absent an express transfer of the causes of action, ScanSoft has no independent claim

7

against VST or the Individual Defendants for harm allegedly caused before ScanSoft bought the

Speech Recognition Assets from L&H. *See, e.g., Crown Die & Tool Co. v. NYE Tool &*

*Machine Works*, 261 U.S. 24, 41 (1923) ("'the injury inflicted by an act of infringement falls

upon the individual who owns the monopoly at the date of the infringement. It does not . . .

prejudice a future owner that the law can recognize his loss.'") (citation omitted); *see also*

*Larabee v. Potvin Lumber Co.*, 390 Mass. 636, 640 (1983) (holding that purchase and sale

agreement provided property owners with tort claim for previous injury to property only because

agreement contained express assignment of causes of action).

Thus, only an express assignment of L&H's alleged causes of action -- which ScanSoft

does not have -- could give ScanSoft the right to sue. *See Arachnid, Inc. v. Merit Industries,*

*Inc.*, 939 F.2d 1574, 1579 n.7 (Fed. Cir. 1991) ("The authorities are uniform that the . . .

assignment [of a right of action for past infringement] must be express, and can not be inferred

from an assignment of the patent itself."); *Luna Pres. Society v. Metro. Dist. Comm'n*, 2000 WL

420838, *7-8 (Mass. Super. Ct. Feb. 28, 2000) (holding that new property owner had no valid

claim in tort for past injury to property because owner did not receive an express assignment of

right to sue for past injury); *Harris v. J.C. Erb Constr., Inc.*, 1996 WL 1185038, *2 (Mass.

Super. Ct. Oct. 24, 1996) ("The only way that a purchaser can recover for an injury to property

that occurred before he took title is if the vendor assigned him the right to sue.").

On September 23, 2002, the United States Bankruptcy Court for the District of Delaware

appointed Allan P. Forsey as Plan Administrator of L&H ("Plan Administrator"). Among other

things, the Plan Administrator was given broad authorization to manage L&H, to bind L&H to

contractual obligations, to dispose of L&H property, and to settle L&H litigation claims. Ex. 10.

The Plan Administrator's actions were authorized and supervised by the Bankruptcy Court. *Id.*

8

The Plan Administrator, through his attorneys at Milbank, Tweed, Hadley & McCloy LLP, negotiated the terms of the L&H settlement with VST. Popeo Decl. ¶ 3. The Plan Administrator executed the Settlement Agreement between L&H and VST, and signed each of the General Releases. Ex. 5. In the Settlement Agreement between L&H and VST, the Plan Administrator warranted that the claims asserted by L&H in the First Litigation were not purchased by ScanSoft in the Asset Purchase Agreement, and were not otherwise transferred or assigned to ScanSoft or any other party:

> Although ScanSoft currently owns a significant portion of the intellectual property owned by L&H at the time L&H commenced this litigation, **L&H represents and warrants that it owns the claims and causes of action that it asserted in the Litigation** that existed prior to the closing of that certain asset purchase agreement, dated December 7, 2001 between, among others, L&H and ScanSoft, Inc., and that are the subject of the Releases and the Stipulation of Dismissal with Prejudice referenced herein and **that L&H has not assigned or transferred those claims to any other person or entity** (emphasis added).

Ex. 5, Settlement Agreement, ¶ 13. Because L&H's claims were not transferred to ScanSoft, ScanSoft has no standing to assert those claims in this action. Moreover, even if ScanSoft could somehow assert standing (and it cannot), the claims must still be dismissed because they were expressly released by L&H. It is well settled that claims which have been effectively released may not be re-litigated at a subsequent date. *See, e.g., Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 31-32 (1st Cir. 1991) ("It is beyond cavil that a suit can be barred by the earlier settlement of another suit . . . [and the grant of a] release."); *Naukeag Inn, Inc. v. Rideout*, 351 Mass. 353, 356 (1966) (holding that general release plaintiff gave defendant in settlement of previous suit precluded plaintiff's subsequent suit); *Willet v. Herrick*, 258 Mass. 585, 594-95 (1927).

Nor can ScanSoft claim that the Settlement Agreement and General Releases are invalid or unenforceable. The Plan Administrator had full authority to execute those documents on

9

behalf of L&H, and each of the documents recites valid consideration, and was executed as a

sealed instrument under Massachusetts law. Ex. 5. *See Shuster v. Baskin*, 354 Mass. 137, 141

(1968) (enforcing release and noting that "because [the release was] under seal, the

consideration, if any, was immaterial."). The Superior Court in the First Litigation entered the

Stipulation of Dismissal with Prejudice executed by L&H and VST, and the First Litigation was

in fact dismissed. Ex. 7. The causes of action originally asserted by L&H, and now repeated by

ScanSoft, are forever released, and barred from further litigation. Accordingly, Defendants'

Motion to Dismiss should be granted with respect to each of ScanSoft's State Law Claims.

## B. SCANSOFT DOES NOT ASSERT NEW CLAIMS.

ScanSoft could, in theory, allege that some Defendant used or disclosed some valuable

trade secret *after* ScanSoft purchased that trade secret from L&H. It has not done so. In fact,

ScanSoft does not (and cannot) allege that any VST employee disclosed any identifiable L&H or

ScanSoft trade secret to anyone at *any* time -- and certainly not after December 11, 2001 -- the

date on which ScanSoft purchased the Speech Recognition Assets from L&H.[11]

Instead, ScanSoft merely re-asserts the very claims alleged by L&H to have occurred

before September 2001. The State Law Claims now asserted by ScanSoft are identical to the

claims alleged, litigated and released by L&H in the First Litigation. Page after page, and

paragraph after paragraph, of the ScanSoft Complaint are literally "cut" and "pasted" from the

L&H Complaint in the First Litigation.[12] The virtual identity of the two complaints is

---

[11] In the preamble to its Complaint, ScanSoft alleges that the Individual Defendants "inevitably" will use and disclose ScanSoft's trade secrets through their employment with VST. ScanSoft does not repeat that allegation in any of the numbered paragraphs to the Complaint. Leaving aside the questionable proposition of whether a claim for "inevitable" disclosure is recognized as a viable cause of action in Massachusetts, the notion that these Defendants – more than three years after leaving L&H – will now "inevitably" disclose anything is absurd.

[12] *E.g., compare* ¶ 80 of ScanSoft Complaint "VST's knowing and willful conduct in inducing Gillick, Roth, Yamron, and Grabherr to breach their employment obligations and covenants constitutes a knowing and willful use of an unfair method of competition and an unfair or deceptive act or practice . . ." *with* ¶ 90 L&H Compliant "Voice

staggering.[13]  Of the eighty paragraphs asserted in the ScanSoft Complaint, sixty four are

virtually word-for-word copies of paragraphs contained in the L&H Complaint.[14]

Count II of the Complaint alleges Misappropriation of Trade Secrets and Confidential

Information, and corresponds to Count III of the L&H Complaint.  The entire allegation is that

"Gillick, Roth, Yamron, and Grabherr used and disclosed ScanSoft's trade secrets and

confidential and proprietary information through their employment with VST."[15]  ScanSoft

Compl. ¶ 70.  Each of the allegations in the preceding 61 paragraphs of the Complaint, on which

ScanSoft purportedly relies to support Count II, are the very same factual allegations set forth in

the original L&H Complaint.  *Compare* ScanSoft Compl. ¶¶ 12-61 *with* L&H Compl. ¶¶ 6-79;

*see* Ex. 12.

In its entire Complaint, ScanSoft references only one VST product, the Embedded Large

Vocabulary System ("ELVIS"), apparently for the proposition that ELVIS was created using

trade secrets misappropriated from L&H.  That is the very same allegation made by L&H in the

L&H Complaint.  *Compare* L&H Compl. ¶ 57 *with* ScanSoft Compl. ¶ 59.  ScanSoft does not

own that claim, and it was expressly released in the General Releases.  ScanSoft is precluded as a

matter of law from further litigating that claim.

---

Signal's knowing and willful conduct in inducing Gillick, Roth, and Yamron to breach their Non-Competition
Agreements and/or Employment Agreements constitutes a knowing and willful use of an unfair method of
competition and an unfair or deceptive act or practice . . ."

[13] *See* Ex. 12 for a comparison of allegations in ScanSoft's Complaint with allegations in the L&H Complaint.

[14] The only difference is the substitution of ScanSoft as the Plaintiff instead of L&H.  The fourteen paragraphs
which are not identical in the two complaints merely relate to jurisdictional or venue allegations (¶¶ 7-8), add former
VST employee Manfred Grabherr as a defendant (¶¶ 6, 47, 55, 59), or concern the new patent infringement
allegation which is not a subject of this motion (¶¶ 9-11, 62-66).

[15] ScanSoft does not identify any trade secret allegedly misappropriated, nor does it reference any document or cite
any evidence for that conclusory and insufficient allegation.

Similarly, each of the remaining State Law Claims asserted in the Complaint is the identical claim asserted in the L&H Complaint. In Counts III and IV, for unfair competition against the Defendants, ScanSoft alleges that "by [their] actions as set forth in [paragraphs 12-72 of the Complaint] the [Defendants] have engaged and continue to engage in unfair competition prohibited by the common law." ScanSoft Compl. ¶¶ 74 and 77. That is a precise repetition of the "unfair competition" allegation contained in the L&H Complaint. L&H Compl. ¶ 87. Moreover, as set forth above, the factual allegations of Defendants' conduct which purportedly support ScanSoft's unfair competition allegation are _identical_ to the allegations contained in the L&H Complaint. *Compare* ScanSoft Compl. ¶¶ 12-80 *with* L&H Compl. ¶¶ 6-90. Count V of the Complaint alleges that "VST's knowing and willful conduct in inducing Gillick, Roth, Yamron, and Grabherr to breach their employment obligations . . . constitutes [a violation of M.G.L. c. 93A § 2]." Again, that is a word-for-word copy of the 93A allegation from the L&H Complaint. It too is barred.

Each of the State Law Claims now asserted by ScanSoft are the very claims owned and released by L&H. Moreover, each of the claims is based upon the very same factual allegations asserted and released by L&H. Because ScanSoft has not alleged (and cannot allege) that any misappropriation or other wrongful conduct occurred after the date on which it purchased the Speech Recognition Assets from L&H, the Motion to Dismiss should be granted on each of ScanSoft's State Law Claims. *See Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir. 1995).

### C. COUNTS III, IV AND V SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT THEY FAIL TO STATE A CLAIM AS A MATTER OF LAW.

Counts III, IV and V of the Complaint must be dismissed for the further reason that ScanSoft has failed to allege, or cannot establish, an essential element of each claim.

**1. ScanSoft's Unfair Competition Claims (Counts III and IV) Are Inapposite.**

Counts III and IV of the Complaint allege that Defendants are liable for "unfair competition prohibited by the common law." ScanSoft Compl. ¶¶ 74, 77.[16] At common law, a cause of action for unfair competition protects a plaintiff's trade name or goods from a competitor who uses a confusingly similar name, or who seeks to "palm off" his products or services as those of the plaintiff. "Palming off" is "an attempt by one person to induce customers to believe that its products are actually of another." *Open Software Found., Inc. v. US Fidelity and Guar.*, 307 F.3d 11, 17 (1st Cir. 2002); *see also Kazmaier v. Wooten*, 761 F.2d 46, 52 (1st Cir. 1985) (holding that plaintiff's unfair competition claim failed because he failed to show consumer confusion); *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 768-69 (1986) ("the gravamen of an unfair competition claim is the likelihood of consumer confusion as to the source of the goods or services"). It addresses the same concerns as does a claim for trademark infringement, preventing one from "unfairly capitalizing on the consumer goodwill of another." *American Tel. & Tel. Co. v. IMR Capital Corp.*, 888 F. Supp. 221, 246 (D. Mass. 1995).

To establish a *prima facie* case for unfair competition, the plaintiff must prove: (1) that plaintiff's trade name acquired secondary meaning – *i.e.* that the public has come to associate that name with only one source, the plaintiff; (2) that defendant was aware of the secondary meaning; (3) that defendant adopted a name so similar that the public would be misled. *Kazmaier*, 761 F.2d at 52; *Datacomm Interface*, 396 Mass. at 769; *Bishop*, 17A Mass. Prac., § 36.21.

---

[16] ScanSoft's entire allegation -- copied exactly from the original L&H Complaint -- is that "By their actions as set forth above, [VST], Gillick, Roth, Yamron, and Grabherr have engaged and continue to engage in unfair competition prohibited by the common law." ScanSoft Compl. ¶¶ 74, 77.

None of the facts alleged by ScanSoft suggest that unfair competition is at issue here, as that cause of action is defined by Massachusetts common law. There is no allegation that VST attempted to pass itself off as ScanSoft, or that VST has attempted to deceive the public into believing that it is trading with ScanSoft, when in fact it is trading with VST, or that VST has adopted a name so similar to ScanSoft's that it is creating public confusion. *See American Tel. & Tel. Co.*, 888 F. Supp. at 246-47.

Because L&H has not alleged, and cannot establish, any of the elements of a common law claim for unfair competition, Counts III and IV of the Complaint must be dismissed. *See id.* (dismissing claim for unfair competition where plaintiff failed to allege "passing off" or consumer confusion); *Datacomm Interface*, 396 Mass. at 772 (holding that plaintiff's unfair competition claim failed where court found no palming off or customer confusion).

## 2. ScanSoft's Chapter 93A Claim (Count V) Is Inapplicable.

Count V alleges a violation of G.L. c. 93A §§ 2 and 11. ScanSoft claims that:

> VST's knowing and willful conduct *in inducing Gillick, Roth, Yamron, and Grabherr to breach their employment obligations* and covenants constitutes a knowing and willful use of an unfair method of competition and an unfair or deceptive act or practice in the conduct of a trade or business within the meaning of M.G.L. c. 93A, § 2, entitling ScanSoft to injunctive relief, the trebling of its actual damages as are proved at trial, and its attorneys' fees.

ScanSoft Compl. ¶ 80 (emphasis added).

ScanSoft is incorrect. It is well established that G.L. c. 93A does not apply to violations of employee non-competition/non-disclosure agreements because those disputes arise from an employment relationship and thus are not actionable under Chapter 93A. *Manning v. Zuckerman*, 388 Mass. 8, 13-14 (1983) (holding that employment relationship does not constitute "trade or commerce" and therefore employment disputes may not be redressed under Chapter 93A); *Informix, Inc. v. Rennell*, 41 Mass. App. Ct. 161, 162-63 (1996) (holding that 93A

15

does not provide remedy to employer for former employee's alleged post-employment breach of non-competition agreement).  It is equally settled that Chapter 93A does not apply to claims that a third party induced the breach of an employee's non-competition/non-disclosure agreement. *Intertek Testing Servs. NA, Inc. v. Curtis Strauss LLC,* 2000 WL 1473126, *11 (Mass. Super. Ct. Aug. 8, 2000) (Gants, J.) ("If the actual willful breach of a non-compete agreement by an employee is not actionable under c. 93A because the claim arose from the employment relationship, then the conduct of a third party to induce such a breach must also not be actionable because this claim, too, arose from the employment relationship."); *Oceanair, Inc. v. Katzman,* 14 Mass. L. Rptr. 414, 420 (Mass. Super. Ct. 2000) (Van Gestel, J.) (holding 93A does not apply to claim that third party induced breach of employment contract).  Therefore, Count V of the Complaint should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Counts II, III, IV and V of the

Complaint pursuant to Rule 12(b)(6).

Respectfully submitted,

LAURENCE S. GILLICK, ROBERT S. ROTH,
JONATHAN P. YAMRON, MANFRED G.
GRABHERR and VOICE SIGNAL
TECHNOLOGIES, INC.

By their attorneys,

Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Paul E. Bonanno (BBO No. 646838)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, MA 02109
(617) 248-5000

Dated: March 15, 2004

3668081v2

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON

DATE 3/15/04 SIGNATURE _____

16