UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VOICE SIGNAL TECHNOLOGIES, INC., )<br>LAURENCE S. GILLICK, ROBERT S. )<br>ROTH, JONATHAN P. YAMRON, and )<br>MANFRED G. GRABHERR )<br>)<br>Defendants. )<br>) | Civil Action No. 04-10353-PBS<br><br>**Request For Oral Argument** |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS II, III, IV AND V OF THE COMPLAINT

### INTRODUCTION

ScanSoft, Inc. ("ScanSoft") hereby opposes Defendants' Motion to Dismiss Counts II, III, IV, and V of the Complaint. In moving to dismiss, Defendants directly contradict the position they took in a prior litigation when they successfully opposed the intervention of ScanSoft by arguing that ScanSoft could pursue its claims in a separate litigation. Defendants' effort to deprive ScanSoft of its day in court should be rejected by the Court. Voice Signal Technologies ("VST") and the individual Defendants should not be allowed to use procedural trickery to keep ScanSoft from asserting its legitimate intellectual property rights. Indeed, the Defendants admit that ScanSoft owns the intellectual property at issue in this lawsuit, *Defendants Memorandum at 4*, and as such has a legitimate interest in protecting its property. Defendants also admit that, in a previous lawsuit between them and Lernout & Hauspie ("L&H"), they settled claims relating to *ScanSoft's* intellectual property rights, *Id. at 5*, and that ScanSoft

attempted to intervene in that litigation to protect its rights. *Id. at fn. 8.* Despite recognizing ScanSoft's rights in its trade secrets, Defendants argue that ScanSoft is nevertheless barred from litigating its claims because those claims have been resolved in a settlement between Defendants and L&H. Defendants having fought to keep ScanSoft out of the prior litigation and settlement by arguing that ScanSoft could bring its own lawsuit to protect its trade secrets, now argue that ScanSoft is precluded from bringing that lawsuit. Defendants should not be allowed to benefit from such gamesmanship. It is clear from the face of the Complaint, and the Defendants' own admissions, that ScanSoft has meritorious claims and should be allowed to proceed with those claims.

## FACTS

In September 2001, L&H, then in Chapter 11 bankruptcy proceedings in New York, brought suit in Massachusetts Superior Court against Defendants seeking an injunction and alleging misappropriation of certain trade secrets belonging to L&H, unfair competition and violation of Chapter 93A.[1] Ex. A, Verified Complaint for Injunctive Relief. In December 2001, Plaintiff ScanSoft bought from L&H a bundle of speech technology assets, know-how, trade secrets and good will, some of which were the subject of the Superior Court litigation. Ex. B, Asset Purchase Agreement Dated December 7, 2001. Thus, from December 2001, ScanSoft owned the intellectual property assets that were the subject of the Superior Court litigation between Defendants and L&H. However, despite ScanSoft's ownership of the intellectual property assets as of December 7, 2001, L&H's bankruptcy counsel conducted secret settlement

---

[1] L&H filed its lawsuit against all the Defendants except Manfred Grabherr. Mr. Grabherr is a defendant to the instant action based upon his work on the Phoenix Project at L&H. The intellectual property assets associated with the Phoenix Project were transferred to ScanSoft in December 2001.

-2-

discussions with counsel for the Defendants from which ScanSoft -- and L&H's own litigation counsel -- were excluded, and "sold" L&H's claims for a cash payment. The Defendants got general releases of L&H's claims.

ScanSoft sought to assert its claims based upon the intellectual property assets it acquired, and accordingly, in January 2003, ScanSoft moved to intervene in the Superior Court litigation. The Defendants opposed ScanSoft's motion. Ex. C, ScanSoft's Motion To Intervene, and Ex. D, Defendant's Opposition to Motion To Intervene. In their Opposition, Defendants argued that they had reached a settlement with L&H and that ScanSoft could bring its own separate lawsuit to pursue its claims should it so desire. The Superior Court agreed with the Defendants and denied ScanSoft's motion to intervene. Defendants and L&H completed the settlement of their dispute in February 2003. In February 2004, ScanSoft finally obtained a copy of the settlement agreement between L&H and the Defendants and filed this lawsuit alleging patent infringement, misappropriation of trade secrets, unfair competition and violations of Massachusetts General Laws Chapter 93A.

## ARGUMENT

I. **SCANSOFT'S COMPLAINT STATES CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS, UNFAIR COMPETITION AND VIOLATIONS OF MASSACHUSETTS BUSINESS PROTECTION LAWS UPON WHICH RELIEF MAY BE GRANTED**

In considering a motion to dismiss, the Court begins "by accepting all well-pleaded facts as true, and draws upon all reasonable inferences in favor of the nonmovant. *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir 1993). The complaint will be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73

(1984). ScanSoft's claims of misappropriation of trade secrets, unfair competition and violations of Massachusetts General Laws Chapter 93A are each supported by material facts alleging wrongful conduct by the defendants and each count states a claim upon which relief may be granted.

## II. THE DEFENDANTS ARE JUDICIALLY ESTOPPED FROM CLAIMING THAT THEIR AGREEMENT WITH L&H HAS A PRECLUSIVE EFFECT ON SCANSOFT'S TRADE SECRET AND UNFAIR COMPETITION CLAIMS

The equitable doctrine of judicial estoppel prohibits the granting of summary judgment motions containing assertions that contradict assertions made to earlier tribunals. *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 12-13 (1st Cir. 1999) (Because Defendant's summary judgment motion contained arguments that contradicted arguments Defendant successfully made in earlier arbitration proceeding, judicial estoppel applies, and the District Court's grant of summary judgment is reversed.).

The doctrine of judicial estoppel serves two purposes. First, it promotes forthrightness between litigants by prohibiting the use of intentional self-contradiction as a means of gaining strategic advantage. For instance, in *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d at 13, because the Defendant successfully argued in an arbitration hearing that the Plaintiff's state law claim properly belonged in Massachusetts Superior Court, the Defendant could not later argue that a Federal statute preempted Plaintiff's state law claim. Although the Court may have otherwise granted summary judgment based on preemption, it instead remanded to the Superior Court because the Defendant had previously argued that the matters properly belonged in the Superior Court. The Court found summary judgment inappropriate because Plaintiff "simply did what [Defendant] said…that he must do: He filed in state court." *Id.*

Second, the doctrine of judicial estoppel acts like a guard dog to discourage those who would diminish the Courts' most valuable asset, judicial integrity. *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 214 (1st Cir. 1987) ("If parties feel free to select contradictory positions before different tribunals to suit their ends, the integrity and efficiency of the courts will suffer.").

A.  **Since The Defendants Told The Superior Court That ScanSoft Can Assert Claims Against Them In A "Separate Lawsuit" If That Court Denied ScanSoft's Motion To Intervene, They Cannot Now Argue To This Court That Such A Separate Suit Is Impermissible**

Like the Plaintiff in *Lydon v. Boston Sand & Gravel Co.*, ScanSoft simply did what its opponent said it should do: file suit. In January 2003, the Defendants told the Superior Court that it should deny ScanSoft's motion to intervene because "the proper course for [ScanSoft] to take is to file a separate lawsuit" rather than intervene in the suit filed by L&H. Ex. D (Defendant's Opposition To ScanSoft, Inc.'s Motion To Intervene As A Party Plaintiff). The Court agreed and denied ScanSoft's Motion To Intervene.

As the Defendants point out in their Motion, Counts II, III, IV and V of ScanSoft's Complaint are the very claims ScanSoft sought to assert through intervention in the Superior Court proceeding. They are the very claims which seek redress for Defendants' wrongful conduct occurring after ScanSoft purchased the assets of L&H. And they are the very claims which the Defendants argued should be brought in a separate suit.

Having told the Superior Court that asserting its claims in a separate suit was "the proper course" for ScanSoft, the Defendants cannot now argue the opposite. Judicial estoppel prohibits the Defendants from making such self-contradictory arguments. *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d at 13.

When determining whether the Defendants are estopped from seeking summary judgment, the Court need not address the merits of the Defendant's summary judgment arguments.[2] Instead, the Court must focus on the impression that the Defendants' prior statements concerning ScanSoft's claims created in the Superior Court, and deny Defendant's Motion because it seeks a ruling inconsistent with that impression. *The Cadle Co. v. Schlictmann, Conway, Crowley & Hugo*, 338 F.3d 19, 22 (1st Cir. 2003) (applying judicial estoppel without regard to the legal sufficiency of the estopped party's arguments, since to rule otherwise would be inconsistent with the impression the estopped party's earlier arguments created in a prior tribunal).

This Court's ruling on Defendant's Motion must be consistent with the Defendants' earlier statement that ScanSoft can bring Counts II, III, IV and V in a "separate lawsuit." The only ruling this Court can make that is consistent with the Defendants' earlier statements to the Superior Court is a ruling denying Defendant's Motion.

> **B.     Since The Defendants Told The Superior Court That ScanSoft's Trade Secret And Related Claims Are Based On "An Independent Interest" They Cannot Now Argue To This Court That Those Claims Have Been Previously Asserted By L&H And Cannot Now Be Asserted By ScanSoft**

When the Defendant's opposed ScanSoft's motion to intervene in the Superior Court action, they also told the Superior Court that the motion to intervene should be denied because ScanSoft seeks to assert rights that have "nothing to do with the claims L&H asserted." The Defendants argued that ScanSoft's rights stemmed from an "independent interest" dating to

---

[2] However, the Defendant's motion is without merit, judicial estoppel notwithstanding. See Sections II through V, below.

ScanSoft's purchase of the relevant intellectual property from L&H. Ex. D, p. 3 (Defendants' Opposition To ScanSoft, Inc.'s Motion To Intervene As A Party Opponent).

Remarkably, the Defendants now abandon the "independent interest" position argued to the Superior Court and argue instead that ScanSoft lacks standing to assert the trade secret and related claims found in Counts II, III, IV and V of ScanSoft's Complaint. Continuing its pattern of unbridled self-contradiction, the Defendants now argue that only L&H had standing to assert the claims found in Counts II, III, IV and V of ScanSoft's Complaint.

In sum, the Defendants Motion is steeped in expeditious inconsistencies. In January 2003, when it was convenient to argue to the Superior Court that ScanSoft could file a "separate lawsuit" and assert its "independent interest" in the intellectual property it purchased from L&H, the Defendants made that argument. Now, when that argument no longer suits the Defendants' purpose, they advance the opposite position to the Court. Such gamesmanship is both patently unfair to ScanSoft and destructive to judicial integrity. Accordingly, Defendants' Motion must be denied. *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d at 13 (judicial estoppel is appropriate whenever a litigant is playing fast and loose with the courts and when self-contradiction is being used to gain unfair advantage).

### III. SCANSOFT HAS STANDING TO SUE THE DEFENDANTS FOR THEIR WRONGFUL USE OF TRADE SECRETS

ScanSoft has standing to sue the Defendants for the misappropriation of its trade secrets and proprietary information. Counts II, III, IV and V of ScanSoft's complaint simply seek redress for the Defendant's on-going and wrongful use of trade secrets and proprietary information ScanSoft purchased from L&H in September 2001. ScanSoft's ability to deny the Defendants the unauthorized use of its intellectual property is both fundamental and self-

evident.[3] *Dickerman Associates v. Tiverton Bottled Gas Company*, 594 F.Supp. 30, 35 (D.Mass. 1984) (trade secret protection is afforded to any idea, process, or compilation of information valuable and useful in one's business and which is not generally known).

The Defendants' assertion that ScanSoft's ability to sue the Defendants hinges on a claim assignment from L&H is a red herring. ScanSoft's ability to prevent the Defendants' wrongful use of its trade secrets and proprietary information does not depend on whether or not L&H assigned its claim against the Defendants to ScanSoft. When ScanSoft purchased L&H's intellectual property, it purchased the right to deny its unauthorized use. ScanSoft is before this Court due to the on-going and continuous wrongful conduct engaged in by the Defendants since December 2001, when ScanSoft purchased the relevant intellectual property from L&H. ScanSoft's standing to assert Counts II, III, IV and V for Defendant's wrongful conduct is part and parcel with its ownership of the relevant trade secrets and proprietary information it purchased from L&H.

## IV. SCANSOFT NEVER RELEASED THE DEFENDANTS FROM LIABILITY FOR THEIR WRONGFUL USE OF SCANSOFT'S TRADE SECRETS

A defendant cannot assert the preclusive effect of an earlier proceeding against a party it sought to exclude from that earlier litigation. *Roche v. Roche*, 32 Mass.App.Ct. 306, 311 (1986) ("There would be something anomalous about giving the defendant the benefit of claim preclusion when that defendant took steps calculated to assure the exclusion of the claim from the prior litigation."). Indeed, a settlement agreement and release entered into by litigants will

---

[3] In addition, as argued in Section I, the Defendants should be judicially estopped from challenging ScanSoft's standing, having asserted to the Superior Court that ScanSoft (i) owned an "independent interest" in the intellectual property it purchased from L&H in September 2001, and (ii) should assert claims based on that independent interest in a "separate suit" such as the matter currently before this Court.

not bind third parties who were prevented from intervening in the settled litigation. *Miller v. Harding*, 1998 WL 892702 *3 (Young, J.) (denying summary judgment where Defendant sought to invoke the preclusive effect of a settlement agreement and release entered into in an earlier proceeding to which the Plaintiff was denied intervention).

The Defendants' contention that ScanSoft is bound by the release L&H provided the Defendants in the course of settling the Superior Court action is without merit. The Defendants cannot both shut ScanSoft out of the Superior Court proceedings and seek to bind ScanSoft as though it were an actual participant in those proceedings and in the subsequent settlement. The Defendants cannot have it both ways. *Roche v. Roche*, 22 Mass.App. Ct. at 311.

Indeed, not only was ScanSoft not a party to that settlement agreement and release, it did not receive a copy of it until February 11, 2004, approximately one year after it was executed by the parties to the Superior Court proceeding. ScanSoft's earlier attempts to obtain a copy of the documents were rebuffed by L&H and the Defendants. Ex. E, Declaration of Lisa Fleming.

When the Defendants objected to ScanSoft's motion to intervene in the Superior Court proceedings, and rebuffed ScanSoft's attempts to have a voice in the settlement process, the Defendants forfeited their opportunity to invoke the preclusive effect of that earlier proceeding and settlement against ScanSoft. *Id.*

Further, the very terms of the settlement agreement entered into in February 2003, by L&H and the Defendants show that those parties did not intend that agreement to bind ScanSoft. The release L&H provided the Defendants was made on behalf of L&H "its officers, directors, employees, administrators, beneficiaries, agents, attorneys and representatives" but not on behalf of ScanSoft which, on the date L&H granted the release, already owned the disputed intellectual property.

In sum, the Defendants cannot both exclude ScanSoft from the Superior Court proceedings and then assert those proceedings have a preclusive effect on ScanSoft's claims. Further, even if that earlier proceeding <u>could</u> have a preclusive effect on ScanSoft (and it does not), it does not, since the settlement agreement and release entered into by L&H and the Defendants is expressly limited to matters predating ScanSoft's December 7, 2001, purchase of L&H's intellectual property. L&H did not intend to release the Defendants for claims asserted by ScanSoft for the Defendant's post-December 7, 2001 wrongful conduct, even if it had the authority to do so, which it did not. *Hermes Automation Tech., Inc. v. Hyundai Electronics Industries Co.*, 915 F.2d 739, 751 n. 10 (summary judgment denied since a settlement agreement and release entered into in prior litigation did not express the litigants' intent to extend the settlement terms to the defendant's parent company). ScanSoft has not released the Defendants.

## V. SCANSOFT'S CLAIMS FOR UNFAIR COMPETITION AND VIOLATIONS OF CHAPTER 93A ARE SUPPORTED IN LAW AND FACT

### A. ScanSoft Has Stated A Viable Claim For Unfair Competition Under Massachusetts Law

ScanSoft alleges unfair competition against VST based upon VST's conduct with respect to the misappropriation of ScanSoft's trade secrets. VST's misappropriation of ScanSoft's trade secrets and confidential information forms a sound basis for the separate claim of unfair competition. The tort of unfair competition has been broadly defined to cover a wide range of business conduct. *Unfair Competition, Restatement (1995)*, Section 1 ("An important function of the law of unfair competition is to delimit the circumstances in which a person may prohibit the appropriation by another of intangible business assets created through an investment of time, money or effort. For example, when a competitor uses the work production of another in competition with the creator, unfair competition is found.") *See also, Schreyer v. Casco*

*Products Corp.*, 190 F.2d 921 (2nd Cir. 1951) (upholding trial court's finding of unfair competition and specifically the use of confidential disclosures that enabled the defendant to produce and market its invention at an earlier date than would have been possible had it relied upon independent research).

Defendants' argument that unfair competition in Massachusetts is limited to "palming off" or the creation of consumer confusion is plain wrong. While palming off and actions which create consumer confusion are illustrative of circumstances warranting a finding of unfair competition, the tort of unfair competition has broader scope. *See Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1331 (Fed. Cir. 1999) ("Unfair competition provides an additional degree of protection above that provided by trademark and trade dress law."); *Pursche v. Atlas Scraper and Engineering Col*, 300 F.2d 467, 483 (9th Cir. 1962) ("In recent years, the scope of [unfair competition] has been extended…to apply to misappropriation…of what equitably belongs to a competitor.) *See also, McCarthy on Trademarks and Unfair Competition* § 1:10 at 1-23 (rev. ed. 2003) (listing examples of unfair competition including theft of trade secrets); *Prosser & Keeton on The Law of Torts*, § 130 at 1013 (5th ed. 1984) ("Unfair competition is now a generic name for a number of related torts involving improper interference with business prospects."). Here, ScanSoft's unfair competition claim is premised on the Defendants' collective actions to misappropriate ScanSoft's trade secrets and use the information to gain unlawful competitive advantage. In addition, Defendant VST's actions in enticing the other Defendants to unlawfully disclose ScanSoft's trade secrets in order to gain an unfair competitive advantage forms a sound basis for ScanSoft's claim of unfair competition against Defendant VST.

B.  **ScanSoft's Claim That Voice Signal Has Violated Massachusetts General Laws Chapter 93A Fits Squarely With The Protections Provided By The Massachusetts Business Protection Act**

General Laws c. 93A § 2 makes unlawful "any unfair acts or practices in the conduct of any trade or commerce." *M.G.L. Chapter 93A*. In determining what constitutes an unfair act, Massachusetts courts have been guided by the Federal Trade Commission. *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 788 (1986) (relying on FTC interpretation, the Massachusetts Supreme Judicial Court has stated that the following are considerations to be used in determining whether a practice is to be deemed unfair: (1) whether the practice...is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; (3) causes substantial injury to competitors or other businessmen. Here, ScanSoft alleges that the defendant VST's "knowing and willful conduct of inducing the individual defendants to breach their covenants [not to disclose confidential and trade secret information] constitutes a knowing and willful use of an unfair method of competition." *Complaint* at ¶ 80. Massachusetts courts have frequently found violations of Chapter 93A for such unauthorized disclosure of confidential information. *Canha d/b/a/Gymboree of Action v. LaRoche*, 1996 WL 1186959 *6, 7, (court denied former employees' motion for summary judgment where former employer brought 93A claim alleging that employee was implicitly bound by nondisclosure/noncompetition agreement.); *Peggy Lawton Kitchens, Inc. v. Hogan*, 18 Mass. App. 937, 940 (1986) (court found 93A liability where defendant's use of plaintiff's trade secret was made when he was no longer an employee of plaintiff); *Augat, Inc. v. Aegis*, Inc., 409 Mass. 165, 177 (1991) (former managerial employees of plaintiff company violated 93A by soliciting other employees to join start up entity). Neither does Massachusetts law bar a competing company from liability under Chapter 93A in aiding an

employee in a breach of the employee's fiduciary duty. *Hanover Ins. Co. v. Sutton*, 46 Mass. App.Ct. 153, 174 (1999) (court rejected defendant company's suggestion that it could not be liable under 93A for inducing an employee to breach his fiduciary duty). Both Defendant VST's and the individual Defendants' actions to unlawfully disclose confidential trade secrets belonging to ScanSoft state a claim for violation of Chapter 93A.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion To Dismiss Counts II, III, IV and V Of The Complaint should be denied.

Dated: March 26, 2004

SCANSOFT, INC.,
By its attorneys,

_____
Lee Carl Bromberg, BBO #058480
Robert Asher, BBO #022865
Julia Huston, BBO #562160
Lisa M. Fleming, BBO #546148
John F. Ward, BBO #646689
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
(617) 443-9292

### Certificate of Service

I, John F. Ward, hereby certify that on this 26th day of March, I have served a copy of the foregoing by hand upon all counsel of record.

_____
John F. Ward

02639/00509 302778.1