UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VOICE SIGNAL TECHNOLOGIES, INC., ) <br> LAURENCE S. GILLICK, ROBERT S. ) <br> ROTH, JONATHAN P. YAMRON, and ) <br> MANFRED G. GRABHERR ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 04-10353-PBS <br><br> **Request For Oral Argument** |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS II, III, IV AND V OF THE AMENDED COMPLAINT

### INTRODUCTION

ScanSoft, Inc. ("ScanSoft") opposes Defendants' second Motion to Dismiss Counts II, III, IV, and V of the Amended Complaint.[1] In moving to dismiss again, Defendants continue their relentless effort to deprive ScanSoft of its day in court, and to conceal their theft and unlawful use of ScanSoft's trade secrets, as well as to engage in unfair competition and deceptive business practices. Defendants have been warned by the Court that these matters will not be decided on a motion to dismiss or in the absence of discovery.[2] Defendants' efforts to avoid

---

[1] ScanSoft also alleges a count of patent infringement in the Amended Complaint against Defendant Voice Signal Technologies, Inc.

[2] At a hearing on April 14, 2004, the Court indicated it was not going to resolve these issues on a Motion to Dismiss or before discovery in the case. A copy of the Transcript of the hearing is attached as Exhibit 1 to Defendants' Declaration of Paul E. Bonanno filed with Defendants' Memorandum in Support of Motion To Dismiss Counts II, III, IV, and V of the Amended Complaint. See Tr., p. 4, 8.

litigation of these claims on the merits should be rejected by the Court. In its Amended Complaint, ScanSoft has specifically addressed the Court's concern that it identify its claims as arising from unlawful activity occurring <u>after</u> ScanSoft acquired the trade secret assets from Lernout & Hauspie ("L&H"). ScanSoft's Amended Complaint alleges legitimate intellectual property rights which it acquired at great expense and which it intends to protect despite Defendants' desperate attempts to keep this Court from making a substantive determination of the matters in dispute.

## FACTS

In September 2001, L&H, then in Chapter 11 bankruptcy proceedings in New York, brought suit in Massachusetts Superior Court against Defendant Voice Signal Technologies, Inc. ("VST") and the individual defendants Gillick, Roth and Yamron (collectively "Individual Defendants") seeking an injunction and alleging misappropriation of certain trade secrets belonging to L&H, unfair competition and violation of Chapter 93A.[3] In October 2001, the Superior Court granted L&H's motion for a preliminary injunction against the Defendants enjoining them from using the speech recognition trade secrets. *Exhibit 1* (Order for Temporary Injunction dated October 11, 2001).[4] In December 2001, Plaintiff ScanSoft bought from L&H a bundle of speech technology assets, know-how, trade secrets and good will, some of which were the subject of the Superior Court litigation. Thus, since December 2001, ScanSoft has owned the

---

[3] L&H filed its lawsuit against all the Defendants except Manfred Grabherr. Mr. Grabherr is a defendant to the instant action based upon his work on the Phoenix Project at L&H. The intellectual property assets associated with the Phoenix Project were transferred to ScanSoft in December 2001. Mr. Grabherr is included as an Individual Defendant in the instant litigation.

[4] Exhibits referenced in this Opposition are attached to the Declaration of Lisa M. Fleming filed herewith.

intellectual property assets that were the subject of the Superior Court litigation between Defendants and L&H.

Since December 2001 and to the present, ScanSoft has sought to assert its claims to protect the intellectual property assets it acquired from L&H, and accordingly, in January 2003, ScanSoft moved to intervene in the Superior Court litigation. The Defendants opposed ScanSoft's motion to intervene on the grounds that it had already settled with L&H and any claims ScanSoft had could be brought in a separate lawsuit. The Superior Court agreed. In January 2004, ScanSoft brought this action, just as Defendants had suggested, alleging misappropriation of trade secrets, unfair competition and unfair and deceptive business practices against the Defendants, and a separate claim for patent infringement against VST. In April 2004, following a hearing on Defendants' Motion to Dismiss ScanSoft's claims of trade secret misappropriation, unfair competition and violations of Chapter 93A, the Court dismissed those claims but permitted ScanSoft to amend its complaint and instructed ScanSoft to be clear that it was alleging trade secret violations from the time that ScanSoft owned the trade secrets. Taking into account the Court's concerns, ScanSoft moved to amend its complaint, and on June 2, 2004, the Court allowed ScanSoft's motion to amend the complaint. In sum, all of the claims ScanSoft asserts in its Amended Complaint are for trade secrets relating to speech recognition technology unlawfully used by the Defendants since the time that ScanSoft became the owner of these trade secrets.

**ARGUMENT**

I. **SCANSOFT'S AMENDED COMPLAINT STATES CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS, UNFAIR COMPETITION AND VIOLATIONS OF MASSACHUSETTS BUSINESS PROTECTION LAWS UPON WHICH RELIEF MAY BE GRANTED**

In considering a motion to dismiss, the Court begins "by accepting all well-pleaded facts as true, and draws upon all reasonable inferences in favor of the nonmovant. *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962, 971 (1st Cir 1993). The complaint will be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984). ScanSoft's claims for misappropriation of trade secrets, unfair competition and violations of Massachusetts General Laws Chapter 93A are each supported by material facts alleging <u>continued</u> wrongful conduct by the defendants and each count states a claim upon which relief may be granted.

The Federal Rules of Civil Procedure explicitly provide for notice pleading which permits the plaintiff to initiate suit with a short statement of the claim for relief. *Fed. R. Civ. P. 8(a)(2).* Here, ScanSoft has specifically alleged that it (i) owns rights in subject matter that is protectable as a trade secret *(Amended Complaint ¶ 36)* – an allegation not disputed by Defendants[5], (ii) has taken steps adequate under the circumstances to protect and preserve the subject matter as a trade secret *(Amended Complaint ¶ 38);* and (iii) Defendants have acquired

---

[5] In its Opposition to ScanSoft's Motion to Intervene in the Massachusetts Superior Court litigation, Defendants admitted that ScanSoft has rights in its intellectual property and could bring an independent claim for trade secret misappropriation. See Defendants' Opposition at 3, attached hereto as *Exhibit 2*. More recently, during a hearing on April 14, 2004, Defendants were silent when this Court stated that no one was disputing that ScanSoft has independent rights in its intellectual property. See Transcript at 7-8, attached as Exhibit 1 to Defendants' Declaration of Paul E. Bonanno filed with Defendants' Memorandum of Law In Support Of Motion To Dismiss Counts II, III, IV, and V of Amended Complaint.

the trade secrets through improper means *(Amended Complaint ¶¶ 39, 40)*. ScanSoft's Amended Complaint more than satisfies the requirements of notice pleading and should be allowed to stand. *Ramirez v. Garcia,* 898 F.2d 224, 227 (1st Cir.1990) (the purpose of pleading is to give parties adequate notice of claims and the grounds on which they rest). Nor can Defendants claim they are prejudiced by ScanSoft's pleading as these defendants have been party to litigation claiming these specific allegations since 2001. They are simply in no position to claim surprise or prejudice. *Bessette v. Avco Fin. Services, Inc.,* 230 F.3d 439, 446 (1st Cir. 2000) (defendants understood the theories of relief sought by plaintiff and were therefore not unduly prejudiced by the pleading).

II. **SCANSOFT HAS PROPERLY PLEADED ALLEGATIONS OF ONGOING MISAPPROPRIATIONS BY THE DEFENDANTS**

ScanSoft's Amended Complaint specifically alleges that since it acquired from L&H certain trade secrets related to speech recognition technology for small platforms, the Defendants have made continued unlawful use of those trade secrets. *Amended Complaint ¶ 40* ("ScanSoft has independent claims for trade secret misappropriation against the Defendants to the extent Defendants are continuing to unlawfully disclose and use for their own benefit, the trade secrets acquired by ScanSoft in and after December 2001."). Similarly, ScanSoft's Amended Complaint alleges that it has taken steps to protect and preserve its trade secrets and that Defendants have unlawfully used ScanSoft's trade secrets. *Amended Complaint ¶¶ 38, 40.* In support of its allegations, ScanSoft relies upon the September 2001 press release announcing VST's E.L.V.I.S. technology ("E.L.V.I.S. press release") to allege that Defendants have misappropriated ScanSoft's trade secrets. *Exhibit 3* (E.L.V.I.S. press release).

E.L.V.I.S. is an acronym for Embedded Large Vocabulary Interface System, designed to solve the problem of putting speech recognition capability on a small platform such as a cell phone. This problem has been a challenge in the industry for years. The trade secret technology purchased by ScanSoft from L&H in December 2001 included software techniques, algorithms and know-how that provided a basis for solving the small platform problem.

VST's E.L.V.I.S. press release of September 2001 describes speech recognition capabilities including "a vocabulary of several thousand words" which suspiciously match the capabilities of ScanSoft's speech recognition products. *Exhibit 3* (E.L.V.I.S. press release at ¶ 4); *Amended Complaint ¶ 31*. This evidence of matching speech recognition technology for small platform applications establishes a sound, good faith basis for ScanSoft's claim of continuing trade secret misappropriation.

VST's announcement of E.L.V.I.S. technology leads to the unmistakable inference that VST continues to develop the technologies described in the press release for commercial purposes. Indeed the E.L.V.I.S. press release expressly declares that VST would bring the E.L.V.I.S. technology to the marketplace in the future. *Exhibit 3* (E.L.V.I.S. press release, p. 2, "The E.L.V.I.S. platform is expected to be available in Q4 2001.") And the facts have borne out the unmistakable inference that VST continues to use ScanSoft's trade secrets: as recently as three weeks ago, on June 7, 2004, VST publicly confirmed that it continues to use the capabilities described in the E.L.V.I.S. press release. *See Exhibit 4* (Copy of *Boston Globe* article dated June 7, 2004 describing "speech to text conversion of up to 30,000 words…[with] just 1 megabyte of memory…[in] cellphones.") The connection is clear: following the arrival of the Individual Defendants from L&H, VST announced E.L.V.I.S. as a breakthrough in small platform speech recognition technology. Now, in its June 2004 press statements, VST has

announced it is ready to come to market with small platform speech recognition technology. Such circumstantial evidence is more than sufficient to establish a good faith basis to assert a claim for continuous misuse and misappropriation of trade secrets. *See, Sikes v. McGraw-Edison Co.*, 655 F.2d 731 (5th Cir. 1982) (use of trade secret found when the trade secret is used to permit a device to be marketed earlier than otherwise would have been possible).

### III. SCANSOFT'S CLAIMS FOR UNFAIR COMPETITION AND VIOLATIONS OF CHAPTER 93A ARE SUPPORTED IN LAW AND FACT

#### A. ScanSoft Has Stated A Viable Claim For Unfair Competition Under Massachusetts Law.

VST's continuing misappropriation of ScanSoft's trade secrets and confidential information for its own benefit forms a sound basis for the separate claim of unfair competition. The tort of unfair competition has been broadly defined to cover a wide range of improper business conduct. *Unfair Competition, Restatement (1995)*, Section 1 ("An important function of the law of unfair competition is to delimit the circumstances in which a person may prohibit the appropriation by another of intangible business assets created through an investment of time, money or effort. For example, when a competitor uses the work production of another in competition with the creator, unfair competition is found.") *See also, Schreyer v. Casco Products Corp.*, 190 F.2d 921 (2nd Cir. 1951) (upholding trial court's finding of unfair competition and specifically the use of confidential disclosures that enabled the defendant to produce and market its invention at an earlier date than would have been possible had it relied upon independent research).

Defendants' argument that unfair competition in Massachusetts is limited to "palming off" or the creation of consumer confusion is plain wrong. While palming off and actions which create consumer confusion are illustrative of circumstances warranting a finding of unfair

competition, the tort of unfair competition has broader scope. *See Al-Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1331 (Fed. Cir. 1999) ("Unfair competition provides an additional degree of protection above that provided by trademark and trade dress law."); *Pursche v. Atlas Scraper and Engineering Col*, 300 F.2d 467, 483 (9th Cir. 1962) ("In recent years, the scope of [unfair competition] has been extended…to apply to misappropriation…of what equitably belongs to a competitor). *See also, McCarthy on Trademarks and Unfair Competition* § 1:10 at 1-23 (rev. ed. 2003) (listing examples of unfair competition including theft of trade secrets); *Prosser & Keeton on The Law of Torts,* § 130 at 1013 (5th ed. 1984) ("Unfair competition is now a generic name for a number of related torts involving improper interference with business prospects."). Here, ScanSoft's unfair competition claim is premised on the Defendants' collective actions to misappropriate ScanSoft's trade secrets and use the information to gain unlawful competitive advantage. In addition, Defendant VST's actions in enticing the other Defendants to unlawfully disclose ScanSoft's trade secrets in order to gain an unfair competitive advantage forms a sound basis for ScanSoft's claim of unfair competition against Defendant VST.

    **B.**    **ScanSoft's Claim That Voice Signal Has Violated Massachusetts General Laws Chapter 93A Fits Squarely With The Protections Provided By The Massachusetts Business Protection Act.**

General Laws c. 93A § 2 makes unlawful "any unfair acts or practices in the conduct of any trade or commerce." *M.G.L. Chapter 93A*. In determining what constitutes an unfair act, Massachusetts courts have been guided by the Federal Trade Commission. *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 788 (1986) (relying on FTC interpretation, the Massachusetts Supreme Judicial Court has stated that the following are considerations to be used in determining whether a practice is to be deemed unfair: (1) whether the practice…is within at least the penumbra of some common-law, statutory or other established concept of unfairness;

(2) is immoral, unethical, oppressive, or unscrupulous; (3) causes substantial injury to competitors or other businessmen.  Here, ScanSoft alleges that Defendant VST's "knowing and willful conduct of inducing the individual defendants to breach their covenants [not to disclose confidential and trade secret information] constitutes a knowing and willful use of an unfair method of competition."  *Complaint* at ¶ 59.  Massachusetts courts have frequently found violations of Chapter 93A for such unauthorized disclosure of confidential information.  *Canha d/b/a/Gymboree of Action v. LaRoche,* 1996 WL 1186959 *6, 7, (court denied former employees' motion for summary judgment where former employer brought 93A claim alleging that employee was implicitly bound by nondisclosure/noncompetition agreement.); *Peggy Lawton Kitchens, Inc. v. Hogan,* 18 Mass. App. 937, 940 (1986) (court found 93A liability where defendant's use of plaintiff's trade secret was made when he was no longer an employee of plaintiff); *Augat, Inc. v. Aegis,* Inc., 409 Mass. 165, 177 (1991) (former managerial employees of plaintiff company violated 93A by soliciting other employees to join start up entity).  Neither does Massachusetts law bar a competing company from liability under Chapter 93A when it aids an employee in a breach of the employee's fiduciary duty.  *Hanover Ins. Co. v. Sutton,* 46 Mass. App.Ct. 153, 174 (1999) (court rejected defendant company's suggestion that it could not be liable under 93A for inducing an employee to breach his fiduciary duty).  Both Defendant VST's and the Individual Defendants' actions to unlawfully disclose and exploit confidential trade secrets belonging to ScanSoft establish a claim for violation of Chapter 93A.

## CONCLUSION

For the foregoing reasons, the Defendant's second Motion To Dismiss Counts II, III, IV and V Of The Amended Complaint should be denied.

Dated: June 28, 2004                    SCANSOFT, INC.,
                                        By its attorneys,


                                         /s/ Lisa M. Fleming
                                        Lee Carl Bromberg, BBO #058480
                                        Robert Asher, BBO #022865
                                        Julia Huston, BBO #562160
                                        Lisa M. Fleming, BBO #546148
                                        John F. Ward, BBO #646689
                                        BROMBERG & SUNSTEIN LLP
                                        125 Summer Street
                                        Boston, Massachusetts 02110-1618
                                        (617) 443-9292

02639/00509   317935.1