UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
--------------------------------
SCANSOFT, INCORPORATED,         :      Civil Action
                     Plaintiff  :      No. 04-10353-PBS
                                :
           V.                   :      Courtroom No. 13
                                :      1 Courthouse Way
VOICE SIGNAL TECHNOLOGY,        :      Boston, MA 02210-3002
                     Defendant  :      2:30 p.m., Wednesday
--------------------------------       April 14, 2004
```

Scheduling Conference

**RECEIVED**

MAY 2·4 2004

Before:     THE HONORABLE PATTI B. SARIS,
            UNITED STATES DISTRICT JUDGE

BROMBERG & SUNSTEIN

APPEARANCES:

Bromberg & Sunstein, LLP,
    (by Lee Carl Bromberg, Esq. and Lisa M. Fleming, Esq.),
    125 Summer Street, Boston, MA 02110-1618,
    on behalf of the Plaintiff.

Choate, Hall & Stewart,
    (by Robert S. Frank, Jr., Esq. and Paul D. Popeo, Esq.),
    53 State Street, Exchange Place, Boston, MA 02109,
    on behalf of the Defendant.

Marie L. Cloonan
Official Court Reporter
1 Courthouse Way - Suite 5209
Boston, MA 02210-3002 - (617)439-7086
Mechanical Steno - Transcript by Computer

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

2

1          THE CLERK:  The case of Scansoft, Incorporated v.

2    Voice Signal Technology, Incorporated, Civil Action No.

3    04-10353, will now be heard before this Court.

4          Will counsel please identify themselves for the

5    record.

6          MS. FLEMING:  Lisa Fleming for the plaintiff

7    Scansoft, with Lee Bromberg.

8          MR. FRANK:  Robert Frank and Paul Popeo for the

9    defendants.

10          THE COURT:  Let me just turn to you.  I mean, in a

11    way, I view this as a -- I've read everything -- as a

12    skirmish.  I think the defendants have made a decent point,

13    which is you only get what you get after you purchase the

14    assets and the complaint doesn't make it clear.

15          On the other hand, if I dismiss it, it's without

16    prejudice to them repleading it.

17          So, let me just ask you this.  Are you referring to

18    misappropriation of trade secrets that occurred after the

19    purchase of the assets?

20          MS. FLEMING:  Yes, your Honor, if I may.  That is

21    exactly what we're referring to.  And, the complaint itself

22    does allege continuing violations post the transfer of the

23    assets.

24          THE COURT:  It just isn't clear.  I understand why

25    they were upset.  It just regurgitated an earlier complaint.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.  800-626-6313

1   Why don't you revise it to make it clear?

2          MS. FLEMING:  We can certainly revise it to --

3          THE COURT:  If they do that, what is the challenge?

4   This is a skirmish.  Because, even if I grant it, it's going

5   to be without prejudice to them doing that.

6          MR. FRANK:  I actually -- our side is actually

7   counting on the simple principle that such an allegation

8   cannot be made in good faith.  That in order to sustain such

9   a claim, it would have to be alleged that a year after the

10  defendants left the employ of Lernout and Hauspie, a dead

11  company, that something that was transferred to Scansoft,

12  was, A, a secret, still, even though there had been

13  thousands of employees who had left the company.  B, that

14  that secret had substantial value --

15         THE COURT:  Can I say?  That may be true that

16  ultimately they can't prove it out or you could from Rule

17  11.  But, it's strikes me that they're alleging that it --

18  no one's in disagreement, essentially, that they can't sue

19  for something that wasn't theirs.

20         And so, are you saying that you have evidence in

21  your possession that there was a misappropriation of trade

22  secrets that occurred after you acquired the intellectual

23  property?

24         MS. FLEMING:  What we have as evidence -- and it is

25  only limited to one press release that is a release put out

4

1    by the defendant company Voice Signal, that clearly

2    identifies a product, that has a whole list of

3    functionalities that are very, very similar, strikingly, to

4    two confidential products that -- projects that are owned

5    now by Scansoft.

6              THE COURT:  All right.

7              Do you have information that the trade secrets were

8    used after you acquired your product and that they were kept

9    confidential, and that sort of thing?

10             MS. FLEMING:  Again, what we know is that the trade

11   secrets were used to develop ELVIS.

12             THE COURT:  Let me say this.  I'm not going to

13   resolve this on a Motion to Dismiss.  I'm just not going to

14   do it.  And, that's why I view this as a skirmish.

15             I think your point is well taken.  They cannot sue

16   for anything that predates your acquisition.  If they've got

17   a good faith basis.  So, I'm allowing the Motion to Dismiss

18   without prejudice.

19             If you want to replead it to be very specific,

20   you'll do what you need to do on a substantive Motion to

21   Dismiss.  I doubt I'll resolve it on that.  Frankly, I don't

22   want -- I have too much to do.  I'm swamped.  I mean, I will

23   say that.  I am swamped with a lot of megacases, patent

24   cases, multi-district litigation cases.  Every criminal case

25   I have is going to trial.  So, I can't do these little

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

5

1    things piecemeal.  I can't.

2          So, it doesn't -- you have a big patent case that's

3    going to go forward.  Right?

4          There's a patent dispute.

5          MS. FLEMING:  Yes, there is, your Honor, yes.

6          MR. FRANK:  Yes.

7          THE COURT:  So, it's not worth it to me to spend

8    this amount of time duking it out over a Motion to Dismiss.

9          MR. FRANK:  Let me say two things, if I might.

10   And, I understand where this is going.

11         THE COURT:  Yes.

12         MR. FRANK:  What was just described to you is a

13   press release issued prior to their acquisition of these

14   assets and all they say is that the product in question has

15   similar functionality to something that they were working

16   on.

17         THE COURT:  I tell you what.  This is what we're

18   going to do.  I'm giving you your relief.  I'm granting the

19   Motion to Dismiss without prejudice.

20          You think about whether or not, under Rule 11, and

21   based on the information you have, you have a sufficient

22   basis for repleading it for a violation of your trade

23   secrets that post-dated the acquisition of those trade

24   secrets.  I leave it up to you to decide whether you've got

25   it.  And, it doesn't have to be right away.  Maybe it will

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

6

1    during the course of discovery you figure out what happened.

2    MS. FLEMING: Well, that is part of the strategy,

3    certainly, is to go forward with discovery and to get some

4    more information. Obviously, when you're dealing with trade

5    secrets, there is information that is kept confidential.

6    Fortunately, it appears that the defendants have

7    kept it confidential within its company.

8    THE COURT: Maybe -- you know -- by the way, you

9    probably all don't know this. Do you know I am the Lernout

10    and Hauspie judge?

11    (Laughter.)

12    THE COURT: I have written eight opinions about the

13    securities fraud issues having gone on with Lernout and

14    Hauspie.

15    And, I've got the Dictaphone people in my court and

16    the Dragon people in my court, and the trustees of the

17    trustees in my court. I've got them all. I am looking

18    forward to learning about the intellectual property that

19    spurred on this problem. So, I actually know something

20    about the company and the problems that its had over the

21    years.

22    You make a decision. I'm allowing your Motion to

23    Dismiss without prejudice.

24    You decide whether you want to replead and when in

25    good faith you feel you can replead, if at all.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

7

1          We still have a major patent case to get through.

2     So, let's set up a scheduling conference for it.

3          MS. FLEMING:  Your Honor, if I may, I do just want

4     to be clear with the Court that this complaint is about

5     continuing, continuing and ongoing violations.  It's not

6     about the time period that Lernout and Hauspie owned the

7     property.  And, I did just want to be clear about that.

8          THE COURT:  Well, then, you'll have to make very

9     clear in your complaint what it is.  Because, I do

10    understand.  It pretty much was a copy.  They have rights,

11    too, and that they weren't resolved through the bankruptcy.

12    They have separate intellectual property rights and you

13    weren't denying that -- I know that -- in your papers.

14          So, you just have to be really clear in your mind,

15    you've got a good faith basis for alleging misappropriation

16    or misuse of trade secrets that post-dated the acquisition

17    of the intellectual property.  If you've got it, plead it.

18    If you want to wait until you have some discovery, do it.

19    Because, there's going to be discovery on the patent case.

20          MR. FRANK:  Let me just, if I may, your Honor, and

21    I don't want to try your patience.  Two things.

22          First, these cases are not to be brought, in my

23    judgment, without an adequate pleading basis so that

24    discovery can be conducted in an effort to find a secret.

25          THE COURT:  There's a patent case.  So, there's

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

8

1    going to be discovery on the patent.

2            MR. FRANK:  Absolutely.

3            THE COURT:  So, if they find technologies that they

4    consider to be a breach of the trade secrets, all is fair.

5            MR. FRANK:  If the discovery chasing the patent

6    were to reveal --

7            THE COURT:  That's all I'm talking about.

8            MR. FRANK:  Okay.

9            THE COURT:  So, tell me about this patent.  What

10    are the issues?  Is there any kind of infringement issue

11    or validity?  What are the issues?

12            MR. FRANK:  There is an infringement issue and

13    there is a validity issue and, as discovery proceeds, there

14    may be other issues.

15            THE COURT:  Are there Markman issues, right away?

16    Do we know claim construction?

17            MR. FRANK:  There will be Markman issues.

18            THE COURT:  All right.  So, let's do our scheduling

19    conference.

20            MR. FRANK:  Fine.

21            THE COURT:  Why bring you back.  Right?

22            MR. FRANK:  I should say, so that nobody is

23    blindsided here, that there may be more patents in play when

24    the pleadings are complete that are in play right now.

25            THE COURT:  Do you have some of your own?  Is that

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1    it?

2              MR. FRANK:  Yes.

3              THE COURT:  And, are you cross-claiming --

4    counterclaiming?

5              MR. FRANK:  I don't want to make that decision

6    categorically.  But, I believe that that should be -- it

7    would be a reasonable assumption that there would be more

8    than just the one patent that you see right now.

9              THE COURT:  Well, let me ask you this.  When would

10   you want to be amending your pleading so that we can do

11   discovery all at once, rather than piecemeal?

12             MS. FLEMING:  Well, we will be amending.

13             THE COURT:  Oh, you're amending.

14             MS. FLEMING:  And, I will need an answer,

15   obviously.

16             THE COURT:  Oh, you don't have patents of your own

17   that you're asserting against them?

18             MS. FRANK:  No --

19             MS. FLEMING:  They haven't answered the complaint

20   because of the Motion to Dismiss, your Honor.

21             MR. FRANK:  So, actually, what has to happen is a

22   decision has to be made with respect to repleading.  If they

23   tell us that they're not going to replead, we'll file

24   an answer within ten days and answer any counterclaim, if

25   any, within ten days after that.  If they do replead, we may

1    be back here on another motion.

2         THE COURT:  No.  That's what I'm telling you I'm

3    not going to do.  This case has got to go forward.

4         Now, what are you going to be counterclaiming on?

5         MR. FRANK:  Oh, there may be a patent infringement

6    counterclaim, on which --

7         THE COURT:  That's what I'm asking.  So, it's your

8    patent --

9         MR. FRANK:  Yes.

10        THE COURT:  Yes, yes.  Okay.

11        MR. FRANK:  That's what I said, I think.

12        THE COURT:  So, that's why -- when would you --

13   you're going to answer and file a counterclaim.  When can

14   you do it?  Just tell me.

15        MR. FRANK:  We'll file an answer ten days after we

16   have a complaint to --

17        THE COURT:  No, you've got a complaint.  I've

18   knocked out their counts.

19        MR. FRANK:  Oh, okay.  I'll file -- we'll file an

20   answer in ten days.

21        THE COURT:  Fine.  And a counterclaim?

22        MR. FRANK:  I beg your pardon?

23        THE COURT:  And a counterclaim?

24        MR. FRANK:  If any, yes.

25        THE COURT:  If any.  All right.  So, that's where

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.  800-626-6313

1  it's at.

2           MS. FLEMING:  And, we will be amending --

3           THE COURT:  It's your decision, when and if to

4  amend.  That's your decision.  At some point, it gets too

5  late and I say no.  But, we're not even close to that point

6  in time.

7           All right.  So, you're going to counterclaim.

8           Now, how long will you need in discovery?

9           MR. FRANK:  May I ask?  It's not for me to ask the

10 questions --

11          THE COURT:  No, sure.  Go ahead.

12          MR. FRANK:  -- back to the Court.  But, when would

13 you ordinarily reach this case for trial and, if you tell us

14 that, we can work it back from there and come up with a

15 reasonable schedule.

16          THE COURT:  I actually don't do it that way.  I

17 usually figure out how long you need on discovery.  In

18 dealing with a patent case, I then need to sort of fact

19 discovery and expert discovery and I need -- there's almost

20 always a Motion for Summary Judgment.  Almost always.

21          MR. FRANK:  Yes, I understand.

22          THE COURT:  And --

23          MR. FRANK:  I would say fairly arbitrarily six

24 months for discovery.

25          THE COURT:  Do you think that's --

12

1          MR. BROMBERG:  On our side, your Honor, I think six

2     months for fact discovery, followed by expert witness period

3     and, then, fitting any Markman determination and/or

4     dispositive motions into this schedule.

5          THE COURT:  Will Choate be doing the patent case?

6          MR. FRANK:  Yes.

7          THE COURT:  So, let me just -- so, fact discovery,

8     you want to do the end of January, 2005?  Is that too far

9     out?

10          MS. FLEMING:  That's fine, your Honor.

11          THE COURT:  I think it is too far out.  So, let's

12     say November 5th, end of fact discovery.  Plaintiff's expert

13     designation 12-3.  Defendant's expert designation, 1-8.

14     Expert discovery deadline, 2-25.  Summary judgment and

15     Markman would be 3-25.  Opposition 4-15.  And, hearing --

16     there's almost inevitably a reply and a surreply.  So, we'll

17     just put this hearing into sometime in late May?

18          THE CLERK:  May 26th at 2 p.m.

19          MR. FRANK:  Your Honor, I'm assuming that it's your

20     usual practice to have the Markman hearing only after expert

21     reports are submitted, which is implicit in the schedule?

22          THE COURT:  I don't have an inflexible rule.  In

23     general, I've been merging summary judgment and Markman

24     because I understand the issues better.

25          Sometimes counsel are willing to persuade me that

13

1    if I just construe one claim that will settle the case --

2    if that's so, I'd consider it.  But, I've increasingly found

3    that even when I do that, it doesn't settle.  I don't know

4    what to say.  I generally will set a trial date after I

5    resolve the motions for summary judgment.

6          MR. FRANK:  I fully understand the reasoning.

7    And, I'd like to understand how these claim constructions

8    fit with the true issues in the case, which tend to get

9    smoked out on motions for summary judgment.

10         The counterveiling consideration, and I'm sure you

11   know this, is that if you do it that way, the expert reports

12   have to assume alternate claim constructions --

13         THE COURT:  Yes, they do.

14         The other way -- I haven't done it -- is I end up

15   having to construe a million claims, only some of which

16   become relevant in the motion for summary judgment.

17         MR. FRANK:  Yeah.  Okay.

18         THE COURT:  I've tried both ways and it makes more

19   sense from my point of view to understand why it matters.

20         MR. FRANK:  Yes.  I understand.

21         THE COURT:  And, I understand -- occasionally

22   what's happened is I split a baby and I don't accept either

23   side's claim construction,  And, they're right, it's sort of

24   a waste of time to have to go back and rebrief for summary

25   judgment.  But, usually, it's not a full rebriefing.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

14

1          MR. FRANK:  Let me make one suggestion, if I may.

2          THE COURT:  Yes.

3          MR. FRANK:  And, that is that the parties be

4    required -- the plaintiff, one date and, then, the defendant

5    at a later date, so that they meet each other, to exchange

6    sort of their claim constructions, their proposed claim

7    constructions in advance of the serving of the expert

8    reports, so that we may have two conflicting constructions

9    of the given claim, but at least the expert reports meet

10   each other, rather than having them not meet each other.

11         THE COURT:  That makes some sense.  As you probably

12   know, there's a local rule in California that makes you do

13   that within -- in the beginning.  I'm told that's only met

14   with some mixed success.  But, before the requirement for

15   the experts, do you want to have a -- like a -- oh, do you

16   want to just say a September date in there?  Maybe September

17   13th, exchange claim constructions?

18         MR. FRANK:  Yes.

19         THE COURT:  And, the only reason I'm a little

20   reluctant on that is I found that you all can agree there

21   are a few things you disagree on, and then I find that

22   there's more when I get to summary judgment.

23         (Laughter.)

24         THE COURT:  But I think that's a very useful

25   suggestion.  At least the experts can address what you know

1    is in conflict and, then, if more comes up, more comes up.

2         MR. FRANK:  Yes.

3         THE COURT:  So, why don't we do a claim

4    construction.  I don't even need to see it, I don't -- well,

5    why don't you file with the Court.

6         MR. FRANK:  I think sometime prior to that, we

7    should at least consult with each other to make sure that we

8    understand which claims need -- which claim terms need to be

9    construed.

10        THE COURT:  Yeah.  The disputes over claim terms.

11   Maybe you'll file, each, we'll exchange constructions and

12   then file with the Court, you know, claims in dispute.

13        MR. FRANK:  Yes.

14        THE COURT:  Your experts can address that.  You'll

15   do that by 9-13.  That's a very excellent suggestion.

16        Mediation, is there a chance of cross-licensing?

17   Do you all cross-license to each other?

18        MR. FRANK:  Very unlikely, I think.  I mean, I

19   never say no.  But, this is very unlikely.

20        THE COURT:  Does your company license at all?

21        MR. FRANK:  Does ours?

22        THE COURT:  Yes.

23        MR. FRANK:  It has not in the past.

24        THE COURT:  Does your company license?

25        MR. BROMBERG:  Well, we do, under appropriate

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.  800-626-6313

1    circumstances.  But, in this one, we don't know what the

2    defendants are going to throw against us.  They say they may

3    or may not assert a counterclaim.  So, we're not sure what

4    the dimensions of the dispute are at this point.

5         THE COURT:  Well, I won't press right now.  I think

6    it's just really too early on it.

7         But, at some point, how do you want to handle

8    mediation?  When do you want to go to some sort of a

9    mediator to talk about it?

10        MR. FRANK:  Let me say this.  It would seem to me

11   that there's a threshold question, which is, after all the

12   parts are visible, is one side or the other willing to

13   license the other on some terms?

14        If the answer to that is no, then, it doesn't

15   strike me that there's likely to be room for mediation here.

16   It's likely that -- if the answer to that is yes, in

17   principle, on some term, then, probably it makes sense to

18   mediate and --

19        THE COURT:  I'm not going to press that right now.

20   But, I sure will when we hit the summary judgment and

21   Markman point.

22        MR. FRANK:  Sure.

23        THE COURT:  And, the other thing I will say is,

24   I've done one of these with Mr. Bromberg before.  I don't

25   know that I've done one with you.  I find it really useful

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1    to actually have a tutorial on the technology.  You all

2    assume a lot more knowledge than I usually have about the

3    science.

4         And, I just had a couple where, literally, I spent

5    the afternoon on the Internet trying to find what just the

6    basic terms meant, with my medical dictionary on my lap, and

7    prints to the Internet to find out -- you know, people -- I

8    have certain lay understandings of terms, but that's not

9    good enough for these cases.  And so, sometimes it's helpful

10   to put a live witness on.  Sometimes you can do it through a

11   video.  Sometimes just, if it's simple enough, I suppose you

12   could just have an affidavit, but something.

13        MR. FRANK:  Let me, if I may, because I've done

14   this in in a couple of other cases.  This is a case where I

15   think the technology is accessible enough that Mr. Bromberg

16   and I could present it to you, the core facts.  I mean the

17   core technological facts are relatively accessible and

18   relatively -- and I doubt that as to the core facts that

19   there's very much dispute as to how these things work.

20        THE COURT:  But, I sort of like to understand the

21   science in my gut.  So, for example, the one that I did

22   understand, I understood curling iron --

23        (Laughter.)

24        THE COURT:   -- and I understood the Gillette v.

25   Schick.  I knew what three versus four razorblades meant.

1    So, I was okay with that.

2         But, then, for example, I had Pause v. TiVo. And

3    so, you would think, well, that would be pretty

4    straightforward, you know, how you go about pausing and

5    understanding the technology, the computer's logic for

6    pausing and how they went about doing that, and whether they

7    were the same.  But, I actually found that fairly hard.

8

9         MR. FRANK:  Okay.

10        THE COURT:  So, I don't know what the technology

11   is.  But, you shouldn't -- is this computer science?  What

12   field are we in?

13        MR. FRANK:  Voice recognition technology.

14        THE COURT:  Yes.  But, what is that?  Is it

15   computer science?

16        MR. FRANK:  It's software.

17        THE COURT:  So, it's not -- I've never had computer

18   science.  I think someday I'll take a sabbatical and go back

19   and take it.  But, it's not -- the computer logic is not

20   something I necessarily know.  Maybe you all do.  Do I need

21   to know it?

22        MR. FRANK:  I doubt that you need to know it for

23   their patent -- for the patent that's instituted right now.

24   I, frankly, have not thought through the question, whether

25   you would need to know it.  Because, their patent speaks of

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1    certain functionalities as distinguished from how the

2    software works.

3          MR. BROMBERG:  Our patent basically relates to a

4    system for using a cell phone to give it commands by voice.

5          THE COURT:  All right.

6          But, I have no -- I notice that the guys who are

7    involved here all have Ph.D.s in physics, et cetera.

8          MR. BROMBERG:  That's true.

9          THE COURT:  I won't understand that.

10          MR. BROMBERG:  Yeah.  I think I would agree with

11    Mr. Frank that it is more accessible -- the technology here

12    is more accessible than it is in some other cases.  But, I

13    also believe that it makes very good sense for us to give a

14    technology tutorial with presentations by counsel and/or

15    possibly an expert witness.

16          THE COURT:  You know, I had the Bose case and that

17    was an interesting one, with the speaker phones.  And, it

18    was very useful, just -- just a review.  I have to admit --

19    I'll probably get myself reversed by admitting that -- I

20    went back to my son's AP Physics book just to review basic

21    principles of sound waves.  It's useful to -- You know, I've

22    taken it.  It's just useful to remind me of the basic

23    scientific principles or whatever field this is, computer

24    science, that explains how it works.

25          MR. FRANK:  We'll get it to you.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

20

1          THE COURT:  If you want to just hand me a physics

2     textbook or computer and let me read it, I'll do that.  If

3     you want to put someone on the stand, I'll do that.  If you

4     think an affidavit will do that, I'll do it.  But,

5     otherwise, I'm sitting there -- you don't want me surfing

6     the Web trying to figure out what the thing means.

7          MR. FRANK:  I take it that you'd like this

8     sufficiently in advance of the summary judgment and Markman

9     stuff so that you could, on the one hand, get it in your

10    head, at that time.  And, on the other hand --

11         THE COURT:  Yes.

12         MR. FRANK:  -- it's not so far in advance that it's

13    lost.

14         THE COURT:  Right.  I'll watch it.  I agree.  It's

15    not as hard as the cloning cases I've had, for sure.  That

16    that bioscience stuff is a killer.

17         But, still, it's very useful for me to just

18    understand the technology, to get it in my gut, so I feel as

19    if I'm going with it.  I mean, I don't always need to have

20    it if it's an on-sale bar kind of case or something like

21    that.

22         What are we talking about?  What's the issue,

23    validity?  What is it?

24         MR. FRANK:  There are infringement and there are

25    validity issues.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1          And, I think Mr. Bromberg and I are saying about

2     the same thing to you.  We will present this to you --

3          THE COURT:  Okay.

4          MR. FRANK:  -- in a way that you'll be able to

5     understand it.  You might leave to us, in the first

6     instance, what the methodology and presentation is that will

7     make it most accessible to you.

8          THE COURT:  Perfect.

9          MR. FRANK:  If we disagree, we --

10         THE COURT:  You're both experienced.  That's fine.

11         MR. BROMBERG:  Right.

12         And, I think there's probably going to be a lot of

13    agreement about the basic principles in the technology and,

14    then, that will help us to define for the Court where the

15    areas of disagreement are that relate to the particular

16    patent issues.  I think that's right.

17         So, is anyone planning on bringing anyone in from

18    Lernout and Hauspie?

19    I'd love to meet them.

20         (Laughter.)

21         MR. FRANK:  I believe many of them are still unable

22    to travel.

23         (Laughter.)

24         THE COURT:  Okay.  I'll see you later.  Bye-bye.

25         (Whereupon the hearing was concluded.)

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

22

1

2

3                          CERTIFICATE

4

5        I, Marie L. Cloonan, Official Reporter of the

6   United States District Court, do hereby certify that

7   the foregoing transcript, from Page 1 to Page 21,

8   constitutes to the best of my skill and ability a true

9   and accurate transcription of my stenotype notes taken

10  in the matter of Civil Action No. 04-10353, Scansoft,

11  Incorporated vs. Voice Signal Technology.

12                      *Marie L. Cloonan*

13  ----------------------------------

14

15

16

17

18

19

20

21

22

23

24

25