UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SCANSOFT, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 04-10353-PBS |
| | ) ) | |
| VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL**

Defendants Voice Signal Technologies, Inc. ("VST") and Laurence S. Gillick, Robert S. Roth, Jonathan P. Yamron and Manfred G. Grabherr (the "Individual Defendants") submit this Opposition to ScanSoft, Inc.'s ("ScanSoft") Motion to Compel Production of Documents and Responses to Interrogatories ("Motion to Compel").

**I.    Procedural History**

ScanSoft commenced this action on February 20, 2004. It alleged (1) infringement of United States Patent No. 6,501,966 B1 (the "'966 patent"), and (2) the misappropriation, in 2000 and 2001, of trade secrets that were the property of Lernout & Hauspie Speech Products, N.A. ("L&H").

On April 14, 2004, this Court dismissed all counts in the Complaint except the count alleging patent infringement. The Court ruled that ScanSoft's state law (trade secret misappropriation) claims were copied from a Complaint filed by L&H in September of 2001,

and alleged conduct that occurred prior to the acquisition by ScanSoft of any L&H intellectual property.

On May 12, 2004, ScanSoft filed a Motion for Leave To Amend Complaint. It attached an Amended Complaint which contained the same allegations of fact as had previously been determined by the Court to be inadequate.

On May 27, 2004, the Defendants served a Motion for Rule 11 Sanctions. The motion stated that ScanSoft's Amended Complaint alleges no fact that would support a claim of trade secret misappropriation that occurred while ScanSoft owned that trade secret, and that ScanSoft did not have good faith basis for alleging any such misappropriation. The Rule 11 Motion was filed on June 22, 2004.

The Defendants also filed a Motion to Dismiss the Amended Complaint. In that motion, Defendants observed that ScanSoft had not identified the technique or information that constitutes a relevant alleged trade secret, and therefore had not alleged (and could not allege) (a) that the technique or information was maintained as a secret by L&H; (b) that the technique or information remains a secret despite the departure of thousands of employees from L&H; (c) that the unidentified technique or information is maintained as a secret by ScanSoft; and (d) that the technique or information was misappropriated by the Defendants after ownership of the technique or information passed to ScanSoft. Defendants argued, citing extensive authority, that ScanSoft could not properly commence an action and then conduct discovery in order to search for something that it might thereafter identify as a misappropriated trade secret.

On May 26, 2004, while ScanSoft's Motion for Leave to File an Amended Complaint was still pending, ScanSoft served its First Set of Document Requests and First Set of Interrogatories. Each of those discovery devices sought extensive information concerning the

trade secrets claims that, at the time the Requests were served, had been dismissed by the Court, and that are presently the subject of a pending Rule 11 motion and a pending Motion to Dismiss.

On June 25, 2004, Defendants served their responses to ScanSoft's discovery requests. ScanSoft takes issue with certain of the Defendants' responses, and has filed the instant Motion to Compel. Defendants have produced a large quantity of responsive documents to ScanSoft, and will produce additional documents shortly.

## ARGUMENT

### II.A[1]   Defendants' Refusal To Allow ScanSoft To Search For A Trade Secret Is Appropriate (Request Nos. 27, 32-36)

ScanSoft has no good faith basis to assert a misappropriation of trade secrets claim against any Defendant. Even after Defendants filed their Rule 11 Motion and their Motion to Dismiss, ScanSoft has failed to demonstrate, or even to allege, a factual basis for its trade secret claim. It still has not even identified the "secret" that it asserts was misappropriated. As predicted at the April 14, 2004 hearing, ScanSoft is now attempting to use the discovery process to find a claim. That is inappropriate.

A plaintiff may not allege a misappropriation of trade secrets in wholly conclusory terms, and then walk through the defendants' files, which contain genuine trade secrets and other competitively-sensitive materials, in the hope of finding something that the plaintiff may then argue is the trade secret that was referenced all along (but never identified) in the Complaint. *See Microwave Research Corp. v. Sanders Assocs. Inc.*, 110 F.R.D. 669, 670 (D. Mass. 1986) (Collings, M.J.) (denying motion to compel discovery of defendant's trade secrets and holding that plaintiff may not obtain discovery of defendant's trade secrets and confidential information

---

[1] For the Court's convenience, Defendants adopt a numbering system that corresponds to the system used in the Memorandum in Support of ScanSoft's Motion To Compel.

3

"in order to discover whether or not any of the corporate plaintiff's trade secrets have been appropriated and used by the corporate defendant").

ScanSoft's unsupported assertion that it seeks documents that are "relevant" to its unspecific "trade secret claims" (Motion to Compel at 3-4) is insufficient. "In order to protect a corporate Defendant from having to reveal its own trade secrets and confidential information to a competitor during discovery, a plaintiff must demonstrate that there is a factual basis for its claim." *Id.* at 672. Otherwise, "it would be a simple matter to obtain one's trade secret by the mere assertion of a claim. The end result of disclosure, where ultimately it develops that the asserted claim is without substance, may be so destructive of the interest of the prevailing party that more is required than mere allegation to warrant pretrial disclosure." *Id.* (quoting *Ray v. Allied Chemical Corp.*, 34 F.R.D. 456, 457 (S.D.N.Y. 1964)).

ScanSoft has not *identified* anything that was and remains a commercially valuable secret and was misappropriated by a Defendant while it was owned by ScanSoft. *A fortiori*, ScanSoft has not demonstrated that there is a factual basis for any such claim. Therefore, insofar as the Motion to Compel seeks the production of documents which are discoverable only because they are said by ScanSoft to be "relevant" to ScanSoft's unspecific, conclusory trade secret claim, ScanSoft's Motion should be denied.

**B.    Defendants' Definition of "VST Speech Recognition Product" is Appropriate (Request Nos. Not Identified)**

ScanSoft alleges that VST's products infringe the '966 patent. Claims 1 and 20 of the '966 patent are exemplary. Claim 1 recites a speech recognition method that includes the following four steps:

    [1]    receiving a command from the mobile telecommunication user;

    [2]    determining whether the command is a first or second command type;

4

[3]  if the command is the first command type, collecting digits representing a telephone number to be dialed received from the mobile telecommunication user; and

[4]  if the command is the second command type, determining whether a previously stored telephone number is associated with a keyword received from the mobile telecommunication user.

Claim 20 covers a speech recognition apparatus that has the following components:

[1]  a memory;

[2]  an interface with a mobile telecommunication switch;

[3]  a voice recognizer capable of recognizing commands and characters received through the interface from a mobile telecommunication user; and

[4]  a controller, coupled to the memory and the voice recognizer, arranged to determine whether a speech input from the user is a call command, if the command is a first call command type, collect digits representing a telephone number to be dialed spoken by the user, if the command is a second call command type, determine whether a previously stored telephone number is associated with a reference code received from the mobile telecommunication user.

The Defendants have produced documents that evidence or describe (a) the steps used in VST's speech recognition method and (b) the components of VST's speech recognition apparatus. In a patent infringement case, the scope of discovery is a function of the claims of the patent-in-suit. Focusing on the method claim of the '966 patent, the relevant question in this case is whether, in the VST method, a command is received (Step 1), a determination is made as to whether it is a first or second type command (Step 2), and so on -- *i.e.*, whether the claimed steps are performed. A full production of documents which will allow a determination of that issue has been made. *How* these steps are performed -- *how* the command is received (*e.g.* how the underlying source code is configured) and *how* a determination is made as to what type of command has been uttered -- are not relevant. Similarly, with respect to the apparatus claim, the relevant question is whether a VST apparatus includes a memory, and includes an interface with

5

a mobile telecommunications switch and includes the other claimed components -- *i.e.*, whether the VST apparatus has the components required by the particular claims of the '966 patent. By contrast, the specific algorithms used to store data in the memory of a VST device are not relevant to what is claimed in the '966 patent. The inner workings of the interface and of other components of VST's product are similarly irrelevant.

In particular, VST's voice recognition source code is not relevant to ScanSoft's patent infringement claims. ScanSoft's impermissible attempt to gain access to VST's most sensitive trade secret information is a ploy designed to find something that might be said to be a ScanSoft trade secret. The Motion to Compel production of this trade secret information should be denied.

C. **Limiting Document Discovery to the Date ScanSoft's Patent Issued is Appropriate (Request Nos. 12-18)**

ScanSoft requests the production of documents concerning the manufacture, use and sale of VST products *before* December 31, 2002. Motion to Compel at 4. ScanSoft states that the "manufacture, use and sale before the [patent] issuance date may demonstrate the date of first infringing activity . . ." *Id.* at 5. That statement is a legal impossibility. ScanSoft's patent issued on December 31, 2002. The manufacture, use or sale, prior to December 31, 2002, of something that is claimed in the '966 patent could not possibly constitute patent infringement. ScanSoft's argument is entirely specious.

III. A. **Defendants Have Appropriately Withheld Source Code From Their Document Production (Request No. 5)**

For the reasons set forth above at § II.A and § II.B, VST's refusal to produce source code and related data is entirely appropriate. VST's source code is highly proprietary. In many ways, it is VST's most valuable asset. The contents of VST's source code are irrelevant to ScanSoft's patent infringement claim. Source code should not be produced.

6

B.  **Defendants' Determination to Withhold Documents Concerning the Technical Development of Accused Products is Appropriate (Request Nos. 7, 10 and 11)**

ScanSoft seeks blanket discovery concerning the "technical development of Voice Signal's accused products." ScanSoft states "certainly, a party's records in connection with the development of accused products are relevant in a patent infringement action." Motion to Compel at 6. It does not say why. The allegation in this litigation is that VST's products perform the functions, or have components, that are claimed in the '966 patent. What is relevant is whether an actual VST product made, used or sold after the '966 patent issued has the claimed functionality and performs the steps of the claimed method and whether it has the components of the claimed apparatus. Documents relating to these issues are relevant and have been produced. The details of how VST's products were developed are not relevant to the question whether a VST product infringes the '966 patent.[2] They should not be produced.

C.  **Other Patents, Patent Licenses or Invention Disclosures (Request No. 21)**

ScanSoft seeks production of any patent, patent application or invention disclosure owned or licensed by VST relating to "technology" in any VST "voice recognition product," regardless of whether any such document is related in any way to a claim of the '966 patent. VST's confidential invention disclosures and patent applications relating to the general subject of voice recognition are irrelevant to the question whether VST's actual products infringe the '966 patent. VST's products perform the claimed steps and have the claimed components, or they do not. VST's products do not incorporate technology licensed from others.

---

[2] The technical development of VST's products would be relevant if VST alleged that it was the first to invent the claimed subject matter. However, VST makes no such allegation. A VST development document might also be relevant if it mentioned the '966 patent, directly or indirectly, or if it discussed ways of avoiding that patent. There are no such documents.

7

**D.**     **Sale and Licensing of '630 Patent (Request Nos. 54 and 56)**

Documents relating to the sale or licensing of products covered by VST's '630 patent will be produced.

**E.**     **Defendants' Prior Art Analysis is Protected Attorney-Work Product (Request No. 28)**

ScanSoft's Request No. 28 seeks documents relating to VST's prior art searches and validity, patentability and infringement "studies" with respect to the '966 patent. ScanSoft states that these documents are "relevant . . . and must be produced." Motion to Compel at 7. That is incorrect.

Defendants learned of the existence of the '966 patent when ScanSoft initiated the instant patent infringement action (*see* Defendants' Response to ScanSoft's Interrogatory No. 7). VST's subsequent analysis, including its prior art searches and its infringement and validity studies were conducted "in anticipation of litigation or for trial." They are protected from discovery by the attorney-client privilege and the work-product doctrine. Fed. R. Civ. P.26(b)(3). Moreover, the fruits of the Defendants' prior art searches are also work product. They are the product of counsel's fact discovery efforts. The same facts are equally available to ScanSoft, if it is prepared to expend the same effort as Defendants' counsel has expended. *See Sawgrass Systems, Inc. v. BASF Aktiengesellschaft*, 1999 U.S. Dist. LEXIS 9437, at *13-14 (E.D. Mi. 1999) (quashing subpoena and request for documents obtained during prior art search, holding that "[Defendant's] prior art search is analogous to an attorney's selection and compilation of documents in anticipation of litigation, which is protected by the work-product doctrine"). *See also Golden Trade, S.r.L. v. Jordache,* 143 F.R.D 508 (S.D.N.Y. 1992) ("the [prior art] search was made to aid in current and anticipated litigation, and hence its fruits come squarely within the ambit of the work-product doctrine . . . . Disclosure of [this information would] allow

8

defendants in effect to appropriate the research labors and, to a degree, the analysis of the attorney's agent, and in that respect the request for disclosure touches not merely upon the literal definition of work product found in Rule 26(b)(3), but also upon the policies embodied by the rule, which is to preclude one attorney from 'perform[ing] [his] function either without wits or on wits borrowed from the adversary'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 516 (1947))) .

VST will identify relevant prior art in accordance with 35 U.S.C. § 282, as otherwise agreed mutually by the parties, or as instructed by the Court.  Discovery of the fruits of Defendants' prior art searches at this preliminary stage of this case is inappropriate.  Discovery of counsel's "studies" regarding the validity and infringement of the '966 patent will never be appropriate.

F.      **Prior Art as to Voice Signal's Patent (Request No. 43)**

Defendants will produce all prior art provided to the United States Patent Office concerning the ′630 Patent, and all prior art of which they were aware at any time during the prosecution of the ′630 patent.  Any other prior art is protected from disclosure by the work product doctrine, as set forth in § III.E above.

G.      **Documents Relating to Products that Incorporate the Invention of the '630 Patent (Request Nos. 50 and 51)**

Document Request Nos. 50 and 51, as drafted, request all documents relating in any way to any product that incorporated the invention of VST's '630 patent.  These requests are vastly overbroad, and as such are not susceptible of a meaningful response.  Defendants have produced, or will produce, documents sufficient for ScanSoft to identify the products that embody the invention of the '630 patent, to determine the commercial success of those products, and to defend against any claim for damages caused by ScanSoft's infringement of the '630 patent.  *See also* § III.H, below.  Nothing more is required.

H.  **Documents Related to Investigation, Evaluation or Determination of Infringement (Request Nos. 55 and 57)**

VST will produce documents relating to the manufacture, licensing or sale of products that embody the invention of VST's '630 patent (ScanSoft's Request 55, as now characterized by ScanSoft).  VST's analyses of ScanSoft's (or other) products or processes to determine whether they infringe the '630 patent (ScanSoft's Request 57, as now characterized by ScanSoft) are protected as work product and by the attorney-client privilege.

I.  **Communications Regarding the '630 Patent and the Present Litigation (Request No. 58)**

Defendants have produced or will produce documents constituting public communications made by VST concerning the present litigation.  No other non-privileged documents concerning the present litigation exist in VST's possession.  Documents, if any, containing communications with third parties relating to the '630 patent will be produced.

J.  **Third Party Products as Non-Infringing Alternatives (Request No. 8)**

Document Request No. 8 seeks each document concerning any third party product reviewed, tested or evaluated by VST in connection with the design and development of any VST speech recognition product.  This request, as drafted, is vastly overbroad.  Defendants are willing to discuss with ScanSoft the scope of the production it seeks.  However, the mere fact that VST evaluated a third-party product in the context of developing any VST Speech Recognition Product does not entitle ScanSoft to production of whatever is in VST's files relating to that third-party product.

K.  **Inducement and/or Contributory Infringement (Request No.9)**

Request No. 9 seeks documents relating to components or services provided to VST by non-parties -- regardless of whether the components are staple articles of commerce and regardless of whether the VST products are alleged to infringe ScanSoft's patents.  The stated

10

rationale for this request is that it might allow ScanSoft to identify a third party that ScanSoft might then accuse of inducement or contributory infringement. VST does not purchase products (apart from staple articles of commerce) from third parties. In any event, it is not an appropriate purpose of discovery to attempt to find a claim against a non-party.

**L.    Effect of Infringement on Other Sales (Request No. 20)**

Request No. 20 seeks documents "concerning the effect of sales of Voice Signal Speech Recognition Products upon the sales of any other of Voice Signal's products or services." VST offers a single line of products. It does not sell or license anything that is an add-on or accessory product, or that could otherwise be the subject of a "convoyed sale." It does not posses any documents responsive to this request.

**M.    Organizational Charts (Request No. 6)**

VST has produced a current organizational chart.

**IV.    Voice Signal's Interrogatory Responses Are Appropriate**

ScanSoft seeks to compel responses to Interrogatories Nos. 8, 9, 10 and 12, which concern the trade secret claims that are the subject of Defendants' pending Motion to Dismiss. For the reasons set forth above, this discovery is inappropriate. No sufficient allegation of trade secret misappropriation has been made.

ScanSoft also seeks to compel further responses to Interrogatory 20, which relates to the invention and reduction to practice of the invention claimed in VST's '630 patent. VST has agreed to produce documents concerning the date of first conception of the invention, and date of first reduction to practice. If and when ScanSoft identifies plausible prior art that raises the question whether VST was the first to invent that which is claimed in the '630 patent, VST will respond to this interrogatory. Until then, VST's response is sufficient.

## CONCLUSION

For the foregoing reasons, the Court should deny ScanSoft's Motion to Compel Production of Documents and Responses to Interrogatories.

                        Respectfully submitted,

                        LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, MANFRED G. GRABHERR and VOICE SIGNAL TECHNOLOGIES, INC.

                        By their attorneys,

                        /s/ Paul D. Popeo
                        Robert S. Frank, Jr. (BBO No. 177240)
                        Sarah Chapin Columbia (BBO No. 550155)
                        Paul D. Popeo (BBO No. 567727)
                        Paul E. Bonanno (BBO No. 646838)
                        CHOATE, HALL & STEWART
                        Exchange Place
                        53 State Street
                        Boston, MA  02109
                        (617) 248-5000

Dated:  July 29, 2004

3727690v1