UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VOICE SIGNAL TECHNOLOGIES, INC., )<br>LAURENCE S. GILLICK, ROBERT S. )<br>ROTH, JONATHAN P. YAMRON, and )<br>MANFRED G. GRABHERR )<br>)<br>Defendants. )<br>) | Civil Action No. 04-10353 PBS |

**REPLY MEMORANDUM IN SUPPORT OF SCANSOFT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES**

Plaintiff ScanSoft, Inc. ("ScanSoft") submits this Reply to Defendant Voice Signal Technologies, Inc.'s ("Voice Signal") Opposition to ScanSoft's Motion To Compel Production of Documents and Responses to Interrogatories ("Opposition"). All of the information ScanSoft seeks is relevant and necessary to this litigation and Voice Signal's Opposition does nothing to rebut that fact. Instead, Voice Signal's continued refusal to produce the requested information is a blatant disregard for its disclosure obligations under Fed. R. Civ. P. 26(c).

**I.  VOICE SIGNAL HAS FAILED AND REFUSED TO PRODUCE RESPONSIVE DOCUMENTS**

Voice Signal waited until the very day its opposition to ScanSoft's motion to compel was due to produce any documents whatsoever, and even then only produced a paltry amount (less than one banker's box of documents) in response to ScanSoft's requests. Voice Signal has produced no source code or technical development documents, and no documents concerning Voice Signal's use of the trade secrets misappropriated from ScanSoft via Voice Signal's

employees Gillick, Roth, Yamron and Grabherr. Voice Signal is in blatant violation of its discovery obligations, and should be ordered to produce responsive documents immediately.

## II. VOICE SIGNAL'S GENERAL OBJECTIONS SHOULD BE OVERRULED

### A. ScanSoft Is Entitled To Information Concerning Its Trade Secrets Unlawfully Used By Voice Signal And The Individual Defendants

In its Opposition, Voice Signal claims that ScanSoft is not entitled to "walk through defendant's files" with regard to its request for documents concerning ScanSoft's trade secrets. *Opposition* at 3. Far from seeking an unlimited walk through its files, ScanSoft has made the following specific document requests of Voice Signal: (i) documents concerning ScanSoft's trade secrets that the individual defendants shared with Voice Signal (Request Nos. 27, 32); (ii) communications between all the defendants regarding ScanSoft's trade secrets (Request No. 33); and (iii) ScanSoft's source code for speech recognition technology that the individual defendants had access to (Request No. 34). This information is relevant and necessary because ScanSoft specifically alleges in its Amended Complaint, and seeks to prove at trial that:

- ScanSoft owns certain highly valuable speech recognition technology, assets, good will and trade secrets relating to speech recognition technology.

- Defendants Gillick, Roth, Yamron and Grabherr worked on ScanSoft's various speech recognition technology projects and had access to ScanSoft's trade secrets before they went to work for Voice Signal.

- The speech recognition technologies Gillick, Roth, Yamron and Grabherr worked on were for the development of speech recognition capabilities specifically for a modular scalable platform for speech recognition application on small mobile devices.

- These speech recognition capabilities are the same as those described in Voice Signal's announcement of its ELVIS project.

- Voice Signal did not have these speech recognition capabilities until <u>shortly after</u> Defendants Gillick, Roth, Yamron and Grabherr began working for Voice Signal.

Based upon these facts and ScanSoft's allegations of trade secret misappropriation, ScanSoft is entitled to documents concerning the very trade secret information these individual defendants shared with Voice Signal. That is the basis of ScanSoft's trade secret claim and the basis for the discovery requests relating to trade secret information. The requests are highly relevant to ScanSoft's claim and necessary in order for ScanSoft to prepare its case for trial. See, 8 Wright & Miller, *Federal Practice and Procedure* § 2043 (1970); *Multi-Core, Inc. v. Southern Water Treatment Company,* 139 F.R.D. 262, 264 (D. Mass. 1991) (Bowler, M.J.) ("For purposes of Rule 26, relevant information includes any matter that is or may become an issue in the litigation.")

**B.     Voice Signal's Definition of The Accused Products Is Unreasonable**

Voice Signal has taken the outrageous position that it can manipulate the definition of the accused products to narrow it down to just a relevant sliver, that the "inner workings" of "how" the accused products operate are irrelevant. First and foremost, ScanSoft intends to prove that the accused products literally infringe the claims of the '966 patent. For example, claim 1 of the '966 patent requires various steps including "determining whether the command is a first or second command type." Thus, showing "the inner workings" of "how" the accused products process inputs and "determine" whether or not a given input is a first or second command type is highly relevant to the central issue of literal infringement. To simply refuse to provide discovery on how the accused products operate is wholly unacceptable.

Moreover, Voice Signal's intransigence also ignores ScanSoft's right to show infringement under the doctrine of equivalents. Infringement under the doctrine of equivalents requires an element-by-element inquiry. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). Equivalence is determined by applying a three-step "function-way-result"

-3-

test. *Id*. at 39. Under this test, the "way" that an accused product performs substantially the same "function" as in each element of an asserted claim is analyzed, as is the "result." *Id.*

Thus, contrary to Voice Signal's argument, "how" the accused products operate is unquestionably relevant and discoverable. To render this information irrelevant, Voice Signal would need to stipulate to infringement, which it has not done.

### C. Voice Signal Unreasonably Refuses To Produce Documents Generated Before The '966 Patent Issued

Voice Signal also wrongfully refuses to produce any documents concerning the manufacture, use or sale of its products before the issue date of the '966 patent by simply stating that any such activity cannot give rise to a claim for damages. While this is true, as far as it goes, the date that Voice Signal first practiced the patented technology can serve as the date of first infringement for purposes of what reasonable royalty the parties would have agreed to in a hypothetical negotiation. Moreover, any pre-issuance infringement may also be relevant to the validity of the '966 patent, for example, as to the secondary consideration of non-obviousness such as commercial success, long-felt need, failure of others, etc. *See Conopco, Inc. v. Warner-Lambert Co.*, 1999 WL 1565082 (D.N.J.)(defendant ordered to produce all responsive non-privileged documents dated before patent issue date: "pre-issuance … information may be relevant or may lead to discovery of information relevant to infringement and should be produced"); *Mixing Equip. Co., Inc. v. Innova-Tech, Inc.*, 1986 WL 9501 (E.D. Pa.) (plaintiff's activities and documents dated before issue date of asserted patent were discoverable based on relevance to issues of infringement, validity, and commercial success).

## III. VOICE SIGNAL CONTINUES TO WRONGFULLY WITHOLD ENTIRE CATEGORIES OF DOCUMENTS

### A. Source Code Is Highly Relevant To Both ScanSoft's Patent Infringement And Misappropriation Of Trade Secrets Claims And Should Be Produced

In its Opposition, Voice Signal resists the disclosure of source code[1] for its speech recognition products and any information relating to the "inner workings of the components of VST's speech recognition products." O*pposition* at 6. Voice Signal insists that production of any documents relating to its speech recognition product is limited to the "user interface module of its products and not to the speech engine associated with those products." *Voice Signal Technology's Response to Plaintiff's First Set of Document Requests* at 1.[2] To defend its position, Voice Signal brazenly states that ScanSoft is not entitled to this information because either Voice Signal's "products perform the claimed steps and have the claimed components [of ScanSoft's '966 patent], or they do not." *Opposition* at 7. Under Voice Signal's interpretation of what is discoverable in this case, all it would be required to produce is a copy of the patents in suit. This overly simplistic approach is without merit. Source code and documents describing the speech recognition technology contained in Voice Signal's product - and specifically the technology identified in the ELVIS press release – are relevant to a central issue in this case, i.e., does the Voice Signal speech recognition product infringe ScanSoft's patent?

---

[1] In part, Voice Signal objects to the disclosure of its source code because it is "highly proprietary." *Opposition* at 6. Courts have routinely approved protective orders in order to deal with the protection of proprietary information in litigation. *See, Multi-Core, Inc. v. Southern Water Treatment Company,* 139 F.R.D. 262, 264 (D. Mass. 1991). In fact, the parties to this litigation have agreed upon and filed for the Court's approval, a protective order. Thus Voice Signal's objection on this basis is fully addressed by the entry of a protective order.

[2] Voice Signal Technology's Response To Plaintiff's First Set of Document Requests are attached as Tab B to ScanSoft's Memorandum of Law In Support of ScanSoft's Motion to Compel Production of Documents and Responses to Interrogatories filed with the Court on July 15, 2004.

Determining infringement is a two-step process: the Court first construes the patent claims and then the fact finder applies the properly construed claims to the accused device. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The test for finding infringement is simply whether the accused device contains each element of the claim at issue, either literally or by equivalents. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580 (Fed. Cir.1989). Generally, a claim element is equivalently found in an accused device if, to one of ordinary skill, there are only "insubstantial differences" between the claim element and the corresponding *component in the accused device.* (emphasis added). *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1517-18 (Fed. Cir. 1995) (en banc), *rev'd on other grounds,* 520 U.S. 17 (1997).

Moreover, as explained in Part II(B) above, infringement under the doctrine of equivalents requires an element-by-element inquiry applying a three-step "function-way-result" test. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). Under this test, the "way" that an accused product performs substantially the same "function" as in each element of an asserted claim is analyzed, as is the "result". *Id.*

Thus, ScanSoft is entitled to evaluate the entire method and apparatus of Voice Signal's speech recognition product - and not just the user interface portion of the product – in order to present its case. *See, Multi-Core, Inc. v. Southern Water Treatment Company,* 139 F.R.D. 262, 264 (D. Mass. 1991) (Bowler, M.J.) (plaintiff's motion to compel allowed where the information sought is clearly relevant and plaintiff needed the information to compare products); *see also, ITT Electro-Optical Products Division of ITT Corporation v. Electronic Technology Corporation,* 161 F.R.D. 228, 231 (D. Mass. 1995) (Neiman, M.J.) ("Fed.R.Civ.P. 26(b)(1) specifically indicates that it is not grounds for objection that the information sought will be

inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.").

### B. Documents Concerning The Technical Development Of Accused Products Are Highly Relevant And Should Be Produced

Just as Voice Signal's source code is highly relevant to a determination of whether Voice Signal infringes ScanSoft's patent, so are Voice Signal's documents concerning the technical development of its accused products. ScanSoft's requests are limited to documents describing the accused products (Request Nos. 7, 10, 11) and ScanSoft is entitled to documents concerning the conception, research, design, development, and testing of Voice Signal's accused products. Again, such documents are relevant to both a literal infringement analysis and an equivalents infringement analysis based on a function-way-result test. *See* Part II(A), above.

The Court should order Voice Signal to produce documents with respect to technical information concerning the inner workings and designs of Voice Signal's accused speech recognition products. This information needs to be sufficient, at a minimum to test Voice Signal's contention of non-infringement and its assertion that it did not utilize the '966 patent or its predecessor patents when Voice Signal developed its own technology.[3] The information is relevant and necessary in order for ScanSoft to prepare for trial.

### C. Patents, Patent Applications And Invention Disclosures Owned By Voice Signal Are Highly Relevant And Should Be Produced

In its Opposition, Voice Signal also resists the production of any patent, patent application or invention disclosure owned by Voice Signal in its voice recognition products. ScanSoft is entitled to these documents as they are highly relevant to a determination of whether

---

[3] The '966 patent is the fourth in a series of patents that issued from an application originally filed in 1992.

Voice Signal is infringing ScanSoft's '966 patent or has misappropriated ScanSoft's trade secrets. ScanSoft has limited its request to patents and disclosures used in Voice Signal's speech recognition products. With a proper protective order in place, ScanSoft is entitled to "discover" whether Voice Signal's patents and disclosures concerning its speech recognition products contain information which was unlawfully obtained and used. These documents are also highly relevant to the issue of whether Voice Signal's methods infringe ScanSoft's patent for speech recognition technology.

### E./F.[4] Prior Art Is Discoverable And Should Be Produced

ScanSoft's Request Nos. 28 and 29 seek prior art documents with respect to the '966 patent. Voice Signal refuses to produce any such documents. Voice Signal seeks to defer document production of these documents until at least 30 days prior to trial in accordance with 35 U.S.C. §282. To the extent that Voice Signal intends to challenge the validity of the '966 patent, it must certainly rely upon prior art documents. The discovery process has as its purpose the exchange of facts, such as essential prior art, so that each party can evaluate and prepare its position. Voice Signal should not be permitted to withhold its invalidity defense documents until the eve of trial. Production of the prior art applicable to the '966 patent should be compelled.

ScanSoft's Request No. 43 seeks prior art documents with respect to Voice Signal's '630 patent. In its Opposition, Voice Signal agrees to produce only those prior art documents of which they were aware at any time during the prosecution of the '630 patent. However, all prior

---

[4] The numbering of the headings and sub-headings herein is in accordance with the structure of ScanSoft's initial memorandum, which was also adopted by Voice Signal in its opposition. ScanSoft has presented additional argument only on certain points, because those issues would appear to benefit from additional briefing. ScanSoft does not concede any of the remaining issues, but instead stands on its moving papers as to those issues.

art pertinent to the '630 patent is potentially relevant to the validity and the enforceability of that patent, even those prior art documents of which defendants became aware following the issuance of the '630 patent.

Voice Signal argues that prior art provided to the defendants by counsel are protected by the work-product doctrine. Prior art patents and publications that manifest any aspect of the challenged invention are facts; they must be produced during discovery. *Upjohn Company v. U.S.*, 449 U.S. 383, 396 (1981)(party may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney).

While litigation counsel's prior art searches and the analytical results of those searches might constitute work product if prepared for purposes of litigation, their factual underpinnings are not protected. The mere identity of relevant prior art is a factual matter subject to discovery and does reflect any work product whatsoever. *Lakewood Engineering and Mfg. Co. v. Lasko Products, Inc.,* 2003 WL 1220254 (N.D.Ill. 2003)(identification of prior art references discovered by defendant's searching does not convey mental impressions, thoughts, or other protected work product of its counsel and must be produced). ScanSoft made a proper request for prior art known to defendants, which would include the fruits of any search even if the search itself was done for purposes of litigation. Request No. 43 calls for prior art "….known to, considered by, or identified to you that constitutes, contains, discloses, refers to, relates to, or embodies any art relating or analogous to the subject matter of any claim of the '630 patent." Even the case relied upon by Voice Signal recognizes the propriety of such a request. *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 508, 512 (S.D.N.Y. 1992) (patentee may be asked to "identify any patents or other inventions known to plaintiffs that may embody some or all of the

specific techniques of the process covered by the challenged patent, irrespective of whether plaintiff's knowledge of those patent and inventions was acquired by means of the prior art search commissioned by their attorneys."). The underlying facts, i.e., the prior art known to the defendants is discoverable.

## IV. VOICE SIGNAL'S RESPONSES TO SCANSOFT'S FIRST SET OF INTERROGATORIES ARE INADEQUATE

Voice Signal inexplicably contends that it need not answer any interrogatories regarding the date of conception of its '630 patent or when reduction to practice first occurred. According to Voice Signal, ScanSoft must first raise "plausible prior art" that raises the question of when the invention occurred. That is simply ridiculous. ScanSoft has a right to discovery regarding the circumstances surrounding the conception and reduction to practice of the patent asserted by Voice Signal's counter-claim and has no obligation to first meet some discovery qualification criteria unilaterally created by Voice Signal. While Voice Signal would surely prefer to keep its conception and reduction dates a moving target until it knows how the other evidence will play out, it is not entitled to do so. Voice Signal should be ordered to answer Interrogatory No.20 immediately.

## CONCLUSION

For all the foregoing reasons, as well as those contained in ScanSoft's Memorandum of Law In Support Of ScanSoft's Motion To Compel Production of Documents and Responses To Interrogatories, Voice Signal should be compelled to produce all documents and things in its possession, custody or control that are responsive to ScanSoft's First Set of Document Requests and to respond fully to ScanSoft's First Set of Interrogatories.

Dated: August 9, 2004                               SCANSOFT, INC.,
                                                    By its attorneys,


                                                    s/ Julia Huston
                                                    Lee Carl Bromberg, BBO #058480
                                                    Robert Asher, BBO #022865
                                                    Julia Huston, BBO #562160
                                                    Lisa M. Fleming, BBO #546148
                                                    John F. Ward, BBO #646689
                                                    BROMBERG & SUNSTEIN LLP
                                                    125 Summer Street
                                                    Boston, Massachusetts 02110-1618
                                                    (617) 443-9292

02639/00509   327126.1