UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC.,<br><br>              Plaintiff,<br><br>    v.<br><br>VOICE SIGNAL TECHNOLOGIES, INC.,<br>LAURENCE S. GILLICK, ROBERT S.<br>ROTH, JONATHAN P. YAMRON, and<br>MANFRED G. GRABHERR,<br><br>              Defendants. | C.A. No. 04-10353-PBS |

**VOICE SIGNAL TECHNOLOGIES, INC.'S RESPONSE TO SUPPLEMENTAL
MEMORANDUM IN SUPPORT OF SCANSOFT'S MOTION TO COMPEL**

Pursuant to the Court's November 12, 2004 order, defendant and counterclaim plaintiff Voice Signal Technologies, Inc. ("Voice Signal" or "VST") submits this memorandum in response to the Supplemental Memorandum in Support of ScanSoft's Motion to Compel Production of Documents and Responses to Interrogatories (the "Supplemental Memorandum") filed November 12, 2004.

**Background**

Plaintiff and counterclaim defendant ScanSoft, Inc. ("ScanSoft") commenced this action, alleging that Voice Signal infringes United States Patent No. 6,501,966 (the "'966 Patent" or "ScanSoft's Patent").[1]  *See* Amended Complaint at 10.  Voice Signal has counterclaimed,

---

[1] The Amended Complaint also asserts claims for misappropriation of trade secrets, as to which Voice Signal has a pending motion to dismiss.  In accordance with the Court's instructions, this memorandum addresses only the discovery disputes as they relate to ScanSoft's patent claim.

alleging that ScanSoft infringes United States Patent No. 6,594,630 (the "'630 Patent" or "VST's Patent"). *See* Answer and Counterclaim at 5.

The discovery disputes before this Court are part of an ongoing drama, only part of which is taking place in the courtroom. ScanSoft has spent the past several years acquiring companies in various speech recognition and speech-to-text technologies. So far, it has not been able to break into the highly desirable mobile telephone handset speech recognition market because none of the companies it has acquired has developed competitive speech recognition software scalable to the small footprint of handheld mobile devices.

Voice Signal is a small, privately owned start-up company which has developed speech recognition software for mobile handheld devices (phones and pda's). Over the past year, ScanSoft has negotiated to try to buy Voice Signal and its one competitor, ART Advanced Recognition Technologies, Inc. ("ART"). When the negotiation with Voice Signal broke down, ScanSoft brought this action. Similarly, according to the briefs filed by ART, ScanSoft sued ART when it was unable to buy it.[2]

Voice Signal's "crown jewels" are its proprietary technology which it has spent years developing and refining. It is also what stands between ScanSoft and the market it covets -- hand held speech recognition.

With that context in mind, this memorandum addresses the five specific discovery issues raised in ScanSoft's Motion to Compel that the parties have been unable to resolve.

---

[2] The Court's docket reflects that *ScanSoft v. ART*, Case No. 04-10840, was settled and dismissed on November 15, 2004. That same day, ScanSoft and ART announced that they had reached an agreement for ScanSoft to acquire ART.

2

I.      **Voice Signal's Source Code Is Not Relevant To ScanSoft's Infringement Claim.**

ScanSoft tells the Court that Voice Signal's source code is "highly relevant." It has not given -- and cannot give -- the Court any factual or legal basis for its assertion.

ScanSoft's '966 Patent claims a user interface for mobile telephones. It neither claims nor describes the software used to deliver the user interface. The written description depends entirely on flow chart diagrams which depict the invention. As is set forth in Voice Signal's Opposition, the ScanSoft Patent claims require a mobile phone user to state a command of a "first type" (*e.g.*, the words "Digit Dial") or "second type" (*e.g.*, the word "Call"). If a mobile phone user states a first command type, the claimed invention then collects spoken digits (*e.g.*, "555-1000") representing a telephone number. If a mobile phone user states a second command type, the claimed invention then matches the subsequent spoken keyword (*e.g.*, "Home") to a stored telephone number.

ScanSoft does not need to review Voice Signal's source code to determine whether the accused products receive commands and respond to those commands. ScanSoft simply needs to examine the user interface of Voice Signal's product (*i.e.*, the mobile phone) and determine whether it receives a first command type (*e.g.*, "Digit Dial") or second command type (*e.g.*, "Call") and whether it then responds to such commands by dialing a number or finding a number associated with a spoken keyword. ScanSoft has, in fact, purchased a phone equipped with Voice Signal's accused products and has provided Voice Signal with a claim chart based on its study of the user interface. In addition, Voice Signal has produced documents which describe in detail the user interface of Voice Signal's products, including numerous flow chart diagrams detailing exactly how the command structures work.

ScanSoft knows Voice Signal's position. It was clearly articulated in Voice Signal's Opposition and again by counsel at the conference held in court between the parties' attorneys on November 4, 2004. Yet ScanSoft fails even to address Voice Signal's argument in its Supplemental Memorandum. Instead, ScanSoft relies solely on the blanket assertion that source code is "highly likely" to contain relevant information in an action "for patent infringement concerning software." Supp. Mem. at 2. The patent in this case does not claim the software. Nor does it describe the software of the invention. Thus, ScanSoft's conclusory, unsupported assertion is not apt.

Furthermore, the cases ScanSoft cites could not be more off point. In *OpenTV v. Liberate Technologies*, 219 F.R.D. 474 (N.D. Cal. 2003), the defendant did not object to producing its source code. *Id.* at 476. Defendant's only argument was that it should not have to bear the cost of production. *Id.* In *Dynamic Microprocessor Assocs. v. EKD Computer Sales*, 919 F. Supp. 101 (E.D.N.Y. 1996), the plaintiff alleged copyright, not patent, infringement. *Id.* at 102. The court ordered plaintiff to produce its source code so that defendant could determine whether the source code contained "non-copyrightable" elements. *Id.* at 103.

Finally, *Hilgraeve Corp. v. McAfee Assocs., Inc.*, 70 F. Supp. 2d 738 (E.D. Mich. 1999), cited in the Supplemental Memorandum at 3, illustrates the distinction Voice Signal has made in its Opposition and in its papers in support of its own motion to compel: that source code is relevant <u>only</u> when a user <u>cannot</u> determine infringement simply by using the accused product.[3]

---

[3] In *Hilgraeve*, the patent asserted described the internal operations of a virus protection program. It claimed a method for scanning for computer viruses during the transfer of incoming digital data and before storage of the data. *Id.* at 744. Defendant argued that its accused product did not infringe plaintiff's patent because it screened for viruses after the digital data had been transferred and stored. *Id.* at 751. The court concluded that where the patent-in-suit described and claimed internal computer operations, a "user's perspective" of the accused program was insufficient to determine infringement. *Id.* at 755. A user could not observe the technical steps claimed in the patent, *i.e.*, when storage and screening occurred, simply by using the accused product. *Id.* at 756. Only an expert looking at the program's internal operations, *i.e.*, the source code, could tell if the accused product practiced the same claimed steps. *Id.*

Here, in contrast to *Hilgraeve*, a "user's perspective" of the accused products, together with the detailed flow charts produced by VST, <u>is</u> sufficient to determine whether or not the accused products infringe.

## II. Voice Signal's Technical Development Documents Are Not Relevant To ScanSoft's Infringement Claim.

ScanSoft seeks documents concerning Voice Signal's development of the accused products. It cites no legal authority for its position, nor does it state a basis for their discoverability.[4] Voice Signal's development documents are irrelevant to ScanSoft's infringement claim. What Voice Signal tried and tested during the development process cannot be relevant to ScanSoft's claim for infringement. ScanSoft's infringement claim can relate only to the accused Voice Signal products that were actually made, used, offered for sale or sold. If a method tested during the development process did not make its way into Voice Signal's final products, it could not possibly infringe ScanSoft's '966 Patent. On the other hand, if a method tested during development did make its way into Voice Signal's products, then ScanSoft need only examine the numerous documents Voice Signal has already produced regarding its products to conduct an infringement analysis. In short, ScanSoft cannot genuinely assert that it needs to see development documents to determine whether Voice Signal's products infringe the '966 Patent. *See Applera Corp. v. MJ Research, Inc.*, 311 F. Supp. 2d 263, 272 (D. Conn. 2004) (holding that manufacturing process for patented product was "legally irrelevant" to infringement analysis where patent did not claim manufacturing process); *Advanced Semiconductor Products, Inc. v. Tau Labs, Inc.*, 229 U.S.P.Q. 222, 224 (N.D. Cal. 1986)

---

[4] The only case cited is *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1977). The *Warner-Jenkinson* case says nothing about the discoverability or relevance of development documents in a patent infringement case.

5

(refusing to compel information on manufacturing processes since plaintiff "should be able to determine if there is infringement primarily by comparing the products of the competitors.").

Again, ScanSoft simply fails to address the basic argument. Instead, in a one-sentence conclusory statement, ScanSoft suggests that development documents are needed for the three-step "function-way-result" test under the doctrine of equivalents. Supp. Mem. at 4. The first command type/second command type claimed and described in the specification of the '966 Patent is at the user interface level and is described in the Patent in flow chart diagrams. Even if the Court undertakes the "function-way-result" analysis under the doctrine of equivalents, that analysis will not – and cannot possibly – be aided by anything other than the accused device itself and documents which describe the user interface (*i.e.*, the many flow chart diagrams already produced by Voice Signal).

### III.     ScanSoft Cannot Show That Voice Signal's Confidential Patent Applications Are "Highly Relevant" To ScanSoft's Infringement Claim.

It is well established that "materials relating to patent applications are confidential, and, therefore, enjoy a degree of protection against disclosure." *In re Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 18, 20 (D. Mass. 2004) (cited by ScanSoft in Supp. Mem. at 4). For that reason, "courts have uniformly recognized that a heightened relevancy standard must be applied to patent applications and materials related thereto." *Id.*

The heightened relevancy standard for patent applications was applied in *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146 (D.S.C. 1974), cited by ScanSoft in the Supplemental Memorandum at 5. In *Duplan*, the court held that patent applications did not have to be produced because they constituted confidential trade secrets and the parties seeking discovery had "not made a sufficiently clear showing that the patent applications and other technical information sought are relevant to issues involved in this litigation." *Id.* at 1186. The court

6

explained that "the disclosure of abandoned or pending patent applications may be compelled under a protective order only where there is a *clear showing* of the relevancy of the applications to the issues involved in the present litigation." *Id.* (emphasis added).

ScanSoft has not -- and cannot -- make a "clear showing" that Voice Signal's patent applications are relevant to its infringement claim. ScanSoft weakly argues in its Supplemental Memorandum that Voice Signal's patent applications are relevant because "they are likely to provide evidence of the prior art and the operation of the accused products." Supp. Mem. at 4.

First, it is not realistically conceivable that Voice Signal's currently pending and unpublished patent applications are prior to ScanSoft's Patent. ScanSoft's Patent claims priority back to April 13, 1992. Voice Signal was not even established until 1995. Second, by definition, VST's patent applications would be extrinsic evidence. *See*, *e.g.*, *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1414 (Fed. Cir. 2000) ("Extrinsic evidence includes expert testimony, inventor testimony, dictionaries, treatises, and prior art . . ."). Such extrinsic evidence is considered only if the intrinsic evidence, *i.e.*, the patent claims, the specification and the prosecution history, are insufficient. *See id.*; *Bicon, Inc. v. Straumann Co.*, 271 F. Supp. 2d 368, 371-72 ("When the intrinsic evidence adequately establishes the proper meaning of the disputed terms, it is inappropriate to consult extrinsic evidence . . ."); *Omniglow Corp. v. Unique Indus., Inc.*, 184 F. Supp. 2d 105, 112 (D. Mass. 2002) ("The court turns to extrinsic evidence only when the intrinsic evidence is insufficient to establish the clear meaning of a claim.") (citation and quotation marks omitted).

Furthermore, the suggestion that Voice Signal's highly proprietary patent applications are necessary to determine the "operation of the accused products" is specious. The operation of Voice Signal's accused products is sufficiently described in the documents Voice Signal has

already produced.  ScanSoft does not need Voice Signal's patent applications to determine how Voice Signal's products function.  *See In re Columbia Univ. Patent Litigation*, 330 F. Supp. 2d at 20 ("If the plaintiff in a patent infringement suit can obtain sufficient information regarding the accused products from other sources, discovery of the defendant's patent applications will be denied.").

Voice Signal's most valuable assets are its technological innovations, some of which are disclosed in its confidential patent applications.  Absent a <u>clear showing</u> of relevance to the instant dispute, Voice Signal should not be compelled to turn over its confidential patent applications to an aggressive, would-be competitor, like ScanSoft.

### IV.     <u>Voice Signal's Prior Art Analysis Is Protected Attorney Work Product.</u>

ScanSoft seeks disclosure of all prior art discovered by Voice Signal's attorneys.  Voice Signal first learned of the existence of ScanSoft's Patent when ScanSoft filed this lawsuit.  Voice Signal's subsequent analysis, including its prior art searches were conducted "in anticipation of litigation or for trial."  Thus, they are protected from discovery by the attorney-client privilege and the work-product doctrine.  Fed. R. Civ. P. 26(b)(3).  The fruits of Voice Signal's prior art searches are also work product.  They are the product of counsel's fact discovery efforts.  *See Sawgrass Systems, Inc. v. BASF Aktiengesellschaft*, 1999 U.S. Dist. LEXIS 9437, at *13-14 (E.D. Mi. 1999) (quashing subpoena and request for documents obtained during prior art search, holding that "[Defendant's] prior art search is analogous to an attorney's selection and compilation of documents in anticipation of litigation, which is protected by the work-product doctrine").  *See also Golden Trade, S.r.L. v. Jordache,* 143 F.R.D 508, 511 (S.D.N.Y. 1992) ("the [prior art] search was made to aid in current and anticipated litigation, and hence its fruits come squarely within the ambit of the work-product doctrine . . . .  Disclosure of [this information

8

would] allow defendants in effect to appropriate the research labors and, to a degree, the analysis of the attorney's agent, and in that respect the request for disclosure touches not merely upon the literal definition of work product found in Rule 26(b)(3), but also upon the policies embodied by the rule, which is to preclude one attorney from 'perform[ing] [his] function either without wits or on wits borrowed from the adversary'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 516 (1947))).

### V.      Voice Signal Has Already Agreed To Disclose Information Regarding The Conception And Reduction To Practice Of Its '630 Patent.

Voice Signal has produced numerous documents relating to its '630 Patent, including a lab notebook, product descriptions and designs, license agreements, revenue summaries, cost sheets and bills of materials.  To the extent that Voice Signal has additional discoverable information concerning the '630 Patent in its possession, custody or control, Voice Signal will produce such information.

### Conclusion

For the reasons set forth above, as well as those set forth in Voice Signal's Opposition, ScanSoft's Motion to Compel should be denied.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  November 19, 2004 | VOICE SIGNAL TECHNOLOGIES, INC. |
|  | By its attorneys, |
|  | /s/ Paul E. Bonanno<br>Robert S. Frank, Jr. (BBO No. 177240)<br>Sarah Chapin Columbia (BBO No. 550155)<br>Paul D. Popeo (BBO No. 567727)<br>Paul E. Bonanno (BBO No. 646838)<br>CHOATE, HALL & STEWART<br>53 State Street<br>Boston, MA  02109<br>(617) 248-5000 |

3770257_1.DOC