**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SCANSOFT, INC. )<br>)<br>       Plaintiff, )<br>)<br>       v. )<br>)<br>VOICE SIGNAL TECHNOLOGIES, INC., )<br>LAURENCE S. GILLICK, ROBERT S. )<br>ROTH, JONATHAN P. YAMRON, and )<br>MANFRED G. GRABHERR )<br>)<br>       Defendants. ) | Civil Action No. 04-10353 PBS |

**JOINT MEMORANDUM REGARDING THE PARTIES'**
**OUTSTANDING DISCOVERY MOTIONS**

Plaintiff ScanSoft, Inc. ("ScanSoft") and defendant Voice Signal Technologies, Inc. ("VST") submit this Joint Memorandum Regarding the Parties' Outstanding Discovery Motions. During a hearing on November 10, 2004, the Court urged the parties to further confer in an attempt to resolve or narrow the issues raised in their respective motions to compel. The parties were directed to collaborate on and submit a joint filing detailing their respective positions on any outstanding issues not resolved by these additional discussions. This Joint Memorandum details the parties' positions on the remaining disputed issues originally presented in the pending motions to compel.

**I.    SCANSOFT'S REQUEST FOR VST'S SOURCE CODE**

<u>SCANSOFT'S POSITION</u>:

VST's source code is highly relevant to ScanSoft's patent infringement claim and should be produced immediately.[1] Pursuant to Fed. R. Civ. P. 26(b) (1), "parties may obtain discovery

---

[1] Additionally, VST's VSuite source code is fundamentally at issue and clearly relevant to ScanSoft's pending trade secret claims. Although VST has moved to dismiss those claims

regarding any matter, not privileged, that is relevant to the claim or defense of any party." This discovery encompasses any matter that affects or could affect anything at issue in the litigation. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) ("The key phrase [contained in Rule 26(b)(1)] – "relevant to the subject matter involved in the pending action" – has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case"). The party objecting to a discovery request bears the burden of demonstrating why such discovery is improper. *See e.g., Chicago Dist. Council of Carpenters Pension Fund v. D.P. Builders. Inc.,* 1997 WL 685021, *3 (N.D.Ill.1997); *E.E.O.C. v. Klockner H & K Machines, Inc.*, 168 F.R.D. 233, 235 (E.D.Wis. 1996) (citing 8 Wright and Miller, *Federal Practice and Procedure,* § 2173 at 543-544 (1970)). With respect to ScanSoft's repeated requests for the source code of VST's accused infringing product, VSuite, VST cannot meet this burden.

In an action for patent infringement concerning software, the source code of the accused infringing product is highly likely to contain relevant information. *See OpenTV v. Liberate Technologies*, 219 F.R.D. 474, 478 (N.D.Ca. 2003) (considering cost shifting issues related to the discovery of the source code of an infringing software product and finding "the requested source code is highly likely to contain relevant information"). As the source code of VST's VSuite product is the infringing software product itself, there can be no question that the source code is relevant to both ScanSoft's claims of infringement and VST's defenses on that claim. *See id.* at 477-478 ("the requested source code for the minor upgrades in [the accused infringing] products is relevant as it is the software product itself").

---

(and ScanSoft has strenuously opposed that motion), ScanSoft's trade secret claims remain in the case as of the filing of this Joint Memorandum and alone provide a sufficient basis to compel

Not only is the VSuite source code relevant, ScanSoft's ability to prove the basic elements of its infringement case is jeopardized if not given access to the source code. In order to fully evaluate infringement, ScanSoft needs access to VST's source code so that ScanSoft may determine whether the language of the claims is met.

For example, claim 1 requires "collecting digits representing a telephone number to be dialed." Thus, in order to infringe, VST's accused software must determine whether a string of digits (such as 6175551212 or 16175551212) is a length that corresponds to a telephone number, as opposed to a length that is too short or too long to operate as a telephone number. This determination happens at the source code level, not at the user interface level. Although the operation of the user interface suggests that this claim limitation is met, ScanSoft is entitled to discover this directly and make its case. Other claims of the '966 patent likewise require elements that are found in the source code, and are not readily apparent from the user interface alone, including, whether VST Speech Recognition Products verify the user's identity (as in claim 7), whether VST Speech Recognition Products comprise an interface with a mobile telecommunication switch and a voice recognizer capable of receiving commands and characters received through the interface (as in claim 20), whether the VST Speech Recognition Products utilize a system for voice activated dialing in which a voice recognizer and controller form a speech recognition node that acts as a shared resource that can be accessed by more than one switch (as in claim 29) and so forth. The documentation VST has produced is inadequate to reliably make all of these determinations.

---

VST to produce the requested source code.

Moreover, courts have explicitly held that marketing materials, presentations, and user-interface documents of the sort VST has provided are not an adequate substitute for the source code of an accused infringing product:

> The marketing and promotional documents . . . proffer[ed] do not disclose the accused product's source code. They do not provide technical details about the accused products operating steps . . . How an ordinary user perceives that an accused product works is not the test applied in a patent infringement action. Rather, the Court examines evidence concerning how the product actually operates. For example, with a computer product, the court examines its source code and related technical materials.

*Hilgraeve Corp. v. McAfee Assoc.*, 70 F. Supp.2d 738, 756 (E.D. Mich. 1999), *rev'd on other grounds,* 224 F.3d 1349 (Fed. Cir. 2000).

<u>VST'S POSITION</u>:

VST's source code is completely irrelevant to ScanSoft's infringement claim. ScanSoft's '966 patent claims a user interface for mobile telephones. It neither claims nor describes the software used to deliver the user interface. The written description depends entirely on flow chart diagrams which depict the invention.

VST has produced documents which describe in detail its user interface, including detailed flow chart diagrams. ScanSoft is able to evaluate infringement without VST's source code because it can evaluate those documents and it can and has studied VST's device (which it purchased).

The '966 patent claims require a mobile phone user to state a command of a "first type" (*e.g.*, the words "Digit Dial") or "second type" (*e.g.*, the word "Call"). If a mobile phone user states a first command type, the claimed invention then collects spoken digits (*e.g.*, "555-1000") representing a telephone number. If a mobile phone user states a second command type, the claimed invention then matches the subsequent spoken keyword (*e.g.*, "Home") to a stored telephone number.

ScanSoft does not need to review VST's source code to determine whether the accused products receive commands and respond to those commands. ScanSoft simply needs to examine the user interface of VST's product (*i.e.*, the mobile phone) and determine whether it receives a first command type (*e.g.*, "Digit Dial") or second command type (*e.g.*, "Call") and whether it then responds to such commands by dialing a number or finding a number associated with a spoken keyword. Contrary to ScanSoft's assertion above, none of the claimed features of ScanSoft's patent would require examination of VST's source code to determine infringement. Moreover, three of the claims cited by ScanSoft above are not even identified in ScanSoft's answer to Interrogatory 1 of VST's First Set of Interrogatories which requests that ScanSoft identify each claim of the '966 patent which ScanSoft alleges has been infringed.

ScanSoft's ability to "prove the basic elements of its infringement case" is not jeopardized. ScanSoft has purchased a phone equipped with VST's accused products and has provided VST with a claim chart based on its study of the user interface. Further, VST has produced documents which describe in detail the user interface of VST's products, including numerous flow chart diagrams detailing exactly how the command structures work.

Finally, the cases cited by ScanSoft both in its Supplemental Motion and this Joint Memorandum are off point and lend no support to ScanSoft's arguments. In *OpenTV v. Liberate Technologies*, 219 F.R.D. 474 (N.D. Cal. 2003), the defendant did not object to producing its source code. *Id.* at 476. Defendant's only argument was that it should not have to bear the cost of production. *Id.* Further, *Hilgraeve Corp. v. McAfee Assocs., Inc.*, 70 F. Supp. 2d 738 (E.D. Mich. 1999), illustrates that source code is relevant <u>only</u> when a user <u>cannot</u> determine infringement simply by using the accused product. Here, in contrast to *Hilgraeve*, a "user's

perspective" of the accused products, together with the detailed flow charts produced by VST, is sufficient to determine whether or not the accused products infringe.

## II.   VST'S REQUEST FOR SCANSOFT'S SOURCE CODE

<u>SCANSOFT'S POSITION</u>:

ScanSoft has agreed to produce technical documents, including source code, as part of a mutual exchange. However, in its motion to compel, VST seeks an Order from this Court compelling ScanSoft to produce technical documents, including the source code, for the ScanSoft products VST alleges infringe United States Patent No. 6,594,630 ("the '630 Patent"). As communicated to VST on numerous occasions, ScanSoft is perfectly willing to produce the source code VST seeks as part of a mutual exchange in which VST would also produce the source code for its VSuite line of products, which ScanSoft has accused of infringing United States Patent No. 6,501,966 ("the '966 Patent"). However, VST refuses to take part in a mutual exchange and insists that somehow only ScanSoft's source code is relevant to this litigation. VST's position is untenable.

To the extent the source code of ScanSoft's products is relevant to VST's claim of patent infringement and ScanSoft's defenses thereto, the source code for VST's accused infringing software product is equally relevant. *See OpenTV v. Liberate Technologies*, 219 F.R.D. at 478. Realizing the difficult position in which it places itself by demanding ScanSoft's source code while simultaneously seeking to preclude access to its own, VST relies on an extraordinary simplification in an attempt to reconcile these contradictory positions: VST claims that "ScanSoft simply needs to examine the user interface of VST's products" to determine infringement. *See* Memorandum in Support of VST's Motion to Compel at 5. VST's narrow view of ScanSoft's infringement case ignores ScanSoft's burden in proving literal infringement

and/or infringement under the doctrine of equivalents and entirely disregards the complexity of the technology at issue. There is no distinction to be made between the relevance of ScanSoft's source code and the relevance of the source code of VST's VSuite software.

Given the relevance of the source code of both parties' accused infringing products, the sensitive and propriety nature of that source code, and the fact that VST and ScanSoft are direct competitors, VST should not be permitted to shield its own source code while simultaneously demanding access to ScanSoft's source code. A mutual exchange of source code, as previously offered by ScanSoft, would allow the parties to move beyond the discovery impasse created by VST and proceed with developing the infringement claims and defenses which are the subject of this litigation.

VST'S POSITION:

VST has alleged that ScanSoft has infringed its '630 Patent, which is directed to an invention called "Voice-Activated Control for Electrical Device." VST requested that ScanSoft produce technical documents, including source code, concerning the ScanSoft products that are the subject of VST's infringement claim. ScanSoft has refused to produce these documents, claiming that it is not obligated to produce its technical documents unless VST also produces its own technical documents. ScanSoft's position has no legal merit and completely ignores the significant differences between ScanSoft's '966 patent and VST's '630 patent.

The invention claimed in the '630 patent enables the control of electronic devices through human speech. The '630 patent claims, among other things, the use of a "Hidden Markov Model" for comparing spoken commands to stored speech recognition data. A Hidden Markov Model is a complex statistical model that uses algorithms to recognize patterns in data. Products incorporating the '630 patent include a Hidden Markov Model in their software. A ScanSoft

product might infringe the '630 patent if, for example, its software employs a Hidden Markov Model to compare spoken commands to stored speech recognition data. To determine whether the software of a ScanSoft product employs a Hidden Markov Model, VST must examine the source code for the product.

In its First Set of Document Requests (the "Requests"), VST requested that ScanSoft produce documents relating to the technical specifications for ScanSoft's products. In its Responses to the Requests, ScanSoft stated that it does not have to produce technical documents such as its source code because "[i]t would be unfair for ScanSoft to be forced to produce documents that VST refuses to produce, especially given that each party is asserting a patent infringement claim against the other in the same field."

ScanSoft's simple "quid pro quo" argument ignores the differences between the two patents at issue. The '630 patent pertains to the inner workings of a speech recognizer. As explained above, VST's '630 patent claims the use of a particular mathematical model – a Hidden Markov Model – to compare spoken commands to stored data. The only way VST can determine whether a ScanSoft product similarly employs a Hidden Markov Model is by examining the inner workings, *i.e.*, the source code, for ScanSoft's products. By refusing to produce source code documents, ScanSoft has virtually precluded VST from establishing infringement of the '630 patent.

### III. SCANSOFT'S REQUEST FOR DOCUMENTS CONCERNING THE TECHNICAL DEVELOPMENT OF THE ACCUSED PRODUCTS

SCANSOFT'S POSITION:

Documents concerning the technical development of the accused products, namely VSuite, are highly relevant and should be produced. Just as VST's source code is highly relevant to a determination of whether VST infringes ScanSoft's patent, so are VST's documents

concerning the technical development of its accused products. ScanSoft's requests are limited to documents describing the accused products (Request Nos. 7, 10, 11). Again, such documents are relevant to both a literal infringement analysis and an equivalents infringement analysis based on a function-way-result test. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 (1997)(equivalence is determined by applying a three-step "function-way-result" test).

Moreover, documents concerning VST's development of the accused VST Speech Recognition Products are clearly relevant to rebut any obviousness defense VST may present. Development documents, such as scientists' notebooks, status reports and the like, often present a detailed chronology of the conception and reduction to practice of the accused product. To the extent such a chronology evidences frustrations, obstacles or difficulties encountered in the development process, those documents are directly relevant to rebut the assertion that the patent covering the accused product is obvious.

The technical development documents (i.e. inventors' notes, design documents, notebooks, etc.) sought by ScanSoft are necessary to test VST's contention of non-infringement, its assertion that it did not utilize the technology covered by the '966 patent and its defense based on the purported invalidity of the patent. They should be produced immediately.

VST'S POSITION:

ScanSoft seeks documents concerning VST's development of the accused products, yet cites no legal authority supporting its argument that these documents are relevant. Nor does it state a basis for their discoverability.[2]  VST's development documents are irrelevant to

---

[2] The only case cited by ScanSoft is *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1977). The *Warner-Jenkinson* case discusses infringement under the doctrine of

ScanSoft's infringement claim. What VST tried and tested during the development process cannot be relevant to ScanSoft's claim for infringement. ScanSoft's infringement claim can relate only to the accused VST products that were actually made, used, offered for sale or sold. If a method tested during the development process did not make its way into VST's final products, it could not possibly infringe ScanSoft's '966 patent. On the other hand, if a method tested during development did make its way into VST's products, then ScanSoft need only examine the numerous documents VST has already produced regarding its products to conduct an infringement analysis. In short, ScanSoft cannot genuinely assert that it needs to see development documents to determine whether VST's products infringe the '966 Patent. *See Applera Corp. v. MJ Research, Inc.*, 311 F. Supp. 2d 263, 272 (D. Conn. 2004) (holding that manufacturing process for patented product was "legally irrelevant" to infringement analysis where patent did not claim manufacturing process); *Advanced Semiconductor Products, Inc. v. Tau Labs, Inc.*, 229 U.S.P.Q. 222, 224 (N.D. Cal. 1986) (refusing to compel information on manufacturing processes since plaintiff "should be able to determine if there is infringement primarily by comparing the products of the competitors.").

### IV. SCANSOFT'S REQUEST FOR PATENTS, PATENT APPLICATIONS AND INVENTION DISCLOSURES FOR SPEECH RECOGNITION TECHNOLOGY OWNED BY VST

SCANSOFT'S POSITION:

VST's patents, patent applications and invention disclosures for speech recognition technology owned by VST should be produced immediately. VST persists in its refusal to produce any patent application or invention disclosure embodying the technology contained in

---

equivalents but says nothing about the discoverability or relevance of development documents in a patent infringement case.

VST's VSuite line of speech recognition products.  "Generally, the courts have employed a balancing test in determining whether or not to permit discovery of a patent application, weighing the requesting party's interest in the materials against the objector's legitimate interest in the secrecy."  *In re: Columbia University Patent Litigation*, 330 F. Supp.2d 18, 20 (D.Mass. 2004) (Wolf, J.).  Because the information sought here is highly relevant to ScanSoft's patent infringement claims, and because a protective order will appropriately limit access to this sensitive information, the requested patent applications and invention disclosures should be produced.

First, ScanSoft's discovery request is limited to patent applications and related materials embodying the technology of the infringing VSuite products.  Statements made and positions taken by VST in those patent applications are directly relevant to ScanSoft's infringement claims because, *inter alia*, they are likely to provide evidence of the prior art and the operation of the accused products (including how they work which is at the heart of the doctrine of equivalence).  *See Paper Converting Machine Co. v. Magna-Graphics Corp.,* 207 U.S.P.Q. 1136 (E.D.Wis. 1980) ("There is no question that the patent application is reasonably calculated to lead to the discovery of admissible evidence since it contains a full description of the allegedly infringing machine and a statement of the prior art.").  The direct relevance of the information sought weighs heavily in favor of disclosure.  *See id.*; *see also In re: Columbia Patent Litigation*, 330 F. Supp.2d at 20.

Second, although ScanSoft and VST are direct competitors, VST's business concerns regarding the confidentiality of the information contained in its pending patent applications are fully addressed by the protective order to which the parties have stipulated.  *See Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1186 (D.S.C. 1974) (holding, where a sufficient

showing of relevancy has been made, the disclosure of pending patent applications may be compelled under a protective order).

VST'S POSITION:

It is well established that "materials relating to patent applications are confidential, and, therefore, enjoy a degree of protection against disclosure." *In re Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 18, 20 (D. Mass. 2004). For that reason, "courts have uniformly recognized that a heightened relevancy standard must be applied to patent applications and materials related thereto." *Id.* Under this heightened relevancy standard, ScanSoft has failed to satisfy its burden to make a "clear showing" that VST's highly confidential patent applications are relevant to its infringement claim.

The heightened relevancy standard for patent applications was applied in *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146 (D.S.C. 1974), cited above by the Plaintiff. In the *Duplan* case, the court held that patent applications did *not* have to be produced because they constituted confidential trade secrets and the parties seeking discovery had "not made a sufficiently clear showing that the patent applications and other technical information sought are relevant to issues involved in this litigation." *Id.* at 1186. The court explained that "the disclosure of abandoned or pending patent applications may be compelled under a protective order *only* where there is a *clear showing* of the relevancy of the applications to the issues involved in the present litigation." *Id.* (emphasis added).

ScanSoft has not -- and cannot -- make a "clear showing" that VST's patent applications are relevant to its infringement claim. ScanSoft weakly argues that VST's patent applications are relevant because they are likely to provide evidence of "the prior art and the operation of the accused products. "ScanSoft cites *Paper Converting Machine Co. v. Magna Graphics Corp.*, 207

-12-

U.S.P.Q. 1136 (E.D.Wis. 1980), to support this argument, but in that case the defendant's pending patent application was arguably the only document that described the operation of the product. Here, the operation of VST's accused products is sufficiently described in the documents VST has already produced. ScanSoft does not need VST's patent applications to determine how VST's products function. *See In re Columbia Univ. Patent Litigation*, 330 F. Supp. 2d at 20 ("If the plaintiff in a patent infringement suit can obtain sufficient information regarding the accused products from other sources, discovery of the defendant's patent applications will be denied.").

## V.    SCANSOFT'S REQUEST FOR PRIOR ART

SCANSOFT'S POSITION:

Prior art is discoverable in a patent infringement case and should be produced. ScanSoft's Request Nos. 28 and 29 seek prior art documents with respect to the '966 patent. VST refuses to produce any such documents. VST seeks to defer document production of these documents until at least 30 days prior to trial in accordance with 35 U.S.C. §282. To the extent that VST intends to challenge the validity of the '966 patent, it must certainly rely upon prior art documents. The discovery process has as its purpose the exchange of facts, such as essential prior art, so that each party can evaluate and prepare its position. *Vectra Fitness, Inc. v. Icon Health & Fitness, Inc.* 288 F.Supp.2d 1155, 1161 (W.D. Washington 2003) ("35 U.S.C. §282 does not preclude the court from requiring the disclosure of prior art within the discovery deadline set by the court, well before the statutory limit").

Voice Signal argues that prior art provided to the defendants by counsel are protected by the work-product doctrine. Prior art patents and publications that manifest any aspect of the challenged invention are facts; they must be produced during discovery. *Upjohn Company v.*

-13-

*U.S.*, 449 U.S. 383, 396 (1981)(party may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney).  While litigation counsel's prior art searches and the analytical results of those searches might constitute work product if prepared for purposes of litigation, their factual underpinnings are not protected. The mere identity of relevant prior art is a factual matter subject to discovery and does not reflect any work product whatsoever.  *Lakewood Engineering and Mfg. Co. v. Lasko Products, Inc.,* 2003 WL 1220254 (N.D.Ill. 2003)(identification of prior art references discovered by defendant's searching does not convey mental impressions, thoughts, or other protected work product of its counsel and must be produced). ScanSoft made a proper request for prior art known to defendants, which would include the fruits of any search even if the search itself was done for purposes of litigation. Request No. 43 calls for prior art "….known to, considered by, or identified to you that constitutes, contains, discloses, refers to, relates to, or embodies any art relating or analogous to the subject matter of any claim of the '630 patent."

Even the case relied upon by Voice Signal recognizes the propriety of such a request. *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 508, 512 (S.D.N.Y. 1992) (patentee may be asked to "identify any patents or other inventions known to plaintiffs that may embody some or all of the specific techniques of the process covered by the challenged patent, irrespective of whether plaintiff's knowledge of those patent and inventions was acquired by means of the prior art search commissioned by their attorneys.").  The underlying facts, i.e., the prior art known to the defendants is discoverable.

VST'S POSITION:

ScanSoft seeks disclosure of all prior art discovered by VST's attorneys.  VST first learned of the existence of ScanSoft's '966 patent when ScanSoft filed this lawsuit.  VST's

-14-

subsequent analysis, including its prior art searches were conducted "in anticipation of litigation or for trial." Thus, they are protected from discovery by the attorney-client privilege and the work-product doctrine. Fed. R. Civ. P. 26(b)(3).

The fruits of VST's prior art searches clearly constitute attorney work produce because they are the product of counsel's fact discovery efforts[3]. *See Sawgrass Systems, Inc. v. BASF Aktiengesellschaft*, 1999 U.S. Dist. LEXIS 9437, at *13-14 (E.D. Mi. 1999) (quashing subpoena and request for documents obtained during prior art search, holding that "[Defendant's] prior art search is analogous to an attorney's selection and compilation of documents in anticipation of litigation, which is protected by the work-product doctrine"). *See also Golden Trade, S.r.L. v. Jordache,* 143 F.R.D 508, 511 (S.D.N.Y. 1992) ("the [prior art] search was made to aid in current and anticipated litigation, and hence its fruits come squarely within the ambit of the work-product doctrine . . . . Disclosure of [this information would] allow defendants in effect to appropriate the research labors and, to a degree, the analysis of the attorney's agent, and in that respect the request for disclosure touches not merely upon the literal definition of work product found in Rule 26(b)(3), but also upon the policies embodied by the rule, which is to preclude one attorney from 'perform[ing] [his] function either without wits or on wits borrowed from the adversary'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 516 (1947))).

---

[3] ScanSoft's statement that facts may not be protected under the work product doctrine misses the mark and ignores the case law supporting VST's position.

Dated: December 2, 2004

| | |
|---|---|
| VST TECHNOLOGIES, INC. | SCANSOFT, INC., |
| By its attorneys, | By its attorneys, |
| s/ Wendy S. Plotkin | s/ Jack C. Schecter |
| Robert S. Frank, Jr., BBO #177240 | Lee Carl Bromberg, BBO #058480 |
| Sarah Chapin Columbia, BBO #550155 | Robert Asher, BBO #022865 |
| Paul D. Popeo, BBO #567727 | Julia Huston, BBO #562160 |
| Paul E. Bonanno, BBO #646838 | Lisa M. Fleming, BBO #546148 |
| CHOATE, HALL & STEWART | Jack C. Schecter, BBO #652349 |
| 53 State Street | BROMBERG & SUNSTEIN LLP |
| Boston, Massachusetts 02109 | 125 Summer Street |
| (617) 248-5000 | Boston, Massachusetts 02110-1618 |
| | (617) 443-9292 |

02639/00509 348757.1