UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC. <br><br> Plaintiff, <br><br> v. <br><br> VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR <br><br> Defendants. | Civil Action No. 04-10353 PBS <br><br> **ORAL ARGUMENT REQUESTED** |

**SCANSOFT, INC.'S REPLY IN SUPPORT OF ITS OBJECTIONS TO ORDER OF MAGISTRATE JUDGE DENYING PRODUCTION OF VOICE SIGNAL'S TECHNICAL DEVELOPMENT DOCUMENTS AND PATENT APPLICATIONS**

ScanSoft submits this Reply in support of its Objections to the Magistrate Judge's Order denying production of (1) VST's technical development documents and (2) VST's pending patent applications, both relating to accused infringing speech recognition products. These rulings by the Magistrate Judge are clearly erroneous and contrary to law because the documents sought are directly relevant to patent infringement and validity issues. In addition, they are clearly relevant to ScanSoft's trade secrets and 93A claims, now unmistakably part of this case after this Court's ruling of January 26, 2005, which requires discovery on the trade secrets and 93A claims.

**INTRODUCTION**

In this case, now thirteen months old, VST's response to routine discovery requests has been massive resistance in violation of the requirements of the Federal Rules of Civil Procedure and the Orders of this Court. For example, although under order since January 14 to produce

source code for the accused infringing speech recognition software products, VST has simply refused to comply, and continues to defy this Court's orders.  As a result, thirteen months in and after three extensions of the discovery deadline and related Court scheduling dates, VST has to date provided *no* discovery on the trade secrets claims and no meaningful discovery on the patent claims.  VST apparently seeks to conceal the evidence of its misappropriation of ScanSoft's intellectual property rights while simultaneously running out the clock on the discovery period, in a calculated strategy to prevent the relevant evidence from ever coming to light.[1]

In pursuit of its strategy, VST has resorted to misleading statements that appear to violate its obligations of candor to the Court.  For example, VST argued to Magistrate Judge Alexander that it would produce technical development documents predating the priority date of ScanSoft's patent, and the Court duly ordered:  "VST must, however, produce the documents pre-dating the April 1992 priority date of ScanSoft's patent that VST offered to produce during the December hearing."  January 14, 2005 Order at 6.  But VST was not founded until 1995; hence no such documents exist!  VST's disingenuous argument led to the empty and misleading "compromise" position to be incorporated into the Court's Order. The Court should make clear that VST's misleading statements and its resistance to routine discovery requests (such as for technical development documents and pending patent applications for the accused infringing products), will not be tolerated, because these actions violate both its obligations under the Rules and this Court's Orders.

---

[1] So far this strategy is working for VST.  The discovery deadline, now May 30, 2005, is fast approaching and at the time of the last extension, Magistrate Judge Alexander stated that in her view no further extensions should be granted.

**ARGUMENT**

**I.   THE TECHNICAL DEVELOPMENT DOCUMENTS ARE RELEVANT TO INFRINGEMENT AND TO THE OBVIOUSNESS AFFIRMATIVE DEFENSE.**

Technical development documents for the accused VST infringing speech recognition software products are relevant to how that software functions.  Hence the documents are directly relevant to the issue of infringement, both literally (*Markman)* and under the doctrine of equivalents (*Warner-Jenkinson*).  The first four words of claim 1 of ScanSoft's '966 patent call for "A *speech recognition* method…."  Col. 12, line 21(emphasis added).  VST sells *speech recognition* software products for mobile phones.  Thus, VST's technical development documents concerning the research, design, development, specific operating parameters and performance capabilities of the software products accused of infringing ScanSoft's '966 patent are directly relevant to ScanSoft's patent infringement claims.

Automatic speech recognition is a highly technical field which presents great challenges.  People do it very well; machines only with great difficulty.  Hence the development of VST's accused infringing speech recognition software products has been a laborious undertaking over several years.  As VST's President Dan Roth himself admits: "speech technology has been disappointing people for 20 years." (*The Boston Globe* article dated June 7, 2004, attached as Exhibit A.)  VST's technical documents describing how the source code works are relevant.[2]

---

[2]   Despite a "clarification" from the Magistrate Judge on February 15, 2005, that explicitly ordered Voice Signal to produce the entire source code of the infringing products, to date, Voice Signal has refused to comply with the Magistrate Judge's order.  Of course, Voice Signal's continued refusal to comply with the Order is not excused by the fact that it has filed objections with respect to that order.  *See* Local Rules for the United Stats Magistrate Judges, 2(c).

The Magistrate Judge correctly ruled that source code was relevant. Her ruling that the related technical development documents were not was clear error. In addition, because the decisions made during the development process are likely to highlight any obstacles or challenges faced by VST in developing the infringing software, the discovery is also relevant to rebut VST's obviousness affirmative defense.

VST's technical development documents concerning the research, design, development, specific operating parameters and performance capabilities of the software products accused of infringing ScanSoft's '966 patent are directly relevant to proving infringement, under both the literal test and the doctrine of equivalents, because they are likely to provide evidence of *how* the software operates. *Hilgraeve Corp. v. McAfee Assoc.*, 70 F.Supp.2d 738, 756 (E.D. Mich. 1999) ("in a patent infringement action . . . the Court examines evidence concerning how the product *actually* operates. For example, with a computer product, the court examines its source code and related technical materials"), *rev'd on other grounds*, 224 F.3d 1349 (Fed. Cir. 2000). In fact, the '966 patent claims precisely "[a] speech recognition method…." The requested technical development documents are likely to set forth in great detail the origin and version history of the accused infringing software, including information and comments regarding design goals, the status of the development, and whether or not the goals were achieved in the final VST products now accused of infringement. Not only is this information relevant, it is highly probative of the way in which the software is designed to function and likely to be illustrative of what the accused VST speech recognition products actually do. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997) (the "way" that an accused product performs substantially the same "function" as in each element of an asserted claim is analyzed, as is the "result" achieved by the invention).

4

VST's argument that an observer (including ScanSoft's Chief Technology Officer Mike Phillips) can determine infringement by operating a cell phone containing one of VST's accused infringing speech recognition software products is beside the point. *See Hilgraeve Corp*, 70 F.Supp.2d at 756 ("This Court is not persuaded by Hilgraeve's "user-perspective" argument. How an ordinary user perceives that an accused product works is not the test applied in a patent infringement action."). An auto mechanic (or a driver) can tell that a car will run by turning the ignition key and hearing the engine. A look at the engine, however, is still relevant to determining how it operates and what its characteristics are. Similarly here, a look at VST's speech recognition engine software is relevant to how it works, what its characteristics and features are and thus whether it infringes. Documents concerning those characteristics are unmistakably relevant to the infringement inquiry.

The technical development documents are also relevant to the obviousness inquiry, even if after the patent grant. It is well established that developments subsequent to issuance of the patent are relevant to a validity challenge. As the Federal Circuit stated last year in *Knoll Pharmaceutical Co., Inc. v. Teva Pharmaceuticals USA, Inc.,* 367 F.3d 1381, 1385 (Fed.Cir. 2004): "Evidence developed after the patent grant is not excluded from consideration …. It is not improper to obtain additional support consistent with the patented invention, to respond to litigation attacks on validity…. Nor is it improper to conduct additional experiments and provide later-obtained data in support of patent validity." Here VST's later struggles to build software that performs the speech recognition methods claimed in the '966 patent provide strong support for the non-obviousness of the invention. In addition, failures of others, such as VST, to find the elegant solution of the '966 invention to voice dialing in a mobile phone is an objective criterion that must always be considered in weighing evidence of nonobviousness. *Knoll Pharmaceutical*,

5

367 F.3d at 1385. If the development program of VST's accused infringing software was fraught with challenges, obstacles and failures years after the '966 invention was made, such evidence would be highly relevant to whether or not the invention would have been obvious prior to April 13, 1992.

Finally, as an alternative to its relevancy arguments, VST argues that the technical development documents ScanSoft seeks are not necessary because "one can determine whether VSuite infringes the '966 patent merely be comparing the claims of the patent with the actual operation of the accused product" (Response at 2). But ScanSoft's discovery requests should not be limited to the information VST thinks ScanSoft needs to demonstrate infringement. The discovery rules do not allow VST to refuse to produce information that could be relevant to the issues in dispute simply because it has made a judgment that ScanSoft has received enough information. VST's conduct flies in the face of the Federal Rules governing discovery, and, to the extent the Magistrate Judge's Order countenanced that conduct, the Order is contrary to law.

## II.  PATENTS, PATENT APPLICATIONS AND INVENTION DISCLOSURES CONCERNING THE TECHNOLOGY EMBODIED IN THE ACCUSED INFRINGING SOFTWARE PRODUCT ARE HIGHLY RELEVANT AND SHOULD BE PRODUCED.

VST's website boasts that "VoiceSignal technology and applications are developed internally, and VoiceSignal has filed more than 20 patents for our technology," (http://www.voicesignal.com/solutions/tech.php3., visited March 3, 2005). To the extent that those pending patents claim and are descriptive of the technology of the software products accused of infringing ScanSoft's '966 patent, they are highly relevant to that infringement inquiry. Moreover, patent applications claiming the technology contained in the accused software products are likely to be quite relevant to the claim construction of the '966 patent. For

6

example, statements made by VST in distinguishing the technology contained in the accused infringing products from the prior art would certainly be relevant to weighing the legitimacy of the positions taken by VST in its attempts to construe the terms of the '966 patent.[3]  If VST's patent applications claim the technology contained or embodied in the accused infringing products, the clear relevancy of those applications necessitates their production.

VST's protests about the confidentiality of its pending applications are disingenuous. What VST has not told the Court is that its patent filing strategy includes electing coverage outside the United States, which means that pending applications will be published 18 months after filing.  35 U.S.C. § 122(b).  At least a dozen VST applications relating to speech recognition have already been published, and the choice to file the applications places the information contained within them in the public domain in 18 months.  Hence VST's own conduct in filing "more than 20 patents for [its speech recognition] technology," has put in motion the process which will publicly disclose its purported confidential information.

## CONCLUSION

For the foregoing reasons, as well as those set forth in ScanSoft's Main Memorandum of Objections, VST should be compelled to produce documents responsive to ScanSoft's requests for technical and development documents (Plaintiff's First Set of Document Requests, nos. 7, 10 and 11) and ScanSoft's request for patent applications and related documents concerning the technology contained in or embodied in, or used by, the accused infringing VST speech recognition software products (Plaintiff's First Set of Document Requests, no. 21).

---

[3] In an argument ad absurdum, VST challenges ScanSoft to point to language in the VST patent documents that VST refuses to produce in support of its position.

Dated:  March 11, 2005                          SCANSOFT, INC.,
                                                By its attorneys,


                                                /s/ Jack C. Schecter
                                                Lee Carl Bromberg, BBO #058480
                                                Robert Asher, BBO #022865
                                                Julia Huston, BBO #562160
                                                Lisa M. Fleming, BBO #546148
                                                Jack C. Schecter, BBO #652349
                                                BROMBERG & SUNSTEIN LLP
                                                125 Summer Street
                                                Boston, Massachusetts 02110-1618
                                                (617) 443-9292
                                                lfleming@bromsun.com


02639/00509  368591.1