## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>VOICE SIGNAL TECHNOLOGIES, INC.,<br>LAURENCE S. GILLICK, ROBERT S.<br>ROTH, JONATHAN P. YAMRON, and<br>MANFRED G. GRABHERR,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)   **C.A. No. 04-10353-PBS**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VOICE SIGNAL TECHNOLOGIES, INC.'S
## MEMORANDUM IN SUPPORT OF ITS OBJECTIONS TO THE
## MAGISTRATE JUDGE'S ORDER REGARDING TRADE SECRETS

Voice Signal Technologies, Inc. ("Voice Signal") submits this memorandum in support of its objection to the Magistrate Judge's Order compelling the defendants to produce all documents that reflect the work done by each individual defendant in the year following his initial employment by Voice Signal. (Docket entry 115, a copy of which is attached as Exhibit A to the Declaration of Wendy S. Plotkin filed herewith.)

The present dispute arises from ScanSoft, Inc.'s ("ScanSoft") relentless attempts to use this litigation to gain access to Voice Signal's most sensitive and proprietary assets – including its source code – this time on the thin reed of a trade secret misappropriation claim based upon supposed secrets that ScanSoft has never been able to identify.

1

As this Court has recognized, Voice Signal and ScanSoft are "head on competitors."[1] ScanSoft's attempt to obtain the source code for Voice Signal's cell phone voice dialing product has stalled. ScanSoft initially argued that it needed this source code to determine whether Voice Signal infringes ScanSoft's U.S. Patent No. 6,501,966. The Court correctly recognized that it could not properly decide whether the source code was relevant and discoverable until the Court (1) had the benefit of a technical tutorial, and (2) construed the claims of the '966 patent.[2] Ex. B, pp. 8 - 15. The Court noted, correctly, that Voice Signal's source code is an extremely valuable trade secret that may never be relevant to ScanSoft's patent claims. Ex. B., p. 11. Voice Signal submits that, when the Court understands the patent-related issues in this case, it will conclude that Voice Signal's source code is utterly unrelated to any patent-based issue in this case, and that ScanSoft's efforts to obtain that source code have nothing to do with proving patent infringement.

Voice Signal asks that this Court approach ScanSoft's trade secret claim as it has approached ScanSoft's patent infringement claim: determine first the legitimate scope of the claim, *then* decide what Voice Signal must produce. The case law identifies two potential procedural approaches. The preferred process, which Voice Signal requested of the Magistrate Judge, is to compel ScanSoft to identify the specific trade secrets it believes were misappropriated before further discovery is ordered. This step will produce two critical benefits. First, it will allow Voice Signal to demonstrate, in a summary judgment proceeding, that some or all of the alleged secrets are in the public domain, thus obviating the need for some or all

---

[1]  Transcript of March 16, 2005 hearing, p. 4 (copy attached at Ex. B). All Exhibits cited to are attached to the Plotkin Declaration filed herewith.

[2]  Voice Signal has produced the source code for voice dialer user interface. It has refused to produce source code unrelated to that voice dialer user interface that is unrelated to the claims of the '966 patent.

discovery of Voice Signal's trade secrets, and greatly simplifying or eliminating the trade secrets part of this case. Second, a specific identification of the allegedly misappropriated information will allow the Court to tailor the discovery of Voice Signal's development efforts to ScanSoft's actual allegations, rather than allowing ScanSoft indiscriminate access to Voice Signal's trade secret information.

As an alternative or supplemental procedure, Voice Signal requests that the Court engage a neutral expert to review and compare the documents that allegedly contain ScanSoft's trade secrets with Voice Signal's relevant documents and source code and advise the Court whether there is *any* evidence to support an allegation that Voice Signal misappropriated any actual ScanSoft trade secret. The Court could then make informed discovery rulings with respect to any particular alleged trade secret that survives the screening process.

Finally, Voice Signal objects to the Magistrate Judge's Order insofar as it requires production of the work of defendant Manfred Grabherr. ScanSoft alleges that its trade secrets are embodied in a product called "Dragon Naturally Speaking." This product was developed by Dragon Systems, Inc. ("Dragon"). Dragon was acquired by L&H Holdings, N.V. in 2000. Certain of the former Dragon assets are now owned by ScanSoft. However, Mr. Grabherr was never employed by Dragon, and he was never given access to the source code or development documents for Dragon Naturally Speaking. He, therefore, could not possibly have misappropriated a trade secret that was contained in Dragon Naturally Speaking. There is no basis whatever for requiring an examination of Mr. Grabherr's work product at Voice Signal.

## BACKGROUND

This action is part of a larger commercial struggle to determine which companies will succeed in the market to supply the software that allows mobile phones to be controlled and used

by human voice. Voice Signal is a pioneer in that market. It was founded in 1995 by two twenty-two-year-old friends prior to their graduation from college. It is today a sixty-two-person company. Because of its highly proprietary innovations, Voice Signal is now the preferred provider of voice recognition interfaces for mobile phones for several of the world's largest and most successful manufacturers, including Motorola, Samsung, Nokia, Curitel, Panasonic and Palm. Roth Aff., ¶ 1. This technology and, in particular, the source code for Voice Signal's products, is central to the instant dispute. It is, quite literally, the most competitively significant material in this market segment, and it is a fiercely-guarded trade secret.

ScanSoft is a publicly-traded multinational corporation whose market capitalization is approximately $400,000,000. Late in 2001, ScanSoft purchased certain speech recognition assets from the L&H bankruptcy estate. L&H's signature speech recognition product was "Dragon Naturally Speaking," a speech-to-text dictation system that was designed by Dragon and was used on full-sized desk-top computers. Thereafter, ScanSoft used its considerable financial resources to acquire the assets of several other companies in the speech recognition field, including those of SpeechWorks and Royal Phillips Electronics. Despite these acquisitions, ScanSoft did not have, and ScanSoft failed to develop successfully, software that allows cell phones to be controlled and used by human voice. In stark contrast to Voice Signal's unique software, ScanSoft's technology was simply not suited to the low processing power and ultra small memory environment of mobile phones.

ScanSoft tried to enter the mobile phone segment. However, by late October, 2003, ScanSoft's assessment was that "Voice Signal has a big foot in [the mobile phone] market," and that ScanSoft was "very late in this market" Exhibit C, at SS0163352. ScanSoft concluded that the market segment was attractive, but that ScanSoft did not have a competitive product. As

ScanSoft's sales management personnel observed, "the targets are all here and clear to sales. ...
[However],[w]ithout the bullet, how can we ask our soldiers in the field to shoot those targets?"
Ex. C, at SS016321. ScanSoft identified Voice Signal and ART Advanced Recognition
Technologies, Inc. ("ART") as the leading providers of mobile handset voice recognition
technology. It observed that, "with ART on the low end and VoiceSignal on the high end, we
might be blocked out of the dialing market." Ex. C, at S016356. Ultimately, ScanSoft
concluded that it was so far behind that it would "need to partner and/or acquire to enter this
market in a timely fashion...." Ex. C, at SS016366.[3]

Shortly thereafter, ScanSoft approached both Voice Signal and ART to pursue acquisition
discussions. When Voice Signal was not willing to be acquired on ScanSoft's terms,
negotiations ended and ScanSoft commenced this litigation and announced the lawsuit in a press
release at the year's largest trade show for mobile phones. Roth Aff., ¶ 2.

ScanSoft apparently pursued a similar "negotiation strategy" with ART. When
negotiations between those companies broke down, ScanSoft promptly sued ART, alleging
infringement of the same patent that it alleges is infringed by Voice Signal.[4] Ultimately, the

---

[3] One might ask how it could be that if ScanSoft has the very trade secrets that the defendants allegedly "stole" and
then used to make VST's mobile handset voice recognition products, ScanSoft was unable to use those very same
trade secrets to make its own products.

[4] *See* ART Advanced Recognition Technologies, Inc.'s Opening Memorandum of Law Supporting its Motion for
Summary Judgment on Non-Infringement of U.S. Patent No. 6,501,966, p.7, filed August 16, 2004:

> "After ART rejected ScanSoft's attempt to acquire its technology, ScanSoft filed
> this infringement action against ART. (The Court is aware that this apparently
> is a negotiating style for ScanSoft, which followed the same pattern in bringing
> the Voice Signal Technologies case now pending before the Court.) It appears
> that ScanSoft filed this suit with the intent to retard ART's ability to enter a
> business relationship with anyone other than ScanSoft, and ScanSoft's strategy
> has, to date, worked, with a potential acquirer deferring its discussion with ART
> because of this lawsuit."

ScanSoft/ART litigation was "settled" when ART relented, and agreed to be acquired by ScanSoft.[5]

Voice Signal has had no further acquisition discussions with ScanSoft (and does not wish to), and this litigation continues. Roth Aff., ¶ 4. The instant motion seeks access to the very "high end" source code and ideas that allow Voice Signal to sell a product that ScanSoft could not develop itself and did not obtain when it purchased ART's "low-end" technology.

## PROCEDURAL CONTEXT

On April 14, 2004, this Court granted Voice Signal's motion to dismiss ScanSoft's original trade secrets claims. It held that ScanSoft's claim was identical to a claim previously alleged by L&H and thereafter dismissed with prejudice.[6] One month later, ScanSoft filed its Amended Complaint. It made the same allegations as were in its original Complaint, but added a conclusory statement, "on information and belief," that the defendants' alleged trade secret misappropriation was "ongoing." ScanSoft did not identify any ScanSoft trade secret that Voice Signal was using. On June 14, 2004, Voice Signal filed a motion to dismiss the amended trade secrets claims, on the grounds that ScanSoft had not alleged any fact that supported its wholly conclusory allegations.[7]

---

[5] The Court's docket reflects that *ScanSoft v. ART*, Case No. 04-18840, was settled and dismissed on November 15, 2004. That same day, ScanSoft and ART announced that they had reached an agreement for ScanSoft to acquire ART.

[6] It is undisputed that, in 2001, L&H instituted a Massachusetts state court action against Voice Signal, and defendants Gillick, Roth and Yamron alleging that the defendants "inevitably" would disclose (never identified) trade secrets by virtue of their employment at Voice Signal. It is further undisputed that during more than one year of litigation, L&H never did claim (and never could claim) that any defendant actually misappropriated anything from L&H, or improperly disclosed anything to Voice Signal. It is undisputed that L&H's misappropriation claim was not transferred to ScanSoft. It was dismissed, with prejudice, in early 2003.

[7] The Magistrate Judge made clear that during the pendency of Voice Signal's motion to dismiss, discovery would only go forward on ScanSoft's patent infringement claim. See Docket Entry 72.

On January 20, 2005, this Court entered an order adopting The Magistrate Judge's Report and Recommendation, denying Voice Signal's motion to dismiss the trade secret claims. The Court noted that "[w]hile [Voice Signal's] objections have some force, this dispute is better resolved on a motion for summary judgment." *See* Docket Entry dated 1/20/05. Voice Signal immediately served interrogatories asking ScanSoft to identify, with particularity, the trade secrets that ScanSoft alleges are being misappropriated. Voice Signal also filed a motion to expedite ScanSoft's response. When ScanSoft did not identify any allegedly misappropriated trade secret, Voice Signal promptly filed a "Motion for Protective Order Compelling Identification of Trade Secrets." (Docket Entry 97).

On March 16, 2005, this Court held a hearing on the Magistrate Judge's earlier order regarding patent-related discovery. As is relevant here, the Court declined to order Voice Signal to produce its source code and development documents until the Court had the benefit of a technology tutorial and a Markman Hearing. The Court said (1) that claim construction might end the patent side of this case; and (2) that, in any event, the Court needed to understand better the patent issues so that it could make informed decisions with respect to further discovery.

When it became evident that ScanSoft's argument that ScanSoft needed Voice Signal's source code for patent infringement purposes was not achieving its objective, ScanSoft's counsel reversed field and argued that the source code should be produced because it might reveal the use of a ScanSoft trade secret. The Court deferred deciding the question, as it had been referred to the Magistrate Judge, but commented – without benefit of briefing – that a reasonable scope of discovery might be the work done by each individual defendant during the year after he joined Voice Signal. Ex. B, p. 17. Apparently picking up on the Court's suggestion, the Magistrate Judge ruled two weeks later that Voice Signal should "produce all documents indicating the

work that the individual defendants performed for VST for a period of one year following the commencement of their employment with VST." (Docket Entry 115). The Magistrate Judge then ordered discovery relating to a period of time (roughly calendar year 2001) when any conceivable trade secret was owned by L&H, not ScanSoft, and as to which any possible claim is barred by the *res judicata* effect of the dismissal of L&H's claim against Voice Signal. *See* p. 6 and n. 6, *supra*.

Compliance with the Magistrate Judge's Order would force Voice Signal to turn over many of its most proprietary and valuable assets – including source code – to an arch competitor that is desperate to overtake Voice Signal in the mobile phone market. If it ultimately develops that ScanSoft's alleged "trade secrets" are already in the public domain (as Voice Signal respectfully submits that it will), or are useless (and not used) in the context of voice recognition for cell phones, Voice Signal will have divulged extremely competitively-sensitive material to its commercial rival for no valid purpose. The potential damage to Voice Signal will be profound. This Objection asks the Court to adopt an approach to trade secret discovery that is similar to the approach that it required with respect to the patent issue and that balances and accommodates the legitimate needs of both parties.

## ARGUMENT

### I. VOICE SIGNAL SHOULD NOT BE REQUIRED TO PRODUCE ITS VALUABLE AND HIGHLY PROPRIETARY DOCUMENTATION AND SOURCE CODE UNTIL THE COURT HAS DETERMINED THE SCOPE OF RELEVANT DISCOVERY.

Voice Signal should not be compelled to turn over to ScanSoft its most valuable assets -- assets whose value lies in their inaccessibility to Voice Signal's competitors – without some assessment of ScanSoft's generalized trade secret claims and some effort to tailor discovery to the particular claims that may fairly be asserted by ScanSoft. Courts confronted with this issue

have mapped the routes to informed discovery decisions. The preferred path is first to require the plaintiff to identify the allegedly misappropriated trade secrets with specificity, and then to determine what (if any) discovery is warranted. If that cannot be done, the alternative is to engage a neutral expert to make an initial assessment of the plaintiff's claims.[8]

### A.    ScanSoft Should Be Compelled To Identify The Trade Secrets That It Alleges Were Misappropriated Before The Court Rules On Trade Secrets Discovery.

The Amended Complaint alleges that, prior to 2001, defendants Gillick, Roth and Yamron were employed by Dragon, that Dragon was acquired by L&H, that shortly thereafter Gillick, Roth and Yamron left L&H, joined Voice Signal, and then divulged trade secrets to Voice Signal. It is alleged "on information and belief," that Voice Signal uses those trade secrets. Amended Complaint ¶¶ 31, 40.[9]  Factual support for the bald conclusion that the individual defendants disclosed, or that Voice Signal is using, trade secrets owned by ScanSoft is not alleged. The basis for ScanSoft's "information and belief" is not stated.

A year later, ScanSoft can cite nothing to support its claim except the suspicion that certain former Dragon employees may have used something that they learned at Dragon to benefit Voice Signal because they continued to work in the general speech recognition field after they left L&H. ScanSoft's suspicion is insufficient to sustain a trade secret action. *See Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989) (where plaintiff's trade secret claim was "based purely on speculation that since the former [] employees are working in similar areas for [defendant] and that after employees began

---

[8] The third approach, which Voice Signal does not press here, is to defer all discovery on the trade secrets until the time of trial. *Microwave Research Corp. v. Sanders Assoc., Inc.*, 110 F.R.D. 669, 672 (D.Mass. 1986).

[9] A similar allegation is made with respect to defendant Grabherr, who was employed by L&H (but not by Dragon), who left L&H to join third-party employer and who later left that employer to join Voice Signal. Amended Complaint, ¶ 28; Grabherr Aff. ¶¶ 2,3.

working at [defendant], [defendant] announced improvement to its [] products," finding "there is no logic to [plaintiff's] theory" and that plaintiff's theory "must be rejected"); *see also Mana Electric Group, Inc. v. Truland Service Corp.*, 193 F. Supp. 2d 874, 877 (E.D. Va. 2002) (no factual basis to support trade secrets claim where the only "evidence" was plaintiff's speculation based on employee's former employment).    Despite the inadequacy of its trade secret claim, ScanSoft now stands poised to receive Voice Signal's most valuable and most protected assets – assets that ScanSoft could not, and did not develop itself, even though it has had full access to Dragon's technology and employs many former Dragon speech scientists.

The most thorough analysis in this District of the approach to discovery of a competitor's proprietary information in a trade secret misappropriation case is found in *Microwave Research Corp. v. Sanders Assoc., Inc.*, 110 F.R.D. 669 (D. Mass. 1986).    In that case, the plaintiff had given trade secret information to the defendant in connection with merger negotiations that ultimately failed.    The plaintiff sued for (among other things) misappropriation of those trade secrets.

Plaintiff sought discovery of the defendants' proprietary information.    The court (Collings, M.J.) denied the discovery.    It said (at p. 672):

> In order to protect a corporate defendant from having to reveal its trade secrets and confidential information to a competitor during discovery, a plaintiff must demonstrate that there is a factual basis for its claim.    As was stated by Judge Weinfeld in the case of *Ray v. Allied Chemical Corporation*, 34 F.R.D. 456, 457 (S.D.N.Y., 1964):
>
>> . . . [T]he circumstance that a litigant in his complaint alleges that he disclosed confidential and secret processes to a defendant, which the latter in turn denies, does not automatically entitle the plaintiff to obtain disclosure of the alleged offending processes in aid of discovery – otherwise it would be a simple matter to obtain one's trade secret by the mere assertion of a claim.    The end result of disclosure, where ultimately it develops that the asserted claim is without substance, may be so destructive of the interests of

the prevailing party that more is required than mere allegation to warrant pretrial disclosure.

In *Microwave Research*, the court held – in terms specifically applicable to the instant case – that the fact the defendant had been given access to the plaintiff's trade secrets was not sufficient to justify "broad discovery into defendant's trade secrets, [the plaintiff] must show that other evidence . . . provides a substantial factual basis for its claim." *Id.* at 674.

The court noted that one procedure employed by several courts to strike a fair balance between the plaintiff's desire for discovery and the defendant's need to protect its own proprietary information is to require the plaintiff to "specify in detail the trade secrets and confidential information alleged to have been misappropriated." *Id.* At 673. "Until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not." *Xerox Corp. v. IBM*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974). Voice Signal sought a protective order, asking the Magistrate Judge to adopt precisely this approach.[10]

ScanSoft opposed VST's protective order motion. It claimed, in part, that it has provided a "more particularized description of its trade secrets in response to Voice Signal's Second Set of Interrogatories." Opp. at 3.[11] In fact, ScanSoft has not provided a description of anything that is (a) a trade secret, (b) owned by ScanSoft, and (c) allegedly misappropriated by Voice Signal.

ScanSoft should be ordered to identify the relevant trade secrets with specificity. Once it has done so, the parties and the court can make an educated determination as to whether the particular ideas or techniques identified by ScanSoft are, in fact, protectible trade secrets. There

---

[10] Contrary to ScanSoft's allegations, Voice Signal has not "stonewalled." Voice Signal has produced documents in response to ScanSoft's document requests relating to its trade secrets claims and has allowed its witnesses to answer deposition questions which do not actually disclose the details of Voice Signal's most proprietary competitive assets.

[11] ScanSoft initially claimed to have provided a "detailed description" of alleged trade secrets in the Amended Complaint. No serious person would believe that ScanSoft placed trade secrets in a publicly filed document. It did not.

is an enormous body of literature in the speech recognition technology field. Voice recognition is the subject of university course work and extensively discussed in academic literature. In addition, Dragon's work was performed under government contract and was published by Dragon itself. Therefore, when ScanSoft identifies particular ideas or techniques that it claims are trade secrets that are being used by Voice Signal, Voice Signal will be in a position to move for summary judgment on the ground that the supposed secret is not a secret at all. If the motion is successful, the trade secret part of this case will end. Voice Signal's proprietary cell phone technology need not ever be disclosed.[12] If one or more of the ideas or techniques identified by ScanSoft is plausibly a trade secret (*i.e.*, if a jury question remains as to whether it is a trade secret) then discovery can be focused on Voice Signal's use of that particular alleged secret.

ScanSoft alleges that it has "more particularly described" its supposed trade secrets in its response to Voice Signal's Second Set of Interrogatories. It has not. Instead, it has provided a description of where in Voice Signal's source code ScanSoft would like to look in an effort to *find* a trade secret. ScanSoft concedes as much. It asserts that the "description [provided in interrogatory answers 1-4] points out exactly *where the trade secrets reside in VST's source code*" (Opposition at 5) and that "ScanSoft has *directed VST to the specific areas of VST source code that likely contain the misappropriated trade secrets*." Opposition at 4.[13]

The description of alleged "trade secrets" – provided on "information and belief"-- in ScanSoft's Interrogatory response is no more than a cloud of technical sounding words. It is

---

[12] The question whether particular ideas or techniques are secrets will have to be confronted sooner or later. Addressing it sooner has the substantial prospect of narrowing case before Voice Signal is required to give up its trade secrets.

[13] ScanSoft does not claim that it is incapable of identifying the trade secrets allegedly misappropriated by the defendants (an apparent concern of the Court's during the March 16, 2005 hearing). It asserts instead that it has adequately identified the misappropriated trade secrets, and that the process of discovering VST's source code and other trade secrets should, therefore, begin.

grossly short of the mark.  In response to an interrogatory asking ScanSoft to identify the *particular* trade secrets it alleges to have been misappropriated, ScanSoft lists:

(1) "<u>Proprietary techniques for duration modeling of speech.</u>"  Duration modeling is a way of identifying a group of sounds as a particular word by reference to the duration or length of what is spoken.  If a particular utterance (*e.g.*, the sounds that make up the word "of") is relatively short, the recognizer eliminates the possibility that those sounds correspond to a longer word (*e.g.*, the word "offensive").  Duration modeling is a component of many voice recognition systems and there are many known approaches to duration modeling.    Wooters Aff., ¶ 6(a).    ScanSoft does not identify even one "proprietary technique" for duration modeling, much less a technique that it alleges is being used by Voice Signal.

(2) "<u>Specific methods for organizing, categorizing and interpreting word sequence hypotheses.</u>"  Word sequence hypotheses are widely used in voice recognition.  They are an attempt to interpret sounds by reference to surrounding words that the voice recognizer has identified (*e.g.*, the word "green" is more likely followed by a noun than a verb).    Wooters Aff., ¶ 6(b).  ScanSoft does not identify the "specific method" for constructing word sequence hypothesis that it alleges is a ScanSoft trade secret that is being used by Voice Signal.

(3) "<u>The speech recognition architecture, including specific structural details such as acoustic matching, phoneme look ahead, lexical tree pre-filtering, word matching and scoring via a router.</u>"  Speech recognition architecture is the general organization of the components of a speech recognition system.  The subparts of this statement reference the basic components of most voice recognition systems, each of which is explained in the

accompanying Wooters Affidavit (¶ 6(c)).    All voice recognition products have architectures that use some or all of these components.  ScanSoft does not define any particular architecture or component that is a ScanSoft secret or is being used by Voice Signal.  Wooters Aff., ¶ 6(c).

(4) "Specific proprietary language model implementations, including the language models selected and their interaction."    Language models identify the statistical frequency with which certain words appear in sequence with other words (usually as found in widely-read publications) and use those data to interpret sounds made by a speaker.  They are common in the voice recognition field.  For example, in actual usage, the words "United States District" are more likely followed by the word "court" than the word "cart."  ScanSoft does not identify what language models it claims are proprietary, or how it causes multiple language models to "interact" in a secret way.  Wooters Aff., ¶ 6(d).

(5) "The use of mixture models consisting of phoneme elements and genones and the probabilities assigned to each sound."  Phonemes are sounds. Phoneme elements are parts of sounds.  "Mixture models" are techniques used in speech recognition to model phonemes – to create templates against which speech sounds are compared – based on shared mixtures of parts of sounds (phoneme elements).  A "genone" is a particular method of setting up the sharing arrangement between phoneme models.  It was developed at the Stanford Research Institute speech recognition research laboratory.  Wooters Aff. ¶ 6(e).  ScanSoft does not identify the "mixture models" that it claims are ScanSoft trade secrets.

14

(6) "Proprietary methods of using look-up tables for score computation and other purposes." Look up tables are used to increase the speed of voice recognizers. It is simply faster to "look up" the result of previously performed calculation than to do the calculation while voice recognition is ongoing. Wooters Aff. ¶ 6(f). There are many known and publicly available look up tables used in speech recognition. *Id.* ScanSoft does not identify the proprietary methods that it claims Voice Signal is using.

In short, ScanSoft tells Voice Signal and the Court that its "methods" or "techniques" or "models" have been misappropriated, but it has not identified the "methods" "techniques" or "models" themselves.[14] Courts consistently have held that generalized descriptions of areas that may contain trade secrets are insufficient. *See Cambridge Internet Solutions v. Avion Group*, 1999 WL 959673, *2 (Mass. Super.) (Quinlan, J.) (allegation that defendant misappropriated "source codes" and "work processes" not sufficiently particularized to warrant discovery of defendant's trade secrets); *Imax Corp. v. Cinema Tech. Inc.*, 152 F.3d 1161, 1164-5 (9th Cir. 1998) (generalized allegation that defendant misappropriated "dimensions and tolerances" of projector system, but which failed to particularize the actual numerical measurements of those "dimensions and tolerances" failed to achieve specificity required to identify trade secrets); *Englehard Corp. v. Savin Corp*, 503 A.2d 30, 33 (Del.Ch. 1986); *IDX Syst. Corp. v. Epic Syst. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) (software manufacturer's allegation that rival

---

[14] Voice Signal's Interrogatory No. 1 requests that ScanSoft:

> Identify with particularity each trade secret that ScanSoft alleges defendants Laurence S. Gillick, Robert S. Roth, Jonathan P. Yamron, and Manfred G. Grabherr used and disclosed for the benefit of VOICE SIGNAL. For each such trade secret, state the subject matter, content, function, method of operation, creator(s), and date of conception of the trade secret, and identify all documents that describe, embody, constitute, or contain the trade secret.

ScanSoft's response provided the list of generalized voice recognition technology areas that is described in the text. ScanSoft did not even attempt a response to Voice Signal's request that ScanSoft state the "content, function, [and] method of operation of each claimed trade secret," or the "creator(s) and date of conception of the trade secret."

misappropriated "methods and processes" and the "inter-relationships among various features" of its software package was insufficiently specific to support trade secret claim, even after the manufacturer produced the complete documentation of its software, because "a plaintiff must do more than identify a kind of technology and then invite the court to hunt through the details in search of items meeting the [trade secret definition]").[15]

In its opposition to Voice Signal's motion for protective order, ScanSoft cited a collection of cases – none decided in this jurisdiction – which it claims stand for the proposition that a plaintiff in a trade secret case is entitled to "significant discovery" before it is required to identify the misappropriated trade secret. No case cited by ScanSoft contains that holding. Several stand for the contrary proposition, and are sharply critical of the position advocated here by ScanSoft.

*Struthers Scientific and International Corp. v. General Foods Corp.*, 51 F.D.R. 149 (D. Del. 1970) is a good example. ScanSoft told the Court that the plaintiff in *Struthers* was required to specify its trade secrets "*after* the defendant disclosed extensive [trade secret] information about its commercial operation." Opp. at 6. That is incorrect. In *Struthers*, the parties engaged in a voluntary exchange of discovery related to numerous patent claims. Thereafter, Struthers sought to depose General Foods employees "relating to confidential information and trade secrets allegedly misappropriated by General Foods from Struthers." General Foods objected, stating that no such discovery should occur "until Struthers specifically identifies the trade secrets" allegedly disclosed to, and used by, General Foods. The court agreed with General

---

[15] This is also clear from the cases cited by ScanSoft. *See Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 954 (Fed. Cir. 1984) (plaintiff's "identification" of trade secret as a "data analysis method" was insufficient; court held that description was not a trade secret, but rather an "area" which might be said to "contain unidentified trade secrets"); *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) ("identification" by plaintiff of trade secrets as "detailed manufacturing drawings...", "research and test data..." and "manufacturing process information" constituted "generalized statements [which] wholly fail to provide the particulars or specificity required by law..."). *AMP, Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987) (plaintiffs may not "fail [] to identify specific trade secrets and instead produce[] long lists of general areas of information which contain unidentified trade secrets.").

Foods. *Id.* at 154. It then observed that Struthers' recently-filed interrogatory response – a "separate itemization which has been filed under oath" and which listed items "sworn to be trade secrets which [Struthers] disclosed to General Foods," including the "identity of the persons who made the disclosures, the persons to whom they were disclosed, and the time period and means of disclosure" – was sufficient to entitle Struthers to discovery "*limited* to those specific trade secrets [identified in the interrogatory response] which it claims were disclosed to General Foods." *Id.* (emphasis added). The court ruled that Struthers was *not* entitled to additional discovery from General Foods relating to general "catch-all" descriptions outlined in its interrogatory response, unless and until it provided a detailed and specific definition of the trade secrets that fell within those "catch-all" descriptions. Thus, the *Struthers* case is not supportive of the position advocated by ScanSoft.

*qad.inc. v. ALN Associates, Inc.*, upon which ScanSoft relies, is no better. There, the court sanctioned the plaintiff, pursuant to Fed. R. Civ. P. 11, for improperly alleging the misappropriation of its (unidentified) trade secrets by the defendant. The court was highly critical of the plaintiff's "persistent and long-protracted failure or refusal (or both) to identify the specific trade secrets that assertedly formed the gravamen of its claim." 18 U.S.P.Q.2d 1122, 1123 (N.D. Ill. 1990). It noted, in terms that are precisely applicable to the present dispute, that "[o]ther courts have warned plaintiffs of the risks they run by failing to identify specific trade secrets and instead producing long lists of general areas of information which contain unidentified trade secrets." *Id.* at 1124. It dismissed the trade secret misappropriation claims, and sanctioned the plaintiff. ScanSoft's remaining cases are equally unavailing.[16]

---

[16] *See Upjohn Company v. Hygeia Biological Laboratories*, 151 F.R.D. 355 (E.D. Cal. 1993)("alleged misappropriation [relates to] a single vaccine which may have been taken by the defendant," not to broad categories of unidentified trade secrets; *Metal Foil Products Manufacturing Co. v. Reynolds Metals Company, Inc.*, 55 F.D.R. 491 (E.D. Va. 1970) (in an antitrust case, court allowed limited deposition discovery into defendant's advertising

In contrast to the cases relied upon by ScanSoft, decisions in this District and in Massachusetts state courts establish that a plaintiff must provide a detailed and specific identification of the trade secrets that it alleges have been misappropriated before the plaintiff may initiate discovery of the defendants' trade secrets. *See, e.g, Microwave Research Corp. v. Sanders Assocs. Inc.*, 110 F.R.D. 669, 670 (D. Mass. 1986) (Collings, M.J.); *L-3 Communications Corp. v. Reveal Imaging Tech. Inc.*, 2004 WL 2915743 *13 (Mass. Super.). As Judge van Gestel explained in *L-3 Communications*:

> Both for the defendants to respond to the charges against them, and for the Court to make appropriate findings and rulings in this case, there must be a clear designation that distinguishes unique or proprietary materials from the vast body of [information alluded to in the Amended Complaint], and apprises a person what trade secrets . . . the plaintiff claims are to be found in [defendant's product].

(quoting *Staffbridge, Inc. v. Gary D. Nelson Associates, Inc.*, Suffolk Sup. Ct. No. 02-4912 BLS); *see also Cambridge Internet Solutions v. The Avicon Group*, 1999 WL 959673 *2 (Mass. Super.). This disclosure must occur "before any discovery may be had on those claims." *L-3 Communications Corp.*, 2004 WL 2915743 *13.

ScanSoft has not demonstrated that there is a basis for its trade secret claim and it has effectively precluded Voice Signal from challenging that claim. Until a specific identification of the alleged trade secrets is made, it will be impossible to determine whether the "secret" (a) was protected as a trade secret by Dragon, L&H, *and* ScanSoft and not disclosed in one of hundreds of Dragon/L&H patents, published patent applications and technical publications; or (b) is not in the public domain by reason of a third-party publication or disclosure; and (c) was used by Voice Signal at a time when the alleged secret was owned by ScanSoft. A specific identification of

---

budget); *Microtech Int'l. Inc. v. Thomas C. Fair*, 1992 WL 239087 (Conn. Super. 1992) (court permitted discovery regarding customers of new employer shared with former employer — after plaintiff specified those customers).

alleged trade secrets will allow this case to be narrowed and discovery to be matched properly to any issue that remains. The Court should not order disclosure of information of extraordinary competitive value – all of the work of four scientists in the full year after they joined Voice Signal – without a prior informed determination that the disclosure is actually required to permit a fair adjudication of this case.

**B.    In The Alternative, The Court Should Engage A Neutral Expert To Review Scansoft's Source Code And Voice Signal's Proprietary Documents For Evidence Of Misappropriation**

Assuming good faith, ScanSoft can and should identify its trade secrets. It has not argued that it is unable to do so.

In rare cases, when a plaintiff is not able to particularize the trade secrets that a defendant is using, courts have employed an independent expert or experts to review the parties' documents. *See Microwave Research*, 110 F.R.D. at 673 ("Another procedure is for the parties to agree to the appointment of an independent expert or experts"). As Magistrate Judge Collings explained:

> In one case, with the consent of the parties, the court appointed two independent experts to inspect both parties' plants and papers and to report which aspects of plaintiff's plants were substantially similar to defendant's. The experts were also directed to identify those aspects which, although substantially similar, they considered to be in the public domain and to set forth the basis for their opinion. On the basis of such a report, the court could confine discovery to those aspects found to be substantially similar, and, if no important areas of similarity were found, the parties would be spared the considerable expense of further litigation.

*Id.* (quoting from J. Drye and A.S. Joslyn, "The Role of Counsel in Litigation Involving Technically Complex Trade Secrets," 6 Boston College Ind. and Comm. L. Rev. 743, 747 (1965)).[17]

---

[17] Because it inferred from the Court's comments at the March 16, 2005 hearing that the Court might consider this case one where plaintiff could not specify its trade secrets, Voice Signal (through its counsel) searched for cases

ScanSoft states that its unidentified trade secrets are embodied in its Dragon Naturally Speaking product.  Ex. D, at 3.  If the Court adopts this approach, the neutral expert would review the source code for ScanSoft's Dragon Naturally Speaking product and compare it to the source code for Voice Signal's commercial products.  ScanSoft would identify particular aspects of its source code that it believes are unique and secret.  Voice Signal would identify any public domain material that it believes the expert should consider.  The expert would then compare Voice Signal's source code to the Dragon Naturally Speaking source code and the public domain materials.

If, as Voice Signal believes, the expert were to conclude that there is nothing in Voice Signal's source code that reasonably suggests that Voice Signal is using an aspect of the Dragon Naturally Speaking source code that is secret, discovery with respect to trade secret misappropriation would end.  If the expert believed that there were reasonable grounds for believing that Voice Signal is using a particular trade secret, discovery would proceed with respect to *that* trade secret, but not with respect to other aspects of Voice Signal's products.[18]

## C.    In Any Event, Voice Signal's Objection With Respect To Manfred Grabherr Should Be Sustained.

The baseless and pretextual nature of ScanSoft's discovery demands is in clearest focus when those demands are addressed to the work of defendant Manfred Grabherr.  As noted above, ScanSoft states that its trade secrets are contained in Dragon Naturally Speaking.  It is

---

adopting this approach, but found none.  Thus, it is a very rare case where the plaintiff cannot identify its own trade secrets.

[18]    ScanSoft has argued that Voice Signal is merely trying to "run out the clock" on trade secret discovery.  That is not Voice Signal's objective. The procedure outlined above, and supported by the cases, will take a period of time to complete.  It is inconsistent with Voice Signal's desire that this extremely costly litigation come to a quick end.  However, from Voice Signal's perspective, the time consumed by the use of an independent expert is a lesser evil than the wholesale disclosure of Voice Signal's trade secrets to a commercial rival that needs and covets access to those trade secrets.

undisputed that Dragon Naturally Speaking was developed by Dragon. Mr. Grabherr was once an employee of L&H, but he was never employed by Dragon, and, as an L&H employee, he was never given access to development documents relating to, or the source code for, Dragon Naturally Speaking. Grabherr's Decl. ¶ 3. He could not possibly have misappropriated a trade secret to which he was not exposed. There is literally no basis whatsoever for an examination of a full year of Mr. Grabherr's work at Voice Signal, and ScanSoft cites none. ScanSoft's efforts to obtain Mr. Grabherr's work are unrelated to the merits of this case.

## CONCLUSION

ScanSoft knows what trade secrets it believes that defendants misappropriated. ScanSoft can and should identify those trade secrets with specificity and the Court and the parties should proceed from there. Assuming, alternatively, that ScanSoft concedes that when it brought this case it could not, and that, even after discovery to date, it cannot, identify any particular allegedly misappropriated trade secret – and further assuming that the Court permits ScanSoft to proceed with its trade secret claims notwithstanding that admission – Voice Signal urges the Court to engage a neutral expert to review the parties' source code so that it may be determined whether there is a minimally adequate factual basis for ScanSoft's claim, and so that subsequent discovery may be focused on the part of ScanSoft's claim that is minimally viable.

Respectfully submitted,

LAURENCE S. GILLICK, ROBERT S. ROTH,
JONATHAN P. YAMRON, MANFRED G.
GRABHERR and VOICE SIGNAL
TECHNOLOGIES, INC.

By their attorneys,


/s/ Paul D. Popeo
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Paul E. Bonanno (BBO No. 646838)
CHOATE, HALL & STEWART LLP
Exchange Place
53 State Street
Boston, MA  02109
(617) 248-5000

Dated:  April  13, 2005


VOICE SIGNAL APPRECIATES THAT THERE ARE MANY DEMANDS ON THE
COURT'S TIME.  HOWEVER, THE ISSUES PRESENTED BY THIS OBJECTION ARE OF
PROFOUND IMPORTANCE TO VOICE SIGNAL.   VOICE SIGNAL URGENTLY
REQUESTS ORAL ARGUMENT AND A SUFFICIENT ALLOCATION OF THE COURT'S
TIME SO THAT THE COURT MAY FULLY UNDERSTAND THE ISSUES PRESENTED
BY THIS OBJECTION BEFORE IT RULES ON THE OBJECTION.

3880480_1.DOC


I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON
DATE 4/13/0 SIGNATURE

22