```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2
        * * * * * * * * * * * * * * *
 3      SCANSOFT,  INC.                *
                   Plaintiff,          *
 4                                     *
                      vs.              *        CIVIL ACTION
 5                                     *        No. 04-10353-PBS
        VOICE SIGNAL                   *
 6      TECHNOLOGIES, INC.,            *
        et al                          *
 7             Defendants.             *
        * * * * * * * * * * * * * * *
 8
                    BEFORE THE HONORABLE PATTI B. SARIS
 9                     UNITED STATES DISTRICT JUDGE
                       HEARING ON OBJECTIONS TO R&R
10
        A P P E A R A N C E S
11
                    BROMBERG & SUNSTEIN LLP
12                  125 Summer Street
                    Boston, Massachusetts 02110-1618
13                  for the plaintiff
                    By:  Lee C. Bromberg
14                       Lisa M. Fleming, Esq.
                         Jack C. Schecter, Esq.
15
                    CHOATE, HALL & STEWART
16                  Exchange Place
                    Boston, Massachusetts 02109-2804
17                  for the defendants
                    By:  Robert S. Frank, Jr., Esq.
18                       Sarah C. Columbia, Esq.
                         Paul D. Popeo, Esq.
19

20                                      Courtroom No. 19
                                        John J. Moakley Courthouse
21                                      1 Courthouse Way
                                        Boston, Massachusetts 02210
22                                      March 16, 2005
                                        2:10 p.m.
23
                           CAROL LYNN SCOTT, CSR, RMR
24                           Official Court Reporter
                          One Courthouse Way, Suite 7204
25                          Boston, Massachusetts 02210
                                (617) 330-1377
```

# P R O C E E D I N G S

**THE CLERK:**  All rise.

The United States District Court for the District Court of Massachusetts is now in session.

Please be seated.

The case of ScanSoft, Incorporated versus Voice Signal Technologies, Incorporated, et al, civil action No. 04-10353 will now be heard before this court.

Would counsel please identify themselves for the record.

**MR. BROMBERG:**  Lee Bromberg, Bromberg & Sunstein, for the plaintiff ScanSoft.

**MS. FLEMING:**  Lisa Fleming, Your Honor, for the plaintiff ScanSoft as well.

**MR. SCHECTER:**  Jack Schecter for the plaintiff ScanSoft.

**MR. FRANK:**  Robert Frank from Choate, Hall & Stewart for the defendants.

**MS. COLUMBIA:**  Sarah Columbia, also from Choate, Hall & Stewart, for the defendants.

**MR. POPEO:**  Paul Popeo, Choate, Hall & Stewart, for the defendants.

**THE COURT:**  Before I get into objections, where is this case?  How close are we to the Markman hearing?

1          **MR. BROMBERG:**  Your Honor, we filed an

2     extension, I think it's the third extension to date which

3     pushes the Markman hearing into October I believe.

4          **THE COURT:**  Can I ask -- I probably granted

5     all this because I just grant them just if -- if you all

6     agree, I agree kind of thing.

7          I found it very hard to rule on some of these

8     issues without really knowing what the Markman claim

9     construction is going to be, what the issues on infringement

10    might be.

11         If I end up finding against one party or the other

12    with respect to Markman, it may make a difference as to the

13    obviousness and infringement issues.  And you guys, I mean

14    men and women, are top competitors with each other.  So I

15    understand why everyone is so skittish about some of these

16    documents.

17         I am wondering whether if I move forward the

18    Markman hearing and really rolled up my sleeves and started

19    understanding the issues, I could make a better judgment on

20    the objections.

21         And I don't know what you thought about whether

22    that was feasible --

23         **MR. BROMBERG:**  Your Honor, I don't think that

24    is feasible because I think that the idea of the schedule as

25    originally set by the Court was to have the factual

1    discovery completed.

2            The reality of this case, Your Honor, is that the

3    defendant is concealing the evidence most relevant to the

4    claims.

5            **THE COURT:**  Let me just say this.  That may be

6    true.

7            **MR. BROMBERG:**  It is true, Your Honor.

8            **THE COURT:**  Well, I know that you believe

9    that.  I am simply saying I don't have in my gut enough

10   understanding on the issues to know whether, for example,

11   the source code is important or the diagrams that were

12   presented are sufficient.  I just -- I read everything.  I

13   don't know, because everyone seals everything, which let me

14   get to in a minute.

15           But I think I've read what I need to read to

16   realize that I don't understand the issues in the litigation

17   well enough to know whether, in fact, it's important to

18   claim construction or to the infringement issue.  And, for

19   example, if I found noninfringement, for an example, I

20   don't -- your very strong argument that it may be related to

21   obviousness will be mooted.

22           So -- because I generally allow that kind of stuff,

23   the technical drawings (ph.) with respect to obviousness,

24   and yet you're both head-on competitors.  And I usually hit

25   this issue with some understanding of what the claim -- what

1    the points and counterpoints are.

2            Let me ask you this:  What do think?  Can we move

3    Markman up?

4            MR. FRANK:  Let me say that, if I may rephrase

5    your question?

6            THE COURT:  Yes.

7            MR. FRANK:  One, would it be helpful to you if

8    we gave you a tutorial and worked you through the patent?  I

9    think the answer to that is unquestionably yes because,

10   because I think -- I came in here worried that we were not

11   going to have enough time today because I know you have

12   another commitment.  And --

13           THE COURT:  I am going to Walpole, not a thing

14   that a judge frequently admits to but they --

15           (Laughter.)

16           MR. FRANK:  Congratulations.

17           THE COURT:  Yes.

18           MR. FRANK:  What I was going to seek, Your

19   Honor, is this case needs some judicial supervision.  And

20   that in order for you to rule -- I was going to say roughly

21   what you said, which is that in order to rule intelligently

22   on this, we need to bring you further up the learning curve.

23           Whether that gets us to a Markman hearing in which

24   we would cheerfully engage right now, or at least a tutorial

25   so that you have worked your way through the patent, you

1    understand at least what the patent is talking about and

2    what it teaches and what it doesn't teach and what it claims

3    and what it doesn't claim.

4         What's relevant to a patent case, even from a

5    discovery point of view, is what is claimed in the patent.

6    Not some other abstraction but what is claimed.  And --

7              THE COURT:  Well, can I -- do you contest

8    infringement?

9              MR. FRANK:  Oh, yes.

10             THE COURT:  Because why?

11             MR. FRANK:  Because what is described -- well,

12   for a multitude --

13             THE COURT:  I am trying to get my sleeves --

14   why are you contesting?  What are you saying that your thing

15   doesn't do that their patent claims?

16             MR. FRANK:  May I hand up a copy of Claim 1,

17   which is the --

18             THE COURT:  You don't have to.  I know what it

19   basically says.  Or at least I read it this morning.

20             MR. FRANK:  What the patent describes and what

21   the patent claims is a voice recognition system that is

22   located at the central switch of a mobile telecommunication

23   system, a cellular telephone system.

24        And it requires that certain prescribed steps be

25   taken as part of the claim method.

1          The accused product is a voice recognition system

2    that is not at the central switch or anywhere near the

3    central switch.  It's in an individual handset.

4          **THE COURT:**  This is ringing a bell because I

5    think someone described this to me before.

6          Now, let me ask you this:

7          What are the claims, let me just ask you, that

8    might be disputed?  Mr. Bromberg, from your point of view,

9    are there any claims --

10          **MR. BROMBERG:**  So far, Your Honor, we have

11    asserted Claims 1 through 6 against Voice Signal.

12          **THE COURT:**  And what are the claims that you

13    might be disagreeing on the meaning of?  In other words, for

14    a claim construction?  Or are you all in agreement on it?

15          **MR. BROMBERG:**  We have not addressed that

16    issue yet, Your Honor, because when this case was -- when

17    the schedule was set up last year -- this case is now

18    thirteen months old by the way.

19          **THE COURT:**  Right.

20          **MR. BROMBERG:**  When the schedule was set up,

21    we agreed that if we went through discovery in about three

22    months followed by expert discovery in a couple months

23    thereafter, we would be ready to present the case to the

24    court on Markman.

25          But we have gotten no meaningful discovery from the

1    defendants in this case.  And that has -- so this case has

2    been stuck in the mud, Your Honor, for nine or ten months at

3    this point.

4              THE COURT:  Let me just say this:  It may well

5    be that you get everything you want.  But until I understand

6    better in my gut as to what the issues are, if it's simply

7    as to whether or not the device -- I am sure I am using the

8    wrong term -- has to be at a central switch or in a handheld

9    phone, I don't know that you need the source code for me to

10   resolve that.

11             On the other hand, if it has to do with the

12   intricacies of how the numbers or the words gets translated

13   and into a method of recognition -- I am sure I am using all

14   the wrong technical terms -- then you may well be entitled

15   to most or some of the source code.  I have just got to

16   understand it better.

17             And so I am thinking that if we did at least a

18   preliminary claim construction hearing where -- and plus

19   infringement.  I imagine this claim construction on that key

20   issue is going to determine infringement one way or another;

21   right?

22             MR. BROMBERG:  On which issue, Your Honor?  On

23   the handset issue?

24             THE COURT:  Yes.

25             MR. BROMBERG:  It may well.

1          THE COURT:  All right.  So then let's say I

2     rule in your favor.

3          MR. BROMBERG:  Right.

4          THE COURT:  Let's say I rule in your favor.

5     And let's say that they then say but there is no

6     infringement in any event because we translate the numbers

7     or the words differently, then I think you have the right to

8     those source codes.

9          If, in fact, you lose, then I would have handed

10    over their most confidential information for no reason.  And

11    so that's where I am thinking about.  If obviousness, every

12    case I always have they get the technical development

13    documents.  But it is when I get to obviousness.

14         MR. BROMBERG:  Your Honor, I have two concerns

15    with what you are proposing.  One is when we started the

16    case, the plan was to go through the discovery and then have

17    the Markman hearing.  And that is to my understanding the

18    preferred method.

19         And if in the course of discovery material is

20    disclosed, it will be disclosed in accordance with a strict

21    protective order so there is no risk to anybody's

22    confidentiality.  We have the same risk.

23         But the problem is, Your Honor, that then the

24    issues can be presented to you on an informed record, not

25    shooting in the dark.

1          THE COURT:  Well, I agree that that is usually

2    the way in which I proceed.  But I cannot rule on the

3    present record that I have without understanding what issues

4    are in dispute, what infringement issues are in dispute.

5          What I could simply do is affirm the magistrate

6    judge's order with the exception, of course, I'll do the

7    user interface source code which is sort of a compromise

8    between the lines in their position, and do it without

9    prejudice.  And we can go all the way through.  And then

10   I'll open the floodgates if you win on the key issues for

11   yourself.

12          MR. BROMBERG:  Well, Your Honor, that, we

13   would object to that --

14          THE COURT:  "Floodgates" they may not like

15   but --

16          MR. BROMBERG:  Right.  We would object, Your

17   Honor, because that would be changing the rules --

18          THE COURT:  All right.  Let me be clear to

19   you.  I don't understand this well enough to do it now, in

20   fairness to everybody.  I don't get it.  So you need to come

21   up with a compromise.  I need to understand what issues are

22   in play to decide whether this highly confidential

23   information should be produced or not produced.

24          I generally require it to be produced when it is in

25   play.

1          **MR. BROMBERG:**  It's in play here, Your Honor.

2    Our patent, the first four words of Claim 1 are "a speech

3    recognition method."  Speech recognition is just what

4    they're trying to keep us from seeing.

5          **THE COURT:**  Let me tell you --

6          **MR. BROMBERG:**  Because we believe --

7          **THE COURT:**  I know that is your position.  But

8    if I rule against you on the key issue about whether it has

9    to be at the switch or in the telephone, you have gotten all

10   the information for nothing.

11         If I rule with you, and they assert obviousness or

12   lack of infringement for a variety of reasons, then you will

13   get this stuff.

14         **MR. BROMBERG:**  Your Honor, that's not true,

15   for this reason:

16         There is another set of issues in this case, trade

17   secret misappropriation.  And this court has ruled that they

18   are in the case, removing the excuse that Voice Signal used

19   for not producing any single piece of paper on that issue

20   yet or even instructing witnesses not to answer questions at

21   depositions, on the ground that --

22         **THE COURT:**  Well, you need the answers to

23   questions on what was brought over.

24         **MR. BROMBERG:**  They refused, Your Honor.  And

25   we say --

1          MR. FRANK:  That's not true.

2          MR. BROMBERG:  If I may finish, Your Honor.

3          THE COURT:  Yes.

4          MR. BROMBERG:  On this issue you have four

5     top-flight scientists go from Dragon and L&H to Voice

6     Signal.

7          At Dragon and L&H they worked on speech recognition

8     software.  At Voice Signal they work on speech recognition

9     software.  The Superior Court said cut it out because you

10    have signed a noncompete and don't disclose your trade

11    secrets.

12         They went to work the day that order expired.  They

13    went back to work.  And for all we know, Your Honor, they

14    have used and employed the trade secrets of ScanSoft in all

15    of their work and are continuing to do so.  We believe they

16    are.

17         THE COURT:  Why don't you narrow your request

18    down to what things they prepared and what things they sent

19    out as far as emails and so it isn't everything that was

20    done.

21         MR. BROMBERG:  The trade secrets, Your Honor,

22    if they're anywhere, they're in the source code.  That's

23    exactly where they are.

24         THE COURT:  But it's got to be things --

25         MR. BROMBERG:  And it is necessary to look at

1    the source code to determine that.

2                    THE COURT:  I understand.  The reason I held a

3    hearing, I almost always just affirm, okay.  If it is de

4    novo, I always just affirm.  I don't understand -- I

5    remember someone, maybe it was you, who gave me a diagram.

6    I remember it.  The tower up here (indicating), the hand.

7                    I understand there is a threshold issue there that

8    needs a ruling from me.  All right.

9                    Now, I don't know if I rule your way or your way,

10   it may cut out a lot of it.  That's what was at least

11   flagging it for me.  I am willing to do that earlier.

12                   I am also willing to give you a narrower scope of

13   discovery on trade secrets that has to do with things that

14   the people who used to work at Dragon and L&H prepared,

15   commented on, emailed regarding.  That seems fair enough,

16   subject to a protective order.  Things that they were the

17   author of or which references them.  Okay.

18                   So that's a narrower scope of what you are talking

19   about.  And maybe you can work something out on that.

20                   I think your compromise on the user interface is

21   important because it's how the information was transmitted.

22   So I think you should produce that.

23                   And the other stuff, I am either inclined not to

24   rule on or to sustain what Judge Alexander did.  I know what

25   the problem she had is.  She said it right here, she didn't

1    have it all in front of her in terms of understanding the

2    way I would eventually construe a claim.  So she was in that

3    position.  And it was a perfectly fair reading of the law

4    given that position.

5        So what I am thinking of is how many claims do you

6    think might be in dispute?

7        MR. BROMBERG:  I think they're probably all in

8    dispute, Your Honor.  But Magistrate Judge Alexander ruled

9    that they are required to turn over the entire source code.

10       THE COURT:  Right.

11       MR. BROMBERG:  And they have refused to do

12   that.

13       THE COURT:  That's right.  They're going to

14   turn over the user interface source code.  And then maybe

15   the whole thing, depending on how I understand the case.

16       Okay.  So that should happen forthwith.  Any trade

17   secret -- anything -- who are the men, or women?

18       MR. FRANK:  Your Honor, may I?

19       THE COURT:  Yes.

20       MR. FRANK:  Please, before we go further.

21       THE COURT:  Yes.

22       MR. FRANK:  Let me slow you down here and say

23   I want you to understand what this -- first, about the

24   patent.  I want you to understand what the patent discloses.

25   And I want you to understand what the patent claims.

1          Because if you do this on the basis of general

2     principles, I respectfully suggest you are in real danger of

3     making -- of doing something that is unfair.

4          All I ask with respect to the patent is that this

5     slow down and that you allow us to give you a tutorial.  And

6     I have proposed to Mr. Bromberg that we, you know, enter

7     into a schedule in which we identify the claim terms that

8     need to be -- that means stop.

9               THE COURT:  Yes.  I am with you to a point.  I

10    need a tutorial.  I need a description of what the claim

11    terms are that are in dispute.  And I am willing to do

12    Markman in connection with that earlier to grapple earlier

13    than October with the claim construction issues, just so

14    that I get it.

15         Now, maybe I won't rule right out of the -- maybe

16    you're going to persuade me that I shouldn't; but at least

17    I'll understand well enough what is really in play and what

18    discovery -- if you lose on your key claims construction,

19    you don't need all the documents on obviousness.

20              MR. BROMBERG:  I need them for the trade

21    secrets case.

22              THE COURT:  You may.  And that's why I'm going

23    to give you a narrow scope of discovery on it.  That's a

24    really fair point.  And so --

25              MR. FRANK:  Please.

1        THE COURT:  Yes.  All right.

2        MR. FRANK:  We have said to them -- recall the

3   case.  You will remember some of this.

4        The case came in here originally on a motion to

5   dismiss which you allowed because they had alleged exactly

6   in the same words, the same thing that had been alleged in a

7   prior case by L&H.  That case had been dismissed with

8   prejudice.

9        They came back and pled exactly the same thing

10  except they added the words that said, And you continue to

11  use the trade secrets.  And you allowed that too.

12       We have said -- and we have a motion pending which

13  you have referred to the magistrate.  We have said tell us

14  with specificity what trade secret you believe that our guys

15  took and are using so that we know what is relevant.

16       What they have consistently, persistently --

17       THE COURT:  Is that pending before Judge

18  Alexander?

19       MR. FRANK:  Yes.  And what we have been told

20  is it is your ASR algorithms.  Your automated speech

21  algorithms.  Every single voice recognition system in the

22  universe uses automated speech algorithms.  The question is

23  what particular algorithm is a trade secret and is --

24       THE COURT:  But one good place to start --

25  what are the men's and women's names who went over?

1          MR. BROMBERG:  Gillick, Roth, Yamron and

2     Grabherr.

3          THE COURT:  Why don't you produce everything

4     that they prepared on the speech algorithms?

5          MR. FRANK:  We have nothing that they brought

6     with them from --

7          THE COURT:  How about within the first year so

8     you know whether or not they were sort of telling people

9     about it in emails?

10         MR. FRANK:  They were enjoined from working

11    for most of that year.  We --

12         THE COURT:  The first year that they worked.

13         MR. FRANK:  We --

14         MR. BROMBERG:  They were enjoined from

15    September to January, Your Honor.  They worked from the

16    previous January to September and then they went right back

17    to work when that --

18         THE COURT:  Listen, listen, all right.  I am

19    going to do this.

20         I would like to understand what the issues are

21    better, okay, in a real live sense as to what claims are in

22    play and whether or not with respect to those claims, if I

23    rule on them, it may well be that some of this is obviated.

24         So -- I remember the key one because everyone

25    flagged it for me.  So can't we just -- are there any other

1    claims that are in play?

2                 MR. FRANK:   There are some but we can serve

3    that up to you in a perfectly understandable way.

4                 THE COURT:   Can we do that sooner than

5    October?

6                 MR. FRANK:   Yes.

7                 THE COURT:   And then I will have a tutorial.

8    And then I will try and rule.  And I will try and rule on

9    these in connection with that.  I think that makes some

10   sense.

11        In the meantime, you can't just completely

12   stonewall on the trade secret thing.  You have got to

13   produce what these men --

14                 MR. FRANK:   Your Honor, respectfully --

15                 THE COURT:   Laurence, Robert, Jonathan and

16   Manfred, yes, that these men prepared in the first, I don't

17   know, pick it up, year --

18                 MR. BROMBERG:   Why limit it to the first year,

19   Your Honor?  This is a field that takes years and years of

20   work.  And even the defendant company --

21                 THE COURT:   What time did they go over there?

22                 MR. BROMBERG:   They went over in January of

23   2001.  Their first product that we're fighting about here

24   didn't get sold until May 2002.  They have continued to do

25   updated versions of that.

```
 1                    We believe that --
 2                         THE COURT:  Why don't you do 2001 to 2002?
 3                         MR. FRANK:  Your Honor --
 4                         THE COURT:  You know what, maybe what makes
 5       the most sense is I am going to set up a schedule right now.
 6              When can you file -- decide whether or not there
 7       are going to be any claim definitions in dispute?
 8                         MR. FRANK:  Within ten days.
 9                         THE COURT:  Can you?
10                         MR. BROMBERG:  Yes.
11                         THE COURT:  Okay.  And then you file your
12       Markman brief when?
13                         MR. BROMBERG:  With respect to the disputed
14       terms, Your Honor?
15                         THE COURT:  Yes.
16                         MR. BROMBERG:  We can file our Markman brief
17       within three weeks after that.
18                         THE COURT:  Okay.  So that puts us when, the
19       end of April?
20                         MR. BROMBERG:  Yes.
21                         THE COURT:  Okay.  And the end of April, can
22       you do something by the end of May?
23                         MR. FRANK:  Certainly.
24                         THE COURT:  And then we will have a hearing in
25       June.
```

1            MR. FRANK:  Certainly.  There is a

2    counterclaim patent.  And I take it we are -- do you want us

3    to address that or not?  They're complaining about our not

4    producing any source code but they haven't produced any

5    source code at all.

6            THE COURT:  I imagine that, is that important.

7    I am just trying to get through the discovery dispute.

8            MR. FRANK:  This discovery works both ways.

9    They're complaining about our --

10           THE COURT:  I understand that.  Do you have

11   claims that might be in dispute about the other patent?

12           MR. FRANK:  I don't know.

13           MR. BROMBERG:  I think the counterclaim is --

14   their own chief technical officer couldn't find

15   correspondence between that -- the elements of those claims,

16   the two claims that they say are infringed, and any

17   product of ours.

18           THE COURT:  All I want to know is whether

19   there is any claim construction issues.  So why don't you

20   just flag them for me.  I don't necessarily have to resolve

21   them.  I'm not sure they're important on the discovery

22   issue.

23        Now, you will do by the end of May.  Robert, when

24   can we do a claim construction hearing?

25           THE CLERK:  June 17th at two p.m.

1          **THE COURT:**  Okay.  I'll give you the

2     afternoon.  You can present the tutorial by video

3     beforehand.  You can do it by live witness.  Or you can do

4     it by affidavits.

5          **MR. FRANK:**  Would you entertain the

6     possibility of a tutorial a few days before that or do you

7     want it all at once?

8          **THE COURT:**  No.  What has worked the best with

9     me actually is, although it is prohibitively expensive so I

10    don't require it, is to give it to me on video.  And then I

11    watch it before the hearing.

12         Alternatively you can all give me affidavits and I

13    will read them before the hearing.  Or what we could do is

14    start hearing the evidence on that day and if I don't

15    finish, then we will just keep it going, we will just keep

16    it going.

17         Now, on the trade secret, which I understand is a

18    ripe dispute between the two of you --

19         **MR. FRANK:**  And you know there is a motion

20    pending before the magistrate on this question, which you

21    referred.

22         **THE COURT:**  But that's just simply that you

23    want them to specify the trade secrets.

24         **MR. FRANK:**  Please, no.  That's not exactly

25    correct.  I appreciate you don't have much time here.  But

1    what we have said is that one cannot determine what is

2    relevant to the trade secret claim until the allegedly

3    misappropriated trade secret is identified.

4         And when the allegedly misappropriated trade secret

5    is identified, then you or Magistrate Alexander can tell

6    whether they're asking for something that is relevant to

7    that trade secret.

8              THE COURT:  There is a notion in the law that

9    you can't possibly do that.  In other words, if someone came

10   up with almost an identical product the minute after its

11   employees -- wait.  Now, I know you are frustrated here.

12        Very soon after the employees leave, there is at

13   least enough to draw an inference.

14        Now, I understand that you had a suit in superior

15   court or wherever so that it wasn't the initial stuff.

16   There was a continuing to use.

17             MR. FRANK:  Respectfully, you're ruling in a

18   vacuum (ph.).

19        The product which was sold by their predecessor was

20   a voice recognition product that worked with a PC, which has

21   enormous, relatively enormous processing power and memory

22   capabilities and so on.

23        The particular individuals here were working on yet

24   other projects, also so-called large platform products.

25             The accused product here is something that has to

1    work in a cell phone in which there is a miniscule amount of

2    processing capacity, no caching capability, no memory at

3    all.

4            The assumption that you're making which is that

5    these products are anything more than in the enormous area

6    of voice recognition is simply wrong.

7            THE COURT:  I understand you.

8            Has the motion before Judge Alexander been opposed?

9            MR. BROMBERG:  It has been opposed, Your

10   Honor.

11           THE COURT:  Do you have a hearing in front of

12   her?

13           MR. BROMBERG:  We have not had a hearing

14   scheduled yet.

15           THE COURT:  I am going to ask Mr. Alba to find

16   out when that is going to happen and then she can rule on

17   it.  And then -- but I will simply say this:

18           I anticipate there will be some discovery as to

19   what these gentlemen provided the new company.

20           MR. FRANK:  We simply ask that there be a

21   framework in which the relevance of that discovery can be --

22           THE COURT:  I think, maybe.  Maybe.  It's

23   always a little hard for them to pinpoint with specificity

24   exactly what they disclosed when they don't know that.  When

25   they just know that in their view it's a similar algorithm

1    or it's a similar product.

2         Now, I don't know enough about it.  You are right,

3    I am not going to rush and I am not going to do it.  I will

4    wait for Judge Alexander's ruling.

5         But I am simply saying that at some point I

6    wouldn't be surprised if we are going to end up that -- this

7    is not overruling by any means Mr. Bromberg's objection on

8    this.  I would wish you'd work it out.  These cases turn

9    into nightmares.

10        I will understand it better after the claim

11   construction dispute.  But in the meantime, I will wait for

12   Judge Alexander's ruling on that.  And then if are you

13   unhappy with it, you will appeal I am sure.

14        Now, let me go off the record.

15        (Discussion off the record.)

16             THE COURT:  Let's go back on the record.

17             MR. BROMBERG:  I want to state my objection to

18   the Court proceeding in this fashion.  And I'd like, if I

19   may, to have just a minute to explain why.

20        The defense in this case has followed the following

21   strategy:

22        Give them no evidence on the trade secret claim.

23   Defeat the patent claim hopefully at a claim construction

24   hearing.  And then the clock will be run out on discovery

25   and they'll never see any evidence relating to --

1          **THE COURT:**  I won't do that to you.

2          **MR. FRANK:**  And I won't ask you to do that.

3          **THE COURT:**  I promise you, I will -- if you

4     are entitled to it, you will get it.  If you get cut off at

5     the knees at an early stage, you are not entitled to it.

6          But if you win on your primary claims, you are

7     likely to get all this.  And I won't say, well, the

8     discovery clock stops.  I will give you an extension.

9          **MR. BROMBERG:**  Okay.  Well, I appreciate that,

10    Your Honor.  But I think the effect of the Court's ruling

11    today is to endorse the strategy that Voice Signal has very

12    aggressively followed to give us no evidence on the trade

13    secret case.  And to withhold the source code, even though

14    Magistrate Alexander has ordered them three times to produce

15    it, and it endorses that whole policy.  And that does, Your

16    Honor, contribute to the cost of this proceeding.

17         If they had cooperated in the discovery initially,

18    and these things are routine in patent cases as Your Honor

19    knows, a confidentiality order --

20         **THE COURT:**  This point, you have made these

21    points.  I am actually not disagreeing with a whole lot of

22    what you are saying.

23         But I need to understand it better before I start

24    turning over this stuff.  And to make it clear, you really

25    need to turn over the user interface.

1          We will stand in recess.

2                  THE CLERK:  Court is in recess.

3          (WHEREUPON, the proceedings were recessed at 2:40

4          p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


        I, Carol Lynn Scott, Official Court Reporter for

the United States District Court for the District of

Massachusetts, do hereby certify that the foregoing pages

are a true and accurate transcription of my shorthand notes

taken in the aforementioned matter to the best of my skill

and ability.




        _____

                CAROL LYNN SCOTT
              Official Court Reporter
            John J. Moakley Courthouse
           1 Courthouse Way, Suite 7204
            Boston, Massachusetts 02210
                 (617) 330-1377