## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  **C.A. No. 04-10353-PBS** |
| | ) |
| | ) |
| VOICE SIGNAL TECHNOLOGIES, INC., | ) |
| LAURENCE S. GILLICK, ROBERT S. | ) |
| ROTH, JONATHAN P. YAMRON, and | ) |
| MANFRED G. GRABHERR, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## VOICE SIGNAL TECHNOLOGIES, INC.'S
## REPLY TO PLAINTIFF'S RESPONSE TO OBJECTIONS TO THE MAGISTRATE
## JUDGE'S ORDER REQUIRING TRADE SECRETS DISCOVERY

Voice Signal Technologies, Inc. ("Voice Signal") submits this Reply to ScanSoft Inc.'s ("ScanSoft") Response to Defendants' Objections to the Magistrate Judge's Order Requiring Trade Secrets Discovery (ScanSoft's "Response").

The discovery sought by ScanSoft, purportedly in support of its trade secrets claim, is directed at Voice Signal's most sensitive, proprietary trade secrets. In its Objections to the Magistrate Judge's Order Regarding Trade Secrets ("Objections"), Voice Signal asked this Court to approach ScanSoft's trade secret claim as it has approached ScanSoft's patent infringement claim: determine first the legitimate scope of the claim, *then* decide what Voice Signal must produce.

1

Voice Signal has identified two approaches to balance the legitimate interests of business adversaries in trade secret litigation. The preferred course is to require the plaintiff to identify the specific trade secrets which it claims the defendant has misappropriated. The parties and the Court can then determine (1) whether they are protectable trade secrets, and, if they are, (2) what scope of discovery from Voice Signal is appropriate. An alternative approach, employed in the rare circumstance where a plaintiff is unable to identify what it claims was taken, is to appoint a neutral expert to assist the court in evaluating the evidence (or lack of evidence) of misappropriation. *See, Objections*, pp. 8-20.

ScanSoft opposes both approaches. ScanSoft relies on its self-serving, conclusory assertion that it has already provided a sufficiently specific identification of the trade secrets which it alleges were taken by the Defendants. It has not. Voice Signal demonstrated through the Declaration of Charles C. Wooters ("Wooters Declaration"), submitted with its Objections, that ScanSoft's list of "trade secrets" is nothing more than a generalized list of categories generic to speech recognition. ScanSoft's Response utterly ignores the Wooters Declaration. ScanSoft also objects to the Court's appointment of a neutral expert, arguing that any "procedural" impediment to its immediate and indiscriminate access to Voice Signal's proprietary speech technology source code and techniques will be "cumbersome," "costly," and (astoundingly) a violation of ScanSoft's Constitutional rights.

ScanSoft's complaints are baseless, and should be seen for precisely what they are: a last ditch attempt to avoid Court-approved process which will reveal, once and for all, that ScanSoft's trade secret claim is entirely without merit.

2

## ARGUMENT

### A.  ScanSoft's Argument That It Is Entitled To Discovery Before Identifying The Misappropriated Trade Secrets Should Be Rejected.

ScanSoft begins its Response with a citation to Fed.R.Civ.P. 26(b)(1), and pronounces "[a] plaintiff asserting a misappropriation of trade secrets has a right to 'obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party...'". *Response*, p. 5. It cites no case in support of this assertion, because there is none to cite. The Rule 26(b) relevance standard is *not* the legal standard for evaluating the appropriate scope of discovery of a trade secret misappropriation claim. As the court in *Microwave Research Corp. v. Sanders Assoc. Inc.* observed (expressly distinguishing the broad relevance standard of Rule 26(b)):

> ...when discovery of a defendant's alleged trade secrets and confidential information is sought in litigation regarding misappropriation by a defendant of a plaintiff's trade secrets or confidential information, *it is not enough to analyze the requested discovery in terms of relevance.* In order to protect a corporate defendant from having to reveal its trade secrets and confidential information to a competitor during discovery, a plaintiff must demonstrate that there is a factual basis for its claim.

110 F.R.D. 669, 672 (D. Mass. 1986)(emphasis added).[1]

In the briefing before the Magistrate Judge, ScanSoft relied on a collection of cases (from other jurisdictions), which it claimed supported its argument that a plaintiff in a trade secret case is entitled to "significant discovery" before it is required to identify the misappropriated trade secret. (Docket Entry 112 at p.6). In its Objections, Voice Signal demonstrated that none of the cases cited by ScanSoft contains that holding. In fact several stand for the contrary proposition,

---

[1] ScanSoft's citation to the United States Supreme Court in *Federal Open Market Committee of the Federal Reserve System v. Merrill* is misplaced. There, the Court observed that "the courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure". 443 U.S. 340, 361 (1979). Here, Voice Signal requests the very "weighing of interests" approach to trade secret discovery referenced by the Court.

and are sharply critical of the position advocated by ScanSoft. *Objections*, pp. 16-19.
Undeterred, ScanSoft's Response cites the very same cases, and again represents that these cases
hold that a trade secret plaintiff may obtain "significant discovery" without first identifying what
it claims was taken by the defendant (*Response*, pp. 6 & 11). That is simply not true.[2]
ScanSoft's insistence in citing these inapposite cases highlights the profound weakness of the
position it urges.

### B. ScanSoft's Assertion That It Has Identified Its Trade Secrets Is Simply Not True.

ScanSoft adopts a similar approach when citing to "factual" support for its trade secret
misappropriation claim. It continues to represent to the Court that the broad categories listed in
its answers to Voice Signal's interrogatories are sufficient. *Response*, p. 12. Voice Signal has
demonstrated that they are not. With its Objection, Voice Signal submitted the sworn declaration
of Charles C. Wooters, Ph.D., an experienced speech scientist from the International Computer
Science Institute, Berkley, California. Dr. Wooters detailed for the Court each so-called "trade
secret" identified by ScanSoft and demonstrated, in precise terms, that the broad, well-studied

---

[2] *See, e.g., Struthers Scientific and International Corp. v. General Foods Corp.*, 51 F.R.D. 149 (D. Del. 1970) (cited at page 6 of ScanSoft's Response) (plaintiff not entitled to discovery of defendant's trade secrets until it "specifically identifi[ed] the trade secrets" allegedly disclosed to, and used by, defendant); *Litton Systems, Inc. v. Sundstrand Corp.*, 750 F.2d 952 (Fed. Cir. 1984) (cited at page 5 of ScanSoft's Response) ("[plaintiff's] Achilles Heel on this record is its insistence on postponing identification or description of such a broad universe... of unidentified trade secrets ... the district court was at full liberty to draw adverse inferences from what it saw as [plaintiff's] failure to list its thousands of claimed secrets and to credit, for the purposes of the motion, [defendant's] showing of a likelihood that what [plaintiff] was calling trade secrets was more likely to prove public knowledge at trial"); *qad, Inc. v. ALN Associates, Inc.*, 18 U.S.P.Q. 20 1122 (N.D. Ill. 1990) (cited at page 6 of ScanSoft's Response) (where plaintiff had given materials to defendant, defendant was ordered in discovery to identify the materials it received; plaintiff was then sanctioned under Rule 11 for asserting specious trade secret claim. Court sharply criticized "[plaintiff's] persistent and long protracted failure or refusal (or both) to identify the specific trade secrets that assertedly formed the gravemen of its claim..."); *Microtech Int'l, Inc. v. Fair*, 1992 WL239087 (Conn. Super. 1992) (unpublished) (deposition allowed under a protective order limited to identity of customers of (non-party) new employer shared with former employer – after plaintiff specified those customers); *Metal Foil Products Manufacturing Co. v. Reynolds Metals Company, Inc.*, 55 F.R.D. 491(E.D. Va 1970) (in antitrust case, court allowed deposition limited to the size of defendant's advertising budget); *Xerox Corp v. IBM Corp.*, 64 F.R.D. 367 (S.D. N.Y. 1974) (cited at page 6 of ScanSoft's Response) (requiring plaintiff to provide detailed list of allegedly misappropriated trade secrets before determining scope of additional discovery).

and widely-known subject areas "identified" by ScanSoft are not (1) discrete techniques or methods, (2) proprietary or (3) secret.

ScanSoft apparently has nothing to say in response to the Wooters Declaration. Its Response is literally silent. If the Court accepts ScanSoft's generalized categories as its identification of the allegedly misappropriated trade secrets, Voice Signal will immediately move for summary judgment that these categories are not protectable trade secrets. No further discovery will be necessary.

### C. ScanSoft's Misappropriation-By-Inference Argument Is Factually Flawed And Legally Insufficient.

Because it cannot, in good faith, identify even a single ScanSoft trade secret that has ever been misappropriated, ScanSoft relies entirely on its suspicion that certain former Dragon employees may have used something that they learned at Dragon to benefit Voice Signal. In support of its suspicion, ScanSoft points to (1) a September, 2001, Voice Signal press release announcing ELVIS (which pre-dates ScanSoft's acquisition of any technology relevant to this dispute); (2) a series of newspaper and magazine articles describing, in the most general terms, Voice Signal products; and (3) a product announcement by Samsung in April, 2005. *Response*, pp. 7-8. ScanSoft then claims that these items of "evidence" comprise a "powerful circumstantial case" of trade secret misappropriation. [3]

---

[3] Even if that generous assessment of ScanSoft's "evidence" were true (and it is not), more is required by law. *See Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989) (where plaintiff's trade secret claim was "based purely on speculation that since the former [] employees are working in similar areas for [defendant] and that, after employees began working at [defendant], [defendant] announced improvement to its [] products," finding "there is no logic to [plaintiff's] theory" and that plaintiff's theory "must be rejected"); *see also Mana Electric Group, Inc. v. Truland Service Corp.*, 193 F. Supp. 2d 874, 877 (E.D. Va. 2002) (no factual basis to support trade secrets claim where the only "evidence" was plaintiff's speculation based on employee's former employment); *Litton Syst., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 957 (Fed Cir. 1984) ("[Plaintiff's misappropriation] argument, relying as it does on implications and assumptions [related to former employees' activities at defendant company], is not persuasive").

ScanSoft attempts to bolster this misappropriation-by-inference theory by asserting – in conclusory fashion – that "prior to arrival of [the individual defendants] VST simply did not have the capabilities to develop small platform speech recognition technologies [of the type described in a 2001 press release]."[4] ScanSoft also claims (without support) that Voice Signal's "highly sophisticated speech recognition technology is substantially similar to that developed by ScanSoft's predecessors...." *Response*, p. 2. ScanSoft even goes so far as to claim (with no supporting declaration or other evidence) that Voice Signal's recently announced speech-to-text technology is the technology "that the individual defendants developed and directed at Dragon and L&H." *Response*, p. 8.

ScanSoft's own documents demonstrate that these allegations cannot be supported. An internal L&H e-mail directly refutes ScanSoft's assertion. It observes that in August 2000 – months before *any* defendant joined Voice Signal – Voice Signal had achieved small platform speech recognition performance of which L&H was not capable. Declaration of Wendy S. Plotkin ("Plotkin Decl."), Ex. A at SS 005631. The e-mail states:



In fact, as late as October, 2003, ScanSoft still had not developed competitive small platform speech recognition suitable for mobile phones. Plotkin Decl., Ex. B, SS 016352 ("▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" ScanSoft acknowledged it was "▮▮▮▮▮▮▮▮▮▮

---

[4] ScanSoft also suggests that the Superior Court in the L&H case drew such an inference. *Response*, p. 3. There is nothing in the Superior Court Order to support this allegation. The Superior Court expressly rejected the "inevitable disclosure" of trade secrets theory argued by L&H. The Court enforced the non-competition agreements between the individual employees and their former employers and admonished all involved "in accordance with the terms and conditions of [the agreements]" not to use L&H trade secrets.



Decl., Ex. C, SS 016354.

How can there be even an inference that Voice Signal used ScanSoft trade secrets when the only record evidence is that ScanSoft did not have the technology in the first place?

### D.    ScanSoft's Objections To A Neutral Expert Demonstrate Its Lack of Confidence In Its Claims.

In addition to expressing concern that a neutral expert would be expensive and cumbersome, ScanSoft raises a Constitution-based challenge to this Court's authority to appoint a neutral expert to assist the Court in evaluating evidence of trade secret misappropriation.[5] *Response*, pp. 13-14. It requires little discussion. Federal Courts have broad latitude to employ a variety of devices to assist in the Court's determination of factual matters. *See* Fed.R.Evid. 706 (court-appointed experts); Fed.R.Civ.P. 53 (special discovery masters); 28 U.S.C. 636(b)(1)(B) (magistrate judges); 28 U.S.C. 651-58 (court-annexed arbitrators). Such delegation or assistance is appropriate, provided the Court retains for itself the "ultimate decision-making authority" over the controversy. *United States v. Rockwell International*, 897 F.2d 1255, 1264-65 (3d. Cir. 1990) (Fed.R.Evid. 706 allows "experts to render an opinion on the facts of the case, but does not allow experts actually to decide the case"). For its part, Voice Signal welcomes the most

---

[5] ScanSoft cites *ITT Electro-Optical Product Division v. Electronic Technology Corp.*, 161 F.R.D. 228 (D. Mass. 1995), apparently for the proposition that the court's appointment of a neutral expert would be improper. That case is not on point. *ITT Electro-Optical* concerned discovery of a non-party concerning that non-party's use of Electro-Optical trade secrets improperly obtained from the defendant. There was no question that the non-party in-fact possessed Electro-Optical trade secrets, and there was no question of the specific identity of those trade secrets (design schematics and x-rays that the non-party acknowledged it obtained without Electro-Optical approval, and which it continued to posses). Here, Voice Signal denies that it is in possession of any ScanSoft trade secret (and ScanSoft cites no fact to the contrary), and ScanSoft to date has been unwilling or unable to identify the trade secrets which it alleges are in Voice Signal's possession. In these circumstances, assistance of a neutral expert to determine whether <u>any</u> evidence of misappropriation exists, is appropriate.

complete examination of the evidence, and the most thorough and informed determination of trade secret misappropriation, which the Court is able to acquire – through whatever means will facilitate that acquisition. Voice Signal is confident in the Court's capacity to receive whatever expert assistance it deems appropriate, while nonetheless reserving for itself the ultimate decision-making authority in this matter. ScanSoft's challenge is not motivated by any good-faith concern over the Court's ability to strike this balance.

### E.    Discovery Of Manfred Grabherr's Work Is Irrelevant And Improper.

Production of the work of defendant Manfred Grabherr is not relevant to any valid claim presently asserted in the litigation.[6]  ScanSoft has stated, under oath, that its trade secrets are embodied in a product called "Dragon Naturally Speaking," developed by Dragon Systems, Inc. ("Dragon"). Voice Signal has submitted a declaration from Mr. Grabherr stating that he was never employed by Dragon and, as an L&H employee, was never given access to the source code or development documents for Dragon Naturally Speaking. ScanSoft offers no contrary evidence (and there is none). Mr. Grabherr could not possibly have misappropriated a trade secret to which he was never exposed. There is, therefore, no basis whatever for an examination of a full year of Mr. Grabherr's work at Voice Signal.

Undeterred by the facts concerning Mr. Grabherr's employment history, and his lack of exposure to the only product ScanSoft has ever claimed contains a misappropriated trade secret, ScanSoft demands discovery of Grabherr's work product. ScanSoft asserts "It is irrelevant that [Grabherr] never worked on Dragon Naturally Speaking before he went to VST." *Response*, p. 6. ScanSoft claims that it "contends that VST has misappropriated the very trade secrets Grabherr worked on and has used these trade secrets in producing products brought to the

---

[6] Mr. Grabherr filed a Motion for Summary Judgment to dismiss the allegations against him on May 3, 2005. That Motion is pending before the Court.

8

market." *Response*, p. 7. There is no such contention in the Amended Complaint or in ScanSoft's sworn responses to interrogatories in this case (and ScanSoft cites to none). ScanSoft's effort to obtain Mr. Grabherr's work is unrelated to the merits of this case. It should be denied.

Respectfully submitted,

LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, MANFRED G. GRABHERR and VOICE SIGNAL TECHNOLOGIES, INC.

By their attorneys,

/s/ Paul D. Popeo
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Paul E. Bonanno (BBO No. 646838)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 248-5000

Dated: May 12, 2005

9