UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VOICE SIGNAL TECHNOLOGIES, INC., )<br>LAURENCE S. GILLICK, ROBERT S. )<br>ROTH, JONATHAN P. YAMRON, and )<br>MANFRED G. GRABHERR )<br>)<br>Defendants. )<br>) | Civil Action No. 04-10353 PBS |

## PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO DEFENDANT VOICE SIGNAL TECHNOLOGIES, INC.

Pursuant to Fed. R. Civ. P. 34, ScanSoft, Inc. requests that Voice Signal Technologies, Inc. produce for inspection and copying the documents and things specified below.

### DEFINITIONS

1. The definitions set forth in Local Rule 26.5(C) and in 35 U.S.C. § 100 are deemed incorporated by reference into these requests.

2. As used herein, "document" shall mean, in addition to its other meanings, "documents and things."

3. As used herein, the words "and" and "or" shall, where the context permits, be construed to mean "and/or."

4. As used herein, "every" and "each" shall both mean "each and every."

5. As used herein, "Voice Signal" or "defendant" refers to the defendant Voice Signal Technologies, Inc., and to its officers, directors, employees, agents, attorneys, representatives, partners, corporate parent, subsidiaries, divisions, and/or affiliates, to the full extent set forth in Local Rule 26.5(C)(5).

6. As used herein, "ScanSoft" or "plaintiff" refers to the plaintiff, ScanSoft Engineering Company, Inc., and to its officers, directors, employees, agents, attorneys, representatives, partners, corporate parent, subsidiaries, divisions, and/or affiliates, to the full extent set forth in Local Rule 26.5(C)(5).

7. As used herein, "the '966 patent" or "the patent-in-suit" refers to U.S. Patent No. 6,501,966.

8. As used herein, "the '630 patent" refers to U.S. Patent No. 6,595,630.

9. As used herein, "Speech Recognition Product" refers to any product or service incorporating speech recognition technology, including but not limited to speech recognition software embedded in portable devices, such as mobile telephones and PDA's.

10. As used herein, "VST Speech Recognition Product" refers to any Speech Recognition Product, as defined above, which has been made, used, licensed, offered for sale, or sold by, or on behalf of, Voice Signal, and any Speech Recognition Product incorporating technology developed, licensed or sold by Voice Signal. VST Speech Recognition Product shall include without limitation any product(s) identified in the ELVIS press release, dated September 6, 2001, and attached to ScanSoft's Amended Complaint at Exhibit E.

INSTRUCTIONS

1. These requests shall be deemed to be continuing to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

2. Unless otherwise specified, the time period applicable to these requests shall be seven (7) years prior to the filing of the complaint in this action (i.e. February 20, 1997) and forward, continuing through to the termination of this litigation.

3. Each request must be answered with Voice Signal's entire knowledge, available from all sources, including all information and documents in defendant's possession or control, or in the possession or control of Voice Signal's agents, officers, employees, partners, representatives and attorneys, or otherwise available to Voice Signal. If any request has sub-parts, then answer each part separately and in full, and do not limit the answer to the request as a whole.

4. In answering these requests, Voice Signal must make a diligent search of all records and other papers, documents, and materials, in Voice Signal's possession, custody, or control, or available to Voice Signal from whatever source.

5. If Voice Signal objects to any part of any request, then respond to all parts not objected to and state the precise nature of the objection. If, in responding to any of these requests, Voice Signal asserts or relies upon any privilege or other rule protecting against disclosure of a document, communication, or other information, then specify the exact nature of such privilege or rule. With respect to each document or communication as to which Voice Signal asserts a privilege or other protection against disclosure, identify such document or communication and the basis for the asserted privilege.

6. If you are aware that a document responsive to any request has been destroyed, then state the reason for its destruction, identify the person(s) having any knowledge of its destruction and each person responsible for its destruction.

## REQUESTS

1. Each document for which identification is requested by, or that is identified in responses to, Plaintiff's First Set of Interrogatories to Defendant Voice Signal Technologies, Inc.

2. Each document consulted or referred to in responding to Plaintiff's First Set of Interrogatories to Defendant Voice Signal Technologies, Inc.

3. Each document included in the categories of documents and things identified by Voice Signal in disclosures made pursuant to Fed. R. Civ. P.26(a)(1-4) and Local Rule 26.2(A).

4. Source code, in electronic format, of each different version of each VST Speech Recognition Product, including without limitation any versions no longer sold or licensed by Voice Signal.

5. Any user guides or manuals, instructions, documentation, product inserts, promotional materials, and/or other literature that are provided with each version of each VST Speech Recognition Product or otherwise made available by Voice Signal to the purchasers or licensees of such products.

6. Organizational charts for each division or portion of Voice Signal that is responsible, in whole or in part, for the conception, research, design, development, manufacture, marketing, distribution, importation into the U.S., and/or sale or licensing of each version of each VST Speech Recognition Product.

7. Each document concerning the conception, research, design, development, reduction to practice, testing, prototyping, manufacture, technical specifications, operating parameters, material composition, and/or performance capabilities of each version of each VST Speech Recognition Product and any of their prototypes, including without limitation designs, user guides, user manuals, technical manuals, developer guides, design review, notes, equipment

and/or inventory lists for components used, laboratory notebooks, calculations, reports, specifications, engineering logs, test data, scientific or engineering journal articles, data sheets, brochures, catalogs, internal or external communications, advertisements, and promotional material.

8. Each document concerning third party products reviewed, tested, or evaluated by Voice Signal in connection with the design and development of any and all versions of each VST Speech Recognition Product.

9. Each document concerning any components or services provided by persons who are not parties to this case for use in connection with any VST Speech Recognition Product, including but not limited to designs, user guides, user manuals, technical manuals, developer guides, design review, notes, equipment and/or inventory lists for components used, laboratory notebooks, calculations, reports, specifications, engineering logs, test data, scientific or engineering journal articles, data sheets, brochures, catalogs, internal or external communications, advertisements, and promotional material for such components.

10. Each document concerning the trial, testing, evaluation, analysis, and/or quality control or assurance of each version of each VST Speech Recognition Product, including but not limited to laboratory notebooks, calculations, reports, specifications, engineering logs, test data, scientific or engineering journal articles, data sheets, brochures, catalogs, internal or external communications, and documents describing the trial, testing, evaluation, analysis, or quality control or assurance of said products.

11. Each document concerning any changes, additions, deletions, modifications, or alterations to each version of the source code of each VST Speech Recognition Product, starting from the first prototype of each VST Speech Recognition Product.

12. Each document concerning each offer for sale, sale, marketing, license, lease, distribution, importation to the U.S., transfer of each VST Speech Recognition Product, and/or other transaction relating to each VST Speech Recognition Product, including but not limited to invoices, purchase orders, sales quotations, contracts, price lists, receipts, payment slips, shipping documents, shipping reports, customs forms, business plans, marketing reports, sales reports, manufacturing reports, projection reports, royalty reports, market studies, marketing reports, economic forecasts, financial estimates or projections, financial summaries, and data compilations that record revenue figures.

13. Each document concerning any profits earned or losses incurred through manufacture, use, offer for sale, sale, or transfer of each VST Speech Recognition Product, including but not limited to sales or cost accounting data, federal and state tax returns, monthly, quarterly, or annual financial reports, annual and 10K reports, audited or unaudited financial statements prepared by or for Voice Signal, statements of accounting policies, accounting documentation provided to lenders and investors, charts or accounts, royalty reports, general ledgers with transaction level detail, detailed trial balances, and any financial reports generated or maintained for the voice activated recognition products.

14. Each document concerning the price of each VST Speech Recognition Product, and each document concerning the determination of, or policies concerning, the price of each VST Speech Recognition Product, including but not limited to price sheets or lists, reports, pricing advertisements, documents by inside or outside salespeople and sales representatives, monthly, quarterly, or annual financial reports and sales summaries.

15. Each document concerning standard manufacturing costs and the basis for computation of profit, direct or indirect expenses (including materials, labor, general and

administrative expenses, etc.), component costs, plant costs, equipment costs, training costs, research and development costs, rent, utilities, general overhead, depreciation, taxes, start-up expenses with respect to each VST Speech Recognition Product, including but not limited to periodic reports (monthly, quarterly, or annual reports), planning reports, manufacturing cost reports, cost rollup reports, efficiency reports, inventory reports, profit and loss reports, and balance sheets.

16. Each document concerning Voice Signal's gross sales, gross profits, net profits, earnings, assets, liabilities, and net worth since January 1, 1997.

17. Each document concerning the marketing, public disclosure, advertising, demand, sales, or use of each VST Speech Recognition Product, including but not limited to promotional and trade literature, brochures, advertisements, videotapes or other descriptive materials, prices lists, distributor or customer questionnaires, sales training materials, and any catalogs in which any VST Speech Recognition Products are shown, described or referenced, whether or not used, published, broadcast, or distributed.

18. Each document concerning any agreement or proposed agreement with respect to each VST Speech Recognition Product, including but not limited to license agreements, indemnification agreements, sales agreements, agreements concerning patents and applications therefor, trade secrets, research and development, design, and/or distribution agreements.

19. Each document concerning the popularity, utility, advantages over other devices, and nature of benefits to users of VST Speech Recognition Products.

20. Each document concerning the effect of sales of Voice Signal Speech Recognition Products upon the sales of any other of Voice Signal's products or services.

21. Each document concerning invention disclosures, patent applications, and patents owned or licensed by Voice Signal with respect to any invention, technology, method, or product contained or embodied in, or used by, VST Speech Recognition Products.

22. Each document concerning Voice Signal's patent or other licensing policies, programs, negotiations relating to patent licensing, including but not limited to royalty or patent license policy statements, reports and board of directors meeting minutes.

23. Each document concerning Voice Signal's awareness or knowledge of the patent-in-suit.

24. Each document concerning the inventions disclosed and claimed in the patent-in-suit.

25. Each document concerning any consideration, examination, or review by Voice Signal of the patent-in-suit.

26. Each document concerning any disclosure or communication between Voice Signal and any person for determination of whether any features of any VST Speech Recognition Product infringe the patent-in-suit and/or whether the patent-in-suit is valid and enforceable, including but not limited to any opinions of counsel, prior art references, printed publications, and other related documents.

27. Each document concerning any disclosure or communication between Voice Signal and any person for determination of whether any VST Speech Recognition Product contains or utilizes the trade secrets of ScanSoft (or its predecessors, including without limitation Dragon Systems and Lernout & Hauspie), including but not limited to any opinions of counsel.

28. Each document concerning any prior art search and any validity, patentability, or infringement study with respect to the patent-in-suit, including but not limited to each patent and publication identified by or in such search or study.

29. Each prior art patent and publication pertinent to the patent-in-suit.

30. Each document concerning the validity, infringement, or enforceability of the patent-in suit.

31. Each document concerning the level of skill in the art of the design, engineering or manufacture of Speech Recognition Products from 1992 to the present.

32. Each document concerning any trade secrets of ScanSoft (or its predecessors, including without limitation Dragon Systems and Lernout & Hauspie) that were in the possession of or known to Laurence S. Gillick, Robert S. Roth, Jonathan P. Yamron, or Manfred G. Grabherr at the time they became employees of Voice Signal.

33. Each document concerning any discussions and/or communications between Voice Signal and the individual defendants regarding any trade secrets of ScanSoft (or its predecessors, including without limitation Dragon Systems and Lernout & Hauspie) or any other party, including without limitation any discussion and/or communication regarding the disclosure of those trade secrets.

34. Each document, including but not limited to documents in electronic format and/or source code, in the possession of Laurence S. Gillick, Robert S. Roth, Jonathan P. Yamron, or Manfred G. Grabherr at the time they became employees of Voice Signal that were related to their employment at Dragon Systems and/or Lernout & Hauspie and/or their work on Speech Recognition Products at Dragon Systems and/or Lernout & Hauspie.

35. Each document related to the work performed by the individual defendants in connection with VST Speech Recognition Products, including without limitation the product(s) identified in the ELVIS press release, dated September 6, 2001, and attached to ScanSoft's Amended Complaint at Exhibit E, and any documents specifying or describing the contribution(s) of each individual defendant to the conception, research, design, development, reduction to practice, testing, offer of sale and/or sale of those products.

36. Each document concerning any of Voice Signal's claims, defenses, and contentions in this lawsuit, including any contention that the patent-in-suit is invalid, unenforceable, or not infringed, any contention regarding the scope or interpretation of any claims in the patent-in-suit, any contention regarding any misuse of the patent-in-suit by ScanSoft, any contention that Laurence S. Gillick, Robert S. Roth, Jonathan P. Yamron, or Manfred G. Grabherr did not possess, know of, use or disclose any trade secrets belonging to another party to Voice Signal, any contention that Voice Signal took steps to prevent disclosure or use of such trade secrets, and/or any contentions concerning or the appropriate measure of damages that allegedly has been or may be incurred as a result of ScanSoft's conduct.

37. Each document relating to the conception or reduction to practice of the subject matter of any claim of the '630 Patent, including without limitation all engineering, laboratory or other notebooks, written descriptions, invention disclosures, log books, or record books, memoranda, progress reports, trip reports, analyses, drawings, schematics, specifications, diagrams, engineering change requests or orders, purchase requests or orders, computer records, diaries, or calendars, and each document relating to or corroborating each act of diligence and the date of each such act of diligence leading to any reduction to practice of the subject matter of any claim of the '630 Patent.

38.     Each document relating to each mode of carrying out the alleged invention(s) claimed in the '630 Patent, including without limitation the best mode contemplated by you at the time of the filing date of the '630 Patent.

39.     Each document relating to the popularity, utility, advantages over other devices, and nature of benefits to users, of products or processes incorporating the alleged invention(s) claimed in the '630 Patent.

40.     Each document relating to the decision to seek patent protection for the subject matter of any claim of the '630 Patent and each document relating to the identification, selection or determination of the inventors of the '630 Patent, including but not limited to each document relating to any other party involved in the conception or reduction to practice of any alleged invention claimed in the '630 Patent.

41.     Each document (including but not limited to all non-identical copies of any file histories, and each document relating to any decision as to what prior art reference(s) to cite, or not to cite during prosecution), relating to the preparation, filing and/or prosecution of:

    (a)     the '630 Patent;
    (b)     any patent or patent application (including any pending or abandoned applications) that claims priority from or through the '630 Patent; and,
    (c)     any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a) or (b).

42.     Each document relating to any communication, meeting or contact with the United States Patent and Trademark Office or any representative thereof or any foreign patent office or any representative thereof relating to any United States or foreign patents or patent applications relating to the '630 Patent or the subject matter of the '630 Patent.

43.     Each document relating to or constituting art or prior art, or ever evaluated or considered as art or prior art, including without limitation (a) any information, including patents,

publications, prior knowledge, public uses and sales, or offers for sale, known to, considered by, or identified to you that constitutes, contains, discloses, refers to, relates to, or embodies any art relating or analogous to the subject matter of any claim of the '630 Patent, and (b) any document relating to any evaluation, analysis, or review of any art relating to or analogous to the subject matter of any claim of the '630 Patent.

44. Each document relating to any investigation, opinion, report, or observation, as to the patentability, validity, enforceability, inventorship, scope and/or infringement of any claim of the '630 Patent, or of any United States or foreign patent or pending or abandoned patent application that claims priority from the '630 Patent, including without limitation, any document relating to any search or investigation for prior art or other information regarding the patentability of the subject matter of any claim of:

    (a)    the '630 Patent;
    (b)    any patent or patent application (including any pending or abandoned applications) that claims priority from or through the '630 Patent; and
    (c)    any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a) or (b), including without limitation each documents and things obtained, identified, or uncovered by any such search or investigation.

45. Each document upon which you intend to rely to support the validity of the '630 Patent, including without limitation alleged evidence of objective indicia of non-obviousness and other alleged evidence of novelty or non-obviousness, including without limitation each document relating to whether: (a) the subject matter of any claim allegedly satisfied a long felt need in the art to which they pertain, (b) the industry failed to solve problems that allegedly are solved by the subject matter of any claim, (c) experts in the industry allegedly expressed skepticism concerning the subject matter of any claim, (d) the subject matter of any claim allegedly has been a commercial success, (e) the industry allegedly has recognized the

significance of the subject matter of any claim, (f) the subject matter of any claim allegedly has been copied by others in the industry, and (g) the subject matter of any claim allegedly achieved unexpected results, and each document relating to any alleged nexus or lack thereof between any alleged commercial success of the subject matter of any claim of the '630 Patent and the alleged advantages of that subject matter.

46. Each document relating to any lawsuit, arbitration, patent interference proceeding, reissue or reexamination proceeding, or patent opposition or cancellation proceeding relating to:

    (a)    the '630 Patent;
    (b)    any patent or patent application (including any pending or abandoned applications) that claims priority from or through the '630 Patent; and
    (c)    any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a) or (b).

47. Each document concerning the level of skill in the art to which the subject matter of the '630 Patent pertains.

48. Each document relating to any disclosure or publication of the subject matter of any claim of the '630 Patent to any other person or entity, including without limitation, the first such disclosure, any sales, offers for sale, public uses, demonstrations, tests, announcements, publications, communications with customers, presentations, advertisements, or promotions made by you, either before or after November 19, 1999, concerning the subject matter of any claim of the '630 Patent or any product that embodies, falls within the scope of, or is made in accordance with any claim of the '630 Patent.

49. Each document relating to any prototypes, offers for sale, manufacturing, use, sale, shipment, announcement, testing, demonstration and disclosure, before November 19, 1999, of any system, product, process or device that embodies, falls within the scope of, or is made in accordance with the subject matter of any claim of the '630 Patent.

50. Each document authored, created or produced by you, your licensees, or other third-parties on your behalf, relating to the conception, research, design, development, decision to design and develop, reduction to practice, testing, prototyping, trial, evaluation, analysis, and/or quality control or assurance, decision to market and sell, manufacturing processes or methods, technical specifications, operating parameters, material composition, and/or performance capabilities of any products incorporating the alleged invention(s) claimed in the '630 Patent and any of their prototypes, including but not limited to written descriptions, invention disclosures, engineering drawings, schematic diagrams, blue prints, designs, user guides, user manuals, technical manuals, developer guides, design review, notes, equipment and/or inventory lists for components used, laboratory notebooks, calculations, reports, specifications, engineering logs, test data, scientific or engineering journal articles, data sheets, brochures, catalogs, internal or external communications, advertisements, and promotional material.

51. Each document relating to any review or testing by any internal or external agency or organization, including governmental agencies, of any products incorporating the alleged invention(s) claimed in the '630 Patent manufactured, used, sold, imported into the United States or offered for sale by or on behalf of you or your licensees.

52. Each document relating to the market for products that address the problem allegedly solved by the '630 Patent or any submarket thereof, including but not limited to documents concerning information, estimates or opinions with respect to the size or growth of any such market, actual or potential competitors or competition therein, the marketing efforts of third parties, the products comprising such market, trends in or affecting such market, or consumer preferences affecting such market.

53. Each document prepared or received by you or on your behalf, from January 1, 1992 to date, concerning competition from products that address the problem allegedly solved by the '630 Patent that were manufactured or sold by third parties, including but not limited to ScanSoft, and any actual, planned or possible responses or reactions by you or your licensees to such competition and each document concerning any communications or correspondence concerning any such actual, planned or possible responses.

54. Each document relating to any licensing by you of the '630 Patent and each document relating to any efforts by you to sell or the sale of products incorporating the alleged invention(s) claimed in the '630 Patent, including but not limited to any agreement or proposed agreement relating to products incorporating the alleged invention(s) claimed in the '630 Patent and/or your efforts to license or the licensing of any patent, trade secrets, research, development and design related thereto, including but not limited to license agreements, royalty reports, indemnification agreements, sales agreements, distribution agreements, invoices, purchase orders, sales reports, agreements concerning patents and applications therefor, or any drafts thereof, and any notes, diary entries, memos, and letters related thereto.

55. Each document relating to any manufacture, use, offering for sale, sale, transferring, distributing, marketing, or importation into the United States, by you or by your licensees, of any product, process, device or system that addresses the problem allegedly solved by the '630 Patent and any evaluation of whether those products fall within the scope of the '630 Patent.

56. Each document relating to sales, pricing, profits earned or losses incurred, costs and expenses in connection with any product made by you, on your behalf, and/or by your licensees, incorporating the alleged invention(s) claimed in the '630 Patent.

57. Each document relating to your analysis, consideration, evaluation, determination, assertion, notification, conclusion, charge, or contention that any process or product of any person, including ScanSoft, infringes any claim of the '630 Patent, or any foreign counterparts, including but not limited to (a) any document regarding any product or process that you allege infringes the '630 Patent, (b) any document relating to your first knowledge of any conduct by any party alleged to constitute infringement of the '630 Patent, (c) any notice given by you to ScanSoft or any other party reflecting your contention that the party was or is infringing or possibly infringing the '630 Patent, (d) any communication between you and any other person concerning alleged infringement by any party, including ScanSoft, of the '630 Patent, (e) any document you relied upon to form an opinion as to infringement of the '630 Patent by any party, including ScanSoft, including tests conducted by you or on your behalf, advertising brochures, manuals, photographs, physical specimens, drawings or other material relating to any product or process that you allege infringes the '630 Patent, and (f) any document relating to plans, suggestions, contemplated action, or decision to assert the '630 Patent in this or any other action.

58. Each document relating to any meeting, discussion, or communication between you and any third party concerning the '630 Patent or the subject matter of the claims thereof, including but not limited to documents relating to any public communication made by you or on your behalf regarding the present litigation, including but not limited to consumers and/or media.

59. Each document concerning any policy for the retention or destruction of documents by Voice Signal.

60. Each document provided to, used by, considered by, or received by any expert or testifying witness of Voice Signal in this case.

Dated: May 26, 2004

SCANSOFT, INC.,

By its attorneys,

_____
Lee Carl Bromberg, BBO #058480
Robert Asher, BBO #022865
Julia Huston BBO #562160
Lisa M. Fleming, BBO #546148
John F. Ward, BBO #646689
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
(617) 443-9292

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document was served upon counsel for the defendants, Paul Popeo, Esq., Choate, Hall & Stewart, Exchange Place, 53 State Street, Boston, Massachusetts 02109, by hand on the above date.

_____
Julia Huston

02639/00509 310484.1