UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC. </br></br>       Plaintiff, </br></br>       v. </br></br> VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR </br></br>       Defendants. | Civil Action No. 04-10353 PBS </br></br> **ORAL ARGUMENT REQUESTED** |

**SCANSOFT'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR A PROTECTIVE ORDER TO LIMIT DEPOSITIONS**

By noticing depositions far in excess of the presumptive limit of ten set by Fed. R. Civ. P. 30(a)(2)(A) and Local Rule 26.1(c), Voice Signal Technologies, Inc. ("VST") continues to ignore the Federal Rules of Civil Procedure and the Local Rules of this Court.

As of the date of this filing, VST has taken eight depositions and has noticed an additional thirteen depositions, adding up to a total of twenty-one depositions in all. Yet VST has not sought leave of this Court or ScanSoft's agreement to exceed the ten-deposition limit. Many of these depositions are for third parties scattered around the United States and Europe. The additional depositions add greatly to the cost and burden of this litigation, forcing ScanSoft's attorneys to travel great distances for depositions that often do not produce any useful information and which could have been accomplished more effectively through depositions upon written questions under Rule 31 (*e.g.*, to authenticate documents produced under third-party subpoenas) or via telephone. Of course, these depositions also result in substantial inconvenience to third parties. Accordingly, ScanSoft respectfully requests that this Court limit

VST to the ten depositions presumptively allowed under the Federal Rules of Procedure and the Local Rules of this Court.

## FACTS

VST has already taken eight depositions encompassing the testimony of nine individuals, including the following:

1. Peter J. Foster (co-inventor of '966 patent) on January 20, 2005;

2. Basavaraj Pawate, Rule 30(b)(6) designee of Texas Instruments on January 25, 2005;

3. Thomas B. Schalk (co-inventor of '966 patent) on January 28, 2005;

4. Michael Phillips, Rule 30(b)(6) designee of ScanSoft on February 8, 2005;

5. Bern F. Bareis (co-inventor of '966 patent) on February 11, 2005;

6. Gene Frantz, Rule 30(b)(6) designee of Texas Instruments on March 15, 2005;

7. Sam Viglione (third party) on April 21, 2005;

8. Fadi Kaake (ScanSoft employee) on May 24, 2005;

9. Al Silverberg, Rule 30(b)(6) designee of Uniden America Corp. on May 23, 2005;

(deposition notices/subpoenas attached as **Exhibit A**).

Of these, the depositions involving third parties have been particularly wasteful fishing expeditions. In each case, VST has insisted on flying to Texas three times (depositions of Messrs. Pawate, Frantz, and Silverberg) and to California (deposition of Mr. Viglione) in pursuit of testimony regarding a prior art reference. In each case, the witness could provide little if any information above and beyond that which was already disclosed on the face of the reference itself.

In particular, the May 23rd deposition of Uniden's Rule 30(b)(6) representative, the company's President and CEO, Mr. Al Silverberg, in Fort Worth, Texas was an exercise in waste

and frustration. In Uniden's March 11, 2005, objections to the deposition subpoena, Uniden stated plainly that it had no witness with substantive information:

> Uniden simply has no witness to designate for the deposition requested [] that can testify under oath in any material or substantive way regarding the matters noticed . . . Accordingly, there is no relevant admissible evidence, nor information that could lead to relevant admissible evidence, to be discovered by VST by any witness Uniden could possibly designate for the deposition requested.

(Uniden America Corp.'s Objections and Responses to Third Party Subpoena, attached as **Exhibit B**). A review of documents produced by Uniden in response to VST's subpoena and phone conversations with Uniden's in-house counsel, Mr. Rudolph L. Ennis, confirmed that Uniden would be unable to provide a Rule 30(b)(6) representative knowledgeable about the Uniden VoiceDial product allegedly produced circa 1989 and cited in the '966 patent.

In advance of the deposition, ScanSoft requested that VST reconsider whether the deposition of Uniden was really necessary given Uniden's clear lack of substantive information. Declaration of Jack C. Schecter ("Schecter Decl."), ¶ 3, attached as **Exhibit C**. Alternatively, in an effort to avoid unnecessarily adding to the cost of this litigation and wasting the parties' resources, ScanSoft suggested that, at the least, VST agree to conduct the deposition by phone. *See id.* VST refused and insisted on flying to Texas for the deposition. *See id.*

As expected, despite the fact that Uniden made its President and CEO available to testify, the deposition provided no relevant testimony. Mr. Silverberg did not recall the sale of the Uniden VoiceDial product that was the subject matter of the Rule 30(b)(6) notice (May 23, 2005 deposition of Al Silverberg, p. 21-22) (attached as **Exhibit D**). Moreover, Mr. Silverberg testified that there was no one at Uniden today who was involved with the development, marketing, or sale of the VoiceDial product and that the division responsible for that product was

3

shut down more than a decade ago. *Id.* at p. 23, 29-31. The deposition consisted of less than an hour of questioning. To the extent VST believed Mr. Silverberg's brief testimony was necessary, this same testimony could have easily and cheaply been taken by phone.

In addition to the eight depositions it has already taken, VST has also noticed the following thirteen depositions, which, if allowed to proceed, will total twenty-one depositions involving at least twenty-two individual witnesses:

10. Koninklijke Philips Electronics, N.V., noticed on January 28, 2005 (The Netherlands)

11. Intervoice, Inc., noticed on February 3, 2005 (Dallas, TX)

12. Philips Electronics North America, noticed on February 16, 2005 (New York, NY)

13. Cingular Wireless, noticed on March 22, 2005 (Atlanta, GA)

14. Guido Gallopyn, noticed on May 11, 2005

15. Tom Morse, noticed on May 11, 2005

16. Alan Schwartz, noticed on May 11, 2005

17. Jeanne McCann, noticed on May 11, 2005

18. Jan Varhasselt, noticed on May 11, 2005 (Belgium)

19. Michael McMahan, noticed on May 19, 2005 (Austin, TX)[1]

20. Kenneth Bayse, noticed on May 20, 2005

21. Francis Ganong, noticed on May 24, 2005

22. Vlad Sejnoha, noticed on May 24, 2005

(deposition notices/subpoenas attached as **Exhibit E**).

---

[1] As described more fully below, VST recently informed ScanSoft that it would not be going forward with the McMahan deposition.

If allowed to go forward, these depositions would force ScanSoft to travel throughout the United States and, indeed, Europe, for at least two of the depositions. Moreover, four of these depositions, those of Messrs. Gallopyn, Morse, Schwartz, and Ms. McCann, are noticed for this coming Friday, May 27, 2005, the day before the Memorial Day holiday weekend. Two more, those of Messrs. Ganong and Sejnoha, are noticed on Monday, May 30, 2005, Memorial Day itself. ScanSoft cannot cover all of these depositions on the days noticed by VST.

## ARGUMENT

Ignoring the Federal Rules and the Local Rules of this Court, VST has failed to seek leave of Court to extend the ten deposition limit. Moreover, VST has overwhelmed ScanSoft with depositions -- both in number and in their burdensome effect on ScanSoft and third parties. Many of these depositions are merely cumulative and thus serve only to increase the costs to ScanSoft and the third parties who will be bothered by them. Accordingly, ScanSoft requests that this Court stop any further depositions past the 10-deposition limit.

**A.      Eleven Depositions Over the Limit Is Excessive.**

Fed. R. Civ. P. 30(a)(2)(A) requires a party to obtain leave of court when "a proposed deposition would result in more than ten depositions being taken under this rule…." Local Rule 26.1(c) imposes a similar restriction, stating that "the number of discovery events shall be limited for each side to ten (10) depositions…." Courts in this district and elsewhere require strict adherence to these rules. *See, e.g., Advanced Sterilization Products v. Jacob*, 190 F.R.D. 284, 286 (D. Mass. 2000) ("in the absence of a stipulation, a party seeking to take more than ten depositions must *explicitly* seek and obtain leave of court before that party can commence any depositions in excess of the ten-deposition limit"). Further, under Local Rule 26.1, the parties

5

may not simply stipulate to taking more than ten depositions per side: "an order of a judicial officer must be sought and obtained." *Id.*

VST has noticed twenty-one individuals or companies and has already deposed eight of these individuals and companies. Remarkably, VST has not bothered to seek leave of Court to extend the ten-deposition presumptive limit and has not sought ScanSoft's agreement regarding depositions in excess of the limit.[2] This flaunting of the Federal Rules and the Local Rules of this Court should not be excused, and VST should be ordered to comply with the ten deposition limit.

**B.   VST's Twenty-one Noticed Depositions Are Cumulative and Wasteful.**

Fed. R. Civ. P. 26(b)(2) provides that a court may alter or limit depositions when they are "unreasonably cumulative or duplicative, or [are] obtainable from some other source that is more convenient, less burdensome, or less expensive." That rule also allows a court to limit depositions if "the burden or expense . . . outweighs its likely benefit." In addition, Rule 26(c) provides that "the court in which the action is pending … may make an order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…."

In determining whether to issue a protective order, the court should balance the need of the party against the burden caused by discovery. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). This balancing test requires that the discovering party -- in

---

[2] During a Local Rule 7.1 conference on this motion, ScanSoft attempted to reach agreement with VST on a proposed limit to depositions. Although ScanSoft firmly believes proper discovery can be achieved within the ten-deposition limit, as an accommodation to VST, ScanSoft proposed that the parties jointly seek leave of the Court to extend the limit to twelve depositions per side. VST refused, maintaining that it requires up to eighteen fact depositions to complete discovery.

this case, VST -- prove that it seeks information that is relevant to or reasonably calculated to lead to the discovery of admissible evidence. *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C.Cir. 1997) (reversing the district court decision to allow discovery and holding that the documents sought by subpoena were not relevant to the underlying case nor were they reasonably likely to lead to relevant information and therefore, were not discoverable). Here, many of VST's twenty-one noticed depositions are wasteful and unnecessary. Two particular instances illustrate the unreasonableness of the depositions here.

First, VST deposed two witnesses from third-party Texas Instruments. VST first deposed Raj Pawate on January 25, 2005, in Texas. Texas Instruments offered Mr. Pawate as its Rule 30(b)(6) witness. Unsatisfied with the testimony of Mr. Pawate, on March 15, 2005, VST deposed another Rule 30(b)(6) designee of Texas Instruments, Gene Frantz. Still unsatisfied, on May 19, 2005, VST noticed the deposition of an ex-Texas Instruments employee, Michael McMahan. ScanSoft contacted VST and asked that VST reconsider whether the deposition of Mr. McMahan was really necessary. At the least, ScanSoft proposed that VST agree to take Mr. McMahan's deposition via telephone, but again, VST refused to consider that cost-saving option. *See* Schecter Decl., ¶ 5.[3]

These repetitive, failed attempts to discover information regarding purported prior art references from Texas Instruments were not reasonably calculated to lead to the discovery of any evidence, and certainly not to admissible evidence. Rather, each deposition provided VST with a

---

[3] During the Rule 7.1 conference on this motion, VST finally relented and agreed to cancel the deposition of Mr. McMahan. *See* Schecter Decl., ¶ 6. That VST so readily agreed to cancel the McMahan deposition further reinforces the notion that Mr. McMahan's deposition was simply a wasteful lark to begin with.

7

name of another employee and VST has continued to notice and depose these individuals without regard to time, expense, or relative value. VST is blindly searching for information that is unlikely to exist at all. Each deposition of Texas Instruments requires a lengthy flight to Texas, costs of travel, and lost time for ScanSoft.

Second, as described above, last Monday, VST deposed Uniden. In that instance, VST again insisted on dragging the parties and a Rule 30(b)(6) representative of Uniden to a deposition in Texas. The deposition of Uniden was particularly wasteful given the fact that it was clear from Uniden's objections and from the face of the documents previously produced by Uniden that Uniden's representative would be unable to provide any relevant testimony. Predictably, that deposition lasted less than an hour and produced no relevant testimony. Undaunted, VST is now demanding that Uniden produce yet another Rule 30(b)(6) representative. *See* Schecter Decl., ¶ 7. VST should not be permitted to continue to increase the costs of this litigation and waste the time and resources of ScanSoft and numerous third-parties, including Uniden, with this type of wasteful deposition practice.

### C. Deposition Practice Should Not Be Used As a Tool for Harassment.

In addition to being wasteful and in excess of the ten deposition presumptive limit set forth in the Rules, VST's deposition practice appears to be as much a method of harassment as it is a discovery tool. For example, VST scheduled a separate deposition for this case in Texas on Monday, May 23, 2005 only four days before the scheduled date of the McMahan deposition, Friday, May 27, 2005, also in Texas. Moreover, Mr. McMahan's deposition was scheduled for 9 a.m. in Austin, Texas, requiring an overnight stay. This scheduling required unnecessary,

8

duplicative travel plans and additional expenses for ScanSoft and was altogether unreasonable.[4] ScanSoft proposed that VST consider taking Mr. McMahan's deposition via telephone, but again, VST refused to consider that cost-saving option. In addition to the deposition of Mr. McMahan, VST had scheduled four other depositions for the same day, the Friday before Memorial Day weekend, in other locations. VST has also scheduled two depositions to take place on Memorial Day itself.

VST is using the tools of discovery to create undue burdens and excessive expenses for ScanSoft while engaging in fruitless searches. Even where it has been apparent that there was no need for the parties to travel for a deposition, as in the case of the utterly wasteful Uniden deposition, VST has refused to conduct the deposition by phone. *See* Schecter Decl., ¶¶ 3, 5. This wasteful and harassing deposition practice is not permitted by the Federal Rules. *See* Fed. R. Civ. P. 26(b)(2).

## CONCLUSION

For the reasons stated above, ScanSoft respectfully requests that the court enter a protective order limiting VST to ten depositions.

---

[4] Despite the fact that VST has relented and agreed to cancel the McMahan deposition, ScanSoft was only notified after the close of business on Wednesday, May 25, 2005, as part of the Rule 7.1 conference on this motion. Because of this late notice, ScanSoft incurred a penalty fee as a result of the cancellation of its flight reservations.

Dated:  May 26, 2005                                        SCANSOFT, INC.,
                                                            By its attorneys,


                                                            /s/ Jack C. Schecter
                                                            Lee Carl Bromberg, BBO # 058480
                                                            Robert Asher, BBO # 022865
                                                            Erik Paul Belt, BBO # 558620
                                                            Lisa M. Fleming, BBO # 546148
                                                            Jack C. Schecter, BBO # 652349
                                                            Rebecca L. Hanovice, BBO # 660366
                                                            BROMBERG & SUNSTEIN LLP
                                                            125 Summer Street
                                                            Boston, Massachusetts 02110-1618
                                                            (617) 443-9292


02639/00509 388323.1