# EXHIBIT D

Scansoft, Inc. vs. Voice Signal Tech.          Al Silverberg,  05-23-05

O'Neal Probst Wells, LLC

**Page 1 to Page 49**

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

*O'NEAL PROBST WELLS, LLC*
*1314 Stanford*
*Houston, TX    77019*
*Phone:   713-521-1314*
*FAX:    713-521-1299*

DISK
ENCLOSED

## Page 1

( 1)         IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS
      SCANSOFT, INC.,       )
( 3)                   )
      Plaintiff.      )
( 4) VS.              ) CIVIL ACTION NO.
                 ) 04-10353-PBS
( 5)                 )
      VOICE SIGNAL TECHNOLOGIES,  )
( 6) INC., ET AL.       )
                 )
( 7)       Defendants.     )
( 9) *****************************************
(10)            ORAL DEPOSITION OF
(11)            AL SILVERBERG
(12)            MAY 23, 2005
(13) *****************************************
(16)     ANSWERS AND ORAL DEPOSITION OF AL SILVERBERG, a
(17) witness at the instance of the Defendant, taken in
(18) the above-styled and numbered cause on the 23rd day
(19) of May 2005, before Laurie Purdy, Certified Shorthand
(20) Reporter in and for the State of Texas, at the
(21) Mariott South, located at 4151 Centreport Boulevard,
(22) in the City of Fort Worth, County of Tarrant, State
(23) of Texas, in accordance with the Federal Rules of
(24) Civil Procedure.

## Page 2

( 1)          A P P E A R A N C E S
( 2) FOR THE PLAINTIFF:
     MR. ERIK BELT
( 3)     Bromberg & Sunstein, L.L.P.
     125 Summer Street
( 4)     Boston, Massachusetts 02110-1618
     617.443.9292
( 6) FOR THE DEFENDANT:
     MR. PAUL E. BONANNO
( 7)     Choate, Hall & Stewart
     53 State Street
( 8)     Boston, Massachusetts 02109
     617.248.5000
(10) FOR UNIDEN AMERICA CORPORATION:
     MR. RUDOLPH L. ENNIS
(11)     Uniden Corporation of America
     4710 Amon Carter Boulevard
(12)     Fort Worth, Texas 76155
     817.858.3019

## Page 3

( 1)           I N D E X

( 2)                        PAGE
( 3) Appearances . . . . . . . . . . . . . . . . . . 2
( 4) Stipulations . . . . . . . . . . . . . . . . . 1
( 6)   AL SILVERBERG
( 7)     Examination by Mr. Bonanno . . . . . . 4
( 8)     Examination by Mr. Belt . . . . . . . 28
( 9)     Further Examination by Mr. Bonanno . . 37
(10)     Further Examination by Mr. Belt . . . 43
(11)     Further Examination by Mr. Bonanno . . 43
(13) Signature and Changes . . . . . . . . . . . . 46
(14) Reporter's Certificate . . . . . . . . . . . 48
(16)            EXHIBITS
(17) NO.    DESCRIPTION             PAGE
(18) 1    Subpoena                7
(19) 2    VoiceDial Operating Guide    12
(20) 3    Uniden Press Release       16
(21) 4    Article from The Dallas Morning News  19
(22) 5    Letter to Peter Foster from Gary Kline.  38
        Dated 1-5-90, with Attachments

## Page 4

(1)   *P R O C E E D I N G S*
(2)   *AL SILVERBERG,*
(3)   *having been first duly sworn, testified as follows:*
(4)   *EXAMINATION*
(5)     *BY MR. BONANNO:*
(6)   *01:46 Q. Good afternoon. I'm Paul Bonanno. I*
(7) *represent Voice Signal Technologies. Could you*
(8) *please state your full name for the record?*
(9)     **A.**   Al Silverberg.
(10) 01:46 Q. And what is your current business address,
(11) Mr. Silverberg?
(12)     **A.**   4700 Amon Carter Boulevard,
(13) Fort Worth, Texas 76155.
(14) 01:46 Q. Have you had your deposition taken before?
(15)     **A.**   Yes.
(16) 01:46 Q. Okay. So I assume you know the drill,
(17) then. I'm going to ask you a series of questions.
(18) Answer the questions to the best of your ability,
(19) keeping in mind that you're under oath. If you'd
(20) like to take a break at any time, just let me know.
(21) If you don't understand a question, just say so and
(22) I'll repeat it. Okay?
(23)     **A.**   Okay.
(24) 01:46 Q. Are you currently employed?
(25)     **A.**   Yes.

Scansoft, Inc. vs. Voice Signal Tech

Page 5

(1)  01:46 Q. By whom?
(2)      A.    Uniden America Corporation.
(3)  01:47 Q. How long have you been employed by Uniden?
(4)      A.    Total of 22 years.
(5)  01:47 Q. And what is your current position at
(6)  Uniden?
(7)      A.    President and CEO.
(8)  01:47 Q. How long have you been president and CEO of
(9)  Uniden?
(10)     A.    President for seven years, CEO for five.
(11)  01:47 Q. What positions did you hold at Uniden prior
(12)  to being president and CEO?
(13)     A.    Regional sales manager, VP of sales,
(14)  executive VP of sales.
(15)  01:47 Q. Is that it?
(16)     A.    I think that's it.
(17)  01:48 Q. Can you tell me the dates that you served
(18)  as each?
(19)     A.    Probably not.
(20)  01:48 Q. Roughly?
(21)     A.    Regional manager from January of '81
(22)  through '82 or '83, VP of sales from whatever gray
(23)  area period of time that was through May of '86.
(24)  Then I left the company for three years and came back
(25)  as VP of sales in September of '89. I was EVP of

Page 6

(1)  sales probably around 1993, in that area.
(2)  01:49 Q. Can you tell me, roughly or generally, what
(3)  your responsibilities were?
(4)      A.    At which period of time?
(5)  01:49 Q. Starting with the regional sales manager
(6)  position.
(7)      A.    Selling cordless phones. What other period
(8)  of time?
(9)  01:49 Q. And then also as the vice president of
(10)  sales?
(11)     A.    Selling cordless telephones, scanner
(12)  radios, CB radios.
(13)  01:49 Q. And as the executive vice president of
(14)  sales?
(15)     A.    Selling the same categories, running the
(16)  business unit that was responsible for those
(17)  categories.
(18)  01:49 Q. Generally speaking, what business is Uniden
(19)  in?
(20)     A.    Generally speaking, we're in the home
(21)  cordless telephone business, the scanner radio
(22)  business, two-way radio business, as in hand-held
(23)  consumer walkie-talkie type radios, CB radio
(24)  business, and marine electronics business.
(25)     MR. BONANNO:    Could we mark this

Page 7

(1)  document as Exhibit 1?
(2)     (Deposition Exhibit 1 was marked.)
(3)  01:50 Q. (By Mr. Bonanno) Mr. Silverberg, could you
(4)  please take a look at the document that was just
(5)  marked Exhibit 1? It is a subpoena from Voice Signal
(6)  Technologies to Uniden America Corporation dated
(7)  February 28th, 2005. Have you seen Exhibit 1 before?
(8)      A.    I have seen this document, yes.
(9)  01:50 Q. Are you appearing here today pursuant to
(10)  Exhibit 1?
(11)     A.    I am.
(12)     MR. ENNIS:    We would like to state for
(13)  the record that we objected to this subpoena, and
(14)  specifically the taking of the deposition for the
(15)  reasons stated in our objections.
(16)  We do not waive those objections, but
(17)  we do wish to note that we appear here today by
(18)  agreement and hope that we can answer your questions
(19)  as fully as we're able to do with this witness in the
(20)  time frames that are involved.
(21)     MR. BONANNO:    Mr. Ennis, the
(22)  objections that you just referred to, are those the
(23)  objections that you previously submitted to me?
(24)     MR. ENNIS:    Yes. Yes. Yes.
(25)  01:51 Q. (By Mr. Bonanno) Mr. Silverberg, are you

Page 8

(1)  appearing here today pursuant to Exhibit 1 on behalf
(2)  of Uniden?
(3)      A.    Yes, I am.
(4)  01:51 Q. Could I direct your attention to Page 2 of
(5)  Attachment A to the subpoena marked as Exhibit 1?
(6)      A.    Okay.
(7)  01:51 Q. The page is titled Subject Matters of
(8)  Deposition. In particular, I'd like to direct your
(9)  attention to Paragraph 3, which I'll read out loud.
(10)  Any sale or licensing, offer to sell
(11)  or license, or public use of display, prior to
(12)  April 13th, 1992, of any mobile telecommunications
(13)  device which was capable of recognizing spoken digits
(14)  and/or a keyword representing a telephone number,
(15)  including without limitation, Uniden's VoiceDial,
(16)  voice command system for telephones.
(17)  Are you familiar with the Uniden
(18)  VoiceDial system referenced in Paragraph 3?
(19)     A.    I am.
(20)  01:52 Q. Are you the most knowledgeable person
(21)  currently at Uniden with respect to the sale of the
(22)  VoiceDial system?
(23)     A.    I really don't know.
(24)  01:52 Q. Is there anybody at Uniden more
(25)  knowledgeable about the sale of the VoiceDial system

BSA
**Scansoft, Inc. vs. Voice Signal Tech.**   Al Silverberg, 05-23-05   XMAX(3/3)

Case 1:04-cv-10353-PBS   Document 197-5   Filed 05/26/2005   Page 5 of 15

Page 9

(1) that you're aware of?
(2)  **A.**  I really couldn't say.
(3) 01:53 Q. Are you generally familiar with the sale of
(4) the VoiceDial system referred to in Paragraph 3?
(5)  **A.**  What do you mean by "generally"?
(6) 01:53 Q. Let me back up for a second.
(7)  **A.**  Okay.
(8) 01:53 Q. What was Uniden's VoiceDial system?
(9)  **A.**  It was exactly what is stated in
(10) Paragraph 3; a device which was capable of
(11) recognizing spoken digits or keywords representing a
(12) telephone number.
(13) 01:53 Q. Are you appearing here today pursuant to
(14) Exhibit 1 to testify on behalf of Uniden with respect
(15) to the VoiceDial system?
(16)  **A.**  I am.
(17) 01:53 Q. And the sale of the VoiceDial system?
(18)  **A.**  I am.
(19) 01:53 Q. Was the Uniden VoiceDial system
(20) manufactured by Uniden?
(21)  **A.**  Yes.
(22) 01:54 Q. Did Uniden sell the VoiceDial system in the
(23) United States?
(24)  **A.**  Yes.
(25) 01:54 Q. Do you know when, roughly?

Page 11

(1) been vice president of sales during the time frame
(2) you were talking about, '89 to '93. I'm sorry. I
(3) didn't mean to break the flow.
(4)  MR. BONANNO:  No, that's okay.
(5) 01:55 Q. (By Mr. Bonanno) Mr. Silverberg, do you
(6) know if the Uniden VoiceDial product was commercially
(7) successful?
(8)  **A.**  I do not.
(9)  MR. BELT:  Objection – I just want to
(10) note an objection.
(11) 01:56 Q. (By Mr. Bonanno) Do you know approximately
(12) how many units of the VoiceDial Uniden sold?
(13)  **A.**  No idea.
(14) 01:56 Q. And just speaking generally, you're unaware
(15) of when the VoiceDial product was sold?
(16)  **A.**  Generally speaking, that is correct.
(17) 01:56 Q. You can't give me a ballpark estimate of
(18) when, based on your recollection of the product?
(19)  **A.**  Not really. Sometime after '89 when I came
(20) back.
(21) 01:57 Q. Do you recall the VoiceDial product from
(22) when you were in sales, when you were vice president?
(23)  **A.**  I think I've already answered that, but,
(24) yes, I do.
(25) 01:57 Q. Pardon me if I get the title wrong.

Page 10

(1)  **A.**  Not exactly.
(2) 01:54 Q. Can you give me a ballpark?
(3)  **A.**  I would have to base my answer on
(4) information you're providing, so I really don't know.
(5) 01:54 Q. Mr. Silverberg, earlier you testified that
(6) you were the vice president of sales at Uniden from
(7) roughly 1982 to roughly 1986.
(8)  **A.**  Yes.
(9) 01:54 Q. Do you know if the Uniden VoiceDial product
(10) was on sale in that time period?
(11)  **A.**  I do not know that.
(12) 01:54 Q. Do you recall it being on sale then?
(13)  **A.**  I do not.
(14) 01:55 Q. You also stated earlier that you were the
(15) executive vice president of sales beginning roughly
(16) in 1989 through roughly 1993. Do you recall the
(17) VoiceDial product being on sale during that time
(18) period?
(19)  **A.**  It could have been.
(20)  MR. ENNIS:  I believe his testimony
(21) was that he resumed as vice president of sales in '89
(22) and '93, after a three-year hiatus with the company,
(23) and was executive vice president of sales from '93
(24) to '98. Well, he actually said '93. He didn't say
(25) when the end period was in '98. So he would have

Page 12

(1) Executive vice president of sales.
(2)  **A.**  I can't say for sure what my title was when
(3) I recall that it was for sale. I do recall that it
(4) was for sale.
(5) 01:57 Q. Do you recall that it was for sale in the
(6) late 1980s?
(7)  **A.**  I don't recall.
(8) 01:57 Q. Do you recall whether it was for sale in
(9) the early 1990s?
(10)  **A.**  I don't specifically recall when.
(11) 01:57 Q. If you had to just tell me generally when
(12) it was on sale –
(13)  MR. BELT:  Objection.
(14) 01:58 Q. (By Mr. Bonanno) – to the best of your
(15) recollection.
(16)  **A.**  I think I've answered the question. I just
(17) generally don't have an answer for you.
(18)  MR. BONANNO:  Could we mark this as
(19) Exhibit 2?
(20)  (Deposition Exhibit 2 was marked.)
(21)  MR. BELT:  Paul, are we following a
(22) numbering protocol with just starting every
(23) exhibit – every deposition with a new number?
(24)  MR. BONANNO:  I don't know how they've
(25) done it in previous depositions, but for this

BSA    Scansoft, Inc. vs. Voice Signal Tech.    Al Silverberg, 05-23-05    XMAX(4/4)

## Page 13

(1) deposition, we're going to start with I.
(2)    MR. BELT:    That's fine.
(3) 01:58 Q. (By Mr. Bonanno) Mr. Silverberg, you have
(4) in front of you a document that was just marked as
(5) Exhibit 2. Could you please just take a moment to
(6) review that?
(7)    A.    I can.
(8) 01:59 Q. Note that it's Bates numbered SS19696 in
(9) the bottom right-hand corner of the pages to
(10) SS19715.
(11)    A.    I see that.
(12) 01:59 Q. What is Exhibit 2?
(13)    A.    It appears to be the VoiceDial Operating
(14) Guide.
(15) 01:59 Q. Is the product described in Exhibit 2 the
(16) same VoiceDial system that you earlier stated that
(17) Uniden sold in the United States?
(18)    A.    I really can't say for sure. It looks like
(19) it could be.
(20) 02:00 Q. Is it customary for Uniden to issue
(21) operating guides, such as Exhibit 2, for its
(22) products?
(23)    A.    Yes, it is.
(24) 02:00 Q. Are you generally familiar with the
(25) appearance of Uniden's operating guides for its

## Page 14

(1) products?
(2)    A.    Yes, I am.
(3) 02:00 Q. Does Exhibit 2 appear to be an operating
(4) guide of the type Uniden customarily issues for its
(5) products?
(6)    A.    Basically, yes.
(7) 02:00 Q. Is there any reason to believe that
(8) Exhibit 2 is not a genuine Uniden operating guide?
(9)    A.    It would appear to be a photocopy of one
(10) since we would normally bind them. Other than that,
(11) it seems to be genuine.
(12) 02:01 Q. Mr. Silverberg, can I direct your attention
(13) to Page 2?
(14)    A.    Sure. Actually, did you say the second
(15) page or Page 2?
(16) 02:01 Q. The second page, Table of Contents page.
(17)    A.    Okay.
(18) 02:01 Q. At the bottom, the year 1989 is printed.
(19) What would that indicate to you?
(20)    A.    It would indicate that all rights are
(21) reserved and something has been copyrighted by
(22) By-Word Technologies that year.
(23) 02:01 Q. Is it customary for Uniden to issue
(24) operating guides around the time a product is offered
(25) for sale?

## Page 15

(1)    A.    Yes.
(2) 02:01 Q. Is it reasonable to conclude, based on
(3) Exhibit 2 and the date 1989 stated on the second page
(4) of Exhibit 2, that the VoiceDial product was on sale
(5) in 1989?
(6)    A.    No, it's not.
(7) 02:02 Q. Why not?
(8)    A.    Why not what?
(9) 02:02 Q. Why is it not reasonable to conclude that?
(10)    A.    That does not state that this is the date
(11) the product was offered for sale, nor does it say
(12) this was the date the owner's manual was
(13) printed. It says that there was a copyright by
(14) By-Word Technologies dated 1989.
(15) 02:02 Q. But you stated earlier that it is customary
(16) for Uniden to issue operating guides around the time
(17) a product is offered for sale?
(18)    A.    I did.
(19) 02:02 Q. If you could also look at the bottom of the
(20) second page, it says Voice Control Systems and
(21) By-Word Technologies, Inc. Are you familiar at all
(22) with those companies?
(23)    A.    Not until today, or the other day when I
(24) heard about this deposition.
(25) 02:02 Q. Are you aware of Voice Control Systems or

## Page 16

(1) By-Word Technologies being involved in the
(2) development of any Uniden products aside from the
(3) VoiceDial?
(4)    A.    No, I am not.
(5)    MR. BONANNO:    Mark this as Exhibit 3,
(6) please.
(7)    (Deposition Exhibit 3 was marked.)
(8) 02:03 Q. (By Mr. Bonanno) Mr. Silverberg, you have
(9) before you a document marked as Exhibit 3 bearing
(10) Bates Number SS18918. Could you please take a moment
(11) to review that?
(12)    A.    Yes.
(13)    (Phone interruption.)
(14)    A.    Pardon me. Let me turn this off. Sorry
(15) about that.
(16) 02:04 Q. What is Exhibit 3?
(17)    A.    A press release.
(18) 02:04 Q. Is it a Uniden press release?
(19)    A.    So it would appear, yes.
(20) 02:04 Q. What product is Exhibit 3 announcing?
(21)    A.    A Speaker-Independent advanced voice
(22) recognition system for cellular mobile telephone.
(23) 02:04 Q. Do you understand that to be the VoiceDial
(24) product described in Exhibit 2?
(25)    A.    It would seem to be a conclusion that could

## Page 17

(1) be drawn, yes.
(2) 02:04 Q. What is the date of Exhibit 3?
(3) A. January 23rd, 1989.
(4) 02:04 Q. Is it customary for Uniden to issue press
(5) releases announcing new products?
(6) A. It is something we do on occasion, yes.
(7) 02:05 Q. As part of its standard business practice?
(8) A. I wouldn't say that. We do them.
(9) 02:05 Q. Is it typical to issue a press release when
(10) announcing a new product?
(11) A. I'm not sure I would say typical either. I
(12) mean, we do them. From time to time, we do them.
(13) 02:05 Q. Are you generally familiar with the
(14) appearance of Uniden press releases?
(15) A. Generally.
(16) 02:05 Q. Does Exhibit 3 appear to be a Uniden press
(17) release?
(18) A. I think I already said yes to that.
(19) 02:05 Q. Based on your familiarity with Uniden press
(20) releases, Exhibit 3 appears to be a genuine Uniden
(21) press release?
(22) A. Actually, not to me, no.
(23) 02:05 Q. Why not?
(24) A. Because there's no information at the
(25) bottom that says about Uniden, which would be

## Page 18

(1) something I would require to be in any genuine press
(2) release.
(3) 02:06 Q. Is that something you would require now?
(4) A. Absolutely.
(5) 02:06 Q. As CEO?
(6) A. Yes.
(7) 02:06 Q. Do you know if that requirement was in
(8) place in January of 1989?
(9) A. I was not employed on January 23rd, 1989,
(10) by Uniden.
(11) 02:06 Q. Is there any reason to conclude that this
(12) is not a genuine Uniden press release?
(13) A. No.
(14) 02:06 Q. Based on Exhibit 3, is it reasonable to
(15) conclude that the VoiceDial system was offered for
(16) sale in 1989?
(17) A. Not necessarily.
(18) 02:07 Q. Why not?
(19) A. It doesn't say anything in here about when
(20) it will be available.
(21) 02:07 Q. You testified earlier that it's customary
(22) for Uniden to issue press releases around the time a
(23) product is offered for sale?
(24) A. I did.
(25) 02:07 Q. Paragraph 2 references a Raoul Fontanez.

## Page 19

(1) Do you know who he is?
(2) A. I knew who he was, yes.
(3) 02:07 Q. Who was he?
(4) A. He was the vice president of the cellular
(5) division.
(6) 02:08 Q. Is he no longer at Uniden?
(7) A. That is correct.
(8) 02:08 Q. Do you know where he is now?
(9) A. No idea.
(10) 02:08 Q. Don't know where he works?
(11) A. No clue.
(12) 02:08 Q. Where he lives?
(13) A. No idea.
(14) MR. BONANNO: Mark that as Exhibit 4.
(15) (Deposition Exhibit 4 was marked.)
(16) 02:08 Q. (By Mr. Bonanno) Mr. Silverberg, you have
(17) in front of you a document that's been marked as
(18) Exhibit 4. It's bearing Bates Numbers UNDN0208 to
(19) UNDN0209. Could you please take a moment to review
(20) that document?
(21) A. I can.
(22) 02:09 Q. Could you state for the record what
(23) Exhibit 4 appears to be?
(24) A. It appears to be an article in The Dallas
(25) Morning News business section talking about the

## Page 20

(1) introduction of voice dial technology.
(2) 02:09 Q. By Uniden?
(3) A. Yes.
(4) 02:09 Q. Could you please read out loud for me the
(5) second, third, and fourth paragraphs of that article
(6) beginning with "But there's"?
(7) A. Through where?
(8) 02:09 Q. The end of the fourth paragraph ending with
(9) "cellular division."
(10) A. I can.
(11) But there's an end in sight. Uniden
(12) Corporation of America is buying technology from two
(13) Dallas companies that will make it possible for
(14) callers to turn on its phones, dial numbers, speak
(15) and hang up all without lifting a finger.
(16) The Fort Worth-based electronics
(17) marketer said Tuesday it will introduce the first
(18) cellular telephone system in this country that
(19) recognizes and responds to any human voice and
(20) provides totally hands-free operation.
(21) The device, which will become
(22) available in August, will carry an initial price of
(23) $499 and sell as an add-on to Uniden's existing line
(24) of cellular phones, said Graham Loving, product
(25) manager in Uniden's cellular division.

Page 21

(1) 02:10 Q. Thank you.
(2)    A. Sure.
(3) 02:10 Q. Does that newspaper article refresh your
(4) recollection at all of when the Uniden VoiceDial
(5) product was on sale?
(6)    A. No.
(7) 02:10 Q. You don't recall the Uniden VoiceDial
(8) product being on sale in August 1989?
(9)    A. Not specifically. I was not employed with
(10) Uniden in August of 1989.
(11) 02:10 Q. But you became employed with Uniden the
(12) next month, in September of 1989?
(13)    A. That is true.
(14) 02:10 Q. And you were in the sales division?
(15)    A. I was.
(16) 02:10 Q. Do you recall the product being on sale
(17) when you rejoined Uniden in September of 1989?
(18)    A. I do not.
(19) 02:11 Q. Do you recall the product being on sale at
(20) any point subsequently?
(21)    A. As I said earlier, yes, I do.
(22) 02:11 Q. It states in the article that the price of
(23) the VoiceDial product was to be $499. Does that
(24) sound right to you?
(25)    A. I have no idea.

Page 22

(1) 02:11 Q. You don't know how much it cost?
(2)    A. No.
(3) 02:11 Q. Do you know who Graham Loving is?
(4)    A. I really can't say for sure.
(5) 02:11 Q. Is he still at Uniden?
(6)    A. No, he's not.
(7) 02:11 Q. Do you know where he is now?
(8)    A. No idea.
(9) 02:11 Q. Do you have any VoiceDial units left in the
(10) possession of Uniden?
(11)    A. Not to my knowledge.
(12) 02:11 Q. Have you ever seen one?
(13)    A. I can't say for sure.
(14) 02:11 Q. Do you know if you ever used one?
(15)    A. Not in my car.
(16) 02:12 Q. Do you recall any other salesman at Uniden
(17) discussing the VoiceDial product?
(18)    A. Maybe. I mean, it's hard to say. I don't
(19) recall a whole lot about this product.
(20) 02:12 Q. Can you tell me what you do recall,
(21) everything you do recall?
(22)    A. No, I can't. If you want to ask me a
(23) specific question, I'll be glad to answer it for you.
(24) 02:12 Q. Do you recall the VoiceDial product being
(25) discussed in any memoranda or reports of Uniden?

Page 23

(1)    A. No, I don't.
(2) 02:13 Q. Mr. Silverberg, I believe you testified
(3) earlier that you were not sure if you were the most
(4) knowledgeable person about the subject matter listed
(5) in Paragraph 3 on Page 2 of Attachment A of
(6) Exhibit 1, that is, the sale or licensing of the
(7) Uniden VoiceDial system.
(8)    A. That's right.
(9) 02:13 Q. Who at Uniden might be knowledgeable about
(10) the sale of the VoiceDial besides you?
(11)    A. I really couldn't say.
(12) 02:13 Q. Are there any individuals from the sales
(13) department still at Uniden that were there in 1989?
(14)    A. I don't think so.
(15) 02:13 Q. There's nobody?
(16)    A. Not that would be involved with VoiceDial.
(17) I'll just make one comment for you.
(18) That's a division that was shut down more than a
(19) decade ago.
(20) 02:14 Q. Do you know when it was shut down?
(21)    A. Not exactly.
(22) 02:14 Q. You said more than a decade ago?
(23)    A. And that may or may not be right, but it
(24) was shut down a long time ago.
(25) 02:14 Q. Is there any way to find out when it was

Page 24

(1) shut down?
(2)    A. It was shut down – it was shut down around
(3) the time I became president, so that would be seven
(4) or eight years ago.
(5)    MR. BONANNO: Can we take a break for
(6) a minute?
(7)    (Off-the-record discussion.)
(8) 02:23 Q. (By Mr. Bonanno) Mr. Silverberg, can I
(9) direct your attention again to Exhibit 1?
(10)    A. Yes.
(11) 02:23 Q. If you'll look at Page 3 of Attachment B.
(12)    A. Okay.
(13) 02:23 Q. Beginning with Documents Requested, could
(14) you take a moment to review those categories of
(15) documents?
(16)    A. Sure. Okay.
(17) 02:23 Q. What efforts has Uniden undertaken to
(18) collect those documents?
(19)    A. Reasonable efforts.
(20) 02:23 Q. Who was in charge of collecting those
(21) documents?
(22)    A. Our law department, Rudy Ennis.
(23) 02:24 Q. What is Uniden's document retention policy?
(24)    A. Basically, without having the policy in
(25) front of me, I'll take a stab at it, although I can't

BSA    **Scansoft, Inc. vs. Voice Signal Tech.**    Al Silverberg, 05-23-05    XMAX(7/7)

### Page 25

(1) tell you 100 percent for sure this is it. I believe
(2) we keep legal documents for a period of five years or
(3) perhaps some documents for as long as seven years,
(4) although I can't tell you for sure that that's the
(5) number.
(6) 02:24 Q. Who is Gary Kline?
(7)    A.    Gary Kline is our chief legal counsel, VP
(8) of the law department.
(9) 02:24 Q. What is his business address?
(10)    A.    Same as mine, 4700 Amon Carter Boulevard.
(11) 02:24 Q. How long has he been with Uniden?
(12)    A.    I couldn't tell you for sure.
(13) 02:25 Q. Roughly?
(14)    A.    Maybe 15 years, give or take.
(15) 02:25 Q. Do you know if he was at Uniden around the
(16) time you joined Uniden?
(17)    A.    It was around that time, so that's why I
(18) say 15 years, give or take. He could have been there
(19) right before me, right after, around that time.
(20) 02:25 Q. I meant when you joined Uniden initially in
(21) the early 1980s.
(22)    A.    No.
(23) 02:25 Q. But he was there when you went back to
(24) Uniden?
(25)    A.    When I came back in '89. Well, I don't

### Page 26

(1) know that he was there when I came back in '89. He
(2) was – around that time, he was on the scene.
(3)    MR. BONANNO:    I don't have any further
(4) questions at this time. But I would just like to
(5) state for the record that Voice Signal served this
(6) 30(b)(6) deposition subpoena on Uniden, and that
(7) Uniden is obligated pursuant to the subpoena to
(8) designate a person most knowledgeable regarding the
(9) subject matters listed in the subpoena. And that in
(10) conversations with Uniden's counsel, Mr. Ennis,
(11) before coming down here, I understood that Uniden's
(12) designee, Mr. Silverberg, was going to be able to
(13) testify with respect to certain facts regarding the
(14) VoiceDial product that he did not testify to today.
(15) I understand from conversations with
(16) Mr. Ennis that Gary Kline also has knowledge of the
(17) VoiceDial product, including knowledge that
(18) Mr. Silverberg does not have. And I would like to
(19) state for the record, it is Uniden's obligation –
(20) continuing obligation to designate and make available
(21) a witness to testify as to the matters listed in the
(22) Subject Matters of Deposition list on Page 2 of
(23) Exhibit 1. And if there's anyone with more knowledge
(24) than Mr. Silverberg regarding those matters,
(25) including Mr. Kline or anyone else, then Uniden must

### Page 27

(1) make him or her available to be deposed.
(2) As I made clear to Mr. Ennis prior to
(3) coming down here, the discovery deadline in this case
(4) currently is set to expire at the end of the month
(5) and that we needed to get this deposition in, and
(6) therefore if we need to take another deposition as a
(7) result of Mr. Silverberg's testimony today, I fully
(8) expect Uniden to make another person available by the
(9) end of May.
(10)    MR. ENNIS:    Uniden believes that it
(11) has responded properly to the subpoena in presenting
(12) the best witness that we have available for this
(13) product. We are dealing with something that is 15
(14) and 16 years old for which there is no one at the
(15) company who was involved in the marketing, sales or
(16) development of this product.
(17) The fact that there is a lawyer on
(18) staff who may well know something about negotiation
(19) contracts back and forth, which would be privileged
(20) matters in the first place, I think is of little
(21) consequence to the query that you are making. We
(22) believe we have made the best witness available, and
(23) if you believe otherwise, you're certainly – you
(24) certainly have your remedies available to you, if you
(25) wish to exercise them.

### Page 28

(1)    MR. BONANNO:    I have one additional
(2) question, actually.
(3) 02:29 Q. (By Mr. Bonanno) Mr. Silverberg, do you
(4) have knowledge as to the whereabouts of any Uniden
(5) employee, current or former, who worked on the
(6) VoiceDial product?
(7)    MR. BELT:    Objection.
(8)    A.    No, I don't.
(9)    MR. BONANNO:    I'm done.
(10) EXAMINATION
(11)    BY MR. BELT:
(12) 02:29 Q. Good afternoon, Mr. Silverberg.
(13)    A.    How are you doing?
(14) 02:30 Q. I'm doing well. I flew down here, so I may
(15) as well ask a few questions.
(16) My name is Erik Belt. For the record,
(17) E-r-i-k, B-e-l-t. I am from the law firm of Bromberg
(18) & Sunstein in Boston. I represent ScanSoft in this
(19) case. Thank you for coming today.
(20) Let me ask a couple of questions to
(21) follow up on Mr. Bonanno's line of inquiry. Did you
(22) do anything to prepare for this deposition today?
(23) And I'll make that a little more specific. Did you
(24) review documents, for example?
(25)    A.    I glanced at the documents that were given

BSA

Case 1:04-cv-10353-PBS   Scansoft, Inc. vs. Voice Signal Tech   Document 197-5   Filed 03/26/2005   AL Shopen 3005-23-Page   Page 10 of 15   XMAX(8/8)

Page 29

(1) over in discovery.
(2) 02:30 Q. Have discussions with your counsel? I
(3) don't want you to tell me what those discussions
(4) were, but just whether you did or not.
(5) A. Very brief.
(6) 02:30 Q. About the subject matter of the testimony
(7) as seen in Exhibit 1, the subpoena?
(8) A. I'm sorry. Was that a question?
(9) 02:31 Q. Yes. In other words, did you have
(10) general – without going into what they were, did you
(11) have general discussions about the subject matter as
(12) shown in the subpoena?
(13) A. Yes.
(14) 02:31 Q. Did you speak with anybody else at the
(15) company other than legal counsel?
(16) A. No.
(17) 02:31 Q. Just to verify something that you may have
(18) said before. Is there anybody still at Uniden today
(19) who is involved in selling the VoiceDial system from
(20) many years ago?
(21) A. No.
(22) 02:31 Q. Anybody at Uniden today who is involved in
(23) marketing the VoiceDial product?
(24) A. No.
(25) 02:31 Q. Is there anybody at Uniden today who is

Page 30

(1) involved in the VoiceDial product from a technical
(2) perspective, engineering and so forth?
(3) A. No.
(4) 02:31 Q. Okay. So as far as you know, you are the
(5) only surviving Uniden representative who was around
(6) at that time in the '89-'90 time frame, is that
(7) correct, that might have knowledge about the
(8) VoiceDial?
(9) A. That is correct.
(10) 02:32 Q. Mr. Kline, he's chief legal counsel now; is
(11) that right?
(12) A. That is correct.
(13) 02:32 Q. What was his position in 1989 or about the
(14) time that he started?
(15) A. I couldn't tell you exactly what his title
(16) was, but he was a lawyer.
(17) 02:32 Q. Always an attorney for Uniden?
(18) A. A corporate attorney.
(19) 02:32 Q. Was he ever involved in sales or marketing
(20) of the Uniden product?
(21) A. No.
(22) 02:32 Q. Was he involved from a technical point of
(23) view?
(24) A. No.
(25) 02:32 Q. Have you ever seen – you testified that

Page 31

(1) you've never used the VoiceDial product; is that
(2) correct?
(3) A. That is correct.
(4) 02:32 Q. You've never seen it demonstrated back many
(5) years ago?
(6) A. Not that I recall.
(7) 02:32 Q. Is this the first time that you've, today,
(8) ever seen the – what purports to be a copy of an
(9) operating guide for VoiceDial? This was Exhibit 2.
(10) A. No.
(11) 02:33 Q. This is not the first time?
(12) A. That's correct.
(13) 02:33 Q. When was the first time you saw this
(14) document?
(15) A. Within the past week.
(16) 02:33 Q. Okay. But you don't have a recollection of
(17) an operating guide for VoiceDial from many years ago?
(18) A. No.
(19) 02:33 Q. So early in the deposition, you had
(20) answered a question stating that the – and if I
(21) could direct your attention to Exhibit 1, which is
(22) the subpoena. You had answered a question about –
(23) on Page 2 under Attachment A of the subpoena, Subject
(24) Matter of Deposition, you had answered a question
(25) about Paragraph 3, and specifically that asked for

Page 32

(1) knowledge on any sale or licensing, offer to sell or
(2) license, or public use or display, prior to
(3) April 13th, 1992, of any mobile telecommunications
(4) device which was capable of recognizing spoken digits
(5) and/or keyword representing a telephone number. And
(6) I believe you said that – I don't want to put –
(7) reword what you've said, but let me ask you this:
(8) With respect to subject – Paragraph 3 here, do you
(9) recall ever seeing a product sold by Uniden that has
(10) all of the functions or capabilities listed in
(11) Exhibit 3?
(12) A. As I said, I can't say specifically that
(13) something had everything in here, but I am familiar
(14) with the fact that we had a product that was voice
(15) dial for cell phones.
(16) 02:35 Q. And was that a product that was supplied
(17) or – yeah, supplied by Voice Control, that company?
(18) A. I have no idea.
(19) 02:35 Q. Okay. And, again, you do not recall
(20) exactly how that product worked; is that correct?
(21) A. That is correct.
(22) 02:35 Q. If you look at – this is Exhibit 2, the
(23) VoiceDial Operating Guide, and if you look at
(24) Page 2. Not the second page, but Page 2.
(25) A. Okay.

BSA    Case 1:04-cv-10353-PBS    Document 197-5    Filed 05/26/2005    Page 11 of 15

Scansoft, Inc. vs. Voice Signal Tech.      Al Silverberg, 05-23-05     XMAX(9/9)

**Page 33**

(1) 02:35 Q. There's some instructions here and you'll
(2) see three diamonds, Power On, Standby, and then it
(3) says Key Words. In that paragraph that says Key
(4) Words, it says, To start VoiceDial, say the two key
(5) words, "phone," "start" with a one second pause
(6) between them.
(7) Do you ever recall a product that you would
(8) operated that way, where you would say "phone,"
(9) pause, "start"?
(10)    A. Maybe.
(11) 02:36 Q. Why do you say "maybe"?
(12)    A. Because I remember the product – a
(13) VoiceDial product. I don't specifically recall the
(14) operation of the product. As I said, I never had one
(15) in my car, the VoiceDial.
(16) 02:36 Q. And you never used one in the office or at
(17) a trade show or a demonstration of some kind?
(18)    A. No.
(19) 02:36 Q. Do you have – did Uniden ever sell a
(20) voice-activated dialing product, not just from many
(21) years ago, but at any time while you were with
(22) Uniden?
(23)    A. Yes.
(24) 02:36 Q. Do you recall when that was?
(25)    A. Not specifically.

**Page 34**

(1) 02:37 Q. Is the only one that you think may have
(2) been sold by Uniden this VoiceDial product here, or
(3) are you thinking of a different system?
(4)    A. Another product.
(5) 02:37 Q. Do you know whether that product was before
(6) or after, roughly, 1999?
(7)    A. After.
(8) 02:37 Q. Can you place it in time frame, '95 to
(9) 2000, 2000 to 2005?
(10)    A. Probably in '95 to 2000.
(11) 02:37 Q. Do you know who supplied Uniden with that
(12) voice dialing capability?
(13)    A. Yes, I do.
(14) 02:37 Q. And who was that?
(15)    A. Sensory.
(16) 02:37 Q. Sensory?
(17)    A. Yes.
(18) 02:37 Q. Okay. And you think this was sometime
(19) after 1995?
(20)    A. Yes.
(21) 02:37 Q. That was a product that was embedded in
(22) Uniden cell phones?
(23)    A. No.
(24) 02:38 Q. Where was this product – this voice
(25) dialing capability, what was it physically embodied

**Page 35**

(1) in?
(2)    A. A cordless telephone.
(3) 02:38 Q. A cordless telephone? So it was not for
(4) the cell phone market; is that correct?
(5)    A. That's correct.
(6) 02:38 Q. Okay. Was that a product that you could
(7) turn on with a voice command?
(8)    A. I really don't recall how you turned it on.
(9) 02:38 Q. If you could turn to – I think it's Page 4
(10) of Exhibit 2.
(11)    A. Okay.
(12) 02:38 Q. You'll see, again, some diamonds, and
(13) there's one that begins "After speaking the last
(14) digit and hearing a beep, you must say end."
(15)    A. Yes.
(16) 02:39 Q. Do you recall whether the VoiceDial system
(17) you had to say "end" after speaking the digits that
(18) you wanted to dial?
(19)    A. I'm sorry. What's your question?
(20) 02:39 Q. Okay. Let me rephrase that. Again, these
(21) seem to be instructions for using the VoiceDial
(22) system. Would you agree with that statement?
(23)    A. Yes.
(24) 02:39 Q. The diamond bullet point, I guess you'd
(25) call it, on Page 4 beginning "After speaking the last

**Page 36**

(1) digit," it says, "and hearing a beep, you must say,
(2) quote, end, unquote." Do you recall a system where
(3) after speaking digits you had to say "end"?
(4)    A. No.
(5) 02:39 Q. You just don't know one way or the other;
(6) is that right?
(7)    A. No.
(8) 02:40 Q. As far as you were aware, was the VoiceDial
(9) product a profitable product for Uniden?
(10)    A. I really don't know.
(11) 02:40 Q. These products were – if they were sold at
(12) all, you don't know how many were sold?
(13)    A. I – I don't know for sure. I've heard the
(14) number subsequently that a couple thousand were sold.
(15) 02:40 Q. Was this a product that was being sold in
(16) 1989?
(17)    A. I don't know for sure. It appears that it
(18) could have been introduced in August of '89 from the
(19) article that I read in The Dallas Morning News.
(20) 02:40 Q. Was this a product that was being sold in
(21) 1993?
(22)    A. I really couldn't say.
(23) 02:41 Q. Are you familiar with what companies were
(24) supplying speech recognition technology to cell phone
(25) makers back in the late '80s, early '90s?

BSA                    Scansoft, Inc. vs. Voice Signal Tech.          Al Silverberg, 05-23-05          XMAX(10/10)

Page 37

(1)   A.   No, I'm not.
(2)   02:41 Q. You didn't have anything – in your
(3)   professional career, you didn't have anything to do
(4)   with voice dialing while at Uniden back in the
(5)   late '80s?
(6)   A.   I did not.
(7)   02:41 Q. And in the early '90s, did you have any
(8)   responsibility at Uniden for selling products that
(9)   incorporated a voice dialing feature?
(10)  A.   I don't believe so. I don't know exactly
(11)  when the cordless phones were sold, but I believe it
(12)  was later than that.
(13)  MR. BELT:   I think that's all I have.
(14)  Thank you for your time.
(15)  MR. BONANNO:   I have a few follow-up
(16)  questions.
(17)  FURTHER EXAMINATION
(18)  BY MR. BONANNO:
(19)  02:42 Q. Mr. Silverberg, Gary Kline's name has come
(20)  up several times today. Do you know if he was
(21)  involved in negotiating any contracts related to the
(22)  VoiceDial?
(23)  A.   I don't know that.
(24)  MR. BONANNO:   Can we take just a brief
(25)  break?

Page 38

(1)   (Off-the-record discussion.)
(2)   MR. BONANNO:   Can we mark this as
(3)   Exhibit 5?
(4)   (Deposition Exhibit 5 was marked.)
(5)   02:43 Q. (By Mr. Bonanno) Mr. Silverberg, I'd like
(6)   to show you a document that was marked as Exhibit 5
(7)   just now. Can you please state for the record what
(8)   that is?
(9)   MR. ENNIS:   Don't answer yet. Let me
(10)  look at it.
(11)  MR. BONANNO:   I'd like to note for the
(12)  record also that it's Bates numbered down in the
(13)  lower right corner UNDN – Rudy, could I just see
(14)  that?
(15)  MR. ENNIS:   Yes. UNDN0106.
(16)  MR. BONANNO:   UNDN0106 to UNDN0118:
(17)  A.   It's a letter from Gary Kline to Peter
(18)  Foster at Voice Central Systems.
(19)  02:44 Q. (By Mr. Bonanno) What is the date of that
(20)  letter?
(21)  A.   January 5th, 1990.
(22)  02:44 Q. Could you please turn to the second page of
(23)  that document?
(24)  A.   Second page of the document?
(25)  02:44 Q. Of the exhibit.

Page 39

(1)   A.   This?
(2)   02:44 Q. Yes.
(3)   A.   Okay.
(4)   02:44 Q. Could you read that first paragraph out
(5)   loud?
(6)   Actually, first, what is that document
(7)   beginning on the second page of Exhibit 6?
(8)   A.   It's labeled the License Agreement.
(9)   02:45 Q. Could you please read out loud the first
(10)  paragraph?
(11)  A.   This agreement effective December 29th,
(12)  1989, is made by and between Voice Control Systems,
(13)  Inc., a Texas corporation, (VCS), with its principal
(14)  office at 1414 Midway Road, Suite 100, Dallas, Texas
(15)  75244, and Uniden America Corporation, an Indiana
(16)  corporation, (Uniden), with its principal office at
(17)  4700 Amon Carter Boulevard, Fort Worth, Texas 76155.
(18)  02:45 Q. And could you please do me the favor of
(19)  reading out loud the second paragraph under
(20)  Preliminary Statement?
(21)  A.   VCS is the sole owner of the entire right,
(22)  title and interest in and to certain technology,
(23)  defined below as Integrated VoiceDial Technology.
(24)  Uniden is a manufacturer of cellular telephone
(25)  systems. Certain developmental work will be required

Page 40

(1)   to be conducted by the parties in order to
(2)   incorporate the Integrated VoiceDial Technology into
(3)   Uniden's cellular telephone systems. Uniden desires
(4)   to obtain from VCS and VCS desires to grant to Uniden
(5)   a nonexclusive license to manufacture, use and sell
(6)   Integrated VoiceDial units utilizing the Integrated
(7)   VoiceDial Technology.
(8)   02:46 Q. Thank you. Looking back to the first page
(9)   of Exhibit 5, could you read the body of that letter,
(10)  please?
(11)  A.   Are you just checking my reading or what?
(12)  I can read it.
(13)  Dear Peter, please find enclosed the
(14)  license revised agreement draft based upon our
(15)  meeting of December 28, 1989. Changes from Uniden's
(16)  previous draft have been marked. Very truly yours,
(17)  Gary Kline, corporate counsel.
(18)  There you go. That was his title back
(19)  in 1990.
(20)  02:47 Q. Are you familiar with Uniden's letterhead
(21)  from 1990?
(22)  A.   More or less.
(23)  02:47 Q. Does the first page of Exhibit 5 appear to
(24)  be a genuine Uniden letter?
(25)  A.   It appears so.

**Page 41**

(1) 02:47 Q. Does it resemble the Uniden letterhead that
(2) you recall from that time period?
(3) A. Sure. Yes, it does.
(4) 02:47 Q. If we had questions regarding the drafting
(5) of that agreement, who at Uniden would be best suited
(6) to testify or respond to our questions?
(7) A. It depends on what you mean by "drafting."
(8) 02:47 Q. The contents of that agreement.
(9) A. Probably – the contents, I have no idea.
(10) Probably at Uniden today Gary Kline would be the best
(11) one.
(12) 02:48 Q. Following up on one of the questions that
(13) Erik asked. Were you involved at all in the
(14) marketing of the VoiceDial product?
(15) A. No. This product, no.
(16) MR. ENNIS: Could we note for the
(17) record that the agreement draft that is attached to
(18) that is plainly marked and stamped at the bottom
(19) "draft" and shows no execution signatures.
(20) 02:48 Q. (By Mr. Bonanno) Do you recall any of the
(21) marketing efforts regarding the VoiceDial product?
(22) A. No.
(23) 02:49 Q. You testified earlier that you heard that a
(24) couple thousand units of the VoiceDial product were
(25) sold. Who did you hear that from?

**Page 42**

(1) A. I just heard it from you and Rudy.
(2) MR. ENNIS: No, he never said he heard
(3) it.
(4) THE WITNESS: I did, too. I just
(5) heard it today.
(6) MR. ENNIS: Okay.
(7) THE WITNESS: It was bandied about off
(8) the record.
(9) 02:49 Q. (By Mr. Bonanno) You mentioned earlier The
(10) Dallas Morning News article that was marked as
(11) Exhibit 4, I believe – you reviewed Exhibit 4
(12) earlier, correct?
(13) A. You asked me to. Yes, I did.
(14) 02:49 Q. Do you have any reason to doubt the
(15) accuracy of that newspaper article?
(16) A. Only that the newspaper doesn't always have
(17) accurate information.
(18) 02:49 Q. Does anything in that article appear
(19) inaccurate to you?
(20) A. Out of the four paragraphs you had me read
(21) out loud, I don't see any inaccuracies, no.
(22) 02:49 Q. You don't have any reason to think that any
(23) of the information in those paragraphs that you read
(24) out loud is inaccurate?
(25) A. That's correct.

**Page 43**

(1) MR. BONANNO: That's all I have.
(2) FURTHER EXAMINATION
(3) BY MR. BELT:
(4) 02:50 Q. I'd like you to just confirm one thing that
(5) your counsel just said. If you could look at
(6) Exhibit 5 and just confirm on the record that that is
(7) not signed. That is a draft that is not signed,
(8) correct?
(9) A. I had not been asked to look at the
(10) signature pages, but I will take a look –
(11) 02:50 Q. Okay. Well, let's do it now.
(12) A. – at them now. It is a draft, and it is
(13) clearly not signed.
(14) MR. BELT: I have nothing further.
(15) Thank you.
(16) FURTHER EXAMINATION
(17) BY MR. BONANNO:
(18) 02:50 Q. One last question. Looking again at that
(19) signature page –
(20) A. Do you promise?
(21) 02:50 Q. No, I don't promise.
(22) Looking at that signature page, what
(23) is the date on that?
(24) A. 29th of December, 1989.
(25) MR. BONANNO: Thank you.

**Page 44**

(1) (Off-the-record discussion.)
(2) MR. ENNIS: With respect to the
(3) objections that we filed to the subpoena, I would
(4) like to note for the record that in a paragraph
(5) titled Objection to Subpoena, Paragraph Number 6 of
(6) the objection – the objection, by the way, is dated
(7) March 10, 2005. Uniden stated in its objection to
(8) the deposition that Uniden simply has no witness to
(9) designate for the deposition requested March 18,
(10) 2005, which was the deposition date specified in the
(11) subpoena, that can testify under oath in any material
(12) or substantive way regarding the matters noticed.
(13) These matters involve Uniden's
(14) dealings with VCS and By-Word – those are defined
(15) terms in this objection – and Uniden's involvement
(16) with any speech recognition technology prior to
(17) April 13th, 1992. As noted above, Uniden's activity
(18) and speech recognition technology involved a single
(19) product in 18– in 1989, 1990. Since Uniden used
(20) only the speech recognition technology provided by
(21) VCS and By-Word, VST has those two direct sources for
(22) which to more easily and confidently gather relevant
(23) information and evidence and depose witnesses
(24) regarding the speech recognition technology
(25) incorporated into Uniden's VoiceDial device.

Page 45

(1) Accordingly, there is no relevant,
(2) admissible evidence nor information that could lead
(3) to relevant, admissible evidence to be discovered
(4) from – by VST by any witness Uniden could possibly
(5) designate for the deposition requested.
(6) So I want that objection read on the
(7) record in response to some things that you said while
(8) we were off the record before discussing this
(9) matter. We believe we have complied with the
(10) subpoena by providing you the best witness – the
(11) best single witness that we have available. There
(12) may be someone who may have an independent fact here
(13) and there I don't think vitiates that fact, and we've
(14) presented our witness.
(15)    (Deposition proceedings concluded at
(16) 2:52 p.m.)

Page 47

(1) I, AL SILVERBERG, have read the foregoing
(2) deposition, and hereby affix my signature that same
(3) is true and correct, except as noted above.
(6)
(7) AL SILVERBERG
(8) THE STATE OF
(10) COUNTY OF
(11) Before me,                        on this day personally
(12) appeared AL SILVERBERG, known to me (or proved to me
(13) under oath or through               ) (description
(14) of identity card or other document) to be the person
(15) whose name is subscribed to the foregoing instrument
(16) and acknowledged to me that they executed the same
(17) for the purposes and consideration therein expressed.
(19) Given under my hand and seal of office this
(20) day of               , A.D.,
(22)
(23) NOTARY PUBLIC IN AND FOR
(24) THE STATE OF
(25) My Commission Expires:

Page 46

(1) CORRECTIONS AND SIGNATURE
(2) PAGE/LINE CHANGE REASON

Page 48

(1) IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF MASSACHUSETTS
     SCANSOFT, INC., )
(3)  )
     Plaintiff, )
(4)  VS. ) CIVIL ACTION NO.
     ) 04-10353-PBS
(5)  )
     VOICE SIGNAL TECHNOLOGIES, )
(6) INC., ET AL, )
     )
(7) Defendants. )
     STATE OF TEXAS )
(9)  )
     COUNTY OF TARRANT )
(11) I, LAURIE PURDY, a Certified Shorthand
(12) Reporter duly commissioned and qualified in and for
(13) the State of Texas, do hereby certify that there came
(14) before me on the 23rd day of May, 2005 at the Mariott
(15) South, located at 4151 Centreport Boulevard, in the
(16) City of Fort Worth, State of Texas, the following
(17) named person, to-wit: AL SILVERBERG, who was duly
(18) sworn to testify the truth, the whole truth, and
(19) nothing but the truth of knowledge touching and
(20) concerning the matters in controversy in this cause;
(21) and that he was thereupon examined upon his oath and
(22) his examination reduced to typewriting under my
(23) supervision; that the deposition is a true record of
(24) the testimony given by the witness, and signature of
(25) witness is to be before any notary public.

Page 49

(1)　I further certify that I am neither
(2)　attorney or counsel for, nor related to or employed
(3)　by any of the parties to the action in which this
(4)　deposition is taken, and further that I am not a
(5)　relative or employee of any attorney or counsel
(6)　employed by the parties hereto, or financially
(7)　interested in the action.
　　　GIVEN UNDER MY HAND on this　　　day of
(9)　　　　　, 2005.
(10)
　　　LAURIE PURDY, CSR 5933
(11)　Certification Expires: 12-31-06
(12)　O'NEAL, PROBST, WELLS, L.L.C.
　　　Certified Court Reporters
(13)　and Videographers
　　　1314 Stanford
(14)　Houston, Texas 77019
　　　(713) 521-1314
(15)　Fax (713) 521-1299
　　　Firm Registration No. 150
(19)　Charge for transcript and exhibits: $
(20)　To be paid by Mr. Paul E. Bonanno/Defendant