UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SCANSOFT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-10353-PBS |
| | ) | |
| VOICE SIGNAL TECHNOLOGIES, INC., | ) | |
| LAURENCE S. GILLICK, ROBERT S. | ) | |
| ROTH, JONATHAN P. YAMRON, and | ) | |
| MANFRED G. GRABHERR, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR LEAVE TO TAKE MORE THAN TEN DEPOSITIONS AND IN OPPOSITION TO SCANSOFT, INC.'S MOTION FOR PROTECTIVE ORDER**

Defendants Laurence S. Gillick, Robert S. Roth, Jonathan P. Yamron, Manfred G. Grabherr, and Voice Signal Technologies, Inc. ("Voice Signal") submit this memorandum in support of their Motion for Leave to Take More Than Ten Depositions ("Motion for Leave") and in opposition to plaintiff ScanSoft, Inc.'s Motion for Protective Order Limiting Parties to Ten Depositions ("Motion for Protective Order").

The instant litigation involves a claim for infringement of U.S. Patent number 6,501,966 (the "'966 patent"); (2) a counter-claim alleging infringement of an unrelated patent, U.S. Patent No. 6,594,630 (the "'630 patent"); and (3) claims against Voice Signal and four individually named speech technology scientists alleging a theft of trade secrets from two predecessors to ScanSoft.

1

The subject matter of this case – speech recognition technology – is extraordinarily complex. Reflecting the value of the technology at issue, the litigation has been fierce. To date, defendants have taken eight depositions concerning ScanSoft's patent infringement claim. As set forth below, defendants require approximately nine additional depositions in order to defend themselves against ScanSoft's claims that the individual defendants misappropriated a host of unspecified "trade secrets" allegedly relating to a multitude of general categories of speech recognition techniques set forth in ScanSoft's interrogatory response and other pleadings. Given the disparate claims ScanSoft has asserted, and the myriad factual issues raised by those claims, the discovery requested by defendants is reasonable.[1]

## BACKGROUND

ScanSoft is a large, publicly traded corporation, with offices and employees throughout North America, Europe, and Asia. It has a market capitalization in excess of $400 million and has hundreds of employees.

Voice Signal Technologies, Inc. is a small private company established in 1995 by two friends prior to their graduation from college. It employs roughly 55 people in Woburn, Massachusetts, 38 of whom are software developers.

In the Amended Complaint, ScanSoft asserts a claim against Voice Signal for infringement of the '966 patent, and also asserts a series of state law claims against Voice Signal and the individual defendants, Laurence Gillick, Robert Roth, Jonathan Yamron, and Manfred Grabherr, relating to the alleged misappropriation of trade secrets by the individual defendants from ScanSoft and its predecessors Lernout & Hauspie ("L&H") and Dragon Systems, Inc.

---

[1] Voice Signal has effectively completed discovery related to its counter-claim of infringement of the '630 patent. ScanSoft to date has refused to provide any source code from its products relating to Voice Signal's infringement claim (notwithstanding a Court Order compelling that production). Once ScanSoft produces that source code and related information, and the Court completes claim construction, Voice Signal will likely require further discovery.

2

("Dragon"), where the individual defendants were employed before joining Voice Signal in 2001.[2]

ScanSoft's patent claim is unrelated to its state law claims. The patent claim and state law claims involve completely different facts and legal theories. As a result, defendants have been required to pursue two separate courses of discovery. On the one hand, with respect to ScanSoft's patent claim, Voice Signal has served subpoenas on third-parties from the speech recognition industry relevant to Voice Signal's defenses of the '966 patent claim.[3] Voice Signal has also served subpoenas on the three named inventors of the '966 patent, Peter J. Foster, Thomas B. Schalk, and Bernard F. Bareis, and a prior assignee of the '966 patent and predecessor to ScanSoft, Philips Electronics North America Corp., in an effort to obtain facts concerning the development of the '966 patent.

With respect to ScanSoft's trade secret claims, defendants seek discovery from ScanSoft employees in order to rebut ScanSoft's (unsupported) allegations that the individual defendants misappropriated alleged "trade secrets" developed at L&H and/or Dragon. E-mails produced by ScanSoft to date establish that numerous ScanSoft employees were involved in a competitive analysis of Voice Signal's products during the 2003 time frame, after the misappropriation supposedly occurred, and when the decision to commence this lawsuit was made. *See* Declaration of Paul E. Bonanno ("Bonanno Decl."), Exhibit A. The e-mails conclude that ScanSoft did not have a product that could compete with Voice Signal's mobile phone products. The e-mails further conclude that Voice Signal's technology was completely different from the

---

[2] Defendant Grabherr was never employed by Dragon.

[3] Voice Signal served subpoenas on Uniden America Corporation, Texas Instruments, Inc., Intervoice, Inc., Cingular Wireless, and the former president of Interstate Voice Products, Sam Viglione. After receiving documents from Intervoice and Cingular Wireless, as well as Phillips Electronics North America, discussed below, Voice Signal decided not to proceed with depositions of those entities.

3

technology developed by L&H and/or Dragon, thereby sharply refuting the assertion that Voice Signal's products were developed from trade secrets stolen from L&H and/or Dragon. Those e-mails are manifestly relevant to the defendants' defenses, and to the question whether ScanSoft's trade secret claims are asserted in good faith. Defendants seek to depose certain authors and recipients of those emails.[4] Perhaps not surprisingly, ScanSoft desires to prevent those depositions, and to blunt defendants' efforts to discover, once and for all, whether there is any basis to ScanSoft's trade secret claims.

Further, defendants seek to depose three former L&H (and now ScanSoft) employees, Francis Ganong, Tom Morse, and Guido Gallopyn, each of whom signed a declaration alleging trade secret misappropriation by the individual defendants. *See* Affidavit of William Francis Ganong [Docket No. 183, Exhibit A]; *see also* Affidavit of Tom Morse and Affidavit of Guido Gallopyn, filed in *Lernout & Hauspie Speech Products N.V. v. Laurence Gillick et al.*, Civil Action No. 01-3924, Middlesex Superior Court. Defendants are entitled to test the basis of those sworn assertions, which ScanSoft uses as the grounds for its trade secret claims and as justification for its demand for unrestricted access to Voice Signal's source code, proprietary techniques, and other competitively significant trade secrets and confidential information.

Defendants also seek to depose Kenneth Bayse, who is, on information and belief, the head of development of the ScanSoft speech recognition project from which "trade secrets" were allegedly misappropriated by the individual defendants.

Each deposition request made by defendants is narrowly tailored to the claims and defenses of this case. In the context of the breadth and complexity of issues presented in this

---

[4] These highly relevant e-mails were authored or received by more than twenty ScanSoft employees, including Alan Schwartz, Jeanne McCann, Jan Verhasselt, and Vlad Sejnoha, each of whom the defendants have noticed for deposition.

litigation, the scale of the controversy and the significance of the outcome to the business of Voice Signal, the requested discovery is reasonable.

## ARGUMENT

**I.      Defendants Should Be Granted Leave To Take More Than Ten Depositions.**

Fed. R. Civ. P. 30 provides, in relevant part, "A party must obtain leave of court, which *shall be granted* to the extent consistent with the principles stated in Rule 26(b)(2), if . . . a proposed deposition would result in more than ten depositions being taken under this rule." Fed. R. Civ. P. 30(a)(2) (emphasis added). Fed. R. Civ. P. 26(b)(2), in turn, provides,

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2).

Granting defendants leave to take more than ten depositions would be entirely consistent with the principles set forth in Fed. R. Civ. P. 26(b)(2).

### A.     The Depositions Are Not Cumulative.

The depositions that defendants have taken and intend to take concern a variety of issues arising directly from ScanSoft's assertion of distinct patent and state law claims. The eight depositions Voice Signal has taken to date relate to ScanSoft's patent claim. Three were of third parties knowledgeable about relevant prior art (Texas Instruments, Uniden, and Sam Viglione). Because voice dialing – which is the subject matter of the '966 patent – was widely implemented

in the 1980s and 1990s, Voice Signal by necessity sought to inquire of a number of companies and individuals who demonstrated or sold voice dialing technology during the relevant time period. Four other depositions were of the named inventors of the '966 patent (Messrs. Foster, Schalk, and Bareis) and of ScanSoft itself. Finally, after ScanSoft's Rule 30(b)(6) designee, Michael Phillips, was unable to testify as to the whereabouts of the development documents for the '966 patent, which ScanSoft presumably inherited from its predecessors at the same time it was assigned the '966 patent, Voice Signal noticed the deposition of Fadi Kaake, the only ScanSoft employee who had worked for ScanSoft's predecessor, Voice Control Systems, Inc., the company under whose aegis the '966 patent was developed.

The remaining nine depositions defendants seek relate to ScanSoft's trade secret claims. Four of the noticed deponents (Alan Schwartz, Jeanne McCann, Jan Verhasselt, and Vlad Sejnoha) are ScanSoft employees who authored or received the critical e-mails discussed above that reflect ScanSoft's belief that Voice Signal's products were both technologically distinct from, and competitively superior to, ScanSoft's products. In order to fully understand those e-mails and the analyses behind them, defendants seek to inquire of their authors directly. Three other noticed deponents (Messrs. Ganong, Morse, and Gallopyn) have, as noted above, signed declarations attesting to facts regarding the alleged trade secret misappropriation. Defendants seek to depose them in order to test the bases and specifics of their assertions. Finally, defendants seek to depose Mr. Bayse regarding the technology allegedly misappropriated by the individual defendants and to depose ScanSoft, in an attempt to obtain, once and for all, an identification of the trade secrets it alleges were misappropriated.

In short, the depositions defendants seek to take are not cumulative attempts to discover the same information, but are narrowly targeted to particular claims and distinct issues.

### B. As A Result Of ScanSoft's Conduct, Defendants Have Not Had Ample Opportunity To Obtain The Information Necessary To Their Defenses.

As indicated above, the remaining depositions that defendants seek to take relate to ScanSoft's state law claims concerning the alleged misappropriation of trade secrets by the individual defendants. Discovery with respect to ScanSoft's trade secret claims has been thwarted by ScanSoft's continued refusal to identify with specificity the trade secrets the individual defendants supposedly misappropriated. *See* Voice Signal Technologies, Inc.'s Memorandum in Support of its Objections to the Magistrate Judge's Order Regarding Trade Secrets, dated April 13, 2005, at 3-8. Furthermore, many of the internal ScanSoft e-mails about which defendants seek to depose ScanSoft employees were produced only last month, on May 12, 2005. Defendants need to take the noticed depositions in order to inquire as to the identity of the trade secrets that ScanSoft has consistently refused to identify and the e-mails that it produced just last month.

### C. The Benefit Of The Depositions Would Outweigh Any Burden On ScanSoft.

Finally, the benefit of the additional depositions noticed by defendants would vastly outweigh any burden on ScanSoft. ScanSoft is a large, public company with a market capitalization in excess of $400 million and offices worldwide. It chose to commence this action, and it chose to assert distinct claims against Voice Signal and four individual defendants. ScanSoft's complaint that it would be too expensive or burdensome for its counsel to attend the additional depositions strains credibility. Furthermore, the notion that the defendants – a small, private company and four individual scientists – are seeking to take additional depositions in order to run up legal fees and engage in a war of attrition with a multinational corporation like ScanSoft is implausible. Defendants are seeking to take the additional depositions described

7

above because those depositions are absolutely necessary to establish their defenses to ScanSoft's baseless claims.

## II.   ScanSoft's Motion For A Protective Order Is Unwarranted.

ScanSoft's Motion for a Protective Order precluding Voice Signal from taking more than ten depositions should be denied for the same reasons, set forth above, that Voice Signal's Motion for Leave should be granted.[5]

ScanSoft's Motion for a Protective Order should also be denied because its supporting memorandum is replete with inaccuracies. First, ScanSoft complains at length that its counsel was forced to travel to Forth Worth, Texas for the deposition of Uniden. ScanSoft Mem. at 2-4. In fact, Voice Signal informed ScanSoft that while it would be attending the deposition in person, ScanSoft could appear for the deposition telephonically. ScanSoft declined to do so. Voice Signal similarly agreed that ScanSoft could appear at the deposition of Michael McMahan, a designee of Texas Instruments, by telephone, but ScanSoft again declined to do so. *See* Bonanno Decl. ¶¶ 2-3. In short, Voice Signal did not "insist on dragging the parties to Texas" as ScanSoft asserts. ScanSoft Mem. at 8.

Second, ScanSoft complains that two of the depositions defendants have noticed would require ScanSoft to travel to Europe, specifically the depositions of Koninklijke Philips Electronics, N.V. (Netherlands) and Jan Verhasselt (Belgium). ScanSoft Mem. at 4. In fact, Voice Signal was unable to effect service on Koninklijke Philips Electronics, N.V., and so served its American subsidiary, Philips Electronics North America, instead. There will be no deposition in the Netherlands. Also, Jan Verhasselt is a ScanSoft employee working at ScanSoft's Belgium

---

[5] Notably, ScanSoft itself has noticed more than the ten depositions allowed in Fed. R. Civ. P. 30. To date, ScanSoft has noticed the following depositions: 1) Manfred Grabherr, 2) Laurence S. Gillick, 3) Robert S. Roth, 4) Jonathan P. Yamron, 5) Voice Signal Technologies, 6) Jan Pantzar, 7) Jordan R. Cohen, 8) Thomas Lazay, 9) Daniel Roth, 10) Igor Zlokarnik, 11) William Barton, and 12) David F. Johnston.

8

office. ScanSoft's argument that defendants should not be able to depose a ScanSoft employee at his place of employment because it would be overly burdensome for ScanSoft to conduct a deposition at its own office in Belgium should be dismissed out of hand.

Finally, ScanSoft complains in its memorandum that defendants noticed multiple depositions for May 27, 2005 and May 30, 2005, which was Memorial Day. In fact, counsel for defendants and ScanSoft had previously agreed that the deposition notices served by both parties would constitute "placeholders" only, and that the parties would settle on mutually convenient dates for those depositions at a later time. Indeed, counsel confirmed this understanding the very day ScanSoft filed its Motion for a Protective Order. *See* Bonanno Decl., Exhibit B. Thus, ScanSoft's comment that it "cannot cover all of these depositions on the days noticed by VST" is disingenuous. ScanSoft's attempt to prevent the additional depositions noticed by the defendants has nothing to do with the costs or burden of this litigation. The defendants' motion should be granted.

**CONCLUSION**

For all of the foregoing reasons, the Court should grant defendants' Motion for Leave and deny ScanSoft's Motion for a Protective Order.

Respectfully submitted,

LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, MANFRED G. GRABHERR and VOICE SIGNAL TECHNOLOGIES, INC.

By their attorneys,

/s/  Paul E. Bonanno
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Paul E. Bonanno (BBO No. 646838)
Wendy S. Plotkin (BOB No. 647716)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, MA  02109
(617) 248-5000

Dated:  June 9, 2005
3939146_3.DOC