UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SCANSOFT, INC., )
)
Plaintiff, )
)
v. ) C. A. No. 04-10353-PBS
)
VOICE SIGNAL TECHNOLOGIES, INC., )
LAURENCE S. GILLICK, ROBERT S. )
ROTH, JONATHAN P. YAMRON, and )
MANFRED G. GRABHERR, )
)
Defendants. )

**VOICE SIGNAL TECHNOLOGIES' MEMORANDUM IN OPPOSITION
TO SCANSOFT'S EMERGENCY MOTION TO SHOW CAUSE
WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT AND
REQUEST FOR DETERMINATION OF SUBJECT MATTER WAIVER**

On June 3, 2005, ScanSoft filed in court a six-page document containing its attorney work product. On June 6, 2006, ScanSoft demanded the return of the document. When Voice Signal's counsel requested additional time to consider that demand, ScanSoft refused and filed a motion for contempt.

ScanSoft's motion should be denied. By placing its work product in the public record of the Court, and thus serving it on Voice Signal, ScanSoft waived the work-product privilege. The Protective Order entered in this case is inapplicable to the present situation. It governs discovery and addresses the "inadvertent" production of privileged documents during discovery. The relevant document was not produced as part of discovery; it was filed in court. Moreover, despite direct inquiry by Voice Signal's counsel, and clearly applicable case law, ScanSoft has not even attempted to demonstrate

that the filing of the relevant document was "inadvertent," as that term has been defined by the Court.

ScanSoft's production of a document containing its work product has resulted in a subject matter waiver. The document reveals that ScanSoft is seeking access to Voice Signal's source code in an effort to determine whether Voice Signal infringes ScanSoft patents that are not in suit -- a use that would violate the Protective Order. ScanSoft should now be required to produce all privileged documents that address its actual (as distinguished from its stated) reasons for seeking production of Voice Signal's source code.

## THE FACTS

On June 3, 2005, ScanSoft filed its Markman brief with respect to U.S. Patent No. 6,594,630. ScanSoft attached four exhibits to the brief. Exhibit 1 consisted of a copy of the '630 patent and a memorandum evaluating arguments that might be made to the effect that Voice Signal has infringed a patent that ScanSoft has not (yet) asserted against Voice Signal. A copy of the document is being filed herewith, under seal, so as to permit the Court to determine its character. Affidavit of Robert S. Frank, Ex. A.

The document is labeled as, and appears to be, "Attorney Work Product." It does not appear to be protected by the attorney-client privilege. It does not state facts disclosed by ScanSoft to ScanSoft's counsel, is not addressed to ScanSoft by ScanSoft's counsel, and does not offer legal advice.

At mid-day on June 6, 2005, ScanSoft's counsel requested the return of the document. ScanSoft states that, at about the same time, it also approached the Court's

Docket Clerk and persuaded her to remove ScanSoft's filing from the public record. ScanSoft did not request the Court's permission to alter the record.

When Voice Signal did not agree immediately to ScanSoft's request, Eric Belt, Esq. of Bromberg & Sunstein (ScanSoft's counsel) called Robert Frank of Choate, Hall & Stewart (Voice Signal's counsel). Mr. Belt demanded the return of the document. Mr. Frank responded that he had been informed of the situation, that he had not yet been able to evaluate the parties' rights and obligations, but that neither the document nor its contents would be disclosed to Voice Signal until the matter were resolved. Mr. Frank asked Mr. Belt to provide the information necessary to support a claim of privilege in some written form. Frank Aff., ¶ 3. Mr. Belt responded by e-mail dated, June 6, 2005, 5:39 p.m. He stated that the document was prepared exclusively by Bromberg & Sunstein "on behalf of one of this firm's clients." He further stated that the document was "addressed to the client's in-house counsel."[1] Neither the client nor the in-house counsel was identified. Mr. Belt threatened a motion for contempt if the document were not returned "forthwith." Frank Aff., ¶ 4 and Ex. B.

The next morning (June 7), Mr. Frank responded by e-mail. He repeated that Voice Signal's counsel were attempting to determine the parties' rights, and confirmed that the document and its contents would not be disclosed to Voice Signal until the matter were resolved. Mr. Frank said that there was "no need [for] threats. If, after our review, we are in doubt as to the appropriate course of action, we will put the issue to the Court and seek its direction." The e-mail then requested ScanSoft's views with respect to

---

[1] This statement was incorrect. The document is not addressed to anyone. It appears to be an internal Bromberg & Sunstein memorandum. It is labeled a work product. It was not labeled as attorney-client privileged.

3

certain issues which, it said, "would allow us to make the most rapid and informed decision possible." The questions were:

1. What was the effect of the fact that the document was filed in court, not produced in the course of discovery?

2. What precautions were taken to prevent the filing in court of documents of this type?

3. Does it matter that the document appears to contain work product, as distinguished from attorney-client privileged, material?

4. Does the relevance of the document to an existing dispute regarding the production of source code effect the parties' rights?

5. Was ScanSoft entitled to remove a document from the public record without Voice Signal's acquiescence or the Court's consent?

ScanSoft chose not to respond to any of these questions. Frank Aff., ¶ 5 and Ex. C.

Later on June 7, Lee Bromberg, Esq. of Bromberg & Sunstein and Mr. Frank spoke by telephone. Mr. Frank stated that he had been in meetings for much of the day and had not yet been able to address the document filing issue. Mr. Bromberg asserted that the Protective Order required the return of the relevant document. Mr. Frank stated that it was his understanding that the Protective Order governed documents produced, and disclosures made, in the course of discovery, but not documents filed in court. Mr. Bromberg disagreed. Mr. Frank requested an additional twenty-four hours to consider the matter. Mr. Bromberg refused that request. He said that ScanSoft would file a motion for contempt immediately. Frank Aff., ¶ 6. The instant motion followed.

## ARGUMENT

I. **Work Product Protection Is Waived When Work Product Is Filed In Court Or Provided To An Opposing Party.**

ScanSoft states that the relevant document contains attorney work product (ScanSoft Mem. at 1). The document is labeled as work product. It contains a comparison of Voice Signal's VoiceMode product -- a product that is not alleged to infringe any ScanSoft patent -- to the claims of a patent that ScanSoft has not asserted against any Voice Signal product. It states repeatedly that a determination of infringement cannot be made without access to Voice Signal's source code. The document appears to contain the mental impressions of counsel, and, therefore, to be work product.

The document is not protected by the attorney-client privilege. Although ScanSoft states at one location in its memorandum (p. 3) that the attorney-client privilege applies, ScanSoft does not provide a factual basis for the assertion of that privilege. The document is not addressed to a client, does not reference a request for advice and does not contain any information that is confidential to, or was disclosed to counsel by, a client.

The work-product doctrine is designed to prevent adversaries from obtaining access to the mental impressions of counsel. As a matter of law, work-product protection is waived if, as here, counsel's work product is disclosed by counsel to an adversary. *United States v. Massachusetts Institute of Technology*, 129 F.2d 681, 687 (1st Cir. 1997) ("... it would take better reason than we have to depart from the prevailing rule that disclosure to an adversary ... forfeits work product protection"); *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990) ("[T]he government has waived [work product

5

protection] by voluntarily attaching a copy of the offending memorandum to appellant's copy of the motion . . . . It is irrelevant whether the attachment was inadvertent . . . . Voluntary disclosure of attorney work product to an adversary in litigation . . . defeats the policy underlying the privilege . . . . Granting the motion [to strike the document from the court record] would do no more than seal the bag from which the cat has already escaped."); *Data General v. Grumman Systems Support Corp.*, 159 F.R.D. 556, 558-561 (D. Mass. 1991); *Adoption of Sherry*, 435 Mass. 331, 335-36 (2001).

Voice Signal asked ScanSoft for its views regarding the fact that the disputed document contained work product and was filed in court. ScanSoft did not respond, and its memorandum does not address this issue. However, the law is clear. ScanSoft's inclusion of the disputed document in a court filing, and the resulting disclosure of the contents of that document to Voice Signal's counsel, waived work-product protection. There is no obligation to return it.

II. **The Protective Order Is Inapplicable To The Present Motion Because The Protective Order Relates To Documents Produced During Discovery, Not To Documents Filed In Court.**

ScanSoft asserts that Voice Signal is required by the terms of the Protective Order in this case to return the disputed document, and that the failure to return the document constitutes contempt.

The Protective Order is inapplicable to the present dispute. It addresses discovery procedures. *See* first WHEREAS provision, and Sections 1, 2, and 3. It protects the "inadvertent" production of privileged documents and disclosure of privileged information *in the course of discovery*. It does not address, and does not apply to, documents that are not produced in the course of discovery, but are, instead, placed in the

public record of the court by the party asserting a relevant privilege. Section 4 of the Protective Order states:

> Any party that produces information which it inadvertently or unintentionally fails to designate as "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" may so designate the information by notifying the receiving parties promptly upon discovery of the error. In addition, the inadvertent production of information subject to attorney-client privilege or work-product immunity, or the inadvertent failure to designate information as "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL," will not be deemed to constitute a waiver of such privilege, immunity, rights, or any other privilege, immunity, or rights that would otherwise attach to such information. Any party receiving inadvertently produced information will forthwith, upon request, return the original and all copies to the party producing such information.

The Protective Order simply does not require the return of documents filed in court.

ScanSoft's assertion that Voice Signal's counsel should be held in contempt for violating the Protective Order is without basis. The Order is, for the reasons stated above, inapplicable to the present situation. Moreover, Voice Signal's counsel's conduct was justified and, in all respects, reasonable. Counsel did not refuse to return the document. He requested twenty-four hours to consider the matter further. Voice Signal's counsel informed ScanSoft that he was prepared to present the waiver issue to the Court for its determination. He assured ScanSoft that the document and its contents would not be disclosed to Voice Signal pending a determination. Voice Signal's counsel asked ScanSoft's counsel relevant questions. ScanSoft did not respond, did not state an adequate basis for demanding the return of the document, and refused even to allow Voice Signal's counsel more time to consider the matter. The instant motion for contempt is without basis. It should be denied.

### III. Even If Applicable, The Protective Order Would Not Assist ScanSoft Because ScanSoft's Filing Was Not "Inadvertent."

The Protective Order requires the return of documents whose production during discovery was "inadvertent." The decisions of this Court make clear that a production is *not* "inadvertent" where the production is the result of gross negligence or recklessness.

In *VLT v. Lucent Technologies, Inc.*, 2003 WL 151399 (D. Mass.), the relevant protective order stated that inadvertent production of a privileged document would not result in a waiver of privilege. It required the return or destruction of inadvertently-produced documents. Certain documents were produced to an opposing party (not, as here, filed in court) as a result of conduct by producing counsel that, the Court found, constituted gross negligence. This Court held that the production of documents as a result of gross negligence was not "inadvertent" production.

Similarly here, the disclosure of a privileged document was the result, at least, of gross negligence. This is not a situation where a relatively small number of privileged documents were included in a massive document production. Instead, a small number of documents -- a twenty-page memorandum and four attachments -- were filed in court. It took an affirmative act by counsel to scan the disputed document into the filing and then to make the filing. Cursory scrutiny by counsel would have detected the presence of the document. Cursory scrutiny was apparently not provided.

ScanSoft has made no effort to explain why the disputed document was placed in the public record. It does not describe any precaution that was taken to avoid that result. ScanSoft did not respond to Voice Signal's (relevant) inquiry seeking a description of the precautions taken by ScanSoft.

In similar circumstances, where privileged documents have been filed in court, any privilege attaching to the documents has been deemed waived. *Local 851 of the International Brotherhood of Teamsters v. Kuehne Nagel Air Freight, Inc.*, 36 F. Supp. 2d 127, 132-133 (E.D.N.Y. 1998) (privileged documents appended to court filing as one of seven exhibits and "did not result from the production of thousands of pages during a massive production;" "counsel either failed to review his staff's assembly of the opposition and cross-motion or failed to do so adequately;" privilege held waived); *Zagone v. Bosque*, 2003 WL 1581999 (N.D. Ill.) (privileged document attached to motion; the contents of the document were, as a result, fully disclosed; motion to remove the document from the court file denied); *United States v. Gangi*, 1 F. Supp. 2d 256 (S.D.N.Y. 1998) (work product memorandum filed in court attached to a lengthy indictment; "work product protection is waived when protected materials are disclosed in a manner which substantially increases the opportunity for a potential adversary to obtain the protected information"); *Securities and Exchange Commission v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) (work product memorandum produced during discovery; counsel made "a deliberate decision . . . to produce it without looking at it").

In sum, court filings require the careful attention of counsel. There is no evidence of any precaution taken by ScanSoft to prevent the public disclosure of the disputed document. The contents of the document were fully disclosed to opposing counsel and available to anyone else who chose to examine (electronically or otherwise) the public record of the Court. This is not a situation where a privileged document was included in a voluminous document production. Any applicable privilege was waived. The document need not be returned.

## IV. There Was A Subject Matter Waiver.

From the outset of this case, ScanSoft has attempted to obtain access to Voice Signal's source code. ScanSoft's first stated reason was that it needed to determine whether Voice Signal infringed ScanSoft's U.S. Patent No. 6,501,966. As the *Markman* hearing and associated briefing in this case has made clear, ScanSoft's assertion was a pretext. The '966 patent has nothing to do with the way in which verbal statements are "recognized" by a speech recognition system. Infringement or non-infringement turns on the undisputed fact that Voice System's product resides in an individual cell phone handset, and equally undisputed facts about the series of verbal directives that a cell phone user gives to the cell phone. Source code is utterly irrelevant to these issues.

As a second try, ScanSoft asserted that it needed to pore over Voice Signal's source code to see if it could find a ScanSoft trade secret somewhere in that source code. Despite repeated attempts, ScanSoft has failed to identify any trade secret that it believes Voice Signal has misappropriated.

Moreover, discovery has now revealed that ScanSoft's trade secret claim is believed by ScanSoft to be baseless. ScanSoft's Senior Vice President of Research and Development for Speech Products testified that she is aware of nothing that causes her to believe that a particular ScanSoft trade secret (or a trade secret of ScanSoft's predecessors Dragon Speech Products and Lernout & Hauspie) has been in, or is being, used by any of the defendants. Frank Aff., Ex. D at 11, 51-52. ScanSoft has produced documents that contain the analysis of Voice Signal's products by the ScanSoft scientists responsible for developing ScanSoft's "embedded" products -- ScanSoft's most knowledgeable personnel. An "embedded" product is a speech recognition product that is incorporated in another product. A cell phone voice dialer is an embedded product.

10

ScanSoft's key scientific personnel concluded that Voice Signal's products were

**REDACTED**

for developing such a product. Frank Aff., Ex. E at SS020267. Voice Signal's product, ScanSoft's scientists concluded, **REDACTED** from any ScanSoft product. Frank Aff., Ex. F at SS020583. At the relevant time, ScanSoft personnel believed that no one in the world could produce a cell phone-based voice dialer that had the functionality that Voice Signal had, at that time, actually achieved. Frank Aff., Ex. D at 216-221. ScanSoft concluded that ScanSoft -- which, of course, had access to all of ScanSoft's trade secrets -- could not develop a competitive product of its own in any reasonable time period.[2]

These documents demonstrate (1) that ScanSoft's trade secret claim lacks good faith basis and (2) that ScanSoft has no reasonable expectation of finding a ScanSoft trade secret in Voice Signal's source code. ScanSoft would, of course, be anxious to obtain access to source code that could teach it how to achieve results that ScanSoft could not achieve by its own efforts.

The recently-produced document reveals a separate, important motivation for ScanSoft's continuing request for access to Voice Signal's source code. ScanSoft wishes to use discovery in this case to see if it can generate some other claim against Voice Signal. The document that ScanSoft filed in court states that ScanSoft needs Voice

---

[2] ScanSoft therefore concluded that it should buy one or both of the companies that had developed cell phone-based speech recognition products. When its efforts to negotiate a purchase failed, it sued ART Advanced Recognition Technologies and Voice Signal. Frank Aff., Ex. G. ART eventually capitulated and sold out to ScanSoft. Voice Signal has not capitulated.

11

Signal's source code in order to determine whether ScanSoft can argue that a Voice Signal product (not previously accused of infringement) infringes a ScanSoft patent (that has not previously been asserted against Voice Signal).

ScanSoft has made subject matter waiver. Having produced a document that reveals its motivation for seeking Voice Signal's source code, all other privileged documents that address the same subject must now be produced. The First Circuit said in *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867, 883-84 (1st Cir. 1995), "in general, a waiver premised on inadvertent disclosure will be deemed to encompass all other . . . communications on the same subject." In *VLT, supra* at 4, this Court held that there was a subject matter waiver with respect to documents as to which the relevant privilege was deemed waived.

Therefore, ScanSoft should be ordered to produce all privileged documents that discuss the need for, or the desirability of obtaining, Voice Signal's source code. The production of those documents will allow the Court to fashion source code-related discovery orders with an eye toward the actual reasons for ScanSoft's pursuit of Voice Signal's trade secret source code, not the pretexts that ScanSoft has advanced to date. *See Local 851*, 36 F.2d at 34 ("[E]ven if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication") quoting *Bowne v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993).

## CONCLUSION

The filing in court of a document containing work product waived work-product protection. A subject matter waiver resulted. The Protective Order is inapplicable to the instant dispute; and even if it did apply, it would not allow ScanSoft to avoid a waiver on the facts of this case.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,


/s/ Paul E. Bonanno
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Paul E. Bonanno (BBO No. 646838)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, MA 02109
(617) 248-5000

Dated: June 22, 2005
3945921_1.DOC