**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SCANSOFT, INC.<br><br>  Plaintiff,<br><br>  v.<br><br>VOICE SIGNAL TECHNOLOGIES, INC.,<br>LAURENCE S. GILLICK, ROBERT S.<br>ROTH, JONATHAN P. YAMRON, and<br>MANFRED G. GRABHERR<br><br>  Defendants. | Civil Action No. 04-10353 PBS<br><br>ORAL ARGUMENT<br>REQUESTED |

**SCANSOFT'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION**
**FOR REMEDIES AND TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE**
**HELD IN CONTEMPT FOR VIOLATION OF THE COURT'S PROTECTIVE ORDER**

Voice Signal Technologies' delay in returning ScanSoft's inadvertently disclosed document is one more example of its stonewalling and disregard of court orders in this case. Specifically, the terms of the Protective Order require that the parties return or destroy information subject to attorney-client privilege or work product immunity in the event that such information is inadvertently disclosed during the course of this litigation. The parties themselves agreed to these terms, and the Court endorsed them in its Order of March 11, 2005 (D.N. 109). VST's refusal to comply with the Protective Order results in unnecessary motion practice, adding to the already steep costs of this litigation.

The confidential, privileged document at issue was disclosed to VST inadvertently. The terms of the Protective Order dictate exactly what VST's obligations are in this circumstance: that document must be returned to ScanSoft. Accordingly, ScanSoft respectfully requests that VST be ordered to return or destroy that document and should be found in contempt for its

willful refusal to comply with the Protective Order. Moreover, VST should be ordered to bear the costs of this wasteful motion practice.

## FACTS

As stated in ScanSoft's Memorandum in Support of its Emergency Motion to Show Cause (D.N. 215), on June 3, 2005, in the course of filing its *Markman* brief on the '630 counterclaim patent, counsel for ScanSoft inadvertently disclosed to counsel for VST an electronic version of a six page document prepared by Bromberg & Sunstein LLP attorneys for its client, ScanSoft. This document, marked in bold at the bottom of each page, "**Prepared by Bromberg & Sunstein LLP – Confidential and Privileged Attorney Work Product**," was accidentally appended to the electronic copy of the '630 patent that was filed as Exhibit 1 to the *Markman* brief and automatically distributed to counsel for VST by the Court's electronic filing system. Counsel for ScanSoft has now determined how this mistake occurred.

At Bromberg & Sunstein LLP, counsel for ScanSoft print remotely to shared printers. *See* Declaration of Jack C. Schecter ("Schecter Decl. 2"), ¶ 4 (attached as **Exhibit 1**). At times, a series of consecutive print requests sent to a printer from one user will be interrupted by a print request from another user. *Id.* In the event of such an interruption, when the initial user collects his or her documents from the printer, a document resulting from the intervening print request may be found within the series of documents requested to be printed by the initial user. *Id.* As a precaution, to ensure that no such unintended documents become interspersed with documents intended to be sent outside the firm, it is the procedure and practice at Bromberg & Sunstein that documents not intended for outside distribution are printed on highly visible, brightly colored "draft" paper. *Id.*, ¶ 5.

In preparing ScanSoft's '630 *Markman* brief for electronic filing, counsel for ScanSoft printed a series of documents to be attached to the brief as exhibits, including a copy of the '630 patent to be included as Exhibit 1. *Id.*, ¶ 3. Unfortunately, as the exhibits to ScanSoft's '630 *Markman* brief were being printed, the shared printer was malfunctioning. *Id.*, ¶6. Counsel for ScanSoft was unaware of this malfunction at the time. *Id.* As a result of the malfunction, the printer failed to print documents, including privileged and work-product documents, not intended for filing or outside distribution on the brightly colored "draft" paper and instead printed them on plain white bond paper. *Id.* At the same time counsel for ScanSoft was printing the exhibits to the '630 *Markman* brief, an intervening print request was received by the shared printer instructing that printer to print a copy of the six-page confidential and privileged attorney work product document currently at issue. *Id.* As such, unbeknownst to counsel for ScanSoft, a copy of the privileged and work-product document was produced on white bond paper between the first exhibit to the '630 *Markman* brief and the following exhibits. *Id.*

After printing the series of documents to be included as exhibits to the '630 *Markman* brief, counsel for ScanSoft directed an administrative assistant to scan each of those documents, converting them to an Adobe Acrobat file suitable for electronic filing using the Court's electronic filing system. *Id.*, ¶ 7. The administrative assistant then forwarded the resulting electronic versions of the documents to counsel for ScanSoft via electronic mail. *Id.*

Before attaching the exhibits to the '630 *Markman* brief for electronic filing, counsel for ScanSoft opened each of the four Adobe Acrobat files in order to verify that the electronic file was, in fact, the intended exhibit. *Id.*, ¶ 8. In opening the Adobe Acrobat file that was thereafter attached as Exhibit 1, counsel for ScanSoft reviewed the first several pages of the document and verified that the document was the intended attachment – namely, the '630 patent. *Id.* Counsel,

3

however, did not review the entire electronic file and thus was unaware that, during the scanning of the exhibits, the six-page confidential, privileged attorney work product document now at issue had been inadvertently included at the end of the electronic copy of the '630 patent. *Id.*

ScanSoft's '630 *Markman* brief was filed electronically on June 3, 2005 at 4:07 PM EDT, including the erroneous version of Exhibit 1 with the privileged document inadvertently appended. *Id.*, ¶ 9. While reviewing paper copies of the filing, counsel for ScanSoft realized the error on the morning of the next business day, Monday, June 6, 2005, and immediately corrected the error with the Court's docket clerk and brought the error to the attention of counsel for VST, requesting the immediate return or destruction of the document. *Id.,* ¶ 10.

## ARGUMENT

I.  **THE TERMS OF THE PROTECTIVE ORDER REGARDING INADVERTENT DISCLOSURE OF INFORMATION ARE NOT LIMITED TO DOCUMENTS INADVERTENTLY PRODUCED DURING DISCOVERY.**

VST has taken a purposefully hairsplitting view of the Protective Order simply to stonewall. But by its own terms, the Protective Order does not apply only to documents produced in the course of discovery. The Protective Order requires that a party "receiving inadvertently produced information" return that information to the producing party, without limitation on the channel through which the inadvertent disclosure was made. *See* Protective Order, ¶ 4. The Protective Order states that its procedures, including those set forth in Paragraph 4 regarding inadvertent disclosure, are applicable to the <u>entire</u> litigation, including all appeals or related proceedings. The Order states,

> THEREFORE, IT IS HEREBY ORDERED that the Parties, their employees, agents, attorneys and representatives, shall follow the procedures set forth herein with respect to certain documents and other information *produced <u>and/or disclosed</u> in this action and all*

4

> *appeals or related proceedings taken or filed in connection therewith (the "Litigation")*

(Protective Order, p. 1) (emphasis added). On its face, the Protective Order disavows VST's proposed limitation that the Order's terms and provisions merely address discovery procedures.[1] The Order covers not just documents <u>produced</u> in discovery, but any documents "disclosed" in the action, without limitation to discovery.

The terms of the Protective Order are applicable to the present dispute. When information subject to attorney-client privilege or work product immunity is inadvertently disclosed, the receiving party must return it. VST's distinction between documents inadvertently produced in the course of discovery and those inadvertently disclosed via the Court's electronic filing system is not only without merit, it exemplifies VST's stonewall tactics. VST will seize upon any excuse to clog up this litigation. VST's refusal to comply with the terms of the Protective Order cannot be justified or excused by this purposeful misreading of the terms of that order.

## II.  SCANSOFT'S FILING OF THE DOCUMENT AT ISSUE WAS INADVERTENT.

The circumstances surrounding ScanSoft's unintentional disclosure of the privileged document at issue demonstrate that the disclosure was inadvertent. VST has no basis for its accusation that counsel for ScanSoft acted in a manner that was grossly negligent or reckless. None of the cases VST relies upon support its argument that the disclosure at issue here was anything other than inadvertent.

---

[1]  VST is wrong that the first WHEREAS provision provides support for VST's "discovery only" limitation. Rather, this provision is intended to set forth the purpose of the Protective Order with respect to the treatment and handling of information containing "trade secrets or other confidential research, development, commercial, or proprietary information." The rights and obligations of the parties regarding inadvertently produced information subject to attorney-client or work product immunity, however, are governed by Paragraph 4 of the Protective Order.

5

The term "inadvertent" means "**1.** unintentional; *an inadvertent result.* **2.** not attentive; heedless. **3.** of, pertaining to, or characterized by lack of attention." *Random House Unabridged Dictionary* 964 (2d ed. 1993). In considering the issue of inadvertent disclosure of privileged documents, this dictionary definition was cited to and relied upon by this Court. *VLT v. Lucent Technologies, Inc.*, 2003 WL 151399 at *2 (D. Mass., January 21, 2003) (Saris, J.).

In its opposition, VST cites the *VLT* case extensively and selectively. VST is either unaware of or has purposefully failed to inform the Court that the *VLT* case was the second instance of inadvertent disclosure by plaintiff VLT <u>of the same documents</u> in a series of related litigations. In a prior related case, *VLT v. Unitrode*, this Court had already enforced the terms of a protective order and ordered defendant Unitrode to return privileged documents that VLT had inadvertently disclosed. *See id.* at *1; *see also VLT v. Unitrode Corp.*, 194 F.R.D. 8, 10 (D. Mass. 2000). In asking the Court to order the return of those documents the first time, counsel for VLT explained that the privileged documents had been disclosed to Unitrode as a result of an oversight by a paralegal tasked with filtering out documents likely to be privileged from VLT's production set. *See VLT v. Unitrode Corp.*, 194 F.R.D. at 12. In this first instance, this Court held that VLT "established that their methodology, while leaving much to chance, resulted in the <u>unintended</u> rather than the purposeful or grossly negligent disclosure" and ordered the privileged documents returned. *Id.* (emphasis added).

In subsequent related litigation against Lucent, VLT's counsel <u>again</u> produced the same privileged documents. It was with respect to these repeated disclosures that this Court stated, "[VLT's] subsequent, repeated production of the very same document the return of which it sought in *Unitrode*, after the Court found that its screening methodology left 'much to chance,' could be considered recklessness, never mind grossly negligent." *VLT v. Lucent Technologies,*

6

2003 WL 151399 at *3. In contrast, the Court held that counsel for VLT did <u>not</u> act in a grossly negligent manner in failing to re-screen the entire *VLT v. Unitrode* production set, leading to the inadvertent disclosure of additional privileged documents that were not the subject of the Court's previous ruling. *See id.* at *4. Though the Court noted that the previous problems with the production set "should have created a flag that the documents needed to be re-screened for privilege, one-by-one, by an attorney," the failure to do so did not result in waiver, and the Court ordered those additional privileged documents returned pursuant to the inadvertent disclosure provisions of the protective order. *See id.*

The circumstances in *VLT v. Lucent* in which this Court found a waiver are distinguishable. While counsel for VLT recklessly disclosed privileged material repeatedly <u>after</u> already securing its return once via court order, counsel for ScanSoft's inadvertent disclosure resulted from a one-time mistake combined with administrative error and the failure of office copying equipment. *See* Schecter Decl. 2, ¶¶ 6-8. The mistake was not repeated numerous times, as in the *VLT* case.

Here, the document at issue was clearly marked, "**Prepared by Bromberg & Sunstein LLP – Confidential and Privileged Attorney Work Product**," and procedures were in place to prevent the very error that led to its accidental disclosure. *See id.*, ¶ 4-5. Unfortunately, a printer malfunction undermined these procedures and contributed to a simple administrative mistake in scanning and creating electronic versions of the first exhibit to be attached to ScanSoft's '630 *Markman* brief. *See id.*, ¶6-7. As a result of these errors and malfunctions, the confidential and privileged document now at issue was annexed to the end of the electronic version of Exhibit 1 to the brief. *See id.*, ¶8. Although counsel for ScanSoft opened each electronic file to verify that it contained the intended exhibit, a full review of the electronic version of Exhibit 1 was not

7

conducted, and the error was not detected prior to filing via the Court's electronic filing system. *Id*. The error was detected by counsel for ScanSoft on the morning of the next business day and brought to the attention of the Court and counsel for VST. *See* Schecter Decl., ¶¶ 5-8 (previously attached to ScanSoft's Memorandum in Support of its Motion to Show Cause).

The additional cases to which VST cites are similarly distinguishable. For example, in contrast to ScanSoft's inadvertent disclosure, in each of the cases VST cites, the court found a waiver after specifically noting that the disclosing party had failed to mark or label the disclosed document as privileged. *See Local 851 of the International Brotherhood of Teamsters v. Kuehne Air Freight, Inc.*, 36 F. Supp. 2d 127, 132 (E.D.N.Y. 1998); *Zagone v. Bosque*, 2003 WL 1581999 at *2 (N.D. Ill. March 26, 2003); *United States v. Gangi*, 1 F. Supp. 2d 256, 265 (S.D.N.Y. 1998); *Securities and Exchange Commission v. Cassano*, 189 F.R.D. 83, 84 (S.D.N.Y. 1999). Moreover, in each of the cases relied upon by VST, the court found additional extenuating circumstances that led to a waiver. *See Local 851*, 36 F. Supp. 2d at 132-133 (disclosing party failed to employ procedures to separate confidential communications from non-privileged material and should have been on notice of the potential for error); *Zagone*, 2003 WL 1581999 at *2 (no facts were presented by disclosing party to aid in weighing the reasonableness of precautions taken to prevent disclosure and privileged document was attached to a two-page motion that was to only contain one five page exhibit); *Gangi*, 1 F. Supp. 2d at 265-66 (privileged work product document was disclosed to multiple defendants, their lawyers and dozens of copies were produced and circulated in the public domain); *Cassano*, 189 F.R.D. at 84 (privileged work product document was specifically called to the attention of disclosing party by adverse counsel but produced anyway). None of those additional extenuating circumstances are present here.

8

Counsel for ScanSoft made a simple, one-time mistake that led to the unintentional disclosure of a privileged document. There is no basis for VST to assert that counsel for ScanSoft acted with gross negligence or recklessness.

### III. VST ITSELF HAS REPEATEDLY DISCLOSED DOCUMENTS TO SCANSOFT INADVERTENTLY, AND SCANSOFT HAS RETURNED OR DESTROYED THOSE DOCUMENTS IN ACCORDANCE ITS ETHICAL OBLIGATIONS AND PURSUANT TO THE TERMS OF THE PROTECTIVE ORDER.

VST's assertion that ScanSoft's mistake rises to the level of gross negligence or recklessness is hypocritical, considering that VST's counsel has, itself, committed its fare share of inadvertent disclosures during the course of this litigation. For example, on May 23, 2005, counsel for VST faxed counsel for ScanSoft a letter and unintentionally attached a lengthy, unrelated document to the end of the facsimile. *See* Declaration of Rebecca Hanovice, Esq. ("Hanovice Decl."), ¶ 2 (attached as **Exhibit 2**). In response to a request from VST, in accordance with its obligations under Paragraph 4 of the Protective Order, counsel for ScanSoft disregarded and immediately destroyed the unintended attachment. *See id.*, ¶ 3. More recently, on June 23, 2005, an attorney from Choate, Hall & Stewart inadvertently sent counsel for ScanSoft two different pieces of correspondence unrelated to this litigation. *See* June 24, 2005 letter from Lee C. Bromberg, Esq. to Michael P. Mullins, Esq. (attached as **Exhibit 3**). Upon receipt, ScanSoft immediately notified the attorney at Choate and returned the correspondence. *See id.*

ScanSoft's disclosure of the six page privileged and attorney work-product document to counsel for VST was inadvertent. The document must be returned pursuant to the terms of the Protective Order. VST's refusal to do so is but another example of its continued stonewalling and its disregard for the Orders of this Court.

9

## IV. SCANSOFT'S INADVERTENT DISCLOSURE DID NOT CONSTITUTE A WAIVER, LET ALONE A SUBJECT MATTER WAIVER.

The Protective Order explicitly states that inadvertent production of information subject to attorney-client privilege or attorney work product immunity does not constitute a waiver, let alone a subject matter waiver, of such privilege or immunity.  *See* Protective Order, ¶ 4. Furthermore, VST's request for a subject matter waiver is baseless given that the inadvertently disclosed document concerns a patent that has not been asserted against VST and is unrelated to the patent or trade secret claims at issue in this litigation.  *See Alaska Pulp Corp., Inc. v. United States*, 44 Fed. Cl. 734, 735 (Fed. Cl. 1999) (rejecting "extravagant interpretation of the subject-matter waiver doctrine" where attorney work-product memorandum was disclosed inadvertently and was unrelated to litigation).  VST has no basis to request a subject matter waiver.

## CONCLUSION

For all of the foregoing reasons and those set forth in ScanSoft's previous memorandum in support of its Emergency Motion to Show Cause, ScanSoft respectfully requests that this Court grant that motion and order the relief sought therein.

Dated: June 28, 2005

SCANSOFT, INC.
By its attorneys,

/s/ Jack C. Schecter
Lee Carl Bromberg, BBO # 058480
Robert Asher, BBO # 022865
Lisa M. Fleming, BBO # 546148
Erik Paul Belt, BBO # 558620
Jack C. Schecter, BBO # 652349
Rebecca L. Hanovice, BBO # 660366
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
(617) 443-9292
jschecter@bromsun.com

02639/00509 396188.1

10