# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-10353-PBS |
| ) | |
| VOICE SIGNAL TECHNOLOGIES, INC., ) | |
| LAURENCE S. GILLICK, ROBERT S. ) | |
| ROTH, JONATHAN P. YAMRON, and ) | |
| MANFRED G. GRABHERR, ) | |
| ) | |
| Defendants. ) | |

### ASSENTED-TO MOTION FOR LEAVE TO FILE REPLY IN FURTHER SUPPORT OF MANFRED GRABHERR'S MOTION FOR SUMMARY JUDGMENT

Defendant Manfred Grabherr ("Grabherr") moves, pursuant to Local Rule 7.1(B)(3), for leave to file a short, eleven-page reply further supporting his Motion for Summary Judgment and addressing arguments raised by ScanSoft, Inc. in its Opposition Brief. Grabherr believes that the reply, attached hereto as **Exhibit A**, will aid the Court in its determination of the issues presented in the parties briefs.

3954023v1

WHEREFORE, Grabherr respectfully requests leave of Court to file a reply in the form attached as **Exhibit A**, and for the reply to be deemed filed upon allowance of this motion.

Respectfully submitted,

LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, MANFRED G. GRABHERR and VOICE SIGNAL TECHNOLOGIES, INC.

By their attorneys,


/s/ Wendy S. Plotkin
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Paul E. Bonanno (BBO No. 646838)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, MA  02109
(617) 248-5000


July 6, 2005

### Certification Pursuant to Local Rule 7.1

I certify that counsel for Voice Signal conferred with counsel for ScanSoft in an effort to resolve the issues presented in this motion and that counsel for ScanSoft assented to this motion.

/s/ Wendy S. Plotkin

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC.,<br><br>                    Plaintiff,<br><br>         v.<br><br>VOICE SIGNAL TECHNOLOGIES, INC.,<br>LAURENCE S. GILLICK, ROBERT S. ROTH,<br>JONATHAN P. YAMRON, and<br>MANFRED G. GRABHERR,<br><br>                    Defendants. | C. A. No. 04-10353-PBS |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT MANFRED G. GRABHERR'S MOTION FOR SUMMARY JUDGMENT

ScanSoft's Opposition and recent deposition testimony of senior ScanSoft executives betray the dangerously shifting sands upon which ScanSoft's trade secrets claims lie.

The burden of proof is on ScanSoft to substantiate its claims that Voice Signal Technologies misappropriated and continues to use trade secrets now owned by ScanSoft. In an attempt to evaluate these claims, Voice Signal has repeatedly asked ScanSoft, and ScanSoft has repeatedly failed, to identify the specific methods or techniques that ScanSoft claims were taken and used by Voice Signal. When pressed, ScanSoft merely identified broad categories of speech recognition technology which, it is now undisputed, are not themselves trade secrets.

ScanSoft's Senior Vice-President for Research and Development now admits that ScanSoft is not aware of any ScanSoft trade secret that any defendant has used, or is using. Mr. Grabherr has been deposed. His deposition established that the projects on which he worked

3950062v1

at L&H (a ScanSoft predecessor) were very different from anything on which he worked while employed by Voice Signal.

In its Amended Answers to Interrogatories dated March 1, 2005, ScanSoft identified one product in which, according to ScanSoft, the supposedly misappropriated trade secrets are to be found: Dragon Naturally Speaking. *See* ScanSoft's Response to Interrogatories, No.1 (attached as Ex. A to Popeo Declaration filed with Manfred Grabherr's Motion for Summary Judgment). In reliance on the truthfulness of ScanSoft's sworn interrogatory response, defendant Manfred Grabherr moved for summary judgment. He had never worked for Dragon Systems, had never worked on Dragon Naturally Speaking, and had no access to any Dragon Naturally Speaking development documents or source code.

In response to Mr. Grabherr's motion for summary judgment, ScanSoft reversed field and asserted for the first time that the "misappropriated trade secrets" reside in a completely different product -- VoiceXpress -- and in the "Phoenix" project -- which failed to generate any commercial product. ScanSoft's Amended Answers to Interrogatories mentioned neither product.[2] ScanSoft then shoehorned this new response into the old by asserting that "[t]oday, a number of those trade secrets [from VoiceXpress and the Phoenix project] have been incorporated in ScanSoft's Dragon Naturally Speaking product and continue to be utilized by ScanSoft in its speech recognition research and development efforts." ScanSoft's Opposition, p. 6.

ScanSoft's new assertions should be rejected. First, neither ScanSoft's oft-amended answers to interrogatories nor ScanSoft's Opposition identifies any L&H (or ScanSoft) trade

---

[2] A few days after filing its Opposition, ScanSoft amended its interrogatories -- again under oath -- to add these products.

secret to which Mr. Grabherr was exposed, and which ScanSoft claims is being used by Voice Signal. Second, ScanSoft's Senior Vice President for Research and Development has identified the parts of VoiceXpress that are used in Dragon Naturally Speaking. They are not used by Voice Signal. Third, ScanSoft, and its most senior speech recognition scientist, have failed to correlate anything Dr. Grabherr did, or had access to, at L&H with any product developed by Voice Signal. Finally, documents recently produced by ScanSoft make it crystal clear that ScanSoft knows that Voice Signal has not used any ScanSoft trade secret.[3] Summary judgment should be granted in favor of Dr. Grabherr.

1. **Again, ScanSoft Has Not Particularized Any Trade Secret Alleged To Be Misappropriated.**

ScanSoft's attempt to create an issue of fact by asserting that elements of VoiceXpress and the Phoenix project have been incorporated in ScanSoft's Dragon Naturally Speaking product fails. ScanSoft's Opposition, pp. 3, 6. ScanSoft's Opposition does not identify any "trade secret" that was developed for, or used in, VoiceXpress or Phoenix that has been incorporated in Dragon Naturally Speaking. Nor does it identify a single such trade secret that is found in *any* work Dr. Grabherr (or anyone else) did at Voice Signal. Because ScanSoft has not identified any alleged trade secrets in VoiceXpress and Phoenix that were incorporated in Dragon Naturally Speaking, much less a trade secret that is being used by Voice Signal, it has failed to demonstrate that there is any evidence which, if believed, would support its claim that Mr. Grabherr misappropriated a ScanSoft trade secret.

In its Opposition to the Grabherr motion for summary judgment, ScanSoft relies on its Complaint and the Affidavit of William F. Ganong, III. The Complaint is manifestly insufficient

---

[3] ScanSoft's contention that "there has not been adequate time for discovery" and that Voice Signal or Dr. Grabherr have failed to produce documents should be rejected. Voice Signal has produced to ScanSoft's counsel all documents to ScanSoft relating to Dr. Grabherr's work during his first year of employment at Voice Signal and ScanSoft took Dr. Grabherr's deposition on June 16, 2005.

to defeat a motion for summary judgment. *See Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 39 (1st Cir. 2004) ("bare allegations in a party's unsworn pleadings or in a lawyer's brief do not carry weight in the summary judgment calculus"). The Ganong affidavit is no better.

Mr. Ganong, a current ScanSoft employee, states that he worked with Dr. Grabherr at L&H, and that

> some of the trade secrets that Mr. Grabherr had access to at L&H, including speech recognition architecture and algorithms for recognizing commands implemented in the VoiceXpress product and further utilized in the 'Phoenix' project, are today incorporated in ScanSoft's Dragon Naturally Speaking.

Ganong Decl., ¶ 6. "Speech recognition architecture" and "algorithms for recognizing commands" are broad categories of generic features of some speech recognition technology. The use of speech recognition architecture and algorithms is not a trade secret. Particular architectures or algorithms might be trade secrets, but none is mentioned. Furthermore, Dr. Ganong does not identify any feature of VoiceXpress or Phoenix (a) that made its way into Dragon Naturally Speaking, (b) was used by Mr. Grabherr at Voice Signal or (c) is otherwise being used by Voice Signal. Dr. Grabherr should not be subjected to the continued expense, inconvenience and harm to his considerable reputation by this litigation based on ScanSoft's shifting, but always vague, allegations. ScanSoft simply has not created a genuine issue of material fact. Summary judgment should be granted dismissing all claims against Mr. Grabherr.

   2.   **The Testimony of ScanSoft's Senior Vice President for Research and Development Demonstrates that ScanSoft's Claims are Unfounded.**

On June 15, 2005, Voice Signal took the deposition of Jeanne McCann, ScanSoft's Senior Vice President for Research and Development. Ms. McCann acknowledged that she could not identify any trade secret that any of the individual defendants used, or is using, at

Voice Signal. McCann Dep., pp. 50-51. Ms. McCann did identify three elements of VoiceXpress that were incorporated in Dragon Naturally Speaking. McCann Dep., p. 33. None is used by Voice Signal.

First, Ms. McCann identified ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ McCann Dep., pp. 34-35. Voice Signal's products do not include a feature of this type. McCann Dep., pp. 34-35; Declaration of Dan Roth ("Roth Decl."), ¶ 2.

Second, Ms. McCann said that ████████████████████████████████████ ████████████ developed for Voice Xpress has since been included in Dragon Naturally Speaking. Once a personal computer-based dictation product, like VoiceXpress or Dragon Naturally Speaking, "recognizes" a command -- e.g., "go to the bottom of the document" -- the recognizer must interact with word processing software or other PC-based software so as to cause that command to be executed. Natural language command and control software takes a previously-recognized command and implements it by sending messages to the word processing or other PC-based software in the form required by that PC-based software. Ms. McCann explained that natural language command and control software is:



\* \* \*

\* \* \*



McCann Dep., pp. 35-37.

Voice Signal's products do not run on a PC, cannot recognize commands while in dictation mode, and do interface with any of the applications that Ms. McCann listed or any other PC-based software. Roth Decl., ¶ 4.

Third, Ms. McCann testified that recordings of human speech used in VoiceXpress to create the speech models were added to the existing Dragon Naturally Speaking recorded data. McCann Dep., pp. 37-39. There is no allegation that Dr. Grabherr had access to, took with him, or that Voice Signal is using, recorded speech data that was generated for use in VoiceXpress or Dragon Naturally Speaking.

In short, the testimony of ScanSoft's Senior Vice President for Research and Development, completely undercuts ScanSoft's position.

### 3. ScanSoft Cannot Correlate Anything In Its Alleged "Trade Secrets" Or Its Products To Voice Signal's Products.

ScanSoft's Opposition grossly misrepresents the nature of L&H's work compared to Voice Signal's work. It states that Dr. Grabherr worked at L&H on the Phoenix project whose purpose was to "optimize[ ] large vocabulary speech recognition [*i.e.*, VoiceXpress] for use in small platforms such as hand-held PDAs and cell phones," suggesting that there is a similarity between L&H's work and Voice Signal's products.

In fact, it is undisputed that L&H's VoiceXpress product was designed to run on a full size, desktop computer. It required a 166 MHz Pentium processor, 130 megabytes of hard disk

memory (ROM), and 48 megabytes of RAM. Supp. Grabherr Decl., ¶ 3.[6] It required a Windows 98 Operating System. It was a *continuous speech*[7] dictation system that could simultaneously take dictation and respond to editing commands. Supp. Grabherr Decl., ¶ 3. It was never intended, and could not, operate on a low-processing-power, small memory device, like a cell phone. Quite the contrary, during Dr. Grabherr's employment by L&H, VoiceXpress was designed to run on the most powerful state-of-the-art PCs available. One of Dr. Grabherr's tasks while working on Voice Xpress was to exploit the increasing processing power and memory available on these high-end computers. (Grabherr Dep., p. 62, ll 3-12: ███████████ ███████████████████████████████████████████████████████ ███████████████████████████████). This is precisely the opposite problem presented when designing a voice recognition system for the spartan memory and limited processing power environment of a cell phone.

The purpose of L&H's Phoenix project was to streamline parts of VoiceXpress so that dictation on a "smaller" platform -- *i.e.*, smaller than a full-size, desk-top personal computer -- could be demonstrated. The project never achieved its goal. During the time Dr. Grabherr worked for L&H, L&H was unable to run its system on a hand-held computer. The system was not conceived to run on, and never did run on, a cell phone or PDA. In fact, when demonstrating the Phoenix system in public, L&H used a PC (hidden off stage) to run the system and then employed a wireless connection to display the recognition results on a hand-held. *Id.*, ¶ 5. Phoenix software required more than fifteen times the processing power and memory of the

---

[6] Dragon Naturally Speaking was developed at Dragon. It required a 500 MHz Pentium III processor and needed 500 megabytes of ROM and 256 megabytes of RAM. It was designed to operate on Windows XP operating system.

[7] Continuous speech recognition does not require pauses between spoken words and is contrasted to discrete speech recognition, which does.

largest Voice Signal product. It required a LINUX operating system, and the file storage and hard drive of a desk top computer. *Id.*, ¶ 5. None of those resources are available on a cell phone.

By contrast, Voice Signal's products either allow voice dialing or *discrete speech* dictation on a cell phone. VoiceXpress or Phoenix did not allow voice dialing, did not use discrete speech dictation and did not operate on a cell phone, or anything like a cell phone. Voice Signal's products were developed from inception to run in the ultra small processing power and memory environment of a mobile phone. Instead of a Pentium-class processor, they require only a 37MHz, (battery-operated) processor used in cell phones. In its largest form, configured for discrete dictation of text messages on a cell phone, the Voice Signal product requires only 1.5 megabytes of ROM and only 1 megabyte of RAM. It does interact with an operating system. *Id.*, ¶ 4.

4.  **ScanSoft's Own Documents Reveal That (1) It Does Not Have A Mobile Handset Speech Recognition Product; and (2) It Concluded (Prior to Initiating This Lawsuit) There Is No Similarity Between ScanSoft's Work And Voice Signal's Work.**

Dr. Grabherr left L&H in the Spring of 2000. To this day, ScanSoft, with its vast resources (and, of course, plenary access to all of ScanSoft's, L&H's and Dragon's trade secrets) has been unable to develop a speech recognizer for use on mobile handsets. As of January 9, 2004, shortly before commencing this action, Alan Schwartz, the most senior executive of ScanSoft's "embedded" business, wrote to his "Senior Team" stating:



\* \* \*



\* \* \*

Ex. C to Plotkin Declaration, SS020570.

Furthermore, ScanSoft's engineering personnel evaluated Voice Signal's speech recognition engine for mobile handsets. The result, as of June 2003:



Ex. D to Plotkin Declaration, SS 020182 (emphasis added).

In the face of these damning e-mails authored by senior management and scientific personnel, ScanSoft announces, in its Opposition (p. 4), that "most recently, Samsung unveiled its p207 mobile phone which contains speech-to-text input technology provided by VST that Dr. Grabherr developed and directed during his employment with L&H" -- a proposition for which there is no record support whatever.

ScanSoft has the burden of proof. It cannot defeat a motion for summary judgment by relying on unsupported general allegations. Dr. Grabherr had no access to, and did not work on, Dragon Naturally Speaking, the product that allegedly includes ScanSoft's trade secrets. Voice Signal uses nothing that was included in VoiceXpress (on which Mr. Grabherr did work) and later transported into Dragon Naturally Speaking. ScanSoft's internal memoranda demonstrate

that ScanSoft believes that Voice Signal's product is "a completely different engine" from *anything* ScanSoft owned or has developed -- even four years after Dr. Grabherr left L&H. The generalized allegations upon which ScanSoft now relies simply fail to create a genuine issue of material fact.

Finally, if, contrary to the all of the above, the Court is not prepared to grant summary judgment, it should, at least, compel ScanSoft to identify the particular trade secret(s) that it asserts (or even suspects) Mr. Grabherr disclosed to, or used for, Voice Signal, so that Voice Signal may meet ScanSoft's allegations head-on and a court-appointed expert may determine whether there is any plausible basis for ScanSoft's allegation.

## CONCLUSION

Summary Judgment should be granted dismissing ScanSoft's trade secret misappropriation claims against Dr. Grabherr. In the alternative, ScanSoft should be given a last opportunity to identify the specific trade secrets that it contends were misappropriated by Mr. Grabherr so that Voice Signal and Mr. Grabherr may demonstrate that any such specific claim is baseless.

Respectfully submitted,

LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, MANFRED G. GRABHERR and VOICE SIGNAL TECHNOLOGIES, INC.

By their attorneys,

/s/ Wendy S. Plotkin
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Paul E. Bonanno (BBO No. 646838)
CHOATE, HALL & STEWART LLP
Exchange Place
53 State Street
Boston, MA  02109
(617) 248-5000

Dated: July 6, 2005