# Exhibit A

Case 1:04-cv-10353-PBS    Document 248-2    Filed 07/06/2005    Page 1 of 7

3948424_1.DOC

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C. A. No. 04-10353-PBS |
| VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR, | ) ) ) ) ) |
| Defendants. | ) ) |

**VOICE SIGNAL TECHNOLOGIES'
SUPPLEMENTAL MEMORANDUM REGARDING
CONSTRUCTION OF U. S. PATENT NO. 6,501,966**

This memorandum calls to the Court's attention a decision of the United States Court of Appeals for the Federal Circuit that was rendered after the filing of the principal briefs regarding the construction of the claims of U.S. Patent No. 6,501,966.

In *Boss Control, Inc. v. Bombardier, Inc.*, 2005 WL 1342908 (Fed. Cir., June 8, 2005), the relevant claim required an "interrupt system" that was "operative to interrupt [electrical] power." The patentee argued that the words of the claim covered any device that "shut or cut off" power. The defendant asserted that the specification "distinguishes between simple on-off interruption of electrical power and interruption of electrical power that occurs in two stages," and that the claim covered only devices that cut off power in two stages. The court held that "[b]ecause the specification makes clear that the invention involves a two-stage interrupt mode, the intrinsic evidence binds Boss [the

patentee] to a narrower definition of 'interrupt' than the extrinsic evidence [in the form of dictionary definitions] might support." *Id.* at *5. In reaching that conclusion, the court examined the "Background of the Invention," and the "Summary of the Invention" portions of the specification, each of which, it said, "distinguishes between simple on-off interruption of electrical power and interruption that occurs in two stages." *Id.* at *4. The court then analyzed the embodiments disclosed in the "Detailed Description of the Invention." It said:

> [W]hile it is of course improper to limit the claims to the particular preferred embodiments described in the specification, the patentee's choice of preferred embodiments can shed light on the intended scope of the claims.

quoting *Astrazeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004).[1] The court held the description of the preferred embodiments "confirms that, in the context of the invention, interruption of power to an electrical device involves two stages," and that the claim did not encompass a simple on-off device. *Id.* The court concluded that the dictionary definition of the words of the claim did not "overcome" the usage of the term "interrupt" (which was not expressly defined) in the patent's written description. *Id.* at *5.

This case presents an *a fortiori* application of *Boss Control*. In *Boss Control*, the claim language, if separated from the description of the invention, unmistakably

---

[1] *Astrazeneca* contains a thoughtful discussion of claim construction principles by a Federal Circuit panel that was entirely separate from the panel that decided *Boss Contro*l. *Astrazeneca*, in turn, quotes the following helpful guidance contained in *Alloc. Inc. v. Int'l. Trade Comm'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003): "[T]his court recognizes that it must interpret the claims in light of the specification, yet avoid impermissibly importing limitations from the specification. That balance turns on how the specification characterizes the claimed invention. In this respect, this court looks to whether the specification refers to a limitation only as a part of less than all possible embodiments or whether the specification read as a whole suggests that the very character of the invention requires the limitation to be a part of every embodiment." *Astrazeneca,* 384 F.3d at 1337, n.2.

encompassed a simple on-off device.  In the case at bar, by contrast, there is no dictionary definition or settled meaning of the term "mobile telecommunication system," or the phrase "a speech recognition method *for* a mobile telecommunication system."  These words derive meaning from the context in which they are used.

Voice Signal's expert, Charles Wooters, states that a "mobile telecommunications system" is that which connects and transmits telephone calls (*e.g.*, Verizon Wireless).  He cites a definition in the '966 patent itself (3:35-38: "A cellular mobile telecommunications system connects mobile telecommunications, each having a mobile unit, to land-based customers served by a telephone network.").  Dr. Wooters states that "this definition does not treat a single 'mobile unit' (cell phone) as a mobile telecommunication system or as part of such a system."  Wooters Decl., ¶¶ 21, 42.  ScanSoft's expert, Bruce Ballentine, disagrees (Ballentine Decl., ¶¶ 63, 74),  but he does not address the definitional language in the specification.

Voice Signal is filing herewith an Affidavit of James McArdle, a telecommunications industry expert, who states that speech recognition software embedded in a mobile handset is a "local" application.  It is not, and it does not implement, a speech recognition method for a mobile telecommunications system.  It does not provide a service offered by a network, is not accessed over a network, is not integrated with network equipment, and does not use, or interact with, any network resource.  It operates outside of any network.  Exhibit 1, McArdle Aff., ¶ 3.

There is a no disagreement among the experts as to certain facts.  Speech recognition software embedded in a cell phone merely interprets a user's spoken words and, based on that interpretation, instructs that individual cell phone's dialing mechanism.

Its activities are completed before any telephone number is dialed. Dialing, and all activity that thereafter takes place over the network, is entirely conventional. The speech recognition software embedded in a cell phone operates independently of any network. Wooters Decl., ¶ 22; McArdle Aff. ¶ 3.

In this context, unlike *Boss Control*, it requires an extraordinary linguistic stretch to construe the words of the claim -- "a speech recognition method *for* a mobile telecommunications *system"* -- as including speech recognition software that is internal to, and only affects the operation of, a single cell phone. Indeed, as noted in Voice Signal's Markman briefs, the inventor, Thomas Schalk, a ScanSoft consultant, was unwilling to accept such an interpretation.

However, this case is like *Boss Control* because the written description of the patent describes "the very character of the invention." It is a speech recognition system that is integrated with the wireless telecommunications network infrastructure, operated by the network, and accessible to all users of the network. The Background of the Invention states that cellular voice dialing *over* a mobile telecommunications exchange presents problems that are different from those encountered in other "telephone-based speech recognition systems," because, *inter alia*, "the signal may be band-limited and degraded in transmission to the MTX where the recognition system will be located." (1:32-34.)

The Summary of the Invention states that the patent describes a "speech recognition system for use at" a mobile telephone exchange of a non-wireline network. (1:48-50.) It explains that "the placement of the speech recognition system at the MTX significantly reduces cost and increases reliability." (1:51-52.) It teaches that the

invention is "an advanced system for recognizing spoken commands *over* the . . . [non-wireline] network" (1:67-2:2), and "allows for increased efficiency . . . by integrating with the switch or switches as a shared resource." (2:10-12.)

The embodiments of the invention -- Fig. 1 (describing a speech recognition system that is an external peripheral hardwired to a cellular switch), Fig. 2 (describing a speech recognition system that is interconnected internally to a switch), and Fig. 5 (describing a centrally-located speech recognition system that receives commands over the network and must distinguish individual cell phones one from another to operate) -- all "shed [further] light on the intended scope of the claims." *Boss Control*, *supra*. The "invention" is described as a service provided by the network (*e.g.*, 6:9-10), and users are called "subscribers." (*e.g.,* 8:58.) The stated advantages of the invention are those of a shared resource that interprets dialing instructions that are broadcast over the network and interpreted by a network resource. (11:24-61.)

There is no broadening language anywhere in the specification that suggests that voice recognition software in a single cell phone -- which would not address the objectives of the invention, does not have the characteristics of the invention, and could not have the advantages of the invention -- is encompassed within the invention.

Paraphrasing *Boss Control*, "because the specification makes clear that the invention involves" a speech recognition system that is integrated with network infrastructure, interprets speech that is transmitted over the network, and is a service that is available to all users of a network, the intrinsic evidence binds ScanSoft "to a narrower definition" of the phrase "a speech recognition method for a mobile telecommunication

system" than ScanSoft would ascribe to those words.[2]  The claim language may relax the precise location of the speech recognition method (for example, it need not be internal to the network switch), but it should not be interpreted to alter the basic character of the invention.  Claim construction is not a mindless exercise in which claim terms interpreted without regard to the invention described in the rest of the patent.

One final comment.  In rebuttal at the Markman Hearing, and in circumstances where there was no opportunity to respond, ScanSoft used a visual that quoted the claim phrase "a speech recognition method for a mobile telecommunication system."  It then characterized Voice Signal as adding to that phrase the words "except in a handset."  ScanSoft's visual assumed the conclusion.  The relevant question is whether the phrase "a speech recognition method *for* a mobile telecommunications system" encompasses voice recognition software in a single handset in the first place.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,

/s/ Paul E. Bonanno
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Paul E. Bonanno (BBO No. 646838)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, MA  02109
(617) 248-5000

Dated:  July 6, 2005

---

[2] Voice Signal does not suggest that the Federal Circuit's claim construction decisions are all reconcilable with one another.  At the end of the day, however, the purpose of the written description of a patent is to describe the invention.  The claims are designed to capture, in summary form, that which the applicant has invented.  The two should be reasonably related to each other.