**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SCANSOFT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C. A. No. 04-10353-PBS |
| | ) |
| VOICE SIGNAL TECHNOLOGIES, INC., | ) |
| LAURENCE S. GILLICK, ROBERT S. | ) |
| ROTH, JONATHAN P. YAMRON, and | ) |
| MANFRED G. GRABHERR, | ) |
| | ) |
| Defendants. | ) |

**VOICE SIGNAL TECHNOLOGIES' MEMORANDUM IN OPPOSITION
TO SCANSOFT'S MOTION TO COMPEL DEPOSITIONS OF
LAWRENCE R. GILLICK, ROBERT S. ROTH, AND JONATHAN P. YAMRON**

Voice Signal Technologies, Inc. ("Voice Signal") submits this memorandum in opposition to ScanSoft, Inc.'s ("ScanSoft") Motion to Compel. On June 17, 2005, the Court established the process that the parties are to follow with respect to further trade secret discovery. A neutral expert will compare the parties' source code and advise the Court whether there is any evidence of trade secret misappropriation. If there is a basis to support a trade secret claim, the Court will tailor discovery to that claim. If there is no basis for a claim, further trade secret discovery will not be permitted (or will be subject to constraints determined by the Court.)

ScanSoft now proceeds as though none of this had happened. It moves to compel the depositions of three Voice Signal speech scientists on the subject of trade secret misappropriation -- prior to the neutral expert review ordered by the Court -- to fish for

evidence in support of its trade secret misappropriation claim and, in the process, to obtain Voice Signal's trade secret information. The Motion should be denied.

## BACKGROUND

From the outset of this case, ScanSoft has attempted to obtain access to Voice Signal's trade secrets, including its source code. ScanSoft's first stated reason was that it needed to determine whether Voice Signal infringed ScanSoft's U.S. Patent No. 6,501,966. As the *Markman* hearing and associated briefing in this case has made clear, ScanSoft's assertion was a pretext. The '966 patent has nothing to do with the way in which verbal statements are "recognized" by a speech recognition system. Source code is utterly irrelevant to the question of infringement.

As a second try, ScanSoft asserted that it needed to pore over Voice Signal's source code to see if it could find a ScanSoft trade secret somewhere in that source code. Voice Signal stated that ScanSoft should identify the trade secret(s) that ScanSoft plausibly believes was misappropriated before it is allowed access to Voice Signal's trade secrets so that discovery may be tailored to ScanSoft's actual claim. On multiple occasions, ScanSoft has failed to identify any trade secret that ScanSoft claims was taken or used by Voice Signal. It merely identified broad categories of speech recognition which, it is now undisputed, are not themselves trade secrets.

Discovery has now revealed that ScanSoft's trade secret claim is believed by ScanSoft to be baseless. ScanSoft's Senior Vice-President for Research and Development admitted, under oath, that ScanSoft is not aware of any ScanSoft trade secret that any defendant has used, or is using.[1] And, documents recently produced by

---

[1] On June 15, 2005, Voice Signal took the deposition of Jeanne McCann, ScanSoft's Senior Vice President for Research and Development. Ms. McCann acknowledged that she could not identify any trade secret

2

ScanSoft make clear that ScanSoft knows that Voice Signal has not used any ScanSoft trade secret. These documents contain an analysis of Voice Signal's products by ScanSoft's most knowledgeable scientific personnel. These key scientific personnel concluded that Voice Signal's product was "totally different from any of the [speech recognition] engines we have today and would require a new development." Plotkin Aff., Ex. A at SS020267. Voice Signal's product, ScanSoft's scientists concluded, "looks like a completely different beast" from any ScanSoft product. Plotkin Aff., Ex. B at SS020583.

In sum, (1) ScanSoft cannot identify any trade secret that it alleges was misappropriated; (2) ScanSoft's own internal analysis concluded that Voice Signal's products reflect new development that is separate from any ScanSoft technology; (3) ScanSoft has no reasonable expectation of finding a ScanSoft trade secret in Voice Signal's source code, or by discovery of Voice Signal's scientists. ScanSoft would, of course, be anxious to obtain access to Voice Signal trade secrets that could teach it how to achieve results and developed products, that ScanSoft has been unable to achieve and develop by its own efforts.[2]

Against this background, the Court constructed a process to evaluate ScanSoft's trade secret claim before further trade secret discovery is permitted. ScanSoft's Motion seeks to by-pass this Court-ordered process. It should be denied.

---

that any of the individual defendants used, or is using, at Voice Signal. McCann Dep., pp. 50-51 (See Ex. B to Declaration of Wendy S. Plotkin filed on July 6, 2005). This testimony completely undercuts ScanSoft's claim that any defendant stole any ScanSoft trade secret.

[2] A document recently filed in Court by ScanSoft reveals a separate, important motivation for ScanSoft's continuing request for access to Voice Signal's source code. ScanSoft wishes to use discovery in this case to see if it can generate some other claim against Voice Signal. That is improper. *See* Memorandum in Opposition to ScanSoft's Emergency Motion to Show Cause, Docket No. 214, p.11-12.

## ARGUMENT

The relief requested in ScanSoft's Motion directly conflicts with the trade secret discovery plan ordered by the Court. On June 17, 2005, the parties appeared before Judge Saris for a *Markman* hearing. During the hearing, the Court resolved a long-running dispute between the parties concerning the proper management of discovery regarding ScanSoft's trade secret misappropriation claim. The Court ordered the parties to propose a neutral expert who would be appointed by the Court to compare the source code from ScanSoft's Dragon Naturally Speaking product with the source code of Voice Signal's product to determine whether there is any plausible basis for ScanSoft's allegation of trade secret misappropriation.

If, after neutral expert evaluation, the Court determines that there is a basis to ScanSoft's claim, trade secret discovery will be appropriately tailored to that claim. If the Court determines that there is no basis for ScanSoft's trade secret claim, discovery related to that claim will terminate. ("The independent expert will go through and see whether there are any trade secrets [in the source code], and then provide either a good-faith belief or a nongood-faith belief…that there ha[s] been some theft of trade secrets". Transcript p. 11.)

The Court scheduled a July 18, 2005 hearing to determine the parties' progress in selecting a neutral expert, and indicated it would fashion a discovery schedule at that time. The Court initially stayed all discovery between the parties until the July 18, 2005 hearing. ScanSoft than asserted (inaccurately) that certain depositions were "scheduled right now [to occur before July 18.]" ScanSoft did not disclose that the "scheduled"

depositions related to its trade secret claim. The Court responded that "if they have been prescheduled, then do them". Transcript p. 11.

ScanSoft now asserts that "at the *Markman* hearing, this Court instructed that depositions already noticed should be conducted". Motion p. 1. That is false. The Court's remarks concerned "pre-scheduled" depositions. No deposition had been scheduled by the parties as of the date of the *Markman* hearing. At that time, fourteen depositions had been noticed (but not yet scheduled) collectively by the parties. ScanSoft takes the contorted (and self-serving) position that the Court's remarks concerning "scheduled" depositions applies instead to "noticed" depositions -- but only to depositions noticed by ScanSoft, and only for witnesses who ScanSoft accuses of misappropriating trade secrets – *i.e..,* discovery targeting the very claim the Court had just determined would be subject to review by a neutral expert *before* further discovery could proceed.

ScanSoft's argument is meritless. If it is credited, the entire purpose for the appointment of the neutral expert ordered by the Court will be obviated. The Court outlined a process for a neutral expert to compare the parties' source code so that the Court could make an informed determination either to (a) prohibit further discovery or (b) tailor discovery to the evidence disclosed by the neutral expert review.

ScanSoft argues that if its Motion is not granted, the depositions it seeks could be delayed "indefinitely". Motion p. 4. ScanSoft's desire for trade secret discovery before the Court has an opportunity to address this issue again on July 18, 2005 has nothing to do with its supposed concern for a drawn-out discovery schedule. Instead, ScanSoft wants to conduct these depositions now because it is concerned that the Court will

prohibit them entirely.  Voice Signal is confident that any comparison by a neutral expert of the parties' source code will reveal that there is absolutely no basis to ScanSoft's trade secret misappropriation claim, and ScanSoft's discovery efforts are merely an effort to obtain access to Voice Signal's trade secrets.  ScanSoft apparently shares the same view.  It is racing to conduct the depositions of Voice Signal's most knowledgeable speech scientists before the procedure established by the Court is implemented.  The Motion to Compel should be denied.

## CONCLUSION

For the forgoing reasons, ScanSoft's Motion to Compel Depositions of Lawrence R. Gillick, Robert S. Roth and Jonathan P. Yamron should be denied.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,

/s/ Wendy S. Plotkin
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Paul E. Bonanno (BBO No. 646838)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, MA  02109
(617) 248-5000

Dated:  July 8, 2005
3954856_1.DOC