UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC., )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>VOICE SIGNAL TECHNOLOGIES, INC., )<br>LAURENCE S. GILLICK, ROBERT S. )<br>ROTH, JONATHAN P. YAMRON, and )<br>MANFRED G. GRABHERR, )<br>)<br>Defendants )<br>) | C.A. No. 04-10353-PBS |

**SCANSOFT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
RECONSIDERATION OF COURT'S NEUTRAL EXPERT PROCEDURE**

Lee Carl Bromberg, BBO # 058480
Robert Asher, BBO # 022865
Erik Paul Belt, BBO # 558620
Lisa M. Fleming, BBO # 546148
Jack C. Schecter, BBO # 652349
Rebecca L. Hanovice, BBO # 660366
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
(617) 443-9292

*Attorneys for Plaintiff*

July 1, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., <br><br> Plaintiff <br><br> v. <br><br> VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR, <br><br> Defendants | C.A. No. 04-10353-PBS |

## SCANSOFT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF COURT'S NEUTRAL EXPERT PROCEDURE

At the *Markman* hearing, this Court adopted VST's proposal to submit the source code discovery logjam to a neutral expert. But that procedure deprives ScanSoft of its Seventh Amendment right to a jury. In effect, this Court is leaving it to the expert, not to a jury, to find facts showing whether VST and the individual defendants have used ScanSoft's trade secrets in developing VST's speech recognition engine source code. This Court is also leaving it to the neutral expert to find evidence regarding ScanSoft's alleged infringement of VST's counter-claim patent. But ScanSoft is entitled to see the evidence and have a jury determine both counts.

This Court may be motivated to use a neutral expert to help it understand complex technology and thus whether ScanSoft can make a threshold showing of misappropriation before this Court releases the source code. But a threshold showing is not the standard for allowing discovery–even for discovery of the most highly sensitive, most jealously guarded information. Rather, relevance to the parties' claims and defenses is the only showing that must be made. The

source code is relevant to ScanSoft's claims: it very likely contains the trade secret algorithms, statistical models, and other proprietary technologies that ScanSoft's predecessors were researching and developing when the individual defendants (Roth, Gillick, Yamron, and Grabherr) left their employ and went to work for VST.

If, however, this Court requires some threshold showing of trade secrets theft <u>before</u> it will allow delivery of the source code, then ScanSoft can easily make that showing now, in these pages, from the discovery already taken. What little discovery ScanSoft has managed to pry from VST shows that the defendants used ScanSoft's confidential speech recognition research and development results in the creation of VST's "ELVIS" speech recognition engine.

ScanSoft understands that this Court is trying to deal fairly with the problem of how to control the exchange of sensitive documents between competitors. But forcing ScanSoft to first prove to a non-constitutional fact finder that there has been a theft of trade secrets <u>before</u> the source code is delivered is not the proper way to solve the problem. This solution creates more problems than it solves. In particular, it abets VST's stonewalling and unfairly adds to the cost and burden of this litigation. Indeed, this Court admitted that the use of a neutral expert "will create some delay." **Exh. 1**, *Markman* Hearing Trans. at 101, *ll.* 15-19. Fortunately, a means for solving the problem is already in place. The unredacted source code and other sensitive materials can be labeled "Highly Confidential" under the Protective Order. This designation limits disclosure of the materials to outside counsel and to ScanSoft's independent technical expert. ScanSoft's counsel, Bromberg & Sunstein LLP, has already demonstrated its respect for the Protective Order, returning documents mistakenly delivered to it by VST's counsel.

Accordingly, ScanSoft objects to the use of a neutral expert. This Court should instead order production of the source code and other requested documents, under the terms of the

2

Protective Order, and leave it to the advocates and their witnesses to prove or disprove the claims.

I.   **SUBMISSION TO A NEUTRAL EXPERT VIOLATES SCANSOFT'S RIGHT TO A JURY**

At the *Markman* hearing on June 17, 2005, this Court instructed the parties to entrust the threshold determination of trade secret theft and patent infringement to a neutral expert. For example, this Court explained that the expert will determine, in the first instance, whether there are trade secrets:

> . . . but assume for a minute that the independent expert says, "There's no trade secret here. They've told us about the source code. Don't worry about it, there's nothing here that's related to it," or contrarily that "Yes, there is," the question that I have is, would that move you closer to settlement?

**Exh. 1**, Hearing Transcript (excerpts) at 97, *ll.* 14-19. *See also id.* at 11, *ll.* 13-18 ("The independent expert will go through and see whether there are any trade secrets that are reflected that would show [copying of ScanSoft's source code] . . .").

This Court also is leaving to the neutral expert the task of determining whether VST can make out a claim for infringement of the '630 patent. *See id.* at 11, *ll.* 23-25 ("the expert will have to figure out from [ScanSoft's] source code whether there's been an infringement or not").

As a matter of law, ScanSoft is entitled to prove trade secrets theft, in the first instance, to a jury. *Data General Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 340, 359-361 (D.Mass. 1993) (Skinner, J.) (jury decided trade secret claims); *see also Control Center, L.L.C. v. Lauer*, 288 B.R. 269, 278 (M.D. Fla. 2002) ("action seeking damages for the misappropriation of Control Center's trade secrets is clearly legal in nature" and, as such, plaintiff has a Seventh Amendment right to a jury trial); *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp.2d 182, 192, n.11

(S.D.N.Y. 2002) ("the legal nature of a trade secret misappropriation claim is also evident from the right to a jury trial in these actions").

ScanSoft is also entitled to have a jury decide whether it infringes VST's counter-claim patent ("the '630 patent"). *See Markman v. Westview Instruments,* 517 U.S. 370, 377 (1996) ("there is no dispute that infringement cases today must be tried to a jury"). Indeed, ScanSoft is entitled to have VST meet its burden of proving infringement to a jury, not simply to an expert.

This Court noted that the expert's opinion on trade secrets "is not the final say." **Exh. 1,** Hearing Transcript (excerpts) at 96, *ll.* 7-8. But in effect, the expert will have the final say and thus will be the judge and jury. For example, if the expert opines that there are no trade secrets strictly from looking at the source code, then this Court will likely adopt that opinion and will not allow discovery. That decision, in turn, will have the effect of stifling ScanSoft's claim before trial, before a constitutional decision-maker has heard all of the facts.

Forcing ScanSoft to first prove its case to a non-constitutional fact finder (even if the expert is truly neutral) deprives ScanSoft of that right. Accordingly, this Court should affirm the means already in place for controlling the exchange of the sensitive information (*i.e.*, the Protective Order). ScanSoft, however, objects to any procedure that forces it to (a) first prove its claim before getting the documents it needs to complete that proof and (b) prove its claim in the first instance to a non-constitutional fact finder.[1]

---

[1] In arguing that ScanSoft is entitled to a jury, ScanSoft is not conceding, one way or the other, that summary judgment would be inappropriate. It may be that there will be no material disputes of fact after completion of discovery. But the rules of civil procedure allow the parties to engage in meaningful discovery before making that determination.

## II. WHILE NOT REQUIRED, SCANSOFT CAN MAKE A THRESHOLD SHOWING

### A. ScanSoft Is Not Required to Prove the Existence of Trade Secrets Before It Can Receive the Source Code

This Court is apparently requiring ScanSoft to make a higher, threshold showing of trade secrets theft before allowing discovery of the source code. But a party seeking discovery need show only that the requested information is relevant to the party's claims and defenses. Fed. R. Civ. P. 26(b)(1); *Campbell v. U.S.*, 167 F. Supp.2d 440, 448 (D.Mass. 2001)(Gorton, J.). Here, the source code is relevant to ScanSoft's claims, as stated in its Amended Complain.

ScanSoft alleges that its predecessors, Lernout & Hauspie ("L&H") and Dragon Systems, Inc., were working on highly confidential speech recognition technology research and development projects, including the "NAK" project, the "Manhattan" project, and the "Phoenix" project. Amended Complaint [D.N. 20] at ¶ 28. The individual defendants–Gillick, Roth, Yamron, and Grabherr–were all speech recognition scientists working for L&H and/or Dragon. They all had access to the intimate details of these R&D projects and had agreed to keep the projects confidential. *Id.* at ¶¶ 24-27. All four scientists left L&H in early 2001 and joined VST. Shortly after they started at VST, VST introduced the "ELVIS" speech recognition engine. ScanSoft believes that ELVIS incorporates the proprietary technologies that the scientists had developed at L&H and Dragon, which are now embedded in ScanSoft's own speech recognition products. Indeed, there is no way that VST could have introduced ELVIS so soon after the four scientists joined VST, if at all, unless the scientists misappropriated the trade secrets. *Id.* at ¶¶ 30-32. The source code for VST's speech recognition engine will thus bear the marks of ScanSoft's trade secrets.

Given that the standard is merely relevance, a party is not required first to prove its case or to make some higher threshold showing before gaining access to the discoverable information.

*See ITT Electro-Optical Prods. Div. of ITT Corp. v. Elec. Tech. Corp., et al.,* 161 F.R.D. 228, 231 (D.Mass. 1995) (Neiman, MJ) ("if relevancy and need are shown, the trade secrets should be disclosed"); *Upjohn Co. v. Hygieia Biological Labs.,* 151 F.R.D. 355, 358-59 (E.D. Cal. 1993) (party seeking competitor's highly sensitive technical documents required to show relevance, which is broadly construed in discovery disputes). But that is exactly what this Court is requiring ScanSoft to do: to first prove to a neutral expert there is a good faith basis for the trade secrets claim. That procedure violates all notions of discovery under the Federal Rules.

### B. ScanSoft Has a Factual Basis for Its Trade Secret Claims

As demonstrated above, ScanSoft should not be required to meet a higher standard before receiving the source code. If, however, this Court requires a higher threshold showing–*i.e.*, that ScanSoft has a factual basis for its claim that VST has misappropriated trade secrets–then ScanSoft can meet that threshold now.

A case of trade secrets misappropriation depends on all of the relevant evidence–not merely one source of relevant information. *Data General* at 359-361 (existence of trade secret depends on "a number of factors, including the nature of the information and the conduct of the parties"). The circumstances in this case, gleaned from the limited discovery to date, confirm that Defendants Gillick, Roth, Yamron, and Grabherr regularly communicated with each other after leaving ScanSoft's predecessors, L&H and Dragon, and disclosed confidential and proprietary information from those companies concerning speech recognition strategies, processes, algorithms, and methods for benchmarking these technologies. The defendants had access to ScanSoft's speech recognition technology secrets and used it when developing VST's "ELVIS" speech recognition engine. Indeed, defendants introduced ELVIS in a suspiciously short time after joining VST. *See* Amended Complaint at ¶ 30 and Exhibit E to that complaint.

6

Based on documents produced and deposition testimony taken so far, ScanSoft can show the following evidence of trade secrets theft:

- In February 2001, only days after Yamron and Roth joined Gillick and Grabherr at VST, Gillick e-mailed the others about the way his former employer, Dragon, tackled certain challenges related to speech recognition. *See* **Exh. 2,** document entitled "ideas.txt," dated Sept. 26, 2001 ("Need to produce a memo describing this problem...This was the DDWin [Dragon Dictate] approach") (emphasis added).

- Other VST documents show that the defendants discussed Dragon secrets about its language models, programming strategies, and other speech recognition strategies. *See, e.g.,* **Exh. 3**, E-mail from Jon Yamron, dated Nov. 6, 2001 ("The DDWin Solution: the user could dictate 'dollar-sign-one-two-three-point-four-five.' This language model would have the job of making sure the numbers come out as digits ... We did it in DDWin, we can do it here ..."); **Exh. 4**, E-mail from Jon Yamron, dated Nov. 6, 2001 ("I believe Dragon had this material."); **Exh. 5**, E-mail from Gillick to Roth, dated June 8, 2001 (listing projects at VST including "Dragon style search (detailed match ...)); and **Exh. 6,** E-Mail from Yamron, discussing a proposed solution to a problem regarding the source code ("it happened more than once at Dragon, it always hurt, as its so non-obvious that its going to do something wrong, and has an easy fix to the code. Simply add the keyword "explicit" before the constructor. It was added for just this purpose").

7

- Defendant Grabherr testified at his deposition that, after writing software code to build the lexical tree in L&H's confidential "Phoenix" project, he "wrote the code that builds the lexical tree in the ELVIS." **Exh. 7**, Grabherr Depo. at 186.

- Grabherr admitted that he wrote the code that used language models at L&H and later "wrote some code that used the language model" in ELVIS. *Id.*, Grabherr Depo. at 102.

- Grabherr acknowledged that modifications made to acoustic models, which were used in both the Phoenix project and in ELVIS, are typically proprietary. *Id.*, Grabherr Depo. at 104-107 ("Q. And are the [acoustical modeling] modifications typically proprietary? . . . A. I would assume so, up to some point, yes").

A missing piece of this evidence is the source code. ScanSoft thus requests that the Court order its production immediately. Bromberg & Sunstein and its independent expert, Mr. Goldhor, will review the source code at Bromberg & Sunstein's offices and will not allow its client to see it until directed otherwise.

### III. THE PROTECTIVE ORDER ALREADY PROVIDES A SENSIBLE MEANS OF DISCOVERY

As this Court recognized, the appointment of a neutral expert "will create some delay." **Exh. 1**, *Markman* Hearing Trans.(excerpts) at 101, *ll*. 15-19. This process will add months to the discovery schedule and yet more months before ScanSoft can remedy the theft of trade secrets. Moreover, this procedure adds to the burden that ScanSoft has experienced in trying to compel VST and the other defendants to meet their discovery obligations. While ScanSoft is attempting to find suitable experts, it is not confident that VST will agree to any of them. Indeed, even

though VST proposed this procedure, VST has not even contacted ScanSoft yet (2 weeks after the Markman hearing) to propose neutral experts. That fact alone shows that VST has no interest in finding suitable experts or in agreeing to a competent neutral expert if one can be found.

This situation also confirms that VST is continuing its tactics of blocking any attempt at legitimate discovery. VST knows that without the source code, ScanSoft cannot complete its proof of trade secrets theft. But VST cannot insulate itself from a finding of theft of trade secrets by refusing to produce the source code. Allowing VST to do so prevents the correction of an alleged injustice and should not be condoned. *See, e.g., Upjohn Co.*, 151 F.R.D. at 358-59 ("The court agrees with plaintiff that judicial resolution is not possible without permitting the requested discovery") and at 360 ("it appears that Hygieia's principle motivation in seeking appointment of a special master is to further insulate the trade secret information that may be revealed through discovery").

Fortunately, this Court already has available a solution to the current impasse. Courts in this district and others have recognized that a well-fashioned protective order provides all the means necessary for guarding against abuse of competitors' most sensitive "crown jewels" information. These cases reject the use of a neutral expert. For example, Magistrate Judge Neiman of this Court regards the use of a neutral expert as "cumbersome," preferring instead to allow full discovery of trade secrets under a protective order:

> The court does not adopt K&M's suggestion to have an independent expert advise the court as to whether there is any merit to ETC's assertion that K&M misappropriated ETC's proprietary information. Such a suggestion is not supported by reference to the federal rules or case law, and, while creative, is cumbersome. A protective order is the preferred means and is sufficient in this matter.

*ITT Electro-Optical Prods. Div. of ITT Corp.*, 161 F.R.D. at 232; *see also U.S. v. Rockwell Int'l*, 897 F.2d 1255, 1263-64 (3d Cir. 1990) (delegation of relevance question to outside auditor was

9

unauthorized); *Clark v. Weisberg*, Case No. 98-C-6214, 1999 WL 543191 at *3-5 (N.D. Ill. July 23, 1999)(denying appointment of special master because, *inter alia*, assigning a master results in increased cost and delay).

Likewise, in *Upjohn Co.*, the court declined to compel the plaintiff to accept the defendant's unilateral suggestion to use a neutral expert to resolve the discovery matter. 151 F.R.D. at 358 fn. 4. The plaintiff did not agree to the use of a neutral expert and thus could not be compelled to use one. That is the case here. ScanSoft does not agree to use a neutral expert.[2]

In any event, the *Upjohn* court, like Magistrate Judge Neiman in *ITT Eletro-Optical Prods.*, relied on a protective order nearly identical to the one that this Court endorsed by order of March 11, 2005. The protective order in *Upjohn*, as the one in this case, limits the circulation of the confidential technical information and thus eliminates VST's concern about sharing its source code with its competitor, ScanSoft.

More specifically, the protective order in this case permits the designation of information as "Highly Confidential." **Exh. 8**, Protective Order at ¶ 3. VST can designate its source code and other sensitive materials as such, thus limiting disclosure to "counsel of record" and "permitted experts." Protective Order ¶ 7. The Protective Order prohibits counsel from disclosing to its clients "the actual contents of any document marked as HIGHLY CONFIDENTIAL INFORMATION." *Id.* at ¶ 19. In effect, the Court has erected a wall of silence between counsel and its clients concerning any highly confidential information designated by either party,

---

[2] In *Microwave Research Corp. v. Sanders Assocs.*, 110 F.R.D. 669, 673-74 (D. Mass. 1986)(Collings, M.J.), the court also declined to appoint a neutral expert to resolve a trade secrets discovery battle, observing that "the feasibility of finding and appointing experts is unknown." Instead of appointing a neutral expert, the court required the plaintiff to show a factual basis for its trade secrets claim. Although the plaintiff could not meet that threshold under the facts of that case, the ruling shows that use of a neutral expert is disfavored. In any event, as seen above, ScanSoft has shown a substantial factual basis supporting its trade secrets claim.

including VST's source code. VST thus has no reason to fear that its trade secret information will be turned over to its head-to-head competitor. Given the safeguards offered by the Protective Order, VST's worries are avoided.[3]

ScanSoft's counsel, Bromberg & Sunstein LLP, has already demonstrated its ability to abide by the terms of the Protective Order. For example, on May 23, 2005, VST's counsel faxed to ScanSoft's counsel a letter and attached a lengthy, unrelated document to the end of the fax. *See* **Exh. 9,** Declaration of Rebecca Hanovice, Esq. ("Hanovice Decl."), ¶ 2. In response to a request from VST, and in compliance with its obligations under Paragraph 4 of the Protective Order, ScanSoft's counsel immediately disregarded and destroyed the unintended attachment. *See* Hanovice Decl., ¶ 3. More recently, on June 23, 2005, an attorney from VST's counsel, Choate, Hall & Stewart, sent ScanSoft's counsel two different pieces of correspondence unrelated to this litigation. Upon receipt, ScanSoft immediately notified the attorney at Choate and returned the correspondence. *See* **Exh. 10**, June 24, 2005 letter from Lee C. Bromberg, Esq. to Michael P. Mullins, Esq.. *See id.*

Accordingly, adequately enforced discovery conducted under the existing Discovery Orders and Protective Order is the most appropriate, least costly, and least time-consuming solution

## CONCLUSION

For the foregoing reasons, ScanSoft requests that this Court reconsider its appointment of a neutral expert and instead, proceed with discovery under the existing Protective Order.

---

[3] The similar provisions of the *Upjohn* protective order are quoted in at 151 F.R.D. at 361  To further show ScanSoft's good faith, ScanSoft and its outside counsel will stipulate that it will not provide VST's source code to ScanSoft in-house counsel or other employees. With this stipulation, the protective order in this case is <u>exactly</u> like the one relied on in *Upjohn*.

11

Dated: July 1, 2005

SCANSOFT, INC.,
By its attorneys,

/s/ Jack C. Schecter

Lee Carl Bromberg, BBO # 058480
Robert Asher, BBO # 022865
Erik Paul Belt, BBO # 558620
Lisa M. Fleming, BBO # 546148
Jack C. Schecter, BBO # 652349
Rebecca L. Hanovice, BBO # 660366
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
(617) 443-9292
jschecter@bromsun.com

02639/00509 403555.2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC., )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>VOICE SIGNAL TECHNOLOGIES, INC., )<br>LAURENCE S. GILLICK, ROBERT S. )<br>ROTH, JONATHAN P. YAMRON, and )<br>MANFRED G. GRABHERR, )<br>)<br>Defendants ) | C.A. No. 04-10353 PBS |

### CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing document to be served upon Paul E. Bonanno, Esq., of Choate, Hall & Stewart, at Exchange Place, 53 State Street, Boston, MA 02109-2809, by hand-delivery.

/s/ Lee Carl Bromberg

Lee Carl Bromberg, BBO # 058480
Robert Asher, BBO # 022865
Erik Paul Belt, BBO # 558620
Lisa M. Fleming, BBO # 546148
Jack C. Schecter, BBO # 652349
Rebecca L. Hanovice, BBO # 660366
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
(617) 443-9292

*Attorneys for Plaintiff*

July 1, 2005