# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VOICE SIGNAL TECHNOLOGIES, INC., )<br>LAURENCE S. GILLICK, ROBERT S. )<br>ROTH, JONATHAN P. YAMRON, and )<br>MANFRED G. GRABHERR )<br>)<br>Defendants. )<br>_____) | Civil Action No. 04-10353 PBS |

### PLAINTIFF'S [PROPOSED] REPLY IN SUPPORT OF ITS MOTION TO COMPEL DEPOSITIONS OF LAWRENCE R. GILLICK, ROBERT S. ROTH, AND JONATHON P. YAMRON

VST's refusal to produce the individual defendants for noticed depositions is yet another example of VST's stonewalling. The Court directed the parties at the *Markman* hearing to complete these depositions. *See Markman* Hearing Transcript (excerpts), at 101, *ll*. 20-24 ("If they have been prescheduled, do them.") (*see* Exhibit A to Declaration of Erik Paul Belt, filed previously [D.N. 238]). Magistrate Judge Alexander has also limited VST's attempts to stall the depositions. VST has delayed these depositions long enough.

VST's contention that the neutral expert procedure somehow trumps the need for these depositions is baseless. Indeed, these depositions are relevant to ScanSoft's trade secret claims as a whole, beyond the realm of the neutral expert's assignment. Moreover, these depositions will aid ScanSoft's ability to make information available to the neutral expert. VST's refusal to produce these deponents merely exemplifies VST's strategy to defeat ScanSoft's case by blocking discovery rather then by engaging in the merits.

I.   **THE COURT ORDERED PRESCHEDULED DEPOSITIONS TO PROCEED**

This Court did not "stay" discovery, as VST contends. Rather, this Court merely stated that current discovery deadlines are in place. *Id.* at 101, *ll.* 1-2 ("right now all discovery is under the old deadlines until I get to impose new deadlines"). More specifically, the Court directed the parties to proceed with any depositions that had been noticed. *Id.* at 101, *ll.* 23-24.

Magistrate Judge Alexander has also indicated, in effect, that these depositions should proceed. Specifically, ScanSoft first noticed the depositions on December 10, 2004. VST moved to stay the depositions. By order of January 5, 2005 [D.N. 72], Magistrate Judge Alexander postponed the depositions only until after the Court resolved VST's then-pending motion to dismiss ScanSoft's trade secret claims. The Court resolved that motion by order of January 26, 2005, adopting the magistrate judge's recommendation to deny the motion to dismiss the trade secrets claim. Thus, the path was cleared for the depositions to proceed.

Accordingly, ScanSoft re-noticed depositions on February 1, 2005, and again on June 14, 2005. The cover letter accompanying the later notices show that ScanSoft has scheduled the depositions: "Enclosed please find deposition re-notices for Lawrence S. Gillick, Robert S. Roth, and Jonathon P. Yamron. <u>We expect the defendants to appear for their deposition on these dates</u>. **Exh. D** to ScanSoft's previously-filed Motion to Compel (emphasis added). These depositions were thus scheduled.[1]

---

[1] VST's contention that there is somehow a difference between depositions that have been "prescheduled" and those that have been "noticed" exemplifies its reliance on hairsplitting arguments. Clearly, the Court meant that if the depositions had already been noticed before the discovery deadline, they should be completed. In any event, the Federal Rules of Civil Procedure do not distinguish between "notice" and "preschedule." The Rules provide that a party may be sanctioned when it "fails to appear…, after being served with proper <u>notice</u>." Fed. R. Civ. P. 37(d)(emphasis added).

Under the Federal Rules of Civil Procedure, VST was obligated to produce the defendants for the properly noticed deposition. *See* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2107 (2d ed.)(stating that a party is obliged to attend a deposition upon receiving proper notice from the opposing party); *see also Young v. Gordon*, 330 F.3d 76, 82-83 (1st Cir. 2003)(dismissing the case as sanction for party's repeated failure to appear at his deposition). Yet, despite set dates, despite the Federal Rules, and despite the Court's order to proceed, VST refuses to produce defendants.

## II.   SCANSOFT IS ENTITLED TO DISCOVERY ON TRADE SECRETS

VST confuses the neutral expert procedure with continuing discovery in support of ScanSoft's trade secrets case. There is no need to complete the neutral expert exercise before further discovery. Indeed, VST labors under the assumption that the trade secrets are found only in the source code. But the defendants' alleged theft of trade secrets extends beyond the source code and into other areas of VST's speech recognition development program. While ScanSoft has strong reason to believe that VST's source code incorporates ScanSoft trade secrets, ScanSoft also contends that the theft of trade secrets has infiltrated other areas of VST's work. Thus, ScanSoft is also entitled to discover the broader picture, the rest of the misappropriation.

More specifically, as a matter of law, trade secret misappropriation does not require incorporation of the trade secrets into a final product. Mass. G. L. c. 93, § 42. Rather, under common law trade secret misappropriation, a plaintiff must establish (1) that the information in question is a trade secret; (2) that the plaintiff took reasonable steps to preserve the secrecy of the information; and (3) that the defendant used improper means, in breach of a confidential relationship, to acquire or use the trade secret. *Data Gen. Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1165 (1st Cir. 1994).

ScanSoft is entitled to depose the individual defendants regarding all aspects of ScanSoft's trade secret claim. The neutral expert procedure is aimed at only one aspect of the trade secret claims: what lies in the ELVIS source code. It is intended to identify source code trade secrets in the final product of the ELVIS speech recognition engine. But, ScanSoft's trade secret claim is broader than trade secrets in ELVIS-- the claim also encompasses the fact that ex-Dragon/L&H employees had access to, and brought with them to VST, ScanSoft's trade secrets, regardless of whether they use those secrets in the ELVIS product, some other product, or in the defendants' speech recognition research and development efforts. While this theory will find support in the ELVIS source code viewed by the neutral expert, this theory also finds support in documents already produced by VST.

For example, VST documents show that in February 2001, only days after Yamron and Roth joined Gillick and Grabherr at VST, Gillick e-mailed the others about the way his former employer, Dragon, tackled certain challenges related to speech recognition. *See* **Exh. 2** to ScanSoft's Memo in Support of Its Motion for Reconsideration of Court's Neutral Expert Procedure, document entitled "ideas.txt," dated Sept. 26, 2001 ("Need to produce a memo describing this problem...This was the DDWin [Dragon Dictate] approach") (emphasis added).

Additional VST documents show that the defendants discussed Dragon secrets about its language models, programming strategies, and other speech recognition strategies.[2] *See, e.g.,* **Exh. 3** to ScanSoft's Memo in Support of Its Motion for Reconsideration of Court's Neutral Expert Procedure, E-mail from Jon Yamron, dated Nov. 6, 2001 ("The DDWin Solution: the user

---

[2] VST substantially redacted these documents before producing them. Where the recipients' names are not included in the examples that follow, the recipients' names were redacted. Those redactions are improper and ScanSoft certainly should be allowed to explore unredacted versions with the noticed deponents.

4

could dictate 'dollar-sign-one-two-three-point-four-five.' This language model would have the job of making sure the numbers come out as digits . . . We did it in DDWin, we can do it here . . ."); **Exh. 4** to ScanSoft's Memo in Support of Its Motion for Reconsideration of Court's Neutral Expert Procedure, E-mail from Jon Yamron, dated Nov. 6, 2001 ("I believe Dragon had this material."); **Exh. 5** to ScanSoft's Memo in Support of Its Motion for Reconsideration of Court's Neutral Expert Procedure, E-mail from Gillick to Roth, dated June 8, 2001 (listing projects at VST including "Dragon style search (detailed match . . .)); and **Exh. 6** to ScanSoft's Memo in Support of Its Motion for Reconsideration of Court's Neutral Expert Procedure, E-Mail from Yamron, discussing a proposed solution to a problem regarding the source code ("it happened more than once at Dragon, it always hurt, as its so non-obvious that its going to do something wrong, and has an easy fix to the code. Simply add the keyword "explicit" before the constructor. It was added for just this purpose").

ScanSoft is entitled to depose the defendants on *all* issues pertaining to its trade secrets claim, including VST documents produced thus far. Allowing discovery to continue simultaneously will yield information that will enhance the neutral expert exercise. Information gained in these depositions will enable ScanSoft to better direct the neutral expert and streamline the search by more specifically identifying the form and location of misappropriated trade secrets incorporated into VST's source code. VST's refusal to produce the defendants for depositions creates a greater burden on the expert, undoubtedly to VST's advantage.

### III. VST'S REFUSAL TO PRODUCE THE INDIVIDUAL DEFENDANTS EXEMPLIFIES ITS STRATEGY TO STONEWALL LEGITIMATE DISCOVERY

VST's response to this case has been massive resistance to all discovery. VST's goal in this litigation is to conceal from ScanSoft and the Court the evidence of its misappropriation by prohibiting access to any evidence relevant to the trade secrets claims. VST has filed multiple

5

motions in furtherance of its efforts to conceal the evidence (and has instructed its witnesses not to answer relevant questions at their depositions):

- First motion to dismiss trade secret claims, filed March 15, 2004 (granted, without prejudice to re-pleading continuing misappropriation);

- Second motion to dismiss trade secret claims, filed June 14, 2004 (**denied**);

- Rule 11 motion for asserting trade secret claims, filed June 22, 2004 (**denied**);

- Numerous discovery objections;[3]

- Objection to production of source code, filed January 31, 2005 (**overruled**);

- "Motion for clarification" of order requiring production of source code, filed January 31, 2005 (**denied**);

- Motion for protective order to preclude trade secret discovery, filed March 1, 2005 (**denied**);

- Motion for stay of Magistrate Judge's order, filed April 7, 2005 (**denied**);

- Objections to Magistrate Judge's order requiring production of documents relating to the first full year of employment of the four individual defendants, filed April 14, 2005 (pending);

- Emergency motion to produce documents pursuant to court order under seal, filed April 19, 2005 (pending); and

- April 19 & 20, 2005 letters to the Court challenging rulings of Magistrate Judge Alexander and Judge Saris.

In the face of VST's obstructionist tactics, this Court has <u>repeatedly</u> ordered VST to produce trade secret discovery. *See* March 16, 2005, hearing; Magistrate Judge Alexander's Order of March 30, 2005. Magistrate Judge Alexander's Order of March 30, 2005, follows this

---

[3] VST's deposition misconduct is the subject of ScanSoft's April 8, 2005 (D.N. 129) and July 15, 2005 Motions to Compel and for Sanctions.

Court's own suggestion and the law in requiring VST to start producing trade secret discovery in accordance with the Protective Order in this case.

## IV. THE PROTECTIVE ORDER GUARDS AGAINST IMPROPER DISCLOSURES

In addition to confusing the role of the neutral expert with continuing discovery on other aspects of the trade secret case, VST continues to confuse the parties and the attorneys in this case when it complains of disclosing alleged trade secrets. There is a restrictive protective order in place. Under this order, only the attorneys and independent experts, <u>not the clients</u>, have access to "Highly Confidential" information. By continuing to hide behind sensitive information, VST's accusations seem directed at the attorneys rather than the parties. These concerns are red herrings designed to stonewall the discovery process.

## CONCLUSION

For the reasons stated above, Lawrence R. Gillick, Robert S. Roth, and Jonathon P. Yamron should be compelled to appear for depositions as soon as possible after the court rules, and ScanSoft should be awarded the costs associated with filing this motion.

Dated: July 15, 2005

SCANSOFT, INC.,
By its attorneys,

/s/ Erik P. Belt
Lee Carl Bromberg, BBO # 058480
Robert Asher, BBO # 022865
Erik Paul Belt, BBO # 558620
Lisa M. Fleming, BBO # 546148
Jack C. Schecter, BBO # 652349
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
(617) 443-9292
ebelt@bromsun.com

02639/00509 417651.1