UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SCANSOFT, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C. A. No. 04-10353-PBS |
| VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**VOICE SIGNAL TECHNOLOGIES' MEMORANDUM IN OPPOSITION
TO SCANSOFT'S MOTION TO COMPEL FURTHER DEPOSITION OF
MANFRED G. GRABHERR AND FOR SANCTIONS**

Voice Signal Technologies, Inc. ("Voice Signal") submits this memorandum in opposition to ScanSoft, Inc.'s ("ScanSoft") Motion to Compel Further Deposition of Manfred G. Grabherr and for Sanctions. The Motion seeks a second deposition of Dr. Grabherr for the stated purpose of obtaining Voice Signal trade secrets. On June 17, 2005, the Court ruled that ScanSoft is not presently entitled to that information. In as much as the Motion seeks to compel further deposition testimony in order to obtain information which is, by Court Order, beyond the scope of presently allowed discovery, the Motion must be denied. ScanSoft also alleges "coaching" of the witness where the record makes clear that no suggestion whatever was made to the witness. Finally, ScanSoft complains that excessive or inappropriate "breaks" were requested by Voice Signal counsel, where the record and ScanSoft's own Motion make clear that is not the case. The Motion is wasteful and meritless, and should be denied.

## **THE FACTUAL CONTEXT**

It is undisputed that ScanSoft and Voice Signal are rivals in the speech recognition business. From the outset of this case, the parties have disputed the proper scope of discovery related to ScanSoft's trade secret misappropriation claim. ScanSoft has relentlessly sought access to Voice Signal's trade secrets, including its source code. ScanSoft's evolving arguments as to why it needs access to Voice Signal trade secrets have been revealed as a pretext.

Discovery has demonstrated that ScanSoft's trade secret claim is believed by ScanSoft to be baseless. ScanSoft's Senior Vice-President for Research and Development admitted, under oath, that ScanSoft is not aware of any ScanSoft trade secret that any defendant has used, or is using. Documents recently produced by ScanSoft confirm that ScanSoft knows that Voice Signal has not used *any* ScanSoft trade secret. These documents contain an analysis (conducted prior to the filing of this lawsuit) of Voice Signal's products by ScanSoft's most knowledgeable scientific personnel. These key scientific personnel concluded that Voice Signal's product was completely different from any ScanSoft product or development effort. *See* Voice Signal's Memorandum in Opposition to ScanSoft's Motion to Compel Depositions of Lawrence R. Gillick, Robert S. Roth, and Jonathan P. Yamron (Docket No. 251) at 2-3. It is thus apparent that ScanSoft has no good-faith basis to discover Voice Signal trade secrets. ScanSoft is, nonetheless, anxious to obtain access to Voice Signal trade secrets that could teach it how to achieve results and develop products that ScanSoft has been unable to achieve and develop by its own efforts – a clear abuse of the discovery process.

In order to safeguard Voice Signal against unwarranted disclosure of its trade secrets to its principal commercial rival, the Court has constructed a process to evaluate ScanSoft's trade secret claim *before* further trade secret discovery is permitted. *See* Ex. A, transcript of June 17,

2005 *Markman* hearing at 94-98. ScanSoft's Motion is yet another attempt to bypass this Court-ordered process and obtain the very trade secrets which, to date, have been denied ScanSoft by this Court. The Motion should be denied.

## ARGUMENT

### I. Protection of Voice Signal Trade Secrets During the Deposition was Proper.

The deposition of Manfred G. Grabherr was conducted on June 16, 2005. During the examination, Dr. Grabherr testified in exhaustive detail concerning a range of highly technical subject matters, including the specific work he performed at Voice Signal during the first year of his employment. Much of the testimony revealed highly sensitive information which Voice Signal treats as proprietary and confidential.[1] It is undisputed that the only limiting instruction given to Dr. Grabherr by counsel was that he not disclose a Voice Signal trade secret during the course of the examination. ScanSoft now asserts that instruction was improper. It claims that "this Court instructed defendants to turn over all confidential information, including trade secret information." ScanSoft Mem. at 3. That is simply wrong. No such Order exists, and ScanSoft cites to none.

Voice Signal counsel's instruction was entirely consistent with the Court's rulings limiting trade secret discovery. On April 27, 2005, the Court ruled that ScanSoft was *not* entitled to discovery of Voice Signal source code trade secrets. Instead, the Court said that it was

---

[1] The subject matter was so complex, and Dr. Grabherr's answers so technical, that ScanSoft counsel, by her own admission, had difficulty understanding the testimony. This resulted in countless instances of repetitive questioning, which served to greatly prolong the deposition. For example:

   Q. So I take it if I asked you if mixture modeling was used in the ELVIS prototype, do you know the answer to that question?

   MR. POPEO: Object to the form of the question. Asked and answered. You can answer.

   THE DEPONENT: We talked about this before. You asked me this question before, right, and I gave you an answer. So, I can repeat what I said before.

   Q. Can you please? This is difficult material for me?

Ex. B at 214-15.

3

"considering the idea of a neutral expert who will look at ScanSoft's trade secrets and compare them to Voice Signal's trade secrets." Ex. C, Electronic Orders entered April 27, 2005 and March 30, 2005. The Court indicated it would schedule a hearing on the matter. The Court allowed that, in the interim, ScanSoft could conduct discovery limited to "*documents* indicating the work the individuals performed for VST for a period of one year following commencement of their employment with VST." *Id.* (emphasis added).[2] The Court ordered that source code trade secrets be redacted from any documents prior to their production to ScanSoft. *Id.* The Court's Order clearly sought to shelter Voice Signal trade secrets from ScanSoft pending a more thorough consideration of the matter by the Court. The Order was directed to document discovery. It was not directed to deposition discovery. ScanSoft's claim that it was permitted to obtain through the examination of a witness the precise information which it was prohibited from gaining through document production is a nonsensical application of the Court's April 27, 2005 Order.

The Court resolved any remaining confusion on the subject matter the day after Dr. Grabherr's deposition, at the June 17, 2005 *Markman* hearing.[3] It ruled that it would appoint a neutral expert to compare the source code of ScanSoft's product to the source code of Voice Signal's product to determine whether there is any basis to ScanSoft's allegation of trade secret misappropriation. The Court said it would then make an informed determination either to (1) prohibit further discovery, or (2) tailor discovery to the evidence disclosed by the neutral expert.

---

[2] Voice Signal produced documents in compliance with this Order. ScanSoft does not argue otherwise in this Motion.

[3] Just prior to Dr. Grabherr's June 16, 2005 deposition, and in anticipation that the Court would address issues concerning the proper scope of trade secret discovery at a *Markman* hearing scheduled for the very next day, June 17, 2005, counsel for Voice Signal extended ScanSoft an offer to postpone Dr. Grabherr's deposition until immediately after the *Markman* hearing. ScanSoft refused the invitation. *See* Ex. D, letter of Paul D. Popeo to Rebecca Hanovice dated June 16, 2005.

The Court declined to extend trade secret discovery deadlines prior to the comparison of source code by the neutral expert. Ex. A at 99-100.

ScanSoft ignores the effect of this Order. It now seeks to compel a further deposition of Dr. Grabherr in order to discover Voice Signal trade secrets – the precise information which this Court has ruled will be subject to neutral expert review *before* further discovery will proceed. ScanSoft's argument is entirely without merit. Its motion to compel the disclosure of trade secrets through a further deposition of Dr. Grabherr, before the procedure established by the Court is implemented, must be denied.

II.     **Counsel for Dr. Grabherr Did Not "Coach" the Witness.**

ScanSoft accuses Voice Signal's counsel of "coaching" Dr. Grabherr in the course of his deposition. The specific examples of coaching cited by ScanSoft are said to appear at pages 57, 58, 234, 235, and 237 of the Grabherr deposition transcript. A review of the deposition record reveals that none of counsel's statements suggest an answer to the witness.

In the first example cited by ScanSoft, ScanSoft counsel questioned Dr. Grabherr about an agreement he signed with Kurzweil AI on or about 1997. ScanSoft asked Dr. Grabherr if he could recall the substance of the agreement. Voice Signal counsel expressly instructed Dr. Grabherr to answer the question if he could do so. Dr. Grabherr's answer was that he could not recall the substance of the agreement. There was no opportunity for coaching, and there was no coaching.

Notwithstanding that Dr. Grabherr had just stated that he could not recall the substance of the agreement, ScanSoft counsel nonetheless began asking Dr. Grabherr about the substance of the agreement:

> MS. FLEMMING: Did it offer you employment?

> A. I don't remember what the document said.
>
> MS. FLEMMING: Did it contain any obligations to keep information confidential that you obtained in your employment with Kurzweil?
>
> MR. POPEO: Objection. Only if you remember.
>
> A. I don't remember.
>
> MS. FLEMMING: You don't remember?
>
> A. I don't remember any specific things about this document.

Ex. B at 57-58.

ScanSoft's counsel was permitted to elicit the "facts" that she wished to elicit. There was no improper interference.

ScanSoft next relies upon a selective citation to the transcript, and alleges that "when ScanSoft inquired about speech recognition software that Dr. Grabherr had access to at L&H, counsel for VST supplied the answer." ScanSoft Mem. at 6. That is false. First, the cited question has nothing to do with Dr. Grabherr's exposure to speech recognition software. It instead asked whether personal digital assistants contain flash memory – a question entirely unrelated to speech recognition, to software, or to Dr. Grabherr's work at Lernout & Hauspie. More importantly, the full exchange, which ScanSoft neglected to cite, reveals that Dr. Grabherr provided a comprehensive answer to the question, including an explanation of precisely *why* he did not know the answer to the question. There was no improper coaching:

> MR. POPEO: Object to the form. Answer, if you can.
>
> THE DEPONENT: Okay. So you need permanent – so flash is some sort of kind of like permanent storage…it's some sort of attempt to make up for the nonexistent hard drive…And so on a cell phone it makes sense to have flash there, because you want to store certain things, data, the pictures you just took, or whatever, somewhere where they don't get lost if you turn the cell phone off.

6

>Now it wouldn't make much sense to use this on a PC, because usually these things are huge and it's much cheaper to have a large hard disk drive where you can store all of your data and it's going to still be there even if you turn it off.
>On a PDA, I'm not sure because what you do is you have a lot of memory anyway already there, whether it makes sense to have it, I don't know, whether they have it or not, I don't know.
>
>MS. FLEMMING: You just don't know?
>
>THE DEPONENT: I just don't know.

Ex. B at 238-39.

An examination of this exchange reveals that counsel's statements did not, and were not designed to, suggest an answer to the witness.

### III.    Counsel's Conduct was Proper and Did Not Interfere with the Deposition.

ScanSoft accuses counsel of "controlling" the deposition by making speaking objections. ScanSoft Mem. at 7. In the particular examples cited by ScanSoft, the witness answered each question posed by ScanSoft counsel completely. There is no suggestion of improper conduct, or of any impediment to ScanSoft's examination. ScanSoft cites two instances where ScanSoft's counsel asked an ambiguous question, and Voice Signal's counsel objected and requested clarification. ScanSoft Mem. at 8, 9. The objection did not suggest an answer to the question. ScanSoft's counsel provided the requested clarification. The witness then answered the question. There was no improper conduct.

A separate complaint relates to the allegation that Voice Signal counsel insisted on improper breaks "to interfere with ScanSoft's questioning and to prevent the deponent from responding." ScanSoft Mem. at 9. No further explanation is provided. The argument is baseless. A review of the transcript reveals that no break prevented the deponent from responding to any question, during any part of the examination.

Dr. Grabherr sat for nearly eight full hours of deposition. Including lunch, the parties broke a grand total of five times. One break was requested by ScanSoft counsel, two by the witness himself. No break was requested, or taken, while a question was pending. ScanSoft did not object at the time to any requested break. The breaks were not excessive or otherwise improper.

## CONCLUSION

For the foregoing reasons, ScanSoft's Motion to Compel Further Deposition of Manfred G. Grabherr and for Sanctions should be denied.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,

/s/ Paul E. Bonanno
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Paul E. Bonanno (BBO No. 646838)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART LLP
Exchange Place,
53 State Street
Boston, MA 02109
(617) 248-5000

Dated: July 22, 2005
3961792_1.DOC