# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SCANSOFT, INC.,                    )
                                   )
        Plaintiff                  )
                                   )
    -vs-                           ) CA No. 04-10353-PBS
                                   ) Pages 1 - 102
VOICE SIGNAL TECHNOLOGIES, INC.,   )
LAURENCE S. GILLICK, ROBERT S. ROTH,)
JONATHAN P. YAMRON, and            )
MANFRED G. GRABHERR,               )
                                   )
        Defendants                 )


MARKMAN HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

    LEE C. BROMBERG, ESQ., ERIK PAUL BELT, ESQ.,
and LISA M. FLEMING, ESQ., Bromberg & Sunstein,
125 Summer Street, Boston, Massachusetts, 02110-1618,
for the Plaintiff.

    ROBERT S. FRANK, JR., ESQ., PAUL D. POPEO, ESQ.,
and SARAH CHAPIN COLUMBIA, ESQ., Choate, Hall & Stewart,
53 State Street, Boston, Massachusetts, 02109,
for the Defendants.


                        United States District Court
                        1 Courthouse Way, Courtroom 19
                        Boston, Massachusetts
                        June 17, 2005, 2:10 p.m.

                    LEE A. MARZILLI
                CERTIFIED REALTIME REPORTER
                United States District Court
                1 Courthouse Way, Room 3205
                    Boston, MA  02210
                      (617)345-6787

Page 2

1    PROCEEDINGS
2    THE CLERK: The case of ScanSoft, Incorporated V.
3    Voice Signal Technologies, et al, Civil Action No. 04-10353,
4    will now be heard before this Court. Will counsel please
5    identify themselves for the record.
6    MR. BROMBERG: Lee Bromberg, your Honor, Bromberg &
7    Sunstein, for the plaintiff ScanSoft.
8    MR. BELT: Erik Belt, Bromberg & Sunstein, also for
9    ScanSoft.
10    MS. FLEMING: Lisa Fleming, Bromberg & Sunstein,
11    for ScanSoft as well.
12    MR. FRANK: Robert Frank, Choate, Hall & Stewart,
13    for the defendants.
14    MR. POPEO: Paul Popeo, Choate, Hall & Stewart, for
15    the defendants.
16    MS. COLUMBIA: Sarah Columbia for the defendants.
17    THE COURT: Okay, so what do you think we're doing
18    today? Let me start there.
19    MR. BROMBERG: I think we're having a Markman
20    hearing, your Honor, on certain disputed terms in the '966
21    patent and in the '630 counterclaim patent.
22    THE COURT: Were you intending to introduce expert
23    testimony?
24    MR. BROMBERG: Well, your Honor, I have
25    Mr. Balentine, my expert, in court to talk about the speech

Page 3

1    recognition issues. I can also give the Court a summary.
2    THE COURT: So, yes, but did you want him to take
3    the stand?
4    MR. BROMBERG: I leave it to your Honor's
5    discretion, if you want to hear from him or if you want to
6    just hear it from representations of counsel.
7    THE COURT: I mean, you gave me his tutorial. Is
8    there something you wanted to sort of show me visually?
9    MR. BROMBERG: Beyond the tutorial that we gave
10    you, your Honor?
11    THE COURT: Yes.
12    MR. BROMBERG: I don't think so. I think I can --
13    THE COURT: All right, so you're happy with the
14    tutorial unless there's something I don't understand; is that
15    right?
16    MR. BROMBERG: Yes.
17    THE COURT: What about you?
18    MR. BROMBERG: And do you want us to play the
19    tutorial as the first order of business, your Honor?
20    THE COURT: No.
21    MR. FRANK: The answer is, your Honor, I share the
22    view that we're here for a Markman hearing. We have two
23    patents on. There are subissues within each patent. Our
24    expert is here as well so that he can respond to questions
25    that you have, but it's not our intention to have him

Page 4

1    testify.
2    THE COURT: Fine. Now, let me talk to you for a
3    minute about your patent.
4    MR. FRANK: Yes.
5    THE COURT: With their patent, there were three
6    discrete issues. With yours, there must have been 25
7    disputed claim terms. It was huge. I'm not going to do
8    that. So the question that I really run into is whether or
9    not there are a couple that you think might make a huge
10    difference, or whether I should just wait until I can rule on
11    it in conjunction with a motion for summary judgment, and
12    then figure out which claims make a difference. In other
13    words, it was just too much. I stopped reading halfway. It
14    just kept going on and on and on and on, and they seemed
15    there nuanced, and, like, why do some of these little gray
16    differences matter? And I'm just not here to construe that
17    many claims.
18    MS. COLUMBIA: Your Honor, I think you could do it
19    either way. Initially ScanSoft had made a long list of
20    claims that needed to be construed, and so in our opening
21    brief, we addressed each and every one of them. When
22    ScanSoft filed their opposition brief, it became clear that
23    there are two or three or four, at the most, issues where
24    there's really contention, and in fact in their brief they
25    really only address those three or four issues.

Page 5

1    THE COURT: Well, I am happy to take three or
2    four. I wasn't happy to -- "Well, that might be accurate,
3    but a better way of saying it is X." And most of the
4    requested claim constructions from both sides were an essay,
5    not like, "This means this." It was, you know, an academic
6    debate. So I am happy to take three or four. I'm not happy
7    to do all the ones that there was briefing on.
8    So why don't we just make sure there's enough time
9    to do three or four. You'll tell me what they are. And if
10    any of the others pop up in the course of a motion for
11    summary judgment briefing, well, so be it.
12    MS. COLUMBIA: I think that's fine, your Honor.
13    THE COURT: Okay?
14    MR. FRANK: Your Honor, if I could just say one
15    thing, and that is that it's not clear to me that we will be
16    able to do this in a single afternoon and do justice to it,
17    and I simply want to say --
18    THE COURT: We will.
19    MR. FRANK: Okay.
20    THE COURT: The one thing that worries me about
21    yours is simply that I stopped reading by about the
22    twelfth -- I just at some point stopped reading because I
23    didn't get through them all. So there may be something that
24    I haven't read everything on, so that would be the only
25    concern. I've certainly read everything on the ScanSoft

Page 94

1  covers, we're not so sure here, even if you took every single
2  one of — do you know for a fact that if we gave you every
3  single one of your definitions as you want them, do you know
4  of a product that infringes?
5      MS. COLUMBIA: We have accused specific products of
6  infringement. Because our patent goes to the guts of how the
7  voice recognizer works, we can't know until they produce
8  their source code.
9      THE COURT: So that's what we need to know, we need
10 to tell that expert to look at under your definitions.
11     MS. COLUMBIA: Yes, your Honor.
12     THE COURT: And then also under their definitions,
13 and we'll see what's a fair debate. Does that make some
14 sense?
15     MS. COLUMBIA: We have no objection to proceeding
16 that way, your Honor.
17     THE COURT: Does that make some sense?
18     MR. BROMBERG: Well, your Honor, let me say two
19 things. We don't object to deferring these issues until we
20 see if there is anything to them, but we do object to the
21 proposition that a neutral, independent expert can be the
22 decision-maker about any of these things.
23     THE COURT: Sure, but they're going to at least get
24 me through this impasse on who sees what. I'll at least have
25 some neutral person look at it and say under their -- we

Page 95

1  could even call the person a court-appointed expert if you're
2  all more comfortable with me doing it that way, both for
3  purposes of discovery and for purposes of possible
4  infringement. And then eventually I will give that --
5  obviously the lawyers will have the report, but we'll have to
6  have it in a format so the experts can look at it too, but at
7  least I'll know something is there from both ends. I mean,
8  it can be secret with me. I won't understand what they're
9  saying anyway. Besides, you've both talked me into believing
10 this rug is blue, so...
11     So let's do this. It's late on a Friday. It's
12 been well briefed. I'm very thankful that a number of things
13 have been honed in. I'm going to be here next week, the end
14 of next week, but then I'm on vacation the last week in June,
15 and then I'm back for most of July and August. So when do
16 you think you could come up with and find a neutral expert by
17 using both of your experts? Do you think we could do this by
18 the second week in August?
19     MR. FRANK: Your Honor, let me say --
20     THE COURT: Excuse me. The second week in July?
21     MR. BROMBERG: Yes, your Honor.
22     MR. FRANK: Why don't you turn us loose for some
23 defined period of time and see if we can agree.
24     THE COURT: July 15 come up and find an expert who
25 can give us the time fairly rapidly?

Page 96

1      MR. FRANK: Yes, and I would add one more thing.
2  If we are unable to agree, then we should each nominate
3  someone, and your Honor can pick him out of a hat.
4      THE COURT: Fair enough. That's fine, okay. And
5  then whoever that is, I'll designate an independent expert,
6  who will give me a first cut-through on trade secrets as well
7  as infringement. And it obviously is not the final say. I
8  don't think I get off that easy.
9      Is it possible that the answers that are provided
10 to facilitate a settlement -- I'm going to be working on, by
11 the way, the ScanSoft patent in any event. That I'm not
12 putting off. But it could help work through some of these
13 issues in a way that could help you enter into settlement
14 discussions.
15     I guess I'm putting this inartfully. The question
16 I have is: I'm going to be working on an opinion on the
17 ScanSoft, but if you've got some opinions from this
18 independent person that could help bring the parties
19 together, I wouldn't want for me to issue an opinion that
20 upset the apple cart one way or another.
21     MR. FRANK: Your Honor, we have deposition
22 testimony that says that they have no idea whether we used
23 any trade secrets of theirs or not. We can present that to
24 you. They're not interested in that. This case is about --
25 has little to do with the legal merits.

Page 97

1      THE COURT: Put the trade secrets aside for a
2  minute. I'm talking about some sort of cross-licensing or
3  something like that.
4      MR. FRANK: We're all ears. This case is motivated
5  by something other than the merits of the case, and therefore
6  I think it's very unlikely that it's going to settle.
7      THE COURT: Well, that may be. I'm simply saying,
8  whatever this independent expert says may support or defeat
9  that theory.
10     MR. FRANK: I predict that if your Honor were to
11 rule that there was nothing to any of this stuff, they'd sue
12 us for something else because their objective has to do with
13 continually suing us.
14     THE COURT: Yes, but assume for a minute that the
15 independent expert says, "There's no trade secret here.
16 They've told us about the source code. Don't worry about it,
17 there's nothing here that's related to it," or contrarily
18 that "Yes, there is," the question that I have is, would that
19 move you closer to settlement?
20     MR. FRANK: Mr. Bromberg?
21     MR. BROMBERG: Well, you mean apart from the patent
22 claim, your Honor?
23     THE COURT: No. Globally. I mean, why would you
24 settle the trade secrets and not settle the -- I know that a
25 couple of the other cases have settled, right? Or at least

Page 98

1  one other one has, right?
2      MR. BROMBERG: Yes, one other one did settle, your
3  Honor. The resolution of the trade secret claim in one
4  direction or the other could spark settlement discussions. I
5  believe your Honor's ruling on the '966 patent could have the
6  same effect.
7      THE COURT: Well, I'm going to be chugging along,
8  I'm not going to stop then, because that's very discrete and
9  limited, and I can do something with it. I'm going to hold
10 off on this to find out, once you've turned over all your
11 source code to this independent expert, whether or not
12 there's anything under their definitions that's going to be
13 infringing and whether it's infringing under yours, and then
14 I'll know if there's a real serious dispute here. And then
15 we'll meet without the parties here with the independent
16 expert and possibly with an expert from each side to argue
17 the case, with clear protective orders against disclosing it
18 to the competing parties. That's how I envision this
19 happening.
20     So just let me know where you are on July 15. And
21 I'm around, and you can run in sometime around then, and I
22 will try and figure out a procedure if you don't agree,
23 okay?
24     MR. FRANK: That's fine, your Honor.
25     MR. BROMBERG: Your Honor, just one more thing. I

Page 99

1  think it goes with what you said, but we're out of time on
2  our schedule. And I'm assuming that -- this is for
3  discovery, et cetera -- I'm assuming that those dates are
4  just pushed off while these issues get resolved?
5      THE COURT: You know, I'm always nervous about
6  that. Should I just say pushed off three months? I mean, I
7  just don't want to leave it open-ended.
8      MR. BROMBERG: That would be fine.
9      THE COURT: Or do you want to just sit and talk by
10 the 15th and come up with an alternative schedule?
11     MR. FRANK: Let me make a distinction, your Honor.
12 We are stuck on the trade secret side clearly on this
13 question of who converted what.
14     THE COURT: Right.
15     MR. FRANK: On the other hand, with respect to the
16 '966 patent, there has been a full opportunity for
17 discovery, and we think we're at the deadline. We think that
18 part should be over.
19     THE COURT: Both of those make sense.
20     MR. BROMBERG: No, that's wrong, your Honor.
21     THE COURT: You know, it's now five of 5:00, and
22 obviously there's some disagreement, not surprisingly. So I
23 think what needs to happen is, I think what we're better off
24 doing is in a fresh way coming in, if Robert can find us a
25 half an hour in July. I'll know where you are in finding an

Page 100

1  expert. I'll know what our timetable is. If you'll both
2  give me proposals as to how you think it should continue.
3  Right now the deadlines are in place, so there's no more
4  discovery unless I allow more discovery. And I may. I just
5  don't know. That's obviously not going to be true of the
6  trade secrets piece if I let it go forward, but under the
7  '966 it may.
8      MR. BROMBERG: Well, your Honor, with due respect
9  to the Court, the last time we were here you said you would
10 not let the curtain come down on me being deprived of all
11 discovery on the trade secret claims.
12     THE COURT: But it doesn't apply to trade secrets,
13 I agree.
14     MR. BROMBERG: Okay, that's fine. On the patent
15 side, your Honor, we have an order from Magistrate
16 Judge Alexander that says, "Turn over your source code," turn
17 over his source code to ScanSoft so ScanSoft can look at it
18 and assess the infringement issue.
19     THE COURT: I just took care of that issue.
20     MR. BROMBERG: But we haven't had a chance to look
21 at it yet, your Honor.
22     THE COURT: No, no, now you're not hearing me.
23 That's why I'm setting up the independent expert is to deal
24 with that.
25     MR. BROMBERG: I understand that, your Honor.

Page 101

1      THE COURT: So right now all discovery is under the
2  old deadlines until I get to impose new deadlines. And you
3  obviously aren't agreeing, so I'm going to set up another
4  status conference so you can give me your respective
5  proposals and all of us aren't exhausted after a long week.
6  So that's the best bet. I won't cut you off at the knees, I
7  promise, particularly on trade secrets. I won't do that to
8  you, but I just don't think I'm ready -- it's now five of
9  5:00 -- to go head to head on a scheduling order, especially
10 since it will be so much more helpful when I have an expert
11 in mind, I have a timetable in mind, I'll know what to think
12 about it. So in July, like around the 15th, 16th, the next
13 week, the 20th, somewhere in there?
14     THE CLERK: July 18 at 2:00 p.m.
15     THE COURT: All right, so it gives you basically a
16 month to get an expert in line, give me alternative sets of
17 proposals. We'll be working on this, and hopefully we'll be
18 done with it by the end of the summer and so I don't start a
19 new clerk on it, but if not, it will create some delay.
20     MR. BROMBERG: Your Honor, we do have some
21 depositions scheduled right now. Are you saying that we
22 should not do them or just go ahead and --
23     THE COURT: That's fine. If they have been
24 prescheduled, do them.
25     Anybody want the Miriam Webster definition of