# EXHIBIT B

```
 1                UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
 2
 3

 4                                    )
     SCANSOFT, INC.,                  )
 5                                    )
             Plaintiff,               )
 6                                    )
          v.                          )   C.A. No. 04-10353-PBS
 7                                    )
     VOICE SIGNAL                     )
 8   TECHNOLOGIES, INC.,              )
     LAURENCE S. GILLICK,             )
 9   ROBERT S. ROTH,                  )
     JONATHAN P. YAMRON,              )
10   and MANFRED G. GRABHERR,         )
                                      )
11           Defendants.              )
                                      )
12
13
14
15
16        DEPOSITION OF MANFRED G. GRABHERR, Ph.D., a
17   witness called by and on behalf of the Plaintiffs,
18   taken pursuant to the applicable provisions of the
19   Federal Rules of Civil Procedure, before Dana Welch,
20   CSR, Registered Professional Reporter, and Notary
21   Public, in and for the Commonwealth of Massachusetts,
22   at the offices of Bromberg & Sunstein, 125 Summer
23   Street, Boston, Massachusetts, on June 16, 2005,
24   commencing at 10:04 a.m.
```

Page 2

```
 1    APPEARANCES:
 2    For the Defendants:
 3          CHOATE, HALL & STEWART, P.C.
            Exchange Place
 4          53 State Street
            Boston, Massachusetts  02109
 5          (617) 248-5000
            By:  Paul D. Popeo, Esq.
 6
      For the Plaintiff:
 7
            BROMBERG & SUNSTEIN, LLP
 8          125 Summer Street, 11th Floor
            Boston, Massachusetts  02110-1618
 9          (617) 443-9292
            By:  Lisa Fleming, Esq.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 3

```
 1                         I N D E X

 2

     WITNESS:   MANFRED G. GRABHERR, Ph.D.

 3   EXAMINATION:                                PAGE NO.

     By Ms. Fleming                                    4

 4   Certificate of the Reporter                     322

 5                        E X H I B I T S

 6   NO.           DESCRIPTION                     PAGE NO.

 7   (Exhibits attached to transcript.)

 8   1 - Affidavit of Manfred G.  Grabherr            5

 9   2 - Employment agreement                         18

10   3 - Patent application                          219

11   4 - E-mail dated July 31, 2001                  231

12   5 - E-mail, May 7, 2001 from Yamron             245

13   6 - VST 03998                                   254

14   7 - VST 03993                                   261

15   8 - VST 03971                                   263

16   9 - VST 05351                                   268

17   10 - VST 05350                                  271

18   11 - VST 04005                                  282

19   12 - VST 04050                                  290

20   13 - VST 04051                                  301

21   14 - VST 04219                                  315

22   Questions Instructed Not To Answer:

23   Page 277/Line 18

24   Page 314/Line 23
```

Page 4

```
 1              P R O C E E D I N G S
 2         (The Massachusetts Driver's License
 3     number as identification of the deponent
 4     was noted for the record.)
 5  WHEREUPON,
 6              MANFRED G. GRABHERR,
 7  having duly sworn or affirmed that his
 8  testimony would be the truth, the whole truth,
 9  and nothing but the truth, testified as
10  follows:
11              DIRECT EXAMINATION
12  BY MS. FLEMING:
13     Q.  Would you state your name for the
14  record please and spell it.
15     A.  My name is Manfred Gernot Grabherr.
16  It's M-A-N-F-R-E-D, G-E-R-N-O-T,
17  G-R-A-B-H-E-R-R.
18     Q.  And that's Dr. Grabherr, right?
19     A.  Yes.
20     Q.  Dr. Grabherr, I would like for you to
21  tell me about your educational background after
22  high school and with your collegiate studies.
23     A.  I studied physics at the Technische
24  Universitat Wien, which is the University of
```

Page 57

```
 1           MR. POPEO:  Whether or not -- the
 2    nature of the communications that I've had
 3    with my client are not a topic of discovery
 4    or discussion today.
 5           MS. FLEMING:  You're disclosing on the
 6    record now that you will produce that
 7    document on the basis that it's relevant?
 8           MR. POPEO:  If the document exists, I
 9    will determine whether it does exist, and
10    if so, if it responds to any discovery in
11    the case, then we will produce it.
12 BY MS. FLEMING:
13    Q.  Dr. Grabherr, do you recall the
14 substance of the agreement that you signed with
15 Kurzweil?
16           MR. POPEO:  Objection.  You can answer,
17    if you can.
18           THE DEPONENT:  I don't remember.
19 BY MS. FLEMING:
20    Q.  Was it an employment agreement?
21    A.  It was an employment agreement.
22    Q.  Did it offer you employment?
23    A.  I don't remember what the document
24 said.
```

```
1      Q.  Did it contain any obligations to keep
2   information confidential that you obtained in
3   your employment with Kurzweil?
4          MR. POPEO:  Objection.  Only if you
5      remember.
6          THE DEPONENT:  I don't remember.
7   BY MS. FLEMING:
8      Q.  You don't remember?
9      A.  I don't remember any specific things
10  about this document.
11     Q.  You don't remember if you were under
12  any obligations to keep information
13  confidential while you worked at Kurtzweil?
14         MR. POPEO:  That wasn't the question.
15     That's a different question.  You can
16     answer that question, if you know the
17     answer to it.
18         THE DEPONENT:  It very much depends on,
19     you know, what the document says and what
20     the wording is.  I assume that there was
21     something in there that --
22         MR. POPEO:  Just what you remember,
23     please.
24
```

Page 214

1  that your testimony is that the ELVIS prototype
2  did not employ that kind of duration modeling,
3  that is, with the penalties and the
4  probabilities?
5       MR. POPEO:  Objection.  Asked and
6    answered.  You may answer again.
7       THE DEPONENT:  Right.  So -- it did
8    not.
9  BY MS. FLEMING:
10      Q.  It did not?
11      A.  It did not employ this penalties in the
12 transitions.
13      Q.  Now, I asked you earlier if you were
14 familiar with the term mixture modeling; do you
15 remember that?
16      A.  Yes.
17      Q.  Okay.  Does mixture modeling employ the
18 use of triphone clustering?
19      MR. POPEO:  Object to the form of the
20   question.  You can answer if you can.
21      THE DEPONENT:  I don't understand the
22   question.
23 BY MS. FLEMING:
24      Q.  So I take it if I asked you if mixture

1   modeling was used in the ELVIS prototype, do
2   you know the answer to that question?
3           MR. POPEO:  Object to the form of the
4       question.  Asked and answered.  You can
5       answer.
6           THE DEPONENT:  We talked about this
7       before.  You asked me this question before,
8       right, and I gave you an answer.  So I can
9       repeat what I said before.
10  BY MS. FLEMING:
11      Q.  Can you, please?  This is difficult
12  material for me.
13      A.  All right.  So again, I don't know what
14  the exact definition of mixture model is.  I'm
15  sure there is one.  If by that you simply mean
16  that any state in the hidden Markov model is
17  represented by a number of prototype vectors,
18  then that's the way the ELVIS prototype worked.
19      Q.  Okay.  Are you familiar with the term
20  PEL?
21      A.  No.
22      Q.  Are you familiar with the term genone,
23  G-E-N-O-N-E?
24      A.  No.

1   A.  Well --

2       MR. POPEO:  Object to the form.

3   Answer, if you can.

4       THE DEPONENT:  Okay.  So you need

5   permanent -- so flash is some sort of a

6   kind of like a permanent storage, right.

7   So it's some sort of an attempt to make up

8   for the nonexistent hard disk drive; right.

9       And so on a cell phone, it makes

10  perfect sense to have flash there, because

11  you do want to store certain things, data,

12  the pictures you just took or whatever,

13  somewhere where they don't get lost if you

14  turn the cell phone off.

15      Now, it wouldn't make such sense to use

16  this technology on a PC, because usually

17  these things are not huge and it's much,

18  much cheaper to have a large hard disk

19  drive where you can store all your data and

20  it's going to still be there, even if you

21  turn it off.

22      On the PDA, I'm not sure because what

23  you do is you have a lot of memory anyway

24  already there, whether it makes sense to

```
 1        have it, I don't know, whether they have it
 2        or not, I don't know.
 3   BY MS. FLEMING:
 4        Q.   You just don't know?
 5        A.   I just don't know.
 6        Q.   And you are -- let me just ask you.
 7   You did not -- or did you communicate to Mr.
 8   Bob Roth any novel technical characteristics in
 9   the current implementation of ELVIS?
10             MR. POPEO:   Object to the form.
11        Answer, if you recall, please.
12             THE DEPONENT:   I don't remember.
13   BY MS. FLEMING:
14        Q.   And did you communicate to Mr. Roth any
15   novel ideas that would be important
16   contributions to ELVIS?
17             MR. POPEO:   Same objection.
18             THE DEPONENT:   I don't remember.
19   BY MS. FLEMING:
20        Q.   Did you ever communicate to Mr. Bob
21   Roth in your first year of employment at Voice
22   Signal Technologies?
23        A.   Communicate, meaning talking?
24        Q.   Any communication.
```