UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>VOICE SIGNAL TECHNOLOGIES, INC., )<br>LAURENCE S. GILLICK, ROBERT S. )<br>ROTH, JONATHAN P. YAMRON, and )<br>MANFRED G. GRABHERR, )<br>)<br>Defendants )<br>) | C.A. No. 04-10353-PBS |

**SCANSOFT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE NAMES OF PROPOSED NEUTRAL EXPERTS AND TO COMPEL VST TO COOPERATE IN THE SEARCH FOR A NEUTRAL EXPERT**

Once again proving that VST's objective is to stonewall discovery, VST has refused to cooperate in the court-mandated search for a neutral expert. Having lobbied for the use of a neutral expert in the first place (over ScanSoft's vigorous objections), VST should not be allowed to stonewall the process. Rather, this Court should compel VST to cooperate in the search for a qualified expert and, failing that, should appoint one of ScanSoft's candidates.

In particular, at the status conference on July 18, 2005, the Court directed the parties to approach one of the proposed neutral expert candidates, Professor Woodland of Cambridge University in England, and, if he proved unacceptable, to confer and contact other potential experts. The parties called Professor Woodland, but he proved to be unacceptable. As ScanSoft discovered during that phone call, Woodland has close associations with VST, as detailed below. ScanSoft thus invited VST to jointly contact another name on VST's list of neutral expert

candidates, to propose additional candidates, and, at the very least, to call two new candidates that ScanSoft had proposed. VST rejected the invitation, essentially insisting that it be Woodland or nothing.

In addition, after further investigation, ScanSoft found that three other candidates on VST's original list of proposed neutral experts--Jelinek, Morgan, and Wayne--have close ties to VST--ties that VST failed to disclose--and are thus unacceptable. Accordingly, ScanSoft additionally requests that these three candidates be excluded from further consideration.

## BACKGROUND FACTS

### A.   VST's Stonewalling Tactics

At the *Markman* hearing on June 17, 2005, the Court directed the parties to find a neutral expert to review the parties' source code. VST had lobbied for the appointment of a neutral expert to review the source code rather than produce the source code to ScanSoft's counsel and independent expert (with reciprocal production to VST's counsel and independent expert) under the terms of the protective order in this case. ScanSoft objected to the procedure, arguing that the parties' own independent experts could do the job.

Nonetheless, just days after the *Markman* hearing, ScanSoft began the process of identifying suitable candidates. But after two weeks, ScanSoft had not heard any proposals from VST, even though VST had so adamantly insisted on the use of a neutral expert in the first place. Thus, ScanSoft began to suspect that VST was stonewalling, just as it had done when faced with ScanSoft's various discovery requests throughout this litigation. Concerned that VST would drag out the search for a neutral expert--and thus use the neutral expert process itself as a defense tactic to further delay this litigation out of existence--and also concerned with protecting its own constitutional rights, ScanSoft moved for reconsideration of the Court's order. ScanSoft

particularly noted in its motion papers that VST had delayed in proposing neutral experts, even though, as the advocate of the procedure, VST should have pursued experts with all due speed:

> While ScanSoft is attempting to find suitable experts, it is not confident that VST will agree to any of them. <u>Indeed, even though VST proposed this procedure, VST has not even contacted ScanSoft yet (2 weeks after the Markman hearing) to propose neutral experts</u>. That fact alone shows that VST has no interest in finding suitable experts or in agreeing to a competent neutral expert if one can be found.

*ScanSoft's Memorandum In Support Of Its Motion For Reconsideration Of Court's Neutral Expert Procedure*, dated July 1, 2005 [D.N. 244] at 8-9 (emphasis in original).

This Court denied ScanSoft's motion but, in doing so, sympathized with ScanSoft's concerns about VST's delay and lack of cooperation. The Court thus warned VST to cooperate:

> Judge Patti B. Saris: Electronic ORDER entered denying [243] Motion for Reconsideration of Court's Neutral Expert Procedure. "The motion for reconsideration is denied. The parties shall agree on a neutral expert or submit names. <u>If Voice Signal fails to cooperate in a timely way, I will select ScanSoft's suggestion</u>. The expert will prepare a report on whether Elvis incorporates the proprietary technologies of plaintiff, or is relevant to that issue. I will then decide the scope of discovery." (Patch, Christine)

Order of July 11, 2005 (emphasis added). ScanSoft now sees a repeat of VST's dilatory and disagreeable behavior. Indeed, as ScanSoft had predicted in the above-cited passage from its previous motion, VST has shown that it will not agree to, or even consider, any candidate that ScanSoft nominates, no matter his qualifications. On the other hand, by interviewing Woodland and agreeing to consider Ney, ScanSoft has shown that it will consider VST's candidates.

In any event, after the Court's July 11th order, ScanSoft further prodded VST to propose neutral experts. *See* **Exh. 1**, Letter of July 13, 2005 from Lisa M. Fleming to Robert S. Frank, Jr. ("I understood from our discussion on Monday that you would get back to me today on your proposed candidates, but I have not heard from you. Please contact me to arrange for a simultaneous exchange of lists of proposed candidates today").

3

Instead of nominating candidates, however, VST proposed additional and unworkable criteria designed to narrow the pool of candidates even further.  *See* **Exh. 2,** E-mail from Frank to Fleming dated July 13, 2005 (positing seven criteria).  ScanSoft immediately realized that VST had designed these criteria solely to "rig the bid," so to speak, to ensure that no candidate would meet such criteria or to prevent the selection of a truly qualified expert. Accordingly, ScanSoft rejected the additional criteria.  *See* **Exh. 3,** Letter from Fleming to Frank, dated July 13, 2005 ("your proposed criteria serve only to rule out any and all candidates under consideration, thus making the process a non-starter").

On the following day, the parties finally exchanged lists of proposed experts. VST proposed five names: Jelinek, Morgan, Ney, Wayne, and Woodland.  **Exh**. **4**, Letter of July 14, 2005, from Robert S. Frank, Jr., to Lisa M. Fleming.  ScanSoft proposed a list of candidates from MIT.  *See* **Exh. 5,** Letter from Fleming to Frank, dated July 14, 2005.

At the status conference on July 18, 2005, VST expressed its concerns with ScanSoft's proposed experts from MIT, and ScanSoft likewise expressed its concerns with several of VST's experts.  Nonetheless, ScanSoft agreed that one of VST's candidates, Professor Phil Woodland, was a possibility.  **Exh**. **6**, Transcript of Status Conference at 6.   Accordingly, this Court directed the parties to contact and interview Woodland to see if (a) he would be interested in serving as a neutral expert and (b) he had no conflicts or other problematic affiliations with the parties.  *Id*.   The Court noted that, in addition to funding or financial connections, the fact that the potential expert might meet with ScanSoft or VST speech recognition scientists at conferences would also be cause for concern.  *Id*. at 7 ("The fact that they continue to fund the research and they meet at regular . . . conferences . . . is a little harder for me").

4

Shortly after this status conference, ScanSoft and VST jointly contacted Professor Woodland to gauge his interest and to arrange an interview. Professor Woodland stated his interest. The parties then spoke with Woodland on Thursday, July 21, 2005, for approximately 50 minutes. During the conversation, ScanSoft learned that Woodland had close ties with VST, as detailed in Section B below.

After considering the interview, ScanSoft determined that Woodland's ties with VST were too close for comfort. Accordingly, on the very next day, Friday, July 22, 2005, ScanSoft advised VST that Woodland was unacceptable and, in a follow-up e-mail on Monday, July 25th, outlined some of ScanSoft's concerns about Woodland's impartiality. *See* **Exhs**. **7** and **8**, E-mails dated July 22 and July 25 from Lee Bromberg to Bob Frank. In an attempt to advance the selection process, however, ScanSoft proposed two additional candidates, Dr. Ravishankar from Carnegie Mellon University and Dr. Jeff Bilmes from the University of Washington. *Id.* As far as ScanSoft knows, neither candidate has any ties with ScanSoft. ScanSoft also offered to contact Hermann Ney from VST's list of neutral experts.

VST, however, summarily rejected both candidates without so much as calling them, even though VST could not state a single concrete, substantiated objection to either one. At the very least, VST owed ScanSoft the courtesy of joining in a call to these candidates to learn whether they had the requisite neutrality. Rather, VST dashed off an ill-tempered and insulting e-mail demonstrating its unwillingness to cooperate:

> I will talk to my client, but my inclination is to say that ScanSoft had plenty of opportunity to suggest names and chose to identify only people with whom Mike Phillips has a personal relationship. Why should I trust this suggestion?

**Exh. 9,** E-mail from Bob Frank to Lee Bromberg, dated July 22, 2005.

Despite VST's testy and inaccurate response, ScanSoft again sought VST's cooperation, again proposing its two candidates and also inviting VST to propose its own candidates. **Exh. 8,** E-mail from Lee Bromberg to Bob Frank, dated July 25, 2005 ("Your stated unwillingness to jointly contact Ravishankar does not reflect the spirit of cooperation in choosing a mutually agreeable neutral expert that the Court requires. . . . We are of course willing to consider other suitable candidates proposed by you."). ScanSoft's attempted conciliation was consistent with this Court's direction to "work down the list [of other candidates] and confer." **Exh. 6,** Transcript of Status Conference at 15. But VST's response was not.

Specifically, VST responded, in essence, that it would be Woodland or nothing. **Exh. 10**, E-mail from Bob Frank to Lee Bromberg dated July 26, 2005. Even so, ScanSoft again invited VST's cooperation and again offered to contact Dr. Ney on VST's original list. **Exh**. **11**, E-mail from Lee Bromberg to Bob Frank dated July 26, 2005.[1]

Since then, another two weeks have passed, and ScanSoft has heard nothing from VST. VST has not proposed other candidates. VST has refused to join in calling Drs. Ravishankar and Bilmes. VST has not even consented to calling its own candidate, Dr. Ney.

Before filing this motion, ScanSoft tried one last time to get VST's cooperation. ScanSoft again invited VST to call these other candidates and to propose new ones. **Exh**. **12**, E-mail from Lee Bromberg to Bob Frank dated August 10, 2005. But VST stubbornly maintains its position. Indeed, VST's reply of August 11th (**Exh**. **13**) misstates the facts, most of which are correctly recited above, and continues VST's uncooperative tone. In short, as ScanSoft had originally feared when it filed its motion for reconsideration, VST will not cooperate.

---

[1] This Court noted that, given potential language barriers, the German candidate, Ney, might prove least suitable. See Transcript at 5, 7. ScanSoft agrees. Nonetheless, in an attempt to compromise, ScanSoft was willing to at least call and interview Dr. Ney in case he proved suitable. VST rejected that proposal.

6

### B.    Professor Woodland's Ties to VST

During the parties' interview of Professor Woodland, he revealed that he knew at least six current VST employees. For example, Professor Woodland's current graduate student and protégé, Gunnar Evermann, simultaneously works at VST. Yet VST never revealed this crucial information to ScanSoft when VST first proposed Woodland.

Professor Woodland also revealed that he personally knows two of the named defendants, Gillick and Roth, and also knows VST's Chief Technology Officer, Jordan Cohen. Woodland knew them when they all worked at ScanSoft's predecessors, Dragon and L&H, and when they all moved to VST. Indeed, Woodland said that he meets Roth, Gillick, and Cohen at conferences and may have had drinks with them.

In addition, through its own investigation, ScanSoft learned that Woodland presented at a workshop with defendants Roth, Gillick, and Yamron and VST's Cohen in 1998 called the DARPA Broadcast News Transcription and Understanding Workshop. Woodland also participated in a workshop with Roth, Gillick, Yamron, and Cohen, on human language technology in 1994. This information is troubling because VST did not disclose this information to the Court and, further, Woodland did not disclose this information to the parties during the initial teleconference, even though he was specifically asked about such connections.

When pressed, Professor Woodland also revealed that he is currently involved in a U.S. Government Department of Defense sponsored program through the Defense Advanced Research Projects Agency ("DARPA") and receives funding for speech recognition research through DARPA grants. Jordan Cohen has served as an advisor to DARPA, and we believe continues to consult with DARPA today. Based upon Professor Woodland's disclosures (and omissions), ScanSoft believes that he cannot serve as an impartial expert in this case.

C.  **VST's Other Candidates Have Conflicts**

Upon further research, ScanSoft has discovered that VST failed to disclose strong professional and personal relationships between its other proposed experts (Jelinek, Morgan, and Wayne) and VST's Chief Technical Officer, Jordan Cohen.

- <u>Frederick Jelinek</u>.  Dr. Jelinek is a Professor of Electrical Engineering at Johns Hopkins University and is the Director of the Center for Language and Speech Processing (CLSP) at Johns Hopkins.  When Dr. Jelinek was named Director of the CLSP, Jordan Cohen facilitated the move of his Speech Recognition Summer Workshops to Johns Hopkins under Dr. Jelinek's direction.  The Workshops have existed at Johns Hopkins from 1995 through present.  After the transfer of the workshop to Dr. Jelinek, Jordan Cohen remained actively involved in the summer workshops, delivering opening remarks to the participants, and serving as a member of the steering committee and a project leader and, in 2001, Dr. Cohen returned as a guest speaker at the Workshop.  In the interim, Dr. Cohen also appeared as a guest speaker in Dr. Jelinek's classes at Johns Hopkins.  Dr. Jelinek and Dr. Cohen are more than casual acquaintances.

- <u>Nelson Morgan</u>.  Nelson Morgan is a Professor in the Electrical Engineering and Computer Science Department at the University of California at Berkeley.  More importantly, he is the Director of the International Computer Science Institute (ICSI) and a leader of the Speech Group at ICSI.  Jordan Cohen is on the board of ICSI.  VST's retained expert, Dr. Wooters, is also at Berkeley, raising questions about whether his Berkeley colleague could be truly neutral.

- <u>Charles Wayne</u>.  Charles Wayne is a retired speech and language program manager at DARPA.  He has hosted multiple workshops with VST's Jordan Cohen.  In the past decade, Dr. Wayne chaired and organized DARPA events, including a number of panels, and has invited Jordan Cohen as a panelist.  Dr. Wayne also attended the summer workshop at Johns Hopkins described above to provide opening remarks or to comment on presentations.[2]

### D.  ScanSoft's Candidates May Prove Suitable

ScanSoft has attempted to identify other suitable candidates to serve as a court appointed neutral expert--namely, Drs. Ravishankar and Bilmes.  These candidates appear to have the appropriate speech recognition and software programming credentials and, as far as ScanSoft's preliminary vetting process reveals, no obvious ties to either party.  It may turn out that these candidates have ties to ScanSoft or VST, but only a joint interview, such as the parties conducted with Professor Woodland, could reveal such ties.  Yet VST refuses to engage in even the short exercise of calling both candidates.  At most, the interviews should take only an hour apiece.

More specifically, according to Internet searches and publicly available information, Dr. Mosur K. Ravishankar is a Senior Systems Scientist at the Institute for Software Research International at Carnegie Mellon University.  Dr. Ravishankar completed his undergraduate work at the Indian Institute of Technology in Madras and received both his Masters and Ph.D. in Computer Science from Carnegie Mellon.  He has worked on real-time recognition algorithms for large-vocabulary, and speaker-independent voice recognition systems.  He has published extensively in the area of speech recognition systems and computer architecture and is familiar

---

[2] At the July 18th status conference, ScanSoft also noted that Jelinek, Morgan, and Wayne likely do not have the necessary hands-on computer programming skills necessary to interpret the parties' source code.  *See* **Exh. 6**, Transcript at 3.

9

with source code architectures, and algorithms for speech recognition. Dr. Ravishankar's profile from Carnegie Mellon's website is attached at **Exh. 14**.

Similarly, Dr. Jeff Bilmes is an assistant professor of Signal and Image Processing and an adjunct professor in the Department of Linguistics at the University of Washington. Dr. Bilmes completed his undergraduate studies at the University of California Berkeley, received his Masters at MIT and received his Ph.D. at Berkeley in 1999. Dr. Bilmes has authored 45 articles/papers on speech and pattern recognition, programming language design and software coding techniques. Dr. Bilmes is the recipient of the 2001 NSF CAREER Award, and is a 2001 CRA Digital Government Fellow. He is currently an associate editor for the IEEE Transactions on Multimedia. His website profile is attached at **Exh. 15**.[3]

Accordingly, VST should be compelled to at least join ScanSoft in contacting and interviewing these candidates. If, after the interviews, either party can identify reasonable concerns with the candidate's neutrality, then more candidates should be tried. Alternatively, this Court should appoint one of ScanSoft's candidates, assuming he is willing and able to serve.

## ARGUMENT

VST should be compelled to cooperate. Under the Federal Rules of Civil Procedure, this Court may direct the parties and their attorneys to refrain from "wasteful pretrial activities." Fed. R. Civ. P. 16(a)(3). Certainly, VST's conduct, as outlined above, has wasted this Court's and ScanSoft's resources.

Furthermore, to enforce cooperation, this Court may "force parties to comply with scheduling and pretrial orders and to compensate parties for expenses caused by an opposing

---

[3] It may be that Dr. Bilmes' past ties to Berkeley, home to VST's expert, Wooters, disqualify him. But ScanSoft is willing to at least test his candidacy through a phone interview and contends that VST should join in doing so.

party's noncompliance." Fed. R. Civ. P. 16(f).   VST's refusal to discuss the prospect of considering other neutral experts falls squarely within the corners of Rule 16(f). Indeed, at the July 18th hearing, the Court ordered that if Woodland proved to be unsatisfactory, the parties should continue to confer and discuss other options. **Exh. 6**, Transcript of Status Conference at 6 and 15. Disregarding the Court's instructions, VST has refused to cooperate. VST's noncompliance continues to cause unnecessary expense and delay.

VST's refusal to cooperate is consistent with VST tactics to delay legitimate discovery. Indeed, even though VST requested the appointment of a neutral expert in the first place, VST (a) delayed in exchanging a list of candidates until after the Court issued its July 11th order, (b) attempted to interject additional criteria at the 11th hour in order to obstruct the process, and (c) proposed a list of experts who share close ties to VST's Chief Technical Officer, Dr. Cohen. Now, VST refuses to even consider other proposed candidates. VST knows that without agreement on a neutral expert, discovery of source code will be delayed or prevented in its entirety. Without this discovery, ScanSoft cannot complete its proof of trade secrets theft. Thus, VST has no incentive to cooperate in this procedure.

The selection of a neutral expert with the right qualifications is important to both parties. Interviewing and vetting several candidates will ensure that the parties find a truly impartial and technically qualified expert. VST should have nothing to fear from at least interviewing these other candidates, but refuses to do even that. That VST will not even entertain the notion of trying other candidates shows, without doubt, that VST is trying to obstruct the process, perhaps in the hope that it can avoid or delay producing the source code.

Professor Woodland is an unsatisfactory candidate. As stated above, Woodland is closely linked to VST through his protégé and through professional and personal relationships with

Roth, Gillick, and VST's Jordan Cohen. Woodland is also involved in research funded by a government agency to which Jordan Cohen is closely linked. The other candidates on VST's original list of five names are also unsuitable, for the reasons previously stated.

## CONCLUSION

Accordingly, for the reasons stated above, ScanSoft respectfully requests that this Court compel cooperation, compel consideration of additional candidates, and exclude Drs. Woodland, Jelinek, Morgan, and Wayne from further consideration as neutral experts. ScanSoft also requests the Court to award ScanSoft its attorneys' fees, costs, and expenses incurred in connection with this matter.

Dated: August 12, 2005

SCANSOFT, INC.
By its attorneys,

/s/ Erik P. Belt
Lee Carl Bromberg, BBO # 058480
Robert Asher, BBO # 022865
Erik Paul Belt, BBO # 558620
Lisa M. Fleming, BBO # 546148
Jack C. Schecter, BBO # 652349
Rebecca L. Hanovice, BBO # 660366
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
Tel: (617) 443-9292
Fax: (617) 443-0004
e-mail: ebelt@bromsun.com

02639/00509 424134.1