EXHIBIT 1

125 SUMMER STREET BOSTON MA 02110-1618

**BROMBERG & SUNSTEIN** LLP

T 617 443 9292  F 617 443 0004  WWW.BROMSUN.COM

LISA M. FLEMING
T 617 443 9292 x248
LFLEMING@BROMSUN.COM

July 13, 2005

Robert S. Frank, Esq.
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA  02109-2809

Re    *ScanSoft, Inc. v. Voice Signal Technologies, Inc., et al.,*
      Civil Action No. 04-10353 PBS
      Our File  2639/509

Dear Bob:

Following up on our discussion on Monday, July 11, concerning a procedure for selecting a neutral expert in the above-referenced case, I write to confirm that ScanSoft is prepared to exchange lists of candidates today.  As we discussed, if the two lists share a common name, or if we agree on one of the names, we can propose that name to the court as the neutral expert.

I understood from our discussion on Monday that you would get back to me today on your proposed candidates, but I have not heard from you.  Please contact me to arrange for a simultaneous exchange of lists of proposed candidates today.

Very truly yours,

Lisa M. Fleming

LMF/

02639/00509  417994.1

ATTORNEYS AT LAW

EXHIBIT 2

**Joanne Creedon**

| | |
|---|---|
| **From:** | Murphy, Marilyn [MMurphy@choate.com] |
| **Sent:** | Wednesday, July 13, 2005 5:25 PM |
| **To:** | Lisa Fleming |
| **Cc:** | Frank, Robert S. |
| **Subject:** | Message sent on behalf of Robert Frank |

Lisa:

We are willing to proceed substantially as you have proposed with respect to the identification of prospective experts.

As you have proposed, the parties would simultaneously exchange lists containing the names of three or four persons who might serve as the court appointed expert with respect to the review of source code and other related trade secret issues. The exchange would occur simultaneously, sometime tomorrow (Thursday). If one person appeared on both lists, that person would, subject to his or her availability, be selected as the expert. In the absence of a match, the lists would be submitted to the court, along with a brief description of the qualifications of the proposed expert. Each party would be free to argue for or against the selection of a particular expert.

In addition to the foregoing, we believe that qualified candidates should meet the following criteria. We ask that you agree. I doubt that these criteria will be this controversial.

The expert:

1.    must not be, or have ever been, employed by or a consultant or advisor to either party or their predecessors;
2.    must not have a financial or familial relationship with any present or recent past employee of either company;

3.    must have proven ability to read and understand software code (written in C and C++);
4.    must have ten years' experience in fundamental speech recognition algorithm development (as opposed to user interface or speech application development);

5.    should have a Ph.D. in speech recognition or a related statistical mathematics' field;
6.    should be employed in, or retired from, a position in academics or government; and
7.    should have published, reasonably extensively, in the area of fundamental speech recognition technology.
All contacts by either party with a proposed expert relating to this case must be fully disclosed.

Please respond promptly.

Bob


Marilyn Murphy

**Choate, Hall & Stewart LLP**
53 State Street - 33rd Floor
Boston, MA 02109
(617) 248-5237
mmurphy@choate.com

---

We're moving! Effective July 25, 2005, our new address will be:
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
(p) 617 248 5000
(f) 617 248 4000
www.choate.com
Look for our announcement in the mail.

---

---

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP. The substance of this message, along with any attachments, may be confidential and legally privileged. If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at www.choate.com

EXHIBIT 3

125 SUMMER STREET  BOSTON MA 02110-1618

T 617 443 9292  F 617 443 0004  WWW.BROMSUN.COM

BROMBERG ✻ SUNSTEIN LLP

LISA M FLEMING
T 617 443 9292 x248
LFLEMING@BROMSUN.COM

July 13, 2005

**VIA FACSIMILE AND FIRST CLASS MAIL**

Robert S. Frank, Esq.
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA  02109-2809

Re   *ScanSoft, Inc. v. Voice Signal Technologies, Inc., et al.,*
     Civil Action No. 04-10353 PBS
     Our File  2639/509

Dear Bob:

In response to the electronic mail message I just received from Marilyn Murphy of your office, the additional criteria you propose for selection of neutral expert candidates are unnecessary and unworkable.  It appears from the narrow criteria you propose that you indeed have someone specific in mind and may have already contacted that individual in connection with this case.  Alternatively, your proposed criteria serve only to rule out any and all candidates from consideration, thus making the process a non-starter.  Since your insistence on these narrow criteria violates any notion of cooperation, we reject your disingenuous attempt to thwart this process.

We have already agreed that in the event we cannot agree on one of the names on our respective lists, we can submit them to the Court and state our objections regarding any of the candidates' credentials.  Please let's just exchange lists today to get the process started.

Very truly yours,

Lisa M. Fleming
LMF/02639/00509  418022.1

ATTORNEYS AT LAW

125 SUMMER STREET  BOSTON MA 02110-1618

T 617 443 9292  F 617 443 0004  WWW.BROMSUN.COM

BROMBERG ☆ SUNSTEIN LLP

# FACSIMILE

| | | | |
|---|---|---|---|
| TO | Robert S. Frank, Esq. | FAX | (617) 248-4000 |
| | Choate, Hall & Stewart | | |
| FROM | Lisa M. Fleming, Esq. | PAGES | 2    (INCLUDING THIS SHEET) |
| PHONE | | DATE | 7/13/2005 |
| RE | *ScanSoft, Inc. v. Voice Signal Technologies, Inc., et al.,* | | |
| | Civil Action No. 04-10353 PBS | | |
| OUR FILE | 2639/509 | YOUR FILE | |

COMMENTS

Please see attached.

PLEASE NOTIFY BROMBERG & SUNSTEIN LLP AT (617) 443-9292, IF THERE ARE ANY PROBLEMS WITH THIS
TRANSMISSION.

THIS TRANSMITTAL IS INTENDED ONLY FOR THE ADDRESSEE, AND MAY CONTAIN INFORMATION THAT IS
PRIVILEGED OR CONFIDENTIAL. IF THE RECIPIENT OF THIS TRANSMITTAL IS NOT THE ADDRESSEE, PLEASE NOTIFY
US IMMEDIATELY BY TELEPHONE.

02639/00509  378973.1

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO              3140
CONNECTION TEL        39#00509#6172484000#
SUBADDRESS
CONNECTION ID
ST. TIME              07/13 18:32
USAGE T               00'52
PGS. SENT                2
RESULT               OK
```

125 SUMMER STREET  BOSTON MA 02110-1618

BROMBERG ✻ SUNSTEIN LLP

T 617 443 9292  F 617 443 0004  WWW.BROMSUN.COM

# FACSIMILE

| | | | |
|---|---|---|---|
| TO | Robert S. Frank, Esq.<br>Choate, Hall & Stewart | FAX | (617) 248-4000 |
| FROM | Lisa M. Fleming, Esq. | PAGES | 2   (INCLUDING THIS SHEET) |
| PHONE | | DATE | 7/13/2005 |
| RE | *ScanSoft, Inc. v. Voice Signal Technologies, Inc., et al.,*<br>Civil Action No. 04-10353 PBS | | |
| OUR FILE | 2639/509 | YOUR FILE | |

COMMENTS

Please see attached.

EXHIBIT 4

## CHOATE, HALL & STEWART LLP

EXCHANGE PLACE
53 STATE STREET
BOSTON, MASSACHUSETTS 02109-2804

T (617) 248-5000    F (617) 248-4000
www.choate.com

July 14, 2005

**VIA FACSIMILE**

Lisa M. Fleming, Esq.
Bromberg & Sunstein LLP
125 Summer Street
Boston, MA 02110-1618

RE:    ScanSoft, Inc. v. Voice Signal Technologies, Inc. et al

Dear Lisa:

Herewith Voice Signal's list of proposed court appointed experts:

1) Frederick Jelinek -- Professor of Electrical Engineering and Director of the Center for Language and Speech Processing, Johns Hopkins University;

2) Nelson Morgan -- Director of The International Computer Science Institute, a not-for-profit research laboratory that is affiliated with the University of California - Berkeley;

3) Hermann Ney -- Professor of Computer Science, RWTH Aachen (University of Technology), Germany;

4) Charles Wayne -- Retired speech and language program manager, Defense Advanced Research Projects Agency; and

5) Phil Woodland -- Professor of Information Engineering, Cambridge University.

We have included five experts on the list because we have not spoken to any of them and therefore do not know whether they are available for, and would accept, the assignment. We reserve the right to withdraw a name if any of these proposed experts has a business or personal relationship with ScanSoft or a ScanSoft person.

3958300v1

Lisa M. Fleming, Esq.
July 14, 2005
Page 2


    If there is no match between the names listed above and the names that appear in your
comparable letter, are any of the persons listed above acceptable to ScanSoft?

                                    Very truly yours,

                                    Bob

                                    Robert S. Frank, Jr.

RSF:mm

# CHOATE HALL & STEWART

# Fax Transmittal Sheet

| RECIPIENT | COMPANY | FAX | PHONE |
|-----------|---------|-----|-------|
| Lisa M. Fleming, Esq. | Bromberg & Sunstein LLP | (617) 443-0004 | (617) 443-9292 x 248 |

| | | | |
|---|---|---|---|
| **FROM** | Robert S. Frank, Jr. | **NUMBER OF PAGES** | 3 |
| **DATE** | July 14, 2005 | **CLIENT NUMBER** | 2004207-0003 |
| **PHONE** | (617) 248-5207 | **OPERATOR** M. Murphy | **TIME SENT** 3:50 PM |

**COMMENTS**

**RETURN BY**     Inter-office Mail     Hold for pick-up

This transmittal is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this transmittal is not the intended recipient, or the employee or agent responsible for delivering the transmittal to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately.

CHOATE, HALL & STEWART LLP | 53 State Street, Boston MA 02109 | t 617 248 5000 f 617 248 4000 | www.choate.com

EXHIBIT 5

125 SUMMER STREET  BOSTON MA 02110-1618

T 617 443 9292  F 617 443 0004  WWW.BROMSUN.COM

**BROMBERG ✶ SUNSTEIN** LLP

LISA M FLEMING
T 617 443 9292 X248
LFLEMING@BROMSUN.COM

July 14, 2005

**VIA FACSIMILE**

Robert S. Frank, Esq.
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA  02109-2809

Re   *ScanSoft, Inc. v. Voice Signal Technologies, Inc., et al.*, Civil Action No. 04-10353 PBS
     Our File 2639/509

Dear Bob:

ScanSoft offers the following individuals to serve as possible neutral experts in the above-referenced matter, all of whom have positions with MIT's Spoken Language Systems Lab:

    1.    Lee Hetherington;

    2.    Timothy James Hazen; and

    3.    D. Scott Cyphers.

Although we have not contacted these individuals, it appears from public sources that each of the three individuals have broad-based experience in computer science and speech recognition.  Please let me know if any of these individuals are acceptable to your clients.

Very truly yours,

Lisa M. Fleming

LMF/

02639/00509 418185

`

EXHIBIT 6

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
--------------------------------
SCANSOFT, INCORPORATED,        :      Civil Action
                    Plaintiff  :      No. 04-10353-PBS
                               :
             v.                :      Courtroom No. 19
                               :      1 Courthouse Way
VOICE SIGNAL TECHNOLOGIES, INC.:      Boston, MA 02210-3002
ET AL,              Defendant  :      2:30 p.m., Monday
--------------------------------      July 18, 2005
```

Status Conference


Before:        THE HONORABLE PATTI B. SARIS,
               UNITED STATES DISTRICT JUDGE




APPEARANCES:

Bromberg & Sunstein, LLP,
   (by Lee Carl Bromberg, Esq. and Lisa M. Fleming, Esq.
   and Erik Paul Belt, Esq.)
   125 Summer Street, Boston, MA 02110-1618,
   on behalf of the Plaintiff.

Choate, Hall & Stewart,
   (by Robert S. Frank, Jr., Esq. and Sarah C.
   Columbia, Esq.),
   53 State Street, Exchange Place, Boston, MA 02109,
   on behalf of the Defendant.



                  Marie L. Cloonan
               Official Court Reporter
              1 Courthouse Way - Suite 5209
          Boston, MA 02210-3002 - (617)439-7086
          Mechanical Steno - Transcript by Computer

1          THE CLERK:  The case of ScanSoft, Incorporated v.

2     Voice Signal Technologies, Et Al, Civil Action No. 04-10353,

3     will now be heard before this Court.

4          Will counsel please identify themselves for the

5     record.

6          MR. BROMBERG:  Lee Bromberg, Bromberg & Sunstein,

7     for the plaintiff, ScanSoft, your Honor.

8          MR. BELT:  Erik Belt, also Bromberg & Sunstein.

9          MS. FLEMING:  Lisa Fleming, Bromberg & Sunstein,

10     for the plaintiff.

11          MR. FRANK:  Robert Frank and Sarah Columbia,

12     Choate, Hall & Stewart, for the defendants.

13          THE COURT:  Let me just say, I received today --

14     more accurately -- read today the affidavit suggesting

15     various experts for Voice Signal and expressing concern

16     about ScanSoft's experts because of -- most from MIT and

17     some of the research was funded through ScanSoft.

18          I was wondering if you had a response to any of his

19     proposed independent experts, whether there were any laws or

20     any conflicts, that you noticed.

21          MR. BROMBERG:  Well, your Honor, we just got Mr.

22     Frank's affidavit also at about 1:15.  So, I had a chance to

23     look at it quickly.

24          And, I think that the reason we selected the people

25     from MIT, MIT is a world-renowned research institute, it's

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1    cutting edge in this area.  We knew that these people, being

2    at that layout would have hands-on experience reading and

3    writing source code.  And, we think that they --

4            THE COURT:  Normally I would say that was great,

5    the fact that some other guy came out of there and into

6    ScanSoft it didn't worry me as much as it did that -- that

7    some of their research is funded by ScanSoft.

8            MR. BROMBERG:  Well, they don't fund research, your

9    Honor.  They have, in the past, provided a stipulated grant

10   and, in exchange for that, their technical people get to sit

11   in at certain conferences.

12           THE COURT:  It's too close.

13           MR. BROMBERG:  Well, your Honor, the problem with

14   the people that VST listed is that all of them appear to be

15   senior figures in the speech recognition field.  But, one we

16   know for sure -- of course, we haven't contacted either our

17   people or their people.  We thought that there should be no

18   contact until we jointly approach them.

19           But, all of their people, there's nothing in the

20   public record that indicates that they have any hands-on

21   experience with reading or writing code for the last 20

22   years and things have changed a lot in that time.

23           THE COURT:  You know, this should have all been

24   talked about before I came here.  This is most unfortunate

25   that this is where we're at.

FORM CSR- LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

4

1        Do you know whether that's true?

2        MR. FRANK:  Your Honor, it is my understanding that

3   these people are among the best regarded people in the

4   field.  They are in academic institutions.  I believe -- we

5   certainly would -- we selected them believing that they

6   could look at this code and know what was a trade secret and

7   know what was garden variety stuff and recognize it and read

8   it.

9        If it turns -- in order to do this, the expert

10   would have to be able to read two different languages, in

11   effect, C plus plus and C, because one of the parties is in

12   one language and the other is in the other language.

13        We believe that they -- we wouldn't have picked

14   them if we thought they couldn't do this job.  We're not

15   picking people who can't do the job.

16        THE COURT:  Well, was there any conflict?

17        MR. BROMBERG:  Well, your Honor --

18        THE COURT:  That you know of?

19        MR. BROMBERG:  Sorry?

20        THE COURT:  That you know of.

21        MR. BROMBERG:  Yeah.  Well, with respect to their

22   claim that Mr. Phillips knows all the MIT people, he knows

23   all of these people at least as well.  It's a small

24   community and they all interact at conferences.  And, one of

25   the problems is that Jordan Cohen, the chief technology

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

5

1    officer at Voice Signal, is a very prominent figure in

2    DARPA.  In fact, he was hired by Dragon to secure grants

3    from DARPA.  And, that's exactly what he did.

4            THE COURT:  I have no idea what DARPA is.

5            MR. BROMBERG:  DARPA is the Defense -- a Defense

6    Department Funded Reseach Agency that put a lot of money

7    into speech recognition.

8            THE COURT:  Why is that significant?  Which expert

9    does that knock out?

10           MR. BROMBERG:  That's significant because a number

11   of these experts have DARPA connections, your Honor.

12           THE COURT:  Well, is there anybody there that you

13   say doesn't have a connection out of his list?

14           MR. BROMBERG:  Well --

15           THE COURT:  I wasn't so keen on the guy from

16   Germany simply because it was too far away and I thought he

17   couldn't come in and testify easily.  I was sort of thinking

18   about Johns Hopkins because Baltimore seems pretty close,

19   and closer than Berkeley.  But, I don't have a strong

20   feeling if there's a consensus on someone.

21           MR. BROMBERG:  Right.

22           We don't think that the man from Johns Hopkins who

23   is a senior guy, we don't think he could read code.

24           THE COURT:  Tell me which of this group just seems

25   like the best bet from your vantage?

6

1          MR. BROMBERG:  From our vantage point, the one that

2    might work is Phil Woodland.  He's in Cambridge, in the UK,

3    but he seems to be, from the information we can get without

4    talking to him, he seems to be --

5          THE COURT:  All right.

6          MR. BROMBERG:  -- a possibility.

7          THE COURT:  Has he agreed to do it?  Have you

8    talked to him?

9          MR. FRANK:  No, no.  We haven't, we have not.

10   We've not approached any of these people.  But, we'll go to

11   Mr. Woodland.  I mean, that's fine.

12         THE COURT:  All right.

13         Why don't you try him.  See if he's willing to do

14   it.

15         MR. FRANK:  Okay.

16         THE COURT:  And, if not, I don't want to come back

17   in here and have this -- you should be talking.  Find out

18   what this other -- make me a priority list.  I think it is

19   -- if, in fact, ScanSoft is funding research and meeting

20   with folks in this position at MIT, it's too close for

21   comfort.

22         There may be another organization -- you just named

23   one -- where there may also be affiliations that are too

24   close for comfort or it just may generally be something that

25   people, you know, see each other at a conference once every

1    other year.  I don't see that as too close for comfort.  I

2    mean, providing funding is a different order of magnitude.

3    I don't think it matters that anyone was from -- that

4    Phillips was originally from MIT.  That would not have been

5    enough for me.

6            MR. BROMBERG:  Right.  He's been out of there since

7    '94, your Honor.

8            THE COURT:  Right.  That isn't enough.

9            The fact that they continue to fund the research

10   and they meet at regular -- what did you say it was?

11           MR. BROMBERG:  Conferences --

12           THE COURT:  Conferences, regularly --

13           MR. BROMBERG:  -- speeches.

14           THE COURT:  -- is a little harder for me.

15           Now, I don't know what the degree of concern is

16   about DARPA.  All right.  I don't know.

17           But, let's start with this guy from England, see if

18   he's willing to do it, work down the list in terms of order

19   of priority.  My last priority, personally, is the guy from

20   Germany.  Woodland, ideally speaking, as a court-appointed

21   expert, it will be easy to communicate with him, and that

22   doesn't sound easy.  It sounds as if there could be problems

23   getting him here to testify.  Although, I'm not sure it's

24   any greater between England and Germany.  But, maybe

25   language barriers.  I don't know.

8

1          But, if you want to go to him, go to him, if he's

2     willing to commit to coming here and explaining this to me.

3          Now, I've got a very vigorous protest from ScanSoft

4     that at some point, whoever this neutral arbiter is can't be

5     the judge and jury about discovery.  I think that's fair

6     enough.  But, it's got to be enough to explain to me why he

7     -- since there are no shes -- why he believes that either

8     there's a prima facie case of a trade secret violation or

9     there isn't.

10          And, accordingly, if he thinks there's a prima

11    facie case of a trade secret violation, we have discovery.

12    If he thinks there isn't, at that point I'm going to have to

13    hear about the appropriate procedure.  Then, he'll have to

14    explain why not in a way that you and your independent

15    experts can look at it.  Because, I -- and, then, I'll just

16    have to make a decision --

17          MR. BROMBERG:  Your Honor, we --

18          THE COURT:  -- as to whether or not the discovery

19    should go forward.

20          And, I think briefs should be filed under seal with

21    him to explain what the basic contentions are or he won't

22    understand it.

23          MR. BROMBERG:  That's right.  We agree with that,

24    your Honor.   And, we did file a proposed procedure.  We

25    just file that --

9

1          THE COURT:  I didn't see that.

2          MR. BROMBERG:  -- just a couple of hours ago.

3          THE COURT:  All right.

4          MR. BROMBERG:  And, So, we invited the Court to

5    take a look at that and see if that works.

6          We modeled it on what we could find in the

7    literature, including an order from Judge Kollar-Kotelly,

8    who had the case against Microsoft in the DC Circuit.  And,

9    I think that that seemed to provide a workable way to do

10   this.

11         MR. FRANK:  Your Honor, I invite you to compare

12   Judge Kollar-Kotelly's order to their motion.  And, you will

13   find only the palest in resemblance.

14         If I may.  First, we have to select a person,

15   that's clear, and we will approach Mr. Woodland jointly.  In

16   fact, perhaps we could send him an e-mail in advance just to

17   warn him that we're going to call him, and then do something

18   appropriate.

19         The question then, I think, is:  How does the

20   expert know what to look for?

21         We believe that both sides should put to the expert

22   and to the other side the questions they would like the

23   expert to focus on.  Are you finding X in the source code?

24   Are you finding Y in the source code?

25         And, we want that for two reasons.  One is, I

1   think, that if we just drop down on an expert two sets of

2   source code and ask him to wade through that, that will be

3   beneficial to the defendant, but it will simply lead to

4   another round of proceedings.

5         The second thing is, we believe that if they will

6   say what it is that they are looking for, that we should

7   have an opportunity to demonstrate to the expert, and

8   ultimately to you, that whatever it is, it is public domain

9   material.

10        THE COURT:  Well, let me say this.  It's the same

11  complaint he essentially has, which is understandable.  You

12  don't want this expert, particularly one who may not fully

13  understand American law, to determine it.  He's not a

14  mediator or a fact finder or a master.  I hear both of you.

15  He's essentially -- that's why I thought last time we agreed

16  he would essentially serve as an independent expert to me --

17        MR. FRANK:  Right.

18        THE COURT:  -- so that I could make decisions.

19  And, I think that's fair.  You can make an argument and you

20  can make an argument.  And, I may end up disclosing to your

21  experts whatever was said with a protective order not to

22  disclose it to the inside people on both sides.  Because,

23  don't forget, this expert is going to help me with your

24  claims, too.  So, it goes both ways.

25        I think it's -- you've got to put to him what the

1   questions are.  Because, otherwise, he's not going to know

2   what to look for.  Okay?  You've got to tell him what it is

3   you think you're going to find there.

4           MR. BROMBERG:  We agree, your Honor.  And, that's

5   why in our proposed procedure we suggest that -- you had

6   indicated before that counsel should be part of briefing the

7   independent expert.  We propose that there be a -- that once

8   we get someone who agrees to serve, there be an initial

9   meeting where each side makes a presentation and that

10  presentation is both counsel and expert on that side, to be

11  able to explain to the independent expert --

12          THE COURT:  That's fine.

13          MR. BROMBERG:  -- what we're looking for.

14          THE COURT:  Whatever the expert wants.  But, there

15  should also be something in writing.

16          MR. BROMBERG:  Yes.

17          And, then, we thought once the independent expert

18  has been briefed by the parties, then, the independent

19  expert can go off and do --

20          THE COURT:  No.  But, I should get something in

21  writing from both parties.

22          MR. BROMBERG:  Okay.

23          MR. FRANK:  And, I might say, what you're hearing

24  now is not a full description of the motion they filed.

25          THE COURT:  Well, I didn't read it.  It apparently

12

1    is in transit.

2           But, why don't we do this.  I think it is

3    appropriate to have something in writing from both sides,

4    asking him the questions.  If you want to, and he's willing

5    to spend the time doing it, each side might have an ex parte

6    briefing with him.  But, it's got to be questions that are

7    written and in the record so that I know exactly what he's

8    addressing and, then, he needs to be able to talk to me ex

9    parte, to be able to explain to me what his written report

10   means.

11          MR. FRANK:  Your Honor, I completely agree that the

12   expert should be able to talk to you ex parte.

13          I further agree that you ought to be able to ask

14   the question -- lay questions to the expert so that you can

15   form an intelligent decision.

16          But, I strongly object to any ex parte discussion

17   between the expert and either one of us.  Because, I do not

18   believe that this is proceeding in good faith.

19          They have produced a document indicating that they

20   want to look for a source code or at a source code for

21   reasons that have nothing to do with trade secrets, that had

22   to do with setting up a separate claim against the --

23          THE COURT:  Well, why don't we just put it on the

24   record?

25          MR. FRANK:  Fine.  Your Honor, we --

13

1    THE COURT:  Ex parte.  Because, otherwise, you get

2  an access to what it is -- the basic thing that I'm saying

3  you shouldn't get unless I have --

4    MR. FRANK:  Your Honor, essentially what they're

5  going to do is tell the expert what they think are the trade

6  secrets we have taken.  That's what they should legitimately

7  be saying to the expert.  There is no reason why they should

8  not say that in a form that we can see it.  And, no reason

9  why we should not be able to respond.

10    THE COURT:  I disagree with that.  But, I do agree

11  it should be on the record.  It may well be that they say:

12  Here's our source code.  We think that they took these

13  snippets of it.  And, that's the kind of thing you should

14  not have access to.

15    MR. FRANK:  If I --

16    THE COURT:  And, vice versa.

17    You know, I'm trying to -- this is what I'm going

18  to do.  No discussions with the expert, except on the

19  record.  It can be ex parte, if that's what the expert

20  wants.  If the expert prefers just written questions, so be

21  it.  But, every discussion should be on the record.  And, if

22  there's any challenge later on, it will be there, sealed, in

23  my files.

24    I'm going to want to talk to him, just to explain

25  it to me, whether there's a conclusion that -- and, there

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1    does not have to be proof beyond a reasonable doubt, proof

2    by clear and convincing evidence or even proof by a

3    preponderance of the evidence.  There just has to be a prima

4    facie case on either of your claims, enough to trigger

5    discovery.  So, it isn't a huge burden on either side, but

6    neither can it be a fishing expedition.

7            I think -- I sort of leave it up to this gentleman

8    what procedure he'd find the most helpful.

9            But, at the end of the day, he's my independent

10   expert, and I just need to have someone explain to me

11   whichever conclusion he's written.  And, I should write a

12   little, you know, opinion, briefly, you know, either

13   agreeing or not agreeing with what he's done.

14           And, I imagine each of your experts, one side or

15   the other, may well disagree with it.  And, I'll have to

16   listen to what the disagreement is just so that it's fair.

17           Now, it turns into a procedural nightmare, simply

18   because I understand it means turning over your most highly

19   sought-after confidential information.  It should be --

20   aren't we doing it two ways?  This is a two-edge sword, both

21   sets of claims.  So, one side might be happy and not the

22   other side.

23           Now, once I agree to turn over all this stuff or

24   not turn it over -- if I turn it over, it would only be to

25   counsel the outside experts, not to the inside people.

1            MR. FRANK:  Yeah.  We're a long way from that.  I

2    believe we'll never get there.

3            THE COURT:  Okay.  You may be right.

4            MR. FRANK:  I believe, and I repeat, that the

5    expert -- that we should be given an opportunity to

6    demonstrate that whatever it is that's said to be a trade

7    secret isn't a trade secret at all, but is publicly

8    available.  And, I would be pleased to have your Honor have

9    the assistance of an independent expert to judge that.

10   Because, candidly, none of us -- your Honor, myself -- I

11   couldn't tell you what's -- I could not look at this stuff

12   and tell you what's in the public domain.

13           But, I want you to have expert assistance to

14   determine, A, what's being -- whether stuff is being used

15   and, B, if it's being used, if it's just stuff that people

16   in this field know how to do or whether it's some secret in

17   fact.

18           And, I would urge you to take expert -- whatever

19   expert assistance you want on both those questions.

20           THE COURT:  Okay.

21           Now, on the other questions, I did get supplemental

22   -- why don't you all try and reach that guy from Great

23   Britain in the next week or two, work down the list and

24   confer.

25           Should I just have another status in case it all

1   falls apart?

2           MR. FRANK:  Please.

3           MR. BROMBERG:  That makes sense, your Honor.

4           THE COURT:  I'm not here to destroy anyone's

5   vacation.  If I put this somewhere in the middle of August,

6   would that be consistent with people's personal lives?

7           MR. BROMBERG:  It could be late August, your Honor,

8   after the 24th.

9           THE COURT:  That's when I'm not going to be here.

10  It won't be consistent with me.  I tend to take the tail-end

11  there.

12          Actually, is the week of the 16th bad for people's

13  summer vacation?

14          MR. BROMBERG:  Well, it would be for me, but I

15  think Mr. Belt and Ms. Fleming could come in.

16          THE COURT:  When are you gone?  Which weeks?

17          MR. BROMBERG:  I'm gone the week of the 16th

18  through the 24th.

19          THE COURT:  Through the 24th?

20          MR. BROMBERG:  Yeah.  I'm back on the 25th.

21          THE COURT:  Would it be possible to do it August

22  11th?

23          MR. BROMBERG:  Yes.

24          THE COURT:  Would August 9th -- excuse me -- August

25  10th be feasible?  I'm leaving to go to Texas sometime on

1     that Wednesday and I'm not sure -- a hundred percent sure on

2     the date right now.

3           MR. BROMBERG:  What day of the week is that?

4           THE CLERK:  Wednesday.

5           MR. BROMBERG:  Wednesday, the 10th?

6           THE COURT:  Or, Tuesday, the 9th?

7           THE CLERK:  You have a two o'clock on the 9th.

8           THE COURT:  Two o'clock on the 9th?  Can I do it

9     then?  And, not destroying anybody's vacation?

10          MR. FRANK:  The answer is:  I think so.  All I have

11    is a regular calendar, but not my personal calendar with me.

12          THE COURT:  Well, if it turns out to be bad, we

13    will adjust.

14          MR. FRANK:  One of the 9th or the 10th is going to

15    be okay.  If you set it down for the 9th and give me leave

16    to call in an hour, if it's not okay, I'll tell you.

17          THE COURT:  And, I'm flying out of here on the 10th

18    at some point.  So, we have to schedule it at a time before

19    my flight to Texas.  And, feel free to cancel.

20          (Laughter.)

21          THE COURT:  Now, I don't need a reply brief on the

22    effect of Philips.  I'm not even sure I'll read the

23    supplemental brief.  I'm glad to know that Philips came

24    down, but I don't need another brief.

25          MR. FRANK:  May I give you a half dozen pages and

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

18

1    keep it at that, so I can respond?

2           THE COURT:  How many briefs have I already gotten?

3    I'm likely to strike the supplemental brief.

4           MR. BELT:  Well, I thought -- your Honor, our

5    supplemental brief was in response to Mr. Frank's

6    supplemental brief.  So, that's enough.

7           THE COURT:  Well, I'm likely to strike both of

8    them.

9           Didn't I get a brief, a reply and a sur-reply?

10          MR. BROMBERG:  Yes, you did.

11          MR. FRANK:  You got a brief and a reply.  I don't

12   remember that there was a sur-reply.

13          THE COURT:  Each one gets two cracks at it.  So,

14   whatever they're called, whether they're sur-replies or

15   supplemental or whatever, I don't want any more briefing.

16          I thank you for sending me this other opinion.

17   But, that's all I'm going to read.  Of course I'm going to

18   read that.  But, I'm not letting another one --  Denied.

19   I'm not reading your supplemental either, unless that's your

20   second.

21          Do you happen to know?  Or is that your third

22   brief.

23          MR. BELT:  On the '966 patent --

24          MR. FRANK:  It's your third.

25          THE COURT:  You're toast.  Okay?  Two each.  That's

1    it.

2              (Laughter.)

3              MR. BROMBERG:  Yeah.  Both sides did two on that

4    before this supplemental response.

5              MR. BELT:  Yeah.  Actually, I think the other side

6    got three on it before the hearing as well.

7              THE COURT:  I'm glad they came down.  I had no idea

8    what the --

9              I've read about the first ten pages of the claim

10   construction stuff.  At least at that point they were just

11   repeating their prior cases.  So, I don't know if it gets --

12   I see it all.  Is it a page turner?

13             MR. FRANK:  No.  There is a great deal of emphasis

14   on interpreting the claims in light of the specification.

15   But, maybe you don't want to hear that right now.

16             THE COURT:  No, I'll just sit and read it all.  I

17   was distressed, actually.  I hadn't realized it was a means

18   language claim.

19             MR. FRANK:  Oh, actually, trust me.  The

20   interesting stuff follows that.

21             THE COURT:  Okay.

22             MR. FRANK:  There is half a dozen pages at the

23   beginning that addresses the question whether that

24   particular claim is a means plus function claim and then

25   concluding that it's not.  But, that's not --

1          THE COURT:  If you heard judges comment during --

2    it's very funny, our view on means plus function, how much

3    we love those kind of things.

4          (Laughter.)

5          THE COURT:  Have a nice vacation for those who are

6    going there.  And, I hope not to see you again.  Just try to

7    get someone who can talk to me in a way that I'll

8    understand, so I'll recognize his speech.

9          (Whereupon the hearing was concluded.)

10

11

12                         CERTIFICATE

13

14          I, Marie L. Cloonan, Official Reporter of the

15    United States District Court, do hereby certify that

16    the foregoing transcript, from Page 1 to Page 20,

17    constitutes to the best of my skill and ability a true

18    and accurate transcription of my stenotype notes taken

19    in the matter of Civil Action No. 04-10353-PBS,

20    ScanSoft, Inc. v. Voice Signal Technologies, Inc.,

21    et al.

22                         _Marie L. Cloonan_____

23

24

25

EXHIBIT 7

**Joanne Creedon**

---

| | |
|---|---|
| **From:** | Lee Carl Bromberg |
| **Sent:** | Friday, July 22, 2005 3:41 PM |
| **To:** | 'Frank, Robert S.' |
| **Cc:** | Scansoft 509 |
| **Subject:** | Neutral Expert Selection |

**Attachments:**     Lee Carl Bromberg.vcf

Dear Bob,

Following up on your voice mail to me today, I agree with your thinking that perhaps the rate we suggested to Professor Woodland is on the low side. We would, however, like to confer with our client in advance of further discussion with Professor Woodland next Tuesday.

In the meantime, our conference call with Professor Woodland raised some issues with us in the context of Professor Woodland's relationships with some of the individuals involved in the lawsuit and his knowledge of the litigation itself. As a result, we are carefully considering his selection and we think it prudent to contact one or two other candidates in order to have a similar discussion. We would like to propose the name of Mosur K Ravishankar, Senior Systems Scientist at Carnegie Mellon University. Mr. Ravishankar's name has been suggested to us by a number of individuals in the field of speech recognition as someone who may possess the requisite speech recognition and source code expertise for the task at hand. If you are amenable, we could follow the same process and draft an email to him to gauge his interest in the assignment. The link below provides some publicly available information about Mr. Ravishankar. I look forward to receiving your thoughts. http://www-2.cs.cmu.edu/~rkm/

Lee

Lee Carl Bromberg

Bromberg & Sunstein LLP
Attorneys at Law
125 Summer Street
Boston, MA 02110-1618
Tel: (617) 443-9292
Fax: (617) 443-0004


This message is intended only for the addressee(s), and may contain information that is privileged and confidential. If the recipient of this message is not an addressee, please notify us immediately by telephone.



Lee Carl
Bromberg.vcf (4 KB)