UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC., <br><br> Plaintiff, <br><br> v. <br><br> VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR, <br><br> Defendants. | C. A. No. 04-10353-PBS |

**VOICE SIGNAL TECHNOLOGIES' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE PROPOSED NEUTRAL EXPERTS**

This Memorandum is filed in opposition to ScanSoft's Motion to Strike Proposed Neutral Experts.

The parties agreed upon a procedure for the selection of a court-appointed expert in this case. At ScanSoft's insistence, they agreed that (1) there would be a simultaneous exchange of lists of names of proposed experts; (2) if the same name appeared on both lists, that person would be chosen; and (3) if the list contained no name in common, the Court would select an expert from the names on the parties' lists.

The parties did exchange lists of names. The persons identified by ScanSoft were all associated with a single speech recognition group whose work had been funded for many years by ScanSoft (and its predecessors), Senior ScanSoft personnel had enjoyed long term personal relationships with the group. At the hearing held on July 18, 2005, the Court concluded that the relationship between ScanSoft and the experts proposed by

3971163v4

ScanSoft was too close. It invited ScanSoft to pick a name off of the list of experts proposed by Voice Signal. ScanSoft selected Professor Phil Woodland at Cambridge University.

The parties then contacted Professor Woodland and conducted a lengthy joint telephone interview with him. It is undisputed that Professor Woodland is fully competent to act as a court-appointed expert, and that he is willing to serve in that capacity. He is available to meet with the Court because he has independent professional reasons to be in Boston and the eastern United States periodically. In response to the parties' questions, Professor Woodland stated that he was generally aware of the existence of this case, but was unfamiliar with the matters in dispute. He said that he had not spoken about this case with an employee or other person associated with either party. He said that he was acquainted in a professional capacity with a roughly equal number of persons at both parties, with whom he had spoken from time to time at professional conferences. He disclosed that he is a thesis advisor to a former Cambridge University student who is now employed at Voice Signal in a non-management position. He said that he did not believe that any of these contacts would affect his ability to act impartially.

At the conclusion of the teleconference, the parties appeared to be in agreement that Professor Woodland was an appropriate choice. However, the following week, ScanSoft stated that Professor Woodland was unacceptable to ScanSoft. ScanSoft urged Voice Signal to consider other potential experts who had not been identified on either parties' lists of potential experts.

Voice Signal responded that Professor Woodland's contacts with the parties were no more significant than would be those of any other expert in the relatively small speech recognition field. It said that ScanSoft had identified nothing that suggests that Professor Woodland would not act impartially. Voice Signal stated that it would invite the Court to speak directly to Professor Woodland, to ask her own questions, and to form her own judgment with respect to his suitability (and, in particular, his impartiality) as a neutral expert.

On Friday, August 12, 2005 ScanSoft filed the instant Motion To Strike Proposed Neutral Experts. ScanSoft's objections to Professor Woodland are stated at page 7 of the Memorandum in support of the Motion. ScanSoft states as an objection to Professor Woodland, that in 1994 and 1998 (*i.e.*, eleven years ago and seven years ago), Professor Woodland "presented" at a workshop "with" three of the individual defendants and Voice Signal's Jordan Cohen. This illustrates the make-weight (and misleading) nature of ScanSoft's objections to Professor Woodland.

As the Affidavit of Laurence Gillick filed herewith makes clear, teams from various organizations competed for funding in the field of speech recognition provided by the United States Department of Defense, through the Defense Advanced Research Projects Agency ("DARPA"). Typically, DARPA caused the competitors to apply their speech recognition technologies to an identified set of recordings. It evaluated the accuracy of the results achieved by the competing groups. The groups then came together at a conference, at which each described the key working components of its speech recognition system. Approximately 100 people were present at these conferences. Professor Woodland was a member of a group from Cambridge University that was

present. Messrs. Gillick, Roth, Yamron, from Dragon Systems, Inc. were also present, as were other groups. Each group presented its work. They were competitors. There was no collaboration whatever between the Cambridge group and the Dragon group. Persons who are today senior ScanSoft speech recognition scientists were among those present at these conferences. These facts do not suggest that Professor Woodland could not act impartially in this case.

Also attached is the Affidavit of Gunnar Evermann. Mr. Evermann was a Research Associate at Cambridge University. He left Cambridge and joined Voice Signal in October, 2004. He is, today, one of fifteen Research Scientists employed at Voice Signal. He has no management responsibilities. Professor Woodland is Mr. Evermann's thesis advisor. Mr. Evermann's Affidavit states that he has spoken to Professor Woodland only twice in the ten months that he has been at Voice Signal. They spoke to each other at an industry conference on one occasion. They discussed Mr. Evermann's thesis over the telephone on the other occasion. It is believed that Professor Woodland has served as a thesis advisor of ScanSoft personnel as well.

Any knowledgeable speech recognition expert will have had professional contacts with people who work at Voice Signal and people who work at ScanSoft. As ScanSoft's counsel said at the July 18th hearing, ScanSoft Chief Technical Officer Michael "Phillips…knows all of [the people on Voice Signal's list of proposed neutral experts]. It's a small community and they all interact at conferences." Hearing Transcript, p. 4. Professor Woodland's contacts involve personnel at both companies, they are professional in nature, they are reasonably balanced, and none appears to be of a character that would be likely to impair his impartiality.

4

Voice Signal does not ask the Court to accept Voice Signal's representations with respect to Professor Woodland. It asks only that the Court speak directly to Professor Woodland and form her own judgment as to his suitability, based upon her own conversation. Professor Woodland's e-mail address is pcw@eng.cam.ac.uk, and his telephone number is +44-1223-332669.

        Respectfully submitted,

        VOICE SIGNAL TECHNOLOGIES, INC.

        By its attorneys,

        /s/ Robert S. Frank, Jr.
        Robert S. Frank, Jr. (BBO No. 177240)
        Sarah Chapin Columbia (BBO No. 550155)
        Paul D. Popeo (BBO No. 567727)
        Paul E. Bonanno (BBO No. 646838)
        Wendy S. Plotkin (BBO No. 647716)
        CHOATE, HALL & STEWART
        Two International Place
        Boston, MA 02110
        (617) 248-5000

Dated: August 15, 2005

3971163v4