UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
SCANSOFT, INC.,                     )
         Plaintiff,                 )
                                    )
              v.                    ) CIVIL ACTION NO. 04-10353-PBS
                                    )
VOICE SIGNAL TECHNOLOGIES,          )
INC., LAURENCE S. GILLICK,          )
ROBERT S. ROTH, JONATHAN P.         )
YAMRON, and MANFRED G.              )
GRABHERR,                           )
         Defendants.                )
                                    )
_____ )
```

**MEMORANDUM AND ORDER**

September 6, 2005

Saris, U.S.D.J.

**I. INTRODUCTION**

Plaintiff ScanSoft, Inc. ("ScanSoft") brought this action for patent infringement against Voice Signal Technologies, Inc. ("VST") and for misappropriation of trade secrets and related claims against VST and several individual defendants. Plaintiff alleges that VST is infringing on U.S. Patent No. 6,501,966 (the "'966 patent"), entitled "Speech Recognition System for Electronic Switches in a Non-Wireline Communications Network," for which ScanSoft is the assignee. Claim 1 of the '966 patent reads:

> A speech recognition method for a mobile
> telecommunication system which includes a voice

-1-

>    recognizer capable of recognizing commands and
>    characters received from a mobile telecommunication
>    user, the method comprising the steps of:
>        receiving a command from the mobile
>    telecommunication user;
>        determining whether the command is a first or
>    second command type;
>        if the command is the first command type,
>    collecting digits representing a telephone number to be
>    dialed received from the mobile telecommunication user;
>    and
>        if the command is the second command type,
>    determining whether a previously stored telephone
>    number is associated with a keyword received from the
>    mobile telecommunication user.

'966 patent, col. 12, ll. 21-36.

The parties seek construction of three phrases in this claim: (1) "[a] speech recognition method for a mobile telecommunication system," (2) "command," and (3) "collecting digits representing a telephone number." The parties agree that none of these terms has, nor at the time of the invention had, unique technical definitions in the relevant art. See Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").

After a Markman hearing and review of the briefs, the Court adopts ScanSoft's construction of the first disputed phrase in claim 1 of the '966 patent and VST's construction of the second and third phrases.

-2-

## II. DISCUSSION

### A. Claim Construction Standard

The Federal Circuit recently clarified and expanded on the doctrine of claim construction in Phillips. Under that doctrine, the words of the claims themselves are central in defining the scope of the patented invention. See Phillips, 415 F.3d at 1312 (citing Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Claim terms are generally given their "ordinary and customary meaning," which is the "meaning that the term would have to a person of ordinary skill in the art in question ... as of the effective filing date of the patent application." Id. at 1313.

The words of the claims "must be read in view of the specification," id. at 1315 (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 978 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996)), which "'is always highly relevant to the claim construction analysis. Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term.'" Id. (quoting Vitronics Corp., 90 F.3d at 1582).

In using the specification to interpret a claim term, the court must "avoid the danger of reading limitations from the specification into the claim." Id. at 1323; see also id. ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

> [T]he distinction between using the specification to
> interpret the meaning of a claim and importing
> limitations from the specification into the claim can
> be a difficult one to apply in practice. See Comark
> Communications, Inc. v. Harris Corp., 156 F.3d 1182,
> 1186-87 (Fed. Cir. 1998) ("there is sometimes a fine
> line between reading a claim in light of the
> specification, and reading a limitation into the claim
> from the specification").  However, the line between
> construing terms and importing limitations can be
> discerned with reasonable certainty and predictability
> if the court's focus remains on understanding how a
> person of ordinary skill in the art would understand
> the claim terms.

Id.  "[A] court 'should also consider the patent's prosecution history,'" which, although "less useful" than the specification for claim construction purposes, may indicate "how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution."  Id. at 1317 (quoting Markman, 52 F.3d at 980).

Evidence extrinsic to the patent and prosecution history, including expert and inventor testimony, dictionaries, and treatises, is "less significant than the intrinsic record in determining the legally operative meaning of claim language." Id. (internal quotations omitted).  Such evidence "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence."  Id. at 1319.  The Phillips court rejected adopting "a dictionary definition entirely divorced from the context of the written description" and other intrinsic evidence.  Id. at 1321.  A trial court should "focus[] at the outset on how the patentee used the

claim term in the claims, specification, and prosecution history, rather than starting with a broad definition and whittling it down." Id.

**B. "for a mobile telecommunication system"**

The first dispute concerns the phrase "for a mobile telecommunication system" in the preamble of claim 1.[1]  ScanSoft asks the Court to construe this phrase as follows:

> "[M]obile telecommunications system" refers to "cellular, satelite [sic] and personal communications network environments." ['966 patent,] col. 3, ll. 46-48.  A network environment includes all components of a network, from the central office switching equipment, if any, to the mobile units (e.g., telephones, PDAs, and other communications devices) used therein.

VST counters with:

> A speech recognition method that is used by a mobile telecommunications system, as distinguished from a method used in a mobile (e.g. cellular) telephone.  A mobile telecommunications system is a network that connects mobile telecommunications customers each having a mobile telephone to other telephone customers.  A centrally located voice recognizer recognizes words received over a cellular or other non-wireline network.

As the parties agree, the major distinction between the two constructions concerns the physical location of the voice recognizer - that is, whether the voice recognizer may be located within each individual unit in a mobile telecommunications system or must be "centrally located."  In VST's accused device, the

---

[1] VST does not challenge ScanSoft's construction of the preceding phrase, "[a] speech recognition method," as "[a] process for recognizing commands and characters spoken by a user."  (See VST's Claim Constr. Mem. '966 Patent at 7.)

voice recognizer is located within each unit (e.g., mobile telephone).

VST argues that the written description defines the term "mobile telecommunication system" when it states, "A cellular mobile telecommunications system connects mobile telecommunications customers, each having a mobile unit, to land-based customers served by a telephone network." '966 patent, col. 3, ll. 35-38.  According to VST, this language distinguishes between a network, which connects customers, and the individual customers and their mobile units.  However, the specification of the '966 patent expressly defines "mobile telecommunications system": "As used herein, 'mobile telecommunications system' refers to cellular, satelite [*sic*] and personal communications network environments."  Id., col. 3, ll. 46-48; see Phillips, 415 F.3d at 1316 (If a specification "reveal[s] a special definition given to a claim term by the patentee .... the inventor's lexicography governs.").  The ordinary meaning of "environment" is not limited to one component of the environment.  To one of ordinary skill in the art, a cellular network environment includes all components of the network, from the switching equipment to the tower to the mobile communication devices such as car or cell phones.  (Balentine Decl. ¶¶ 63-64, 74-77.)

Seeking to overcome this broad definition of "mobile telecommunications system," VST argues that a voice dialing capability in a single mobile unit is not "a speech recognition

-6-

method for a mobile telecommunications system."  It reads this disputed phrase in the preamble as "[a] speech recognition method that is used *by* a mobile telecommunications system, as distinguished from a method used *in* a mobile (*e.g.* cellular) telephone" (emphasis added).  However, nothing in the language of claim 1 suggests such a crabbed reading of the preamble.

"Language in a preamble limits a claim where it breathes life and meaning into the claim, but not where it merely recites a purpose or intended use of the invention."  Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1118 (Fed. Cir. 2004) (citing In re Paulsen, 30 F.3d 1475, 1479 (Fed. Cir. 1994)); see also Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002) ("[A] preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'") (quoting Rowe v. Dror, 112 F.3d 473, 478 (Fed. Cir. 1997)).  In the context of the preamble to claim 1, use of the word "for" indicates the "object or purpose" of the '966 patent.  Random House Unabridged Dictionary 747 (2d ed. 1993); see The American Heritage Dictionary 686 (4th ed. 2000) ("used to indicate the object, aim, or purpose of an action or activity"); see also Phillips, 415 F.3d at 1322 ("Dictionaries ... are often useful to assist in understanding the commonly understood meaning of words and have been used both by our court and the Supreme Court in

claim interpretation."). Thus, the phrase "for a mobile telecommunications system" in the preamble is not a limitation on the location of the voice recognizer.

To support its narrow construction, VST looks beyond the bounds of claim 1, to the embodiments and the prior art of the '966 patent. See Innova/Pure Water, Inc., 381 F.3d at 1116 ("sources [of claim interpretation] include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence"). VST notes correctly that other parts of the '966 patent, including the Background of the Invention, '966 patent, col. 1, ll. 32-34, the Brief Summary of the Invention, id., col. 1, ll. 48-50, and the preferred embodiment, id., col. 4, ll. 14-16, indicate that the voice recognition system is centrally located at the mobile telephone exchange ("MTX"). However, "[i]f the claim language is clear on its face, then ... consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified." Tegal Corp. v. Tokyo Electron Am., Inc., 257 F.3d 1331, 1342 (Fed. Cir. 2001) (quoting Interactive Gift Express, Inc. v. Compuserve Inc., 231 F.3d 859, 865-66 (Fed. Cir. 2000)); see also Phillips, 415 F.3d at 1323 ("To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a

-8-

best mode for doing so."). Here, there is no definition of claim terms in the specification, either express or implied, to support a deviation from the language of claim 1. See Phillips, 415 F.3d at 1321 ("[T]he specification 'acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.'") (quoting Vitronics Corp., 90 F.3d at 1582).

Finally, VST argues that its narrower construction of the term "for a mobile telecommunication system" is necessary to preserve the validity of claim 1 because the prior art that was before the patent office includes products that utilized, and publications that described, a speech recognition method entirely internal to a mobile phone. While Phillips has reaffirmed "the maxim that claims should be construed to preserve their validity," a validity analysis is appropriate only when a court finds ambiguity "after applying all the available tools of claim construction." Id. at 1327 (quoting Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 911 (Fed. Cir. 2004)). Here, while VST may have validity defenses, the term is not ambiguous because of the express definition in the specification. The Court declines to consider arguments as to validity, which the parties have not fully briefed or argued, at this time. See id. ("[W]e have certainly not endorsed a regime in which validity analysis is a regular component of claim construction.").

**C.    "command"**

ScanSoft construes "command" as "a word, phrase, or numeric digit, alone or in combination with other words, phrases, and/or digits, used to direct the speech recognition system to take some action."  ScanSoft argues that a "command" is not limited to a word such as "dial," but can include the telephone number to be dialed, as in "dial 617-555-1212."  VST argues that a command simply "tells the voice recognizer what it should do next."  It contends that the word "command" can only mean "dial" (or its equivalent) because the user speaks a telephone number or a key word for the destination (i.e., "home") after the initial word.  See '966 patent, col. 6, ll. 48-51; id., col. 7, ll. 60-67.  The ordinary and customary meaning of the term "command" could be either: both "dial" and "dial 617-555-1212" are, in the ordinary sense, commands.

The answer lies partly in the language of the claim.  Claim 1 makes two distinctions.  It distinguishes between the "commands" and the "characters" that the invention recognizes when "received from a mobile telecommunication user." Id., col. 12, ll. 23-24.  It also distinguishes between a "command" and a "digit."  Id., col. 12, ll. 31-32.  An analysis of the specification elucidates the reason for these distinctions.  The specification describes the difference between the recognition of a "dial" command, with the collection of "digits" that follows, and a "call" command, which may be followed by a key word such as "home."  Id., col. 6, ll. 23-27, 47-50; id., col. 7, ll. 34-37,

-10-

60-61.

> If the user states and the system recognizes a "Dial" command, control is passed to the Dial Routine of FIG. 6....  If the system recognizes a "Call" Command, control is passed to the Call Routine of FIG. 7....
>
> ....
>
> Referring now to FIG. 6, the Dial Routine is described in detail.  At step 130, the Speech Recognition System prompts the user with a message, such as "Phone Number Please," and applies the speaker-independent recognizer to collect the digits....
>
> ....
>
> The Call routine is shown in detail in FIG. 7.  The routine begins at step 170 during which the Speech Recognition System responds to the user's "Call" command with a message "Calling."...
>
> ....
>
> A user may also retrieve the stored telephone number by speaking one of the speaker-independent key words.... Without limitation, such key words include HOME, OFFICE, TIME, SECRETARY, FRIEND, WORK and INFORMATION.

<u>Id.</u>, col. 6, ll. 23-32, 47-51; <u>id.</u>, col. 7, ll. 34-37, 60-67.

In the context of claim 1 and the patent as a whole, therefore, "command" refers only to the initial word or phrase used to tell the speech recognition system what to do next, and does not include the destination (i.e., the "home" key word) or the digits used for voice dialing.

### D. "collecting digits representing a telephone number"

ScanSoft construes "collecting digits representing a telephone number," in reference to a "first command type," as

"The speech recognition system collects a series of numbers that the system recognizes as a complete telephone number." VST construes this phrase as "The mobile telecommunications system, which includes a voice recognizer, must collect a series of spoken numbers that are a telephone number." The parties agree that the invention collects digits to be dialed. The difference is whether claim 1 includes "smart dialing." Smart dialing means that the speech recognition system has some artificial intelligence (provided by algorithms programmed into the system) that allows the system to determine automatically whether the user has spoken a complete telephone number. (Balentine Decl. ¶¶ 56-58, 71-72.)

In claim 1, the phrase "representing a telephone number" modifies the term "digits." It does not describe the *recognition* of those digits as a telephone number, or the recognition that an appropriate number of digits has been collected such that the digits constitute a telephone number. As VST argues, "representing a telephone number" merely requires that the digits correspond to a telephone number. See XIII The Oxford English Dictionary 658 (2d ed. 1989) (defining "represent" as "[t]o be the equivalent of, to correspond to"); The Random House Dictionary of the English Language 1635 (2d ed. unabr. 1987) ("to be the equivalent of; correspond to").

ScanSoft argues that "smart dialing" is an integral part of the invention and that the specification explicitly describes

-12-

this feature of the invention in its preferred embodiment.  See '966 patent, col. 7, ll. 5-11.  Indeed, the specification states that the invention tests whether a digit "is the last digit expected in the string."  Id.  Essentially, ScanSoft asks the Court to import this limitation from the specification in the same way that VST seeks to import limitations on the phrase "for a mobile telecommunication system."  But there is an old patent maxim: sauce for the goose is sauce for the gander.  There is no indication that "smart dialing," to the extent it is described in the specification, should be read into the otherwise clear language of claim 1.  See Phillips, 415 F.3d at 1323.

ScanSoft also argues that VST's construction effectively reads the term "representing" out of claim 1.  See Innova/Pure Water, Inc., 381 F.3d at 1119 ("While not an absolute rule, all claim terms are presumed to have meaning in a claim.").  "Representing" has no meaning, ScanSoft argues, unless the invention collects digits *and* recognizes the digits as a complete telephone number.  However, the Court may no more read the term "recognize" into claim 1 than it may read the term "represent[]" out of claim 1.  See Biovail Corp. Intern. v. Andrx Pharmaceuticals, Inc., 239 F.3d 1297, 1301 (Fed. Cir. 2001) ("As a general proposition, a limitation that does not exist in a claim should not be read into that claim.").  In an ordinary and customary reading of claim 1, the digits collected in a "first command type" "represent[] a telephone number" in the sense that

-13-

the digits comprise that telephone number.  Therefore, the Court adopts VST's construction.

### III.  CLAIM CONSTRUCTION

1.  The term "for a mobile telecommunication system" in claim 1 of the '966 patent, refers to cellular, satellite and personal communications network environments.  A network environment includes all components of a network, from the central office switching equipment, if any, to the mobile units.

2.  The word "command," as used in claim 1, means a word, phrase, or number that tells the voice recognizer what to do next, but the term does not specify what the command must be.

3.  The phrase "collecting digits representing a telephone number" in claim 1 means that the mobile telecommunications system, which includes a voice recognizer, must collect a series of spoken numbers that are a telephone number.

**S/PATTI B. SARIS**
United States District Judge
