UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., <br><br> Plaintiff, <br><br> v. <br><br> VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR, <br><br> Defendants. | C.A. No. 04-10353-PBS |

**MOTION TO DISQUALIFY GOODWIN PROCTER LLP
FROM REPRESENTING SCANSOFT IN THIS CASE**

Defendant Voice Signal Technologies, Inc. ("Voice Signal") hereby moves to disqualify the law firm of Goodwin Procter LLP ("Goodwin") from representing plaintiff ScanSoft, Inc. ("ScanSoft") in this case.[1]

**BACKGROUND**

The original complaint in this case was filed on February 20, 2004. On the same day (which happened to coincide with the industry's largest trade conference), ScanSoft issued a press release announcing the lawsuit. Exhibit A to Declaration of Daniel Roth filed herewith. The Complaint alleged that: (1) Voice Signal, through the hiring of ex-Dragon employees, misappropriated trade secrets in which ScanSoft had an interest; and (2) Voice Signal's products infringe U.S. Patent No. 6,501,966 (the "ScanSoft Patent"). During the weeks after the lawsuit

---

[1] Pursuant to Local Rule 7.1, counsel for Voice Signal met and conferred with attorneys from Goodwin before filing this motion. First, upon learning that Goodwin had entered an appearance, Robert Frank called Mr. Ware at Goodwin and informed him that Voice Signal viewed Goodwin's representation of ScanSoft in this case as a conflict of interest. Then, on October 20, 2005 Robert Frank met with Kenneth Cohen, who was designated by Goodwin, to detail the grounds for this motion and ask that Goodwin withdraw its appearance. On October 26, 2005, Mr. Cohen informed Mr. Frank that Goodwin would not voluntarily withdraw its appearance.

was filed, Voice Signal, through its president, its CEO and other executives, met with lawyers at two law firms to assess Voice Signal's position, strategy and options in response to the ScanSoft lawsuit. Those two firms were: (1) Choate, Hall & Stewart LLP ("Choate"), which had represented Voice Signal in the state court action in 2001-2002 involving many of the same claims; and (2) Goodwin, which was a firm then known to Voice Signal because it represented (and continues to represent) Voice Signal's largest investor, Ray Stata Venture Partners, on an ongoing basis.[2] The lawyers at Goodwin with whom Voice Signal met were Paul Ware and Anthony Downs.

Voice Signal's senior management met in person with Messrs. Ware and Downs on at least two occasions for several hours. Declaration of Daniel Roth ("Roth Decl.") ¶ 7. There were attendant communications between Voice Signal and Goodwin by telephone and e-mail. *Id.* ¶7. Voice Signal discussed with Mr. Ware and his team at Goodwin strategic assessments of, and sought advice relating to: Voice Signal's then current and potential products and their features; Voice Signal's then current and potential customers and pricing; ScanSoft's allegations of patent infringement; in court and out of court avenues to attack the validity of ScanSoft's patent; ScanSoft's allegations of trade secret misappropriation; Voice Signal's potential counterclaims; Voice Signal's potential design changes and settlement strategies.[3] *Id.* ¶ 9. The

---

[2] Goodwin represented Stata Ventures in its investment in Voice Signal in 2000. Roth Decl. ¶ 5. In connection with its representation, Goodwin had access to Voice Signal's confidential financial and business information and documentation. *Id.* Presumably because of that representation, Goodwin has in the past withdrawn from representation adverse to Voice Signal. *Id.* In particular, Goodwin initially represented Vos Systems in a litigation against Voice Signal. When Goodwin learned of the conflict with its relationship with Stata Ventures, Goodwin withdrew as Vos Systems' counsel. *Id.*

[3] The specific communications from Voice Signal to Goodwin and the advice provided by Goodwin to Voice Signal are protected by the attorney client privilege. Voice Signal believes this motion can be decided based upon the categories of issues discussed and the categories of advice rendered by Goodwin. *See Bays v. Theran*, 418 Mass. 685, 693 (1984) (the court need not conduct *in camera* hearing where the court could infer from the "nature, topics and extent of the communications" that confidential information was transmitted to attorneys). However, if the Court determines that the specific communications are necessary to its determination, those communications can be

communications over e-mail were marked by Goodwin as "PRIVILEGED." *Id.* ¶ 11. In order to have meaningful discussions with Goodwin, Voice Signal shared with Goodwin confidential information regarding, among other things, its products; its prior art searches; its customers; its pricing; its business model and business strategy; its patent portfolio; and its litigation and settlement strategies and tolerances. *Id.* ¶ 10.

After the two face-to-face meetings with Mr. Ware and his team at Goodwin, and several communications by telephone and e-mail, Voice Signal chose Choate to represent Voice Signal in this litigation. *Id.* ¶ 13.

ScanSoft has been represented in this litigation from the outset by Bromberg & Sunstein. On September 28, 2005, with no explanation, three attorneys from Goodwin filed notices of appearance on behalf of ScanSoft. *See* Docket Nos. 289-291. The most senior and lead lawyer of the three is Mr. Ware.[4]

## ARGUMENT

Pursuant to United States District Court Local Rule 83.6(4)(B), this Motion is governed by the Commonwealth of Massachusetts Rules of Professional Conduct, codified as Rule 3:07 of the Rules of the Supreme Judicial Court. The Supreme Judicial Court has confirmed that, where an attorney-client relationship has been created and where confidences have been shared by the client with its attorney, the attorney should be disqualified from representing an adverse party if the confidences transmitted have a substantial relationship to the issues involved in the litigation. *Adoption of Erica*, 426 Mass. 55, 61 (1997) (applying the substantial relationship test to a claim of conflict of interest and noting that the Massachusetts Rules of Professional Conduct "specifically incorporate the test."). The Supreme Judicial Court's analysis is grounded in the

---

conveyed through *in camera* testimony and documentary evidence. *See e.g., Rodriguez v. Montalvo*, 337 F. Supp. 2d 212, 218-19 (D. Mass. 2004) (*in camera* review of attorney's files).
[4] The other two are Douglas Kline and Daniel Forman.

Massachusetts Rules of Professional Conduct. Specifically, Rule 1.9 incorporates the "substantial relationship" test:

> Rule 1.9 Conflict of Interest: Former Client
>
> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.[5]

Under this "substantial relationship" test, a former client need not show that the attorney actually misused confidences. Rather, the attorney must be disqualified upon a showing that (1) there was an attorney-client relationship; and (2) the former and current representations are "substantially related." Under the substantial relationship test, representation adverse to the former client in a substantially related matter is proscribed "on the sole ground that the later suit, simply because of the substantial relation to the former one, exposes the attorney to an intolerably strong temptation to breach his duty of confidentiality to the former client. The former client need never prove that the attorney *actually* misused the confidences to the client's disadvantage." *Bays v. Theran*, 418 Mass. at 691 (quoting Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1318 (1981)).

Here, both prongs of the substantial relationship test are met. It is well settled under Massachusetts law that an attorney-client relationship may arise from preliminary consultations

---

[5] Here, Rule 1.9(a) applies because the same lawyer, Mr. Ware, had an attorney-client relationship with Voice Signal and now seeks to represent ScanSoft. Even if Mr. Ware were to step aside, Goodwin would be precluded from representing ScanSoft pursuant to Rule 1.9(b), which provides:

> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
> (1) whose interests are materially adverse to that person; and
>
> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter, unless the former client consents after consultation.

4

with counsel, even if counsel are not ultimately retained and even if no fee is paid. In *Bays v. Theran*, the Supreme Judicial Court considered whether an attorney-client relationship was formed by preliminary telephone conversations with an attorney where no fee was paid and the client did not retain the attorney to represent him in the case. The Court held:

> An attorney-client relationship need not rest on an express contract. An attorney-client relationship may be implied 'when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters with the attorney's professional competence, and (3) the attorney expressly or implicitly agrees to give or actually gives the desired advice or assistance.'

*Bays v. Theran*, 418 Mass. at 690 (quoting *DeVaux v. American Home Assurance Co.*, 387 Mass. 814, 817-818 (1983). *See also Mailer v. Mailer,* 390 Mass. 371, 374 (1983) (whether the client has paid a fee is not conclusive); *Commonwealth v. O'Brien*, 377 Mass. 772, 775 (1979) (attorney-client relationship and privilege can extend to preliminary communications "even if representation is never undertaken.").

Voice Signal's senior executives spoke with and met with Mr. Ware and his team at Goodwin in late February and early March 2004 for the purpose of seeking advice. Specifically, Voice Signal sought an assessment of ScanSoft's patent; a legal assessment of ScanSoft's claim of infringement; an assessment of ScanSoft's claims for trade secret misappropriation and a discussion of potential litigation, settlement and business strategies for Voice Signal. Roth Decl. ¶9. Voice Signal discussed with Mr. Ware and his team at Goodwin potential options to design around ScanSoft's patent and the business implications of any such design charges. *Id.* Voice Signal also shared with Goodwin confidential information about its then current and potential customers, its pricing strategy and its margins. *Id.* ¶10. In order to seek Goodwin's advice and to assess whether to retain Goodwin as counsel for this litigation, Voice Signal shared with Goodwin both publicly available information (*e.g.*, pleadings in the state court action) and

5

confidential information (*e.g.*, internal assessments of the validity of ScanSoft's patent and possible attacks on its validity; detailed information about the accused Voice Signal product; detailed information relevant to ScanSoft's trade secret misappropriation claims). *Id.* Voice Signal also sought and received Goodwin's advice with respect to a strategy to narrow or invalidate ScanSoft's patent through re-examination in the United States Patent Office. *Id.* ¶ 12. Voice Signal's executives believed their communications with Goodwin were confidential. They relied on the protection of the attorney-client privilege in providing Voice Signal's confidences to Goodwin. *Id.* ¶ 11. Goodwin confirmed Voice Signal's expectation of confidentiality and marked its e-mails to Voice Signal with the word "PRIVILEGED" at the top. *Id.*

The advice Voice Signal sought was indisputably within the Goodwin attorneys' professional competence. *Bays*, 418 Mass at 690. Mr. Ware is listed by Goodwin as a partner in its Intellectual Property Litigation practice. In fact, Mr. Ware is listed as the primary contact for the Boston office of Goodwin for intellectual property litigation. *See* http://www.goodwinprocter.com (follow "Practices" hyperlink; then follow "Intellectual Property Litigation" hyperlink.) After his initial meeting with the Voice Signal representatives, Mr. Ware sent Voice Signal a list of patent trials and patent cases in which he had served as counsel, including at least one patent case in which he represented a party before this Court. Roth Decl. ¶ 2.

Mr. Ware and his team at Goodwin did, in fact, give legal advice and assistance. Roth Decl. ¶ 12. The attorneys consulted with Voice Signal on strategies to invalidate ScanSoft's patent, providing Voice Signal with potentially useful prior art references. *Id.*. The attorneys also consulted with and advised Voice Signal concerning strategies to design around the

6

ScanSoft patent and concerning potential counterclaims. *Id.* ¶ 9. In addition, Goodwin gave advice regarding extra-litigation strategies to avoid or invalidate the ScanSoft patent. *Id.* ¶ 12.

This case is on all fours with *Bays*. At issue in the underlying litigation in *Bays* were allegations that a real estate developer defendant made misrepresentations concerning the common area percentages in a condominium development. The court below found that the plaintiff spoke with the attorney "two or three times by telephone for less than ten minutes on each occasion;" that during these telephone conversations the plaintiff "went into the complete background concerning how those percentages came about and how they were originally determined;" and that the plaintiff had forwarded to the attorney "Registry documents" and "copies of letters he had written and received." *Id*. at 688. The court below also found that the attorney advised the plaintiff "with respect to some of the basic legal considerations." *Id.* Although the plaintiff never met with the lawyer, was never billed and never paid a fee, the court below found, and the Supreme Judicial Court upheld, the existence of an attorney client relationship in which confidences were conveyed. *Id.*

Here, as in *Bays*, Voice Signal believed its consultation with Mr. Ware and his team at Goodwin was confidential. As a result, Voice Signal conveyed to Goodwin confidential information concerning the issues at the very core of this lawsuit: patent validity; patent infringement; trade secret misappropriation; potential counterclaims; litigation and extra-litigation strategies; and settlement strategies and tolerances. Consistent with the Supreme Judicial Court's decision in *Bays*, the Court should disqualify Goodwin based on the undisputable evidence that, *in fact*, Voice Signal believed that its consultation with Goodwin were confidential and shared confidential information with Goodwin regarding the precise issues involved in this litigation.

7

There also can be no dispute that the second prong of the substantial relationship test is met. Goodwin's attorney-client relationship with Voice Signal is substantially related to this litigation in which Goodwin now seeks to represent Voice Signal's opponent. *It is the same case*. Therefore, Goodwin must be disqualified. *See Bays,* 418 Mass at 691 (1994) (disqualifying an attorney who had two preliminary telephone conversations with plaintiff about common area percentages in a condominium development from representing defendant developer in lawsuit alleging developer made misrepresentations concerning common area percentages); *Valdez v. Domericoni*, 2 Mass.L.Rptr. 627 (Mass. Super. 1994) (disqualifying attorney from representing plaintiff based on a finding that the attorney had conversations with the defendant "about the subject of the present case"); *Rodriguez v. Montalvo*, 337 F. Supp. 2d 212 (D. Mass. 2004) (disqualifying attorney who had been a supervising attorney at the Massachusetts Justice Project when plaintiff contacted Project and spoke with paralegals about her case from representing the defendant in the case). *Cf. Adoption of Erica*, 426 Mass. 55 (1997) (finding no substantial relationship between attorney's former representation of grandfather of child and current representation of child as guardian ad litem in adoption case); *Ebix.com v. McGracken*, 312 F. Supp. 2d 82 (D. Mass. 2004) (denying motion to disqualify based on detailed claim-by-claim finding that former representation of corporation's predecessor was not substantially related to present lawsuit).

## CONCLUSION

Goodwin should be disqualified from appearing in this case on behalf of ScanSoft. In addition, to the extent Goodwin has already engaged in work on behalf of ScanSoft related to this litigation or to any of its disputes with Voice Signal, that work is tainted by the same conflict

4002573v1

of interest. Goodwin should be required to divulge to the Court the nature of any work it has performed and the advice rendered in order that the Court can make an appropriate determination of how best to protect Voice Signal from any prejudice in this case.

Respectfully submitted,

Dated: October 28, 2005

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,

/s/ Wendy S. Plotkin
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

CERTIFICATE PURSUANT TO LOCAL RULES 7.1

I certify that counsel for Voice Signal conferred with counsel for ScanSoft on October, 20, 2005 (Goodwin) and October 28, 2005 (Bromberg & Sunstein) in an effort to resolve the issues presented in this motion and that the parties were unable to reach an agreement.

/s/ Wendy S. Plotkin
Wendy S. Plotkin

4002573v1