UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VOICE SIGNAL TECHNOLOGIES, INC., )<br>LAURENCE S. GILLICK, ROBERT S. )<br>ROTH, JONATHAN P. YAMRON, and )<br>MANFRED G. GRABHERR, )<br>)<br>Defendants. )<br>) | C.A. No. 04-10353-PBS |

**DECLARATION OF DANIEL ROTH IN SUPPORT OF VOICE SIGNAL'S MOTION
TO DISQUALIFY GOODWIN PROCTER LLP
FROM REPRESENTING SCANSOFT IN THIS CASE**

I, Daniel Roth, depose and say the following based on my personal knowledge.

1. I am President of Voice Signal Technologies, Inc. ("Voice Signal"). I make this declaration in connection with Voice Signal Technologies, Inc.'s Motion to Disqualify Goodwin Procter LLP from Representing ScanSoft in this Case.

2. I am co-founder, with Tom Lazay, of Voice Signal. We founded the company in 1995 after our graduation from college. Voice Signal is now the provider of voice recognition interfaces for mobile phones for several of the world's largest manufacturers, including Motorola, Samsung, and Nokia. Richard Geruson is the CEO.

3. On or about February 20, 2004, I learned that ScanSoft had filed this litigation against Voice Signal and several of its employees. I learned of the lawsuit from a press release

4004779v1

attached hereto as Exhibit A. I believe the press release was timed to coincide with the industry's largest trade conference, 3GSM.

4. After learning of the suit, I contacted attorneys at Choate, Hall & Stewart ("Choate"), who had represented Voice Signal in the state court action against the company brought by Lernout & Hauspie ("L&H") in 2001, which was settled with the bankruptcy trustee for L&H in early 2003. I also contacted lawyers at Goodwin Procter LLP ("Goodwin"). I was aware at the time that Goodwin attorneys had represented our largest investor, (Ray) Stata Venture Partners ("Stata Ventures"), in a number of legal matters. Several members of the executive team including both Rich Geruson and I met with Choate and Goodwin to seek their advice on our best strategies going forward so as to decide on which should represent us.

5. Goodwin represented Stata Ventures in its investment in Voice Signal in 2000. In connection with its representation, Goodwin had access to Voice Signal's confidential financial and business information and documentation. Goodwin has in the past withdrawn from representation adverse to Voice Signal. In particular, Goodwin initially represented Vos Systems in a litigation against Voice Signal. When Goodwin learned of the conflict with its relationship with Stata Ventures, Goodwin withdrew as Vos Systems' counsel.

6. The lawyer with whom I spoke at Goodwin was Paul Ware, is an intellectual property litigator in that firm. I had discussions with other lawyers at Goodwin, including Tony Downs, whom I understood also to be a partner in Goodwin's intellectual property practice area. After our first meeting, Mr. Ware sent me a list of patent cases in which he served as counsel, including at least one case that was then pending in this court.

7. Rich Geruson and I had at least two meetings with Mr. Ware and his team at Goodwin, lasting for several hours, on Thursday, February 26 and again on Monday, March 3,

2005. I was present in person at Goodwin's offices for both meetings. Mr. Geruson participated in the March 3 meeting by telephone. In addition to these two meetings, I personally had several telephone calls and exchanged e-mails with Mr. Ware and other lawyers on his team about the case.

8. I have been advised by counsel that the communications we had with Mr. Ware and his team at Goodwin are protected by the attorney – client privilege and that I should not reveal them in this public document. I will therefore explain the topic areas covered in our communications and the types of advice we sought from the Goodwin lawyers in our consultations. If the Court determines that the details of the information shared with Goodwin or the advice given by Goodwin are necessary to decide this motion, I will make myself available to testify and will provide any e-mails and documents I have reflecting those details.

9. During our meetings and telephone conversations with Goodwin, we discussed the following topics: our assessment and Goodwin's of ScanSoft's patent; Goodwin's legal assessment of ScanSoft's claim of infringement; Goodwin's legal assessment of ScanSoft's claims for trade secret misappropriation. We discussed potential litigation and business strategies for Voice Signal, as well as potential options to design around ScanSoft's patent and the business and technology implications of any such design charges. We also discussed settlement strategies and Voice Signal's tolerance for settlement options.

10. In order to have meaningful discussions with Goodwin and for us to make an assessment of their legal advice, we shared with Goodwin confidential information regarding, among other things, detailed descriptions of our products; descriptions of the prior art searching we had performed and the most promising prior art found as of the date of the meetings; our ideas about potential design changes to our product which might minimize the risk that our

3

products could be found to infringe the ScanSoft Patent; our then current customers and potential customers; our pricing and pricing strategy; our business and corporate strategic plan. We shared with Goodwin our description of Voice Signal's pending patent applications in order to discuss present or future counterclaims against ScanSoft. We also shared with Goodwin publicly available information (*e.g.*, pleadings in the state court action).

11. The attorneys at Goodwin assured us that the discussions were covered by attorney-client privilege and that we could feel free to share any and all information that we felt was pertinent to the case. Mr. Downs marked his e-mail communications to me with the legend "PRIVILEGED."

12. Mr. Ware and his team at Goodwin did, in fact, give us legal advice and assistance. The attorneys consulted with us on strategies to invalidate ScanSoft's patent, including providing Voice Signal with potentially useful prior art references. The attorneys also consulted with and advised Voice Signal concerning strategies to design around the ScanSoft patent and concerning potential counterclaims. In addition, Goodwin gave advice regarding a potential strategy to narrow or invalidate the ScanSoft patent through a re-examination procedure in the United States Patent Office.

13. After the meetings with Mr. Ware and his team at Goodwin, and other communications by telephone and e-mail, Voice Signal chose Choate to represent Voice Signal in this litigation.

Signed under the pains and penalties of perjury this 28 day of October, 2005

4

4004779v1

_____
Daniel Roth

5

4004701v1