UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-10353-PBS |
| ) | |
| VOICE SIGNAL TECHNOLOGIES, INC., ) | |
| LAURENCE S. GILLICK, ROBERT S. ) | |
| ROTH, JONATHAN P. YAMRON, and ) | |
| MANFRED G. GRABHERR, ) | |
| ) | |
| Defendants. ) | |

SUPPLEMENTAL DECLARATION OF J. ANTHONY DOWNS
REGARDING MOTION TO DISQUALIFY
GOODWIN PROCTER LLP

I, J. Anthony Downs, depose and say the following, based on my personal knowledge.

1.  I have read Voice Signal Technologies, Inc.'s ("VST") Reply Memorandum in Support of its Motion to Disqualify Goodwin Procter LLP. I have also read the Second Declaration of Daniel Roth in Support of Voice Signal's Reply ("Second Roth Declaration").

2.  In these papers, VST tries to portray the conversations between VST and Goodwin as being something more than what they were, which was a preliminary discussion about whether VST was going to hire Goodwin to represent it. There were only two short meetings, the first of which was largely introductory, as even VST and Mr. Roth appear to agree. The second meeting did focus more on certain aspects of the case, but only on a preliminary basis. It was a job interview, and Goodwin was not hired. Mr. Roth's Second Declaration describes several categories of information that he says were discussed in those meetings. His

characterization of what occurred is inconsistent with my recollection, as it suggests a level of detail or specificity about our discussion that I do not believe is accurate. I address the categories below.

3. **Design-Arounds:** VST's Reply Brief says that it discussed product modifications with me that have not yet been introduced and that "[I do] not deny that design-alternatives were discussed." Reply Brief at 4. I do not know what VST is talking about regarding design-arounds. I have no recollection and no record of any discussion of design-arounds. In the Second Roth Declaration, Mr. Roth does not explicitly say that he told me or Goodwin about multiple possible design-arounds. He acknowledges that one design change has been publicly implemented. I do not know, and do not believe I ever knew, the details of any such design change, or about the "one or more others" that "have not yet been introduced." On this subject, I do not have, and have no reason to believe that anyone at Goodwin has, any information that would or could be prejudicial to VST in this litigation.

4. **Finances, Customer Accounts & Damages:** The Second Roth Declaration states that VST discussed its "financials, . . . pricing agreements and the potential damage exposure if [it] were found liable." Second Roth Declaration ¶ 4. I do not recall receiving any of this information from VST, either orally or in writing. To the best of my recollection, VST did not show us or give us its financial statements, nor did it discuss with me whether it was profitable, or how much revenue or profit it had received from sales of accused products. I do not recall, and do not believe, that VST ever described, showed me or gave me copies of its license agreements with customers or any other document that could be construed as a "pricing agreement." As I stated in my previous declaration, VST apparently told me information about the average price for a VST chip; however, I do not know what period of time that information

pertained to and I do not believe VST provided me with any other information concerning product pricing. Mr. Roth's new declaration also says he "shared with the attorneys information about our business development status in key customer accounts." I do not know what that means, or whether it was or is now confidential more than a year later, and I have no recollection of any such discussion. As to damages, I do not recall discussing what a reasonable royalty for the accused products might be and I have no idea of even the approximate amount of sales of accused products. I do not believe we discussed the amount of money VST might be held liable for if it lost this suit. If there was any discussion, it would have been at a very high level of generality, and would have pertained to the state of affairs in March 2004, more than a year and a half ago, when the litigation had only just been filed.

5. **Settlement:** Mr. Roth's first declaration stated that he discussed with Goodwin "settlement strategies and Voice Signal's tolerance for settlement options." I responded to that previously. Now, the Second Roth Declaration states that, "perhaps most significantly," VST shared its "tolerance for settlement, *including monetary amounts we might consider to settle this case.*" *Id.* ¶ 5 (emphasis added). I do not believe VST ever told us a monetary amount it might consider to settle this case and I have no idea what amount, or range of amounts, VST would be willing to consider to settle this case (or whether it would be asking for money or seeking to pay money to settle). I have no notes of a discussion of settlement or proposed amounts. I would be surprised if any meaningful discussion about settlement amounts could have occurred at our discussions in March 2004, given that the case had only just been filed and Goodwin was in no position to meaningfully evaluate or even comment upon any potential settlement strategy.

6. **Prior Art and Reexamination:** The Second Roth Declaration states that Mr. Roth and I had a telephone conversation in which I described the "relative merits of pursuing [a

reexamination] strategy in light of the prior art Voice Signal and Goodwin had uncovered as of that time." *Id.* ¶ 9. A review of my files indicates that VST did not provide me with any prior art references and I have no notes that VST mentioned any specific prior art references that they had located or identified, or would seek to use in this case. I provided them with a few prior art references based on a short search. I don't know what Mr. Roth means by his reference to the "relative merits" of a reexamination strategy, but as I previously stated a reexamination filing is always a possibility in a case where there is potential prior art that was not cited to the Patent Office during prosecution. My knowledge of the patent in this case was limited, and I had not read or considered the file history. I do not recall coming to the conclusion, and would not have, under these circumstances, that filing a request for reexamination in this instance was a good idea or a bad idea, or that it was likely or unlikely to provide benefit to the litigation.

7. **Prior State Court Action:** VST's Reply Brief states that Goodwin "provided its views with respect to" the preclusive effect of the prior state court action on ScanSoft's trade secret claims and that "Goodwin's statements with respect to that subject were legal advice." *Id.* at 7. As was the case with the topic of reexamination, I may have said something to the effect that it "looks like you might have a good argument," based on a cursory review of the documents. However, I did not recommend any particular course of action to VST, other than to perhaps suggest they consider summary judgment.

4

I declare under penalty of perjury that the foregoing is true and correct. Executed December 9, 2005.

                                                                    J. Anthony Downs