UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | C.A. No. 04-10353-PBS |
| ) | |
| VOICE SIGNAL TECHNOLOGIES, INC., ) | |
| LAURENCE S. GILLICK, ROBERT S. ) | |
| ROTH, JONATHAN P. YAMRON, and ) | |
| MANFRED G. GRABHERR, ) | |
| ) | |
| Defendants ) | |

**[PROPOSED] NEUTRAL EXPERT PROCEDURE**

At the *Markman* hearing on June 17, 2005, and thereafter, this Court directed the parties to select a neutral expert to assist the Court by (1) examining the parties' confidential, proprietary speech recognition source code (as further defined below) and (2) reporting to the Court whether the materials examined contain any evidence relevant to, or likely to lead to the discovery of relevant evidence of, ScanSoft's claims of trade secrets misappropriation and/or VST's counterclaim of patent infringement. The parties have now agreed on Dr. Hermann Ney as a neutral expert, who has agreed to serve. Accordingly, the Court orders that the following neutral expert procedure be followed in this case.

1. The Court appoints Dr. Ney as a neutral expert (the "Expert") to assist the Court in this case.

2. The Expert will be bound by this Court's Protective Order and will sign the confidentiality undertaking included therein. The Expert will not use or disclose any confidential

materials provided to him, including the source code, or any insights gained from it, except for the purposes of this litigation.

3. The Expert will bill his time at an agreed rate ($2,000/day), and the parties will each pay 50% of his fees and expenses in this engagement.

4. At issue is whether certain speech recognition products developed, marketed, and sold by VST incorporate or rely on trade secrets misappropriated from ScanSoft (including ScanSoft's predecessors-in-interest Dragon Systems, Lernout & Hauspie, Phillips, and Kurzweil). Also at issue is whether certain speech recognition products developed, marketed, and sold by ScanSoft infringe certain claims of VST's United States Patent No. 6,594,630 ("the '630 patent").

5. The term "VST Source Code" refers to the source code for those VST speech recognition products alleged to be based on ScanSoft's trade secrets, including (a) source code (including all header and include files) for the speech recognition engines; and (b) source code (including all header and include files) for tools used to build acoustic models, language models, and other data structures for VST's speech recognition products, including but not limited to ELVIS, VST's VSuite, VMode, VoiceTag, and any VST products using the ELVIS technology.

6. The term "ScanSoft Source Code" refers to the source code (including all header and include files) for those ScanSoft speech recognition engines alleged to infringe the '630 patent, which VST has identified as VoCon 3200, VoCon SF, ASR 1600, and ASR 3200.[1]

---

[1] In considering VST's claim that ScanSoft infringes the '630 patent, the Expert shall limit his review to those versions of ScanSoft's accused speech recognition engine source code made, used, sold, and/or offered for sale after July 15, 2003, the date that the '630 patent issued.

7.  Within thirty (30) days of the entry of this Order, VST shall produce to the Expert and to opposing counsel the VST Source Code, complete and unredacted, in the form described in Paragraph 9 below. Likewise, ScanSoft shall produce to the Expert and to opposing counsel the ScanSoft Source Code, complete and unredacted.

8.  In accordance with Fed. R. Civ. P. 34(a), the VST Source Code and ScanSoft Source Code shall be produced on a personal computer and in electronic form, as it is kept in the ordinary course of business, and in a form that is useable, executable, and computer searchable. The parties' respective Source Code must be capable of being compiled and run by the Expert on the personal computer supplied by the parties. At a minimum, the VST Source Code and ScanSoft Source Code should be accompanied by the following documentation and files (hereafter collectively the "Source Code Documentation"):

   a. documentation describing the various modules used in the Source Code, including technical documentation and development documentation;

   b. information identifying all third party libraries necessary to build the Party's speech recognition products;

   c. all project and workspace files that describe how to build the source code into executables, all "make files" and configuration files containing information used to configure all build tools used by the party;

   d. all software and tools necessary to examine each party's Source Code for its speech recognition products including all executable programs and scripts used to generate the files of the party's Source Code from the party's version control or archive system;

   e. all build tools including all executable programs and interpretable scripts used to generate, compile, link, construct, or otherwise build the party's speech recognition engine and source code tools including without limitation compilers, linkers, makefile engines, scripting engine and tools used to construct any acoustic, language, or other speech recognition model employed by the party;

   f. all version information including the source code control, version control, and/or archival system used by the party in its Source Code including all data files, databases, and configuration files used by any version control employed by the party. In the event that VST does not have source code control, version control and/or an archival system of its Source Code for

3

the period between October 2000 and February 2002, VST shall produce each successive version of the VST Source Code for the aforementioned time period. In the event ScanSoft does not have source code control, version control and/or an archival system of the ScanSoft Source Code for the period July 2003 to the present, ScanSoft shall produce each successive version of the ScanSoft Source Code for the aforementioned time period.

9. Within thirty (30) calendar days of the entry of this Order, VST shall also produce to the Expert and to opposing counsel all VST Source Code created and/or modified by, and all documents authored by or relating to, the work of individual defendants Gillick, Roth, Yamron and Grabherr during their first full year of work at defendant VST, in complete and unredacted form (hereafter collectively the "First Year Documents").

10. Within thirty (30) calendar days of the entry of this Order, both parties shall produce to each other, in complete and unredacted form, all documents relating to, evidencing, and/or concerning the development, production, and/or operation of the accused speech recognition products, including but not limited to brochures, advertisements, product guides, engineering guides, user manuals, technical manuals, specifications, schematics, memoranda, reports, notes, and operating instruction (hereafter collectively the "Technical Documents"). The Technical Documents may be used to help educate the Expert as to the parties' claims.

11. The VST Source Code, ScanSoft Source Code, Source Code Documentation and First Year Documents will be designated as "Highly Confidential" under this Court's protective order but with the additional provision that only outside counsel of record and the Expert may have access to the VST Source Code and ScanSoft Source Code. No employee of a party, independent experts retained by a party, or others may have access to the other party's Source Code until further order of the Court. All persons qualified to receive Highly Confidential information under the Protective Order may receive the First Year Documents (other than

parties' respective Source Code), however.  To the extent appropriate, the Technical Documents may be designated "Confidential" or "Highly Confidential" under the Protective Order.  All persons qualified to receive such Confidential and Highly Confidential information under the Protective Order may receive the Technical Documents.

12.     Within twenty-one (21) calendar days after receiving the other party's Source Code, the First Year Documents, and the Technical Documents, as specified in Paragraphs 5 through 10 above, each party shall produce to the Expert and opposing counsel a brief outlining that party's contentions in this case and guiding the Expert's review of the other party's Source Code, First Year Documents, and Technical Documents.  The parties may include specific questions for the Expert to investigate and answer.  All briefs will be designated as "Highly Confidential" under the Protective Order--that is, shared only with the Expert and opposing counsel and concurrently filed under seal with the Court.  Either party may redact any detailed disclosure of its trade secrets (hereafter, the "Trade Secrets Information") from the briefs served upon opposing counsel, subject to further order of the Court.  The submissions to the Expert, however, shall make clear what Trade Secrets Information has been redacted from the briefs served on opposing counsel so that the Expert will not reveal the Trade Secrets Information to the other party.

13.     The parties shall have the opportunity, at the Expert's convenience, to meet with the Expert in person or by telephone.  The meetings will be *ex parte*, and shall be recorded by a court reporter provided by the parties.  The Expert may request follow-up meetings, documentation, software, and other materials as needed to complete his analysis. The purpose of the meetings is to guide the Expert on what to look for in the VST Source Code, ScanSoft Source Code, Source Code Documentation, First Year Documents, and Technical Documents--*i.e.*,  for

5

alleged evidence of trade secrets or patent infringement, as the case may be. The Expert shall not disclose one party's Trade Secrets Information, or the content of *ex parte* communications with that party, to the other party.

14. The Expert shall not conduct any independent investigation regarding the parties' claims and defenses or any other aspect of the underlying litigation. Nor shall the Expert contact any party (other than outside counsel) or witness in this case regarding this litigation.

15. After receiving all briefings and presentations, and after a sufficient period of review, the Expert shall issue a draft of his report to the parties. The parties may then depose the Expert, as this Court suggested at the *Markman* hearing, to test his analysis. After the depositions, if any, the Expert shall finalize and issue his report under seal to this Court, as the Court requested in its electronic order of July 11, 2005. The parties may thereafter submit briefs commenting on, challenging, or supporting the report. Any such briefs will be due within fourteen (14) calendar days after the Expert issues his final report. The Court may also consult with the Expert in person or by phone, except that such consultations will be on the record.

16. When the Expert issues his final report, he shall also sign an affidavit or declaration stating that he has not conducted independent investigations, has not contacted the parties or witnesses (other than outside counsel of record), and has otherwise followed the procedures set forth above.

17. After consulting with the Expert and considering the parties' briefs, if any, supporting or challenging the Expert's report, the Court shall prepare an opinion concerning the Expert's findings, and shall issue such further order regarding discovery and other matters as the Court deems appropriate.

SO ORDERED

_____
Patti B. Saris, District Court Judge

Dated: _____, 2005

02639/00509 427471.1