UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., </br></br> Plaintiff, </br></br> v. </br></br> VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR, </br></br> Defendants. | C.A. No. 04-10353-PBS |

**[VOICE SIGNAL TECHNOLOGIES' PROPOSED] NEUTRAL EXPERT PROCEDURE**

At the *Markman* hearing on June 17, 2005, and thereafter, this Court directed the parties to select a neutral expert to assist the Court by (1) examining the parties' confidential, proprietary speech recognition source code (as further defined below); and (2) reporting to the Court whether the materials examined establish a *prima facie* case[1] that Voice Signal Technologies ("VST") misappropriated ScanSoft trade secrets and/or that ScanSoft is infringing or has infringed VST's U.S. Patent No. 6,594,630 ("the '630 patent").

The parties have now agreed on Dr. Hermann Ney as a neutral expert, and he has agreed to serve. Accordingly, the Court orders that the following neutral expert procedure be followed in this case.

---

[1] A *prima facie* case exists if the evidence provides substantial reason to believe that facts exists that would support the position of one of the parties. *See* Black's Law Dictionary at 1228 (8th ed. 2004) (defining *prima facie* case as a "party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor.") In the case of ScanSoft's claim of trade secret misappropriation, those facts are (1) that Voice Signal is using source code that is substantially the same as code that is found in a relevant ScanSoft product, and (2) that the source is, in fact, secret as distinguished from code or techniques that have been publicly disclosed or are known or available to experts in the speech recognition field. In the case of Voice Signal's claim of patent infringement, the relevant ScanSoft products should be compared against each component of the claims of Voice Signal's patent. The question then is whether there is substantial reason to believe that the product includes all of

1. The Court hereby appoints Dr. Ney as a neutral expert (the "Neutral Expert") to assist the Court in this case.

2. The Neutral Expert will be bound by this Court's Protective Order and will sign the confidentiality undertaking included therein. The Neutral Expert will not use or disclose any confidential materials provided to him, including any source code, or any insights gained from it, except for the purposes of this action.

3. The Neutral Expert will bill his time at an agreed rate ($2,000/day), and the parties will each pay 50% of his fees and expenses in this engagement.

4. At issue is whether VST has used trade secrets misappropriated from ScanSoft's predecessors-in-interest, Dragon Systems, Inc. and/or Lernout & Hauspie relating to:

**REDACTED**

Also at issue is whether certain speech recognition products sold/licensed by ScanSoft infringe certain claims of the '630 patent.

5. The term "VST Source Code" means the source code (including header and include files) reflecting or constituting work performed at VST by the Individual Defendants (Messrs. Gillick, Roth, Yamron and Grabherr) during the twelve month period after each left his employment at Lernout & Hauspie.

6. The term "ScanSoft Source Code" means (a) the source code (including header and include files) for Dragon NaturallySpeaking and Voice Xpress (which are the software programs identified by ScanSoft as embodying the trade secrets it alleges to have been misappropriated) as it existed as of the date of departure of each Individual Defendant from his employ at L&H; and

---

the parts of the claim.

(b) the source code (including all header and include files) for the ScanSoft speech recognition software alleged to infringe the '630 patent, which VST has identified as VoCon 3200, VoCon SF, ASR 1600, and ASR 3200.[2]

7. Within thirty (30) days of the entry of this Order, VST shall produce to the Neutral Expert the VST Source Code and ScanSoft shall produce to the Neutral Expert the ScanSoft Source Code.

8. The VST Source Code and ScanSoft Source Code shall be produced on an electronic medium (e.g. cd or dvd) in a form that is readable and computer searchable. The Neutral Expert may use whatever software tools he deems appropriate to review the source code. The VST Source Code and ScanSoft Source Code should be accompanied by documentation, comments or files sufficient to facilitate the Neutral Expert's review and analysis of the source code. The parties shall make available to the Neutral Expert such further information and documentation as he may reasonably request for the purpose of conducting his assignment.

9. The VST Source Code and ScanSoft Source Code will be designated as "Highly Confidential" under this Court's Protective Order, but with the additional provision that only the Neutral Expert may have access to the VST Source Code and ScanSoft Source Code and any related descriptive materials that may be supplied to the Neutral Expert by the parties, pursuant to Paragraph 8 above.

10. Within thirty (30) calendar days after the entry of this Order, each party shall provide to the Neutral Expert and opposing counsel a brief outlining that party's relevant contentions in this case and setting forth the questions that each party seeks to have the Neutral Expert answer. In particular, ScanSoft's submission shall identify to the Neutral Expert the particular lines or

---

[2] In considering VST's claim that ScanSoft infringes the '630 patent, the Neutral Expert shall limit his review to those versions of ScanSoft's accused speech recognition engine source code made, used, sold and/or offered for sale after July 15, 2003, the date that the '630 patent issued.

segments of its Dragon NaturallySpeaking and Voice Xpress source code which embody the trade secrets that it alleges were misappropriated by VST in the following identified categories: (1) techniques for duration modeling of speech; (2) methods for organizing, categorizing and interpreting word sequence hypothesis; (3) speech recognition architecture, including acoustic matching, phoneme look ahead, lexical tree pre-filtering, word matching and scoring via router; (4) language model implementation; (5) mixture models consisting of phoneme elements and genomes and the probabilities assigned to each sound; and (6) methods for using look up tables for score computation and other purposes.  VST's submission shall identify the particular limitations in the claims of the '630 patent that it believes require the Neutral Expert's attention. All briefs shall be filed with the Court under seal and will be designated as "Highly Confidential" under the Protective Order--that is, shared only with the Neutral Expert, outside counsel and outside experts for each party.

      11.  Following the filing of the briefs in accordance with Paragraph 10 above and prior to performing the analysis set forth in Paragraph 12 below, the parties shall have an opportunity, at the Neutral Expert's convenience, to meet with the Neutral Expert in person or by telephone for the purpose of discussing his assignment and clarifying any issues associated therewith. The meetings may be *ex parte* if so requested by the Neutral Expert or may be held with outside counsel for both parties.  All meetings and conversations with the Neutral Expert, whether *inter parties* or *ex parte* (with the exception of purely administrative discussions, such as for scheduling a meeting) shall be recorded by a licensed court reporter provided by the parties. The Neutral Expert may request follow-up meetings or information as needed to complete his assignment.

      12.  The Neutral Expert shall compare the lines or segments of source code identified by ScanSoft pursuant to paragraph 10 above to the VST Source Code and shall make an initial

4

determination as to whether (1) there is any substantial evidence that VST copied or is using any portion of the identified Dragon NaturallySpeaking or Voice Xpress source code; and (2) if so, whether that portion is a trade secret, *i.e.* whether it is something that was, in fact, secret (was not described in a patent, a publication or at a symposium, and was not otherwise known to persons in the field or otherwise available to the public, including, for example, via the GNU General Public License or other open source license). The Neutral Expert shall also review the '630 patent and review the ScanSoft source code for its VoCon 3200, VoCon SF, ASR 1600, ASR 3200 software and make an initial determination as to whether there is substantial evidence that all of the parts of any claim of the '630 patent are found in any of those ScanSoft products.

13. After receiving all briefings and presentations, and after a sufficient period of review, the Neutral Expert shall issue a draft of his report to the parties. The draft report shall be designated as "Highly Confidential" and may be disclosed only to outside counsel for the parties and their outside experts and, with respect to any portion of the report that identifies a trade secret that the Neutral Expert believes may have been used by VST, the Individual Defendants. Within thirty (30) days after receipt of the draft report, each party shall submit to the Neutral Expert a brief addressing the draft report. The briefs commenting on the draft report may include supporting documentation in the form of declarations and/or exhibits. The Neutral Expert shall review and consider these materials and then finalize his report and provide it to the Court, under seal with copies to outside counsel for the parties. The parties may thereafter submit to the Court briefs and supporting materials commenting on, challenging, or supporting the report. All such briefs will be due within twenty-one (21) calendar days after the Neutral Expert issues his final report. The parties may request in their briefs that the Court hear oral argument regarding the Neutral Expert's report.

14. The Court may consult with the Neutral Expert at any time for any purpose. The

Court expects that the Neutral Expert will assist the Court in understanding the technology at issue in this case generally, the parties' contentions, and the Neutral Expert's view with respect to specific questions considered by the Neutral Expert. The Court expects to communicate directly with the Neutral Expert and will request that the Neutral Expert meet in person with the Court in Boston, Massachusetts. The Court may also consult with the Neutral Expert by telephone at the Court's and the Neutral Expert's mutual convenience.

15. The Neutral Expert may consult with the Court at any time, with notice to the parties. Consultation is encouraged if the Neutral Expert is in doubt as to the questions he should address or the standards that he should apply.

16. When the Neutral Expert issues his final report, he shall also sign an affidavit or declaration stating that he has not contacted the parties or witnesses (other than outside counsel of record and/or the Court) in any manner that is inconsistent with this Order and has otherwise followed the procedures set forth above.

17. After consulting with the Neutral Expert and considering the parties' briefs, if any, supporting, challenging or characterizing the Neutral Expert's report, the Court shall issue such further orders regarding discovery and other matters as the Court deems appropriate.

SO ORDERED

_____
Patti D. Saris, District Court Judge

Dated: _____, 2005