UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 04-10353-PBS |
| VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR, | ) |
| Defendants. | ) |

**VOICE SIGNAL TECHNOLOGIES' MEMORANDUM
IN SUPPORT OF ITS PROPOSED NEUTRAL EXPERT PROCEDURE**

Defendant Voice Signal Technologies, Inc. ("Voice Signal") submits this memorandum in support of its proposed Neutral Expert Procedure. As detailed below, the parties have reached agreement on a neutral expert, but have not been able to agree on the procedure to be followed by that expert. Each party is submitting its proposed procedure to the Court. This memorandum identifies the principal differences between the parties' proposals and explains why Voice Signal's proposal should be adopted.

**BACKGROUND**

ScanSoft's Amended Complaint alleges patent infringement and misappropriation of trade secrets. Voice Signal filed a motion to dismiss the trade secrets claim. By order dated January 26, 2005, the Court denied Voice Signal's motion, noting that "[w]hile the objections [to

4021474v1

the Magistrate Judge's Report and Recommendation] have some force, this dispute is better resolved on a motion for summary judgment." Electronic Order entered January 26, 2005.[1]

A protracted dispute ensued regarding the scope of the discovery to which ScanSoft would be entitled on its trade secrets claims. Voice Signal, following *Microwave Research Corp. v. Sanders Assocs., Inc.*, 110 F.R.D. 669, 670 (D. Mass. 1986) and other Massachusetts cases, immediately propounded interrogatories asking ScanSoft to particularize the trade secrets that it alleges have been misappropriated and to identify any ScanSoft software that includes any such trade secret. *See* Voice Signal's Second Set of Interrogatories dated January 28, 2005, a copy of which is attached as Exhibit A to the Declaration of Richard C. Abati ("Abati Decl.") filed herewith. An identification of the alleged trade secrets is necessary, *inter alia*, to allow the Court to determine what discovery (if any) is permissible. *See Xerox Corp. v. International Business Machine Corp.*, 64 F.R.D. 367, 372 (S.D.N.Y. 1974) (unless the trade secrets are stated with specificity, "neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not").

On March 2, 2005 and May 26, 2005, ScanSoft responded that the allegedly misappropriated trade secrets were embodied in Dragon NaturallySpeaking and Voice Xpress (speech recognition software now owned by ScanSoft that runs on desktop computers). ScanSoft's Answers to Voice Signal's Second Set of Interrogatories (Nos. 1-4), filed under seal with ScanSoft's Opposition to Defendants' Motion For Protective Order Compelling Identification of Trade Secrets; Abati Decl., Ex. E (ScanSoft's Supplemental Answers to Voice Signal's Second Set of Interrogatories). In addition, ScanSoft identified six general categories of

---

[1] Voice Signal's Motion to Dismiss ScanSoft's initial Complaint was granted because it was a *verbatim* repetition of the Complaint filed by Learnout & Hauspie in Massachusetts state court litigation that had previously been dismissed with prejudice. *See* Electronic Order entered May 10, 2004.

speech recognition technology that might include a misappropriated trade secret.[2]  It is now undisputed that these categories are not themselves trade secrets.

ScanSoft nevertheless persisted in its effort to compel Voice Signal to produce all of its documentation and, in particular, all of its source code, so that ScanSoft could root around in Voice Signal's most valuable and confidential technology in search of something that it might call a ScanSoft trade secret.[3]  Voice Signal objected and ScanSoft filed a motion to compel production.  At the same time, ScanSoft -- while admitting that its own source code should be produced to Voice Signal in connection with Voice Signal's patent infringement counterclaim -- refused to produce that source code.

The Magistrate Judge ordered Voice Signal to produce "all documents indicating the work that the individual defendants performed for VST for a period of one year following the commencement of their employment with VST." Docket No. 115.  Voice Signal filed objections to the Magistrate Judge's Order.  It requested a stay of that Order pending consideration of those objections.  *See* Voice Signal's Motion to Stay Pending Appeal to District Court dated April 7, 2005 (Docket No. 126).  The Court denied the stay, but modified the Order.  It said that "the documents shall be produced to attorneys only until I have had a chance to rule." Electronic Order entered April 14, 2005.  Voice Signal then filed a motion seeking leave to produce the documents under seal to the Court (and *not* to ScanSoft's counsel).  The Court ruled that:

---

[2]     The six general categories are:  **REDACTED**
*See* ScanSoft's Answers to Voice Signal's Second Set of Interrogatories (Nos. 1-4) filed under seal with ScanSoft's Opposition to Defendants' Motion For Protective Order Compelling Identification of Trade Secret and as Exhibit E to Abati Decl.  At best, these might be descriptions of areas of technology within which ScanSoft would hope to find a trade secret.

[3]     ScanSoft initially told the Court that it needed Voice Signal's source code in connection with its claim that Voice Signal is infringing ScanSoft's U.S. Patent No. 6,501,966 (the "'966 patent').  As the *Markman* hearing and other briefing in this case has made clear, ScanSoft's assertion was a pretext.  The '966 patent claims a user interface -- the ordered set of words that are spoken when a voice dialing system is used.  It has nothing to do with the way in which sounds are "recognized" as particular words by a speech recognition system.  Voice Signal's source code is utterly irrelevant to the question of infringement of the '966 patent.

3

> All documents shall be produced to counsel for ScanSoft, but the source code itself shall be redacted. The complete set of documents (redacted and unredacted) shall be produced to the Court under seal. The Court is considering the idea of a neutral expert who will look at ScanSoft's trade secrets and compare them to Voice Signal's trade secrets. I will review ScanSoft's response and hold a hearing.

Electronic Order entered April 27, 2005. Voice Signal then produced the required documents to counsel in redacted form, and lodged the same documents and the source code with the Court in unredacted form.

The Court returned to the issue of the appointment of a neutral expert at the *Markman* hearing held on June 17, 2005. *See* Abati Decl., Ex. B, transcript excerpts of June 17, 2005 Markman hearing at 6-12 and 94-101. The Court said that it did not have the technical expertise to review the materials that were filed with the Court. It asked the parties' attorneys to attempt to agree on a neutral expert and to report back to the Court. *Id*. at 6, 94-95.

The parties failed to agree. They each submitted a list of candidates to the Court. ScanSoft's list consisted entirely of researchers from the Spoken Language Systems Group at MIT, which receives funding from ScanSoft. Docket No. 266. At a hearing held on July 18, 2005, the Court ordered the parties to focus on Voice Signal's list of potential candidates and to attempt to agree upon a neutral expert from that list. *See* Abati Decl., Ex. C, transcript excerpts of July 18, 2005 hearing at 2-8 and 15.

At the July 18 hearing, the Court said that before trade secret discovery would proceed further the neutral expert would have to "explain to me why he . . . believes that either there's a *prima facie* case of a trade secret violation or there isn't. And, accordingly, if there is a *prima facie* case of a trade secret violation, we have discovery." *Id.* at 8. Later in the same hearing the Court said: "There just has to be a *prima facie* case on either of these claims [*i.e.*, ScanSoft's

4

trade secret claim or Voice Signal's patent infringement claim], enough to trigger discovery.  So, it isn't a huge burden on either side, but neither can it be a fishing expedition." *Id.* at 14.

The lawyers for the parties interviewed candidates and ultimately agreed upon Professor Hermann Ney of the Computer Science Department at Aachen University in Germany as the Court's neutral expert.  Professor Ney agreed to serve.  The parties submitted a joint letter to the Court informing the Court of their agreement.  Docket No. 293.  They also stated that they were attempting to agree upon procedures that would govern Dr. Ney's activities.

Thereafter, draft procedures were exchanged.  It soon became apparent that ScanSoft was attempting to incorporate in the procedures the precise opposite of what the Court had ordered.  It insisted that Voice Signal provide its source code to ScanSoft's lawyers and experts before the Neutral Expert even looked at the disputed source code.  ScanSoft also proposed expanding the neutral expert's charge to a search for trade secrets well beyond (a) the work that the Individual Defendant's performed in the twelve months after they joined VoiceSignal, and (b) well beyond the categories of trade secrets, and the software allegedly containing those trade secrets, that are identified in ScanSoft's answers to interrogatories.  The parties have been unable to resolve these issues and others.

Voice Signal has resisted ScanSoft's efforts to review its source code for at least four reasons.  *First,* ScanSoft has never been able to identify anything that is a ScanSoft trade secret that is being used by Voice Signal.  ScanSoft's efforts to gain access to Voice Signal's source code are an impermissible fishing expedition conducted in the hope that ScanSoft will find something that it can claim is a ScanSoft trade secret.  Discovery supports Voice Signal's position. ScanSoft's Senior Vice-President for Research and Development admitted, under oath,

that ScanSoft is not aware of any ScanSoft trade secret that any defendant has used, or is using.[4] Documents produced by ScanSoft make clear the cynical nature of ScanSoft's trade secret claims. These documents contain an analysis of Voice Signal's products by ScanSoft's most knowledgeable scientific personnel. ScanSoft's highly motivated speech scientists concluded -- contrary to ScanSoft's litigation position -- that Voice Signal's product was "totally different from any of the [speech recognition] engines we have today and would require a new development." *See* SS020267, filed under seal with Voice Signal's Memorandum In Opposition To ScanSoft's Motion To Compel Depositions Of Lawrence Gillick, Robert S. Roth, and Jonathan P. Yamron, dated July 8, 2005. Voice Signal's product, ScanSoft's scientists concluded, "looks like a completely different beast" from any ScanSoft product. *See* SS020583, filed under seal with Voice Signal's Memorandum In Opposition To ScanSoft's Motion To Compel Depositions Of Lawrence Gillick, Robert S. Roth, and Jonathan P. Yamron, dated July 8, 2005.

*Second*, Voice Signal's source code is highly confidential. The success of Voice Signal's business depends on Voice Signal's ability to retain that source code in secret. Access to Voice Signal's source code would give ScanSoft access to speech recognition technology that operates successfully on cell phones -- technology that, discovery has revealed, ScanSoft covets, but has never been able to develop itself. As a senior ScanSoft sales executive observed: "The Targets are all hear and clear to sales. [But] without the bullet, how can we ask our soldiers in the field to shot those targets." *See* SS016321, SS016352, SS016356 and SS016366, filed under seal with

---

[4] On June 15, 2005, Voice Signal took the deposition of Jeanne McCann, ScanSoft's Senior Vice President for Research and Development. Ms. McCann acknowledged that she could not identify any trade secret that any of the individual defendants used, or is using, at Voice Signal. *See* Abati Decl., Ex. D at pp. 50-51. This testimony completely undercuts ScanSoft's claim that any defendant stole any ScanSoft trade secret.

Voice Signal's Memorandum In Support Of Its Objections To The Magistrate Judge's Order Regarding Trade Secrets, dated April 13, 2005.

*Third*, ScanSoft -- the party with vastly superior financial resources -- is seeking access to Voice Signal's source code in an effort to determine whether it can conjure up a new, presently unasserted, claim against Voice Signal -- a use that would violate the Protective Order.  ScanSoft revealed this intention when it filed a document in connection with its *Markman* brief.  *See* Voice Signal's Memorandum In Opposition to ScanSoft's Emergency Motion to Show Cause Why Defendant Should Not Be Held In Contempt And Request For Determination Of Subject Matter Waiver (Docket Nos. 239-240).  The document contains a comparison of Voice Signal's VoiceMode product -- a product that is not alleged to infringe any ScanSoft patent -- to the claims of a patent that ScanSoft has not asserted against Voice Signal.  The memorandum concludes that discovery would be needed before a claim could permissibly be alleged.  *Id***.**

*Fourth*, Voice Signal has objected to production of its source code to ScanSoft's counsel because Bromberg & Sunstein is engaged in ongoing patent prosecution for ScanSoft.  The Bromberg firm is prosecuting multiple pending applications in the speech recognition field, including an application that claims priority to the ScanSoft patent-in-suit.  It is not possible for the Bromberg lawyers to un-learn that which they will learn from viewing Voice Signal's source code.  To the contrary, it is reasonable to expect that Voice Signal's highly proprietary source code will influence the prosecution of the pending patents.  It would be profoundly unfair to Voice Signal if its proprietary documentation and source code were disclosed to lawyers who are prosecuting patents for ScanSoft.

It was against this background that the Court constructed a process that is designed to evaluate ScanSoft's trade secret claim before further trade secret discovery would be permitted.

**ARGUMENT**

I.  **VOICE SIGNAL'S SOURCE CODE SHOULD NOT BE MADE AVAILABLE TO SCANSOFT'S COUNSEL.**

The Court decided to use a Neutral Expert *because* Voice Signal raised serious concerns about making its source code available to ScanSoft's outside counsel. Voice Signal's proposal states that the parties will produce their source code *only* to the neutral expert, pending further order of the Court. Voice Signal Proposal, ¶ 7. ScanSoft's proposal ignores the Court's rulings on this subject. It states that source code should immediately be provided to outside counsel for each party. ScanSoft Proposal ¶ 8, 10.

Voice Signal's proposal is consistent (a) with the Court's order (*See* pp. 3-5, *supra*), (b) with the Court's rationale for employing the Neutral Expert procedure, and (c) with the Court's stated intention of protecting both parties' confidential source code until there is a *prima facie* case of trade secret misappropriation (in the case of Voice Signal's source code) or patent infringement (in the case of ScanSoft's source code). Voice Signal's proposal is consistent with the direction provided by the Court to the parties; ScanSoft's is not.

Real harm will result if Voice Signal's source code is provided to ScanSoft's outside counsel. At worst, information gleaned from Voice Signal's source code will make its way to ScanSoft. At best, the ScanSoft lawyers who are prosecuting ScanSoft's patents will have access to Voice Signal's highly confidential software and ScanSoft's lawyers -- who have been unable to articulate a *bona fide* trade secret during the twenty-two month pendancy of this case -- will scour Voice Signal's source code in an effort to find any possible claim against Voice Signal, including a claim that is not the subject of this lawsuit. It is fundamental that discovery is not to be used for these purposes. *See Microwave Research Corp. v. Sanders Assoc., Inc.*, 110 F.R.D. 669, 672 (D. Mass. 1986); *Xerox Corp. v. IBM*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974).

8

The Court should adhere to its ruling and should approve Voice Signal's procedure because it conforms to that ruling. Production of both parties' source code should be limited to the Neutral Expert, Dr. Ney, unless and until the Court concludes after consultation with Dr. Ney that a *prima facie* case of trade secret misappropriation exists.[5]

## II. VOICE SIGNAL'S SOURCE CODE PRODUCTION SHOULD BE LIMITED TO THE WORK DONE BY THE INDIVIDUAL DEFENDANTS DURING THE FIRST TWELVE MONTHS AFTER EACH LEFT L&H.

Voice Signal's proposal would have Dr. Ney examine the Voice Signal source code that the Court directed Voice Signal to lodge with the Court -- the source code reflecting work performed by each of the Individual Defendants during the twelve month period after he left Learnout & Hauspie. Voice Signal Proposal, ¶ 5. ScanSoft's proposed procedure would have Voice Signal provide to Dr. Ney the source code for all Voice Signal speech recognition products created at any time up to the present, regardless of who created that software. ScanSoft Proposal, ¶5.

Again, ScanSoft's proposal ignores the prior proceedings in this case. ScanSoft sought production of all Voice Signal source code. Voice Signal objected. The Court ordered Voice Signal to produce (and, ultimately, that it lodge with the Court) the code written by each Individual Defendant during the twelve months after he left L&H. The Court then concluded that it did not have the technical expertise to evaluate the material that had been provided by Voice Signal and that a neutral expert should be appointed to review those materials. *See* Abati Decl., Ex. B at 6; *see also* Docket No. 115 (Magistrate Judge Order dated March 30, 2005).

---

[5] Voice Signal's proposed order contains an explanation of the *prima facie* case concept stated in lay terms for the benefit of the Neutral Expert. The proposed order also states, in simple terms, the basic elements of a claim of trade secret misappropriation (by ScanSoft) and of patent infringement (by Voice Signal), adapted to the specifics of this case. Voice Signal has not attempted to state these concepts with perfect legal precision because the Court will be the decision maker. Instead, Voice Signal has attempted an explanation that will be accessible by the Neutral Expert. *See* Voice Signal's Neutral Expert Procedure at n. 1. The explanation is believed to be non-controversial, but it should be noted and reviewed by the Court.

4021474v1

The parties' dispute has focused on whether there is anything in the work done by the Individual Defendants during the period after they first joined Voice Signal that indicates that a ScanSoft trade secret has been used.  That is where the focus should remain.  It is extremely unlikely that the Individual Defendants (who retained nothing when they resigned from L&H) retained trade secrets in their memories, did *not* use those trade secrets during the twelve months after they left L&H, and then began to use them at some later time.

Dr. Ney should be asked to review the Voice Signal source code reflecting work by the Individual Defendants during the first twelve months after each left L&H.  He should compare that work to the source code identified by ScanSoft as containing its trade secrets.  If there is overlap *and* if the coding or techniques reflected in the source code are, in fact, trade secrets (as distinguished from publicly known approaches to publicly known speech recognition tasks or technology that is otherwise available to the public -- *i.e.*, open source code), then Dr. Ney will report that finding to the Court.  The Court may then order whatever further discovery it deems appropriate.  If there is not overlap or if the techniques are known or available to speech recognition experts,  there will be no reason to provide further discovery of Voice Signal's highly proprietary source code.

Further, Dr. Ney is a speech scientist, not a professional expert.  The task before him should be manageable, and it should come to an end.  If Dr. Ney is to review all software that was ever created by any Voice Signal employee or consultant, he will have to review an enormous body of material, including software written by many persons who never worked for ScanSoft (or any of its predecessors) and who ScanSoft has never alleged used a ScanSoft trade secret.  He will also have to examine code that was created by the Individual Defendants years

after they left ScanSoft. ScanSoft's proposal is neither practical nor reasonably related to its claims in this case.

### III. SCANSOFT SHOULD NOT BE ALLOWED TO USE THE NEUTRAL EXPERT PROCESS TO BROADEN DR. NEY'S EXAMINATION BEYOND THE CATEGORIES AND SCANSOFT MATERIALS THAT IT PREVIOUSLY IDENTIFIED.

In its Amended Answers to Interrogatories served on March 2, 2005, ScanSoft identified six categories of speech recognition technology that it said were the misappropriated trade secrets. It said the trade secrets were contained in Dragon NaturallySpeaking. ScanSoft further amended its answer on May 26, 2005, so as to expand the software that was said to contain the misappropriated trade secrets to include Voice Xpress, but it did not add to, or change, the categories of technology that were said to encompass the alleged trade secrets. ScanSoft has amended its interrogatory answers.

Voice Signal has proposed that the Neutral Expert be asked to examine any lines or portion of the source code for Dragon NaturallySpeaking and Voice Xpress (a) that contains any of six categories of "trade secrets" identified in ScanSoft's answers to interrogatories, and (b) that ScanSoft believes embodies a misappropriated trade secret.[6] The Neutral Expert would then compare the lines or segments of code identified by ScanSoft to work of the Individual Defendants created during the year after they joined Voice Signal. Voice Signal Proposal, ¶10.[7]

---

[6] ScanSoft has stated that the six categories are "exactly where the trade secrets reside in VST's source code" (*see* ScanSoft's Opposition to Defendants' Motion For Protective Order Compelling Identification of Trade Secrets at 5) and are "the specific areas of VST source code that likely contain the misappropriated trade secrets" (*See id.* at 4).

[7] Voice Signal's proposed Order contemplates that ScanSoft will provide to the Neutral Expert the Dragon NaturallySpeaking and Voice Xpress source code as it existed at the time when the Individual Defendants left Learnout & Hauspie and need only provide the portions of the code that involve the six relevant subject matters. As a result, Dr. Ney will not be able to determine, in any systematic way, whether relevant source code has passed into the public domain because it is now (or was at one time) part of a product that includes code that is subject to the GNU General Public License or another open source license. That is an issue that will have to be addressed but is not part of the instant dispute.

ScanSoft's proposed procedure would be totally open-ended. ScanSoft could identify to the Neutral Expert segments of any source code found anywhere in any L&H product. ScanSoft Proposal, ¶ 4. ScanSoft has had ample opportunity to identify the trade secrets that it alleges were misappropriated. Its longstanding answers to interrogatories identify (a) the only areas of technology that ScanSoft had reason to believe include trade secrets that Voice Signal misappropriated, and (b) the only software that contained those trade secrets. ScanSoft would now have the Neutral Expert search for trade secrets in areas that ScanSoft has never identified and in software to which no Voice Signal employee was ever exposed (*e.g.* source code developed by Phillips -- for which no Voice Signal employee worked -- or code written long after the Individual Defendants left L&H). ScanSoft should be held to ScanSoft's own carefully considered, and repeatedly amended, answers to interrogatories. If Dr. Ney finds no evidence of trade secret misappropriation in the areas identified by ScanSoft, ScanSoft should not be permitted to grope around in the hope that something else might be found, or some other claim might be developed.

Voice Signal's proposal requests that Dr. Ney's already imposing job be confined to the only categories that ScanSoft could assert include its allegedly misappropriated trade secrets and to the only software -- Dragon NaturallySpeaking and Voice Xpress source code -- that ScanSoft has stated contains those trade secrets. Voice Signal's proposal should be adopted.

## IV. SCANSOFT SHOULD NOT BE ALLOWED TO CHANGE THE STANDARD ESTABLISHED BY THE COURT.

Voice Signal's proposal calls for Dr. Ney to report to the Court whether the materials examined contain evidence of a *prima facie* case that Voice Signal misappropriated ScanSoft trade secrets and/or that ScanSoft is infringing Voice Signal's '630 patent. *See* Introduction of

12

VST Proposal. This proposal is consistent with the Court's direction at the July 18 hearing. *See* Abati Decl., Ex. C at 8.

ScanSoft's proposal ignores the standard that the Court articulated. It cites Fed. R. Civ. P. 26 and argues that the neutral expert should report to the Court whether the materials examined contain any evidence "relevant" to ScanSoft's claims of trade secrets misappropriation and/or Voice Signal's claim of patent infringement.

ScanSoft's proposal does not advance the ball. Source code that contains no trace of a trade secret would be evidence "relevant" to ScanSoft's trade secret claim, albeit unfavorable evidence from ScanSoft's perspective. In contrast, the standard stated by the Court, and repeated in Voice Signal's proposal, is designed to accomplish the goal of this exercise -- to determine whether there is substantial reason to believe that Voice Signal misappropriated ScanSoft's trade secrets (such that ScanSoft would prevail on its claims in the absence of countervailing evidence). The same standard would apply to Dr. Ney's review of the ScanSoft source code and assessment of Voice Signal's patent claims. Although ScanSoft may not like the *prima facie* standard, it is the standard stated by the Court and -- in view of ScanSoft's inability to identify any trade secret that it alleges Voice Signal misappropriated and the sensitivity of Voice Signal's confidential information -- it is a fair and appropriate standard.

**V.   THE COURT SHOULD ADOPT LOGISTICAL PROCEDURES THAT WILL MOST ASSIST THE NEUTRAL EXPERT IN HIS EXAMINATION.**

Voice Signal has proposed the adoption of procedures that it believes will assist the Dr. Ney in his review of each party's source code. In addition to the above disputes, Voice Signal and ScanSoft disagree on the logistics of several aspects of the neutral expert's review, as outlined below.

A.    ***Ex Parte* Communications May Be Requested By The Neutral Expert.**

During the July 18 hearing, the Court engaged the parties in colloquy regarding the appropriateness of *ex parte* communications between a party and the neutral expert. The Court ultimately held as said: "No discussions with the expert, except on the record. It can be *ex parte*, if that's what the expert wants. If the expert prefers just written questions, so be it. But, every discussion should be on the record." *See* Abati Decl., Ex. C at 13. Based on these remarks, Voice Signal has proposed that any meeting with the neutral expert may be *ex parte* -- *if so requested by the neutral expert*. ScanSoft has objected to this proposal, insisting that *all* meetings with the neutral expert be *ex parte*. ScanSoft's approach will hinder the neutral expert's review and, in certain circumstances, slow down the communication process. Misrepresentations, mischaracterizations and simple inaccuracies in one party's statements to Dr. Ney (innocent or otherwise) will go unchallenged because the other party will not know of them until they influence Dr. Ney's draft report. As a result, a great deal of work may need to be redone. Issues that might be resolved on the spot, will be unresolvable without *seriatim ex parte* exchanges. Dr. Ney should be left to determine -- with input from the parties -- whether and when it makes sense to engage in *ex parte* communications.

B.    **The Neutral Expert May Request Additional Information And Documentation Whenever It Is Necessary.**

Voice Signal has proposed that the parties produce to the neutral expert only their respective source code accompanied by documentation, comments or files sufficient to facilitate the neutral expert's review and analysis of the source code. Voice Signal Proposal, ¶¶7-8. ScanSoft proposes that each party turn over to the neutral expert each and every conceivable document or component related to its source code. ScanSoft Proposal, ¶ 9. ScanSoft's proposal includes a long list of documents and files that would be provided by both parties, without regard

to (1) whether those documents or files exist; or (2) whether they would be requested by, or helpful to, Dr. Ney in his assignment. ScanSoft's approach is thus unduly burdensome to the parties *and* the neutral expert.

Voice Signal proposes that the parties simply abide by their obligation to make available to the neutral expert such further information as he may reasonably request for the purpose of conducting his assignment. *See* Abati Decl., Ex. C at 14 ("I sort of leave it up to this gentleman what procedure he'd find the most helpful"). Under Voice Signal's approach, Dr. Ney will receive and review the source code and accompanying documentation and then, after assessing the task in front of him and with the benefit of his review, request from each party any additional documentation, files or tools that he may need. Voice Signal's proposal obliges each party to provide all materials that are requested by Dr. Ney, so long as they are in that party's possession.

### C.   The Neutral Expert May Consult With The Court.

Voice Signal anticipates that the parties may make conflicting statements to Dr. Ney about legal matters that are not within the scope of his expertise. Voice Signal's proposed Order would allow Dr. Ney to consult with the Court, with notice to the parties, whenever Dr. Ney believes that consultation is appropriate. Voice Signal Proposal, ¶ 15. This opportunity is intended to minimize the risk that Dr. Ney will address the wrong question or apply the wrong standard to the technical facts. ScanSoft's proposal contains no similar provision.

### D.   A Deposition of the Neutral Expert.

ScanSoft's proposal states that the parties may depose the neutral expert. Voice Signal's proposal is silent on that subject. The question whether a deposition of the expert will be productive or counterproductive is better left for determination by the Court at a future time based upon the circumstances as they exist at that time.

**CONCLUSION**

Voice Signal's proposed Order is consistent with the direction previously provided by the Court. It allows a full exploration of the Voice Signal materials that might plausibly contain a ScanSoft trade secret and requires that those materials be compared against the portions of the ScanSoft source code that ScanSoft has said contains those trade secrets. It is fair to the parties. It is sufficiently bounded so that the Neutral Expert can complete the task before him in a reasonable period of time. The Court should adopt Voice Signal's proposed Neutral Expert Procedure and reject ScanSoft's proposal.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,

/s/ Robert S. Frank
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

Dated:  December 16, 2005

4021474v1