]UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., <br>                 Plaintiff, <br><br>                v. <br><br> VOICE SIGNAL TECHNOLOGIES, INC., <br> LAURENCE S. GILLICK, ROBERT S. <br> ROTH, JONATHAN P. YAMRON, and <br> MANFRED G. GRABHERR, <br><br>                 Defendants. | C.A. No. 04-10353-PBS |

**MOTION FOR**

**MODIFICATION OF THE COURT'S NEUTRAL EXPERT PROCEDURE**

**-AND-**

**REQUEST FOR HEARING**

By its Neutral Expert Procedure dated December 29, 2005 and entered January 4, 2006, this Court – perhaps inadvertently – has radically changed the playing field. Beginning with the Magistrate Judge's Order dated March 24, 2005 (Docket No. 115) and this Court's modifications of the Order dated April 14, 2005 (Docket No. 126) and April 25, 2005 (Electronic Order), the discussion has focused on the appropriate disclosure and review of Voice Signal's source code and highly proprietary documentation relating to work performed by the individual defendants "for a period of one year following the commencement of their employment with VST." Docket No. 115. That is the body of source code lodged with the Court pursuant to its April 25, 2005 Electronic Order. That is the body of source code that first prompted the Court's consideration of a neutral expert. *Id.*

Now, for the first time since the beginning of the Court's consideration of a neutral expert, the Court, by adopting *verbatim* ScanSoft's definition of the term "VST's Source Code" in paragraph 5 of its Neutral Expert Procedure, has exponentially increased the scope of Voice Signal's production and the potential risk that Voice Signal's most valuable competitive assets will be compromised.

As drafted, the Court's Neutral Expert Procedure calls for Voice Signal to produce literally all of its source code for all of its products, without regard to whether there is any basis whatsoever to believe that the source code might reveal the use of ScanSoft trade secrets. In fact, the source code now required to be produced is more than ten times more voluminous than the code required by the original order. It contains more than one million lines of code which has been developed and written by a variety of different Voice Signal employees and consultants over a period of more than a decade (Voice Signal was founded in 1995). None of those employees or consultants (other than the four individual defendants) is a party to this case. The amount of work involved for Voice Signal to collect and organize this huge amount of code is so significant as to derail its commercial activities such that its current customer delivery commitments are now at risk. It is unfair to order a small company through the machinations needed to produce the entirety of its work product for the last ten years, damage its commercial activities and defocus an entire corporate workforce before the accuser in this case has narrowed the scope by pointing out the items they believe have been misappropriated.

In addition to vastly increasing the scope of the production of Voice Signal's most proprietary assets, the Court's Neutral Expert Procedure reverses the principle that the Court applied when it adopted the neutral expert route in the first place. The Court may recall that, initially, it ordered Voice Signal to produce the first year source code and documents to

ScanSoft's outside counsel only. Voice Signal filed an emergency motion requesting leave to submit these materials under seal to the Court and, in that motion, articulated numerous serious concerns about revealing even the first year source code to ScanSoft's outside counsel and/or its retained experts.[1] The Court granted Voice Signal's motion. It permitted Voice Signal to submit its first year source code to the Court under seal. Electronic Order April 25, 2005. It later determined that the code should be examined by a neutral expert *before* it was turned over to ScanSoft's counsel. Now, with no explanation, the Court's Neutral Expert Procedure calls for *all* of Voice Signal's code -- including its present day code -- to be produced not only to the Neutral Expert, but also to a designated outside attorney for ScanSoft.

This profound change of position creates both enormous commercial risks for Voice Signal and greatly changes the task for the Neutral Expert. Instead of asking the Neutral Expert to assess ScanSoft's alleged trade secrets, review the work done by the individual defendants during their first year and report to the Court whether there is reason to believe that ScanSoft trade secrets were used, the Court's Neutral Expert Procedure would have the Neutral Expert examine all of the source code for all of Voice Signal's current products developed over a period of more than ten years. This is an enormous task, not capable of completion in the time periods proposed in the Court's Procedure and likely not capable of completion in twice that amount of time.[2] It is also an imminently unnecessary task in light of the question the Court has asked the Neutral Expert to answer: is there reason to believe that ScanSoft trade secrets from its Dragon

---

[1] Primary among those reasons were (1) the risk that Voice Signal's trade secrets would be compromised with catastrophic commercial consequences to Voice Signal; and (2) concern, based on ScanSoft's own statements and documents, that ScanSoft or its counsel would use the source code to invent a basis for additional, expensive patent litigation.

[2] It is also well beyond the scope of the assignment described to Professor Ney by the parties. Voice Signal invites and encourages the Court to consult with Professor Ney about the scope of the project as currently outlined and to solicit his opinion as to the most orderly way to approach the Court's questions.

3

NaturallySpeaking and/or VoiceExpress products has been copied or used. Neutral Expert Procedure, ¶15. Whether there is reason to believe trade secrets have been used can be determined first by considering the alleged trade secrets and whether they are, in fact secret, and second by looking for evidence of use of any true secrets by the people accused of using them: the individual defendants. That evidence is most likely to be found -- if it exists -- in the first year documents that were the subject of the original order.

Therefore, Voice Signal urges a reordering of the Procedure adopted by the Court. It asks that the First Year Documents (as defined in paragraph 9 of the Neutral Expert Procedure) be produced in accordance with the Procedure; that the Expert consider ScanSoft's allegations of the theft of trade secrets and examine the First Year Documents in light of those allegations; that the Expert then make the findings of fact required by Paragraph 15 of the Procedure with respect to those documents. If the Expert finds facts that establish that there is no substantial reason to believe that Voice Signal "has copied, or is using, any portion of any identified Dragon NaturallySpeaking or VoiceExpress Source Code" that is in fact a trade secret, that should be the end of the process, *unless* ScanSoft persuades the Court that the Expert should consider other Source Code.

If, on the other hand, the Expert were to make findings of fact that establish that there is reason to believe, based on the First Year Documents, that Voice Signal copied or used identified Dragon NaturallySpeaking or VoiceExpress Source Code that is a trade secret, the burden would be on Voice Signal to demonstrate that it should not produce and allow consideration of the remainder of the VST Source Code (for example, because the so-called secret can be found in

4

the public domain or because the source code was written by persons who never worked for any of ScanSoft's predecessors-in-interest).[3]

This proposed ordering of tasks will vastly reduce the burden on the Expert and enhance the possibility that he will be able to complete his assignment in a reasonable time. It will also reduce, in a way that is consistent with the interests of justice, the chances that Voice Signal's most valuable trade secrets will be compromised. It is no exaggeration to state that the disclosure of those trade secrets, however inadvertent, to anyone associated in any way with ScanSoft risks the continued viability of Voice Signal's business. ScanSoft is vastly larger than Voice Signal, and has vastly greater resources. Voice Signal can compete with ScanSoft only because it, by the use of its brain power and effort, has developed software that ScanSoft has, so far, been unable to duplicate. ScanSoft is entitled to attempt to prove its case, but that interest must be balanced against Voice Signal's right to keep its internal, confidential and commercially valuable information a secret if in fact ScanSoft's claims are baseless. The damage done to Voice Signal will have been profound, and totally unnecessary if (and when) it turns out there was no basis for ScanSoft's claims in the first place. Entrepreneurial and innovative companies like VoiceSignal should be protected from this predatory behavior on the part of acquisition hungry corporate giants like ScanSoft.[4] If there is nothing to be found in the First Year Source Code, the chances that other source code contains a ScanSoft trade secret are so small that the risk to Voice Signal that its trade secrets will be compromised should become paramount.

This motion also seeks direction from the Court with respect to two other aspects of the Neutral Expert Procedure.

---

[3]   In order to address any allegation by ScanSoft that Voice Signal is stonewalling, Voice Signal is prepared to lodge the source code for its current products with the Court, to be produced in the event the Court so orders.

[4]   ScanSoft has changed its name to Nuance, following its recent acquisition of the last remaining independent server based speech company in 2005.

1. <u>First Year Documents</u>. Paragraph 9 of the Procedure states that the First Year Documents (which is defined to include source code) are to be produced "to opposing counsel" (as distinguished from "one opposing counsel"). Voice Signal requests that the Court clarify Paragraph 9 of the Procedure so as to make clear that VST's First Year Source Code is to be treated like the rest of the "VST Source Code" and thus disclosed only to one designated opposing counsel.

2. <u>Designated Counsel</u>. The Procedure does not define what the lawyer recipient may do with the opposing party's Source Code. While Voice Signal believes it is clear from the Protective Order entered in this case that all documents produced must be used solely for the purposes of prosecuting or defending this case (See, Protective Order, ¶5, and Procedure, ¶11). Voice Signal requests that paragraph 7 of the Procedure state expressly that the designated lawyer for each party *may not be a lawyer engaged in any respect in the prosecution of patents for the party* and that the designated lawyer not disclose the other party's Source Code *or any information derived from it* to the lawyer's client, to other members of the litigation team, *any other lawyer for the client, or anyone else who prosecutes patents for the client*.[5] Information derived from, and ideas gleaned from, Source Code, may be as valuable as the Source Code itself. Disclosure of anything relating to that Source Code to anyone who prosecutes patents for the opposing party would give to the recipient party an unfair and indefensible competitive advantage in the competition between the parties.

---

[5] Paragraph 7 of the Procedure states that Source Code is to be produced "in the form described in Paragraph 9 below." It is believed that this is a typographical error and that the reference should be to Paragraph *8* below.

4031794v1

## CONCLUSION AND REQUEST FOR HEARING

The Court's radical change of position poses enormous risk to Voice Signal. The modifications requested are extraordinarily important to Voice Signal. Voice Signal urgently requests the opportunity for oral argument in support of this motion.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,

/s/ Robert S. Frank, Jr.
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

Dated:  January 11, 2006

4031794v1