UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC.,<br><br>        Plaintiff<br><br>        v.<br><br>VOICE SIGNAL TECHNOLOGIES, INC.,<br>LAURENCE S. GILLICK, ROBERT S.<br>ROTH, JONATHAN P. YAMRON, and<br>MANFRED G. GRABHERR,<br><br>        Defendants | C.A. No. 04-10353-PBS |

## SCANSOFT'S OPPOSITION TO VST'S MOTION TO
## MODIFY THE COURT'S NEUTRAL EXPERT PROCEDURE

Last summer, ScanSoft argued that VST had lobbied for recourse to a neutral expert not to resolve a discovery dispute but rather to avoid addressing the merits of this case. *See, e.g., Scansoft's Memorandum in Support of Its Motion to Strike Names of Proposed Neutral Experts and to Compel VST to Cooperate in the Search for a Neutral Expert* [D.N. 284] at 11. VST's motion to modify the Court's neutral expert procedure proves ScanSoft's argument. VST has no interest in (a) participating in a neutral expert procedure, even though it had lobbied for it, and (b) ever producing the source code, even to a neutral expert and even in the face of a court order. Indeed, VST now brazenly proposes the "modification" that it be allowed to withhold the "VST Source Code" from the neutral expert, and, instead, give the neutral expert only the "First Year Documents." That proposal is not a simple modification but rather a total restructuring of this Court's carefully drafted procedure and, indeed, a violation of ScanSoft's rights to procedural due process.

VST knows that ScanSoft's misappropriated trade secrets will be evident in its source code and related technical documents and has thus predicated its defense on stonewalling rather than on the merits. Indeed, under the "modifications" that VST proposes, even the neutral expert, Dr. Ney, will not be given everything he will need to fulfill his role – including the source code. Instead, as VST now proposes, ScanSoft must first prove its trade secrets case to Dr. Ney using only the "First Year Documents," without access to the VST Source Code. Dr. Ney, however, is not the judge or jury in this case. If Dr. Ney is to truly be of assistance to the Court, he needs access to the VST Source Code. And if ScanSoft must prove its case to Dr. Ney, it should at least have access to all of the documents, including the VST Source Code.

ScanSoft vigorously opposed the use of a neutral expert as unworkable and as a violation of its constitutional and procedural rights. *See, e.g., Scansoft's Memorandum in Support of its Motion for Reconsideration of Court's Neutral Expert Procedure* [D.N. 243] (filed under seal). In response, VST just as vigorously argued for producing its source code to a neutral expert instead of producing it to ScanSoft's litigation counsel under the terms of the Court-endorsed protective order. So it is now ironic – but not unexpected – that, with a neutral expert in place, VST has found something else to complain about. VST's complaint, however, is merely a pretext for stalling the procedure and tying up this case in endless discovery battles.

VST's desire to avoid production of its source code – even to the neutral Dr. Ney – is so strong that VST filed its motion without first conferring with ScanSoft's counsel, in violation of LR 7.1(A)(2) and LR 37.1. For that reason alone, VST's motion should be denied.

Given VST's posture and its bad faith, the surest way to resolve this entire litigation is simply to order VST to produce its source code and related technical documents to Dr. Ney and

to ScanSoft's designated counsel, as this Court has ordered. VST should be held in contempt if it does not comply.

As for VST's proposed modifications, they are inappropriate for the following reasons.

**I.    THIS COURT PROPERLY ORDERED VST TO PRODUCE THE "VST SOURCE CODE"**

**A.    Under the Court's Neutral Expert Procedure, Both Parties Must Produce Source Code to the Neutral Expert So That He Can Assist The Court**

The Court properly ordered VST to produce to Dr. Ney and designated litigation counsel the "VST Source Code." VST, however, now proposes that it give Dr. Ney only the "First Year Documents," rather than the Source Code. *See* VST's *Motion for Modification of the Court's Neutral Expert Procedure* at pp. 4 & 6. Examining the VST Source Code – and not merely the First Year Documents alone – was the whole impetus for this procedure in the first place. Indeed, VST's lead counsel, Mr. Frank, himself argued at two different hearings that the neutral expert procedure involve examination of all source code:

> . . . And the expert can look at the <u>code</u> that we have produced, and if that expert finds in there the, you know, copying or the use of the core idea and thinks it's genuinely a secret . . .

**Exhibit A**, Markman Hearing Transcript of June 17, 2005, at 8 (emphasis added)

> We believe that both sides should put to the expert and to the other side the questions they would like the expert to focus on. Are you finding X in the <u>source code</u>? Are you finding Y in the <u>source code</u>?

**Exhibit B**, Status Conference Transcript of July 18, 2005, at 9 (emphasis added).

Thus, VST's proposed modification is nothing more than a bait and switch. VST got this Court to accept the idea of a neutral expert procedure by promising to produce its source code. Now it is trying to avoid doing just that.

Just as the Court's order requires ScanSoft to produce all of the source code for its products alleged to have infringed VST's '630 patent, so too should VST be required to produce

3

all of its source code for its products alleged to contain ScanSoft's trade secrets. Any suggestion that VST need not produce its source code to Dr. Ney sets up an uneven playing field and prejudices ScanSoft. When the parties interviewed Dr. Ney for this assignment, counsel for both ScanSoft and VST explained that Dr. Ney would receive source code from both parties so that Dr. Ney could assist the court in determining whether there was evidence that VST used ScanSoft's trade secrets in the development of its source code and/or that ScanSoft infringed VST's patent. Keeping the VST source code from Dr. Ney prevents him from assisting the Court with ScanSoft's trade secrets claim.

### B.   VST's Proposal to Limit Dr. Ney Access to "First Year Documents" Alone Prevents Him From Doing His Job

VST asks this Court to "reorder" the procedure adopted by the Court so that Dr. Ney's examination of evidence is limited to the First Year Documents.[1] *See* VST's motion at p. 6. In seeking this change, VST also changes the standard of review the Court has ordered for the neutral expert procedure. VST asks that Dr. Ney look at the First Year documents to find facts that establish no substantial reason to believe VST has copied or is using any portion of ScanSoft's source code. The Court has already rejected VST's proposed standard of "substantial" evidence, however, when it considered the parties' proposed neutral expert procedures. Nevertheless, VST slides that standard of review back into its motion proposing to limit the Neutral Expert's review to the First Year Documents.

---

[1] The genesis of VST's position comes from its erroneous interpretation of Magistrate Judge Alexander's interim ruling, which held that VST must produce all documents related to the individual defendants' work on speech recognition products at VST during their first twelve months following their employment with ScanSoft's predecessor, Lernout and Hauspie. *See* M. J. Alexander's Order of March 24, 2005 [D.N. 115]. Magistrate Judge Alexander's ruling, however, was merely the first phase of discovery – not the sum total of discovery. VST has twisted the ruling to make it sound as if only the First Year Documents are to be produced. That was not the intent of the ruling and, in any event, that was before the neutral expert procedure was developed.

4

Putting aside VST's attempt to revisit the standard of review for the neutral expert, VST's attempt to limit the Neutral Expert's review of the evidence only to the First Year Documents thwarts the ability of Dr. Ney to do his job. Dr. Ney has been asked to "report to the Court whether the materials examined contain reason to believe ScanSoft's claims of trade secrets misappropriation." *See* Neutral Expert Procedure (Order of December 29, 2005) [D.N. 320] at 1. ScanSoft alleges that the VST Source Code is based on ScanSoft's trade secrets. Access to the VST Source Code is thus necessary for Dr. Ney to fulfill his role in advising the Court. VST's attempt to shield Dr. Ney from the source code – a key piece of evidence in the case – is suspicious, if not obstructionist.

Moreover, "First Year Documents" already produced to ScanSoft--albeit in heavily redacted form--show use by VST of ScanSoft's trade secrets. In a series of heavily redacted e-mails sent during the individual defendants' first year of employment at VST, the defendants discuss and share with others at VST information about ScanSoft's proprietary speech recognition techniques. *See ScanSoft's Sur-Reply in Support of Opposition to Defendant Manfred G. Grabherr's Motion for Summary Judgment* [D.N. 273] (filed under seal) at pp. 4-5. In particular, the individual defendants discuss "Dragon-style" techniques and solutions and explain how to avoid pitfalls encountered while they were at Dragon (ScanSoft' predecessor in interest). All of these concepts are proprietary to ScanSoft. *Id.* The e-mails show that the individual defendants were using ScanSoft's trade secrets while they were at VST. But ScanSoft is entitled to <u>all</u> of the First Year Documents, complete and unredacted, as well as the VST Source Code, to make its case to the neutral expert. Otherwise, Dr. Ney cannot make an informed judgment and assist the Court.

## II.  VST'S CLAIM OF DISRUPTION IS A PRETEXT FOR STONEWALLING

VST protests that it will be unduly burdensome and disruptive for it to produce the required source code and technical documents. But VST then proposes, in the alternative, to lodge the source code with this Court. *See* VST's motion at 5, fn. 3. It would take the exact same effort to assemble the source code and documents for lodging with this Court as it would to assemble it for the neutral expert. Accordingly, VST's protests should be viewed skeptically. If VST can readily assemble the documents for lodging with this Court, as it offers to do, it can just as easily assemble them for production to Dr. Ney and opposing counsel.

Moreover, the Court has already stated that lodging source code with the Court is not a helpful exercise and does not move the case forward. That is precisely why the Court has engaged a neutral expert procedure. How can the neutral expert assist the Court if he is denied access to the very subject matter in dispute in the case – *i.e.*, the parties' source code?

Furthermore, VST cannot claim that it was somehow caught off guard. VST should have been assembling its source code and related documents all along. Since last spring, VST has been under a court order to produce its source code. *See* M. J. Alexander's Order of January 14, 2005 [D.N. 75] at 5. VST has consistently defied that order. And since last summer, VST has known that this Court desired to adopt a neutral expert procedure that would require the expert to review source code. Now, however, almost a year after the Court has made its intentions clear, VST raises <u>for the first time</u> that producing its source code is too burdensome. ScanSoft is prepared to produce its source code (and was prepared some months ago). VST should likewise be prepared to produce its code. Given how long the production of source code and related documents has been at issue here (over a year), there is simply no excuse for VST to claim the task is too burdensome.

In short, VST has concocted a protest as yet another way to stonewall discovery and to avoid the merits of this case. VST will never produce the source code, even to the neutral expert, unless this Court holds VST to this Court's order.

### III. THE COURT'S DEFINITION OF DESIGNATED COUNSEL ADEQUATELY PROTECTS THE PARTIES AND IS CORRECT

VST's proposal would provide source code to one opposing attorney but then, in effect, not allow that attorney to do anything with it. The whole point of allowing counsel to review the source code, however, is to allow each side's counsel to direct Dr. Ney and thus streamline the process. Accordingly, VST's proposed limitations on the designated counsel go too far.

It seems clear that the Court's intent is to allow one lawyer on the ScanSoft trial team to review the evidence in order to brief Dr. Ney on its arguments of trade secret misappropriation. Yet, VST moves to further limit review of the evidence by counsel. VST proposes that even once the designated counsel receives the evidence, he or she may not disclose any information derived from that evidence to other members of the ScanSoft litigation team. This limitation unfairly hamstrings ScanSoft's counsel from briefing Dr. Ney and advocating on behalf of its client.

Moreover, VST's proposed modification attempts to limit who ScanSoft must choose to review the evidence. Counsel for ScanSoft should be able to make that decision and not VST. Indeed, to make this process effective, ScanSoft should be allowed to designate an attorney who is familiar with reading source code. ScanSoft has just such an attorney on its litigation team. That attorney, however, also handles some patent prosecution work for ScanSoft – albeit not ScanSoft's portfolio of the voice activated dialing patents central to this case. VST's proposal goes too far in its attempt to limit production to a lawyer not engaged in any respect in the

7

prosecution of *any* patents for ScanSoft. Again, this limitation is overreaching and an unfair restraint on counsel's ability to prosecute its case.[2]

## IV. VST'S BAD FAITH MOTION PRACTICE

VST filed its motion regarding this discovery dispute without first conferring with ScanSoft in good faith, as required under Local Rules 7.1 and 37.1. For that reason alone, VST's motion should be denied. *See, e.g., Boston Children's Heart Foundation, Inc. v. Nadal-Ginard*, C.A. No. 93-12539, 1995 WL 17015062 at * 1 (D. Mass., Aug. 23, 1995) (Keeton, J.) (dismissing motion for failure to comply with LR 7.1).

More specifically, on Wednesday evening, January 11, 2006, at 5:36 pm, VST filed is Motion for Modification of the Court's Neutral Expert Procedure [D.N. 324]. This motion did not bear the usual Rule 7.1 certificate that VST had conferred with ScanSoft. VST had not first conferred. Indeed, ScanSoft's counsel, Bromberg & Sunstein LLP, confirmed with all members of the ScanSoft litigation team that nobody from VST's counsel, Choate, Hall & Stewart LLP, had first contacted any of the Bromberg & Sunstein attorneys to discuss the substance of the motion before it was filed.

On Friday, January 13, 2006, after missing each other by telephone the day before, Mr. Abati of Choate Hall and Mr. Belt of Bromberg & Sunstein spoke by telephone at about 9:30 am. Mr. Abati sought an *ex post facto* LR 7.1 conference. Mr. Belt told him that he would need to

---

[2] It is irrelevant that Bromberg & Sunstein also prosecutes patents for ScanSoft. As stated above, litigation counsel will review the source code. The protective order in this case provides that counsel of record "and other counsel employed by counsel of record's law firm(s) who are actively involved in the above-entitled litigation" may view information designated as "Highly Confidential." When the parties negotiated this protective order, VST did not specify or insist that patent prosecutors be excluded from viewing highly confidential information. Nonetheless, anticipating this concern, Bromberg & Sunstein has previously and voluntarily erected a "wall" between litigators and those attorneys prosecuting patents related to Scansoft's voice dialing products.

confer with his client first and would get back to Mr. Abati later that day.  In the meantime, at about 10:30 am, VST withdrew its first motion.  At 11:00 am, Mr. Abati sent Mr. Belt an e-mail asking for a time for a Rule 7.1 conference.  Within an hour, Mr. Belt responded by e-mail proposing the very next business day – *i.e.*, Tuesday, January 17 – for the conference (Monday being the federal Martin Luther King, Jr. holiday).  The e-mail chain between Mr. Abati and Mr. Belt is attached as Exhibit C.

That e-mail chain shows that VST acted in bad faith.  VST could not wait until the next business day for a conference to resolve or narrow the issues.  Instead, without holding a proper conference (again), VST simply refiled its motion near the close of business on Friday, January 13.  VST cannot claim that Mr. Abati's telephone conversation with Mr. Belt was in any way a conference--the substance of the motion was never discussed.  Thus, because VST twice failed to confer in good faith, this Court should deny VST's motion.

## CONCLUSION

For the reasons stated above, VST's Motion For Modification of the Court's Neutral Expert Procedure should be denied and VST should be ordered forthwith to comply with the Court's Neutral Expert Procedure dated December 29, 2005.

Dated: January 18, 2005                                         SCANSOFT, INC.,
                                                                By its attorneys,


                                                                /s/ Erik P. Belt
                                                                Lee Carl Bromberg, BBO # 058480
                                                                Erik Paul Belt, BBO # 558620
                                                                Lisa M. Fleming, BBO # 546148
                                                                Jack C. Schecter, BBO # 652349
                                                                Rebecca L. Hanovice, BBO # 660366
                                                                BROMBERG & SUNSTEIN LLP
                                                                125 Summer Street
                                                                Boston, Massachusetts 02110-1618
                                                                (617) 443-9292
                                                                ebelt@bromsun.com


## CERTIFICATE OF SERVICE

I certify that, on the above date, this document was filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic Filing. Paper copies will be mailed to non-registered participants.

/s/ Erik Paul Belt
January 18, 2006


02639/00509 459414.1