## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SCANSOFT, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-10353-PBS |
| | ) | |
| VOICE SIGNAL TECHNOLOGIES, INC., | ) | |
| LAURENCE S. GILLICK, ROBERT S. | ) | |
| ROTH, JONATHAN P. YAMRON, and | ) | |
| MANFRED G. GRABHERR, | ) | |
| | ) | |
| Defendants. | ) | |

### EMERGENCY MOTION FOR CLARIFICATION OF THE COURT'S ORDER REGARDING THE NEUTRAL EXPERT PROCEDURE

Voice Signal Technologies, Inc. ("Voice Signal") moves for clarification of the Court's December 29, 2005 Neutral Expert Procedure. This motion is filed as an emergency motion because both parties face deadlines for their submissions to the Neutral Expert and the clarification sought in this motion is essential to the parties' effective and efficient completion of their submissions.

In accordance with the Court's December 29, 2005 Neutral Expert Procedure (as modified by the Court's January 20, 2006 Order), both parties have produced source code and documents to the Neutral Expert. On Friday, February 24, 2006, pursuant to Paragraph 12 of the Neutral Expert Procedure, both parties submitted to the Neutral Expert and filed under seal their initial briefs outlining their contentions.

The issue needed for clarification is: who is entitled to have access to the parties' briefs outlining their contentions? Paragraph 12 of the Neutral Expert Procedure is internally inconsistent on this point. First, it states that "[w]ithin twenty-one (21) calendar days after

receiving the other party's Source Code, the First Year Documents, and the Technical Documents, as specified in Paragraphs 5 through 12 above, each party shall produce to the Expert *and opposing counsel* a brief outlining that party's contentions in this case and guiding the Expert's review of the other party's Source Code, First Year Documents, and Technical Documents."  Order, ¶12, lns. 2-9 (emphasis added).  Then, in the next sentence, it states that "[a]ll briefs will be designated as Highly Confidential under the Protective Order -- that is, shared only with the Expert *and the designated opposing counsel* and concurrently filed under seal with the Court."  Order, ¶ 12, lns. 9-13 (emphasis added).  Under the Protective Order, material designated "Highly Confidential" may be accessed by the litigation counsel of record, the parties' neutral experts ("Permitted Experts") and in-house counsel for the parties actively involved in the litigation ("Permitted Representative").  Thus, the Court's limitation of the briefs to "the designated opposing counsel" is not only inconsistent with the first sentence of the same paragraph but also inconsistent with the Protective Order.

Accordingly, Voice Signal seeks an order from the Court clarifying that all counsel of record and in-house counsel may review the neutral expert briefs.  Of course, if the brief contains or relies upon a party's source code, that code should either be redacted from the copy provided to litigation counsel and in-house counsel or isolated in separate appendix which would only be made available to the designated counsel.  As the following discussion explains, this result is not only consistent with the Court's Order, *see* Order, ¶12, lns. 2-9, but is appropriate for at least two reasons: (1) *both* parties' proposed neutral expert procedures anticipated that the briefs to Professor Ney would be available to the lawyers for the other party; and (2) such an exchange would assist the neutral expert (and thus the Court) in his analysis.

## BACKGROUND

At the *Markman* hearing on June 17, 2005, the Court constructed a process to evaluate the trade secret misappropriation and patent infringement claims in this case. Specifically, the Court directed the parties to select a neutral expert who would (1) examine the parties' confidential, proprietary speech recognition source code; and (2) report to the Court whether the materials examined provide a basis for either ScanSoft's claims of trade secrets misappropriation and/or Voice Signal's counterclaim of patent infringement. The Court also ordered the parties to agree upon a procedure which would assist the neutral expert's analysis of the source codes.

Lawyers for the parties interviewed candidates and ultimately agreed upon Dr. Hermann Ney of the Computer Science Department at Aachen University in Germany as the Court's neutral expert. Dr. Ney agreed to serve. *See* Docket No. 293.

The parties failed to agree on a procedure for the neutral expert. As a result, on December 16, 2006, each party submitted a Proposed Neutral Expert Procedure to the Court. *See* Docket No. 309 (ScanSoft); Docket No. 310 & 311 (Voice Signal). Notably, each of the proposals provided for the production of a brief to Dr. Ney which would be available to all opposing counsel. *See* Docket 309-4 (ScanSoft) at ¶ 12; Docket No. 311 (Voice Signal) at ¶ 10.

On December 29, 2005, the Court issued its Neutral Expert Procedure which is the subject of this motion. *See* Docket No. 320. The Neutral Expert Procedure (as modified by the January 20, 2006 Order), prescribes a special procedure for production of the following: (1) Voice Signal's source code for those products alleged to be based on ScanSoft's trade secrets; and (2) ScanSoft's source code for those ScanSoft speech recognition engines alleged to infringe the `630 patent. Order, ¶ 9. In light of each party's concern about turning over their source code to an arch rival in the marketplace, the Court's Neutral Expert Procedure established a

heightened level of protection for source code (hereafter "the highly confidential-plus designation"). This new designation requires that *only* Dr. Ney and *one* opposing counsel -- known as the "designated counsel" -- will have access to the other party's source code. Order, ¶ 7, 11.[1]

As stated above, however, the Court's Neutral Expert Procedure also contains two inconsistent provisions regarding the subsequent exchange of the parties' briefs to Dr. Ney. *Compare* Order, ¶12, lns. 2-9 *with* Order, ¶ 12, lns. 9-13. Furthermore, the Court's limitation of the exchange of the neutral expert briefs to one "designated counsel" is inconsistent with the parties' proposed procedures and the Protective Order in place in this case.

Voice Signal noticed the inconsistency between the Court's Neutral Expert Procedure and the parties' requested procedures, as well as the internal inconsistency in Paragraph 12 of the Neutral Expert's Procedure. Voice Signal, through its counsel, contacted ScanSoft and proposed that the parties either agree that all counsel were entitled to have access to the briefs or jointly move for clarification. ScanSoft rejected Voice Signal's proposal, stating that Paragraph 12 "is clear" and taking the position that the parties' briefs may only be reviewed by the one designated counsel.

## ARGUMENT

Voice Signal seeks an order from the Court clarifying that the briefs be treated as Highly Confidential under the Protective Order in place in this case. To the extent source code is referenced in the brief, it may be either redacted from the copy served on opposing counsel or segregated into an appendix or exhibit provided only to the designated counsel. This is the appropriate outcome for at least two reasons: (1) *both* parties' proposed neutral expert

---

[1]    In its January 20, 2006 Order, the Court made clear that ScanSoft's designated counsel is barred from any work for ScanSoft on its prosecution of patents for two years.

procedures anticipated that the briefs to Dr. Ney would be available to the lawyers for the other party; and (2) such an exchange would assist the neutral expert (and thus the Court) in his analysis.

### A.    Both Parties Originally Sought The Unrestricted Exchange Of Their Briefs To Dr. Ney.

In its proposed Neutral Expert Procedure to the Court, ScanSoft included the following provision for briefs to the Neutral Expert: "Within twenty-one (21) calendar days after receiving the other party's Source Code, the First Year Documents, and the Technical Documents, as specified in Paragraphs 5 through 12 above, each party shall produce to the Expert *and opposing counsel* a brief outlining that party's contentions in this case and guiding the Expert's review of the other party's Source Code, First Year Documents, and Technical Documents."  Docket No. 309-4 at ¶ 12 (emphasis added).  Similarly, in its proposal, Voice Signal also requested the submission of the neutral expert briefs to all opposing counsel.  *See* Docket No. 309-5.  This motion, therefore, simply seeks to implement the parties' agreed-upon standard of confidentiality regarding these submissions.  Significantly, the Court first approved this standard in Paragraph 12 of the Neutral Expert Procedure in language mirroring ScanSoft's proposal. *See* Order, ¶ 12 at lns. 2-9 ("Within twenty-one (21) calendar days after receiving the other party's Source Code, the First Year Documents, and the Technical Documents, as specified in Paragraphs 5 through 12 above, each party shall produce to the Expert *and opposing counsel* a brief outlining that party's contentions in this case and guiding the Expert's review of the other party's Source Code, First Year Documents, and Technical Documents.") (emphasis added).  However, the Court then added a sentence: "All briefs will be designated as Highly Confidential under the Protective Order -- that is, shared only with the Expert *and the designated opposing counsel* and concurrently filed under seal with the Court."  Order, ¶ 12, lns. 9-13 (emphasis added).  This

language in the Court's Neutral Expert Procedure was not requested by either party, and, Voice Signal believes, should be clarified in order to conform to the parties' agreed-upon standard of confidentiality, articulated by ScanSoft as follows: "All briefs will be designated as 'Highly Confidential' under the Protective Order -- that is shared only with the Expert *and opposing counsel* and concurrently filed under seal with the Court." Docket No. 309-4 at ¶ 12 (emphasis added).

**B.     The Requested Clarification Will Assist The Neutral Expert (And Thus The Court) In His Analysis.**

The Neutral Expert has been engaged to assist the Court. The unrestricted exchange of the briefs to Dr. Ney is essential to the effective and efficient sharing of information with Professor Ney which will allow him to assist the Court. The initial submissions to Professor Ney are the parties' briefs outlining their contentions. On ScanSoft's side this is to include (finally) a detailed description of what it is Voice Signal and the individual defendants are accused of taking and misusing. On the Voice Signal side, the brief includes a detailed outline of Voice Signal's infringement contentions.

The Court's Neutral Expert Procedure allows each party to meet with Dr. Ney in person or by telephone. "The purpose of the meetings is to guide the Expert on what to look for in the VST Source Code, ScanSoft Source Code, Source Code Documentation, First Year Documents, and Technical Documents -- i.e., for alleged evidence of trade secrets or patent infringement, as the case may be." Order, ¶ 13. The attorneys for the parties are scheduled to meet with Professor Ney in Boston on March 24, 2006. The parties have also discussed having telephone meetings with Dr. Ney in advance of the Boston meeting. In order for these meetings to be productive, each party should address the other's contentions, which will only be possible after reviewing the other party's briefs.

As presently interpreted by ScanSoft, Paragraph 12 of the Neutral Expert Procedure frustrates the Court's stated intent to be assisted by the neutral expert by limiting access to those contentions to a single designated attorney. In particular, Dr. Ney will be forced to rely only on the arguments of the parties' "designated counsel" -- each a patent lawyer with education and experience in reading source code but each of whom is new to this litigation. As a result, Dr. Ney will be denied the opportunity to interrogate the very attorneys who arguably know the most about the issues before him -- including the attorneys who have consulted most closely with the individual defendants regarding the allegations that they misappropriated ScanSoft's trade secrets. This, Voice Signal believes, would inevitably stifle the process of educating Dr. Ney and, thus, the Court.

7

## **CONCLUSION**

For the foregoing reasons, the Court should clarify that all counsel of record and in-house counsel may review the neutral expert briefs.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,

/s/ Robert S. Frank, Jr.
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

Dated:  March 1, 2006

4049904v1

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

I, Richard C. Abati, hereby certify that I have conferred with opposing counsel before filing this Motion in an effort to resolve or narrow the issues presented.


/s/ Richard C. Abati
Richard C. Abati

9