UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SCANSOFT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-10353-PBS |
| | ) | |
| VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR, | ) | |
| | ) | |
| Defendants. | ) | |

**VOICE SIGNAL TECHNOLOGY'S HEARING BRIEF WITH RESPECT TO ITS MOTION TO DISQUALIFY GOODWIN PROCTER LLP FROM REPRESENTING SCANSOFT IN THIS CASE**

Plaintiff Voice Signal Technologies, Inc. ("Voice Signal") has moved to disqualify Goodwin Procter, LLP from representing defendant ScanSoft, Inc. ("ScanSoft") in this case on the ground that an attorney-client relationship existed between Voice Signal and Goodwin Procter with respect to this case. The motion was assigned to Magistrate-Judge Alexander for an evidentiary hearing. This pre-hearing memorandum will provide a summary of the law that applies to the present motion and a description of the types of evidence that will be offered at the hearing.

**The Law**

The pending Motion to Disqualify is governed by the Massachusetts Rules of Professional Conduct, codified as Rule 3:07 of the Rules of the Supreme Judicial Court. *See,* D. Mass. Local Rule 83.6(4)(B). The Supreme Judicial Court has ruled that, where an

attorney-client relationship has been created and confidences have been shared by the client with an attorney, the attorney should be disqualified from representing an adverse party in litigation if the confidences transmitted have a substantial relationship to the issues involved in the litigation. *See Adoption of Erica*, 426 Mass. 55, 61 (1997) (applying the substantial relationship test to a claim of conflict of interest and noting that the Massachusetts Rules of Professional Conduct "specifically incorporate the test."). Rule 1.9 of the Massachusetts Rules of Professional Conduct states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

In the present case, it will be undisputed that there were consultations between Voice Signal and Goodwin Procter, that those consultations related to this case, that Goodwin Procter now wishes to represent ScanSoft, the opposing party in the same case, and that Voice Signal does not consent. The only question will be whether the Goodwin Procter/Voice Signal consultations were sufficient to create an attorney-client relationship.

Voice Signal consulted with Goodwin Procter in the process of selecting counsel for this case. It ultimately chose another firm. However, it is well settled that an attorney-client relationship may arise from preliminary consultations with counsel, *even if counsel are not ultimately retained by the client and even if no fee is paid. See Bays v. Theran*, 418 Mass. 685, 690 (1994) In *Bays*, a prospective client discussed a future lawsuit with a lawyer "two or three times by the telephone for less than ten minutes on each occasion." *Id*. at 688. The client sent the lawyer public documents and correspondence. The Court held that the lawyer's firm was disqualified from representing an opposing party in the same case because [a] the client

communicated with a lawyer in that firm "with a view to possibly retaining him, [b] discussed various aspects of a . . . suit [with the lawyer], and [c] [the lawyer] counseled [the client] concerning some of the basic legal considerations involved in the suit." *Id*. at 691. *See also Rodriquez v. Montalvo*, 337 F. Supp. 2d 212 (D. Mass. 2004 (Gorton, J.)) (preliminary consultation with paralegals at a legal agency that did not ultimately represent plaintiff nevertheless precluded lawyers who were employed at that agency at the time of the consultation from subsequently representing the opposing party in the same dispute).

Representation adverse to the former client in a substantially related matter is proscribed "on the sole ground that the later suit, simply because of its substantial relation to the former one, exposes the attorney to an intolerably strong temptation to breach his duty of confidentiality to the former client. The former client need never prove that the attorney *actually* misused the confidences to the client's disadvantage." *Bays*, 418 Mass. at 691 (1994) (quoting Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1315 (1981)); *see also Rodriguez v. Montalvo,* 337 F. Supp. 2d 212, 218 (D. Mass. 2004) (same); *ebix.com v. McCracken*, 312 F. Supp. 2d 82, 90 (D. Mass. 2004) (stating that the burden is on the former client to prove that there is a substantial relationship between the earlier representation of the former client and the present representation of the client's adversary, because "the client need never prove that the attorney actually misused confidences"). [1]

A "substantial relationship" clearly exists when, as here, the former and current representations involve the same case. *See Bays,* 418 Mass at 691 (1994) (disqualifying an attorney who had two preliminary telephone conversations with plaintiff about common area

---

[1] Massachusetts has *not* adopted ABA Model Rule 1.18, upon which Goodwin relies. The ABA rule provides that a lawyer should not represent a client with interests adverse to the recipient of such preliminary consultations (the "prospective client") in a substantially related matter "if th[at] lawyer received information from the prospective client that could be significantly harmful to that person in the matter." ABA Model Rule 1.18(c). This test is simply different from the standard adopted by the Supreme Judicial Court.

percentages in a condominium development from representing defendant developer in lawsuit alleging developer made misrepresentations concerning common area percentages); *Valdez v. Domericoni*, 2 Mass.L.Rptr. 627 (Mass. Super. 1994) (disqualifying attorney from representing plaintiff based on a finding that the attorney had conversations with the defendant "about the subject of the present case"); *Rodriguez v. Montalvo*, 337 F. Supp. 2d 212 (D. Mass. 2004) (disqualifying attorney who had been a supervising attorney at the Massachusetts Justice Project when plaintiff contacted Project and spoke with paralegals about her case). *Cf. Adoption of Erica*, 426 Mass. 55 (1997) (finding no substantial relationship between attorney's former representation of grandfather of child and current representation of child as guardian ad litem in adoption case); *Ebix.com v. McCracken*, 312 F. Supp. 2d 82 (D. Mass. 2004) (denying motion to disqualify based on detailed claim-by-claim finding that former representation of corporation's predecessor was not substantially related to present lawsuit).

### The Evidence

The evidence in this case will establish that there was a much more elaborate interaction between Voice Signal and Goodwin Procter than existed between the prospective client and the lawyer in *Bays* or in *Rodriguez*, *supra*. This case involves allegations by ScanSoft that Voice Signal infringed ScanSoft's U.S. Patent No. 6,501,966 and misappropriated trade secrets developed by ScanSoft's predecessor-in-interest, Learnout & Hauspie. The evidence will include the following:

1. Voice Signal and Goodwin Procter lawyers met twice for a total of at least three hours, vastly longer than the contacts in *Bays* or *Rodriguez*. Between the meetings, and after the second meeting, there was extensive e-mail correspondence, in which Voice Signal disclosed facts to Goodwin Procter and requested advice from Goodwin Procter.

2. At the outset of the relationship, Goodwin Procter made express promises of confidentiality. It assured Voice Signal that the Goodwin Procter/Voice Signal

consultation would be protected by the attorney-client privilege. Goodwin Procter labeled subsequent e-mail communications with Voice Signal "PRIVILEGED."

3. In reliance upon Goodwin Procter's promises of confidentiality, Voice Signal provided to Goodwin Procter, *inter alia*:

(a) Specific information about Voice Signal's business strategy, prices, margins, sales targets, and actual and potential customers;

(b) A description of the way in which Voice Signal's product works;

(c) Voice Signal's preliminary assessment of the ScanSoft patent-in-suit and the prior art Voice Signal had located;

(d) Facts and documents relating to prior litigation between Voice Signal and ScanSoft's predecessor-in-interest, Learnout & Hauspie;

(e) The history of pre-litigation negotiations between ScanSoft and Voice Signal;

(f) Voice Signal's assessment of the motivations underlying ScanSoft's decision to sue Voice Signal; and

(g) Voice Signal's tolerance for settlement, and the amount for which it would be prepared to settle this case.

At Voice Signal's request, Goodwin Procter provided, among other advice:

(1) its analysis of the scope of the claims of the ScanSoft patent-in-suit;

(2) the results of a search for prior art that Goodwin Procter had conducted;

(3) Goodwin Procter's strategy for attacking ScanSoft's patent-in-suit on non-infringement and invalidity grounds;

(4) Goodwin Procter's assessment of the preclusive effect on ScanSoft's trade secret claims of the dismissal of a prior lawsuit brought by ScanSoft's predecessor-in-interest, and the releases given at that time, as well as a proposed strategy for attacking the trade secret claims asserted by ScanSoft;

(5) Advice regarding counterclaims that might be asserted by Voice Signal; and

(6) Advice as to Voice Signal's possible damage exposure.

The evidence will, therefore, establish that Voice Signal (1) disclosed facts to Goodwin Procter and sought legal advice from Goodwin Procter, (2) that the requested advice was well within the scope of Goodwin Procter's professional competence, and (3) that Goodwin Procter agreed to give, and actually gave, legal advice to Voice Signal -- all under assurances of confidentiality.  Consequently, Goodwin Procter may not now represent ScanSoft -- the opposing party -- in the very same case.  *Bays*, 418 Mass. at 690.

ScansSoft has been ably represented in this case by Bromberg & Sunstein.  ScanSoft may, if it wishes, engage any number of other law firms to work, as a second firm, with Bromberg & Sunstein.  However, Goodwin Procter may not be that second firm.  The consultations between Voice Signal and Goodwin Procter were much more extensive than those in *Bays* and *Rodriguez* -- the controlling cases.  They were more than sufficient to establish an attorney/client relationship.  The motion to disqualify should be granted.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  March 16, 2006 | VOICE SIGNAL TECHNOLOGIES, INC. |
|  | By its attorneys, |
|  | /s/ Robert S. Frank, Jr.<br>Robert S. Frank, Jr. (BBO No. 177240)<br>Sarah Chapin Columbia (BBO No. 550155)<br>Paul D. Popeo (BBO No. 567727)<br>Wendy S. Plotkin (BBO No. 647716)<br>Richard C. Abati (BBO No. 651037)<br>CHOATE, HALL & STEWART LLP<br>Two International Place<br>Boston, MA  02110<br>(617) 248-5000 |

Certificate of Service

I hereby certify as follows:

     1.  This document filed through the ECF system will be sent electronically to the registered participants in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 16, 2006.

     2.  On March 16, 2006, a true and correct copy of this document was served by hand to Kenneth A. Cohen, Esq. of Goodwin Procter LLP, Exchange Place, Boston, MA 02109.

     /s/ Richard C. Abati