UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., <br><br> Plaintiff, <br><br> v. <br><br> VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON and MANFRED G. GRABHERR, <br><br> Defendants. | C. A. No. 04-10353-PBS |

**VOICE SIGNAL TECHNOLOGIES, INC.'S RESPONSE TO SCANSOFT'S OBJECTION TO MAGISTRATE JUDGE'S ORDER ON SCANSOFT'S EMERGENCY MOTION FOR REMEDIES AND TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT**

Defendant Voice Signal Technologies, Inc. ("Voice Signal") submits this memorandum in response to ScanSoft's Objections to the Magistrate Judge's Order On ScanSoft's Emergency Motion For Remedies And To Show Cause Why Defendant Should Not Be Held in Contempt for Violating The Court's Protective Order ("Objections").

On June 3, 2005, ScanSoft filed in court, and served on Voice Signal, a copy of a memorandum containing attorney work product. On June 6, 2005, ScanSoft requested the return of the document. On June 8, 2005, while Voice Signal was considering ScanSoft's request, ScanSoft filed a motion seeking to compel return of the document and asking that Voice Signal's counsel be held in contempt for failing to return the document. ScanSoft argued that the Protective Order in this case required the return of the document, and that Voice Signal's continuing consideration of ScanSoft's request was in contempt of the Protective Order.

1

4070516v6

On March 28, 2006, Magistrate Judge Alexander issued an Order denying ScanSoft's Motion. The Court (1) declined to order Voice Signal to return the document, and (2) chose not to rule on Voice Signal's request that the Court determine that ScanSoft's disclosure of the contents of the document resulted in a subject matter waiver. In its Objection, ScanSoft asks this Court to disregard the Magistrate Judge's reasoning, the plain language of the Protective Order, and clearly applicable case law. ScanSoft's objection should be overruled.

### A. The Magistrate Judge Correctly Held That The Protective Order Does Not Apply To ScanSoft's Public Filing Of A Document Containing Work Product.

ScanSoft's principal argument is that the Protective Order required Voice Signal to return a document that ScanSoft filed in Court, that ScanSoft thereby served on Voice Signal, and that was available on the public internet for a period of days.

As the Magistrate Judge ruled, the Protective Order is inapplicable to the current dispute. It governs documents produced, and information provided, in the course of discovery. It does not address or protect statements made in open court, or documents placed in the public record of the Court.

The purpose of the Protective Order is set forth in the WHEREAS provisions of the Order. The first WHEREAS provision states that "the Court [has] found that the *discovery* in the above-captioned action may involve the disclosure of documents, things and information . . .that may constitute or contain trade secrets or other confidential research, development, commercial or proprietary information. . . ." (Emphasis supplied.) The second WHEREAS provision then states that "the distribution of *such information*" should be restricted. Consistent with that purpose, Section 1 of the Protective Order defines PROTECTED INFORMATION as "all documents, things, testimony, and other information produced, provided or made available by a party or a non-party to this litigation *in the course of formal and informal discovery in this*

2

*action. . . ."* Protective Order, §1 (emphasis supplied.) *See also*, Protective Order, §2 (defining "PROTECTED INFORMATION" as information, documents and things "which the *producing* party deems confidential" and/or "which the *producing* party contends would cause…harm to the *producing* party's business operations").

ScanSoft relies on Section 4 of the Protective Order. Section 4, like the rest of the Order, relates to documents produced in discovery, not documents placed in the Court's public files. It states that "the inadvertent *production* of information subject to the attorney-client privilege or work product immunity. . . shall not be deemed a waiver of such privilege. . . . Any party receiving inadvertently *produced* information will forthwith, upon request, return the original and all copies to the party *producing* such information. (Emphasis supplied.)[1]

The Magistrate Judge examined the Protective Order, considered the parties' arguments, and correctly concluded that the Protective Order is inapplicable to the instant motion. The Protective Order provision that requires return of documents that were produced inadvertently in discovery does not require the return of a court filing that was not produced in discovery.

ScanSoft argues that it "does not make sense" to limit the Protective Order to documents produced, and information disclosed, in the course of discovery. Objection p. 3. The parties negotiated the language of the Protective Order at length. They agreed to its terms. They might have agreed to something else, but they did not. ScanSoft may not ask the Court to enforce an Order that it did not request, and the Court did not enter.

---

[1] ScanSoft cites Protective Order, § 28 which states that the provisions of the Protective Order "apply to all proceedings in this action." This section relates to the protection of produced materials subsequent to their production. Access to those materials is limited to a defined group of persons (Protective Order, § 6-12) and protected discovery materials are to be filed under seal. Section 28 does not create obligations unless they are established elsewhere in the Order. Similarly, the THEREFORE portion of the preamble to the Protective Order, upon which ScanSoft relies, refers to the statement of purpose that precedes it in the preamble - - the Protective Order is designed to address the treatment of documents produced, and information provided, in the course of discovery.

3

In sum, the Protective Order does not address, or protect from disclosure, documents filed in the public record of the Court. The Order was not violated by Voice Signal's counsel; and it does not provide a basis for the relief requested by ScanSoft.

**B. The Disputed Document Constitutes Attorney Work Product. Work Product Protection Is Waived When Work Product Is Filed In Court Or Provided To An Opposing Party.**

ScanSoft's second argument is that the disputed document should be returned even though the Protective Order does not apply. ScanSoft's argument ignores the affidavit of ScanSoft's counsel and the relevant case law.

1. The Disputed Document Contains Work Product, But Is Not Subject To An Attorney-Client Privilege.

The disputed document is designated on its face as "Attorney Work Product." It was not labeled by counsel (or anyone else) as an attorney-client communication, and it is not addressed to a client. In proceedings before the Magistrate Judge, ScanSoft's counsel described the document as "attorney-work product," and represented that it was a draft that "was not intended for outside distribution." [Second] Declaration of Jack C. Schecter (June 28, 2005), ¶ 6. The Magistrate Judge properly found as a fact that the document was work product. She declined to find that it was protected as an attorney-client communication.

As this court has recognized, "the party invoking a recognized privilege has the burden of establishing . . . the existence of that privilege . . . ." *In re Raytheon Securities Litigation*, 218 F.R.D. 354, 357 (D. Mass. 2003)(Saris, J.). ScanSoft did not sustain its burden of establishing that the attorney-client privilege applies to the disputed document. The sole support for the assertion of the attorney-client privilege is a single sentence in the first Schecter Declaration (June 7, 2005). However, that Declaration fails to state facts that might support such a conclusion, and it is at odds with Mr. Schecter's second Declaration, described above. It was not

4

clear error (Fed. R. Civ. P. 72(a)) for the Magistrate Judge to conclude that this unsupported, unspecific (and later recanted) assertion was insufficient to sustain ScanSoft's burden of establishing that the disputed document is protected by the attorney-client privilege.

    2.    The Disclosure By Counsel of Work Product Resulted In A Loss of Work Product Protection.

ScanSoft's counsel's disclosure of work product resulted in a waiver of work product protection. The work product doctrine is designed to prevent one party from obtaining access to the mental impressions of counsel for the other party. As a matter of law (and of logic), work product protection is lost if counsel discloses his own work product to an adversary. The disclosure by counsel reveals counsel's own analysis. Once that analysis is known to the adversary, the purpose of work product protection no longer exists. *United States v. Massachusetts Institute of Technology*, 129 F.2d 681, 687 (1st Cir. 1997) ("... it would take better reason than we have to depart from the prevailing rule that disclosure to an adversary . . . forfeits work product protection"); *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990) ("[T]he government has waived [work product protection] by voluntarily attaching a copy of the offending memorandum to appellant's copy of the motion . . . . It is irrelevant whether the attachment was inadvertent . . . . Voluntary disclosure of attorney work product to an adversary in litigation . . . defeats the policy underlying the privilege . . . . Granting the motion [to strike the document from the court record] would do no more than seal the bag from which the cat has already escaped"); *Data General v. Grumman Systems Support Corp.*, 159 F.R.D. 556, 558-561 (D. Mass. 1991); *Adoption of Sherry*, 435 Mass. 331, 335-36 (2001). ScanSoft does not address or attempt to distinguish, these rulings. They are controlling here.

Therefore, the Magistrate Judge's finding that the disputed document contains work product (but is not protected by the attorney-client privilege) should be sustained. The inclusion

of such a document in a court filing - - and the disclosure of the contents of that document to Voice Signal's counsel - - ended work product protection.  The Magistrate Judge's Order was correct.  It should stand.

### C. The Protection of the Disputed Document was the Result of Gross Negligence

The filing of the disputed document resulted from conduct that is fairly described as gross negligence.  As a result, even if the document had been protected by the attorney-client privilege (which it is not), and even if the filing in court of such a document were within the scope of the Protective Order (which it is not), any relevant privilege would be lost.

In *VLT v. Lucent Technologies, Inc.*, 2003 WL 151399 (D. Mass.), the relevant protective order stated that inadvertent production of a privileged document would not result in a waiver of privilege.  The order required the return or destruction of inadvertently-produced documents.  Certain documents were produced to an opposing party (not, as here, filed in court).  The Court found that counsel's conduct, when producing the documents, constituted gross negligence.  This Court held that the production of documents as a result of gross negligence was not "inadvertent" production, and that, as a result, the privilege was waived despite the terms of the protective order.

Although the nature of counsel's negligence in this case is different from the conduct at issue in *VLT*, the principle stated in *VLT* is equally applicable to the instant case.  Counsel or counsel's assistant first engaged in the act of scanning the disputed document so as to prepare it for filing in court.  Apparently, no attention was paid to what was being scanned.  After scanning, cursory review of the material that was about to be filed would have detected the presence of the six page document that is in dispute.  ScanSoft's counsel admits that he "failed to review" ScanSoft's entire submission before it was filed.  Second Schecter Declaration, ¶ 8.  The

materials that were filed - - a twenty page brief and four exhibits - - were not voluminous. The exercise of rudimentary precautions would have prevented the filing of the disputed documents.

In similar circumstances, where privileged documents have been filed in court, any privilege attaching to the documents has been deemed waived. *Local 851 of the International Brotherhood of Teamsters v. Kuehne Nagel Air Freight, Inc.*, 36 F. Supp. 2d 127, 132-133 (E.D.N.Y. 1998) (privileged documents appended to court filing as one of seven exhibits and "did not result from the production of thousands of pages during a massive production;" "counsel either failed to review his staff's assembly of the opposition and cross-motion or failed to do so adequately;" privilege held waived); *Zagone v. Bosque*, 2003 WL 1581999 (N.D. Ill.) (privileged document attached to motion; the contents of the document were, as a result, fully disclosed; motion to remove the document from the court file denied); *United States v. Gangi*, 1 F. Supp. 2d 256 (S.D.N.Y. 1998) (work product memorandum filed in court attached to a lengthy indictment; "work product protection is waived when protected materials are disclosed in a manner which substantially increases the opportunity for a potential adversary to obtain the protected information").

In sum, the disclosure of privileged information as a result of gross negligence is not an "inadvertent" production. Any such disclosure waives applicable privileges.

**D. <u>Additional Issues.</u>**

1. ScanSoft makes much of the Magistrate Judge's comments concerning the contentiousness of this litigation, and implies that Voice Signal is the source of acrimony. The following facts are undisputed: before the instant motion was filed Voice Signal asked ScanSoft for time to consider the parties' rights and obligations with respect to the relevant document. Voice Signal's counsel asked ScanSoft relevant questions regarding the nature of the document

and the circumstances of its filing. He told ScanSoft that if he were "in doubt," Voice Signal itself would seek the direction of the Court. ScanSoft filed the instant motion without giving Voice Signal's counsel the additional twenty-four hours that he requested to consider the matter, without answering counsel's questions, and without allowing Voice Signal to present the issue to the Court. Affidavit of Robert S. Frank, ¶¶ 3-6. Voice Signal was not the party that acted in a contentious manner.

      2.    ScanSoft has intentionally mischaracterized the relevant document. The document contains a comparison of Voice Signal's VoiceMode product -- a product that ScanSoft states is not alleged to infringe any ScanSoft patent *in this litigation* -- to the claims of a patent that ScanSoft states has not been asserted against any Voice Signal product *in this litigation*. Objections p. 4. The Court will recall that Voice Signal resisted, and ScanSoft insisted upon, the production by Voice Signal of its source code. Voice Signal argued that ScanSoft had not identified, and could not identify, a single ScanSoft trade secret that Voice Signal was using; and further, that internal ScanSoft documents disclosed that ScanSoft did not believe that Voice Signal was using ScanSoft's technology. Voice Signal stated that ScanSoft was seeking access to Voice Signal's source code for the improper purpose of attempting to construct some new patent infringement claim that it might assert against Voice Signal. Voice Signal pointed to the document that is the subject of the instant motion as evidence of ScanSoft's improper purpose. The document contains counsel's comparison of the claims of a ScanSoft patent to a Voice Signal product. It states that a full infringement analysis could not be conducted without access to Voice Signal's source code.

8

The Court nevertheless ordered Voice Signal to produce source code pursuant to its Neutral Expert Procedure. Voice Signal did, in fact, make extensive production of source code to the Neutral Experts and to ScanSoft's designated counsel. After counsel's review of Voice Signal's source code, ScanSoft remains unable to identify any ScanSoft trade secret that was used or copied by Voice Signal. However, just as Voice Signal predicted, on March 21, 2006, approximately a month and a half after Voice Signal first produced its source code to ScanSoft, ScanSoft commenced a patent infringement action against Voice Signal, in which ScanSoft alleges that the Voice Signal product analyzed in the disputed document infringes the ScanSoft patent that is the subject of the disputed document. In an apparent effort to avoid scrutiny of its conduct, and the analysis of its new infringement claims by this Court, ScanSoft filed this new case in the United States District Court for the Eastern District of Texas. <u>Nuance Communications, Inc. v. Voice Signal Technologies, Inc.</u>, Civil Action No. 06-506CV71.

Thus, a document that was once irrelevant to the dispute between the parties except to display ScanSoft's motivation for pursuing Voice Signal's source code, is now directly relevant to the substance of their expanding dispute. ScanSoft's statement that "the document does not concern the patent or trade secret issues in this case" (Objection, p. 4) is, to be generous, a half-truth.

9

4070516v6

## **CONCLUSION**

ScanSoft's Emergency Motion for Remedies And To Show Cause Why Defendant Should Not Be Held In Contempt For Violating the Court's Protective Order was properly denied. ScanSoft's objections to the Magistrate Judge's ruling should be overruled.

                                        Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.,
LAURENCE S. GILLICK, ROBERT S. ROTH,
JONATHAN P. YAMRON, MANFRED G.
GRABHERR,

By their attorneys,


 /s/ Wendy S. Plotkin
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART
Two International Place
Boston, MA  02110
617) 248-5000

Dated:  April  25, 2006

4070516v6