Exhibits: (None)                Volume 1, Pages 1 - 175

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

-----------------------------

SCANSOFT, INC.,

        Plaintiff

vs.                             Docket No. 04-10353-PBS

VOICE SIGNAL TECHNOLOGIES,

INC., et al.,

        Defendants

-----------------------------

MEETING WITH NEUTRAL EXPERT

Friday, March 24, 2006, 9:10 a.m.

Bromberg & Sunstein LLP

125 Summer Street

Boston, Massachusetts


*TRANSCRIPT CONTAINS MATERIAL DESIGNATED "HIGHLY*

*CONFIDENTIAL" and "HIGHLY CONFIDENTIAL - DESIGNATED*

*COUNSEL'S EYES ONLY"*


--------- Janis T. Young, RDR, CRR ---------

Farmer Arsenault Brock LLC

Boston, MA   |   617-728-4404   |   Fax 617-728-4403

2

1  PRESENT:
2      Prof. Dr.-Ing Hermann Ney
3          RWTH-Aachen
4          Computer Science Department
5          Ahornstr. 55, D-52056
6          Aachen, Germany
7          as neutral expert
8
9      Lee Carl Bromberg, Esq.
10     Erik Paul Belt, Esq.
11     Lisa M. Fleming, Esq.
12     M. Brad Lawrence, Esq.
13     Courtney M. Quish, Esq.
14         Bromberg & Sunstein LLP
15         125 Summer Street
16         Boston, Massachusetts 02110-1618
17         617-443-9292    Fax 617-443-0004
18         lbromberg@bromsun.com; ebelt@bromsun.com;
19         lfleming@bromsun.com; blawrence@bromsun.com;
20         cquish@bromsun.com
21         for Plaintiff
22
23     (Continued)
24

3

1   Sarah Chapin Columbia, Esq.
2   Robert S. Frank, Jr., Esq.
3   Christopher J. McKenna, Esq.
4   Choate Hall & Stewart LLP
5       Two International Place
6       Boston, Massachusetts 02110
7       617-248-5000    Fax 617-248-4000
8       scolumbia@choate.com; rfrank@choate.com;
9       cmckenna@choate.com
10      for Defendant

11
12
13
14
15
16
17
18
19
20
21
22
23
24

15

1  Bromberg & Sunstein's interpretation were accepted
2  as distinguished from ours.
3       I think in those situations you would
4  need to call that out for the Court so that she
5  could tell whether it made a difference or not.
6       DR. NEY:  One more question about the
7  code.  I mean, the code can be huge.
8       MS. COLUMBIA:  We have more for you.
9       (Laughter)
10      DR. NEY:  Will there be specific places
11 where I have to look at the code, or what's the
12 idea?  How will this be implemented?  Because the
13 problem is, when you have a voice-recognition
14 system, there's a huge amount of code, and it's
15 difficult to check each part.
16      I mean, you can ask, okay, is this a
17 certain functionality that must be somewhere in the
18 code, and I can ask -- what do you call it? -- the
19 person that has wrote the code or is in charge of
20 the code to show me the position or part where this
21 function is implemented, and then I can check
22 whether it's --
23      MR. BELT:  I think it may be safe to say
24 that there will be portions of the code that will be

HIGHLY CONFIDENTIAL

49

1       * * * * *

2       (Present in the room with Dr. Ney:
3  Attorneys Columbia, Frank and McKenna only.)
4       MS. COLUMBIA:  Back on the record.
5       We have a notebook on the trade secrets
6  and a notebook on the patents.  As you know, the
7  parties made their first submission simultaneously,
8  so at the time we made the first brief, we didn't
9  know what Scansoft was going to say was a trade
10 secret.  And actually, I still don't know.
11      DR. NEY:  (To Mr. McKenna) You know?
12      MR. McKENNA:  Yes.
13      DR. NEY:  Okay.
14      MS. COLUMBIA:  And I should say Bob and
15 I, neither one of us are computer scientists.  We
16 are liberal arts majors that are trial lawyers by
17 trade, and we specialize in technology cases, but we
18 are not trained either in computer science or in
19 speech science.
20      Chris is a very capable computer science
21 background and engineer who is also a lawyer, but
22 until about six weeks ago, knew not very much about
23 speech recognition or speech science.
24      One of the reasons we had hoped that

HIGHLY CONFIDENTIAL - DESIGNATED COUNSEL'S EYES ONLY

71

# REDACTED

15  Do you have any questions on these
16 tables and the categories of itemization of any
17 subparts before we invite the rest of the team in?
18       DR. NEY:  No.  I think the problem for
19 me is not so much the general methods or the
20 question of whether these methods are known in the
21 scientific community or not; it's more the question,
22 how can I find the specific part of the code in the
23 VST programs.
24       MR. McKENNA:  We'll help you do that.

FARMER ARSENAULT BROCK LLC

HIGHLY CONFIDENTIAL

103

1  the code to which Scansoft has pointed you, and then
2  matches you to where the trade secret can be found,
3  in any event, in the public domain.
4       We've then provided you, for each trade
5  secret category, with sort of a handy chart that is
6  a shorthand for the same thing; that's at Tabs A, B
7  and C. Then behind that are the specific references
8  that tie to the narrative piece.
9       DR. NEY: I think in the end, maybe
10 that's something we should come back to again when
11 both parties are present, which is, I probably need
12 the exact files and names of the files that I have
13 to look at -- that is, the exact files would have to
14 be specified by Scansoft -- and then from VST, I
15 need those files that are or may be related to the
16 trade secret claims addressed by -- claimed by or
17 addressed by Scansoft.
18       You have shown, you have given me your
19 code; but maybe, as we discussed before, there are
20 some pieces that are missing, and I -- yes, okay.
21       So the functions that you are discussing
22
23            **REDACTED**
24

1  that are considered to be trade secret and
2  proprietary by Scansoft.
3          So he is another resource that is
4  available if you have lots of questions about how
5  exactly the Mrec system does work.
6          DR. NEY: Maybe I could come back to
7  that offer, yes. I think it could be helpful if I
8  could ask specific questions to him concerning the
9  code I have seen here.
10         MR. BROMBERG: Okay.
11         DR. NEY: Not so much about the
12 performance, but about the trade secret aspects of
13 it; put it this way.
14         MS. FLEMING: Yes.
15
16
17
18
19            REDACTED
20
21
22
23
24

120

1 analysis tool on the VST code?
2         DR. NEY: I mean, so far I'm not -- I
3 was not aware that this was going to be my job, to
4 look at the whole code. I expected to have to look
5 at specific parts that are pointed out to me by you
6 or by the other side.
7         MR. BELT: Well, yes, that's ideally
8 what we would like to be able to do.
9         DR. NEY: But to analyze the whole
10 recognizer, that's not an effort I had envisaged so
11 far.
12         MR. LAWRENCE: If I had the tools, I
13 might be able to offload some of that work from you,
14 is what I'm getting at.
15         DR. NEY: Maybe that's something we can
16 address in the plenary session.
17         I feel I understand the situation as far
18 as the general methods are concerned that are
19 brought up in these trade secrets, but what is
20 difficult to work on is the code and the
21 implementation.
22         MR. BROMBERG: Right; that makes sense.
23 And I think it is part of the dilemma of this case.
24         As I said in the plenary session, the

HIGHLY CONFIDENTIAL

136

1    If your students are writing it that way
2 on their own, we can't account for that. If people
3 have figured it out outside of it, that's just the
4 way it is.
5    DR. NEY: So my impression is that
6 general concepts are -- well, at least some of them;
7 I have to check. Other ones are quite common, and
8 that's why I'm saying I have to get into the details
9 to see what's going on.
10    MS. FLEMING: And it may be, Dr. Ney,
11 that we have not given you enough detail in terms of
12 the implementation of those particular functions.
13    DR. NEY: I think that's -- well, the
14 implementation, okay, maybe it could be helpful to
15 have justification by an expert why this is a trade
16 secret. I'm not sure whether that's okay or not.
17    But I must admit, I don't know what is
18 the legal implications; but from a practical point
19 of view, it's simpler. But okay.
20    MS. FLEMING: None of us in this room,
21 other than you, Dr. Ney, are speech-recognition
22 experts; so it might make sense for you to have
23 access to our own independent expert, who will be
24 able to, I'm sure, give you much of the detail

HIGHLY CONFIDENTIAL

142

1  secrets.
2           So that means one part of the code would
3  come from you, to say, okay, this is the part that
4  is in conflict with trade secrets; and the other
5  part would come from VST -- okay; sorry.  All the
6  code would come from VST, but let's say you would do
7  the selection for the first question, and they would
8  do the selection for the question, in which part of
9  your code do you address each of these three
10 functions?
11          MR. LAWRENCE:  That would help on both
12 sides, I believe.
13          MR. BROMBERG:  Right.
14          MR. LAWRENCE:  Because they can put
15 their best foot forward.
16          Now, one thing that would be
17 advantageous, though, is there's still going to be
18 probably disagreement as to -- it's almost
19 impossible for me to check what they say, "Is this
20 where you just do this," without very sophisticated
21 analysis or resort to an expert.
22          In addition, they could say they do
23 this, but there are, from what we have initially --
24          DR. NEY:  But that is something I do not

HIGHLY CONFIDENTIAL

**REDACTED**

1
2
3
4
5      DR. NEY: But I'm not allowed to use
6  exactly these words in the plenary session?
7      MR. LAWRENCE: They can use those words.
8      You can use those words.
9      DR. NEY: Actually, it's what you read
10 in scientific papers.
11     MR. BROMBERG: Right. You say they're
12 common to all systems, and we understand what you're
13 saying there.
14     So I think, number one, if you tell VST
15 to do that and to give that to us as well as to you,
16 then Brad can undertake to look at those sections,
17 and he can also perhaps undertake to try to figure
18 out if they're doing some of that in other sections
19 of the code. But that would be -- that's going to
20 be tough for anybody, but he could do that.
21     But then on the third question, is that
22 the end of the story? Well, we would certainly like
23 to have somebody besides VST who knows what they're
24 doing look at their code and say what's in there;

FARMER ARSENAULT BROCK LLC

                                                            149

1                         * * * * *

2              (All counsel are present in the room

3     with Dr. Ney.)

4              MR. BROMBERG:  We talked about what's

5     next, when we were talking with Professor Ney, and I

6     imagine you did to some extent; but Professor Ney

7     had some ideas and --

8              DR. NEY:  Yes; okay.

9              So as I said, I think, before, the trade

10    secrets, in my view, concern two aspects:  the

11    general method and the details of the

12    implementation.  I think, for the general method, I

13    feel right now I have enough information.

14             Now, for the implementation, I probably

15    need more information.  Not that I'm asking for more

16    code -- I think I'm getting actually too much

17    material -- but I need maybe specific, specific

18    parts.

19             So first of all, these trade secrets

20    that we are discussing, they concern, let's say,

21    functions that you find in any speech recognizer.

22    So my suggestion would be that I could get those

23    specific parts of the code for the VST engine or for

24    the VST programs that we are here discussing that

150

1  perform these functions.
2       And then at the same time, the technical
3  expert on Scansoft, on the Scansoft side, he has
4  access to the VST code, and he could provide me with
5  those parts of the code that he believes are in
6  conflict with these trade secrets.
7       So I would get two selected pieces of
8  code: one from the VST party, VST side, that is,
9  let's say, addressing these general functions as
10 they are needed in any large-vocabulary speech
11 recognizer; and from the Scansoft side, those parts
12 of the code that Scansoft thinks are in conflict
13 with their trade secrets.
14      Is that okay? That would be my
15 suggestion on how to proceed.
16      MS. COLUMBIA: That's fine with us.
17      MR. LAWRENCE: One clarification: I
18 believe I heard you say -- and I just want to make
19 sure -- that you wanted our expert to identify --
20      DR. NEY: Well, okay; that's one aspect.
21 Again, I do not overlook all these legal aspects and
22 implications, but, I mean, all this business really
23 gets into technical details. I'm not sure it's
24 possible and whether it's really a good idea or not,

```
                                                     151
 1   but if I could talk to the experts on each side,
 2   then maybe then the whole thing could be simplified.
 3   But maybe that's not possible according to the
 4   general procedures.
 5           MS. COLUMBIA:  I think it's certainly
 6   possible for you to talk to the experts on both
 7   sides.  I think the expert on the Scansoft side, I
 8   don't know if it's Dr. or Mr. Goldhor --
 9           MR. BROMBERG:  Doctor.
10           MS. COLUMBIA:  -- who was very involved
11   in preparing the materials from Scansoft, certainly
12   would be very knowledgeable about what's being
13   asserted as a trade secret and about the Dragon
14   code; and we would propose to have probably Bill
15   Byrne, subject to working out whatever objections
16   there are, as an expert on the Voice Signal signal.
17           So you would have the two pieces.  You'd
18   have the person most knowledgeable about the Dragon
19   asserted trade secrets and where they're found in
20   the Dragon code, and a person who could speak at
21   your level who would be very knowledgeable about the
22   Voice Signal code.
23           MS. FLEMING:  We would agree with that,
24   Sarah.  We think it would be most useful to
```

```
                                                      171
```

1  part missing.  I would have to point out the exact
2  functions that would be considered.
3           MR. FRANK:  Yes.
4           MR. BELT:  I guess that's what I would
5  suggest, is --
6           DR. NEY:  So I think there's more to be
7  done on my side.
8           MR. BELT:  Yes.
9           MR. FRANK:  So from that, it follows, I
10 think, that at our next session together we should
11 have a session comparable to the session we had
12 today on trade secrets, at the end of which you
13 would articulate exactly which parts of the code you
14 wanted to see.  I think if we try to do that now,
15 you're not far enough along in your understanding to
16 do it properly.
17          DR. NEY:  Yes; right.
18          MS. COLUMBIA:  I guess one thing we
19 didn't maybe run to the ground was whether at the
20 next meeting, I think Dr. Ney has said that it would
21 be helpful to him to have -- each party have an
22 expert who could answer questions at a level that
23 would be helpful to him.
24          Are we all in agreement that it's okay

174

CERTIFICATE

I, Janis T. Young, Registered Professional Reporter, do hereby certify that the foregoing transcript is a true and accurate transcription of my stenographic notes taken on March 24, 2006, in the above-captioned matter.

*Janis T. Young*

Janis T. Young, RDR/CRR

FARMER ARSENAULT BROCK LLC

```
                                                              175
 1                          I N D E X

 2

 3   SESSIONS                                   PAGES

 4

 5   Plenary sessions                           4  -  48

 6                                              149 - 173

 7

 8   All Defendant's counsel                    49 -  54

 9                                              73 -  96

10                                              99 - 105

11

12   Defendant's designated                     55 -  72

13   counsel only                               97 -  98

14

15   All Plaintiff's counsel                    106 - 123

16                                              131 - 148

17

18   Plaintiff's designated                     124 - 130

19   counsel only

20

21

22

23

24
```