# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., ) | |
| Plaintiff, ) | |
| v. ) | **C. A. No. 04-10353-PBS** |
| VOICE SIGNAL TECHNOLOGIES, INC.,<br>LAURENCE S. GILLICK, ROBERT S. ROTH,<br>JONATHAN P. YAMRON and MANFRED G.<br>GRABHERR, ) | |
| Defendants. ) | |

## EMERGENCY MOTION OF VOICE SIGNAL TECHNOLOGIES, INC. TO ALLOW VOICE SIGNAL'S TECHNICAL EXPERT TO PARTICIPATE IN <u>MEETING WITH NEUTRAL EXPERT</u>

Voice Signal Technologies, Inc. ("Voice Signal") moves for emergency relief from this Court in connection with a meeting scheduled with the Neutral Expert in Boston on May 8, 2006.

Specifically, the Neutral Expert has requested that each party have available to him at the May 8 meeting a technical expert to answer questions concerning that party's source code. Voice Signal has prepared an independent expert to respond to Dr. Ney's questions about Voice Signal's source code. ScanSoft has objected. Voice Signal has proposed several Voice Signal speech scientists to serve in that role. ScanSoft has objected. In each instance, ScanSoft has taken the position that paragraph 14 of the Neutral Expert Procedure precludes Voice Signal from having an expert interact with Dr. Ney absent ScanSoft's agreement. Through its objections, ScanSoft is attempting to prevent Dr. Ney from having access to the people best able to answer Dr. Ney's questions regarding Voice Signal's source code. As a result, Voice Signal is unable – without the Court's intervention – to meet Dr. Ney's request.

1

4075661v1

**Background**

The parties made their initial submissions to the Neutral Expert on February 24, 2006, and had their first meeting with the Neutral Expert on March 24, 2006 in Boston. Voice Signal's counsel arranged to have Professor William Byrne of Cambridge University travel to Boston in advance of the March 24 meeting to review the Voice Signal source code and to be available during the meeting with Dr. Ney to answer any questions Dr. Ney might have about the Voice Signal source code. ScanSoft objected to Dr. Byrne participating in the March 24 meeting, claiming that he would be a fact witness in the case and that paragraph 14 of the Neutral Expert Procedure precluded his participation absent agreement by the parties. To avoid a dispute consuming time on March 24 which could better be spent with Dr. Ney, Voice Signal asked Dr. Byrne to wait in another room for the day.

At the end of the March 24 meeting, Dr. Ney asked Voice Signal to make a submission identifying certain portions of its source code and asked ScanSoft to make a submission identifying its trade secrets. The parties and Dr. Ney scheduled the next meeting for May 8, 2006. Dr. Ney indicated that he would decide after reviewing the submissions whether he would like to hear from experts for the parties at the May 8 meeting. Ex. A, at p. 150-151.[1]

On Tuesday, April 25, 2006, Dr. Ney sent an email to counsel concerning the logistics for May 8 meeting. Ex. B. In his April 25 email, Dr. Ney asked the parties "is it possible to talk to a technical expert *directly* from each side (at the meeting or later on the phone"). *See Id* (emphasis added.) Counsel responded that they would each endeavor to make a technical experts available for Dr. Ney at the May 8 Meeting. Ex. C.

The parties had initially conferred on the subject of making technical experts available to Dr. Ney the day before, on April 24, 2006. On that day, ScanSoft informed Voice Signal that it

---

[1] All exhibits are attached to the Declaration of Wendy S. Plotkin filed herewith.

would again object to Voice Signal's proposed technical expert, Dr. Byrne. Dr. Byrne is an experienced speech scientist and a Dr. at Cambridge University. A copy of his c.v. is attached as Exhibit D. Dr. Byrne was engaged by Voice Signal to assist in this Neutral Expert Procedure. He has spent significant time learning Voice Signal's technology as it relates to the issues in dispute.

ScanSoft's stated reasons for objecting to Dr. Byrne are specious: First, ScanSoft objects on the grounds that Dr. Byrne may be a fact witness in this case, because "his name is all over the Voice Signal documents." Ex. E. Dr. Byrne provided consulting services to Voice Signal in the 2001 to 2002 timeframe. Dr. Byrne specifically assisted Voice Signal in its work involving the so called "HTK Tool Kit" which is a publicly available tool kit from Cambridge University used in software development. Dr. Byrne's consulting work implementing the HTK tool kit is not relevant to any allegation in this case. Therefore, it is very unlikely that Dr. Byrne would be a fact witness called by either party in this case.

Second, ScanSoft claims that Dr. Byrne has a "relationship" with Dr. Ney. Ex. E As the Court knows, the speech science community is relatively small. Dr. Byrne sees Dr. Ney (as well as other speech scientists and academics) at conferences. ScanSoft has failed to present any evidence that would indicate that Dr. Byrne had any sort of personal relationship with Dr. Ney beyond that. Of course, any true expert in the field will have the same sort of interaction with Dr. Ney.[2]

In an attempt to come to an agreement with ScanSoft concerning technical experts without raising the issue before the Court, Voice Signal proposed an alternative to Dr. Byrne in a conversation with ScanSoft on the afternoon of April 25, 2006. Voice Signal proposed that an

---

[2] Voice Signal has invited ScanSoft's counsel to question Dr. Ney on this point, but ScanSoft's counsel has declined to do so.

employee of Voice Signal knowledgeable about Voice Signal's source code be available to answer Dr. Ney's questions.  Voice Signal proposed that ScanSoft also have a ScanSoft employee available to answer questions about ScanSoft's source code.  Ex. F.  ScanSoft's counsel stated that while it acknowledged that an employee likely would be the most knowledgeable about each party's source code, it had already spent significant time with its technical expert, Dr. Goldhor, and intended to bring him to the May 8 meeting.  *Id.*  ScanSoft's counsel further stated that it would be receptive to a suggestion from Voice Signal of an employee that would be appropriate to assist Dr. Ney, so long as it was not an employee who is named as a defendant in the case.  *Id.*  Voice Signal then suggested that Don McAllaster, a Senior Research Scientist at Voice Signal, had a sufficient familiarity with the code to assist Dr. Ney, and forwarded Dr. McAllaster's curriculum vitae to ScanSoft counsel for review.[3]  *Id.*

In a 180-degree turn, the next day, ScanSoft sent an email stating that "having a day to think" about it, it was now ScanSoft's position that no Voice Signal employee could serve the role as a technical expert to Dr. Ney.  Ex. G.[4]  ScanSoft cited paragraph 14 of the Court's Neutral Expert procedure to support this position.  *Id.*  ScanSoft further suggested that Voice Signal should use the expert it had previously engaged to assist in claim construction briefing, Charles Wooters, to assist Dr. Ney.  Dr. Wooters has not prepared to respond to Dr. Ney's questions and is not available to attend the May 8 meeting.

### Argument

---

[3] Voice Signal first suggested to ScanSoft that Lawrence Gillick was the individual with the most knowledge and ability to explain Voice Signal's source code to Dr. Ney.  ScanSoft objected to his participation because he was a named defendant.

[4] ScanSoft also objected to Dr. McAllaster because he was formerly an employee of Dragon Systems, Inc., ScanSoft's predecessor, and would have "had access to Dragon trade secrets."  This objection is illogical. Nevertheless, in an effort to resolve this matter without bringing it before the Court, Voice Signal proposed another Voice Signal employee, Igor Zlokarnik, that had never worked for Dragon.  Ex. H.  ScanSoft rejected this additional suggestion, stating that in its view, only an "independent expert" could serve the role as technical expert to Dr. Ney. *Id.*

4

ScanSoft's objections to Voice Signal's proposed technical experts are baseless and transparently calculated to prevent Dr. Ney from access to someone with expertise in the Voice Signal source code.   In response to Voice Signal's attempts to designate the individuals most able to assist Dr. Ney, ScanSoft has stonewalled and repeatedly rejected Voice Signal's appropriate proposals.  In order to keep the Neutral Expert Procedure moving, Voice Signal had no choice but to seek emergency relief from this Court prior to the May 8 meeting.

### A.     The Neutral Expert Procedure Does Not Support ScanSoft's Objections

ScanSoft incorrectly cites paragraph 14 of the Court's Neutral Expert Procedure to support its argument that neither Voice Signal employees nor Dr. Byrne may participate in the May 8 meeting unless ScanSoft agrees.   Paragraph 14 provides that "the Expert shall not conduct any *independent* investigation regarding the parties' claims and defenses...The Expert shall not contact any party (other than outside counsel) or witness in this case regarding this litigation without agreement of the parties."  Neutral Expert Procedure, ¶14 (emphasis added). Clearly this provision has no application to the current situation.  Paragraph 14 was designed to prevent *ex parte* communications, initiated by Dr. Ney, with witnesses or any other party, without notifying the Court or counsel.   Here, Dr. Ney's  consultation with Voice Signal's technical expert is with the knowledge of both parties, and the meeting will be transcribed.   The sole purpose of the Voice Signal technical expert is to answer Dr. Ney's questions concerning the Voice Signal source code.   ScanSoft will be able to review the transcript of any discussion between the technical expert and Dr. Ney.

ScanSoft points to no other provision in the Neutral Expert Procedure that would prevent a Voice Signal expert or employee, in the presence of attorneys and a court reporter, from answering technical questions concerning the source code posed by Dr. Ney.

4075661v1

**B.    Voice Signal's Proposed Technical Experts Are Sufficiently Independent to Answer Dr. Ney's Questions**

Voice Signal's technical expert -- whether it is Dr. Byrne or a Voice Signal employee -- will not have access to any confidential information produced by ScanSoft, and will not make any argument to the Neutral Expert about the merits of the dispute. The technical expert will simply answer any questions about Voice Signal's source code. Consequently, there is no reason why Dr. Byrne or an employee of the company should be disqualified from that task. [5]

ScanSoft also argues that a Voice Signal employee would be an inappropriate technical expert because he would have an interest in promoting his employer's position in this litigation. ScanSoft's technical expert, who is retained and paid by ScanSoft, would certainly have the same interest in advancing ScanSoft's position. Moreover, Dr. Ney acknowledged that each expert would not necessarily be truly independent, as he asked for an expert "*directly from each side.*" ScanSoft's argument on this point is baseless.

ScanSoft also has failed to offer any valid reason why Dr. Byrne cannot serve as a technical expert in this matter. Dr. Byrne is as "independent" as ScanSoft's expert, Dr. Goldhor. Dr. Byrne's work for Voice Signal in the past is irrelevant to the issues in the case and, in any event, irrelevant to whether he can adequately answer Dr. Ney's questions. Further, ScanSoft has failed to point to any evidence that would suggest Dr. Ney and Dr. Byrne are anything more than professional acquaintances. Without more, there is clearly no reason Dr. Byrne cannot serve as the technical expert in this case.

Finally, ScanSoft suggests that Voice Signal should use Dr. Wooters to serve as its technical expert to Dr. Ney. As a threshold matter, as stated above, Dr. Wooters is not available

---

[5] ScanSoft asserts that only an "independent expert" could serve as technical expert under the terms and "spirit" of the Neutral Expert Procedure, yet has refused to agree to Dr. Byrne, an independent expert, from serving that role.

to participate in the May 8 meeting.  Even if he were available, there is no basis to compel Voice Signal to use Dr. Wooters.  Voice Signal has expended significant time and resources educating Dr. Byrne concerning the nuts and bolts of Voice Signal's software.  It would have to spend the same amount of time educating Dr. Wooters.  It would be unfair to require Voice Signal to perform this task again when there is no reason why Dr. Byrne should be disqualified.

Dr. Ney has made a simple request to the parties – that each side provide an individual who is familiar with its source code to answer technical questions.  Voice Signal has proposed three individuals who are qualified and appropriate for this task: Dr. Byrne, Dr. McAllaster, or Dr. Zlokarnik.  ScanSoft has unilaterally rejected all three.  ScanSoft should not be permitted to control Dr. Ney's ability to have his questions answered by making unreasonable and baseless objections to Voice Signal's technical expert.

## CONCLUSION

For the foregoing reasons, Voice Signal asks that the Court order that either Dr. Byrne, Dr. McAllaster or Dr. Zlokarnik be permitted to  participate in the May 8 meeting as a technical expert to respond to Dr. Ney's inquiries regarding Voice Signal's source code.

Respectfully submitted,
VOICE SIGNAL TECHNOLOGIES, INC.

7

By its attorneys,


/s/ Wendy S. Plotkin
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

Dated: April 28, 2006


CERTIFICATE PURSUANT TO LOCAL RULES 7.1

I certify that counsel for Voice Signal conferred with counsel for ScanSoft via email and telephonically on April 24, 25, 26 and 27, 2006 in an effort to resolve the issues presented in this motion and that the parties were unable to reach an agreement.

/s/ Wendy S. Plotkin
Wendy S. Plotkin

8