# Exhibit A

COPY

REDACTED

Exhibits:  (None)                Volume 1, Pages 1 - 175

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - -

SCANSOFT, INC.,

         Plaintiff

vs.                                    Docket No. 04-10353-PBS

VOICE SIGNAL TECHNOLOGIES,

INC., et al.,

         Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - -

MEETING WITH NEUTRAL EXPERT

Friday, March 24, 2006, 9:10 a.m.

Bromberg & Sunstein LLP

125 Summer Street

Boston, Massachusetts


*TRANSCRIPT CONTAINS MATERIAL DESIGNATED "HIGHLY*

*CONFIDENTIAL" and "HIGHLY CONFIDENTIAL - DESIGNATED*

*COUNSEL'S EYES ONLY"*


- - - - - - - - - Janis T. Young, RDR, CRR - - - - - - - - -

Farmer Arsenault Brock LLC

Boston, MA   |   617-728-4404   |   Fax 617-728-4403

```
                                                       2
1    PRESENT:

2        Prof. Dr.-Ing Hermann Ney

3            RWTH-Aachen

4            Computer Science Department

5            Ahornstr. 55, D-52056

6            Aachen, Germany

7            as neutral expert

8

9        Lee Carl Bromberg, Esq.

10       Erik Paul Belt, Esq.

11       Lisa M. Fleming, Esq.

12       M. Brad Lawrence, Esq.

13       Courtney M. Quish, Esq.

14           Bromberg & Sunstein LLP

15           125 Summer Street

16           Boston, Massachusetts 02110-1618

17           617-443-9292     Fax 617-443-0004

18           lbromberg@bromsun.com; ebelt@bromsun.com;

19           lfleming@bromsun.com; blawrence@bromsun.com;

20           cquish@bromsun.com

21           for Plaintiff

22

23       (Continued)

24
```

FARMER ARSENAULT BROCK LLC

3

1    Sarah Chapin Columbia, Esq.

2    Robert S. Frank, Jr., Esq.

3    Christopher J. McKenna, Esq.

4    Choate Hall & Stewart LLP

5         Two International Place

6         Boston, Massachusetts 02110

7         617-248-5000      Fax 617-248-4000

8         scolumbia@choate.com; rfrank@choate.com;

9         cmckenna@choate.com

10        for Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

149

1                        * * * * *

2            (All counsel are present in the room

3      with Dr. Ney.)

4            MR. BROMBERG:  We talked about what's

5      next, when we were talking with Professor Ney, and I

6      imagine you did to some extent; but Professor Ney

7      had some ideas and --

8            DR. NEY:  Yes; okay.

9            So as I said, I think, before, the trade

10     secrets, in my view, concern two aspects:  the

11     general method and the details of the

12     implementation.  I think, for the general method, I

13     feel right now I have enough information.

14            Now, for the implementation, I probably

15     need more information.  Not that I'm asking for more

16     code -- I think I'm getting actually too much

17     material -- but I need maybe specific, specific

18     parts.

19            So first of all, these trade secrets

20     that we are discussing, they concern, let's say,

21     functions that you find in any speech recognizer.

22     So my suggestion would be that I could get those

23     specific parts of the code for the VST engine or for

24     the VST programs that we are here discussing that

150

1    perform these functions.

2           And then at the same time, the technical

3    expert on Scansoft, on the Scansoft side, he has

4    access to the VST code, and he could provide me with

5    those parts of the code that he believes are in

6    conflict with these trade secrets.

7           So I would get two selected pieces of

8    code:  one from the VST party, VST side, that is,

9    let's say, addressing these general functions as

10   they are needed in any large-vocabulary speech

11   recognizer; and from the Scansoft side, those parts

12   of the code that Scansoft thinks are in conflict

13   with their trade secrets.

14           Is that okay?  That would be my

15   suggestion on how to proceed.

16           MS. COLUMBIA:  That's fine with us.

17           MR. LAWRENCE:  One clarification:  I

18   believe I heard you say -- and I just want to make

19   sure -- that you wanted our expert to identify --

20           DR. NEY:  Well, okay; that's one aspect.

21   Again, I do not overlook all these legal aspects and

22   implications, but, I mean, all this business really

23   gets into technical details.  I'm not sure it's

24   possible and whether it's really a good idea or not,

FARMER ARSENAULT BROCK LLC

151

1    but if I could talk to the experts on each side,

2    then maybe then the whole thing could be simplified.

3    But maybe that's not possible according to the

4    general procedures.

5          MS. COLUMBIA:  I think it's certainly

6    possible for you to talk to the experts on both

7    sides.  I think the expert on the Scansoft side, I

8    don't know if it's Dr. or Mr. Goldhor --

9          MR. BROMBERG:  Doctor.

10          MS. COLUMBIA:  -- who was very involved

11    in preparing the materials from Scansoft, certainly

12    would be very knowledgeable about what's being

13    asserted as a trade secret and about the Dragon

14    code; and we would propose to have probably Bill

15    Byrne, subject to working out whatever objections

16    there are, as an expert on the Voice Signal signal.

17          So you would have the two pieces.  You'd

18    have the person most knowledgeable about the Dragon

19    asserted trade secrets and where they're found in

20    the Dragon code, and a person who could speak at

21    your level who would be very knowledgeable about the

22    Voice Signal code.

23          MS. FLEMING:  We would agree with that,

24    Sarah.  We think it would be most useful to

FARMER ARSENAULT BROCK LLC

152

1  Professor Ney to chew through a lot of the code

2  issues.

3          MR. BROMBERG:  I guess that would be

4  consistent with our understanding of --

5          MS. COLUMBIA:  The current order.

6          MR. BROMBERG:  -- the current order; and

7  I think that we can, by agreement, go with the --

8  maybe a similar kind of ex parte discussion with

9  Professor Ney that includes an independent expert on

10  each side to provide the information that they can

11  provide.

12          I think that, on our side, we do feel a

13  little bit disadvantaged by having Brad Lawrence as

14  the guy who's looking at the VST code and saying,

15  "Here's where we think it is happening," because

16  he's not a speech-recognition expert.  He's merely a

17  lawyer, with a pretty good technical background, but

18  he's not a speech-recognition expert.

19          So that does present some difficulty,

20  but maybe it would advance the process here if we

21  went to this kind of proceeding as a next step and

22  see where we come out on it.

23          I understand Professor Ney has

24  expressed, certainly to us and also in the plenary

FARMER ARSENAULT BROCK LLC

153

1   session before, that he's concerned about vast

2   quantity of code to sift through; and is there some

3   way that we can help him whittle down that mass, and

4   say, "Look here, look here, look here"?  This is

5   maybe a step in that direction.

6           MS. COLUMBIA:  I think it is, and I

7   think now that the categories of trade secrets have

8   been identified, at least to Chris, we can provide

9   to Professor Ney -- and we have to some extent

10  already done that in this book, although our

11  discussion this morning reflected that probably

12  there are other places you would want to look.

13          And we said to Professor Ney that

14  whatever he wants, we'll point him to it; but

15  certainly the piece that you've asked for, for Voice

16  Signal to identify in the code that you have where

17  the functionality is found that's reflected in the

18  categories of trade secrets, it will narrow

19  considerably what you have to look at.

20          We would be happy to do that for you and

21  to provide that to you and to Brad so that he can

22  make sure what we're giving to Professor Ney.

23          So that I don't think -- and we had a

24  version of this discussion as well -- that you have

FARMER ARSENAULT BROCK LLC

154

1  to sort of open up the entire can of worms and just

2  wallow around in it to see what you find.

3          MR. BROMBERG:  To mix metaphors.

4          MS. COLUMBIA:  Yes.

5          So I agree that, as a next step, for us

6  to do that piece; and then I think the idea of

7  having somebody -- and this is no offense to

8  Chris -- but somebody either from Voice Signal,

9  which probably is not going to be acceptable to you,

10  or an expert separate from Voice Signal, who can

11  answer questions at Dr. Ney's level, or close to it,

12  anyway, and can have more of a back-and-forth with

13  you, would be very useful, about our source code;

14  and I assume that it would be useful to have someone

15  who really is familiar with the Dragon code and the

16  Dragon trade secrets who could engage with him about

17  those trade secrets.

18          DR. NEY:  But that could be the second

19  step.  The first step would be the -- the temporal

20  procedure, the temporal sequence, first we would

21  start with step one, which would involve selecting

22  these additional -- finding the parts of the code

23  that I mentioned before.

24          Then the second step could be, I'm not

FARMER ARSENAULT BROCK LLC

155

1   sure -- well, we could already plan this expert
2   meeting, already now, or we could wait until I have
3   a look at the specific part of the code.
4           MS. COLUMBIA:  I would suggest --
5   actually, I have to go get my calendar, but I would
6   suggest that if we pick a date now that's 30 days or
7   more out, we're more likely to be able to have that
8   meeting sooner than we are if we wait.  And if it
9   turns out that you don't need the meeting, we can
10  always cancel it.
11          DR. NEY:  Okay.
12          MS. COLUMBIA:  Or postpone it.  And I
13  know that you mentioned that your academic schedule
14  is quite busy over the next few months.
15          DR. NEY:  Yes.
16          MS. COLUMBIA:  I think both parties are
17  prepared to travel to Europe to have that meeting.
18          MR. BROMBERG:  Yes.
19          MR. FRANK:  Let me say one other thing.
20  The Court has imposed or asked that this be done
21  within a 60-day period; but I think we agree that if
22  your schedule is such that that becomes unrealistic,
23  that it's likely that the Court would accommodate a
24  request for additional time.

FARMER ARSENAULT BROCK LLC

156

1          And, yes, I think it's unlikely -- and

2    we are likely, at least on our side, we're certainly

3    likely to agree to that.

4          MR. BROMBERG:  We're on the same page

5    there; and in fact, we thought that perhaps the

6    60-day time limit isn't triggered until there's some

7    completion of the briefing from both sides.

8          MR. FRANK:  This is a definitional

9    thing; it's a definitional way of extending the

10    case.

11          MR. BROMBERG:  But in any event, I think

12    we're on the same wavelength.  If we want to make

13    sure, we can file some stipulation with the Court at

14    the appropriate time about what our expectation is.

15    I don't think there would be any problem with the

16    Court.

17          MR. FRANK:  I apologize for this,

18    because I was out of the room, and I may be

19    repeating something that was said, but is the next

20    step that Professor Ney will describe the parts of

21    the code that he wants to see, or are we -- in other

22    words, what exactly has happened that will identify

23    what additional materials we're going to provide to

24    him?  It may be that he should take a look at what

157

1   we have already provided and then state what he

2   wants, and we will provide it.

3          DR. NEY:  Yes.  Actually, what we

4   discussed in the meeting with -- sorry; I forgot

5   your name.

6          MS. COLUMBIA:  Chris.

7          DR. NEY:  -- Chris, concerning the three

8   or four functions, yes, these functions that you can

9   find in any recognizer.  Maybe I have to write them

10  down again, but I think it's -- okay.

11         MS. COLUMBIA:  I was just going to ask,

12  in what form is it most useful to you?  We could

13  point you to it in the laptop that you have --

14         DR. NEY:  If you tell me where it is

15  there, or if you send me corresponding printings;

16  whatever.  Whatever; it does not matter.

17         MS. COLUMBIA:  We can do it either way.

18         DR. NEY:  Yes, right, right, yes.

19         And then from the other side, those

20  parts of the code where you think the trade secrets

21  are touched upon.

22         MR. BROMBERG:  Okay.

23         DR. NEY:  Other than that -- I'm

24  repeating this -- I'd say these functions are needed

FARMER ARSENAULT BROCK LLC

158

1   in any large-vocabulary speech recognizer, and the

2   concepts of the methods are known; so in the end it

3   boils down to looking at the code, I think, or large

4   parts, large -- many questions, I think, can be

5   answered by looking at the code.

6           MS. COLUMBIA:  And I have not seen the

7   brief, but it's my understanding that the Scansoft

8   brief on trade secrets actually includes large

9   sections from the Dragon code.

10          MR. BROMBERG:  Correct.

11          MS. COLUMBIA:  So I presume that Dr. Ney

12  has what he needs from the Dragon code to assess

13  that?

14          Or do you need something more?

15          DR. NEY:  Right now, no.

16          MS. COLUMBIA:  Okay.  I need to get my

17  calendar, but should we maybe put some dates for

18  that submission and see if we can find a date that's

19  appropriate for a follow-up meeting?

20          MR. LAWRENCE:  Real quick:  One thing I

21  wanted to clarify on this procedure, the

22  identification of the three areas -- Professor Ney

23  is referring to them as three concepts in every

24  single recognizer -- the identification of that in

FARMER ARSENAULT BROCK LLC

159

1   the VST code from VST, that comes first, and then we

2   respond with where we think it is?

3          DR. NEY:  No, no; my suggestion was in

4   parallel.  It was two questions.  A question to

5   Scansoft is, "Where do you think, or what are the

6   parts of the code that are in contradiction with

7   these trade secrets?"

8          And the question to VST is, "Show me

9   those parts of your code where you perform these

10  three functions."

11          MS. COLUMBIA:  Is there any reason we

12  can't say the three functions out loud so that --

13          MR. LAWRENCE:  No, we --

14          DR. NEY:  Basically it's the three --

15          MS. COLUMBIA:  The three we talked about

16  were acoustic scoring, hypothesis management and

17  duration modeling.

18          DR. NEY:  Right.  Duration modeling, I

19  would like to clarify, it's -- as I said before,

20  even if you do not have an explicit duration model,

21  there's still some sort of duration modeling.  So

22  how can we call this?  This is basically --

23          MR. BROMBERG:  You had said during our

24  session, Professor Ney, emission probability scores.

FARMER ARSENAULT BROCK LLC

160

1    Does that capture it?

2              DR. NEY:  Yes.  Let's say combination of

3    emission probability scores with transition scores.

4    Basically it's the acoustic search; some people

5    would call it acoustic search or acoustic

6    recombination, acoustic merging of hypotheses.

7              MR. FRANK:  I'm sorry, sir; would you

8    say those words again?

9              DR. NEY:  Merging of acoustic

10   hypotheses.  Because the term, duration -- what do

11   you call it?

12             MS. COLUMBIA:  Duration modeling.

13             DR. NEY:  Duration modeling is maybe a

14   little bit too narrow.

15             MS. COLUMBIA:  Can I step out for a

16   moment to get my calendar?

17             (Ms. Columbia left the room and

18   returned; discussion off the record.)

19             MS. COLUMBIA:  So we have agreed that by

20   April 7, the parties will make the submissions that

21   Dr. Ney has requested, which are, on Voice Signal's

22   part, to provide him with either pointers to where

23   in the code he has to look or printouts of the code

24   that correspond to the three functionalities that

FARMER ARSENAULT BROCK LLC

161

1   are covered by the alleged trade secrets -- and

2   we've agreed that those are acoustic scoring,

3   hypothesis management and durational modeling -- and

4   that durational modeling is broad enough to cover

5   things like emission probability scores and

6   transition scores.

7               DR. NEY:  Maybe one more modification?

8               MS. COLUMBIA:  Yes.

9               DR. NEY:  Acoustic scoring should

10  include fast calculation of not-likelihoods.

11              MS. COLUMBIA:  Fast calculation of --

12              DR. NEY:  Of not-likelihoods, efficient

13  or fast calculation of not-likelihoods, acoustic

14  not-likelihoods.

15              MS. COLUMBIA:  And I think we've agreed

16  that those will be materials, not arguments; that

17  what Dr. Ney is interested in is in seeing the code.

18              And on the Scansoft side, Scansoft will,

19  by April 7, provide Dr. Ney with guidance on where

20  it thinks he should look in the Voice Signal code

21  for evidence that Voice Signal has used the Scansoft

22  trade secrets.

23              And we then just agreed to schedule a

24  meeting for May 8, and that the meeting may take

FARMER ARSENAULT BROCK LLC

162

1  place here in Boston or it may take place in

2  Germany, and that that decision will be made

3  sometime later.

4          DR. NEY:  I'm sorry; for coming back to

5  the dates, you said the 1st of May would not be

6  possible.  Maybe you could write down one or two

7  alternatives, that I have some flexibility.  So what

8  about the 28th of April or 5th of May?

9          MS. COLUMBIA:  Those are both fine with

10  us.

11          MR. BROMBERG:  Those are both problems

12  for me.

13          MS. COLUMBIA:  Both problems?

14          DR. NEY:  Okay; both problems.

15          MR. BROMBERG:  I have a trial starting

16  on April 10, and the question is, will it be done

17  that week or not?

18          MS. COLUMBIA:  It probably won't even

19  start, Lee.

20          MR. BROMBERG:  No, it's going to start.

21          DR. NEY:  So there's no real alternative

22  until the 8th of May.

23          MS. COLUMBIA:  There's probably an

24  alternative if we go further out.

FARMER ARSENAULT BROCK LLC

163

1          DR. NEY:  So what about later dates?

2     12th of May?

3          MS. COLUMBIA:  Actually, the 12th is not

4     okay for me.

5          DR. NEY:  No?  Okay.  Well, then you're

6     already on the 15th.  Again, that's a Monday, the

7     15th of May.

8          MR. BROMBERG:  Yes, that's possible.

9          DR. NEY:  But that means Fridays are

10    basically not possible.  I was looking for some

11    other --

12          MS. COLUMBIA:  Did you ask about May 5?

13          DR. NEY:  I think you said it's not

14    possible.

15          MR. BROMBERG:  May 5 is not good for me,

16    but May 12 is okay.  That's the next --

17          MS. COLUMBIA:  But I can't do it.

18          DR. NEY:  And before May, everything is

19    difficult, yes?

20          MR. BROMBERG:  Yes.

21          MS. COLUMBIA:  Although I suppose if

22    your trial either doesn't start or finishes early,

23    we can discuss whether there's a way to move the

24    meeting up.

FARMER ARSENAULT BROCK LLC

164

1          MR. BROMBERG:  Right.

2          DR. NEY:  So to summarize, the only

3     dates we have now is 8th of May, 12th of May and

4     15th of May; is that right?

5          MS. COLUMBIA:  The 12th is not

6     available.

7          MR. BELT:  May 8 to May 15.

8          MS. COLUMBIA:  Looking only at Mondays

9     and Fridays.

10         DR. NEY:  So it's only 8th and 15th of

11    May?

12         MS. COLUMBIA:  Yes.

13         DR. NEY:  Before that is also difficult,

14    and after that is probably too late.

15         MR. FRANK:  Yes.

16         DR. NEY:  So -- yes; okay.

17         MS. FLEMING:  Sarah, did you finish with

18    what's on the record, the dates?

19         MS. COLUMBIA:  On the dates.

20         MS. FLEMING:  Just one more piece of

21    agreement is that the parties have agreed that each

22    side will allow the other to load tools on for

23    searching on the software that's been delivered by

24    the other side in order to facilitate meeting the

FARMER ARSENAULT BROCK LLC

165

1   deadlines that have been established.

2           MS. COLUMBIA:  Yes.

3           DR. NEY:  One more question on my side.

4   I'm supposed to look at the specific parts of the

5   code that we were just discussing.  What about other

6   parts of the code?

7           MR. FRANK:  Let me repeat something that

8   I said out of your presence, and see if there's

9   agreement.

10          I said that it is not our expectation

11  that Dr. Ney would have to search around in the code

12  in general for parts -- assuming that we have

13  actually provided the parts of the code that perform

14  these functions, and your side has actually

15  identified those parts of the code where you believe

16  that your trade secrets are being used, that that is

17  all that Dr. Ney would have to do; that he would not

18  otherwise have to conduct an independent

19  investigation through the code on his own.

20          I think that's the substance of what I

21  said I believed when we were separated, and I want

22  to see if you agree to that.

23          MR. BROMBERG:  Reluctantly, we don't

24  agree, because as we were saying to Dr. Ney also

FARMER ARSENAULT BROCK LLC

166

1    during our ex parte session, we have no means for

2    looking at the code other than what he does, to

3    answer the question of there's reason to believe

4    that there's use being made of the trade secrets.

5    So we do not want to foreclose the prospect that we

6    would ask Dr. Ney to look elsewhere in the code.

7              MR. FRANK:  I think the question is, how

8    do we make this a task which is subject to being

9    completed, there being an enormous amount of code?

10             MS. COLUMBIA:  I doubt that we are going

11   to agree on this topic today; and so maybe an

12   appropriate answer, Dr. Ney, would be that between

13   now and the meeting on May 8 or May 15, all that is

14   being asked of you is to look at the particular

15   portions of the code that each side is directing you

16   to.

17             MR. BROMBERG:  Right.

18             MS. COLUMBIA:  I understand what Lee is

19   saying, which is he doesn't want to agree now that

20   you'll never have to look at anything else.  Whether

21   that's reasonable or not, or whether we can agree on

22   it, I'm not going to comment.

23             But in terms of your planning, I think

24   both parties agree that between now and the end of

FARMER ARSENAULT BROCK LLC

167

1    that meeting, whether it's the 8th of the 15th, all

2    we're asking you to do is look at the particular

3    portions to which we point you.

4             MR. BROMBERG:  We agree with that.

5             DR. NEY:  Okay.  That's all my

6    questions.  Or it answers my question, at least for

7    the moment.

8             MR. BROMBERG:  I think we're --

9             MS. COLUMBIA:  I think we've done what

10   we can do for today.

11            MR. BROMBERG:  Right.

12            MS. COLUMBIA:  Let's go off the record.

13            (Discussion off the record)

14            MR. BELT:  So the question is that, in

15   the meetings today, we haven't been able to address

16   fully the patent issues in the case that Dr. Ney has

17   been asked to address.

18            So we just want to confirm that we'll be

19   able to make those presentations when we meet the

20   next time, and the question was whether Dr. Ney

21   needed any further information from the parties to

22   help him with the patent.

23            MR. FRANK:  Between now and the next

24   meeting.

FARMER ARSENAULT BROCK LLC