**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SCANSOFT, INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | C.A. No. 04-10353-PBS |
| ) | |
| VOICE SIGNAL TECHNOLOGIES, INC., ) | |
| *ET AL.* ) | |
| ) | |
| Defendants ) | |

**SCANSOFT'S OPPOSITION TO VST'S EMERGENCY MOTION**
**TO ALLOW PARTICIPATION OF TECHNICAL EXPERT**

ScanSoft agrees with the Neutral Expert (Prof. Hermann Ney) and Voice Signal Technologies ("VST") that the neutral expert procedure will run smoother with the assistance of technical experts. Indeed, ScanSoft has filed a motion to that end [D.N. 366 and 367] asking this Court to allow its independent expert, Dr. Goldhor, to inspect VST's source code so that he can discuss technical details with Prof. Ney. Thus, while ScanSoft does not oppose VST's use of a technical expert, it does oppose VST's choices, who are not technical experts but are rather fact witnesses--namely, VST employees and consultants.

VST should not be allowed to taint the neutral expert procedure with VST's own employees. Allowing Prof. Ney to speak with any of the three choices would be as improper as allowing him to interview one of the individual defendants accused of trade secrets misappropriation, such as Defendants Gillick or Yamron. (Indeed, VST first proposed to use Dr. Gillick. Obviously, ScanSoft objected, and VST relented, apparently conceding that the proposal was too brazen even for VST.) This Court has made it clear, however, that Prof. Ney should not act as a judge or fact finder and thus should have no contact with the parties or fact witnesses.

*See* Neutral Expert Procedure [D.N. 320] at ¶ 14. VST's proposed inclusion of fact witnesses closely aligned with the individual defendants will necessarily force Prof. Ney to make credibility or fact determinations best left for trial.

VST already has an independent expert, Dr. Wooters, whom it could have proposed. That VST instead proposed fact witnesses closely associated with the alleged theft of trade secrets--rather than an independent expert already cleared of conflicts--shows that VST has no intention of observing either the letter or spirit of this Court's orders. Rather, VST will do everything to short circuit a resolution on the merits and otherwise taint the neutral expert procedure.[1]

VST has tried before to taint the neutral expert procedure. For example, this Court might recall that VST originally nominated Prof. Woodland of Cambridge University in England to be the neutral expert. But as ScanSoft later discovered, Prof. Woodland is not neutral and, indeed, had ties to VST (for example, his graduate student works at VST). VST now proposes to use a "technical expert" Dr. William ("Bill") Byrne, who is Prof. Woodland's colleague in the Department of Engineering at Cambridge.

For this reason and the others detailed below, neither Dr. Byrne nor the other two proposed witnesses should be allowed to communicate with Prof. Ney during the neutral expert procedure.

---

[1] VST first disclosed its intention to use Dr. Wooters as its independent technical expert over one year ago. *See* **Exh. A**. Wooters then submitted declarations to this Court in support of VST's *Markman* claim construction briefs and is thus familiar with the case. Accordingly, VST already has an expert who could participate. If, as VST suggests, VST has not educated Wooters on the VST source code, that is VST's fault, not ScanSoft's. VST has had over a year to educate Wooters or another independent expert with the VST source code and has delayed in doing so (perhaps because VST always intended to resist discovery of the source code in the first place).

1. **Bill Byrne Is Prof. Ney's Friend and Is a Fact Witness**

As stated above, Dr. Byrne is Prof. Woodland's colleague at Cambridge University. This Court rejected Prof. Woodland in the role of neutral expert because of Prof. Woodland's ties to a current VST employee who is also Woodland's graduate student. There would have been an additional reason, however, to disqualify Prof. Woodland that VST never before disclosed. In particular, Woodland's colleague, Byrne, directly worked on VST's ELVIS speech recognition engine and is thus a fact witness and potential deponent in this case. For example, as seen in the confidential "First Year" documents that VST produced under this Court's Neutral Expert Procedure order, Byrne contributed portions of source code and otherwise worked on testing and modeling the speech recognition functions. *See* **Exh. B** (confidential e-mails, filed under seal, showing Byrne's participation).

Byrne was no mere consultant. Rather, judging by these e-mails, he appears to have been fully integrated into the VST culture. In one e-mail, for instance, he wrote that he had greatly missed Defendant Gillick while Gillick was prohibited from working at VST during the state court injunction period. *Id.* (document stamped VST 05944). Obviously, ScanSoft cannot trust Dr. Byrne to give an objective presentation to Prof. Ney.

Finally, Byrne knows Ney. At the start of the first meeting with Prof. Ney on March 24th, Byrne and Ney arrived in the reception area at Bromberg & Sunstein's offices at about the same time. Upon noticing Bryne, Prof. Ney said, "Bill, what are you doing here?" **Exh. C**, Declaration of Courtney Quish, Esq. Prof. Ney appeared pleased to see Byrne. Obviously, the two are quite familiar with each other and are on a first-name basis. ScanSoft, therefore, fears that VST will use Byrne's relationship with Nye to influence Ney's conclusions.

In summary, based on the First Year documents, Byrne is a potential fact witness because he directly worked on the VST source code. He is not independent but rather has close ties with VST dating back to at least 2001. Finally, he and Ney appear to be friends.

### 2. Don McAllaster Worked at Dragon and Is a Potential Defendant

VST next proposes to use Dr. Don McAllaster as its "technical expert." Dr. McAllaster, however, worked at Dragon (ScanSoft's predecessor, where many of the trade secrets were first developed) alongside Defendants Gillick, Roth, and Yamron. As such, he was also exposed to ScanSoft's trade secrets and is potentially implicated in the misuse of the trade secrets. He is at least a potential fact witness and deponent in this case. Indeed, McAllaster worked directly on the ELVIS speech recognition engine, as seen in the sampling of e-mails attached as **Exhibit D** (filed under seal).

### 3. Igor Zlokarnik Is the Named Inventor of VST's Counterclaim Patent

Finally, VST proposes to use another VST employee, Igor Zlokarnik. But he is the named inventor on VST's counterclaim patent, U.S. Pat. No. 6,594,630. As this Court knows, alleged infringement of the '630 Patent is also on Prof. Ney's agenda. This Court has charged Prof. Ney with reviewing ScanSoft's source code to determine whether there is reason to believe VST's infringement claim. Infringement of the '630 Patent will also be discussed at the meeting with Prof. Ney on May 8th. Obviously, ScanSoft cannot agree to having such as interested person as the inventor of the asserted patent converse with Prof. Ney.

Moreover, contrary to VST's unsupported assertion, Zlokarnik appears to have participated in the development of the ELVIS product. For instance, his name appears on First Year documents concerning the development of ELVIS. *See, e.g.*, **Exh. E** (e-mails concerning ELVIS, filed under seal).

4

Accordingly, Zlokarnik is also a fact witness in this case and should not be allowed to taint the neutral expert procedure.

\* \* \*

As this Court knows, ScanSoft has objected to the neutral expert procedure because it (a) deprives ScanSoft of its constitutional rights and (b) unfairly stacks the deck in VST's favor. VST is, of course, familiar with its own source code, which contains perhaps a million lines of code or more and is thus not disadvantaged when it comes to discussing the code with Prof. Ney. But, under the current procedure, ScanSoft must rely on its one designated counsel, Attorney Lawrence, who has a software background but is not a speech recognition scientist.  For that reason, ScanSoft has moved for an order allowing its independent expert, Dr. Goldhor, to view VST's source code so that he can assist Dr. Ney in his forensic analysis.  VST would likewise be allowed to have an <u>independent</u> expert review ScanSoft's code accused of infringing the '630 Patent, assuming the expert signed the confidentiality undertaking pursuant to this Court's protective order.

The problems arising from the neutral expert procedure could be avoided by allowing full discovery, under the protective order, as in any other case.  But if the parties are to proceed under this artificial and problematic procedure, then the Court should at least prevent VST from tainting it any further.

5

## CONCLUSION

For the reasons stated above, ScanSoft respectfully requests that the Court deny VST's emergency motion and bar VST's employees and consultants from contact with Prof. Ney during the neutral expert procedure.

Dated: May 1, 2006                                       SCANSOFT, INC.,
                                                         By its attorneys,

                                                         /s/ Erik P. Belt
                                                         Lee Carl Bromberg, BBO # 058480
                                                         Erik Paul Belt, BBO # 558620
                                                         Lisa M. Fleming, BBO # 546148
                                                         Rebecca L. Hanovice, BBO # 660366
                                                         Courtney M. Quish, BBO # 662288
                                                         BROMBERG & SUNSTEIN LLP
                                                         125 Summer Street
                                                         Boston, Massachusetts 02110-1618
                                                         (617) 443-9292
                                                         e-mail: ebelt@bromsun.com

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 1, 2006.

                                                         /s/ Erik P. Belt
                                                         Erik Paul Belt

02639/00509 491761.1