UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-10353-PBS |
| | ) |
| VOICE SIGNAL TECHNOLOGIES, INC., | ) |
| LAURENCE S. GILLICK, ROBERT S. | ) |
| ROTH, JONATHAN P. YAMRON, and | ) |
| MANFRED G. GRABHERR, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION
TO ENJOIN PLAINTIFF SCANSOFT, INC. (NUANCE) FROM PROSECUTING
RELATED PATENT INFRINGEMENT ACTION IN THE EASTERN DISTRICT
OF TEXAS AND TO SHOW CAUSE WHY PLAINTIFF HAS NOT VIOLATED THE
PROTECTIVE ORDER AND THE COURT'S NEUTRAL EXPERT PROCEDURE**

Defendant Voice Signal Technologies, Inc. ("Voice Signal") hereby submits this Memorandum in support of its Motion to Enjoin Plaintiff ScanSoft, Inc. (Nuance) From Prosecuting Related Patent Infringement Action in the Eastern District of Texas and to Show Cause Why Plaintiffs Should Not be Held in Contempt for Violation of the Protective Order and the Court's Neutral Expert Procedure. As is set forth in more detail below, ScanSoft continues to use this litigation to harass Voice Signal with the aim of devaluing Voice Signal and/or pressuring Voice Signal into being acquired by ScanSoft. This time, ScanSoft has gone too far.

On March 30, 2006, Nuance Communications, Inc. (the corporate name that ScanSoft now utilizes), filed a complaint for patent infringement against Voice Signal in the United States District Court for the Eastern District of Texas, entitled *Nuance Communications, Inc. v. Voice Signal Technologies, Inc.*, Civil Action No. 06-506CV71 (the "Texas Action"). The Texas

Action was filed shortly after Voice Signal produced a large volume of source code pursuant to this Court's Neutral Expert Procedure, including source code relating to Voice Signal's speech recognition and dictation software. In the Texas Action, Nuance asserts that Voice Signal has infringed three patents directed to speech recognition and dictation technology. It accuses Voice Signal's speech recognition and dictation product, known as VoiceMode. By this Motion, Voice Signal seeks to enjoin ScanSoft from prosecuting the Texas Action, and to commence an emergency investigation into whether ScanSoft has violated this Court's Protective Order or the Neutral Expert Procedure by its use of information gleaned from the source code material and other documents produced pursuant to the Neutral Expert Procedure to formulate its claims in the Texas Action.

## Background

### A.    The Production of Source Code and the Neutral Expert Procedure

From the outset of this litigation, ScanSoft has sought overbroad discovery of Voice Signal's source code for all of Voice Signal's products. Its motives have been commercial, not legal. ScanSoft's new patent cases against Voice Signal in the Eastern District of Texas, in combination with press releases citing activity in this Court, come in combination with its renewed acquisition overtures to Voice Signal. They confirm, once and for all, that ScanSoft is using this litigation to pressure Voice Signal in the marketplace.

Voice Signal has repeatedly objected to producing its source code to ScanSoft or its counsel, stressing that (1) Voice Signal's source code is its most proprietary and valuable asset; (2) Voice Signal's source code is neither necessary nor relevant to ScanSoft's patent infringement claim;[1] (3) with respect to ScanSoft's trade secrets claims, ScanSoft should first

---

[1]    The *Markman* briefing on the '966 patent demonstrated that the '966 patent claims a user interface for a speech recognition system, and Voice Signal's source code concerning the internal workings of its speech

2

4078017v1

identify the trade secrets it alleges Voice Signal took, then the Court should limit discovery of Voice Signal's source code to those trade secrets; and (4) Voice Signal had reason to believe that ScanSoft would use any source code produced in connection with this action to engage in analysis of whether it could accuse Voice Signal of infringing other ScanSoft patents not asserted in this litigation.

Voice Signal's concerns about potential misuse of any source code it produces in this litigation was confirmed when its counsel reviewed a document that ScanSoft filed along with its *Markman* brief on June 3, 2005. The document, which was later removed from the filing on an assertion by ScanSoft of inadvertent filing, contained a patent claim chart that compared the claims of ScanSoft's U.S. Patent No. 5,850,627 ('627 Patent), which is not asserted in this lawsuit, to Voice Signal's only dictation product, VoiceMode. For several claims of the patent, the chart states that its author (a Bromberg & Sunstein attorney) is "uncertain if [the claim] is infringed at this time" and that "without access to source code, we are unable to determine" whether certain claims of the patent are met by Voice Signal's product. The claim chart demonstrated that as of early June, 2005 (1) ScanSoft was actively searching for additional claims to bring against Voice Signal; and (2) ScanSoft's lawyers concluded that they needed Voice Signal's source code to assess those claims.

The parties spent significant time briefing and arguing the issue of source code discovery before the Court. On December 29, 2005, after months of dispute, the Court entered its Neutral Expert Procedure, which sets forth the parameters for the exchange of source code by the parties and the review of that source code by a neutral expert, Dr. Hermann Ney. The terms of the Neutral Expert Procedure required the parties to provide certain source code to both the Neutral Expert and one designated outside counsel for each party. The Neutral Expert Procedure further

---

recognition software would be irrelevant and unnecessary to an infringement analysis.

provided that (1) "the designated counsel shall not disclose the source code to his client or any other members of the litigation team and shall sign a certification to that effect" (Neutral Expert Procedure ¶7); and (2) "No employee of a party, independent experts retained by a party, or others may have access to the other party's Source Code until further order of the Court." (Neutral Expert Procedure ¶11).[2] Further, the exchange of source code and other documents would be governed by the terms of the Protective Order entered in the case. *Id.* ¶11. Specifically, the source code produced would be designated "Highly Confidential" under the Protective Order. The Protective Order explicitly provides that "the parties shall use PROTECTED INFORMATION [which includes documents designated "Highly Confidential"] *only for the purposes of this litigation.*" Protective Order ¶5 (emphasis added).

Pursuant to the Court's Neutral Expert orders, Voice Signal produced significant amounts of source code and other documents to Professor Ney and ScanSoft's designated outside counsel on January 27, January 30, and March 17, 2006.

### B. The Texas Action

In mid March a representative of Lehman Brothers contacted Voice Signal's President and represented that the CEO of Nuance had asked him to contact Voice Signal to open acquisition talks. *See* Declaration of Daniel Roth ("Roth Decl."), ¶ 2. Voice Signal responded that it would consider such discussions, but did not feel compelled to sell the company. *Id.* Less than two weeks later, on March 30, 2006, Nuance filed the Texas Action, asserting counts of patent infringement against Voice Signal. *Id.* The Complaint alleges that Voice Signal has infringed three patents, including the '627 patent.[3] *See* Ex. A.[4] The three patents-in-suit are

---

[2] On January 20, 2006 the Court modified its Neutral Expert Procedure. The Court reiterated that the designated counsel "may use the [source code] information only for litigating this suit." *Id.*
[3] The other two patents are U.S. Patent No. 5,920,836 ("the '836 patent") and 6,092,044 ("the '044 patent")
[4] A copy of the Texas Complaint is attached to the Declaration of Richard C. Abati filed herewith, as Exhibit

4

4078017v1

directed to speech recognition systems - - specifically systems used for dictation. The source code produced by Voice Signal pursuant to the Court's Neutral Expert Procedure includes all source code for dictation developed by all Voice Signal speech scientists during an approximately eighteen-month period.

There is evidence that ScanSoft had been assessing a claim under its '627 patent since at least early June 2005, but could not satisfy itself of infringement without access to Voice Signal's source code. The Texas Action was filed within a few weeks after Voice Signal's production of its source code.

Voice Signal has moved to transfer the Texas Action to this District pursuant to 28 U.S.C. § 1404(a). Voice Signal seeks from this Court an order enjoining ScanSoft from proceeding with the Texas case in any event until this Court has conducted or permitted an investigation into these suspicious facts.

## Argument

### A.  This Court Should Enjoin ScanSoft/Nuance from Proceeding with the Texas Action

The timing of the Texas Action, in combination with other factors, clearly raises the suspicion that ScanSoft may have improperly used Highly Confidential source code material and other Highly Confidential documents produced in this case to formulate its claims against Voice Signal in the Texas Action. Throughout this action, ScanSoft has doggedly pursued discovery of Voice Signal's source code for all its products. ScanSoft pursued the production of source code without ever identifying the trade secrets it accuses Voice Signal of stealing. Even now, because it is unable after review of Voice Signal's source code to identify any ScanSoft trade secret used by Voice Signal, ScanSoft is urging the Court to give its so-called "independent

A.

expert," Dr. Goldhor, access to Voice Signal's source code. Voice Signal has consistently warned that ScanSoft's broad demands for the production of all of Voice Signal's source code was a pretext.

Voice Signal's fears were validated in the claim chart that was filed with this Court as an exhibit to ScanSoft's *Markman* brief in June 2005 and ultimately by the filing of the Texas Action within weeks after Voice Signal's production of its source code. The June 2005 claim chart made clear that ScanSoft was searching for additional patents to assert against Voice Signal. In addition, the document explicitly stated that in order fully to evaluate whether Voice Signal's product infringed the '627 patent, ScanSoft would need to examine Voice Signal's source code. In fact, ScanSoft did not bring that action for infringement of the '627 patent in March 2005 when VoiceMode was introduced or in June 2005 when the claim chart was posted. Rather, it was not until March 30, 2006 - - shortly after Voice Signal produced source code in this case - - that ScanSoft finally brought an action for infringement of the '627 patent in the Eastern District of Texas. This clearly raises the suspicion that ScanSoft violated the Protective Order. VST is entitled to relief and an opportunity to thoroughly investigate this before any further access to VST information could be granted.

Any use of source code material or other documents that are designated "Highly Confidential" other than for purposes of this litigation would be a clear, blatant violation of the Court's Neutral Expert Procedure, January 20 Order, and Protective Order. *See* Neutral Expert Procedure, ¶¶ 11, January 20, 2006 Order, and Protective Order ¶5. Further, the Texas Action was filed by attorneys other than Bromberg & Sunstein. Therefore, further violation of the Protective Order and the Neutral Expert Procedures may have occurred if the information

gleaned from the source code and other highly confidential information was shared with either individuals at ScanSoft or other attorneys employed by ScanSoft.

ScanSoft's choice of forum for the Texas Action is also suggestive. Why would ScanSoft, which is headquartered in Massachusetts, file an action against Voice Signal in the Eastern District of Texas? Both ScanSoft and Voice Signal maintain headquarters in Massachusetts. Most, if not all, of the witnesses (including most, if not all, of the inventors on the patents) are located in Massachusetts. No witnesses are likely to reside in Texas. Finally, this Court has significant patent experience, is already addressing the relevant technology and has engaged a neutral expert to assist in areas requiring additional technical depth. There is no reason why ScanSoft would file its new claims in a district completely unrelated to either the subject matter of the suit or either of the parties unless, of course, it wished to be as far away from this Court's scrutiny as possible.

From the outset, ScanSoft has used this litigation to try to gain commercial advantage. It filed this lawsuit on the heels of its rejected offer to acquire Voice Signal in early 2004. *See* Roth Decl., ¶ 2. Similarly, the Texas Action was filed shortly after ScanSoft's renewed acquisition discussions with Voice Signal in March 2006. *Id.* It was almost certainly filed in Texarkana, Texas to avoid this Court's scrutiny and to cause Voice Signal – the much smaller player – to face daunting costs and uncertainty of defending a case in Texas involving the same technology as is involved here. ScanSoft's business motives were made even more obvious by its press release on March 17, 2006 titled "Court Orders Voice Signal to Produce Source Code Related to Nuance's Trade Secret Theft Lawsuit Against Voice Signal." A copy of the press release is attached as Exhibit B to the Declaration of Richard C. Abati (filed herewith).

ScanSoft used the press release to tarnish VST's good name in the industry and to re-hash its baseless trade secret and patent allegations (even though the source code and neutral expert order have *nothing* to do with ScanSoft's patent claims). ScanSoft's press release naturally failed to mention that the order required both Voice Signal and ScanSoft to turn over their respective code to the neutral expert. *Id.*

The situation described above warrants immediate action by this court and a thorough investigation. ScanSoft should be enjoined from proceeding in the Texas Action and ordered to show cause why the Court should not conclude that ScanSoft used Voice Signal's source code to create new claims against Voice Signal. ScanSoft should also be ordered to show cause why the patent claims brought in the Texas Action, which clearly arise out of the same technology as is before this Court, were not brought in this case. ScanSoft should not be permitted to prosecute the Texas Action, and potentially benefit from its violations of this Court's Orders, until the Court's investigation is complete.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,


<u>Richard C. Abati</u>
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BBO No. 647716)
Richard C. Abati (BBO No. 651037)
CHOATE, HALL & STEWART
Two International Place
Boston, MA  02110
(617) 248-5000

Dated: May 4, 2006

4078017v1

Certificate of Service

I hereby certify as follows:

    1. This document filed through the ECF system will be sent electronically to the registered participants in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 4, 2006.

    2. On May 4, 2006, a true and correct copy of this document was served by hand to Rebecca L. Hanovice, Esq. of Bromberg & Sunstein LLP, 125 Summer Street, Boston, MA 0211.

                                                /s/ Richard C. Abati