UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCANSOFT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-10353-PBS |
| ) | |
| VOICE SIGNAL TECHNOLOGIES, INC., ) | |
| LAURENCE S. GILLICK, ROBERT S. ) | |
| ROTH, JONATHAN P. YAMRON, and ) | |
| MANFRED G. GRABHERR, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY
RICHARD GOLDHOR FROM SERVING AS EXPERT FOR SCANSOFT**

Voice Signal submits this memorandum in support of its motion to disqualify ScanSoft's retained expert, Richard Goldhor, from serving as an expert in this case, at least with respect to ScanSoft's trade secret allegations.

In short, Dr. Goldhor has been tainted. He has been given access to Voice Signal's source code and Voice Signal's briefs prepared for the Neutral Expert, which include both source code and detailed descriptions of Voice Signal's implementations in key areas of its speech recognition engines. ScanSoft's attorneys placed no restrictions on his access to Voice Signal's materials. He cannot "un-ring the bell" of what he may have gleaned from his access to the Voice Signal source code and other materials. He should, therefore, be disqualified from participating as ScanSoft's expert in this case, at least with respect to ScanSoft's trade secret claims.

4082967v1

## FACTS

On December 29, 2005, this Court established its Neutral Expert Procedure. The Neutral Expert Procedure required both parties to produce source code to the Neutral Expert (Professor Hermann Ney) and to one designated outside attorney for the other party. The Neutral Expert Procedure does not permit the expert for one party access to the source code produced by the other party. As the Court noted during the May 5, 2006 hearing, the Neutral Expert Procedure was put in place precisely because of concerns about providing Voice Signal's most valuable assets – its source code – to ScanSoft's retained expert. May 5, 2006 Hearing Transcript ("May 5 Transcript"), p. 4[1]

On Friday, April 28, 2006, ScanSoft filed a motion to allow full access to Voice Signal's source code to its retained expert, Dr. Richard Goldhor. Docket Entry # 36. On Tuesday, May 2, 2006, the Court granted the motion, believing that (1) the relief requested was merely that each party could have an expert available to meet with the Neutral Expert at the scheduled May 8, 2006 meeting; and (2) Dr. Ney had requested the relief. The Court later explained that it did *not* intend to give ScanSoft's retained expert access to Voice Signal's source code. May 5 Transcript p. 4 ("Well, all I meant was access in the sense that if [Dr. Ney] asks a question about it, the expert can answer; *not that he gets to read the whole thing.*"), p. 7 ("*I had not understood until I read [Voice Signal's] opposition that you want him to sit down and read the entire source code.*")

---

[1] A copy of the May 5, 2006 Hearing Transcript is attached hereto as Exhibit A.

2

On the afternoon of the Court's order, Voice Signal filed an Emergency Motion to Stay the Order. Voice Signal's counsel also immediately wrote ScanSoft's counsel, Lisa Fleming, the following letter:

> *Dear Lisa:*
>
> *We have just received electronic notice of the court's docket order granting ScanSoft's Motion to Allow Its Independent Expert Access to VST's First Year Source Code. As it is evident that the Court made a mistake in ruling on the Motion without considering our opposition (which is not due until May 12), we have this afternoon filed an emergency motion to stay the Court's Order. I expect that until the Court has ruled on the Motion to Stay you will not give Dr. Goldhor access to Voice Signal source code.*
>
> *Sincerely,*
>
> *Sarah Chapin Columbia*

A copy of the letter is attached hereto as Exhibit B. Neither Ms. Fleming nor any other attorney for ScanSoft responded to Ms. Columbia's letter.[2]

Voice Signal filed its Opposition to ScanSoft's motion to permit Dr. Goldhor access to Voice Signal's source code on Thursday, May 4, 2006. The Court scheduled a hearing for Friday morning, May 5, 2006.

At the hearing on May 5, the Court made clear that it had *not* intended to rule that Dr. Goldhor could have access to Voice Signal's source code. May 5 Transcript, pp. 4-7 Rather, as the Court explained, it intended simply to permit each party to have a retained expert present at the meeting with Dr. Ney. Voice Signal's expert would answer Dr. Ney's questions about Voice Signal's system and source code; ScanSoft's expert would be available to answer questions

---

[2] On that same afternoon (May 2), Ms. Fleming wrote an *ex parte* e-mail to Dr. Ney informing him of the Court's order. A copy of her e-mail is attached as Exhibit C.

about ScanSoft's trade secrets and ScanSoft's source code for its Dragon NaturallySpeaking and Voice Express Products. *Id.* p. 8.[3]

The Court went on to address Voice Signal's motion to enjoin ScanSoft/Nuance from proceeding in its Texas action. While the Court denied Voice Signal's motion, it ordered ScanSoft to submit a sworn declaration from the Bromberg & Sunstein firm "guaranteeing" that no information from this lawsuit had been shared with the ScanSoft's lawyers in the Texas action. *Id.* p. 22. ScanSoft's counsel then, for the first time, handed the Court and Voice Signal's counsel a declaration by its designated counsel, Brad Lawrence, stating that he had not shared Voice Signal's source code with ScanSoft's lawyers in the Texas case.

To everyone's surprise, Mr. Lawrence's declaration also revealed that, "as of May 3, 2006" (the day *after* Voice Signal filed a motion to stay the Court's order and wrote its letter to ScanSoft's counsel) he had shown Voice Signal's source code or source code documentation to ScanSoft's retained expert, Dr. Goldhor. Declaration of Brad Lawrence Decl. ¶ 6.[4] It also revealed that Mr. Lawrence had provided Dr. Goldhor with the password to the laptop containing Voice Signal's source code. *Id.*[5]

In Court on May 5, ScanSoft's lawyers told the Court that, to their knowledge, Dr. Goldhor had not looked at Voice Signal's source code. Even though Mr. Lawrence was present in the courtroom, he did not tell the Court that he, personally, had printed selected lines of Voice Signal code and gone over them with Dr. Goldhor. Nor did he tell the Court that he had allowed Dr. Goldhor to remove the laptop computer on which Voice Signal's source code was produced

---

[3] The Court also granted Voice Signal's request that Dr. William Byrne be permitted to serve as Voice Signal's expert at the meeting with Dr. Ney. *Id.*, pp. 15-17.
[4] A copy of the Declaration of Brad Lawrence is attached hereto as Exhibit D.
[5] Mr. Lawrence's declaration also states: "I have not permitted any source code information to leave my office unattended by me." Lawrence Decl. ¶ 6. That statement turns out not to be true. As described below, Dr. Goldhor took possession of the laptop computer containing Voice Signal's source code and took it to his office in Bedford, Massachusetts, unattended by Mr. Lawrence, on Thursday, May 4, 2006.

4

from the offices of Bromberg & Sunstein. Nor did Mr. Lawrence tell the Court that he had provided Dr. Goldhor copies of Voice Signal's submissions to the Neutral Expert, which are marked for designated counsel eyes only which contain Voice Signal source code.

After the May 5 hearing, Voice Signal was skeptical about the representations made in Court. Why would ScanSoft's attorneys have given Dr. Goldhor Voice Signal's source code, if not to look at it? Why, if Dr. Goldhor had the source code, had he not looked at it? Why, if he were not already looking at it, would ScanSoft's counsel rush to call him to tell him not to look at it (*i.e.* to stop doing something he was not doing)? May 5 Transcript p. 26.

Voice Signal wrote to ScanSoft's counsel, Lisa Fleming, on the afternoon of May 5:

*Dear Lisa:*

*Further with respect to the subject matter of my letter to the Court of this morning, we expect that before Monday's meeting with Dr. Ney you will provide to us a sworn declaration from Dr. Goldhor stating unconditionally, that he has not looked at, reviewed, evaluated or otherwise had any access to Voice Signal's source code.*

*If Dr. Goldhor cannot swear to such a declaration, we expect that you will provide a sworn declaration setting forth in detail exactly what access he has had to, and what examination he has made of, Voice Signal's source code. The declaration should also detail any communications Dr. Goldhor has had with Mr. Lawrence, from and after the time when Dr. Goldhor first was given access to Voice Signal's source code on the subject of Voice Signal's source code.*

*Sincerely,*

*Sarah Chapin Columbia*

A copy of the letter is attached as Exhibit E.

As it turned out, Dr. Goldhor could *not* swear that he had not "looked at, reviewed, evaluated or otherwise had any access to Voice Signal's source code." *Id.* Rather, at the commencement of the Monday, May 8 meeting with Dr. Ney, ScanSoft provided a declaration describing the access Dr. Goldhor had to Voice Signal's source code and other materials. Voice

5

Signal's counsel also conducted a brief deposition of Dr. Goldhor. The Declaration is attached as Exhibit F; the portion of the transcript comprising the deposition of Dr. Goldhor is attached as Exhibit G. The Declaration and deposition revealed that:

- On May 3, 2006, Dr. Goldhor received from Mr. Lawrence a box containing copies of Voice Signal's three written submissions to the Neutral Expert. All of these materials were marked for designated counsel's eyes only. Dr. Goldhor also received a copy of the full transcript from the March 24, 2006 meeting with Dr. Ney, which contained portions designated for designated counsel's eyes only. A copy of the transmittal letter from Mr. Lawrence to Dr. Goldhor is attached as Exhibit H.

- Dr. Goldhor testified that he reviewed Voice Signal's written submission dated March 24, 2006, which included at least one excerpt of Voice Signal source code and a detailed description of Voice Signal's implementations and techniques in the three areas under review by Dr. Ney. The submission was intended for the expert and designated counsel only.

- On Thursday, May 4, 2006, Dr. Goldhor spent about four hours at the offices of Bromberg & Sunstein, preparing for the meeting scheduled with Dr. Ney for May 8, 2006. Ex. G, pp. 19-21. Dr. Goldhor spent about an hour of the meeting with Mr. Lawrence going over a Voice Signal source code road map provided to the Neutral Expert and ScanSoft's designated counsel on April 10, 2006. Dr. Goldhor and Mr. Lawrence also examined the system configuration of the laptop. *Id.* pp. 21-22.

- Dr. Goldhor was asked by Mr. Lawrence to review a printout of three fragments of Voice Signal's source code. The three fragments totaled seven lines of code. Ex. F ¶ 7.

- At the end of the meeting at Bromberg & Sunstein, Dr. Goldhor took the laptop computer on which Voice Signal's source code is loaded back to his office in Bedford, Massachusetts. Ex. F ¶¶ 5, 8. By mutual agreement, both the Voice Signal laptop provided to ScanSoft's designated counsel and the ScanSoft laptop provided to Voice Signal's one designated counsel are configured such that the highly sensitive materials contained on each cannot be copied to another computer or electronic media, cannot be altered, and cannot deliberately or inadvertently be communicated over the Internet. Dr. Goldhor testified that he spent about one-to-two hours on May 4 investigating potential means to get around the mutually agreed restrictions on the laptop. Ex. F, 28-31, p. 20. Among other things, he removed the hard drive from the laptop to investigate whether he could connect the hard drive to his office computer (which, of course, would be capable of copying the data and/or transmitting it over the Internet).

6

- ScanSoft's attorneys did not place any limitations on Dr. Goldhor's use of the laptop computer.  Ex., G, pp. 19-20.

- Dr. Goldhor received two voice mail messages from ScanSoft lawyers on Friday morning, instructing him to "package up the laptop and briefs and return them to Bromberg & Sunstein immediately."  He returned the laptop and other documents on Friday afternoon, May 5, 2006. Ex. F, ¶ 9.

There is no dispute that Dr. Goldhor has reviewed Voice Signal source code and detailed descriptions of Voice Signal's implementations.  Although the number of lines of source code actually reviewed may be relatively small, they relate to at least one specific area that is a focus of Dr. Ney's inquiry and therefore are nonetheless at the heart of this dispute.  Furthermore, Dr. Goldhor had access to and reviewed Voice Signal's written submission to the Neutral Expert dated March 24, 2006, which includes (1) a printout of about 50 lines of Voice Signal source code; and (2) a detailed written description of Voice Signal's implementation and techniques in each of the three trade secrets areas at issue before Dr. Ney.  He also testified that he had access to the roadmap to Voice Signal's source code prepared for the Neutral Expert and shared only with ScanSoft's designated counsel.

Dr. Goldhor has been tainted. He has had access to, and has reviewed, Voice Signal's highly confidential source code and detailed description of its techniques and implementations.  The fact that he did not have time to review it all does not negate the fact that he has reviewed some.  He had an hour long meeting with ScanSoft's designated counsel during which they discussed Voice Signal's laptop, reviewed the roadmap to the Voice Signal source code and reviewed a printout of three fragments of Voice Signal's source code identified by ScanSoft's designated counsel.

Having been tainted, Dr. Goldhor should be disqualified.  He cannot un-ring whatever bells have been rung by virtue of his review.  He cannot un-learn the roadmap he has now been

7

provided to Voice Signal's source code.  He cannot purge the knowledge he now has of Voice Signal's detailed implementations in the three speech recognition areas that are the focus of the trade secrets analysis in the Neutral Expert Procedure.  He should, therefore, be precluded from further consulting with ScanSoft's attorneys regarding the trade secrets portion of this litigation and should be precluded from serving as ScanSoft's expert in any respect in the Neutral Expert Procedure as it relates to the trade secrets allegations and defenses.

                                        Respectfully submitted,

Dated:  May 19, 2006.               VOICE SIGNAL TECHNOLOGIES, INC.

                                      By its attorneys,

                                        /s/ Sarah Chapin Columbia
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART
Two International Place
Boston, MA  02110
(617) 248-5000