UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 04-10353-PBS |
| | ) |
| VOICE SIGNAL TECHNOLOGIES, INC., | ) |
| LAURENCE S. GILLICK, ROBERT S. | ) |
| ROTH, JONATHAN P. YAMRON, and | ) |
| MANFRED G. GRABHERR, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF VOICE SIGNAL
TECHNOLOGIES, INC.'S MOTION TO COMPEL PRODUCTION
OF DOCUMENTS FROM DISQUALIFIED COUNSEL
GOODWIN PROCTER AND FOR AN AWARD OF ATTORNEYS FEES**

Defendant Voice Signal Technologies, Inc. ("Voice Signal") submits this memorandum in support of its Motion to Compel Production Of Documents By Goodwin Procter LLP And For An Award Of Attorneys Fees.

In 2004, an attorney-client relationship arose between Voice Signal and Goodwin Procter LLP ("Goodwin") relating to this case. In 2005, Goodwin acted as counsel to ScanSoft, Inc. ("ScanSoft") in this same case. Goodwin did not seek or obtain Voice Signal's consent to that representation. When Voice Signal learned that Goodwin was representing ScanSoft, it objected on the ground that Goodwin's conduct violated the Massachusetts Rules of Professional Conduct ("MRPC") and asked Goodwin to withdraw. Goodwin refused. Thereafter, extensive proceedings were held on Voice Signal's motion to disqualify Goodwin. After months of litigation, the motion was granted. Voice Signal now requests that it be reimbursed for the

1

reasonable cost of compelling compliance by Goodwin and ScanSoft with the Rules of Professional Conduct and the Local Rules of this Court.

Further, after it was determined that Goodwin's representation of ScanSoft was wrongful, Voice Signal served a subpoena on Goodwin, seeking the production of documents generated by Goodwin and provided to ScanSoft, or others acting on ScanSoft's behalf, which relate to Voice Signal. In response, Goodwin (a) refused to produce any documents, and (b) even refused to provide a privilege log. The documents should be produced. Goodwin's legal work for ScanSoft was a violation of MRPC, Rule 1.9(a), and was, therefore, impermissible. As a result, its work was not protected by either the attorney-client privilege or the work product doctrine.

## BACKGROUND

MRPC 1.9(a) states that:

> A lawyer who has formerly represented a client in a matter may not represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

This case was commenced on February 20, 2004. Shortly thereafter, senior executives of Voice Signal met with Paul F. Ware, Jr., Esq. and other lawyers at Goodwin. After obtaining assurances of confidentiality, Voice Signal disclosed secret information about its business to, and discussed this case at length with, Goodwin. Goodwin analyzed the individual claims of the ScanSoft patent-in-suit (U.S. Patent No. 6,501,966), located and transmitted to Voice Signal prior art that Goodwin determined was helpful to Voice Signal, discussed with Voice Signal the scope of the claims of the '966 patent and possible product modifications, analyzed defenses to ScanSoft's trade secret claims and recommended a course of action. Goodwin repeatedly

2

designated its e-mail correspondence with Voice Signal as "PRIVILEGED." Thereafter, Voice Signal decided to proceed with other counsel in this case.[1]

Beginning in 2005, Goodwin (through Mr. Ware and others) began to provide legal services to ScanSoft in connection with this same case, and related matters. Goodwin did not, at that time, disclose to Voice Signal the fact that it was providing these legal services to ScanSoft; and it did not, then or thereafter, seek Voice Signal's consent to Goodwin's representation of ScanSoft.

On September 23, 2005, Goodwin filed a Notice of Appearance in this case. Upon learning of Goodwin's involvement, Voice Signal informed Goodwin that it believed that Goodwin's conduct violated MRPC 1.9(a). It asked Goodwin to withdraw. Goodwin declined.

On October 20, 2005, Voice Signal's counsel (Robert Frank) met with Kenneth Cohen, Esq. of Goodwin Proctor. Mr. Frank stated his understanding of the facts relating to the prior meetings, e-mail and telephonic communication between Voice Signal and Goodwin Procter. Mr. Cohen stated that he was generally aware of those facts. Mr. Frank explained Voice Signal's view of the applicable law, and again asked, on behalf of Voice Signal, that Goodwin not represent or advise ScanSoft in (or with respect to) this case or related matters. Mr. Cohen said that he would consult with ScanSoft. A few days later, Mr. Cohen informed Mr. Frank that ScanSoft wished Goodwin to continue to act as ScanSoft's counsel in this case. Affidavit of Robert S. Frank, Jr. (*See* "Frank Aff."), ¶ 2.

On October 28, 2005, Voice Signal filed a Motion to Disqualify Goodwin Procter. It stated that by reason of their meetings and correspondence in 2004, an attorney-client relationship arose between Voice Signal and Goodwin, and that Goodwin could not thereafter

---

[1] Detailed evidence relating to these contacts was presented at a day and one-half of hearings before Magistrate Judge Alexander. It is summarized in the parties' respective post-hearing memoranda. See Docket No. 361 (Voice Signal); Docket No. 360 (ScanSoft/Goodwin).

3

represent ScanSoft, in the same or a related case, without consent. Briefs, reply briefs and supporting affidavits were filed by both parties. A hearing was held by the Court on December 12, 2005. The Court stated that it was "concerned" about Goodwin's conduct. (Tr. 12/12/05, at 15), Ex. A.[2] It noted that Goodwin had neither warned Voice Signal's executives to refrain from disclosing confidential information to Goodwin nor cautioned Voice Signal that Goodwin might someday represent ScanSoft in the very case that they were then discussing. The Court said that "this shouldn't have happened." *Id.* at 18. Mr. Cohen, on behalf of ScanSoft and Goodwin, acknowledged that this "should not have happened," and that "this is a problem in significant part of our own making." *Id.* at 18. The Court then enjoined Goodwin from representing ScanSoft pending a ruling on the merits of Voice Signal's Motion to Disqualify. *Id.* at 20, 24.

Goodwin and ScanSoft did not relent. On December 29, 2005, the Court referred Voice Signal's Motion to Disqualify to Magistrate Judge Alexander for an evidentiary hearing. The evidentiary hearing was held on March 17 and 21, 2006. Both parties filed pre and post hearing briefs. At the hearing, four witnesses (including Voice Signal's two most senior officers) testified. The lengthy meetings and extensive e-mail correspondence between Goodwin and Voice Signal were described in detail. See n. 1, *supra*. On April 11, 2006, Magistrate Judge Alexander granted Voice Signal's motion to disqualify.[3]

It is, therefore, established (1) that Goodwin's exchanges with Voice Signal in 2004 relating to this case created an attorney-client relationship between Goodwin and Voice Signal; (2) that Goodwin thereafter represented ScanSoft in this case (and perhaps related matters); (3) that Goodwin did not seek or obtain Voice Signal's consent to that representation; and

---

[2] All Exhibits referred to herein are attached to the Frank Affidavit filed herewith.
[3] ScanSoft/Goodwin appealed and, later, abandoned that appeal. Docket Entry of 5/5/06 and Docket Nos. 406-408.

4090487v2

(4) that in these circumstances, the provision of legal services by Goodwin to ScanSoft violated MRPC, §1.9(a). This motion addresses the consequences that flow from ScanSoft's and Goodwin's wrongful conduct.

On April 28, 2006, Voice Signal served a subpoena on Goodwin seeking the production of "work product produced by Goodwin Procter and provided to ScanSoft, any counsel for ScanSoft, or any person acting on behalf of ScanSoft relating to" Voice Signal. Ex. B. On May 5, 2006, Goodwin responded that it would not produce these documents, but would provide a log that identified and described the documents that fell within the scope of the subpoena. Ex. C.

On June 2, 2006, Goodwin informed Voice Signal that, notwithstanding its prior undertaking, Goodwin would not identify and describe the communications from Goodwin to ScanSoft or its other counsel. It said that there were "a large number" of those written communications. It did not deny the relevance of these documents to the subject matter of this case. Ex. D.

## ARGUMENT

### A.  Goodwin Should Be Required To Produce The Subpoenaed Documents.

Goodwin and ScanSoft knew the facts that gave rise to the attorney-client relationship between Goodwin and Voice Signal. They were well aware of the requirements of MRPC 1.9(a). They violated MRPC 1.9(a), and thereby violated the rules of this Court. D. Mass. L.R. 83.6(4) ("Acts or omissions by an attorney . . . individually or in concert with any other person or persons, that violate the ethical requirements and rules concerning the practice of law in the Commonwealth of Massachusetts shall constitute misconduct . . ."). The question presented is whether a lawyer's communications and advice rendered in violation of the Rules of Professional Conduct -- the product of a relationship that was impermissible from its inception --

are protected from disclosure on the sole ground that the impermissible relationship existed. They are not. The attorney-client privilege cannot be invoked to protect communications between a lawyer and a client where those communications were themselves wrongful.

The lawyer-client relationship between Goodwin and Voice Signal was, like all similar relationships, fiduciary in nature. *See Washington Legal Foundation v. Massachusetts Bar Foundation*, 991 F.2d 962, 974 (1st Cir. 1993). Goodwin could not represent Voice Signal's adversary in the same or a related matter without prior notice to, and consent by, Voice Signal. Goodwin and ScanSoft surely knew this fundamental precept; and they violated it. "When a second client induces a lawyer to breach his fiduciary duty to a prior client, the second client's communications with the lawyer are not privileged." *Madanes v. Madanes*, 199 F.R.D. 135, 145 (S.D.N.Y. 2001).

In *Madanes* a lawyer provided legal advice to Client A with respect to a particular matter. The relationship ended. Thereafter, the same lawyer provided legal assistance to Client B in a dispute with Client A, which involved the same matter (and other matters). In the lawsuit that followed, Client A filed a motion to compel the production of documents containing communications between the lawyer and Client B. The Court held (1) that "the crime/fraud exception to the attorney-client privilege was potentially applicable because '[i]n some circumstances, a breach of fiduciary duty [*i.e.*, the representation of a second client without the consent of the first client] may constitute a fraud'" (199 F.R.D. at 148); (2) that the crime/fraud exception encompasses communications in furtherance of a tort (*Id.*, citing *inter alia, United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358 (D. Mass. 1950)); and (3) that "the attorney-client privilege does not protect communication in furtherance of an intentional tort that undermines the adversary system itself." *Id.* at 149.

6

As applied to the present case, the attorney-client relationship between Voice Signal and Goodwin imposed certain fiduciary obligations on Goodwin. It could not represent ScanSoft in the same or a related matter without first making full disclosure to Voice Signal and obtaining its consent. In these circumstances, its representation of ScanSoft was a breach of its fiduciary duty to Voice Signal, and was, therefore, tortious. Moreover, Goodwin's failure to make disclosure to Voice Signal when there was a duty to speak [*i.e.* its failure to disclose its relationship to ScanSoft and to seek consent], and the consequent concealment of that relationship for a period of months, was both a breach of fiduciary duty and conduct in the nature of a fraud.

Because the communications between Goodwin and ScanSoft were themselves wrongful, they are not protected by the attorney-client privilege. Wigmore offers the following hypothetical:

> A communication by A to X as A's attorney, X being then also the attorney of B, now become the party-opponent, is ordinarily privileged because of the relation of X toward A.

Then, Wigmore adds the following facts which change the result:

> In the foregoing case, if A consults X as his attorney, with the express purpose of inducing him, while B's attorney, to act adversely to B, the communication would clearly cease to be privileged because the privilege cannot cover communications designed to achieve a fraud.

8 Wigmore, *Evidence* §2312 at 608 - 609. Here, Goodwin was no longer Voice Signal's lawyer when it acted as ScanSoft's lawyer. However, ScanSoft induced Goodwin to provide legal services to ScanSoft in the same case in which Goodwin had been counsel to Voice Signal. In these circumstances, there was a duty to disclose and to obtain consent. No disclosure was made. Because there was a duty to disclose, the failure to make timely disclosure was fraudulent. The fruits of that wrongful conduct are not privileged.

4090487v2

Precisely this analysis was applied in *Cherry v. Hungarian Foreign Trade Bank, Ltd.*, 136 F.R.D. 369, 372 (S.D.N.Y. 1991). In *Cherry*, Lawyer A and Lawyer B both represented a client. Thereafter, Lawyer A persuaded Lawyer B to act as Lawyer A's counsel in Lawyer A's lawsuit against the now former client, relating, in general, to the same matter. The Court held that the privilege did not protect communications between Lawyer A (now the client) and Lawyer B. The Court said that, because of the wrongful nature of the attorney-client relationship between A and B, "there was and is no privilege." Then, it addressed the work product doctrine. It said "[a]lthough a lawyer's mental impressions, opinions and legal theories embodied in documents generally are protected from disclosure . . . those protections are not available when fraud seems to be afoot . . . as it does here."

Similarly, many courts have held that the work product doctrine does not protect documents or other materials that are the fruit of actions by a lawyer that violate the standards of conduct applicable to lawyers. For example, in *Moody v. I.R.S.*, 645 F.2d 795 (D.C. Cir. 1981), a lawyer met with a judge without inviting opposing counsel to be present. The opposing party sought to compel production of a work product document relating to that meeting. It argued that the work product privilege should not protect documents that were the product of the lawyer's violation of the ABA's Model Code of Professional Responsibility. The Court of Appeals held that "a lawyer's unprofessional behavior may vitiate the work product privilege. . . . An attorney should not be able to exploit the [work product] privilege for ends outside of, and antithetical to, the adversary system anymore than a client who attempts to use the privilege to advance criminal or fraudulent ends." *Id.* at 800. The Court remanded the case for a determination as to whether, in view of all of the circumstances, work product protection should be denied.

8

The Court in *Moody* noted that the purpose of the work product doctrine is not to protect a privacy interest of the attorney, but instead to protect the adversary process itself. It said that a lawyer should not violate ethical rules, to the detriment of the adversary process, and then avoid discovery of documents that relate to -- or, in this case, actually constitute -- that wrongful conduct by citing a doctrine designed to protect the adversary process. *See Parrot v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983) (holding that because the taping of a conversation violated the Code of Professional Conduct, the tapes were not protected from disclosure by the work product doctrine); *Anderson v. Hale,* 202 F.R.D. 548, 554 (N.D. Ill. 2001) (holding that "unethical conduct vitiates the protection otherwise afforded under the work-product doctrine").

In sum, it is established that there was a violation of the Massachusetts Rules of Professional Conduct. Goodwin's and ScanSoft's lawyer/client relationship was wrongful. Consequently, the protections ordinarily associated with a lawyer/client relationship are inapplicable. The disputed documents -- the product of the impermissible relationship -- should be produced.

Finally, Goodwin has refused even to provide a log describing the documents that are covered by Voice Signal's subpoena. As a result, Goodwin has failed even to make a threshold showing that each of the documents that it is withholding is appropriately the subject of a claim of privilege. For example, individual documents may not be privileged because they were disclosed to third parties, or relate to communications in which a third party participated, or constitute legal services rendered after this Court enjoined Goodwin from providing legal services to ScanSoft in this case. Goodwin's refusal even to schedule the subpoenaed documents is indefensible.

9

### B. The Court Should Award Attorney's Fees To Voice Signal.

As soon as Voice Signal learned that Goodwin was acting as ScanSoft's counsel, it asked Goodwin/ScanSoft to discontinue their wrongful relationship. Goodwin and ScanSoft refused. Thereafter, Voice Signal's counsel met with a Goodwin partner, reviewed the relevant facts, and again asked Goodwin to withdraw. Goodwin and ScanSoft again refused. Then, Voice Signal filed a motion to disqualify, supporting briefs and detailed affidavits. Goodwin and ScanSoft persisted. At its hearing on the Motion to Disqualify, the Court chastised Goodwin and enjoined it from representing ScanSoft, pending an evidentiary hearing. Goodwin and ScanSoft pressed on. At the evidentiary hearing, Voice Signal laid out the evidence of the extensive exchanges between Voice Signal and Goodwin. The hearing lasted a day and one-half. Goodwin and ScanSoft fought on. They gave up only after Magistrate Judge Alexander ruled against them.

Voice Signal was put to extraordinary expense because ScanSoft and Goodwin violated Goodwin's obligations under the Rules of Professional Conduct and to force (belated) compliance with those obligations. After informal means to avoid a dispute proved futile, Voice Signal was required to file a motion, a total of four briefs and two affidavits. It was compelled to search for and produce documents demanded by ScanSoft. It had to prepare for a motion hearing before the Court, and to present evidence at an evidentiary hearing before the Magistrate Judge. Its senior executives testified at length and were cross-examined by their own former counsel. Voice Signal was required to cross-examine two Goodwin partners. The cost to Voice Signal of obtaining compliance with the Rules of Professional Conduct was solely the result of conduct that has now been determined to be wrongful.

Goodwin and ScanSoft's conduct violated MRPC 1.9(a), and constituted misconduct within the meaning of D. Mass., L.R. 83.6(4). A court has the inherent power to impose sanctions on those who violate the Rules of Professional Conduct and its own Rules. *Cannon v.*

10

*Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 161 (D.N.J. 1999). In this case, the minimally appropriate sanction is an order requiring ScanSoft to reimburse Voice Signal for its cost of obtaining the orders that were necessary in order to force Goodwin and ScanSoft to comply with Goodwin's professional obligations and this Court's rules. The Court should impose that sanction, and should refer this case to the Magistrate-Judge for a determination of the amount of Voice Signal's reasonable legal fees and costs.

## CONCLUSION

For the reasons stated above, (1) Goodwin Procter, LLP should be required (a) to schedule, and (b) to produce, all documents relating to Voice Signal that it created and communicated to ScanSoft, ScanSoft's counsel or anyone else who was acting for ScanSoft; and (2) Goodwin Procter and ScanSoft should be required to pay the reasonable cost (including the reasonable attorney's fees) incurred by Voice Signal to secure compliance with the Massachusetts Rules of Professional Conduct and the Rules of this Court, such costs to be determined by the Magistrate Judge.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC., ET AL

By its attorneys,

/s/ Wendy S. Plotkin
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

Dated:  July 17, 2006