# CHOATE

CHOATE HALL & STEWART LLP

Sarah Chapin Columbia
(617) 248-5053
scolumbia@choate.com

October 26, 2006

The Honorable Patti B. Saris
District Judge
U.S.D.C. for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Room 6130
Boston, MA 02210-3002

RE:    *ScanSoft, Inc. v. Voice Signal Technologies, Inc. et al.*
       United States District Court Civil Action No. 04-10353 PBS

Dear Judge Saris:

I write on behalf of Voice Signal Technologies ("Voice Signal"), at the request of the Court's neutral expert, Hermann Ney. A question has arisen regarding the scope of Dr. Ney's responsibilities during this phase of the neutral expert proceedings, as it relates to discovery relevant to Voice Signal's assertion that ScanSoft is inducing infringement of Voice Signal's U.S. Patent No. 6,594,630 (the '630 patent). Specifically, the parties dispute whether, as ScanSoft suggests, Dr. Ney should be asked at this stage of the proceedings to engage in claim construction and to find evidence of direct infringement (i.e. infringement of each and every element of the claims) or whether, as Voice Signal proposes, Dr. Ney should be asked to report to the Court whether there is reason to believe that the ScanSoft speech recognition engine performs the functions identified in the five claim elements designated by Voice Signal in accordance with the Court's May 24, 2006 Order re: Neutral Expert Procedure ("May 24 Order").

Procedural Background

The '630 patent describes and claims methods for controlling an electrical device in response to audio commands from a user. Voice Signal has accused four ScanSoft products, known as ASR 1600, ASR3200, VoCon 3200 and VoCon SF, of infringing the '630 patent. Specifically, Voice Signal accuses ScanSoft of inducing infringement by selling the accused products, which perform the speech recognition functions claimed in the '630 patent to customers who – with ScanSoft's inducement – incorporate the ScanSoft products into applications that perform the remaining functions (based on the output from the ScanSoft products) to control an electrical device.

The Honorable Patti B. Saris
October 26, 2006
Page 2

ScanSoft has conceded from the very beginning of this case that the source code for its accused products is relevant to Voice Signal's allegations of infringement. However, it refused to produce the source code after Voice Signal objected to producing its source code in connection with ScanSoft's claims for trade secret misappropriation. As a result, although the legal claims are not the same, the Court has endeavored to make the neutral expert procedure reciprocal.

The Neutral Expert Procedure as it Applies to ScanSoft's Trade Secrets Claims

The parties met with Dr. Ney in Boston on May 8, 2006. After that meeting, the Court had a telephone conference with Dr. Ney and received from Dr. Ney a letter pointing out problems with the neutral expert procedure as it applies to ScanSoft's trade secret claims. A copy of Dr. Ney's May 15, 2006 letter to the Court is attached hereto as Exhibit A. On May 23, 2006, the Court held a hearing during which the Court expanded the circle of people who would have access to the other side's source code to include each party's retained experts. At the hearing, and in its May 24, 2006 Order, the Court ordered ScanSoft to designate "no more than six trade secrets that it alleges [Voice Signal] has misappropriated."

On May 26, 2006, ScanSoft designated six trade secrets it alleged to have been misappropriated by Voice Signal. On July 26, 2006, ScanSoft submitted to Dr. Ney a report by ScanSoft's retained expert, Dr. Goldhor, addressing two of the six trade secrets. On September 11, 2006, Voice Signal submitted a report by its expert, Dr. Byrne, refuting Dr. Goldhor's assertions with respect to the two trade secrets identified by ScanSoft.

The parties' attorneys and experts met again with Dr. Ney in Boston on October 18, 2006. The parties presented their positions relating to the two trade secrets designated by ScanSoft. Dr. Ney and the parties agree that he is to answer the Court's questions: (1) whether there is reason to believe that Voice Signal copied or is using any portion of the identified Dragon Naturally Speaking or Voiceexpress Source Code; and (2) whether that portion is a trade secret, i.e., whether it is something that was in fact secret and not otherwise known or available to the public. At the conclusion of the October 18 meeting Dr. Ney commented that he understood the areas of disagreement between the parties regarding the two trade secrets designated by ScanSoft and that he understood his task.

The Neutral Expert Procedure as it Applies to Voice Signal's Claim for Infringement of the '630 Patent

At the hearing on May 23, in an effort to impose mutual, reciprocal obligations on both parties, the Court instructed Voice Signal to designate no more than six patent claims. The May 24 Order states: "Similarly, by May 26, 2006, Voice Signal will designate six of its patent claims that ScanSoft has allegedly infringed."

4137266v1

The Honorable Patti B. Saris
October 26, 2006
Page 3


May 24, 2006 Order, ¶ 1.

Because Voice Signal asserts inducing infringement rather than direct infringement, Voice Signal designated five claim elements (some of which are found in more than one claim) and, for each designated element, specific places in the ScanSoft code which prove that ScanSoft performs that element. Voice Signal asked Dr. Ney to focus on the functions described in the designated elements. Voice Signal provided Dr. Ney with a list of five questions of fact corresponding to the five claim elements designated by Voice Signal. A copy of the questions Voice Signal provided to Dr. Ney is attached hereto as Exhibit B.

Voice Signal provided its five designated claim elements to Dr. Ney, the Court, and ScanSoft's counsel on May 26, 2006. Voice Signal then prepared a detailed submission mapping each of the five designated claim elements from the '630 patent to the accused ScanSoft speech recognition engine. In its July 26, 2006 submission, Voice Signal made it clear that (1) Voice Signal does not accuse the ScanSoft engines of meeting every element of the asserted claims; and (2) Dr. Ney should focus on the designated claim elements which are found in the ScanSoft source code.

ScanSoft waited until its September 11 submission, just a few weeks before the scheduled meeting with the Neutral Expert, to take the position that Voice Signal was required to identify complete patent claims and that Dr. Ney had to find that the accused ScanSoft engines perform each and every one of the elements of those claims. ScanSoft's September 11, 2006 submission also asks Dr. Ney to engage in claim construction and, in particular, to read into the claims of the '630 patent limitations which do not appear in the claim. In addition, ScanSoft insists that Dr. Ney cannot answer the Court's question ("is there reason to believe that ScanSoft is infringing the '630 patent?) unless Dr. Ney looks for and finds each and every element of the claims asserted by Voice Signal.

As to claim construction, it is for the Court to decide. The claim construction issues relating to the '630 patent have been briefed by the parties, but have not been decided by the Court. They are not the province of the neutral expert.

As to infringement, Voice Signal does not assert that the ScanSoft engine performs the functions of all of the elements of any of the asserted claims. Rather, Voice Signal has consistently taken the position that the accused ScanSoft engines perform certain elements of the claims and that ScanSoft induces its customers to combine the ScanSoft engine with applications to perform each and every element of the asserted claims. To prove inducing infringement, Voice Signal will, obviously, have to prove: (1) that ScanSoft customers actually infringe; and (2) that ScanSoft has induced the infringement. These questions will be for the Court to decide after Voice Signal has had the opportunity to conduct discovery. That evidence is not in the ScanSoft source code and is not the subject of Dr. Ney's inquiry.

The Honorable Patti B. Saris
October 26, 2006
Page 4

At the conclusion of our October 18, 2006 meeting with Dr. Ney, he understood that the parties disagree on the scope of his task: Is he to answer the five questions designated by Voice Signal, or is he to construe the claims and conduct a complete infringement analysis on claim elements not present in the ScanSoft code? The parties and Dr. Ney agree that the question of the scope of his task should be decided by the Court.

Voice Signal asks the court to direct Dr. Ney to answer the five questions designated by Voice Signal. It will then be for the Court to determine whether Dr. Ney's findings on those questions are sufficient to permit Voice Signal additional discovery on its claims for inducing infringement of the '630 patent.

Respectfully submitted,

Sarah Chapin Columbia

SCC:mld

cc:     Lee Carl Bromberg
        Matthew Powers
        Robert S. Frank

4137266v1

# EXHIBIT A



Chair of Computer Science VI

Aachen – University of Technology

– Univ. Prof. Dr.-Ing. H. Ney –

Chair of Computer Science VI
RWTH Aachen
Ahornstr. 55
D-52056 Aachen

Tel.:   +49 (241) 80-21600
Fax:   +49 (241) 80-22219

Chair of Computer Science VI, RWTH Aachen, D-52056 Aachen

Judge Patti B. Saris
United States District Judge
Boston, MA,
Fax: 001 (617) 748-4582

May 15, 2006

Re: NUANCE vs. VST, Civil Action No. 04-10353

Dear Judge Saris:

I am writing this letter based on my review of the documents and of the source code along with the two meetings I have had so far. So far the emphasis has been on the alleged copying of code along with the alleged trade secret violations, and the experience with the alleged patent infringements is more limited.

Based on this experience so far, I would like to point out some problems and issues that are arising:

- The code involved on both sides is complex and large. So it is time consuming for both the designated counsels and me to review the code.
- In addition to the alleged trade secrets in the initial brief, the Nuance party has added (or is trying to add) more trade alleged trade secrets.
- Since now it has turned out to be difficult for the parties (due to either lack of time or expertise or ...) to locate the copied portions of the code (in the context of alleged trade secret violations) or the patent infringements in the code, I have the feeling that the two parties are trying more and more to pass on this responsibility to me. In particular, the initial briefs of both parties were not yet very specific in this respect.

Case 1:04-cv-10353-PBS Document 409 Filed 05/23/2006 Page 2 of 2

Therefore, in order to mitigate these problems, the following measures might be considered:

- requiring exact specifications of the source code portions involved (as mentioned in paragraph 15 of the Neutral Expert Procedure) by each party (E.g. for the alleged copying of source code and/or each alleged trade secrets, NUANCE should *exactly* specify its own relevant code and the relevant portions of the VST code.)

- limiting the number of alleged trade secret violations (say five or so) to be reviewed for my report. Maybe, a similar limitation makes sense for the alleged patent infringements.

- allowing more time for the whole procedure.

- For each party, an independent expert is surely helpful in locating these code portions. Giving such an expert access also to the other party's source code might speed up the process, but there might be other aspects that I do not overlook.

Maybe I should talk to you again on the phone. I will be back in my office on Friday, May 19.

Sincerely yours,

*2e. Wey*

(Dr. Hermann Ney, Neutral Expert)

2

# EXHIBIT B

# Neutral Expert Meeting
## October 18, 2006

## Voice Signal's Designated Patent Claim Questions For The Neutral Expert

### Is there a reason to believe that:

| Question 1: | | ASR 1600 | ASR 3200 | VoCon 3200 | VoCon SF |
|---|---|---|---|---|---|
| THE ACCUSED SCANSOFT SPEECH RECOGNITION ENGINES RECEIVE SPEECH RECOGNITION DATA AND AUDIO INPUTS THAT HAVE A COMMAND WORD PORTION AND A PAUSE PORTION, EACH OF THE SPEECH RECOGNITION DATA/AUDIO PORTIONS BEING AT LEAST ONE SYLLABLE IN LENGTH? | Yes | ☑ | ☑ | ☑ | ☑ |
| | No | | | | |
| **Question 2:** | | ASR 1600 | ASR 3200 | VoCon 3200 | VoCon SF |
| THE ACCUSED SCANSOFT SPEECH RECOGNITION ENGINES RECEIVE AT LEAST ONE AUDIO COMMAND, WHICH AUDIO COMMAND HAS A FIRST AND SECOND COMMAND WORD PORTION AND A FIRST, SECOND AND THIRD PAUSE PORTION, EACH OF THE AUDIO COMMAND PORTIONS BEING AT LEAST ONE SYLLABLE IN LENGTH? | Yes | ☑ | ☑ | ☑ | ☑ |
| | No | | | | |
| **Question 3:** | | ASR 1600 | ASR 3200 | VoCon 3200 | VoCon SF |
| THE SCANSOFT SPEECH RECOGNITION ENGINES GENERATE A SIGNAL BASED UPON COMPARISON OF THE RECEIVED AUDIO AND THE RECORDED DATA, WHICH SIGNAL ENABLES AN APPLICATION TO GENERATE A CONTROL SIGNAL? | Yes | ☑ | ☑ | ☑ | ☑ |
| | No | | | | |
| **Question 4:** | | ASR 1600 | ASR 3200 | VoCon 3200 | VoCon SF |
| THE ACCUSED SCANSOFT RECOGNITION ENGINES ANALYZE PAUSES FOR SPECTRAL CONTENT? | Yes | ☑ | ☑ | ☑ | ☑ |
| | No | | | | |
| **Question 5:** | | ASR 1600 | ASR 3200 | VoCon 3200 | VoCon SF |
| THE ACCUSED SCANSOFT PRODUCTS COMPARE ENERGY CONTENT FOR THE COMMAND WORD PORTION TO THE ENERGY CONTENT FOR RECEIVED BACKGROUND NOISE AND GENERATE AN ENERGY COMPARISON VALUE? | Yes | ☑ | ☑ | ☑ | ☑ |
| | No | | | | |