UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., <br><br> Plaintiff, <br><br> v. <br><br> VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR, <br><br> Defendants. | C. A. No. 04-10353-PBS |

**MEMORANDUM IN OPPOSITION TO NUANCE'S MOTION TO COMPEL DEFENDANT VOICE SIGNAL TECHNOLOGIES, INC. TO CREATE A COMPLETE SCREENING WALL BETWEEN THIS ACTION AND THE ACTION RECENTLY FILED BY DEFENDANT IN THE WESTERN DISTRICT OF PENNSYLVANIA**

Voice Signal Technologies, Inc. ("Voice Signal") submits this memorandum in opposition to Nuance's Motion to Compel Defendant Voice Signal Technologies, Inc. to Create a Complete Screening Wall Between This Action and the Action Recently Filed by Defendant in the Western District of Pennsylvania (the "Motion.").

Nuance's motion does not state any substantive basis for its request. Rather, it relies entirely on this Court's May 5, 2006 Order prohibiting Nuance's counsel in this case from sharing information learned through discovery in this case with Nuance's outside counsel in its patent infringement lawsuit against Voice Signal in Texas (the "May 5 Order"). Nuance's only "argument" in support of the extraordinary restraint it seeks is found on page 5 of its memorandum: "what's sauce for the goose is sauce for the gander."

1

As is set forth in more detail below, the circumstances leading up to this Court's May 5 Order were unusually suspicious, giving the Court grounds for concern that confidential information of Voice Signal produced in this case might be used in the Texas case. Nuance has not and cannot point to such circumstances here. Furthermore, Nuance ignores the fact that Nuance filed the Texas case through separate counsel. Thus, when the Court issued its May 5 Order it understood that Nuance had elected to be represented by separate counsel in Texas. The "Chinese Wall" imposed in the May 5 Order therefore operated to prevent the two law firms in this case (Bromberg & Sunstein and Weil Gotschal) from communicating confidential information to Nuance's outside counsel in the Texas case (O'Melveny & Myers).[1] Here, by contrast, Voice Signal is represented by one law firm (Choate, Hall & Stewart) in Boston, Texas and Pittsburgh.

## BACKGROUND

On May 5, 2006, this Court held a hearing on the interpretation of a Court Order concerning the Neutral Expert Procedure and other matters. At that hearing, the parties and the Court discussed Nuance's recent filing of a second patent infringement action against Voice Signal in Texas. The Texas Action was filed on March 30, 2006. It came on the heels of: (1) a Nuance press release touting a procedural order in this case as if it were a major substantive victory for Nuance; and (2) a failed approach by Nuance (through its investment banker, Lehman Brothers) to acquire Voice Signal. *See* May 4, 2006 Declaration of Richard Abati, ¶3 [Docket No. 383], May 4, 2006 Declaration of Daniel Roth, ¶2 [Docket No. 383]. It also came on the heels of a Voice Signal production of its confidential source code in this case.

---

[1] Shortly after the May 5, 2006 hearing Nuance moved to admit *pro hac vice* Mathew Powers, among others, of Weil, Gotschal & Manges to serve on the Nuance litigation team in this action. Attorneys from Goodwin Procter had previously entered appearances on behalf of Nuance but have since been disqualified from representing Nuance in this action. There are currently thirteen attorneys from two different firms who are listed as counsel for Nuance in this matter.

The Texas Action accuses Voice Signal's VoiceMode product of infringing three patents, including a patent for which Nuance's counsel had concluded infringement could not be determined without access to Voice Signal's source code. While the court denied Voice Signal's motion to enjoin Nuance from proceeding in Texas, the Court expressed concern over the suspicious circumstances leading up to Nuance's Texas lawsuit:

> …there will be a complete and absolute Chinese wall between your law firm and O'Melveny. I don't want lawyers talking about the case together, and I don't want any information from this suit going to that suit.
>
> Now, if in fact it all comes up here, I'm against – if I'm in control of what's happening so that I think that it's just a question of lessening the expense of discovery, I'm probably going to lift that Chinese wall. But I can't be sure about what's happening, and they've made certain allegations, and I want to make sure – while I'm sure counsel is playing aboveboard, *I was really troubled by the sequence of events of a press release and then an immediate visit by Lehman Brothers and then a lawsuit in Texas. That's troubling.*

Transcript, pp. 12-13 (emphasis added).[2]

On November 8, 2006, Voice Signal filed a patent infringement action in the United States District Court for the Western District of Pennsylvania (the "Pittsburgh Action"). The patent in the Pittsburgh Action is owned by Carnegie Mellon University. Voice Signal is an exclusive licensee in the relevant fields of use.[3] Voice Signal chose to bring the case in Pittsburgh because Carnegie Mellon University is located there. The patent-in-suit describes and claims a user interface for correcting errors made by dictation software. The Complaint accuses Nuance's Dragon Naturally Speaking and Dragon Mobile products of infringement. While Nuance's trade secret claims in this case have roots in its legacy Dragon Naturally Speaking product, there is virtually no overlap in the accused technology in the Pittsburgh Action and the

---

[2] The Transcript of the May 5, 2006 hearing is attached to the Declaration of Wendy S. Plotkin filed herewith.
[3] In the "Background" section of the Motion, Nuance asserts that "Voice Signal has taken an exclusive license[to the patent in suit] *to give it standing to assert the '000 patent against Nuance and its distributors and resellers*." citing to the Complaint. Voice Signal's complaint simply states that Voice Signal is an exclusive licensee of the patent in suit. *See* Comp., Ex. A to Motion, ¶ 21. Nuance's inappropriate and baseless characterization of Voice Signal's license should be disregarded by this Court.

3

technology that is at issue in this dispute. Further, it is likely that the determination of infringement for most, if not all, of the claims of the patent-in-suit in the Pittsburgh Action will not require extensive analysis of source code.

## ARGUMENT

### I. The Circumstances Which Led the Court to Issue its May 5 Order Do Not Exist Here.

Nuance argues that the Court's May 5 Order created a "precedent" for ordering Voice Signal to set up a complete "screening wall" between the Boston and Pittsburgh Actions.

It is clear that the Court's May 5 Order was made in reaction to evidence that Nuance was using this suit and information from this suit to harass Voice Signal as a business tactic. The Order was also made in light of and in response to Voice Signal's vehement complaints that Nuance's repeated requests for more and more Voice Signal source code disclosure in this action was a pretext for Nuance's development of other causes of action against Voice Signal relating to different patents. In fact, some of the source code production made by Voice Signal in the Massachusetts Action is directly relevant to the patent claims it asserts in the Texas Action.[4] These unusual and suspicious circumstances were not lost on the Court. When ordering that a screening wall be put in place, the Court clearly expressed its unease with the sequence of events leading up to the Texas Action:

> … while I'm sure counsel is playing aboveboard, I was really troubled by the sequence of events of a press release and then an immediate visit by Lehman Brothers and then a lawsuit in Texas. That's troubling.

Transcript, at 13.

---

[4] Nuance's own document, dated ten months before Voice Signal's source code production in this case and ten months before the initiation of the Texas Action, compares Voice Signal's VoiceMode product to the claims of one of the three patents asserted in Texas. It states "without access to source code, we are unable to determine" whether certain claims of the patent are met by Voice Signal's product.

In response to this statement by the Court, counsel for Nuance attempted to argue that a screening wall was not necessary, but this argument was quickly rejected by the Court:

> MR. BELT: I will just say, your Honor, the lawsuit in Texas is different patents, and it's not the trade secrets here, and it's not the '966 patent.
> THE COURT: I wouldn't know. I am simply saying, that sequence of what happened in March is really a problem for me because it makes me think that you're using me as a pawn for a business advantage. I wasn't born yesterday. I know this happens….

Transcript at 13.

Throughout the hearing the Court expressed its concern over Nuance's behavior:

> THE COURT: I get a sequence of events that I found so troubling which basically does cast a cloud over what you're doing. It does. It makes it seem like you're just trying to buy the company and you're trying to whack them into shape. If you want to buy it, fine, it's a good way to settle. I often have patent cases that settle. But I don't want to be used as part of it to depress the stock value…

Transcript at 17.

\*     \*     \*

> THE COURT: But I am, you know, like the footprints in the snow, circumstantial evidence. When I issue a ruling and I see a one-sided press release, and then I see Lehman Brothers go in, and then when I see that fails, I see a suit in Texas all within two weeks, what inference can I draw?

Transcript at 18.

These statements make clear that the "Chinese wall" constructed by the Court was in response to the "footprints in the snow" left by Nuance. No such footprints exist with regard to Voice Signal's filing of the Pittsburgh Action. Voice Signal is a small, privately held company. Nuance is a billion dollar public company. Nuance does not even suggest that Voice Signal is using the Pittsburgh case or any other litigation as a means of "whacking" Nuance into shape. Nor does Nuance make any allegation that Voice Signal has used information from this litigation improperly or that there is any reason to believe Voice Signal's counsel will not abide by the

protective order in this case. Rather, Voice Signal is exercising its right to protect its technology and fight for its own survival.

Furthermore, Nuance does not argue that Voice Signal has used any information from this litigation to pursue the Pittsburgh Action. Nuance's infringement of the patent asserted in the Pittsburgh action is evident from Nuance's own website and users' manuals. While it is conceivable that the Pittsburgh action will require inspection of Nuance's source code for some of the patent claims, the assertion of infringement (and the pending motion for preliminary injunction) are based on publicly available materials. Nuance does not argue otherwise.

Finally, it should be noted that Nuance filed the Texas Action through the O'Melveny firm. Thus, at the time the Court issued its May 5 Order, Nuance had already retained separate counsel to pursue the Texas Action. The Court did not order Nuance to retain separate counsel but instead ordered that no information from the Boston action be shared with the lawyers prosecuting the Texas Action. Here, Voice Signal is represented in this action, as well as the Texas and Pittsburgh Actions, by the same firm and by the same lead lawyers. Voice Signal is a small company and has the right to use the counsel of its choosing. While it is unclear from Nuance's Motion what actual relief it is requesting, in reality the effect of a complete screening wall would be that Voice Signal would have to secure different counsel for the Pittsburgh Action. There is no basis to warrant this drastic result.

**II.    There will be Little or No Overlap in Discovery in the Pittsburgh or Boston Actions**

Contrary to Nuance's assertions, there is virtually no overlap between the technology at issue in the Pittsburgh Action and the technology at issue here. It is correct that the Dragon Naturally Speaking product, which is accused in the Pittsburgh Action, is at issue in this action as part of Nuance's trade secrets case. There has been only limited source code production by

Nuance related to Dragon Naturally Speaking, since Nuance has only produced source code related to the specific features it asserts contains the trade secrets Voice Signal has misappropriated, that source code has only been produced to Voice Signal's designated counsel and outside expert.[5]  Further, the feature of Dragon Naturally Speaking that is at issue in the Pittsburgh Action, a user interface for correcting errors, is not at issue in Nuance's trade secrets case here.  Therefore, it is highly unlikely that any source code that has been produced in this action would be relevant to the issues in dispute in Pittsburgh.

The other accused product in the Pittsburgh Action – Dragon Mobile SMS, is not related to either Voice Signal's patent infringement claim here or Nuance's trade secrets case.  Nuance asserts that, in the context of Voice Signal's patent infringement counterclaim, it has already provided discovery in this action on the speech engines that have been accused in the Pittsburgh Action.  This is not the case.  In its counterclaim, Voice Signal accuses Nuance's automobile dictation product – which is different than its Dragon Mobile SMS and Dragon Naturally Speaking products.  Further, the features of Nuance's product that are accused of infringement here (and that product is not accused in the Pittsburgh Action) are unrelated to the user interface at issue in Pittsburgh.

As stated by Nuance in its Motion, the exact degree of discovery overlap between the Pittsburgh and Boston actions is "unimportant" to the Court's decision on this Motion.  What *is important* is the recognition that the May 5 Order was issued in reaction to the Court's concerns about Nuance's conduct.  Here, Voice Signal has brought a completely unrelated patent infringement suit against Nuance and others, asserting the patent in the judicial district in which Carnegie Mellon University, the owner of the patent-in-suit, resides.  Voice Signal is not using

---

[5] Voice Signal proposed that its designated counsel in this case, Christopher McKenna, not participate in any way with the Pittsburgh Action.  Nuance rejected that proposal.

7

this litigation or the Pittsburgh Action as a strong arm tactic to pressure Nuance to bend to its business will.  Voice Signal is a small company that is exercising its right to protect its technology.  It is entitled to use the counsel of its choice.

## CONCLUSION

For the foregoing reasons, Nuance's Motion should be denied.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,

/s/ Wendy S. Plotkin
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

Dated: December 20, 2006

4153881v1

Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 20, 2006.

/s/ Wendy S. Plotkin

4153881v1