# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCANSOFT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-10353-PBS |
| | ) |
| VOICE SIGNAL TECHNOLOGIES, INC., | ) |
| LAURENCE S. GILLICK, ROBERT S. | ) |
| ROTH, JONATHAN P. YAMRON, and | ) |
| MANFRED G. GRABHERR, | ) |
| | ) |
| Defendants. | ) |

**VOICE SIGNAL TECHNOLOGIES REPLY BRIEF IN SUPPORT OF ITS MOTION
FOR AN ORDER
ENJOINING NUANCE FROM SOLICITING VOICE SIGNAL EMPLOYEES**

Defendant Voice Signal Technologies, Inc. ("Voice Signal") submits this reply

memorandum in support of its Motion for an Order Enjoining Nuance from Soliciting Voice

Signal Employees (the "Motion").

In its Opposition, Nuance does not deny that it has solicited Voice Signal employees,

including an individual defendant in this matter, Larry Gillick.   Further, it does not deny that it

had access, through discovery, to the non-competition agreements between Voice Signal and its

employees.  Rather, Nuance relies almost entirely on procedural arguments concerning

jurisdiction and standing.  Nuance's blatant and improper solicitation of Voice Signal's

employees is activity that is related and intertwined with Voice Signal's defenses in this case.

Therefore, this Court has jurisdiction over Voice Signal's Motion and Voice Signal has standing

1

to seek relief. Further, contrary to Nuance's assertion, Voice Signal has clearly made a sufficient showing to warrant injunctive relief. The Court should grant Voice Signal's Motion.

**I.      Nuance's Improper Solicitation Activities Are Closely Related to the Issues in Dispute in this Litigation.**

In its Complaint, in addition to one claim of patent infringement, Nuance asserts several state law claims, including misappropriation of trade secrets and violations of Massachusetts General Laws Chapter 93A. See Amended Complaint [Docket 19]. In its Complaint, Nuance asserts that the Court has pendent jurisdiction over its state law claims. See Amended Complaint ¶7. Voice Signal raises several affirmative defenses to these state law claims, including the defense of unclean hands. See Amended Answer and Counterclaim [Docket 130]. Nuance's improper solicitation activities are directly relevant to this affirmative defense and are also relevant generally to Voice Signal's defenses to Nuance's misappropriation of trade secrets claims. It is well recognized that the doctrine of unclean hands is clearly applicable "if the plaintiff is chargeable with the same inequitable conduct it charges the defendant." See 4 Callman on Unfair Comp., Tr. & Mono. § 23:17 (4th Ed.). Here, Nuance is engaging in the same activity that forms the basis of its misappropriation of trade secrets claim. If this Court has pendent jurisdiction over Nuance's trade secret and 93A claims, it should also exercise jurisdiction over Voice Signal's defenses to those claims.

Nuance's claims for trade secret misappropriation and patent infringement were brought in February 2004, close on the heels of Nuance's failed attempts to acquire Voice Signal.[1]

---

[1] Nuance is known to use litigation for business advantage. At roughly the same time it sued Voice Signal, Nuance sued Advanced Recognition Technologies ("ART"), another small speech recognition company. That case settled within the first few months by virtue of Nuance's acquisition of ART. More recently, Nuance sued a company called SoftMed for patent infringement in the Eastern District of Texas. SoftMed alleges in a counterclaim that Nuance's suit was filed to disrupt SoftMed's business or to prevent acquisition of SoftMed. SoftMed also alleges that, after filing suit, Nuance "directly contacted SoftMed employees . . . for the express purpose of enticing them to join Nuance." A copy of SoftMed's Answer and Counterclaim is attached hereto as Exhibit 1.

2

Nuance had no factual basis for its trade secrets claim. Rather, it argued that the mere fact that employees of a now bankrupt company (Lernout & Hauspie whose intellectual property assets were acquired by Nuance) went to work for Voice Signal was enough to create a presumption that a theft of trade secrets occurred:

- "Prior to hiring Gillick, Roth, Yamron and Grabherr, Voice Signal knew or should have known that each of the defendants had executed restrictive covenants prohibiting the disclosure of trade secret information…" Amended Complaint ¶32. See also Amended Complaint ¶¶24-29.

- "The connection is clear: following the arrival of the Individual Defendants from L&H, Voice Signal announced ELVIS as a breakthrough of small platform speech technology." Opposition to Motion to Dismiss Amended Complaint [Docket 40] at 6.

- "Voice Signal hired four top flight speech recognition scientists away from Dragon Systems, Inc. and Lernout & Hauspie ('L&H') in 2001. These scientists, the individual defendants in this case, had toiled for years at Dragon and L&H where they created valuable speech recognition software trade secrets. At Voice Signal, they went right to work on speech recognition software… a more compelling case for suspecting misappropriation of trade secrets would be difficult to present." ScanSoft, Inc.'s Opposition to Defendant's Motion for Protective Order Compelling Identification of Trade Secrets [Docket 164] at 2.

- "Voice Signal hired four top-flight speech recognition scientists away from Dragon Systems, Inc.("Dragon") and Lernout & Hauspie ("L&H")…that Voice Signal could suddenly become a 'pioneer' in this field [speech recognition]… in

seven or eight months after the individual defendants began working at Voice

Signal raises serious inferences of trade secret misappropriation." Plaintiff's

Response to Defendant's Objections to Magistrate Judge's Order Requiring Trade

Secret Discovery [Docket 218] at 2-3.

Nuance repeatedly relied on the "inference" allegedly created by Voice Signal's hiring of

the individual defendants to support its misappropriation of trade secrets claim. Further, Nuance

relied on this "inference" to support its efforts to gain unlimited access to Voice Signal's most

confidential and highly proprietary source code and technical materials. Nuance's reliance on

this "inference" also caused the parties and the Court to engage in the costly Neutral Expert

Procedure which has lasted more than a year. As the Court is aware, the Neutral Expert

Procedure will soon come to a conclusion. After more than a year and four sessions with the

neutral expert (who travels to Boston from Germany), this costly procedure will result in a

Neutral Expert report that finds no evidence whatsoever that Voice Signal or its employees have

used any Nuance trade secret.[2]

Voice Signal, through its affirmative defenses, is entitled to bring Nuance's own bad acts

that are related to the subject matter of this litigation before the Court. See 14A Mass. Prac.

Summary of Basic Law §9.48 (4th Ed.) (the plaintiff's actions are relevant to the defense of

unclean hands "if there is a nexus between the illegal or unconscionable conduct on the part of

the plaintiff and the matter being litigated.") Nuance's recent solicitation activity is the very

same type of activity it argued established Voice Signal's guilt and justified Nuance's fishing

expedition into Voice Signal's confidential materials.

---

[2] The Neutral Expert, Dr. Hermann Ney, provided his draft report on January 18, 2007. It concludes that there is no
reason to believe that Voice Signal or its employees used or copied Nuance trade secrets. The Neutral Expert's final
report is due on or about March 27, 2007.

4

4178573v1

Voice Signal's Motion is simply seeking an order enjoining Nuance from engaging in the very activity it asserts establishes Voice Signal's liability in this litigation. In fact, amazingly, Nuance has tried to recruit Larry Gillick – the very same Larry Gillick Nuance accuses of being a thief. To accuse a highly-accomplished and respected speech scientist of stealing and then try to hire him back is direct evidence of Nuance's bad faith in continuing to press its trade secrets claims.

The cases cited by Nuance to support its jurisdiction and standing arguments are simply not applicable to this situation. Many of the cases deal with state law claims against different defendants than the defendant in the federal jurisdiction claims. See Serrano-Moran v. Grau Gaztambide, 195 F.3d 68 (1st Cir, 1999) (plaintiff sued police officers under §1983, also brought state law malpractice claims against doctors who treated him after alleged police beating), Nisselson v. Lernout, 2004 WL 1603492 (D.Mass. 2004) (plaintiff brought suit against officers and directors of Lernout & Hauspie under federal securities laws also asserted negligence and breach of contract claims against Chase Bank arising out of contract that included a forum selection clause that provided all actions must be brought in New York). The other cases cited by Nuance are also distinguishable. See e.g., Iglesias v. Mutual Life Insurance Co., 156 F.3d 237 (state law counterclaim that was dismissed for lack of jurisdiction was only remaining claim in matter). Nuance also cited several decisions that dismiss state law unfair competition claims that are filed with patent infringement and misappropriation of trade secret claims. See Verdegall Brothers, Inc. v. Union Oil Co., 750 F.2d 947 (9th Cir. 1981), Dickerson v. Sectek, Inc., 238 F. Supp.2d 66 (D.D.C. 2002). Here, this Court has already exercised its discretion under pendent jurisdiction principles to hear Nuance's trade secret misappropriation and 93A claims. It follows that it can hear motions related to Voice Signal's defenses to those claims.

5

## II.   Voice Signal Has Made A Sufficient Showing to Warrant an Injunction.

Nuance's Opposition does not contest most of the egregious facts set forth in Voice Signal's Motion.  It remains undisputed that:

- Nuance and Voice Signal are direct competitors;

- Nuance has engaged in a systematic and continuous campaign to solicit key Voice Signal employees, including Larry Gillick, a defendant and key witness in the litigation;

- Nuance's solicitation of key Voice Signal employees occurred notwithstanding its direct knowledge that the employees have non-compete agreements with Voice Signal;

- Nuance has a list of employees it is targeting for hire, and solicitation of other Voice Signal employees may have occurred in addition to those described in the Motion;[3]

- Nuance will likely continue to solicit key Voice Signal employees in the future;

- Nuance is acting with improper means and motive; and,

- Nuance will *not* be harmed if this Court enjoins Nuance from contacting Voice Signal's employees for any purpose that may interfere with these employees' contractual relationship with Voice Signal.

Notwithstanding these undisputed facts, Nuance agrees that "[Voice Signal] has not pled sufficient facts for this Court to grant injunctive relief."  Opposition, at p. 7.  Specifically, Nuance alleges that (1) "[Voice Signal] has not provided this Court with the information necessary to determine whether there is even an enforceable non-competition covenant"; and (2) Voice Signal's "requested relief is . . . overly broad."  Opposition, at pp. 7, 9.  Each of these arguments is meritless.

---

[3] It is also evident that Nuance intends to continue its recruitment of Voice Signal employees.  At the conference on February 8, 2007, the Court asked Nuance counsel to inquire whether Nuance might just agree not to recruit Voice Signal employees.  No such agreement was forthcoming.  Rather, Nuance filed its opposition.

**A.    Voice Signal's Non-Competition Covenants Are Enforceable**

Contrary to Nuance's assertion, Voice Signal has set forth verified facts necessary to

show that the non-compete provisions in the Agreements are enforceable.  As noted in Voice

Signal's Motion, under Massachusetts law, an employer meets its burden of proving it has

enforceable non-competition agreements by demonstrating that they are (1) necessary to protect

legitimate business interests; (2) supported by consideration; and (3) reasonably limited in time

and geographic scope.  See, e.g., All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974); Stone

Legal Resources Group, Inc. v. Glebus, No. 025136, 2003 WL 914994, *5 (Mass. Super. Ct.

Dec. 16, 2002).  As further demonstrated by the Motion, as well as the attached affidavits from

the four individuals solicited by Nuance, the Agreements meet these criteria.

With respect to the first element, a company's "legitimate business interests" include the

protection of its trade secrets, confidential information, and goodwill.[4]  Boulanger v. Dunkin'

Donuts Inc., 442 Mass. 635, 641 (2004); Marcam Corp. v. Orchard, 885 F. Supp. 294, 297-98

(D. Mass. 1995).  Specifically, courts have found the following types of information warrant

protection by an employer through restrictive covenants: financial and budget data; marketing

and promotion strategy; new product research and development; customer preferences and

needs; sales activities; and "technical" product data.  Boulanger, 442 Mass. at 642; Marcam

Corp., 885 F. Supp. at 296-97; Veridiem, Inc. v. Phelan, No. 034418BLS, 2003 WL 22481390,

*1-2 (Mass. Super. Ct. Sept. 26, 2003); W.B. Mason Co., Inc. v. Staples, Inc., No. 00-5042 BLS,

2001 WL 227855, *4-5 (Mass. Super. Ct. Jan. 18, 2001).

---

[4] Nuance's Opposition argues that "[d]etermining enforceability of a non-competition covenant requires information on . . . the validity of the trade secrets at issue."  Opposition, at p. 7.  As shown above, however, this is simply not the law in Massachusetts – an employer has other protectible interests beyond trade secrets.  Moreover, given that the parties are direct competitors engaged in a highly technical field, and that the litigation between them concerns Nuance's attempts to protect what it believes to be its own highly confidential trade secret information, Nuance cannot now credibly argue that Voice Signal does not, likewise, have protectible trade secret information.

Here, each affiant is a high-level executive with exposure and knowledge that includes these very categories of protected information. See Gillick Aff., ¶ 1 (identifying significant exposure to and knowledge of confidential technical information as Vice President of Core Technology); Reiner Aff., ¶¶ 1,2 (identifying exposure to and knowledge of Voice Signal's business development and strategy; sales activities, forecasting and revenues; and strategic customer accounts as Vice President of Global Accounts); Nielsen Aff., ¶ 1 (identifying significant exposure to and knowledge of Voice Signal's business development and strategy, sales activities and customer relationships in Europe as Vice President of Market Development for Europe); Genser Aff., ¶¶ 1,2 (identifying significant exposure to and knowledge of Voice Signal's business strategies and product development as Vice President of Marketing Communications). Accordingly, there can be no question that Voice Signal has a legitimate interest in retaining these employees and preventing them from working for a direct competitor.

The second requirement for enforcement of a non-compete, that the covenant be supported by consideration, is also met here because, as explicitly attested to by the Agreements themselves, each affiant executed the Agreement as consideration for commencement of his or her employment at Voice Signal. See Gillick Aff., ¶ 2 & Ex. A; Reiner Aff., ¶ 3 & Ex. A; Nielsen Aff., ¶ 2 & Ex. A; Genser Aff., ¶ 3 & Ex. A. Accordingly, each Agreement has the requisite consideration. See Stone Legal Resources Group, Inc., WL 914994 at *5.

Finally, the Agreements' one-year restriction against competing with Voice Signal by engaging in certain specified activities involving voice recognition technology is eminently reasonable in scope. See Gillick Aff., ¶ 2 & Ex. A; Reiner Aff., ¶ 3 & Ex. A; Nielsen Aff., ¶ 2 & Ex. A; Genser Aff., ¶ 3 & Ex. A. See, e.g., Veridiem, Inc., 2003 WL 22481390, at *2 (where plaintiff company serviced a highly competitive marketplace, enforcing one-year nationwide

8

non-compete against senior-level employee); Marcam Corp., 885 F. Supp. at 299 (same); W.B. Mason Co., 2001 WL 227855 at *6, 8 (finding one-year non-compete "certainly reasonable," and enjoining plaintiff company from soliciting defendant company's employees for one-year period without geographic limitations).[5]

Nuance tries to muddy the waters by suggesting that the Agreements are not enforceable because, *inter alia*, Voice Signal has not shown (1) whether it took proper steps to protect its trade secrets; (2) that the non-competition covenants reflect its employees' current employment responsibilities, and (3) that its employees' special knowledge was derived from their employment at Voice Signal. As previously noted, however, Massachusetts' three-part test for enforceability of non-competition agreements does not require proof of such information. Rather, these items are potential defenses against enforceability in certain contexts for which Nuance has the burden of proof [CITE?]. Voice Signal is not required to anticipate and rebut every possible defense Nuance may assert against enforceability of the Agreements.

In any event, the affidavits submitted with Voice Signal's Motion belie Nuance's assertions. First, each affiant makes clear that he or she acquired confidential proprietary information as a result of his or her employment with Voice Signal and in his or her current position. See Gillick Aff., ¶¶ 1,2; Reiner Aff., ¶¶ 1,2; Nielsen Aff., ¶¶ 1,2; Genser Aff., ¶¶ 2,3. Moreover, the Agreements themselves (which are attached to each affidavit) are replete with evidence of Voice Signal's efforts to keep this proprietary information confidential. The very first paragraph of the Agreement requires the signor, "[a]t all times during the term of [his or her] employment and thereafter" to "hold in strictest confidence and . . . not disclose, use, lecture upon or publish any of the Company's Proprietary Information" except where necessary in the

---

[5] Even if the court were to find that these restrictions are unreasonably broad, it can still enforce the non-compete covenant to the extent necessary to protect Voice Signal's legitimate business interests. See, e.g., W.B. Mason, 2001 WL 227855 at *7.

course of employment. Paragraph 10 of the Agreement prohibits a departing employee from

taking with him or her any material containing proprietary information. And, in the penultimate

paragraph in the Agreement, the signor acknowledges that he or she "UNDERSTAND[S] THAT

THIS AGREEMENT . . . RESTRICTS MY RIGHTS TO DISCLOSE OR USE THE

COMPANY'S CONFIDENTIAL INFORMATION . . . ." See Gillick Aff., ¶ 2 & Ex. A; Reiner

Aff., ¶ 3 & Ex. A; Nielsen Aff., ¶ 2 & Ex. A; Genser Aff., ¶ 3 & Ex. A.  Moreover, as noted in

its Motion, to fully protect its proprietary information, Voice Signal requires *all* of its employees

to sign Agreements, which all contain the above-described clauses, as well as one-year non-

compete covenants, upon commencement of employment. See Voice Signal's Memorandum in

Support of Its Motion For an Order Enjoining Nuance From Soliciting Voice Signal Employees,

at p. 4.

        While it is simply not practical for Voice Signal to describe in specific detail the type of

confidential information each of its employees (other than the affiants) possess as a result of their

various positions,[6] such information is not a prerequisite for this Court to grant the relief Voice

Signal seeks, notwithstanding Nuance's argument to the contrary. By way of example, and as

described in further detail *infra*, the court in W.B. Mason Co., Inc. v. Staples, Inc. enjoined one

employer from contacting the employees of another employer for any purpose that would

interfere with any of those employees' restrictive covenants, and did so without examining the

enforceability of each of these contracts. 2001 WL 227855 at *8.

---

[6] If Nuance provides a list of Voice Signal employees that it has solicited, as Voice Signal has requested, Voice
Signal can certainly address this issue with more specificity.

10

**B.     Voice Signal's Requested Relief is Reasonably Tailored to Protect Voice Signal From the Ongoing Threat of Nuance's Solicitations, and Will Not Cause Any Harm to Nuance**

Nuance next argues that the relief Voice Signal requests should be denied as "overly broad" because "Nuance is not aware" of "any case in which a court has issued a blanket injunction precluding a company from hiring *any* employee of another company." Opposition, at p. 9 (emphasis in original). In the first instance, Nuance misconstrues the relief that Voice Signal has requested. Voice Signal is not requesting a "blanket injunction" but, rather, an Order[7] enjoining Nuance and its agents from interfering with the contractual relationship Voice Signal has with its employees. Motion, at p. 2. Particularly given the litigation and prior history between the parties,[8] Voice Signal's request that Nuance stop interfering with its employment contracts is eminently reasonable.

Further, notwithstanding Nuance's assertion to the contrary, this is precisely the same relief afforded by the Superior Court to the wronged defendant employer in <u>W.B. Mason Co.</u>. There, two employees of Staples, Inc. were solicited by W.B. Mason, a direct competitor of Staples, notwithstanding W.B. Mason's knowledge that the employees had non-compete agreements with Staples that prohibited their employment with a competitor for one year. 2001 WL 227855 at *2-3, 7. The court found that even though W.B. Mason did not itself have an agreement with Staples, its solicitations of Staples' employees had harmed Staples. <u>Id.</u> at *7-8. Accordingly, to prevent future harm, the court ordered that W.B. Mason be

---

[7] As explained in its Motion, Voice Signal is not requesting that the Court enter a preliminary injunction against Nuance (and, accordingly, there is no need for the Court to make formal findings regarding the elements required to obtain injunctive relief.) Because Nuance's actions directly affect the trade secret litigation between the parties in that Nuance has solicited an individual defendant as well as other potential witnesses in the litigation, Voice Signal seeks an Order from this Court, as part of the current litigation, enjoining Nuance from soliciting its current employees and, thus, continuing to interfere with Voice Signal's defenses against Nuance's allegations.

[8] Nuance's prior history in this case includes its approach to retain Voice Signal's expert, Dr. Bill Byrne, to conduct research on Nuance's behalf.

4178573v1

> [e]njoined and restrained from contacting, directly or indirectly,
> any present employees of Staples Contract and Commercial, Inc.
> or Staples, Inc. for any purpose whatsoever that would interfere in
> any way with any contractual relations between such employees
> and either Staples entity.

See id. at *8. See also Alexander & Alexander, Inc. v. Danahy, 21 Mass. App. Ct. 488, 500

(1986) (explaining that "a stranger to a noncompetition agreement who is aware of the

agreement" may be enjoined from interfering with it).

It is this precise remedy granted by the court in W.B. Mason that Voice Signal requests in

its Motion,[9] and the request is wholly justified. Implicit in the W.B. Mason order was the

recognition long made by courts that an employer's assembled workforce is an integral part of its

good will, and that the threat of loss of this goodwill, because it is particularly hard to quantify,

presumptively gives rise to the need for equitable relief. See, e.g., State Street Corp. v. Barr, No.

99-4291F, 1999 Mass. Super. LEXIS 432, *14,21 (Mass. Super Ct. Oct. 25, 1999) (granting

injunction to prevent solicitation of plaintiff's employees because plaintiff employer would

likely be irreparably harmed by loss of employees to competitor); W.B. Mason, 2001 WL

227855, at *4,8 (same); see also McFarland v. Schneider, No. 96-7097, 1998 WL 136133, *43

(Mass. Super. Ct. Feb. 17, 1998) (recognizing that a company's "continued growth and viability

depend on . . . maintaining its . . . relationship with employees," and that maintaining such

"internal goodwill" helps promote a "stable and vibrant" enterprise).

Here, the threat against Voice Signal's employee goodwill is particularly acute and

unquantifiable. If Nuance's solicitations continue, Voice Signal faces the loss of its workforce

---

[9] The Opposition's attempt to distinguish the cases cited by Voice Signal in support of its requested relief is wholly unsuccessful. In Darwin Partners, Inc. v. Signature Consultants LLC, the court *did* enjoin the new employer from soliciting clients its new employees had had contact with during their previous employment. See 2000 WL 33159238 at *5. And, in New England Patriots Football Club, Inc. v. Univ. of Colorado, the First Circuit determined that the University of Colorado was properly enjoined from interfering with the employment contract between the Patriots and its head coach – the same relief requested here. See 592 F.2d 1196 (1st Cir. 1979).

(and the goodwill it has invested therein). While it is clear that Voice Signal's goodwill and business interests will be threatened if equitable relief is not granted, Nuance does not (and cannot) even attempt to suggest that it will suffer *any* harm whatsoever if it is enjoined from soliciting Voice Signal employees.

Finally, even though Nuance does not deny that it has been soliciting key Voice Signal employees, it seemingly argues that because its efforts have been unsuccessful to date, it should not be enjoined from further solicitations. Nuance is asking this Court to wait to act until after its attempts to induce breaches of Voice Signal's contracts have succeeded, and it has successfully hired away Voice Signal employees. This Court is not required to wait. As the Massachusetts Appeals Court has recognized, "the purpose of [an] injunction is to *prevent* whatever *future* violations *are likely* to occur." Alexander, 21 Mass. App. Ct. at 494 (emphasis added); accord United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953); see Darwin Partners, 2000 WL 33159238 at *5 (granting injunction to enforce non-solicitation provision where "there is a very strong potential for future loss of goodwill").

In sum, Voice Signal is making a simple and reasonable request to this Court to stop Nuance from continuing to interfere with its employment and contractual relationships. Nuance has not denied its involvement in these activities, which are only the most recent in its string of wrongdoing in recent years. The Order requested in the Motion should issue.

13

## CONCLUSION

Voice Signal respectfully requests that the Court grant the requested order enjoining Nuance from soliciting its employees and requiring it to disclosure the names of prior solicited employees, as set forth in its principal Motion for an Order Enjoining Nuance From Soliciting Voice Signal Employees.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,


/s/ Sarah Chapin Columbia
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

14

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| NUANCE COMMUNICATIONS, INC., | § § § | |
| Plaintiff and Counter-defendant, | § § | |
| v. | § § | CIVIL ACTION NO. 5:06-CV-252-DF |
| SOFTMED SYSTEMS, INC., | § § § | JURY TRIAL REQUESTED |
| Defendant and Counter-plaintiff. | § § § | |

## ANSWER, DEFENSES AND COUNTERCLAIMS
## OF DEFENDANT SOFTMED SYSTEMS, INC.

The defendant, SoftMed Systems, Inc. ("SoftMed"), by its attorneys, hereby answers the numbered paragraphs of the Complaint of Plaintiff Nuance Communications, Inc. ("Nuance") as follows:

### FIRST DEFENSE

1.    This is an action for patent infringement. Nuance alleges that SoftMed infringes Nuance's United States Patent Nos. 5,179,627 and 5,513,905 (the "Patents-In-Suit") by making, using, offering for sale and contributing to and/or inducing others to make, use, sell or offer to sell products and services claimed by the Patents-In-Suit.

ANSWER:

SoftMed admits that Nuance purports to assert a claim for patent infringement but denies any remaining allegations in this paragraph, and specifically denies that Nuance is entitled to any relief.

1040.00001/332121.1

2.    Nuance is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in Burlington, Massachusetts. Nuance is engaged in the business of designing, developing and providing speech and imaging products and related services.

**ANSWER:**

SoftMed lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore denies them.

3.    Nuance is informed and believes that defendant SoftMed is a corporation organized and existing under the laws of the State of Maryland and has its principal place of business in Silver Spring, Maryland.

**ANSWER:**

SoftMed admits that it is a corporation organized and existing under the laws of the State of Maryland and has its principal place of business in Silver Spring, Maryland.

4.    This Court has subject matter jurisdiction over this controversy under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**

No answer is required to the allegations contained in paragraph 4, which merely state conclusions of law.

5.    Venue lies within this judicial pursuant to 28 U.S.C. §§ 1391(b), (c) and

1400(b).

**ANSWER:**

No answer is required to the allegations contained in paragraph 5, which merely state

conclusions of law.

6.    Nuance is the owner of record of United States Patent No. 5,179,627 ("the

'627 Patent") entitled "Digital Dictation System" with full rights in and to the claims and

causes of action involved in this suit.  The United States Patent and Trademark Office

duly and legally issue the '627 Patent on January 12, 1993.  Exhibit A to this complaint is

a true and correct copy of the '627 Patent.

**ANSWER:**

SoftMed admits that a copy of the '627 Patent is attached as Exhibit A to the Complaint.

SoftMed lacks knowledge or information sufficient to form a belief as to the truth or falsity of

the remaining allegations in this paragraph, and therefore denies them.

7.    SoftMed has been and is infringing the '627 Patent by making, using,

selling and/or offering for sale in the United States, and by contributing to and/or

inducing others to make, use, sell and/or offer for sale in the United States, without

license from Nuance, products or services that practice the invention claimed in the '627

Patent.  These products or services include, *inter alia*, systems for handling voice

messages.

**ANSWER:**

Denied.

- 3 -

      8.     Nuance is informed and believes, and based thereon avers, that SoftMed will continue to infringe, contribute to and/or induce others to infringe, the '627 Patent unless enjoined by this Court.

**ANSWER:**

Denied.

      9.     As a direct and proximate result of SoftMed's infringement of the '627 Patent, Nuance has been and continues to be damaged in an amount yet to be determined.

**ANSWER:**

Denied.

      10.    By reason of the above acts, SoftMed has caused and is causing, and unless enjoined and restrained by this Court, will continue to cause Nuance great and irreparable injury to among other things, the good will and business reputation of Nuance and its business relationships, all of which cannot be adequately compensated or measured in money. Nuance has no adequate remedy at law. Nuance is entitled to injunctive relief enjoining and restraining SoftMed, its officers, agents, servants, and employees, and all persons acting in concert with SoftMed from further infringement of the '627 Patent.

**ANSWER:**

Denied.

- 4 -

11.    On information and belief, Nuance avers that SoftMed's infringement of the '627 Patent is, has been and continues to be committed with full knowledge of Nuance's rights under the '627 Patent, and in willful, wanton and deliberate disregard thereof, rendering this an exceptional case under 35 U.S.C. § 285.

**ANSWER:**

Denied.

12.    Nuance is the owner of record of United States Patent No. 5,513,905 ("the '905 Patent") entitled "Priority Voice Message Delivery System" with full rights in and to the claims and causes of action involved in this suit. The United States Patent and Trademark Office duly and legally issued the '905 Patent on October 6, 1992. Exhibit B to this Complaint is a true and correct copy of the '905 Patent.

**ANSWER:**

SoftMed admits that a copy of the '905 Patent is attached as Exhibit A to the Complaint. SoftMed lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph, and therefore denies them.

13.    SoftMed has been and is infringing the '905 Patent by making, using, selling and/or offering for sale in the United States, and by contributing to and/or inducing others to make, use, sell and/or offer for sale in the United States, without license from Nuance, products or services that practice the invention claimed in the '905 Patent. These products or services that practice the invention claimed in the '905 Patent. These products or services include, *inter alia*, systems for handling voice messages.

**ANSWER:**

Denied.

- 5 -

1040.00001/332121.1

17.    On information and belief, Nuance avers that SoftMed's infringement of the '905 Patent is, has been and continues to be committed with full knowledge of Nuance's rights under the '905 Patent, and in willful, wanton and deliberate disregard thereof, rendering this an exceptional case under 35 U.S.C. § 285

**ANSWER:**

Denied.

### SECOND DEFENSE

SoftMed has not infringed, induced infringement or contributed to infringement of the '627 or '905 Patent.

### THIRD DEFENSE

The '627 and '905 Patents are invalid under one or more provisions of 35 U.S.C. § 101 *et seq.*

### FOURTH DEFENSE

Nuance's claims are barred by the doctrine of unclean hands.

### FIFTH DEFENSE

Although Nuance, or its predecessor in interest, Dictaphone Corporation, knew about SoftMed's competing products at least since 2001, it unreasonably, and without excuse, delayed bringing this lawsuit, and accordingly Nuance's alleged claims are barred by the doctrine of laches.

1040.00001/332121.1

14.     Nuance is informed and believes, and based thereon avers, that SoftMed will continue to infringe, contributed to and/or induce others to infringe, the '905 Patent unless enjoined by this Court.

**ANSWER:**

Denied.

15.     As a direct and proximate result of Defendant's infringement of the '905 Patent, Nuance has been and continues to be damaged in an amount yet to be determined.

**ANSWER:**

Denied.

16.     By reason of the above acts, SoftMed has caused and is causing, and unless enjoined and restrained by this Court, will continue to cause Nuance great and irreparable injury to among other things, the good will business reputation of Nuance and its business relationships, all of which cannot be adequately compensated or measured in money.  Nuance has no adequate remedy at law.  Nuance is entitled to injunctive relief enjoining and restraining SoftMed, its officers, agents, servants, and employees, and all persons acting in concert with SoftMed from further infringement of the '905 Patent.

**ANSWER:**

Denied.

- 6 -

## COUNTERCLAIMS

The defendant and counterclaim plaintiff, SoftMed, for its counterclaims, alleges as follows:

1.    SoftMed is a corporation organized and existing under the laws of the State of Maryland and has its principal place of business in Silver Spring, Maryland.

2.    Nuance states in its Complaint that it is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in Burlington, Massachusetts.

3.    These counterclaims arise under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*, under the declaratory judgment act, 28 U.S.C. §§ 2201 and 2202, and under applicable state laws.

4.    This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.    This Court has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367(a).

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Nuance is subject to personal jurisdiction in this judicial district.

## BACKGROUND

7.    Upon information and belief, Nuance filed this lawsuit in bad faith to wrongly interfere and harm the lawful business of SoftMed and to exclude SoftMed from lawfully making and selling a competing product.

8.    Until this lawsuit, Nuance never gave SoftMed notice of Nuance's patents, nor did Nuance ever claim that SoftMed's products infringed, despite the fact that Nuance and its predecessors in interest have known about SoftMed's products for years.

- 8 -

9.    Upon information and belief, the initiation of this lawsuit is part of Nuance's scheme to disrupt or prevent any acquisition of SoftMed, or if such an acquisition occurred, to reduce SoftMed's valuation.

10.    Upon information and belief, after filing this lawsuit, Nuance began to make false and misleading statements to SoftMed customers and prospective customers about the status and content of an agreement between Nuance and SoftMed concerning Nuance's Dragon speech recognition software. In particular, Nuance stated falsely, and continues to state falsely, that SoftMed no longer has the right to sell products that incorporate Nuance's Dragon speech recognition software. Such false or misleading statements were intended to and did deceive SoftMed's customers and prospective customers. Prior to these false or misleading statements by Nuance, SoftMed had a reasonable probability or expectation of entering into or continuing a contractual relationship with some or all of those customers and prospective customers.

11.    Upon information and belief, Nuance has maliciously made such false or misleading statements, and has used information about this lawsuit for the improper purpose of decreasing SoftMed's revenue and profits, and impairing its competitive strength.

12.    Upon information and belief, Nuance has, after bringing this lawsuit, solicited SoftMed employees to leave SoftMed and join Nuance. On various occasions, Nuance employees, or agents acting on its behalf, have directly contacted SoftMed employees, including sales personnel, for the express purpose of enticing them to join Nuance.

- 9 -

13.    Upon information and belief, Nuance acted intentionally and maliciously for the improper purpose of disrupting or preventing any acquisition of SoftMed or, if such an acquisition occurred, to reduce SoftMed's valuation.

## COUNT I – DECLARATORY JUDGMENT OF NON-INFRINGEMENT

14.    SoftMed repeats the allegations set forth above as if fully set forth here.

15.    Nuance claims that it owns the '627 and '905 patents, and that SoftMed infringes those patents.

16.    An actual and justiciable controversy exists between the parties with respect to the alleged infringement of the '627 and '905 patents.

17.    SoftMed does not infringe and has not infringed any claims of the '627 and '905 patents.

18.    SoftMed is entitled to a declaratory judgment that it does not infringe and has not infringed any claims of the '627 and '905 patents.

## COUNT II – DECLARATORY JUDGMENT OF INVALIDITY

19.    SoftMed repeats the allegations set forth above as if fully set forth here.

20.    The '627 and '905 patents are invalid under one or more provisions of 35 U.S.C. § 101 *et seq.*

21.    An actual and justiciable controversy exists between the parties with respect to the validity of the '627 and '905 patents.

22.    SoftMed is entitled to a declaratory judgment that the '627 and '905 patents are invalid.

- 10 -

## COUNT III – UNFAIR COMPETITION UNDER 15 U.S.C. § 1125 (LANHAM ACT)

23.     SoftMed repeats the allegations set forth above as if fully set forth here.

24.     Upon information and belief, Nuance – in bad faith – has made false or misleading statements about SoftMed's legal rights and business and false or misleading statements of fact in commercial advertising or promotion about SoftMed's goods or services. Such false or misleading statements are likely to influence purchasing decisions, and have influenced purchasing decisions of SoftMed's customers or prospects.

25.     Nuance made such false or misleading statements in connection with interstate commerce.

26.     Upon information and belief, Nuance's false or misleading statements have resulted in actual injury to SoftMed, and will cause further injury to SoftMed if not enjoined.

## COUNT IV – UNFAIR COMPETITION UNDER TEXAS LAW

27.     SoftMed repeats the allegations set forth above as if fully set forth here.

28.     Nuance's activities regarding SoftMed are contrary to honest practice in commercial matters and constitute unfair competition.

29.     Nuance tortiously interfered with SoftMed's ability to conduct its business, and has done so without justification or privilege.

30.     Upon information and belief, Nuance's tortious and unjustified interference with SoftMed's business has caused injury to SoftMed, and will cause further injury to SoftMed if not enjoined.

1040.00001/332121.1

## COUNT V – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS UNDER TEXAS LAW

31.    SoftMed repeats the allegations set forth above as if fully set forth here.

32.    Upon information and belief, Nuance is aware of the existence of certain contractual relations SoftMed has with its customers.

33.    Upon information and belief, Nuance willfully and intentionally interfered with existing SoftMed contracts, and has done so without justification or privilege.

34.    As a result of Nuance's conduct, Nuance has caused injury to SoftMed, and will cause further injury to SoftMed if not enjoined.

## COUNT VI – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS UNDER TEXAS LAW

35.    SoftMed repeats the allegations set forth above as if fully set forth here.

36.    Upon information and belief, Nuance is aware of business relations SoftMed has with customers or prospective customers, and Nuance has intentionally interfered with such business relations that SoftMed had a reasonable probability of entering into or continuing.

37.    Upon information and belief, such independently tortious or unlawful conduct by Nuance prevented one or more such business relationships from occurring.

38.    Upon information and belief, Nuance had a desire to prevent that business relationship from occurring, or knew the interference was certain or substantially certain to occur as a result of its conduct.

39.    SoftMed has suffered actual harm or damages as a result of Nuance's interference, and will suffer further injury if Nuance is not enjoined from interfering with SoftMed's business.

## COUNT VII – UNFAIR COMPETITION UNDER MARYLAND LAW

40.    SoftMed repeats the allegations set forth above as if fully set forth here.

41.    Upon information and belief, Nuance has filed allegations lacking a good faith basis in its Complaint in an attempt to unjustifiably punish SoftMed and unfairly target its employees, customers, and prospective customers.

42.    Upon information and belief, by wrongfully threatening, bringing and maintaining this lawsuit, Nuance has hampered fair trade and unfairly competed with, and is continuing to unfairly compete with, SoftMed.

43.    Upon information and belief, Nuance's wrongful acts have caused and, unless enjoined, will continue to cause SoftMed harm.

## COUNT VIII – TORTIOUS INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONSHIPS UNDER MARYLAND LAW

44.    SoftMed repeats the allegations set forth above as if fully set forth here.

45.    Upon information and belief, Nuance is aware of the existence of contractual relations SoftMed has with its employees, and has intentionally interfered with, or attempted to interfere with, those contractual relations.

46.    Upon information and belief, Nuance is aware of the existence of certain business relations SoftMed has with customers or prospective customers, and Nuance has intentionally interfered with those business relations.

47.    Upon information and belief, Nuance has acted maliciously, without cause or justification, and not for the purpose of furthering any of Nuance's legitimate interests, but with the willful intent to harass and injure SoftMed and harm its business.

48.    Nuance's wrongful, interfering acts have caused and, unless enjoined, will continue to cause SoftMed harm.

- 13 -

### REQUEST FOR RELIEF

WHEREFORE, SoftMed respectfully requests that this Court enter judgment:

A.    Declaring Nuance's '627 and '905 patents not infringed by SoftMed;

B.    Declaring Nuance's '627 and '905 patents invalid;

C.    Declaring that this is an exceptional case under 35 U.S.C. § 285;

D.    Finding that Nuance has unfairly competed with SoftMed;

E.    Finding that Nuance has tortiously interfered with SoftMed's contractual relations;

F.    Finding that Nuance has tortiously interfered with SoftMed's prospective business relations;

G.    Permanently enjoining Nuance and its officers, agents, servants, employees, affiliates and all others in active concert or participation with Nuance from making false and misleading statements about SoftMed in the marketplace;

H.    Awarding SoftMed its damages including, loss of the benefits of certain contracts, consequential losses, actual harm to reputation, and pre- and post-judgment interest, caused by Nuance's tortious conduct;

I.    Awarding attorneys' fees to SoftMed pursuant to 35 U.S.C. § 285 for Nuance's bad faith and unfair conduct; and

J.    Ordering such other and further relief to SoftMed as the Court deems just and proper.

- 14 -

## DEMAND FOR A JURY TRIAL

SoftMed demands a jury trial on all claims so triable.

Dated:  December 29, 2006                    Respectfully submitted,

By: /s/ David Beck
       David J. Beck
       State Bar No. 0000070
       Beck, Redden & Secrest, LLP
       1221 McKinney Street, Suite 4500
       Houston, Texas  77010-2010
       Telephone:  (713) 951-3700
       Facsimile:  (713) 951-3720
       Email:  dbeck@brsfirm.com
       LEAD ATTORNEY FOR DEFENDANT
       AND COUNTERCLAIM-PLAINTIFF
       SOFTMED SYSTEMS, INC.

*Of Counsel:*

Nicholas H. Patton
State Bar No. 15631000
Patton, Tidwell & Schroeder, L.L.P.
4605 Texas Boulevard, P.O. Box 5398
Texarkana, Texas 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233
Email: nickpatton@texarkanalaw.com

Mark G. Matuschak
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6000
Facsimile:  (612) 526-5000
Email: mark.matuschak@wilmerhale.com

Paul B. Keller
Peter J. Shen
WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888
Email: paul.keller@wilmerhale.com
Email: peter.shen@wilmerhale.com

- 15 -

1040.00001/332121.1

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service in the above referenced case are being served this 29th day of December, 2006, via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ David Beck

1040.00001/332121.1