UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

SCANSOFT, INC., )
)
)
Plaintiff, )
)
v. ) C.A. No. 04-10353-PBS
)
)
VOICE SIGNAL TECHNOLOGIES, INC., )
LAURENCE S. GILLICK, ROBERT S. )
ROTH, JONATHAN P. YAMRON, and )
MANFRED G. GRABHERR, )
)
Defendants. )
_____)

**VOICE SIGNAL TECHNOLOGIES REPLY BRIEF IN SUPPORT OF ITS MOTION
FOR AN ORDER
<u>ENJOINING NUANCE FROM SOLICITING VOICE SIGNAL EMPLOYEES</u>
<u>[MOTION FOR LEAVE TO FILE GRANTED 3-9-07]</u>**

Defendant Voice Signal Technologies, Inc. ("Voice Signal") submits this reply memorandum in support of its Motion for an Order Enjoining Nuance from Soliciting Voice Signal Employees (the "Motion").

In its Opposition, Nuance does not deny that it has solicited Voice Signal employees, including an individual defendant in this matter, Larry Gillick. Further, it does not deny that it had access, through discovery, to the non-competition agreements between Voice Signal and its employees. Rather, Nuance relies almost entirely on procedural arguments concerning jurisdiction and standing. Nuance's blatant and improper solicitation of Voice Signal's employees is activity that is related and intertwined with Voice Signal's defenses in this case. Therefore, this Court has jurisdiction over Voice Signal's Motion and Voice Signal has standing

1

to seek relief. Further, contrary to Nuance's assertion, Voice Signal has clearly made a sufficient showing to warrant injunctive relief. The Court should grant Voice Signal's Motion.

### I. Nuance's Improper Solicitation Activities Are Closely Related to the Issues in Dispute in this Litigation.

In its Complaint, in addition to one claim of patent infringement, Nuance asserts several state law claims, including misappropriation of trade secrets and violations of Massachusetts General Laws Chapter 93A. See Amended Complaint [Docket 19]. In its Complaint, Nuance asserts that the Court has pendent jurisdiction over its state law claims. See Amended Complaint ¶7. Voice Signal raises several affirmative defenses to these state law claims, including the defense of unclean hands. See Amended Answer and Counterclaim [Docket 130]. Nuance's improper solicitation activities are directly relevant to this affirmative defense and are also relevant generally to Voice Signal's defenses to Nuance's misappropriation of trade secrets claims. It is well recognized that the doctrine of unclean hands is clearly applicable "if the plaintiff is chargeable with the same inequitable conduct it charges the defendant." See 4 Callman on Unfair Comp., Tr. & Mono. § 23:17 (4th Ed.). Here, Nuance is engaging in the same activity that forms the basis of its misappropriation of trade secrets claim. If this Court has pendent jurisdiction over Nuance's trade secret and 93A claims, it should also exercise jurisdiction over Voice Signal's defenses to those claims.

Nuance's claims for trade secret misappropriation and patent infringement were brought in February 2004, close on the heels of Nuance's failed attempts to acquire Voice Signal.[1]

---

[1] Nuance is known to use litigation for business advantage. At roughly the same time it sued Voice Signal, Nuance sued Advanced Recognition Technologies ("ART"), another small speech recognition company. That case settled within the first few months by virtue of Nuance's acquisition of ART. More recently, Nuance sued a company called SoftMed for patent infringement in the Eastern District of Texas. SoftMed alleges in a counterclaim that Nuance's suit was filed to disrupt SoftMed's business or to prevent acquisition of SoftMed. SoftMed also alleges that, after filing suit, Nuance "directly contacted SoftMed employees . . . for the express purpose of enticing them to join Nuance." A copy of SoftMed's Answer and Counterclaim is attached hereto as Exhibit 1.

2

Nuance had no factual basis for its trade secrets claim. Rather, it argued that the mere fact that employees of a now bankrupt company (Lernout & Hauspie whose intellectual property assets were acquired by Nuance) went to work for Voice Signal was enough to create a presumption that a theft of trade secrets occurred:

- "Prior to hiring Gillick, Roth, Yamron and Grabherr, Voice Signal knew or should have known that each of the defendants had executed restrictive covenants prohibiting the disclosure of trade secret information…" Amended Complaint ¶32. See also Amended Complaint ¶¶24-29.

- "The connection is clear: following the arrival of the Individual Defendants from L&H, Voice Signal announced ELVIS as a breakthrough of small platform speech technology." Opposition to Motion to Dismiss Amended Complaint [Docket 40] at 6.

- "Voice Signal hired four top flight speech recognition scientists away from Dragon Systems, Inc. and Lernout & Hauspie ('L&H') in 2001. These scientists, the individual defendants in this case, had toiled for years at Dragon and L&H where they created valuable speech recognition software trade secrets. At Voice Signal, they went right to work on speech recognition software… a more compelling case for suspecting misappropriation of trade secrets would be difficult to present." ScanSoft, Inc.'s Opposition to Defendant's Motion for Protective Order Compelling Identification of Trade Secrets [Docket 164] at 2.

- "Voice Signal hired four top-flight speech recognition scientists away from Dragon Systems, Inc.("Dragon") and Lernout & Hauspie ("L&H")…that Voice Signal could suddenly become a 'pioneer' in this field [speech recognition]… in

3

4178573v2

seven or eight months after the individual defendants began working at Voice Signal raises serious inferences of trade secret misappropriation." Plaintiff's Response to Defendant's Objections to Magistrate Judge's Order Requiring Trade Secret Discovery [Docket 218] at 2-3.

Nuance repeatedly relied on the "inference" allegedly created by Voice Signal's hiring of the individual defendants to support its misappropriation of trade secrets claim. Further, Nuance relied on this "inference" to support its efforts to gain unlimited access to Voice Signal's most confidential and highly proprietary source code and technical materials. Nuance's reliance on this "inference" also caused the parties and the Court to engage in the costly Neutral Expert Procedure which has lasted more than a year. As the Court is aware, the Neutral Expert Procedure will soon come to a conclusion. After more than a year and four sessions with the neutral expert (who travels to Boston from Germany), this costly procedure will result in a Neutral Expert report that finds no evidence whatsoever that Voice Signal or its employees have used any Nuance trade secret.[2]

Voice Signal, through its affirmative defenses, is entitled to bring Nuance's own bad acts that are related to the subject matter of this litigation before the Court. See 14A Mass. Prac. Summary of Basic Law §9.48 (4th Ed.) (the plaintiff's actions are relevant to the defense of unclean hands "if there is a nexus between the illegal or unconscionable conduct on the part of the plaintiff and the matter being litigated.") Nuance's recent solicitation activity is the very same type of activity it argued established Voice Signal's guilt and justified Nuance's fishing expedition into Voice Signal's confidential materials.

---

[2] The Neutral Expert, Dr. Hermann Ney, provided his draft report on January 18, 2007. It concludes that there is no reason to believe that Voice Signal or its employees used or copied Nuance trade secrets. The Neutral Expert's final report is due on or about March 27, 2007.

4

4178573v2

Voice Signal's Motion is simply seeking an order enjoining Nuance from engaging in the very activity it asserts establishes Voice Signal's liability in this litigation. In fact, amazingly, Nuance has tried to recruit Larry Gillick – the very same Larry Gillick Nuance accuses of being a thief. To accuse a highly-accomplished and respected speech scientist of stealing and then try to hire him back is direct evidence of Nuance's bad faith in continuing to press its trade secrets claims.

The cases cited by Nuance to support its jurisdiction and standing arguments are simply not applicable to this situation. Many of the cases deal with state law claims against different defendants than the defendant in the federal jurisdiction claims. See Serrano-Moran v. Grau Gaztambide, 195 F.3d 68 (1st Cir, 1999) (plaintiff sued police officers under §1983, also brought state law malpractice claims against doctors who treated him after alleged police beating), Nisselson v. Lernout, 2004 WL 1603492 (D.Mass. 2004) (plaintiff brought suit against officers and directors of Lernout & Hauspie under federal securities laws also asserted negligence and breach of contract claims against Chase Bank arising out of contract that included a forum selection clause that provided all actions must be brought in New York). The other cases cited by Nuance are also distinguishable. See e.g., Iglesias v. Mutual Life Insurance Co., 156 F.3d 237 (state law counterclaim that was dismissed for lack of jurisdiction was only remaining claim in matter). Nuance also cited several decisions that dismiss state law unfair competition claims that are filed with patent infringement and misappropriation of trade secret claims. See Verdegall Brothers, Inc. v. Union Oil Co., 750 F.2d 947 (9th Cir. 1981), Dickerson v. Sectek, Inc., 238 F. Supp.2d 66 (D.D.C. 2002). Here, this Court has already exercised its discretion under pendent jurisdiction principles to hear Nuance's trade secret misappropriation and 93A claims. It follows that it can hear motions related to Voice Signal's defenses to those claims.

## II.     Voice Signal Has Made A Sufficient Showing to Warrant an Injunction.

Nuance's Opposition does not contest most of the egregious facts set forth in Voice Signal's Motion. It remains undisputed that:

- Nuance and Voice Signal are direct competitors;

- Nuance has engaged in a systematic and continuous campaign to solicit key Voice Signal employees, including Larry Gillick, a defendant and key witness in the litigation;

- Nuance's solicitation of key Voice Signal employees occurred notwithstanding its direct knowledge that the employees have non-compete agreements with Voice Signal;

- Nuance has a list of employees it is targeting for hire, and solicitation of other Voice Signal employees may have occurred in addition to those described in the Motion;[3]

- Nuance will likely continue to solicit key Voice Signal employees in the future;

- Nuance is acting with improper means and motive; and,

- Nuance will *not* be harmed if this Court enjoins Nuance from contacting Voice Signal's employees for any purpose that may interfere with these employees' contractual relationship with Voice Signal.

Notwithstanding these undisputed facts, Nuance agrees that "[Voice Signal] has not pled sufficient facts for this Court to grant injunctive relief." Opposition, at p. 7. Specifically, Nuance alleges that (1) "[Voice Signal] has not provided this Court with the information necessary to determine whether there is even an enforceable non-competition covenant"; and (2) Voice Signal's "requested relief is . . . overly broad." Opposition, at pp. 7, 9. Each of these arguments is meritless.

---

[3] It is also evident that Nuance intends to continue its recruitment of Voice Signal employees. At the conference on February 8, 2007, the Court asked Nuance counsel to inquire whether Nuance might just agree not to recruit Voice Signal employees. No such agreement was forthcoming. Rather, Nuance filed its opposition.

6

### A.   Voice Signal's Non-Competition Covenants Are Enforceable

Contrary to Nuance's assertion, Voice Signal has set forth verified facts necessary to show that the non-compete provisions in the Agreements are enforceable. As noted in Voice Signal's Motion, under Massachusetts law, an employer meets its burden of proving it has enforceable non-competition agreements by demonstrating that they are (1) necessary to protect legitimate business interests; (2) supported by consideration; and (3) reasonably limited in time and geographic scope. See, e.g., All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974); Stone Legal Resources Group, Inc. v. Glebus, No. 025136, 2003 WL 914994, *5 (Mass. Super. Ct. Dec. 16, 2002). As further demonstrated by the Motion, as well as the attached affidavits from the four individuals solicited by Nuance, the Agreements meet these criteria.

With respect to the first element, a company's "legitimate business interests" include the protection of its trade secrets, confidential information, and goodwill.[4] Boulanger v. Dunkin' Donuts Inc., 442 Mass. 635, 641 (2004); Marcam Corp. v. Orchard, 885 F. Supp. 294, 297-98 (D. Mass. 1995). Specifically, courts have found the following types of information warrant protection by an employer through restrictive covenants: financial and budget data; marketing and promotion strategy; new product research and development; customer preferences and needs; sales activities; and "technical" product data. Boulanger, 442 Mass. at 642; Marcam Corp., 885 F. Supp. at 296-97; Veridiem, Inc. v. Phelan, No. 034418BLS, 2003 WL 22481390, *1-2 (Mass. Super. Ct. Sept. 26, 2003); W.B. Mason Co., Inc. v. Staples, Inc., No. 00-5042 BLS, 2001 WL 227855, *4-5 (Mass. Super. Ct. Jan. 18, 2001).

---

[4] Nuance's Opposition argues that "[d]etermining enforceability of a non-competition covenant requires information on . . . the validity of the trade secrets at issue." Opposition, at p. 7. As shown above, however, this is simply not the law in Massachusetts – an employer has other protectible interests beyond trade secrets. Moreover, given that the parties are direct competitors engaged in a highly technical field, and that the litigation between them concerns Nuance's attempts to protect what it believes to be its own highly confidential trade secret information, Nuance cannot now credibly argue that Voice Signal does not, likewise, have protectible trade secret information.

Here, each affiant is a high-level executive with exposure and knowledge that includes these very categories of protected information. See Gillick Aff., ¶ 1 (identifying significant exposure to and knowledge of confidential technical information as Vice President of Core Technology); Reiner Aff., ¶¶ 1,2 (identifying exposure to and knowledge of Voice Signal's business development and strategy; sales activities, forecasting and revenues; and strategic customer accounts as Vice President of Global Accounts); Nielsen Aff., ¶ 1 (identifying significant exposure to and knowledge of Voice Signal's business development and strategy, sales activities and customer relationships in Europe as Vice President of Market Development for Europe); Genser Aff., ¶¶ 1,2 (identifying significant exposure to and knowledge of Voice Signal's business strategies and product development as Vice President of Marketing Communications). Accordingly, there can be no question that Voice Signal has a legitimate interest in retaining these employees and preventing them from working for a direct competitor.

The second requirement for enforcement of a non-compete, that the covenant be supported by consideration, is also met here because, as explicitly attested to by the Agreements themselves, each affiant executed the Agreement as consideration for commencement of his or her employment at Voice Signal. See Gillick Aff., ¶ 2 & Ex. A; Reiner Aff., ¶ 3 & Ex. A; Nielsen Aff., ¶ 2 & Ex. A; Genser Aff., ¶ 3 & Ex. A. Accordingly, each Agreement has the requisite consideration. See Stone Legal Resources Group, Inc., WL 914994 at *5.

Finally, the Agreements' one-year restriction against competing with Voice Signal by engaging in certain specified activities involving voice recognition technology is eminently reasonable in scope. See Gillick Aff., ¶ 2 & Ex. A; Reiner Aff., ¶ 3 & Ex. A; Nielsen Aff., ¶ 2 & Ex. A; Genser Aff., ¶ 3 & Ex. A. See, e.g., Veridiem, Inc., 2003 WL 22481390, at *2 (where plaintiff company serviced a highly competitive marketplace, enforcing one-year nationwide

4178573v2

non-compete against senior-level employee); Marcam Corp., 885 F. Supp. at 299 (same); W.B. Mason Co., 2001 WL 227855 at *6, 8 (finding one-year non-compete "certainly reasonable," and enjoining plaintiff company from soliciting defendant company's employees for one-year period without geographic limitations).[5]

Nuance tries to muddy the waters by suggesting that the Agreements are not enforceable because, *inter alia*, Voice Signal has not shown (1) whether it took proper steps to protect its trade secrets; (2) that the non-competition covenants reflect its employees' current employment responsibilities, and (3) that its employees' special knowledge was derived from their employment at Voice Signal. As previously noted, however, Massachusetts' three-part test for enforceability of non-competition agreements does not require proof of such information. Rather, these items are potential defenses against enforceability in certain contexts for which Nuance has the burden of proof [CITE?]. Voice Signal is not required to anticipate and rebut every possible defense Nuance may assert against enforceability of the Agreements.

In any event, the affidavits submitted with Voice Signal's Motion belie Nuance's assertions. First, each affiant makes clear that he or she acquired confidential proprietary information as a result of his or her employment with Voice Signal and in his or her current position. See Gillick Aff., ¶¶ 1,2; Reiner Aff., ¶¶ 1,2; Nielsen Aff., ¶¶ 1,2; Genser Aff., ¶¶ 2,3. Moreover, the Agreements themselves (which are attached to each affidavit) are replete with evidence of Voice Signal's efforts to keep this proprietary information confidential. The very first paragraph of the Agreement requires the signor, "[a]t all times during the term of [his or her] employment and thereafter" to "hold in strictest confidence and . . . not disclose, use, lecture upon or publish any of the Company's Proprietary Information" except where necessary in the

---

[5] Even if the court were to find that these restrictions are unreasonably broad, it can still enforce the non-compete covenant to the extent necessary to protect Voice Signal's legitimate business interests. See, e.g., W.B. Mason, 2001 WL 227855 at *7.

9

course of employment. Paragraph 10 of the Agreement prohibits a departing employee from taking with him or her any material containing proprietary information. And, in the penultimate paragraph in the Agreement, the signor acknowledges that he or she "UNDERSTAND[S] THAT THIS AGREEMENT . . . RESTRICTS MY RIGHTS TO DISCLOSE OR USE THE COMPANY'S CONFIDENTIAL INFORMATION . . . ." See Gillick Aff., ¶ 2 & Ex. A; Reiner Aff., ¶ 3 & Ex. A; Nielsen Aff., ¶ 2 & Ex. A; Genser Aff., ¶ 3 & Ex. A. Moreover, as noted in its Motion, to fully protect its proprietary information, Voice Signal requires *all* of its employees to sign Agreements, which all contain the above-described clauses, as well as one-year non-compete covenants, upon commencement of employment. See Voice Signal's Memorandum in Support of Its Motion For an Order Enjoining Nuance From Soliciting Voice Signal Employees, at p. 4.

While it is simply not practical for Voice Signal to describe in specific detail the type of confidential information each of its employees (other than the affiants) possess as a result of their various positions,[6] such information is not a prerequisite for this Court to grant the relief Voice Signal seeks, notwithstanding Nuance's argument to the contrary. By way of example, and as described in further detail *infra*, the court in W.B. Mason Co., Inc. v. Staples, Inc. enjoined one employer from contacting the employees of another employer for any purpose that would interfere with any of those employees' restrictive covenants, and did so without examining the enforceability of each of these contracts. 2001 WL 227855 at *8.

---

[6] If Nuance provides a list of Voice Signal employees that it has solicited, as Voice Signal has requested, Voice Signal can certainly address this issue with more specificity.

> **B.   Voice Signal's Requested Relief is Reasonably Tailored to Protect Voice Signal From the Ongoing Threat of Nuance's Solicitations, and Will Not Cause Any Harm to Nuance**

Nuance next argues that the relief Voice Signal requests should be denied as "overly broad" because "Nuance is not aware" of "any case in which a court has issued a blanket injunction precluding a company from hiring *any* employee of another company." Opposition, at p. 9 (emphasis in original). In the first instance, Nuance misconstrues the relief that Voice Signal has requested. Voice Signal is not requesting a "blanket injunction" but, rather, an Order[7] enjoining Nuance and its agents from interfering with the contractual relationship Voice Signal has with its employees. Motion, at p. 2. Particularly given the litigation and prior history between the parties,[8] Voice Signal's request that Nuance stop interfering with its employment contracts is eminently reasonable.

Further, notwithstanding Nuance's assertion to the contrary, this is precisely the same relief afforded by the Superior Court to the wronged defendant employer in W.B. Mason Co.. There, two employees of Staples, Inc. were solicited by W.B. Mason, a direct competitor of Staples, notwithstanding W.B. Mason's knowledge that the employees had non-compete agreements with Staples that prohibited their employment with a competitor for one year. 2001 WL 227855 at *2-3, 7. The court found that even though W.B. Mason did not itself have an agreement with Staples, its solicitations of Staples' employees had harmed Staples. Id. at *7-8. Accordingly, to prevent future harm, the court ordered that W.B. Mason be

---

[7] As explained in its Motion, Voice Signal is not requesting that the Court enter a preliminary injunction against Nuance (and, accordingly, there is no need for the Court to make formal findings regarding the elements required to obtain injunctive relief.) Because Nuance's actions directly affect the trade secret litigation between the parties in that Nuance has solicited an individual defendant as well as other potential witnesses in the litigation, Voice Signal seeks an Order from this Court, as part of the current litigation, enjoining Nuance from soliciting its current employees and, thus, continuing to interfere with Voice Signal's defenses against Nuance's allegations.

[8] Nuance's prior history in this case includes its approach to retain Voice Signal's expert, Dr. Bill Byrne, to conduct research on Nuance's behalf.

11

> [e]njoined and restrained from contacting, directly or indirectly,
> any present employees of Staples Contract and Commercial, Inc.
> or Staples, Inc. for any purpose whatsoever that would interfere in
> any way with any contractual relations between such employees
> and either Staples entity.

See id. at *8. See also Alexander & Alexander, Inc. v. Danahy, 21 Mass. App. Ct. 488, 500 (1986) (explaining that "a stranger to a noncompetition agreement who is aware of the agreement" may be enjoined from interfering with it).

It is this precise remedy granted by the court in W.B. Mason that Voice Signal requests in its Motion,[9] and the request is wholly justified. Implicit in the W.B. Mason order was the recognition long made by courts that an employer's assembled workforce is an integral part of its good will, and that the threat of loss of this goodwill, because it is particularly hard to quantify, presumptively gives rise to the need for equitable relief. See, e.g., State Street Corp. v. Barr, No. 99-4291F, 1999 Mass. Super. LEXIS 432, *14,21 (Mass. Super Ct. Oct. 25, 1999) (granting injunction to prevent solicitation of plaintiff's employees because plaintiff employer would likely be irreparably harmed by loss of employees to competitor); W.B. Mason, 2001 WL 227855, at *4,8 (same); see also McFarland v. Schneider, No. 96-7097, 1998 WL 136133, *43 (Mass. Super. Ct. Feb. 17, 1998) (recognizing that a company's "continued growth and viability depend on . . . maintaining its . . . relationship with employees," and that maintaining such "internal goodwill" helps promote a "stable and vibrant" enterprise).

Here, the threat against Voice Signal's employee goodwill is particularly acute and unquantifiable. If Nuance's solicitations continue, Voice Signal faces the loss of its workforce

---

[9] The Opposition's attempt to distinguish the cases cited by Voice Signal in support of its requested relief is wholly unsuccessful. In Darwin Partners, Inc. v. Signature Consultants LLC, the court *did* enjoin the new employer from soliciting clients its new employees had had contact with during their previous employment. See 2000 WL 33159238 at *5. And, in New England Patriots Football Club, Inc. v. Univ. of Colorado, the First Circuit determined that the University of Colorado was properly enjoined from interfering with the employment contract between the Patriots and its head coach – the same relief requested here. See 592 F.2d 1196 (1st Cir. 1979).

12

4178573v2

(and the goodwill it has invested therein). While it is clear that Voice Signal's goodwill and business interests will be threatened if equitable relief is not granted, Nuance does not (and cannot) even attempt to suggest that it will suffer *any* harm whatsoever if it is enjoined from soliciting Voice Signal employees.

Finally, even though Nuance does not deny that it has been soliciting key Voice Signal employees, it seemingly argues that because its efforts have been unsuccessful to date, it should not be enjoined from further solicitations. Nuance is asking this Court to wait to act until after its attempts to induce breaches of Voice Signal's contracts have succeeded, and it has successfully hired away Voice Signal employees. This Court is not required to wait. As the Massachusetts Appeals Court has recognized, "the purpose of [an] injunction is to *prevent* whatever *future* violations *are likely* to occur." Alexander, 21 Mass. App. Ct. at 494 (emphasis added); accord United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953); see Darwin Partners, 2000 WL 33159238 at *5 (granting injunction to enforce non-solicitation provision where "there is a very strong potential for future loss of goodwill").

In sum, Voice Signal is making a simple and reasonable request to this Court to stop Nuance from continuing to interfere with its employment and contractual relationships. Nuance has not denied its involvement in these activities, which are only the most recent in its string of wrongdoing in recent years. The Order requested in the Motion should issue.

4178573v2

## CONCLUSION

Voice Signal respectfully requests that the Court grant the requested order enjoining Nuance from soliciting its employees and requiring it to disclosure the names of prior solicited employees, as set forth in its principal Motion for an Order Enjoining Nuance From Soliciting Voice Signal Employees.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,

/s/ Sarah Chapin Columbia
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BBO No. 647716)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

4178573v2