UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SCANSOFT, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | C.A. No. 04-10353-PBS |
| VOICE SIGNAL TECHNOLOGIES, INC., LAURENCE S. GILLICK, ROBERT S. ROTH, JONATHAN P. YAMRON, and MANFRED G. GRABHERR, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF VOICE SIGNAL TECHNOLOGIES, INC.'S MOTION TO STAY PROCEEDINGS ON CLAIMS CONCERNING THE '966 PATENT PENDING RE-EXAMINATION OF THE '966 PATENT**

Defendant Voice Signal Technologies, Inc. ("Voice Signal") submits this memorandum of law in support of its Motion to Stay Proceedings Concerning the '966 Patent Pending Resolution of the Reexamination of the '966 Patent.

**INTRODUCTION**

Voice Signal brings this motion in anticipation of the Neutral Expert's final report. That report will position ScanSoft, Inc.'s ("ScanSoft") trade secret claims and Voice Signal's patent claim for disposition by summary judgment.[1] That will leave ScanSoft's claim against Voice Signal for infringement of U.S. Patent number 6,501,966 (the "'966 patent") as the only remaining claim in this protracted lawsuit.

---

[1] The Neutral Expert's draft report found that there is no reason to believe that Voice Signal or the individual defendants copied or used any ScanSoft trade secret. With respect to Voice Signal's counterclaim for infringement of U.S. Patent number 6,594,630 (the "'630 patent"), the draft Neutral Expert Report found that certain elements of the claims of the '630 patent are not present in the accused ScanSoft voice recognition engine. That finding leaves a question of law as to whether ScanSoft is inducing infringement of the '630 patent by its customers.

1

The '966 patent is currently the subject of an *inter partes* reexamination procedure in the United States Patent and Trademark Office (the "USPTO"). In the reexamination procedure, the USPTO has issued a thirty-three page first office action finding each of the six claims in reexamination to be invalid, as they are anticipated by five separate prior art references.[2] These prior art references include a reference authored by one of the named inventors on the '966 patent. In response, ScanSoft submitted a five page response.[3] ScanSoft also filed a "Petition to Suspend *Inter Partes* Reexamination," citing the pendency of this lawsuit. There is no procedural basis for "suspending" a reexamination. The USPTO has not issued a Final Office Action. Thus, at present, claims 1 through 6 of the '966 patent stand rejected as anticipated by five separate prior art references.

To the extent that any of the asserted patent claims survive the Reexamination, they should be amended so fundamentally that the Court's and the parties' resources expended in this case based upon the present form of those claims would be wasted. Indeed, even if the claims were confirmed by the Patent Office in their present form (which they should not be), the statements made in the Reexamination may be used in this case and would likely materially affect what the parties are litigating and how it should be litigated.

## BACKGROUND

### The Litigation

ScanSoft filed this action in February, 2004 alleging infringement of the '966 patent against Voice Signal and misappropriation of trade secrets against Voice Signal and four

---

[2] Claims 1 through 6 of the '966 patent have been accepted for reexamination. Claims 1 through 6 are the only claims asserted in this litigation. A copy of the USPTO office action, dated June 21, 2006, is attached hereto as Exhibit A.

[3] The sole basis for ScanSoft's response to the office action is its argument that the claim language "collecting digits representing a telephone number" must be construed to require "smart dialing." This Court has already considered and rejected ScanSoft's argument in its September 6, 2005 Claim Construction Memorandum and Order.

individual employees of Voice Signal. In turn, Voice Signal asserted a counterclaim of patent infringement of its '630 patent.

During 2004 and 2005, the parties conducted discovery concerning ScanSoft's patent infringement and trade secrets claims.[4] The parties fully briefed claim construction related to the '966 patent and on September 6, 2005, this Court issued its Claim Construction Order.

Since the Court issued the Claim Construction Order, virtually no activity has occurred relating the ScanSoft's patent infringement claims. As the Court is aware, the parties have been occupied with discovery issues relating to ScanSoft's trade secrets claims and Voice Signal's patent claim. Under the Neutral Expert Procedure approved by the Court, the parties and their respective retained experts have prepared and submitted several submissions to the Neutral Expert and have hosted four separate meetings with him (including a deposition). In all, the Neutral Expert Procedure has consumed more than one year. The Neutral Expert's final report is expected within the next few weeks.

The parties have not engaged in expert disclosures or discovery, damages discovery or dispositive motion practice related to the '966 patent, and there is not a current scheduling order entered by the Court setting the dates for the completion of these activities. Further, a pre-trial conference date and trial date have not been set by the Court.

## ARGUMENT

Patent reexamination is a procedure by which any person may challenge the patentability of an existing patent on the basis of prior art. 35 U.S.C. §§282, 301. The purpose of the reexamination procedure is to provide a means for settling patent validity disputes more quickly and cheaply than litigation. *See, e.g. Hamilton Indus., Inc. v. Midwest Folding Prod. Mfg. Corp.,*

---

[4] The parties, by agreement, deferred damages discovery on all claims and counterclaims until after summary judgment motions have been filed and ruled upon.

No. 89-C-8696, 1990 WL 37642 at *1 (N.D. Ill. March 20, 1990). In the context of patent litigation, reexamination serves the further purpose to potentially "eliminate trial of that issue [validity] (when claim is canceled) or to facilitate the trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding.)" *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

Courts have inherent power to manage their dockets and stay proceedings, *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), including the authority to order a stay of litigation, pending the conclusion of a USPTO reexamination. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988), *Gould*, 705 F.2d at 1342.

Statistical information regarding reexamination indicates that it is likely that the '966 patent will either be amended or canceled as a result of the reexamination. The evidence shows that "generally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%." *Tap Pharm. Prods. Inc. v. Atrix Labs. Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004). These statistics "suggest that in a typical case there is a substantial probability a reexamination will have a major impact on the issues to be resolved in the litigation." *Rohm and Haas Co. v. Brotech Corp.*, 24 U.S.P.Q.2d 1369, 1372 (D.Del. 1992).

When determining whether or not to stay litigation, courts typically consider whether a stay will simplify the issues in question and trial of the case, whether a stay would unduly prejudice the nonmoving party, the status of discovery in the matter and whether a trial date has been set. *See ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994); *GPAC, Inc. v. DWW Enterprises, Inc.*, 144 F.R.D. 60, 66 (D.N.J. 1992).[5] In addition to

---

[5] Courts that have addressed the issue have observed that there is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of PTO reexamination proceedings." *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); *see also*, *eSoft, Inc. v. Blue Coat Sys., Inc.*, No. 06-cv-00442, 2007 U.S. Dist. LEXIS 11261, at *5 (D. Colo., Feb. 15, 2007) ("Courts frequently note that '[t]he legislative history

4100541v1

these factors, courts should also consider the advantages in granting a stay, such as conservation of judicial resources and the reduction in litigation costs to both parties. *See Emhart Indus. v. Sankyo Seiki Mfg.,* 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987). Consideration of these factors here favor a stay of the proceedings concerning the '966 patent pending reexamination.

### A.  A Stay Could Limit and Simplify the Issues Before this Court.

Courts have widely recognized that the expertise of the USPTO in evaluating claim validity is an important factor to consider when determining whether a stay is appropriate. *See Gould*, 705 F.2d at 1341-42 (Fed. Cir. 1983), *Broadcast Innovation, L.L.C. v. Charter Communications, Inc.*, No. 03-2223, 2006 WL 1897165, at * 4 (D. Colo. July 11, 2006), *Middleton, Inc. v. Minn. Mining & Mfg. Co.,* No. 04:03 – CV-40494, 2004 WL 198669, at *3 (S.D. Iowa Aug. 24, 2004).   This expertise is especially important in cases like this, which involve complex technical issues. *See GPAC*, 144 F.R.D. at 63 (D.N.J. 1993).

Here, the USPTO has already issued an office action rejecting each of the six claims at issue as invalid in light of five separate prior art references.  If the present litigation proceeds concurrently with reexamination by the USPTO, it is nearly certain that the effort of the Court will duplicate the USPTO's analysis and much of that effort may ultimately be completely unnecessary. *See eSoft*, 2007 U.S. Dist. LEXIS 11261, at *8 (observing that "the specialized expertise the USPTO can bring to bear on the question whether prior art undermines the validity of the patent's claims would unquestionably help this court resolve Plaintiff's case expeditiously, efficiently, and – most importantly – correctly"); *Vitronics Corp. v. Conceptronic, Inc.*, 36 F. Supp. 2d 440, 442 (D.N.H. 1997) ("[A] stay in this case is appropriate because the probability

---

surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays.'") (quoting *Robert H. Harris Co. v. Metal Mfg. Co.*, 19 U.S.P.Q.2d 1786, 1788 (E.D. Ark. 1991)); *Emhart Indus. v. Sankyo Seiki Mfg.,* 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987) (recognizing that, "in passing legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion.").

4100541v1

exists that unnecessary litigation may be avoided and the issues remaining in the case simplified.")

Staying this litigation until the reexamination concludes is consonant with the legislative purpose of the reexamination statute, which was conceived as a tool to reduce the need for, and the complexity of, patent litigation in district courts.  "Congress instituted the reexamination process to shift the burden of reexamination of patent validity from the courts to the USPTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the USPTO's specialized expertise to reduce costly and timely litigation."  *Canady v. Erbe Elektronedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002) (citing H.R. Rep. No. 1307, 96th Cong., 2d Sess., pt. 7 at 4 [1980], reprinted in 1980 U.S.C.C.A.N. 6460)); *see also Digital Magnetic Sys., Inc. v. Ansley*, 213 U.S.P.Q. 290, 290 (W.D. Okla. 1982) (explaining that reexamination procedure was intended "to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts.").

Furthermore, the reexamination prosecution history becomes part of the intrinsic record of a patent and is a critical component for the interpretation of the claim language.  *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) (statements made during merged reissue/reexamination proceeding "are relevant prosecution history when interpreting claims"); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 141 F. Supp. 2d 288, 298 (D. Conn. 2001) ("[a]rguments made during reexamination proceedings 'are relevant prosecution history when interpreting claims'") (quoting *du Pont*, 849 F.2d at 1439).

Additionally, prosecution history developed during reexamination – just like prosecution history created in the original examination – may give rise to disclaimers or estoppels, thereby

limiting the scope of the claims or the availability of the doctrine of equivalents. *See Intermatic Inc. v. Lamson & Sessions Co.*, 273 F.3d 1355, 1367 (Fed. Cir. 2001) ("a claim limitation that was narrowed in order to obtain allowance of a claim during reexamination," creates prosecution history estoppel that "may retroactively extend to original, unamended claims" and "to all other claims in the patent containing that limitation.") *vacated and remanded on other grounds,* 60 Fed. Appx. 805 (Fed. Cir. 2003); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996) ("When Cole distinguished these references [in reexamination filings], she thereby surrendered any argument that her 'perforation means' encompasses ultrasonic bonded seams.")

### B. ScanSoft Will Not Be Unduly Prejudiced or Tactically Disadvantaged by a Stay.

ScanSoft will not be unduly prejudiced or suffer a tactical disadvantage as a result of a stay. The pending Reexamination is positioned for a Final Office Action. Thus, there is a strong likelihood that the Reexamination will be complete before the parties could conduct and complete the remaining discovery, expert reports, summary judgment briefing, pre-trial and trial proceedings to reach judgment in the litigation.[6]

ScanSoft will, no doubt, argue that the Reexamination and Voice Signal's motion to stay this litigation come too late. However, if the parties continue to litigate the issues of infringement and invalidity of the '966 patent based on the current claims, including trying the issues of infringement and validity, and the USPTO later cancels or amends some or all of the asserted claims, the Court and the parties will have wasted significant resources addressing

---

[6] Even if this Court found that a stay in favor of the reexamination would cause some delay in reaching a final decision on ScanSoft's infringement claims, delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *See Pegasus Dev. Corp. v. DirecTV, Inc.*, No. 00-1020, 2003 WL 21105073, *2 (D.Del. May 14, 2003). Parties, such as ScanSoft, who have protection under the patent statutory framework and invoke their rights through litigation may not "complain of the rights afforded to others by that same statutory framework." *Pegasus*, 2003 WL 21105073 at *2. Voice Signal was legally entitled to invoke the reexamination process, and the PTO independently determined that reexamination was warranted and that claims 1-6 are anticipated. Further, if the PTO upholds ScanSoft's patents after reexamination, this will only strengthen ScanSoft's rights, because Voice Signal's burden of proof will become more onerous. *KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-02116, 2006 WL 708661, at *3 (N.D. Cal., March 16, 2006).

4100541v1

issues that have been rendered irrelevant. *See Softview Computer Prods. Corp. v. Haworth Inc.*, 56 U.S.P.Q. 2d 1633, 1636 (S.D.N.Y. 2000). The Court in *Softview*, in a similarly situated case, recognized:

> Although the [defendant] correctly notes that the plaintiffs have not acted with dispatch in seeking reexamination and that plaintiffs have pursued an extremely burdensome discovery program, the cost to [defendant] of the litigation to date will not be affected by the grant or denial of a stay; denying the stay will not without more, entitle [defendant] to recover fees it has already spent litigating this case…if the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing invalid claims. Thus, although the grant of the stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.

*Id*.

### C. Proceedings on the '966 Patent are at a Standstill Pending Resolution of Trade Secrets Discovery and No Trial Date has Been Set.

Although considerable discovery concerning the '966 patent has been conducted, the proceedings relating to the '966 patent have been on hold for more than a year while the parties engaged in the Neutral Expert Procedure. The parties have not begun expert discovery or damages discovery (nor has a timeline for such discovery been set). The parties have not filed dispositive motions on the '966 patent (again, the deadline for filing such motions has not been set). Finally, no date has been set for either a trial or a pre-trial conference in this matter.

In these circumstances, staying proceedings on the '966 patent serves the goals of judicial economy by saving the parties and the court from expending significant resources on damages discovery, expert discovery and trial on a patent claim that will either be canceled or dramatically amended. *See Pegasus Development Corp.* 2003 WL 21105073 at *3 (granting stay three years after suit was filed and after the majority of discovery had been completed), *Softview,* 56 U.S.P.Q.2d at 1636 (granting stay after significant discovery completed and summary judgment motions served), *Broadcast Innovation,* 2006 WL 1897165 at *11 (granting stay when

8

discovery significantly complete and trial date set).  The Court in *Softview* noted that while there had been considerable activity in the case to date (discovery and dispositive motion practice), there would be a large volume of activity that would need to occur prior to trial, and it would be a clear waste of the Court's and the parties' resources to litigate those issues if the claims were subsequently declared invalid or altered.  *See Softview,* 56 U.S.P.Q. 2d at 1636; *Broadcast Innovation*, 2006 WL 1897165 at *11 (granting stay and noting that while a trial date was set, parties still had to engage in additional expert discovery and dispositive motion practice).   Other courts have similarly granted stays in even more advanced circumstances, where a trial date has been set and summary judgment briefing complete.  *See, e.g., Gould,* 705 F.2d at 1341-42  (stay entered five years after commencement of litigation and 20 days before scheduled start of trial upheld by Federal Circuit); *Moston v. Franklin Covey Co.*, Case No. 03-1067, 2005 WL 3465664 (D.N.J. Dec. 16, 2005) (discovery completed and summary judgment granted on some claims); *Loffland Bros. Co. v. Mid-Western Energy Corp.*, No. 83-CV-2255, 1985 WL 1483, at *2 (W.D. Okla. Jan 3, 1985) (stay granted after significant discovery, pretrial and trial date set); *Middleton, Inc.*, 2004 WL 198669 at *10 (granting motion to stay eight years after start of litigation and less than two months before trial).

## CONCLUSION

For the foregoing reasons, Voice Signal respectfully requests that this Court grant its Motion and stay proceedings related to the '966 patent pending resolution of reexamination proceedings in the USPTO.

Respectfully submitted,

VOICE SIGNAL TECHNOLOGIES, INC.

By its attorneys,

/s/ Wendy S. Plotkin
Robert S. Frank, Jr. (BBO No. 177240)
Sarah Chapin Columbia (BBO No. 550155)
Paul D. Popeo (BBO No. 567727)
Wendy S. Plotkin (BOB No. 647716)
CHOATE, HALL & STEWART
2 International Place
Boston, MA  02110
(617) 248-5000

Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 23, 2007.

/s/ Wendy S. Plotkin

11

4100541v1